UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARTIN COHEN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>LUCKIN COFFEE INC., JENNY ZHIYA QIAN, and REINOUT HENDRIK SCHAKEL,<br><br>Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Martin Cohen ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Luckin Coffee Inc. ("Luckin" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

{00360139;3 }

1

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Luckin securities between November 13, 2019 and January 31, 2020, both dates inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Luckin was founded in 2017 and is based in Xiamen, the People's Republic of China ("China"). Luckin engages in the retail sale of freshly brewed drinks, and pre-made food and beverage items in China, offering freshly brewed drinks, including freshly brewed coffee and non-coffee drinks, and food and beverage items, such as light meals. The Company operates pick-up stores, relax stores, and delivery kitchens under the Luckin brand, as well as Luckin mobile app, Weixin mini-program, and other third-party platforms that cover the customer purchase process.

3. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false or misleading statements or failed to disclose that: (i) certain of Luckin's financial performance metrics, including per-store per-day sales, net selling price per item, advertising expenses, and revenue contribution from "other products" were inflated; (ii) Luckin's financial results thus overstated the Company's financial health and were consequently unreliable; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

4. On January 31, 2020, Muddy Waters Research ("Muddy Waters") published an anonymous report alleging that Luckin had fabricated certain of the Company's financial

performance metrics, beginning in the third quarter of 2019 ("3Q19") (the "Muddy Waters Report"). The Muddy Waters Report purported to cite "smoking gun evidence," including, *inter alia*, thousands of hours of store video, thousands of customer receipts, and diligent monitoring of the Company's mobile application metrics, which allegedly showed that, since 3Q19, Luckin had inflated its per-store per-day sales figures, its net selling price per item, its advertising expenses, and its revenue contribution from "other products."

5.   On this news, Luckin's American depositary share ("ADS") price fell $3.91 per share, or 10.74%, to close at $32.49 per share on January 31, 2020.

6.   In response to the Muddy Waters Report, Luckin denied all of the claims therein. In addition, investor Andrew Left of Citron Research ("Citron") disclosed that he had taken a long position in Luckin, and, citing data from Business Connect China ("BCC"), stated that the Muddy Waters Report would "fall short on accuracy."

7.   On February 12, 2020, however, J Capital Research ("J Capital"), a China-focused investment research firm, published a more detailed report supporting the findings in the Muddy Waters Report and specifically rebutting Citron's statements in support of Luckin (the "J Capital Report"). The J Capital Report stated, in part:

> Citron cited data from "Biz Con China," referring to Business Connect China (BCC), a Shanghai-based expert-network company that also sells data on listed, Chinese-domiciled companies. We managed to see a copy of BCC's report, and right there in the first paragraph is written: "Based on BCC's tracking, we are skeptical about some of Luckin's reported figures." The next paragraph begins: ***"Luckin's reported figure of 444 items sold per day in 3Q19 is likely to be higher than their actual sales." Citron seems to have missed this.***
>
> We know BCC to operate with a high degree of integrity but think the methodology used to collect the data was flawed. BCC itself warns clients that "we believe BCC's tracking results portray the optimal situation that Luckin can reach." Notably, ***BCC's tracking results show lower numbers than LK management reports.***

*****

It's not all bad news. ***In several areas, BCC's data backed up the data in the Anonymous report. Citron conveniently forgot to mention that in the tweet.***

Luckin has so far issued a blanket denial without providing confirmatory evidence. We are short Luckin and ***believe that the work of the anonymous short sellers was credible and complementary to our own analysis of the company's reports.***

(Emphases added.)

8. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Luckin' securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10. This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11. Venue is proper in this Judicial District pursuant to Section 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Luckin ADSs trade on the Nasdaq Global Select Market ("NASDAQ"), located within this Judicial District.

12. In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**PARTIES**

13.     Plaintiff, as set forth in the attached Certification, acquired Luckin securities at artificially inflated prices during the Class Period and suffered damages as a result of the federal securities law violations and false or misleading statements or material omissions alleged herein.

