UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARTIN COHEN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> LUCKIN COFFEE INC., JENNY ZHIYA QIAN, and REINOUT HENDRIK SCHAKEL, <br><br> Defendants. | Honorable Lewis J. Liman <br> No: 1:20-cv-01293-LJL |
| WAI CHUN SHEK, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> LUCKIN COFFEE INC., JENNY ZHIYA QIAN, CHARLES ZHENGYAO LU, REINOUT HENDRIK SCHAKEL, JINYI GUO, JIAN LIU, HUI LI, ERHAI LIU, CREDIT SUISSE SECURITIES (USA) LLC, MORGAN STANLEY & CO. LLC, CHINA INTERNATIONAL CAPITAL CORPORATION HONG KONG SECURITIES LIMITED, HAITONG INTERNATIONAL SECURITIES COMPANY LIMITED, KEYBANC CAPITAL MARKETS INC., and NEEDHAM & COMPANY, LLC, <br><br> Defendants. | Naomi Reice Buchwald <br> No: 1:20-cv-02977-NRB |

**MEMORANDUM OF LAW IN SUPPORT OF THE
MOTION OF AMRIK HIRA
FOR CONSOLIDATION OF RELATED ACTIONS,
APPOINTMENT AS LEAD PLAINTIFF AND
<u>APPROVAL OF HIS SELECTION OF LEAD COUNSEL</u>**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. SUMMARY OF THE ACTION AND PROCEDURAL BACKGROUND ....................... 3

III. ARGUMENT ........................................................................................................................ 7

    A. The Related Actions Should Be Consolidated ............................................................ 7

    B. The PSLRA Standard for Appointing Lead Plaintiff ................................................. 8

    C. Mr. Hira Is the "Most Adequate Plaintiff" ................................................................. 9

        1. Mr. Hira Has Satisfied the PSLRA's Procedural Requirements ........................ 9

        2. Mr. Hira Has the Largest Financial Interest in the Relief Sought by the Class ................................................................................................................. 10

    D. Mr. Hira Is Qualified Under Rule 23 ....................................................................... 10

        1. Mr. Hira's Claims Are Typical of the Claims of the Class .............................. 11

        2. Mr. Hira Will Fairly and Adequately Represent the Class' Interests .............. 12

        3. This Court Should Approve Mr. Hira's Choice of Counsel ............................ 13

IV. CONCLUSION .................................................................................................................. 13

## TABLE OF AUTHORITIES

**Cases**            **Pages**

*Baughman v. Pall Corp.*,
  250 F.R.D. 121 (E.D.N.Y. 2008) .................................................................................................. 7

*Faig v. Bioscrip, Inc.*,
  No. 13-cv-6922, 2013 WL 6705045 (S.D.N.Y. Dec. 19, 2013) ................................................... 7

*In re Bear Stearns Co., Inc. Sec., Deriv., & ERISA Litig.*,
  No. 08 M.D.L. 1963, 2009 WL 50132 (S.D.N.Y. Jan. 5, 2009) .................................................. 2

*In re Deutsche Bank Aktiengesellschaft Sec. Litig.*,
  No. 16cv03495, 2016 WL 5867497 (S.D.N.Y. Oct. 4, 2016) ........................................... 11, 13

*In re Drexel Burnham Lambert*,
  960 F.2d 285 (2d Cir. 1992) ...................................................................................................... 12

*Indergit v. Rite Aid Corp.*,
  293 F.R.D. 632 (S.D.N.Y. 2013) ............................................................................................... 12

*Johnson v. Celotex Corp.*,
  899 F.2d 1281 (2d Cir. 1990) ..................................................................................................... 7

*Kaplan v. Gelfond*,
  240 F.R.D. 88 (S.D.N.Y. 2007) ............................................................................................ 7, 8

*Logan v. QRx Pharma Ltd.*,
  No. 15 CIV. 4868, 2015 WL 5334024 (S.D.N.Y. Sept. 14, 2015) ............................................ 12

*Pompano Beach Police & Firefighters' Ret. Sys. v. Comtech Telecomms. Corp.*,
  No. CV 09-3007(SJF)(AKT), 2010 WL 3924862 (E.D.N.Y. Aug. 17, 2010) ............................ 7

