## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MARTIN COHEN, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | No. 20-cv-01293 (LJL) |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| LUCKIN COFFEE INC., JENNY ZHIYA QIAN, and REINOUT HENDRIK SCHAKEL, | ) ) ) | |
| Defendants. | ) ) | |
| WAI CHUN SHEK, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | No. 20-cv-02977 (NRB) |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| LUCKIN COFFEE INC., JENNY ZHIYA QIAN, CHARLES ZHENGYAO LU, REINOUT HENDRIK SCHAKEL, JINYI GUO, JIAN LIO, HUI LI, ERHAI LIU, CREDIT SUISSE SECURITIES (USA) LLC, MORGAN STANLEY & CO. LLC, CHINA INTERNATIONAL CAPITAL CORP. HONG KONG SECURITIES LTD., HAITONG INT'L SECURITIES CO. LTD., KEYBANC CAPITAL MARKETS INC., AND NEEDHAM & COMPANY, LLC. | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF BOSTON RETIREMENT SYSTEM'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL; AND MOTION FOR CONSOLIDATION

## <u>TABLE OF CONTENTS</u>

I.      PRELIMINARY STATEMENT ................................................................................1

II.     PROCEDURAL BACKGROUND............................................................................2

III.    FACTUAL BACKGROUND ....................................................................................3

IV.     ARGUMENT ............................................................................................................7

        A.  The Actions Should Be Consolidated .................................................................7

        B.  BRS is the "Most Adequate Plaintiff" and Should
            Be Appointed as Lead Plaintiff...........................................................................8

            1.  BRS Has Complied with the PSLRA's Procedural Requirements ...............9

            2.  BRS has the Requisite Financial Interest in the Relief Sought
                by the Class During the Class Period.........................................................10

            3.  BRS Otherwise Satisfies Rule 23 .............................................................10

        C.  The Court Should Approve BRS's Choice of Lead Counsel Pursuant
            to the PSLRA ....................................................................................................12

V.      CONCLUSION.......................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bank of Am. Corp. Sec., Derivative and ERISA Litig.*,
   258 F.R.D. 260 (S.D.N.Y. 2009) ...................................................................................11, 12

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
   252 F.R.D. 188 (S.D.N.Y. 2008) ..............................................................................................7

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)...................................................................................................11

*In re Gentiva Sec. Litig.*,
   281 F.R.D. 108 (E.D.N.Y. 2012) ...........................................................................................10

*Hom v. Vale, S.A.*,
   No. 1:15-cv-9539-GHW, 2016 U.S. Dist. LEXIS 28863 (S.D.N.Y. Mar. 7,
   2016) ......................................................................................................................................10

*Johnson v. Celotex Corp.*,
   899 F.2d 1281 (2d Cir.), *cert. denied*, 498 U.S. 920 (1990)....................................................7

*Kaplan v. Gelfond*,
   240 F.R.D. 88 (S.D.N.Y. 2007) ...............................................................................................7

*Lax v. First Merchants Acceptance Corp.*,
   1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ..........................................................8

*In re Tronox, Inc. Sec. Litig.*,
   262 F.R.D. 338 (S.D.N.Y. 2009) ..............................................................................................7

**Statutes and Other Authorities**

15 U.S.C. §§ 77z-1 et seq ............................................................................................... *passim*

15 U.S.C. §78u-4 et seq. .................................................................................................. *passim*

15 U.S.C. § 77k, the Securities Act ................................................................................1, 2, 4, 12

15 U.S.C. §§78j(b) and 78t(a), the Exchange Act ................................................................1, 2, 8

17 C.F.R. §240.10b(5) .................................................................................................................1

Fed. R. Civ. P 23 ...........................................................................................................1, 9, 10, 11

Fed. R. Civ. P. 42 (a) ..............................................................................................................7, 8

## I.      PRELIMINARY STATEMENT

Presently pending before this Court and the Eastern District of New York are four related securities class action lawsuits filed on behalf of those who purchased or otherwise acquired Luckin Coffee Inc. ("Luckin" or the "Company") securities, including its American Depository Shares ("ADSs") beginning in 2019 which were sold pursuant to two offerings and/or in the open market.  The four complaints assert and allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b(5), and / or  Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k (the "Securities Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §§78u-4 et seq. and 77z-1 et seq, against Luckin and certain of its officers and directors, and/or the underwriters of the Luckin securities offerings at issue.  As summarized herein, Luckin is the subject of a massive wrongdoing by the Company, its insiders and underwriters.

