UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARTIN COHEN, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  v.<br><br>LUCKIN COFFEE INC., JENNY ZHIYA QIAN, and REINOUT HENDRIK SCHAKEL,<br><br>    Defendants. | Civil Action No. 1:20-cv-01293-LJL<br><br>CLASS ACTION |
| WAI CHUN SHEK, Individually And On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>LUCKIN COFFEE INC., JENNY ZHIYA QIAN, CHARLES ZHENGYAO LU, JIAN LIU, REINOUT HENDRIK SCHAKEL, HUI LI, JINYI GUO, ERHAI LIU, CREDIT SUISSE SECURITIES (USA) LLC, MORGAN STANLEY & CO. LLC, CHINA INTERNATIONAL CAPITAL CORP. HONG KONG SECURITIES LTD., HAITONG INT'L SECURITIES CO. LTD., KEYBANC CAPITAL MARKETS INC., AND NEEDHAM & COMPANY, LLC<br><br>    Defendants. | Civil Action No. 1:20-cv-02977<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF CHAILE STEINBERG'S MOTION FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL**

Chaile Steinberg ("Movant") respectfully submits this memorandum of law in support of her motion pursuant to the Federal Rules of Civil Procedure and to Section 27 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77z-1(a)(3)(B), and Section 21D of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA")[1] for an Order: (1) consolidating the related actions; (2) appointing Movant as Lead Plaintiff; (3) approving Movant's selection of Safirstein Metcalf LLP ("Safirstein Metcalf") as Lead Counsel pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v); and (4) granting such other relief as the Court may deem to be just and proper (the "Motion").

**I.     PRELIMINARY STATEMENT**

This is a class action on behalf of persons who purchased or otherwise acquired the securities of Luckin Coffee Inc. ("Luckin" or the "Company") between May 17, 2019 and April 6, 2020, inclusive (the "Class Period") and who were damaged thereby; including those who purchased shares in connection with the Company's May 17, 2019 Initial Public Offering ("IPO") and in its January 10, 2020 Secondary Offering, or in connection with Defendants' sale of $400 million of Senior Convertible Notes, concurrently with the January 2020 Secondary Offering.[2]

Pursuant to the PSLRA, the person or group with the largest financial interest in the relief sought by the class who satisfies the requirements of Rule 23 of the Federal Rules of Civil

---

[1] The Lead Plaintiff provisions of the Exchange Act and the Securities Act are identical.
[2] Four Related Actions were filed in this matter. This Class definition is based upon the most expansive definition of these Related Actions. Differences between the Related Actions are described in more detail in the Procedural Background Section.

Procedure is presumed to be the "most adequate plaintiff" – the plaintiff most capable of adequately representing the interests of class members. The PSLRA provides that the Court shall appoint the most adequate plaintiff as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i), 77z-1(a)(3)(B)(i).

Movant believes that she is the "most adequate plaintiff" as defined by the PSLRA and should be appointed as lead plaintiff based on her financial losses suffered as a result of defendants' wrongful conduct as alleged in this action. In addition, for purposes of this motion, Movant satisfies the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure, as her claims are typical of other class members' claims, and she is committed to fairly and adequately representing the interests of the class. Thus, pursuant to the PSLRA's lead plaintiff provision, Movant respectfully submits that she is presumptively the most adequate plaintiff and should be appointed as lead plaintiff for the class.

Additionally, Movant's selection of Safirstein Metcalf LLP as Lead Counsel for the Class should be approved because the firm's attorneys have substantial expertise in class action litigation and the experience and resources to efficiently prosecute this action.

**II.     FACTUAL BACKGROUND**

Founded in 2017 and based in Xiamen, the People's Republic of China, according to the Company's profile, Luckin purports to engage in the retail sale of freshly brewed drinks, including freshly brewed coffee and non-coffee drinks; and food and beverage items, such as light meals. The Company operates Pick-Up stores, Relax stores, and Delivery kitchens under the Luckin brand, as well as Luckin mobile app throughout the People's Republic of China. As of March 31, 2019, the Company reportedly operated 2,370 stores; including 2,163 Pick-Up stores, 109 Relax stores, and 98 Delivery kitchens, in 28 cities.

At all times during the Class Period, Defendants consistently stated they had been able to develop adequate controls and procedures to manage growth while at the same time, being on a path to profitability. Defendants' representations that Luckin was on the verge of and had ultimately reached profitability at the store-level was critically important to investors, and such statements had a material impact on the market and caused a huge increase in the price of the Company's shares – including a more than 100% increase in the price of Luckin ADS shares on the NASDAQ during the short period from early-November 2019 to mid-January 2020. Throughout the Class Period, Luckin described itself as one of the fastest growing coffee companies in the People's Republic of China.