14.     Defendant Luckin is a Cayman Islands corporation with principal executive offices located at 17F Block A, Tefang Portman Tower, No. 81 Zhanhong Road, Siming District, Xiamen, Fujian, China.  Luckin securities trade in an efficient market on the NASDAQ under the ticker symbol "LK."

15.     Defendant Jenny Zhiya Qian ("Qian") has served as Luckin's Chief Executive Officer at all relevant times.

16.     Defendant Reinout Hendrik Schakel ("Schakel") has served as Luckin's Chief Financial Officer and Chief Strategy Officer at all relevant times.

17.     Defendants Qian and Schakel are sometimes referred to herein collectively as the "Individual Defendants."

18.     The Individual Defendants possessed the power and authority to control the contents of Luckin's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Luckin's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Luckin, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then

materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

19.Luckin and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

20.Luckin was founded in 2017 and is based in Xiamen, China. Luckin engages in the retail sale of freshly brewed drinks, and pre-made food and beverage items in China, offering freshly brewed drinks, including freshly brewed coffee and non-coffee drinks, and food and beverage items, such as light meals. The Company operates pick-up stores, relax stores, and delivery kitchens under the Luckin brand, as well as Luckin mobile app, Weixin mini-program, and other third-party platforms that cover the customer purchase process.

21.Luckin reports net revenues in three groups—freshly brewed drinks, other products, and others. "Freshly brewed drinks" include product offerings such as freshly brewed coffee and non-coffee drinks, such as Luckin tea. "Other products" mainly consist of food and beverage items, such as light meals, and "Luckin Pop" products, including cups and other merchandise products. "Others" revenues mainly include delivery fees paid by Luckin customers.

### Materially False and Misleading Statements Issued During the Class Period

22.The Class Period begins on November 13, 2019, when Luckin issued a press release, during pre-market hours, announcing its financial and operating results for 3Q19 (the "3Q19 Press Release"). The 3Q19 Press Release highlighted that "[a]verage monthly total items sold in the quarter were 44.2 million, representing an increase of 470.1% from 7.8 million in the third quarter of 2018"; "[a]verage total net revenues from products per store in the quarter were

RMB449.6 thousand (US$62.9 thousand), representing an increase of 79.5% from RMB250.5 thousand in the same quarter of 2018"; and "[s]tore level operating profit in the quarter was RMB186.3 million (US$26.1 million), or 12.5% of net revenues from products, compared to a loss of RMB126.0 million in the third quarter of 2018."

23.     More specifically, the 3Q19 Press Release stated that "[n]et revenues from products growth was primarily driven by [*inter alia*] . . . an increase in effective selling price, and an increase in the number of products sold per transacting customer."

24.     Additionally, the 3Q19 Press Release stated that "[n]et revenues from other products were RMB347.8 million (US$48.7 million), representing 22.6% of total net revenues in the third quarter of 2019, compared to RMB34.4 million, or 14.3% of total net revenues, in the third quarter of 2018."

25.     The 3Q19 Press Release also reported that "[s]ales and marketing expenses were RMB557.7 million (US$78.0 million), representing an increase of 147.6% from RMB225.3 million in the third quarter of 2018, mainly due to increases in advertising expenses as the Company launched new marketing initiatives, entered into new cities and launched Luckin Tea as an independent brand."

26.     Finally, the 3Q19 Press Release advised that "[f]or the fourth quarter ending December 31, 2019, the Company expects net revenues from products to be between RMB2.1 billion and RMB2.2 billion," which "excludes any revenue generated from stores operated under the new retail partnership model."

27.     On the same day as the release of the 3Q19 Press Release, Luckin issued a 3Q19 earnings release presentation (the "3Q19 Presentation"). According to that presentation, Luckin's

items per-store per-day amounted to 444 in 3Q19, compared to 285 in the same quarter the year prior.

28. The 3Q19 Presentation also cited a net selling price per item of RMB 11.2 as one of the Company's key drivers, representing a quarter-over-quarter increase of approximately 7%, and a year-over-year increase of approximately 15%.