**Statutes**

15 U.S.C. § 77k .............................................................................................................................. 2

15 U.S.C. § 77o .............................................................................................................................. 2

15 U.S.C. § 77z-1, *et seq* ........................................................................................................ passim

15 U.S.C. § 78j(b) .......................................................................................................................... 2

15 U.S.C. § 78t(a) .......................................................................................................................... 2

15 U.S.C. § 78u-4, *et seq.* ................................................................................................... passim

**Rules**

Fed. R. Civ. P. 23 .............................................................................................................................. 9

Fed. R. Civ. P. 23(a) ................................................................................................................ 10, 11

Fed. R. Civ. P. 23(a)(4) ................................................................................................................. 11

Putative class member Amrik Hira ("Mr. Hira"), by his counsel, respectfully submits this Memorandum of Law pursuant to the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), and the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77z-1(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for entry of an order: (i) consolidating the above-captioned related actions (the "Related Actions"); (ii) appointing Mr. Hira as lead plaintiff pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B) and 77z-1(a)(3)(B); (ii) approving Mr. Hira's selection of the law firm of Kaplan Fox & Kilsheimer LLP ("Kaplan Fox") to serve as Lead Counsel under 15 U.S.C. §§ 78u-4(a)(3)(B)(v) and 77z-1(a)(3)(B)(v); and (iii) granting such other and further relief as the Court may deem just and proper.

Mr. Hira believes that he has the largest financial interest in the outcome of this litigation and is thus presumptively entitled to be appointed Lead Plaintiff and that his choice of counsel should be approved. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb).

## I.     INTRODUCTION

Presently pending in this District are at least two securities fraud class actions and at least two additional securities fraud actions are pending in the United States District Court for the Eastern District of New York.[1] These actions are brought against Luckin Coffee Inc. ("Luckin"),

---

[1] The first action filed in this District is styled *Cohen v. Luckin Coffee Inc. et al.,* 20-cv-01293-LJL and was filed on February 13, 2020, alleging a class period of November 13, 2019 through January 31, 2020 (the "*Cohen* Action"). The second action filed in this District is styled *Shek v. Luckin Coffee Inc. et al.,* 20-cv-02977-NBR and was filed on April 10, 2020, alleging a class period of May 17, 2019 through January 31, 2020 (the "*Shek* Action"). The first action filed in the Eastern District of New York is styled *Sterckx v. Luckin Coffee Inc. et al.,* 20-cv-01677-KAM-VMS (the "*Sterckx* Action"), which was filed on April 2, 2020 and alleges a class period of May 17, 2019 through April 2, 2020. The second action filed in the Eastern District of New York is styled *Gopu and Gopu v. Luckin Coffee Inc. et al.,* 20-cv-01747-EK-SJB (the "*Gopu* Action"), which was filed on April 8, 2020 and alleges a class period of May 17, 2019 through April 6, 2020. Contemporaneous with this filing, Mr. Hira will move for appointment as Lead Plaintiff in the Eastern District of New York.

1

certain officers and/or directors of the Company, and the underwriters of the Company's May 2019 initial public offering ("IPO") and January 2020 secondary offering (the "Secondary Offering") (the "Defendants"), alleging violations of Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder, and Sections 11 and 15 of the Securities Act, 15 U.S.C. §§ 77k and 77o, in connection with statements made by the Defendants during the period March 17, 2019 through April 6, 2020, both dates inclusive (the "Class Period").[2]

As a preliminary matter, the Related Actions should be consolidated because they involve "a common question of law or fact." Fed. R. Civ. P. 42(a) ("Rule 42(a)"); § III.A., *infra*.

Once the Related Actions are consolidated, pursuant to the PSLRA this Court must appoint the member or members of the class "most capable of adequately representing the interests of class members" to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i); 15 U.S.C. § 77z-1(a)(3)(B)(i). Mr. Hira believes he is entitled to appointment as Lead Plaintiff as the movant with the largest financial interest that otherwise meets the applicable requirements of Rule 23 of the Federal Rules of Civil Procedure.