Proposed Lead Plaintiff Boston Retirement System ("BRS") hereby moves this Court for an Order: (i) appointing BRS as Lead Plaintiff pursuant to the PSLRA (15 U.S.C. §§ 77z-1(a)(3)(B), 78u-4(a)(3)(B)); (ii) approving BRS's selection of Chimicles Schwartz Kriner & Donaldson-Smith LLP (the "Chimicles Firm") to serve as Lead Counsel pursuant to the PSLRA; (iii) consolidating the above-captioned Actions; and (iv) granting such other and further relief as the Court may deem just and proper.

This motion is made on the grounds that BRS is the most adequate plaintiff, as defined by the PSLRA, because it possesses the largest known financial interest in this Action, and it otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure in that its claims are typical of the claims of the putative class and that they will fairly and adequately

represent the interests of the class.  BRS purchased over 40,00 ADRs and lost over $1,300,000 in its investment in Luckin due to the alleged fraud and wrongdoing. Accordingly, BRS's motion should be granted.

## II.    PROCEDURAL BACKGROUND

On or about February 13, 2020, the first of the four related actions, *Cohen v. Luckin Coffee Inc. et al*, No. 20-cv-01293 ("*Cohen*"), was filed in this Court. The *Cohen* action asserted claims under the Exchange Act against Luckin and two of its executive officers on behalf of all those who purchased or otherwise acquired Luckin securities between November 13, 2019 and January 31, 2020, inclusive (the "Original Class Period"). Also, on February 13, 2020, the notice of the pendency of the *Cohen* action was published over Globe Newswire setting forth that the deadline for the filing of any lead plaintiff motion is April 13, 2020.  Subsequently, in this Court, the action *Shek v. Luckin Coffee., et al.* No. 20-cv-02977 *("Shek"*) was filed on April 10, 2020, asserting a modified class period of May 17, 2019 and January 31, 2020, inclusive, and adding claims under the Securities Act with respect to two offerings against defendants, including the underwriters for the offerings.

On or about April 2, 2020, *Sterckx v. Luckin Coffee Inc. et al,* No. 20-cv-01677 ("*Sterckx"*) was filed was filed in the U.S. District Court for the Eastern District of New York. The *Sterckx* action asserted claims under the Exchange Act and Securities Act against Luckin, several of its executive officers and directors, and the underwriters for the securities offerings at issue, on behalf of persons or entities who: (1) purchased or otherwise acquired publicly traded Luckin securities from May 17, 2019 through April 2, 2020, inclusive (the "*Sterckx* Class Period"); (2) purchased or otherwise acquired Luckin ADSs in or traceable to the Company's public offering of ADSs conducted on or around May 17, 2019 (the "IPO"); and/or (3) purchased or otherwise acquired

Luckin ADSs in or traceable to the Company's public offering of ADSs conducted on or around January 10, 2020 (the "2020 Offering"). Also, on April 2, 2020, counsel in the *Sterckx* action published a notice of the pendency over ACCESSWIRE setting forth that the deadline for the filing of any lead plaintiff motion is April 13, 2020.

Subsequently, in the U.S. District Court for the Eastern District of New York, the action *Gopu v. Luckin Coffee., et al.* No. 20-cv-01747 *("Gopu")* was filed on April 8, 2020, modifying the *Sterckx* Class Period, to assert a class period of May 17, 2019 through April 6, 2020, inclusive ("Extended Class Period"). Like *Sterckx, Gopu* asserted claims under the Exchange Act and Securities Act on behalf those who purchased or otherwise acquired Luckin ADSs during the Extended Class Period, including in or traceable to the Company's IPO and 2020 Offering, but added those who purchased Senior Convertible Notes in connection with the $400 million Note Offering conducted concurrently with the 2020 Offering.

As described below, and as detailed in the *Sterckx* and *Gopu* Actions, because the *Cohen* complaint was filed while the wrongdoing that was being perpetrated on the Luckin investors was ongoing, and prior to the revelation of the wrongdoing and the extent of the wrongdoing and the harm was experienced by investors, the Original Class Period asserted in *Cohen* excludes investors who were subsequently harmed by defendants' ongoing and continuous fraud and wrongdoing.