As purported evidence of the foregoing, at the time of the Company's May 2019 IPO and thereafter throughout the remainder of the Class Period, including at the time of Luckin's January 2020 Secondary Offering and the Concurrent $400 million Note Offering, Defendants repeatedly stated that Luckin was achieving record setting revenue growth, and that the Company stores were operating profitably after quarters of reported losses. According to Defendants, these strong financial results were the product of Defendants' management skills and abilities and the controls and procedures that were purported to exist at the Company at that time and throughout the Class Period – and they were expected to continue in the foreseeable near-term so as to allow Luckin to achieve guidance sponsored and/or endorsed by Defendants.

Unbeknownst to investors, throughout the Class Period, Luckin was suffering from a host of undisclosed adverse factors which were negatively impacting its business and that would foreseeably cause it to report declining financial results – materially less than the market expectations Defendants had caused and cultivated.

On January 31, 2020, Muddy Waters Research ("Muddy Waters") published an anonymous report alleging that Luckin had fabricated certain of the Company's financial performance metrics, beginning in the third quarter of 2019 ("3Q19") (the "Muddy Waters Report"). The Muddy Waters Report purported to cite "smoking gun evidence," including, *inter alia*, thousands of hours of store video, thousands of customer receipts, and diligent monitoring of the Company's mobile application metrics, which allegedly showed that, since 3Q19, Luckin had inflated its per-store per-day sales figures, its net selling price per item, its advertising expenses, and its revenue contribution from "other products."

On this news, Luckin's American depositary share ("ADS") price fell $3.91 per share, or 10.74%, to close at $32.49 per share on January 31, 2020.

After denying and refuting charges of fraud and accounting manipulation in early-February 2020, the truth about Luckin began to emerge on April 2, 2020 – only days after two new Independent Board members joined the Luckin Board and Audit Committee – at which time Defendants belatedly disclosed that Chief Operating Officer, Defendant Jian Liu, and other employees of the Company, had engaged in a scheme and illegal course of conduct to artificially inflate revenues, such that revenues had been inflated by as much as US$310 million during 2019, and were falsely reported from the inception of 2Q:19, that period commenced April 1, 2019 – at least 6 weeks prior to the May 17, 2019 IPO.

At that time, investors first learned that Defendant Jian Liu had been removed from the Company and that Luckin was operating well below analysts' expectations, and that the Company would likely report a massive loss for the fourth quarter of 2019 to account for as much as $310 million in fraudulent revenue. Investors also learned that the Company could not achieve the guidance for full year 2019 or 2020 previously sponsored and/or endorsed by

Defendants, after Defendants withdrew prior guidance and did not provide investors with revised projections.

Based on the huge disparity between Defendants' prior guidance, the Company's past performance, and the adjustment to results announced by Defendants, on April 2, 2020 Luckin's ADS shares imploded – falling over 80% in the single trading day, from the prior day's close of $26.20 per share to a new 52-week low of $6.40, and then to a close at $5.38 the following trading day – well below the Class Period high of $51.38 per ADS share, on January 17, 2020.

Then, on April 6, 2020, Goldman Sachs & Co. LLC ("Goldman Sachs") announced that an entity controlled by Defendant Lu had defaulted on a $518 million margin loan facility and a group of lenders was putting 76.3 million of the Company's ADS—pledged as collateral for the loan by Defendants Lu and Zhiya—up for sale, with Goldman Sachs acting as the "disposal agent." In other words, Goldman's announcement revealed that while the Company's shares were artificially inflated by and through Defendants' misrepresentations, Defendants Lu and Zhiya cashed out over 76 million shares to act as collateral for personal loans. This revelation eroded even more of the artificial inflation from the value of Luckin's ADS shares, taking them to their lowest-ever price of $4.39 per share at close on April 6, 2013.

### III.    PROCEDURAL BACKGROUND

On February 13, 2020, Martin Cohen filed the initial complaint case against Luckin in this District, *Cohen v. Luckin Coffee Inc. et al*, Case No. 1:20-cv-01293-LJL (the "*Cohen* Action"). On April 2, 2020, an action was filed in the Eastern District of New York making substantially similar allegations, captioned *Sterckx v. Luckin Coffee Inc. et al*, Case No. 1:20-cv-01677 (the "*Sterckx* Action"). The *Sterckx* action lengthened the proposed Class Period to begin at the IPO and end on the April 2 disclosure; added claims under Sections 11 and 15 of the