29. In discussing Luckin's "[s]trategic investment in branding," the 3Q19 Presentation touted "[o]ther new customer acquisition costs"—calculated as "(advertising expenses + other sales and marketing expenses excluding delivery) / number of new transacting customers during the period"—of RMB 48.7 per customer for 3Q19 compared to RMB 42.3 for the same quarter the year prior, resulting in 7.9 million new transacting customers as compared to 3.1 million new transacting customers in the same quarter the year prior.

30. Finally, the 3Q19 Presentation represented that the percentage of revenue from "other products" had drastically increased quarter-over-quarter, with "other products" representing 22.6% of revenue in 3Q19, compared to 14.3% the same quarter the year prior. It also noted that net revenues from "other products" increased to RMB 348 million in 3Q19, compared to RMB 34 million the same quarter the year prior.

31. On November 20, 2019, Luckin filed a Report of Foreign Private Issuer on Form 6-K with the SEC, signed by Defendant Schakel, which appended the 3Q19 Press Release as an exhibit, reiterating the false and misleading financial metrics reported in that press release.

32. The statements referenced in ¶¶ 22-31 were materially false and misleading because Defendants made false or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false or misleading statements or failed to disclose that: (i) certain of Luckin's financial

performance metrics, including per-store per-day sales, net selling price per item, advertising expenses, and revenue contribution from "other products" were inflated; (ii) Luckin's financial results thus overstated the Company's financial health and were consequently unreliable; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

### The Truth Begins to Emerge

33. On January 31, 2020, Muddy Waters published a report alleging that Luckin had fabricated certain of the Company's financial performance metrics, beginning in 3Q19. The Muddy Waters Report purported to cite "smoking gun evidence," including, *inter alia*, thousands of hours of store video, thousands of customer receipts, and diligent monitoring of the Company's mobile application metrics, which allegedly showed that, since 3Q19, Luckin had inflated its per-store per-day sales figures, its net selling price per item, its advertising expenses, and its revenue contribution from "other products."

34. With respect to Luckin's number of items per-store per-day, the Muddy Waters Report stated that this number "was inflated by at least 69% in 2019 3Q and 88% in 2019 4Q, supported by 11,260 hours of store traffic video" recorded by thousands of on-the-ground staff associated with the author, and that the report's "offline tracking results of tracking 981 store-days from 2019 4Q showed 263 items per store per day only," compared to the Company's report of 444 items per store per day for 3Q19 and an estimated 495 items per store per day for 4Q19 based on the Company's guidance for that quarter. Specifically, the Muddy Waters Report estimated that 483-506 items per-store per-day was "implied by 4Q Guidance Product Revenue Guidance of RMB 2.1 billion to RMB 2.2 billion, divided by Net selling price per item of RMB 11.8 (Assuming

Luckin to report [*sic*] 5% sequential growth from 2019 3Q of RMB 11.2) and average store number of 4,094."

35. With respect to Luckin's net selling price per item, the Muddy Waters Report disclosed that its staff "gathered 25,843 customer receipts and found that Luckin inflated its net selling price per item by at least RMB 1.23 or 12.3% to artificially sustain the business model," and that, "[i]n the real case, the store level loss is high at 24.7%-28%." The report also noted that "25,843 receipts indicate 1.08 and 1.75 items per order for pick-ups and delivery orders respectively or blended 1.14," and that "[t]his marked a continuously downward trend of items per order from 1.74 in 2018 1Q to 1.14 in 2019 4Q."

36. With respect to Luckin's advertising expenses, the Muddy Waters Report asserted that "[t]hird party media tracking showed that Luckin overstated its 2019 3Q advertising expenses by over 150," and that "[i]t's possible that Luckin recycled its overstated advertising expense back to inflate revenue and store-level profit."

37. Finally, the Muddy Waters Report asserted that Luckin's revenue contribution from "other products" was "only about 6% in 2019 3Q, representing nearly 400% inflation, as shown by [*inter alia*] 25,843 customer receipts." Specifically, it noted that "for the 981 store-days we tracked, only 2% of the pick-up orders were found containing non-freshly brewed products," and that "[t]he 25,843 receipts further indicate that 4.9% and 17.5% of items for pick-up and delivery orders were 'other products', blended 6.2%, i.e. inflated by nearly 400%."