Further, Mr. Hira fully understands the lead plaintiff's obligations under the PSLRA and is willing and able to undertake the responsibilities of a lead plaintiff to guarantee vigorous

---

[2]   The Class Period as defined herein is the longest possible class period of the *Cohen*, *Shek*, *Sterckx* and *Gopu* actions. *See*, *e.g.*, *In re Bear Stearns Co., Inc. Sec., Deriv., & ERISA Litig.*, No. 08 M.D.L. 1963, 2009 WL 50132, at *8 (S.D.N.Y. Jan. 5, 2009) (noting that when initial complaints allege multiple class periods, "the lead plaintiff analysis should utilize the most inclusive class period because it encompasses more potential class members") (citation omitted). As set forth herein, after the filing of the *Cohen* Action, on April 2, 2020 the Company announced that a special committee of the Board of Directors was overseeing an internal investigation that had already uncovered millions of dollars in fabricated sales. Following this Company admission and disclosure, Luckin's American Depositary Shares ("ADSs") fell $19.80 per share, or 75.6%, on April 2, 2020. *See* § II, *infra*.

prosecution of the Related Actions.  *See* Declaration of Frederic S. Fox in Support of the Motion of Mr. Hira for Consolidation of Related Actions, Appointment as Lead Plaintiff and Approval of His Selection of Lead Counsel ("Fox Decl."), dated April 13, 2020, Ex. B attached thereto.

Therefore, Mr. Hira respectfully requests that the Court approve his choice of Kaplan Fox as lead counsel for the Class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) ; 15 U.S.C. § 77z-1(a)(3)(B)(v) ("[T]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class").  Kaplan Fox is a nationally recognized securities class action litigation firm that has recovered billions of dollars in damages for defrauded investors.  *See* Fox Decl., Ex. D.

Accordingly, Mr. Hira respectfully requests that the Court appoint him as lead plaintiff for the Class and approve his selection of lead counsel.

## II.     SUMMARY OF THE ACTION AND PROCEDURAL BACKGROUND

On February 13, 2020, the *Cohen* Action was filed in this District, alleging violations of Sections 10(b) and 20(a) of the Exchange Act on behalf of a class of investors that purchased or otherwise acquired Luckin securities between November 13, 2019 and January 31, 2020.  Also on February 13, 2020, in accordance with 15 U.S.C. § 78u-4(a)(3)(A)(i) of the PSLRA, notice of the Action was published to class members on *Globe Newswire* (the "Notice") advising purchasers of Luckin securities of the existence of a lawsuit against Defendants and the nature of Defendants' statements, omissions and alleged conduct.  *See* Fox Decl., Ex. A.  The Notice further advised class members of their right to move the Court to be appointed Lead Plaintiff until April 13, 2020.

Accordingly, Mr. Hira now moves this Court to be appointed as Lead Plaintiff.

As alleged in the Related Actions, Luckin engages in the retail sale of freshly brewed drinks and pre-made food and beverage items in China, including freshly brewed coffee and non-coffee drinks, and food and beverage items, such as light meals.  (Compl. ¶ 20.[3])

On April 22, 2019, the Company filed a registration statement on Form F-1 with the SEC for the IPO.  *See Shek* Action (ECF No. 1), at Compl. ¶ 43.  On May 17, 2019 the Company filed a prospectus for the IPO on Form 424B and sold approximately 33 million American Depository Shares ("ADSs") at $17 per ADS.  *Id*. ¶ 44.

The Company also conducted the Secondary Offering on or around January 10, 2020.  *Id*. ¶ 1.

According to the Related Actions, throughout the Class Period the Defendants made false or misleading statements or failed to disclose that (i) certain of Luckin's financial performance metrics, including per-store sales, net selling price per item, advertising expenses, and revenue contribution from "other products" were inflated, (ii) Luckin's financial results thus overstated the Company's financial health and were consequently unreliable, and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.  *Id*. ¶ 32.