## III.   FACTUAL BACKGROUND

Luckin's mission is "to be part of everyone's everyday life, starting with coffee." It touts itself as China's second largest and fastest-growing coffee network. It claims that it uses a technology-driven new retail model, built on mobile apps and store networks, to provide coffee, tea and other products with high quality, high affordability and high convenience to its customers, to fulfill the large unmet demand for brewed coffee in China.

Luckin commenced its operations in October 2017.  Luckin claimed that it was growing at a very rapid pace, expanding its operations exponentially since its founding.  Indeed, Luckin asserted that as of December 31, 2019, it believed it was the largest coffee network in China in terms of number of stores (4,507 self-operated stores) and with over 40 million cumulative transacting customers. On January 8, 2020, Luckin announced its new "unmanned" retail initiatives - Luckin Coffee Express and Luckin Pop MINI, which would provide coffee and non-coffee beverages and pre-made food and beverage items to its customers.

However, shortly after having raised hundreds of millions of dollars from investors, including recently in January 2020, massive wrongdoing at Luckin was exposed, causing millions of dollars in losses to investors.

*The 2019- Initial Public Offering.* In the first half of 2019, Luckin completed its IPO, in which it offered 37,950,000 ADSs at price to the public of US$17 per American depositary share, including 4,950,000 ADSs sold to the IPO underwriters pursuant to their full exercise of the over-allotment option. Luckin received total net proceeds of US$607.2 million after deducting underwriting discounts and commissions and other offering expenses payable.

*The 2020 – Secondary Public Offering and $400 M Convertible Senior Notes Offering.* In January 2020, Luckin held a public offering of ADSs, offering:

(i)     7.2 million ADSs (or 8.28 million if the underwriters exercised their option to purchase additional ADSs in full), and

(ii)    4.8 million ADSs (or 5.52 million if the underwriters exercised their option to purchase additional ADSs in full) by the Selling Shareholder.

Credit Suisse Securities (USA) LLC, Morgan Stanley & Co. LLC, China International Capital Corporation Hong Kong Securities Limited and Haitong International Securities Company Limited acted as the joint book-running managers for the ADS Offering. KeyBanc Capital Markets Inc. and Needham & Company, LLC acted as co-managers. The 2020 offering also included a

4

"Notes Offering" of US$400 million in aggregate principal amount of convertible senior notes due 2025 (the "Notes").

On January 9, 2020, the offering was priced at US$42.00 per ADS. As of January 14, 2020, Company received net proceeds of approximately US$363.6 million from the Primary ADS Offering, and net proceeds of approximately US$388.4 million from the concurrent note offering.

*Muddy Waters Research Report.* On January 31, 2020 Muddy Waters Research ("Muddy Waters") published an anonymous report alleging that Luckin had fabricated certain of the Company's financial performance metrics, beginning in the third quarter of 2019 (the "Muddy Waters Report"). The Muddy Waters Report cited to purported "smoke gun evidence" to support its accusations. On such news, Luckin's ADSs fell $3.91 per share, or 10.74%, to close at $32.29 per share on January 31, 2020. In response to the Muddy Waters Report, Luckin denied all of the claims therein. As noted above, on February 13, 2020 the *Cohen* action was filed.

*Internal, Special Committee Investigation Revealed.* On April 2, 2020, Luckin announced that its Board of Directors (the "Board") had formed a special committee (the "Special Committee") to oversee an internal investigation into certain issues *that were brought to the Board's attention during the audit of the consolidated financial statements for the fiscal year ended December 31, 2019* (the "Internal Investigation"). The Special Committee, it was announced, retained independent advisors, including independent legal advisors and forensic accountants, in connection with the Internal Investigation.

*Fabricated Transactions by Luckin's Chief Operating Officer.* The April 2 announcement also revealed that the Special Committee brought to the attention of the Board information indicating that, beginning in the second quarter of 2019, Mr. Jian Liu, the chief operating officer and a director of the Company, and several employees reporting to him, had

engaged in certain misconduct, including fabricating certain transactions. The Company stated that the information identified at this preliminary stage of the Internal Investigation indicates that the aggregate sales amount associated with the fabricated transactions from the second quarter of 2019 to the fourth quarter of 2019 was over $300 million, and that certain costs and expenses were also substantially inflated by fabricated transactions during this period.