Securities Act (15 U.S.C. §77k and 15 U.S.C. 77o respectively); and added Underwriter Defendants and Director Defendants. On April 8, 2020, a second related matter *Gopu et al v. Luckin Coffee Inc. et al*, Case No. 1:20-cv-01747 (the "*Gopu* Action") was filed in the Eastern District of New York alleging substantially the same claims (adding violations of Section 12(a)(2) of the Securities Act) and proposed Class Period as the *Sterckx* action (ending it, though, on an April 6 disclosure instead) and adding two additional Director Defendants. On April 10, 2020, another complaint was filed in the Southern District of New York, starting the Class Period on the IPO date and ending the Class Period as of January 31, 2020 similar to the first-filed complaint. A summary of these Related Actions is provided in the following table:

| Case Name | District | Date Filed | Class Period | Claims/Violations | Defendants |
|---|---|---|---|---|---|
| *Cohen v. Luckin Coffee Inc. et al*, 1:20-cv-01293-LJL | SDNY | 2/13/20 | 11/13/19-1/31/20 | Sections 10(b) & 20(a) of the Exchange Act, Rule 10b-5 | Luckin, CEO, and CFO |
| *Sterckx v. Luckin Coffee Inc. et al*, 1:20-cv-01677 | EDNY | 4/2/20 | 5/17/19-4/2/20 | Exchange Act Claims + Sections 11 & 15 of the Securities Act | Luckin, CEO, CFO; Directors; & Underwriters |
| *Gopu et al v. Luckin Coffee Inc. et al*, 1:20-cv-01747 | EDNY | 4/8/20 | 5/17/19-4/6/20 | Exchange Act Claims + Sections 11, 12 & 15 of the Securities Act | Luckin, CEO, CFO; Directors (+2); & Underwriters |
| *Shek v. Luckin Coffee Inc. et al*, 1:20-cv-02977-NRB | SDNY | 4/10/20 | 5/17/19-1/31/20 | Exchange Act Claims + Sections 11 & 15 of the Securities Act | Luckin, CEO, CFO; Directors; & Underwriters |

IV.   **ARGUMENT**

A.   **The Related Actions Should Be Consolidated**

Consolidation pursuant to Federal Rule of Civil Procedure Rule 42(a) is proper when actions involve common questions of law and fact. *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990).

6

Each of the Related Actions presents similar factual and legal issues, as they all involve the same subject matter and present the same legal issues. Each action alleges violations of the Exchange Act and three out of four also allege violations of the Securities Act. Each presents the same or similar theories for recovery, and each is based on the same allegedly wrongful course of conduct. Because these actions arise from the same facts and circumstances and involve the same subject matter, consolidation of these cases under Federal Rule of Civil Procedure 42(a) is appropriate. *See Pipefitters Local No. 636 Defined Ben. Plan v. Bank of America Corp.*, 275 F.R.D. 187, 192 (S.D.N.Y. 2011) (Consolidation is appropriate "if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation."). Here, actions have been filed in both the Eastern and Southern Districts of New York and, at the time of this filing, there were no MDL or transfer motions pending. The presence of the Nasdaq Global Headquarters and Nasdaq MarketSite in the Southern District of New York[3] would favor the application of the SDNY jurisdiction which is also the location of the first-filed complaint (*Cohen*). Although the Class definitions in the EDNY complaints (*Sterckx* and *Gopu*) are more robust than those in the SDNY actions, the discrepancies can be resolved in an amended complaint.

### B.    Movant Should be Appointed Lead Plaintiff

The PSLRA provides the procedure for selecting a lead plaintiff in class actions brought under the federal securities laws. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA

---

[3] 151 W. 42nd Street, New York City, NY, 10036 and 4 Times Square, 43rd and Broadway, New York City, NY, 10036.

..
..

provides a "rebuttable presumption" that the "most adequate plaintiff"—i.e., the plaintiff most capable of adequately representing the interests of the Class—is the class member that:

    (aa) has either filed the complaint or made a motion in response to a notice . . . ;

    (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

    (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The presumption in favor of appointing a movant as lead plaintiff may be rebutted only upon proof "by a purported member of the plaintiff class" that the presumptively most adequate plaintiff:

    (aa) will not fairly and adequately protect the interest of the class; or

    (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, Movant satisfies all of the PSLRA criteria and has complied with all of the PSLRA's requirements to be appointed lead plaintiff. Movant has, to the best of her knowledge, the largest financial interest in this litigation, and meets the relevant requirements of Federal Rule of Civil Procedure 23. In addition, Movant is not aware of any unique defenses Defendants could raise against her that would render her inadequate to represent the Class.

Accordingly, Movant respectfully submits that she should be appointed lead plaintiff. *See Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 397 (S.D.N.Y. 2008).

### 1. Movant Filed a Timely Motion

Movant has made a timely motion in response to a PSLRA early notice. On February 13, 2020, pursuant to Section 21D(a)(3)(A)(I) of the PSLRA, notice was published in connection with this action. *See* Declaration of Elizabeth Metcalf ("Metcalf Dec.") Ex. A. Therefore, Movant had sixty days or until April 13, 2020, to file a motion to be appointed as Lead Plaintiff. As a purchaser of Luckin securities during the Class Period, Movant is a member of the proposed class and has timely filed a motion for appointment as lead plaintiff within sixty days of the notice, in compliance with the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa).