38. On this news, Luckin's ADS price fell $3.91 per share, or 10.74%, to close at $32.49 per share on January 31, 2020.

39. In response to the Muddy Waters Report, Luckin denied all of the claims therein. In addition, investor Andrew Left of Citron disclosed that he had taken a long position in Luckin, and, citing data from BCC, stated that the Muddy Waters Report would "fall short on accuracy."

40. On February 12, 2020, however, J Capital, a China-focused investment research firm, published a more detailed report supporting the findings in the Muddy Waters Report and specifically rebutting Citron's statements in support of Luckin. The J Capital Report stated, in part:

> Citron cited data from "Biz Con China," referring to Business Connect China (BCC), a Shanghai-based expert-network company that also sells data on listed, Chinese-domiciled companies. We managed to see a copy of BCC's report, and right there in the first paragraph is written: "Based on BCC's tracking, we are skeptical about some of Luckin's reported figures." The next paragraph begins: ***"Luckin's reported figure of 444 items sold per day in 3Q19 is likely to be higher than their actual sales." Citron seems to have missed this.***
>
> We know BCC to operate with a high degree of integrity but think the methodology used to collect the data was flawed. BCC itself warns clients that "we believe BCC's tracking results portray the optimal situation that Luckin can reach." Notably, ***BCC's tracking results show lower numbers than LK management reports.***
>
> *****
>
> It's not all bad news. ***In several areas, BCC's data backed up the data in the Anonymous report. Citron conveniently forgot to mention that in the tweet.***
>
> Luckin has so far issued a blanket denial without providing confirmatory evidence. We are short Luckin and ***believe that the work of the anonymous short sellers was credible and complementary to our own analysis of the company's reports.***

(Emphases added.)

41. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Luckin' securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

42. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Luckin securities during the Class Period and were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

43. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Luckin securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Luckin or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

44. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

45. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

46. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants during the Class Period misrepresented material facts about the business, operations and management of Luckin;

- whether the Individual Defendants caused Luckin to issue false and misleading financial statements during the Class Period;

- whether certain Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Luckin securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

47. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

48. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Luckin securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired or sold Luckin securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

49. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

50. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

51. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

52. This Count is asserted against the all Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

53. During the Class Period, the Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under

which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Luckin securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Luckin securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, the Defendants, and each of them, took the actions set forth herein.

54. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Luckin securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Luckin's finances and business prospects.

55. By virtue of their positions at Luckin, the Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, the Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to the Defendants.  Said acts and omissions of the Defendants were committed willfully or with reckless disregard for the truth.  In addition, each of the Defendants knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

56.     Information showing that the Defendants acted knowingly or with reckless disregard for the truth is peculiarly within the Defendants' knowledge and control.  As the senior managers or directors of Luckin, the Individual Defendants had knowledge of the details of Luckin's internal affairs.

57.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Luckin.  As officers or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Luckin's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Luckin securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Luckin's business and financial condition which were concealed by the Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Luckin securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities or upon statements disseminated by the Defendants, and were damaged thereby.

58.     During the Class Period, Luckin securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Luckin securities at prices artificially inflated by the Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired

{00360139;3 }

16

said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases or acquisitions by Plaintiff and the Class, the true value of Luckin securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Luckin securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

59. By reason of the conduct alleged herein, the Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

60. As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

61. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

62. During the Class Period, the Individual Defendants participated in the operation and management of Luckin, and conducted and participated, directly and indirectly, in the conduct of Luckin's business affairs. Because of their senior positions, they knew the adverse non-public information about Luckin's misstatement of income and expenses and false financial statements.

63. As officers or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Luckin's financial

condition and results of operations, and to correct promptly any public statements issued by Luckin which had become materially false or misleading.

64.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Luckin disseminated in the marketplace during the Class Period concerning Luckin's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Luckin to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Luckin within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Luckin securities.

65.     Each of the Individual Defendants, therefore, acted as a controlling person of Luckin.  By reason of their senior management positions or being directors of Luckin, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Luckin to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Luckin and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

66.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Luckin.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

      B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

      C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

      D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: February 13, 2020

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
Email: peretz@bgandg.com

*Attorneys for Plaintiff*

{00360139;3 }

20