According to the Related Actions, the truth began to emerge on January 31, 2020 when Muddy Waters published a report alleging the Luckin had fabricated certain of the Company's financial performance metrics, beginning 3Q19.  *Id*. ¶ 33.  The Muddy Waters Report purported to cite "smoking gun evidence," including *inter alia*, thousands of customer receipts, and diligent monitoring of the Company's mobile application metrics, which allegedly showed that, since 3Q19, Luckin had inflated its per-store per-day figures, its net selling price per item, its advertising expenses, and its revenue contribution form "other products."    *Id.*

---

[3]   "Compl., ¶ __" refers to the *Cohen* Action.

Among other things, the Muddy Waters Report stated that Luckin's number of items per-store per-day "was inflated by at least 69% in 2019 3Q and 88% in 2019 4Q, supported by 11,260 hours of store traffic video" recorded by thousands of on-the-ground staff associated with the author, and that the report's "offline tracking results of tracking 981 store-days from 2019 4Q showed 263 items per store per day only," compared to the Company's report of 444 items per store per day in 3Q19 and an estimated 495 items per store per day for 4Q19 based on the Company's guidance for that quarter. *Id.* ¶ 34.

On this news, the price of Luckin's ADSs fell $3.91 per ADS, or 10.74%, to close at $32.49 per ADS on January 31, 2020. *Id.* ¶ 38.

According to the Related Actions, in response to the Muddy Waters Report, Luckin denied all of the claims therein. *Id.* ¶ 39.

Then, on April 2, 2020, Luckin disclosed that an internal investigation had found that millions of dollars in sales were fabricated. Specifically, Luckin issued a press release on April 2, announcing that "the Company's Board of Directors (the "Board") has formed a special committee (the "Special Committee") to oversee an internal investigation into certain issues raised to the Board's attention during the audit of the consolidated financial states for the fiscal year ended December 31, 2019 (the "Internal Investigation"). *See Sterckx* Action (ECF No. 1), at Compl. ¶ 65. Among other things, the April 2, 2020 press release states as follows:

> **The Special Committee today brought to the attention of the Board information indicating that, beginning in the second quarter of 2019, Mr. Jian Liu, the chief operating officer and a director of the Company, and several employees reporting to him, had engaged in certain misconduct, including fabricating certain transactions.** The Special Committee recommended certain interim remedial measures, including the suspension of Mr. Jian Liu and such employees implicated in the misconduct and the suspension and termination of contracts and dealings with the parties involved in the identified fabricated transactions. The Board accepted the Special Committee's recommendations and implemented them with respect to the currently identified individuals and parties involved in the fabricated transactions. The

Company will take all appropriate actions, including legal actions, against the individuals responsible for the misconduct.

**The information identified at this preliminary stage of the Internal Investigation indicates that the aggregate sales amount associated with the fabricated transactions from the second quarter of 2019 to the fourth quarter of 2019 amount to around RMB2.2 billion. Certain costs and expenses were also substantially inflated by fabricated transactions during this period.** The above figure has not been independently verified by the Special Committee, its advisors or the Company's independent auditor, and is subject to change as the Internal Investigation proceeds. The Company is assessing the overall financial impact of the misconduct on its financial statements. As a result, **investors should no longer rely upon the Company's previous financial statements and earning releases for the nine months ended September 30, 2019 and the two quarters starting April 1, 2019 and ended September 30, 2019,** including the prior guidance on net revenues from products for the fourth quarter of 2019, and other communications relating to these consolidated financial statements. The investigation is ongoing and the Company will continue to assess its previously published financials and other potential adjustments. [Emphasis added.]  *Id.*

On this news, Luckin ADSs plummeted $19.80 per share, about 75.6%, to close at $6.40 per ADS on April 2, 2020.  *Id.* ¶ 66.

On April 6, 2020, Goldman Sachs further explained that an entity controlled by Defendant Lu defaulted on a $518 million margin loan facility and a group of lenders was putting 76.3 million of the Company's ADSs—pledged as collateral for the loan by Defendants Lu and Zhiya—up for sale, with Goldman Sachs acting as the "disposal agent." In other words, while the Company's shares were artificially inflated by and through Defendants' misrepresentations, Defendants Lu and Zhiya cashed out over 76 million shares to act as collateral for personal loans. *See Gopu* Action (ECF No. 1), at Compl. ¶ 138.