The Company specifically stated that, as a result, *investors should no longer rely upon the Company's previous financial statements and earning releases for the nine months ended September 30, 2019 and the two quarters starting April 1, 2019 and ended September 30, 2019, including the prior guidance on net revenues from products for the fourth quarter of 2019, and other communications relating to these consolidated financial statements*.

**On this news, Luckin ADSs plummeted $19.80 per ADS or approximately 75.6% to close $6.40 per ADS on April 2, 2020.**

From the start of the Extended Class Period, Luckin described itself as one of the fastest growing coffee companies in the People's Republic of China.  At the time of the Company's May 2019 IPO and thereafter, including at the time of Luckin's January 2020 Offering and after the issuance of (and its denial of) the Muddy Rivers Report, investors were repeatedly told that Luckin was achieving record setting revenue growth, and that the Company stores were operating profitably after quarters of reported losses. These strong financial results were, supposedly, the product of management's skills and abilities and the controls and procedures that were purported to exist at the Company and they were expected to continue in the foreseeable near-term.  In sum, as a result of the fraudulent artificial inflation of revenues and underreporting of costs and expenses, among things, the representations made about Luckin to investors and in financial

reports were each materially false and misleading and were known to be false or recklessly disregarded as such.

## IV. ARGUMENT

### A.  The Actions Should Be Consolidated

The above-captioned Actions involve class action claims asserted on behalf of purchasers of Luckin securities including its ADRs and assert similar and overlapping class claims for relief based on the same wrongdoing. Consolidation is appropriate where, as here, there are multiple actions involving common questions of law or fact. *See* Fed. R. Civ. P. 42 (a); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir.), *cert. denied*, 498 U.S. 920 (1990). That test is met here and the Actions should be consolidated.

Where there is more than one action on behalf of a class asserting substantially the same claim or claims, and "any party has sought to consolidate those actions," a court shall not appoint a lead plaintiff until after the court decides the motion to consolidate. 15 U.S.C. §§ 77z-1(a)(3)(B)(ii), 78u-4(a)(3)(B)(ii).

Consolidation is appropriate when the actions before the Court involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same).  "Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation." *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007).

As described above, the *Cohen* and *Shek* Actions involve common questions of law and fact, implicate the Company and its executives, and are based on the same alleged misconduct over

a substantially similar period of time.  Thus, discovery obtained in one will be relevant to the others. Consolidation is appropriate under Rule 42(a) of the Federal Rules of Civil Procedure.

### B.  BRS is the "Most Adequate Plaintiff" and Should Be Appointed as Lead Plaintiff

The PSLRA has established a procedure that governs the appointment of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(1), (a)(3)(B)(i); 15 U.S.C. §§ 77z-1(a)(3)(B).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff.  *See* 15 U.S.C. §78u-4(a)(3)(A)(i).  Notice regarding the pendency of the  Luckin Actions filed in this Court was published on Globe Newswire, a national business-oriented wire service, on February 13, 2020.[1]  *See* Exhibit A1 to the Declaration of Kimberly Donaldson-Smith in Support of Boston Retirement System's Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel, and Motion for Consolidation ("KDS Decl."), filed concurrently herewith.  Within 60 days of publication of the notice, any person or group of persons who are members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action.  *See* 15 U.S.C. §78u-4(a)(3)(A)-(B); §77z-1(a)(3)(A)-(B). The Notice stated that April 13, 2020 was the deadline for the filing of lead plaintiff motions.  Likewise, as noted above, the April 2, 2020 notice published in the *Sterckx* action over

---

[1] Wire services have consistently been recognized as a suitable vehicle for meeting the two statutory requirement that notice be published "in a widely circulated national business-oriented publication or wire service*." See Lax v. First Merchants Acceptance Corp.,* 1997 U.S. Dist. LEXIS 11866 at *2 (N.D. Ill. Aug. 6, 1997).

ACCESSWIRE set forth that the deadline for the filing of any lead plaintiff motion is April 13, 2020. *See* Exhibit A2 to KDS Decl.

Second, the PSLRA provides that, within 90 days of publication of the notice, the court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of class members. *See* 15 U.S.C. §78u-4(a)(3)(B)(i), §77z-1(a)(3)(B)(i).   In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that –
>
> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii); 15 U.S.C. § 77z-1(a)(3)(B)(iii).

BRS meets each of these requirements and should be appointed Lead Plaintiff.