Additionally, as set forth in his PSLRA certification, Movant attests that she has reviewed the complaint, adopts the allegations therein, and is willing to serve as a representative of the class. Metcalf Dec., Ex. B. Accordingly Movant satisfies the first requirement to serve as Lead Plaintiff for the class.

### 2. Movant Has the Largest Financial Interest

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). At the time of this filing, Movant believes that she has the largest financial interest among Class members who filed timely applications for appointment as lead plaintiff and are presumed to be the "most adequate plaintiff."

Movant purchased Luckin securities during the Class Period at prices alleged to be artificially inflated by Defendants' misstatements and omissions and, as a result, suffered financial harm. See Metcalf Decl., Ex. C. To the best of her knowledge, Movant is not aware of any other Class member that has filed a motion for appointment as lead plaintiff who is claiming

a larger financial interest. As such, Movant believes she has the "largest financial interest in the relief sought by the Class," and thus satisfies the second PSLRA requirement to be appointed as lead plaintiff for the Class. *See Varghese*, 589 F. Supp. 2d at 396.

### *3. Movant Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure*

The PSLRA further provides that in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." *See In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001). Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23(a).

In making its determination that a lead plaintiff candidate otherwise satisfies the requirements of Rule 23, "typicality and adequacy of representation are the only provisions [of Rule 23] relevant to the determination." *City of Monroe Employees' Ret. Sys. v. Hartford Fin. Svcs. Group, Inc.* 269 F.R.D. 291, 296 (S.D.N.Y. 2010). At the lead plaintiff stage of the litigation, a movant need only make a preliminary showing that they satisfy Rule 23's typicality and adequacy requirements. *Id*. at 296-97 (*citing In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005); *Kuriakose v. Federal Home Loan Mortg. Co.*, No. 1:08–cv–7281 (JFK), 2008 WL 4974839, at *5 (S.D.N.Y. Nov. 24, 2008).

### a) Movant's Claims Are Typical

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims, and plaintiff's claims are based on the same legal theory. *See Kuriakose*, 2008 WL 4974839, at *4. Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Id*.

Movant's claims are typical of the claims asserted by the proposed Class. Like all members of the Class, Movant alleges that Defendants' material misstatements and omissions concerning Luckin business, operations, and financial prospects violated the federal securities laws. Movant, like all of the members of the Class, purchased Luckin securities in reliance on Defendants' alleged misstatements and omissions and was damaged thereby. Accordingly, Movant's interests and claims are "typical" of the interests and claims of the Class.

### b) Movant Is an Adequate Representative

"The adequacy requirement is satisfied where: (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *City of Monroe*, 269 F.R.D. at 297. Movant has demonstrated her adequacy by retaining competent and experienced counsel with the resources and expertise to efficiently prosecute this action, and her financial losses ensure that they have sufficient incentive to provide vigorous advocacy. See Metcalf Decl., Ex. C. Movant is not aware of any conflict between her claims and those asserted on behalf of the Class.

### C. The Court Should Approve Lead Plaintiff's Choice of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject only to approval of the Court. See 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Cendant Corp.*, 264 F.3d at

274. Thus, the Court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). Here, Movant has retained Safirstein Metcalf LLP as lead counsel to pursue this litigation on her behalf and will retain the firm as the Class's lead counsel in the event she is appointed lead plaintiff. The attorneys of Safirstein Metcalf LLP possess extensive experience in securities litigation and have successfully prosecuted numerous fraud class actions on behalf of injured investors, as reflected by the firm's résumé attached to the Metcalf Declaration as Exhibit D. Thus, the Court may be assured that, by granting Movant's Motion, the Class will receive the highest caliber of legal representation.

## V.   CONCLUSION

For the foregoing reasons, Movant respectfully request that the Court grant her Motion and enter an Order (1) consolidating the Related Actions; (2) appointing Movant as lead plaintiff; (3) approving Movant's selection of Safirstein Metcalf LLP as lead counsel for the class; and (4) granting such other relief as the Court may deem just and proper.

Respectfully submitted,

Dated: April 13, 2020

/s/*Peter Safirstein*
Peter Safirstein
Elizabeth Metcalf
**SAFIRSTEIN METCALF LLP**
The Empire State Building
350 Fifth Avenue, Suite 5960
New York, New York 10118
Telephone: (212) 201-2845
PSafirstein@SafirsteinMetcalf.com
EMetcalf@SafirsteinMetcalf.com

*Counsel for Movant Chaile Steinberg and Proposed Lead Counsel for the Class*

**CERTIFICATE OF SERVICE**

    I hereby certify that on April 13, 2020, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

                                                    */s/ Elizabeth Metcalf*
                                                    Elizabeth Metcalf