On April 6, 2020, Luckin's ADSs declined by $0.99 per share, or 18.4%, to fall to their lowest-ever price of $4.39 per share at close on April 6, 2013.  *Id.* ¶ 139.

6

On April 7, 2020, trading of Luckin shares was halted. As of the filing of this Motion by Mr. Hira the trading halt has not been lifted.[4]

## III. ARGUMENT

### A. The Related Actions Should Be Consolidated

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this title [] has been filed," courts shall appoint a lead plaintiff "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii); 15 U.S.C. § 77z-1(a)(3)(A)(ii); *see also Faig v. Bioscrip, Inc.*, No. 13-cv-6922, 2013 WL 6705045, at *1 (S.D.N.Y. Dec. 19, 2013) ("The Court must decide whether to consolidate the actions before deciding on the competing motions for appointment as lead plaintiff."). There are at least two related securities class actions pending in this District on behalf of investors who purchased Luckin securities during the Class Period at artificially inflated prices. *See* § I, *supra.*

Under Rule 42(a), consolidation is appropriate where the actions involve common questions of law or fact. *See Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007); *Pompano Beach Police & Firefighters' Ret. Sys. v. Comtech Telecomms. Corp.*, No. CV 09-3007(SJF)(AKT), 2010 WL 3924862, at *2 (E.D.N.Y. Aug. 17, 2010); and *Baughman v. Pall Corp.*, 250 F.R.D. 121, 124 (E.D.N.Y. 2008). The Court has "broad discretion to determine whether consolidation is appropriate" under Rule 42(a). *Bioscrip*, 2013 WL 6705045, at *1 (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)). Courts have recognized that class action shareholder suits are well-suited for consolidation because unification conserves judicial resources, expedites

---

[4] On April 7, 2020, trading in Luckin's stock was halted at 9:15:25 Eastern Time by the Nasdaq Stock Market for "news pending" at a last sale price of $4.39. Subsequently, on April 9, 2020, the Nasdaq Stock Market announced that the trading halt status was changed to "additional information requested" from the Company. https://www.globenewswire.com/news-release/2020/04/09/2014519/0/en/Nasdaq-Halts-Luckin-Coffee-Inc.html.

pretrial proceedings, reduces case duplication, and lessens the confusion and delay that may result from prosecuting related class action cases separately. *See*, *e.g.*, *Kaplan*, 240 F.R.D. at 92 (consolidating securities class actions with common allegations noting "the well[-]recognized principle that the consolidation of stockholders' suits often benefits both the courts and the parties by expediting pretrial proceedings, avoiding duplication of discovery, and minimizing costs") (citation omitted).

The Related Actions concern the same or similar parties, arise out of the same or similar courses of misconduct during substantially similar class periods, and involve substantially similar alleged issues of fact and law. Because consolidation will promote judicial efficiency and conserve the resources of the Class and all other parties, consolidation is appropriate pursuant to Rule 42(a), and the Court should grant the motion for consolidation of the Related Actions.

### B. The PSLRA Standard for Appointing Lead Plaintiff

The PSLRA sets forth the procedure for the selection of a lead plaintiff in "each private action arising under [the Exchange Act and/or the Securities Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§ 78u-4(a)(1) and 77z-1(a)(1); 15 U.S.C. §§ 78u-4(3)(B)(i) and 77z-1(a)(3)(B)(i). Specifically, within 20 days after the date on which a class action is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class –

> (I) of the pendency of the action, the claims asserted therein, and the purported class period; and
> (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i); 15 U.S.C. § 77z-1(a)(3)(A)(i).

Further, the PSLRA directs the Court to consider any motions by plaintiffs or purported class members to serve as Lead Plaintiff in response to any such notice within 90 days after the date of publication of the notice, or as soon as practicable after the Court decides any pending motion to consolidate any actions asserting substantially the same claim or claims.  15 U.S.C. § 78u-4(a)(3)(B) ; 15 U.S.C. § 77z-1(a)(3)(B).