### 1.   *BRS Has Complied with the PSLRA's Procedural Requirements*

The time period in which class members may move to be appointed lead plaintiff under the PSLRA expires on April 13, 2020.  15 U.S.C. §78u-4(a)(3)(A)-(B); §77z-1(a)(3)(A)-(B).  BRS, thus, timely moves this Court to be appointed as lead plaintiff.  Further, a BRS representative signed and filed the required Certification stating that, among other things, BRS is willing to serve as the representative party on behalf of the class.  *See* KDS Decl., Ex. B.  Finally, as discussed below, BRS has selected and retained competent counsel to represent them and the class. Accordingly, BRS is eligible to have its motion considered by the Court.

### 2. *BRS has the Requisite Financial Interest in the Relief Sought by the Class During the Class Period*

During the Extended Class Period, from May 17, 2019 through April 6, 2020, BRS purchased 41,850 of the Company's ADRs and incurred a loss of approximately $1,319,000 as a result of defendants' alleged wrongdoing. *See* KDS Decl., Exs. B-C. Since defendants' fraud was ongoing and continued subsequent to the filing of *Cohen*, the Extended Class Period alleged in *Sterckx* and *Gopu*, rather than the Original Class Period alleged in *Cohen*, should be utilized for purposes of determining the lead plaintiff movants' financial interest in the relief sought under the PSLRA. *See Hom v. Vale, S.A.*, No. 1:15-cv-9539-GHW, 2016 U.S. Dist. LEXIS 28863, at *12-13 (S.D.N.Y. Mar. 7, 2016) (Use of the longer, more inclusive class period is proper for purposes of a lead plaintiff motion because it encompasses more potential class members and damages, and republication or extension of a PSLRA filing deadline to account for a longer class period than that identified in the first-filed PSLRA notice is not necessary because "nothing in the PSLRA limits the class period to the period identified in the first notice."); *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113 (E.D.N.Y. 2012)(for the purpose of determining a lead plaintiff, use of the longer, most inclusive class period is proper, as it encompasses more potential class members)(collecting cases). To the best of its counsel's knowledge, as of this time, there is no other named plaintiff or lead plaintiff applicant with a larger financial interest. Therefore, BRS satisfies the PSLRA's prerequisite of having the largest financial interest.

### 3. *BRS Otherwise Satisfies Rule 23*

In addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I), §77z-1(a)(3)(B)(iii)(I). "[A]t this stage a proposed lead plaintiff need only make a 'preliminary showing' that it will satisfy the typicality

and adequacy requirements of Rule 23." *In re Bank of Am. Corp. Sec., Derivative and ERISA Litig.*, 258 F.R.D. 260, 268 (S.D.N.Y. 2009) (citation omitted).

The threshold typicality determination is satisfied if the claims made by the proposed lead plaintiff "'arise[] from the same course of events' and [when the proposed lead plaintiff] make[s] 'similar legal arguments to prove the defendant[s'] liability' as the other putative class members." *Id.* at 269 (citation omitted).  With respect to the adequacy requirement, Rule 23 requires that: (i) class counsel be qualified, experienced, and generally able to conduct the litigation; (ii) there be no conflict between the proposed lead plaintiff and the members of the class; and (iii) the proposed lead plaintiff have a sufficient interest in the outcome of the case to ensure vigorous advocacy. *Id.* at 270.

Here, BRS purchased Luckin ADRs during the Extended Class Period in reliance on defendants' allegedly materially false and misleading statements and omissions and suffered damages resulting from the artificially inflated price of Luckin ADRs.

In addition, BRS, an institutional investor, has evidenced its willingness and ability to serve as lead plaintiff in this case.  *See* KDS Decl., Ex. B.  Further, BRS is not aware of any conflicts between it and the putative class members.

Indeed, as an institutional investor, BRS is precisely the type of investor whose participation in securities class actions Congress sought to encourage through the enactment of the PSLRA: "Both the Conference Committee Report and the Senate Report state that the purpose of the legislation was to encourage institutional investors to serve as lead plaintiff, predicting that their involvement would significantly benefit absent class members." *In re Cendant Corp. Litig.,* 264 F.3d 201, 273 (3d Cir. 2001); *see also Bank of Am.*, 258 F.R.D. at 270 (recognizing that "large public pension funds . . . are . . . the type of sophisticated institutional investors envisioned by

11

Congress in the enactment of the PSLRA"). Finally, as discussed in greater detail below, BRS has retained the Chimicles Firm as counsel, a law firm with vast experience prosecuting securities and investor rights class actions.