Under the relevant sections of the Exchange Act, the Court "shall" appoint the "most adequate plaintiff," and is to presume that plaintiff is the person which:

>   (aa)   has either filed the complaint or made a motion in response to a notice . . .;
>   (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and
>   (cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ; 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I).

### C.   Mr. Hira Is the "Most Adequate Plaintiff"

Mr. Hira respectfully submits that he is the "most adequate plaintiff" because he has complied with the PSLRA procedural requirements, holds the largest financial interest of any movant, and satisfies Rule 23's typicality and adequacy requirements.  In addition, Mr. Hira has duly signed and filed a certification stating that it is willing to serve as the representative party on behalf of the class.  *See* Fox Decl., Ex. B.  Finally, Mr. Hira has selected and retained counsel experienced in the prosecution of securities class actions to represent the class. *See id.*, Ex. D (Kaplan Fox Firm Resume).  Accordingly, Mr. Hira satisfies the PSLRA's filing requirements for seeking appointment as lead plaintiff and, therefore should be appointed Lead Plaintiff.

#### 1.   Mr. Hira Has Satisfied the PSLRA's Procedural Requirements

The *Cohen* Action was filed on February 13, 2020 and Notice was published over the *Globe Newswire* national wire service the same day.  *See id.*, Ex. A.  Accordingly, the time period in

9

which class members may move to be appointed lead plaintiff in this case expires on April 13, 2020.  *See* 15 U.S.C. § 78u-4(a)(3)(A); 15 U.S.C. § 77z-1(a)(3)(A).  Pursuant to the PSLRA's provisions, and within the requisite time frame after publication of the required notice, Mr. Hira timely moved this Court to be appointed lead plaintiff on behalf of all members of the class.

### 2. Mr. Hira Has the Largest Financial Interest in the Relief Sought by the Class

Under the relevant sections of the Exchange Act, a rebuttable presumption exists whereby the plaintiff with the largest financial interest in the litigation and who otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure is presumed to be the most adequate plaintiff to lead the action.  15 U.S.C. § 78u-4(a)(3)(B)(iii); 15 U.S.C. § 77z-1(a)(3)(B)(iii).  Here, Mr. Hira suffered substantial losses of approximately $1,076,514 as a result of purchasing 40,000 net shares and expending a net amount of $1,252,114 to purchase Luckin securities artificially inflated during the Class Period.  *See* Fox Decl., Exs. B and C.[5]  Mr. Hira is not aware of any other movant with a larger financial interest and believes he has the largest financial interest of any lead plaintiff movant.  Therefore, Mr. Hira believes he is presumptively entitled to appointment as the Lead Plaintiff.

### D. Mr. Hira Is Qualified Under Rule 23

The PSLRA provides that the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(cc).  Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;

---

[5] Assuming a retained value of zero since Luckin's shares have not traded in days, Mr. Hira's losses are $1,252,114.  *See* Fox Decl., Ex. C.

      (3)      the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

      (4)      the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representatives. *See In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, No. 16cv03495, 2016 WL 5867497, at *4 (S.D.N.Y. Oct. 4, 2016) ("For the purposes of appointment as lead plaintiff pursuant to the PSLRA, however, 'the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.'") (citation omitted). Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a) and defer examination of the remaining requirements until the lead plaintiff moves for class certification. As detailed below, Mr. Hira satisfies the typicality and adequacy requirements of Rule 23(a), thereby justifying his appointment as Lead Plaintiff for the Action.

### 1. Mr. Hira's Claims Are Typical of the Claims of the Class

The typicality requirement of Rule 23(a) is satisfied when (1) the claims of the proposed lead plaintiff arise from the same course of conduct that gives rise to the other purported class members' claims, (2) the claims are based on the same legal theory, and (3) the purported class members and proposed lead plaintiff were injured by the same conduct. *See, e.g.*, *In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, 2016 WL 5867497, at *5 ("The typicality requirement is satisfied if each class member's claim 'arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'") (internal citations omitted).