    Accordingly, BRS has made a preliminary showing that it satisfies the typicality and adequacy requirements for the purposes of its motion.

### C. The Court Should Approve BRS's Choice of Lead Counsel Pursuant to the PSLRA.

The proposed lead plaintiff shall, subject to court approval, select and retain counsel to represent the class it seeks to represent. *See* 15 U.S.C. §78u-4(a)(3)(B)(v), §77z-1(a)(3)(B)(v). In this regard, BRS has selected the Chimicles Firm, a firm with substantial experience in the prosecution of shareholder and securities class actions, to serve as Lead Counsel.

As detailed in the Chimicles Firm resume, it has held lead counsel roles in numerous complex securities cases. *See* Ex. D to the KDS Decl. As lead and co-lead counsel in shareholder class actions and derivative actions filed in federal and state courts, the Chimicles Firm has achieved substantial monetary recoveries in actions filed on behalf of investors who have been harmed by corporate misconduct. *See id.* For example, the Chimicles Firm served as lead or co-lead counsel in: *W2007 Grace Acquisition I, Inc., Preferred Stockholder Litigation,* Civ. No. 2:13-cv-2777 (W.D. Tenn.) (a settlement valued at over $76 million for current and former W2007 Grace preferred stockholders); *Westmoreland County v. Inventure Foods,* Case No. CV2016-002718 (Super. Ct. Ariz.)(a Section 11 action for which the Chimicles Firm recovered over 35% of damages for investors, which percentage even assumes all offering shares were damaged); *In re: Starz Shareholder Litigation,* Cons. C.A. No. 12584-VCG (Del. Ct. Ch.)(settlement provided for a $92.5 million payment to former shareholders of Starz); *In re CNL Hotels & Resorts Inc. Federal Securities Litigation*, No. 04-cv-1231 (M.D. Fla) (a $35 million cash settlement fund and

$225 million in savings for the CNL shareholders.); *City of St. Clair Shores General Employees Retirement System v. Inland Western Retail Real Estate Trust, Inc.*, No. 07-cv-6174 (N.D. Ill.) (secured $90 million in savings for the Inland shareholders), and *In re Wells Real Estate Investment Trust, Inc. Securities Litigation*, No. 1:07-cv-00862/1:07-cv-02660 (N.D. Ga.) (a $7 million cash settlement fund for the Wells investors).

Furthermore, while trials in shareholder class actions are rare, the Chimicles Firm, and specifically Mr. Chimicles and Ms. Donaldson-Smith, served as lead trial counsel in one of the first, and largest sustained, plaintiffs' verdicts in a securities class action tried after the enactment of the PSRLA in *In re Real Estate Associates Limited Partnership Litigation*, No. 98-cv-7035 (C.D. Cal.). The *Real Estate Associates* case culminated in a six-week jury trial that resulted in a landmark $184 million plaintiffs' verdict, which is one of the largest, sustained jury verdicts since the passage of the PSLRA. The *Real Estate Associates* judgment was settled for $83 million, which represented full recovery for the class (and an amount in excess of the damages calculated by plaintiffs' expert). In approving the settlement, Judge Dean D. Pregerson of stated: "I think when you go through the factors, the exceptional result achieved for the class, I would agree that verdict and settlement certainly qualify as an exceptional result."

Finally, appointing the Chimicles Firm as Lead Counsel will ensure an efficient and cost-effective representation of the class.

## IV. CONCLUSION

BRS has satisfied the standards for consolidation, and each of the PSLRA's requirements for appointment as lead plaintiff and approval of its selection of counsel. Accordingly, BRS respectfully requests that the Court grant its motion.

DATED:  April 13, 2020

By:      */s/ Leslie A. Blau*

Leslie A. Blau
Paul D. Malmfeldt (to be admitted *pro hac vice*)
**BLAU & MALMFELDT**
566 W. Adams St., Suite 600
Chicago, IL 60661
Telephone: (312) 443-1600
Fax: (312) 443-1665

Nicholas E. Chimicles (to be admitted *pro hac vice*)
Kimberly M. Donaldson Smith (to be admitted *pro hac vice*)
**CHIMICLES SCHWARTZ KRINER**
**& DONALDSON-SMITH LLP**
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Fax: (610) 649-3633

***Attorneys for Movant***

14