The claims asserted by Mr. Hira are based on the same legal theory and arise out of the same course of events as the other purported class members' claims. Mr. Hira purchased shares of Luckin securities, as did each member of the proposed class, at prices artificially inflated by Defendants' false and misleading statements and was damaged thereby. *Logan v. QRx Pharma Ltd.*, No. 15 CIV. 4868, 2015 WL 5334024, at *3 (S.D.N.Y. Sept. 14, 2015) (finding the typicality requirement met where movants' claims and injuries arose from the same conduct from which the other class members' claims and injuries arose). Thus, Mr. Hira satisfies the typicality requirement of Rule 23(a).

### 2. Mr. Hira Will Fairly and Adequately Represent the Class' Interests

Under Rule 23(a)(4) of the Federal Rules of Civil Procedure, the representative party must "fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). A lead plaintiff is adequate where it has retained counsel that is "qualified, experienced and generally able to conduct the litigation" and does not have interests that are "antagonistic" to the class that it seeks to represent. *Indergit v. Rite Aid Corp.*, 293 F.R.D. 632, 654 (S.D.N.Y. 2013) (citing *In re Drexel Burnham Lambert*, 960 F.2d 285, 291 (2d Cir. 1992)). Here, Mr. Hira's interests are clearly aligned with the members of the proposed class, and there is no evidence of any antagonism between Mr. Hira's interests and those of the class. As detailed above, Mr. Hira's claims raise similar questions of law and fact as claims of the members of the class, and Mr. Hira's claims are typical of the members of the class.

Further, Mr. Hira has demonstrated his adequacy and willingness to serve as and assume the responsibilities of a lead plaintiff. *See* Fox Decl., Ex. B. Having suffered substantial losses, Mr. Hira will be a zealous advocate on behalf of the class. In addition, Mr. Hira has selected Kaplan Fox – counsel highly experienced in prosecuting securities class actions – to represent him.

*See* Fox Decl., Ex. D.  Thus, the close alignment of interests between Mr. Hira and other class members, and Mr. Hira's strong desire to prosecute the Action on behalf of the class, provide ample reason to grant Mr. Hira's motion for appointment as Lead Plaintiff in the Action. Accordingly, Mr. Hira satisfies the prerequisites for appointment as Lead Plaintiff pursuant to the Exchange Act.

### 3. This Court Should Approve Mr. Hira's Choice of Counsel

The Exchange Act and the Securities Act vest authority in the lead plaintiff to select and retain lead counsel, subject only to court approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); 15 U.S.C. § 77z-1(a)(3)(B)(v); *see also In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, 2016 WL 5867497, at *5 ("There is a 'strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection.'") (citations omitted).  Mr. Hira has retained Kaplan Fox to file moving papers on behalf of Mr. Hira seeking appointment as Lead Plaintiff and to serve as lead counsel to pursue this litigation on behalf of itself and the class.  Kaplan Fox possesses extensive experience in the area of securities litigation and has successfully prosecuted numerous securities class actions on behalf of injured investors.  *See* Fox Decl., Ex. D.  Thus, the Court may be assured that, in the event the instant motion is granted, the members of the class will receive the highest caliber of legal representation available.

## IV. CONCLUSION

For all of the foregoing reasons, Mr. Hira respectfully requests that the Court: (1) consolidate the Related Actions, (2) appoint Mr. Hira as Lead Plaintiff; (3) approve Mr. Hira's selection of Kaplan Fox as Lead Counsel; and (4) grant such other relief as the Court may deem just and proper.

Dated:  April 13, 2020                                   Respectfully submitted,

                                               */s/ Frederic S. Fox*
                                               Frederic S. Fox
Donald R. Hall
Jeffrey P. Campisi
Pamela A. Mayer
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714
ffox@kaplanfox.com
dhall@kaplanfox.com
jcampisi@kaplanfox.com
pmayer@kaplanfox.com

*Attorneys for Movant Amrik Hira*

**CERTIFICATE OF SERVICE**

    I, Frederic S. Fox, hereby certify that, on April 13, 2020, I caused the foregoing to be served on all counsel of record by filing the same with the Court using the CM\ECF system which will send electronic notices of the filing to all counsel of record.

                                    */s/ Frederic S. Fox*
                                    Frederic S. Fox