**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MARTIN COHEN, Individually and On Behalf of All Others Similarly Situated, | Case No. 1:20-cv-01293-LJL |
| Plaintiff, | <u>CLASS ACTION</u> |
| v. | |
| LUCKIN COFFEE INC., JENNY ZHIYA QIAN, and REINOUT HENDRIK SCHAKEL, | |
| Defendants. | |

*Caption continued on next page.*

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF SJUNDE AP-FONDEN AND LOUISIANA SHERIFFS' PENSION & RELIEF FUND FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF SELECTION OF <u>LEAD COUNSEL, AND CONSOLIDATION OF RELATED ACTIONS</u>**

WAI CHUN SHEK, Individually and On Behalf of All Others Similarly Situated,

Plaintiff,

v.

LUCKIN COFFEE INC., JENNY ZHIYA QIAN, CHARLES ZHENGYAO LU, REINOUT HENDRIK SCHAKEL, JINYI GUO, JIAN LIU, HUI LI, ERHAI LIU, CREDIT SUISSE SECURITIES (USA) LLC, MORGAN STANLEY & CO. LLC, CHINA INTERNATIONAL CAPITAL CORPORATION, HONG KONG SECURITIES LIMITED, HAITONG INTERNATIONAL SECURITIES COMPANY LIMITED, KEYBANC CAPITAL MARKETS INC., AND NEEDHAM & COMPANY, LLC,

Defendants.

Case No. 1:20-cv-02977-NRB

<u>CLASS ACTION</u>

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ............................................................................................ 1

SUMMARY OF THE RELATED ACTIONS ............................................................. 3

ARGUMENT ................................................................................................................. 5

    A.    AP7 and Louisiana Sheriffs Are the Most Adequate Plaintiff ......................... 5

        1.    AP7 and Louisiana Sheriffs's Motion Is Timely ..................................... 5

        2.    AP7 and Louisiana Sheriffs Have the Largest Financial Interest in the Relief Sought by the Class ....................................................................... 7

        3.    AP7 and Louisiana Sheriffs Satisfy the Requirements of Rule 23 .......... 7

        4.    AP7 and Louisiana Sheriffs are Precisely The Type of Lead Plaintiff Envisioned By The PSLRA ...................................................................... 9

    B.    AP7 and Louisiana Sheriffs Selected Well-Qualified Counsel to Represent the Class .................................................................................... 12

    C.    The Actions Should Be Consolidated .......................................................... 14

CONCLUSION .......................................................................................................... 15

## TABLE OF AUTHORITIES

CASES                                                                              PAGE(S)

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
    258 F.R.D. 260 (S.D.N.Y. 2009) ................................................................9, 11, 14

*Dube v. Signet Jewelers, Ltd.*,
    2017 WL 1379385 (S.D.N.Y. Apr. 14, 2017)............................................................6

*Faig v. BioScrip, Inc.*,
    2013 WL 6705045 (S.D.N.Y. Dec. 19, 2013) ...........................................................5

*Glauser v. EVCI Career Colls. Holding Corp.*,
    236 F.R.D. 184 (S.D.N.Y. 2006) ..............................................................................9

*Hachem v. Gen. Elec. Inc.*,
    2018 WL 1779345 (S.D.N.Y. Apr. 11, 2018)...........................................................6

*Hom v. Vale, S.A.*,
    2016 WL 880201 (S.D.N.Y. Mar. 7, 2016) ...................................................1, 6, 7, 8

*Kaplan v. Gelfond*,
    240 F.R.D. 88 (S.D.N.Y. 2007) ........................................................................1, 14

*Mustafin v. GreenSky, Inc.*,
    2019 WL 1428594 (S.D.N.Y. Mar. 29, 2019) .......................................................11

*Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*,
    2020 WL 1181366 (D. Conn. Mar. 10, 2020) ..........................................................6

*Pinkowitz v. Elan Corp.*,
    2002 WL 1822118 (S.D.N.Y. July 29, 2002) .........................................................15

*Reimer v. Ambac Fin. Grp., Inc.*,
    2008 WL 2073931 (S.D.N.Y. May 9, 2008) ..........................................................11

STATUTES

15 U.S.C. § 78u-4(a)(3) .............................................................................. *passim*

OTHER AUTHORITIES

Fed. R. Civ. P. 23(a)(4)..................................................................................8

Fed. R. Civ. P. 42(a) ....................................................................................14

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 (1995).......................9

S. Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679 (1995) ........................................9

Sjunde AP-Fonden ("AP7") and Louisiana Sheriffs's Pension & Relief Fund ("Louisiana Sheriffs") respectfully submit this memorandum of law in support of their motion, pursuant to Section 27(a)(3)(B) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77z-1(a)(3)(B), and Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), for an order: (1) appointing AP7 and Louisiana Sheriffs as Lead Plaintiff; (2) approving their selection of Kessler Topaz Meltzer & Check LLP ("Kessler Topaz") and Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Lead Counsel for the Class; (3) consolidating the above-captioned securities class actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure ("Rule 42(a)"); and (4) for any such further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

The above-captioned actions and at least two other related securities class actions filed in the Eastern District of New York (the "Related Actions") allege that Luckin Coffee Inc. ("Luckin Coffee" or the "Company") and other defendants (collectively, "Defendants") violated the federal securities laws during the period from May 17, 2019 through April 6, 2020, inclusive.[1] Specifically, the Related Actions allege that Luckin Coffee falsely represented the Company's financial condition by fabricating over $300 million in sales starting in the second quarter of 2019

---

[1] In addition to the above-captioned actions, the Related Actions include *Sterckx v. Luckin Coffee Inc.*, No. 1:20-cv-01677-KAM-VMS (E.D.N.Y.) ("*Sterckx*"), and *Gopu v. Luckin Coffee Inc.*, No. 1:20-cv-01747-EK-SJB (E.D.N.Y.) ("*Gopu*"), two securities class actions alleging substantially identical claims that were filed in the United States District Court for the Eastern District of New York ("E.D.N.Y."). AP7 and Louisiana Sheriffs are simultaneously moving for consolidation and appointment as Lead Plaintiff in the Related Actions pending in the E.D.N.Y. For purposes of this motion, AP7 and Louisiana Sheriffs have used the longest-pleaded class period in the Related Actions (the "Class Period") to calculate their financial interest, and refer to the broadest set of claims asserted and defendants named in the Related Actions. *See, e.g., Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007); *Hom v. Vale, S.A.*, 2016 WL 880201, at *4 (S.D.N.Y. Mar. 7, 2016). Because the relevant provisions of the PSLRA in the Exchange Act and Securities Act are identical, this memorandum solely cites the Exchange Act.

and continuing through the end of the year.  Luckin Coffee investors—including AP7 and Louisiana Sheriffs—incurred significant losses when the truth about the Company's financial condition was revealed through a series of disclosures, culminating in Luckin Coffee's admission that its Chief Operating Officer and his direct reports falsified nearly half of the Company's reported revenues.  In response to these disclosures, Luckin Coffee American Depositary Shares ("ADSs") lost over 80% of their value, and their trading on the NASDAQ was halted on April 6, 2020, and has yet to resume.

Pursuant to the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(i).  In that regard, the Court is required to determine which movant has the "largest financial interest" in the relief sought by the Class in this litigation, and also whether that movant has made a *prima facie* showing that it is a typical and adequate Class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  For the reasons set forth below, AP7 and Louisiana Sheriffs are the "most adequate plaintiff" by virtue of, among other things, the $6.9 million in losses that they incurred on their purchases of 187,500 Luckin Coffee ADSs during the Class Period.[2]

In addition to asserting the largest financial interest, AP7 and Louisiana Sheriffs readily satisfy the relevant requirements of Rule 23 because their claims are typical of all members of the Class and they will fairly and adequately represent the Class.  AP7 and Louisiana Sheriffs are a paradigmatic Lead Plaintiff under the PSLRA because they are sophisticated institutional investors with a real financial interest in the litigation, and have extensive experience supervising the work

---

[2]  AP7's and Louisiana Sheriffs's PSLRA-required Certifications are attached as Exhibit A to the Declaration of Gerald H. Silk in Support of the Motion of AP7 and Louisiana Sheriffs for Appointment as Lead Plaintiff, Approval of Selection of Lead Counsel, and Consolidation of Related Actions ("Silk Decl."). In addition, charts providing calculations of AP7's and Louisiana Sheriffs's losses are provided as Exhibit B to the Silk Decl.  References to "Ex. __" are to the exhibits accompanying the Silk Decl. and all emphasis is added and citations omitted unless noted.

of outside counsel in securities litigation—including in groups with other institutional investors. Indeed, in serving as members of lead plaintiff groups, AP7 and Louisiana Sheriffs have recovered well over $1 billion for investors in securities class actions prosecuted in this District through their oversight of their proposed Lead Counsel here.   Moreover, by working together, AP7 and Louisiana Sheriffs have standing to assert all available securities claims against all culpable parties—demonstrating that they will provide the best possible protection to the Class.  AP7 and Louisiana Sheriffs fully understand the Lead Plaintiff's obligations to the Class under the PSLRA, and have amply demonstrated their commitment and ability to fulfill those responsibilities here.

Finally, AP7 and Louisiana Sheriffs's adequacy is demonstrated through their selection of Kessler Topaz and Bernstein Litowitz, law firms with substantial experience in successfully prosecuting securities class actions, to serve as Lead Counsel for the Class.  Accordingly, AP7 and Louisiana Sheriffs respectfully request that the Court appoint them Lead Plaintiff and otherwise grant their motion.

## SUMMARY OF THE RELATED ACTIONS

Luckin Coffee is a coffee retailer founded in 2017 based in Xiamen, the People's Republic of China.  Luckin Coffee owns and operates stores selling food and beverages, as well as a mobile application for food and beverage purchases.  The Company conducted an Initial Public Offering ("IPO") of its ADSs on May 17, 2019, and a Secondary Offering ("SO") with a concurrent Convertible Note Offering on January 10, 2020.

The Related Actions allege that, throughout the Class Period, including in connection with the IPO and the SO, Luckin Coffee promoted its technology-driven retail model using "big data analytics, [artificial intelligence], and proprietary technologies" to drive sales of coffee and other

products and develop revenue and expense models that ensure accurate and transparent reporting. Luckin Coffee reported record-setting revenue growth and claimed that its stores were profitable.

In reality, Luckin Coffee's stores were operating at substantial losses, the Company's financial health was in jeopardy, and Luckin Coffee's store sales data were simply fabricated over multiple quarters. As a result of these misrepresentations, Luckin Coffee ADSs traded at artificially inflated prices throughout the Class Period.

The truth about Luckin Coffee was revealed in a series of disclosures. First, on January 31, 2020, Muddy Waters Research published a report stating that Luckin Coffee had fabricated portions of its financial statements beginning in the third quarter of 2019, citing "smoking gun evidence" such as thousands of hours of store video, customer receipts, and monitoring of the Company's mobile application data. On this news, the price of Luckin Coffee ADSs fell from $36.40 per share on January 30, 2020, to $32.49 per share on January 31, 2020. On February 3, 2020, Luckin issued a press release dismissing Muddy Waters's conclusions. The Company "categorically denie[d] all allegations in the [Muddy Waters] Report" and assured investors that the "methodology of the Report is flawed, the evidence is unsubstantiated, and the allegations are unsupported speculations and malicious interpretations of events."

Notwithstanding the aggressive defense of its operations, on April 2, 2020, Luckin Coffee disclosed that an internal investigation had found that over $300 million in reported sales simply did not exist and that Luckin Coffee's Chief Operating Officer Jian Liu and several of his direct reports had fabricated these transactions beginning in the second quarter of 2019. On this news, the price of Luckin Coffee ADSs fell from $26.20 per share on April 1, 2020 to $6.40 per share on April 2, 2020—a decline of over 75%.

Finally, on April 6, 2020, Goldman Sachs & Co. LLC announced that an entity controlled by Luckin Coffee's Chairman Charles Zhengyao Lu had defaulted on a $518 million margin loan secured by Luckin Coffee ADSs, which had been pledged as collateral by the Company's founders—Lu and Chief Executive Officer, Jenny Zhiya Qian—for these personal loans.  On this news, the price of Luckin Coffee ADSs fell from $5.38 per share on April 3, 2020 to $4.39 per share on April 6, 2020, another 18% decline.  Trading of Luckin Coffee ADSs was halted on April 6, 2020 by the NASDAQ, and has yet to resume.

## ARGUMENT

### A.     AP7 and Louisiana Sheriffs Are the Most Adequate Plaintiff

AP7 and Louisiana Sheriffs respectfully submit that they should be appointed Lead Plaintiff because they are the movants "most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B)(i).  The PSLRA establishes a presumption for selecting a lead plaintiff that the "most adequate plaintiff" is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Faig v. BioScrip, Inc.*, 2013 WL 6705045, at *2 (S.D.N.Y. Dec. 19, 2013) (discussing qualifications for lead plaintiff presumption).  As set forth below, AP7 and Louisiana Sheriffs believe they are the "most adequate plaintiff" and should be appointed as Lead Plaintiff.

### 1.     AP7 and Louisiana Sheriffs's Motion Is Timely

Under the PSLRA, any Class member may move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed.  *See* 15 U.S.C. § 78u-4(a)(3)(A).  On February 13, 2020, the first of the Related Actions, captioned *Cohen v. Luckin Coffee Inc.*, No. 20-cv-01293-LJL ("*Cohen*"), was filed in this District.

That same day, counsel for the plaintiff in *Cohen* published a notice on *Globe Newswire* alerting investors to the pendency of the action and informing them of the 60-day deadline to seek appointment as Lead Plaintiff, which is April 13, 2020.  *See* Ex. C.  On April 2, 2020, the *Sterckx* action was filed in the E.D.N.Y. asserting substantially similar claims under the Exchange Act, as well as claims under the Securities Act in connection with misstatements and omissions in the IPO and SO offering materials, and expanding the class period to run from May 17, 2019, through April 2, 2020.  That same day, counsel for the plaintiff in *Sterckx* published a notice on *Globe Newswire* alerting investors to the pendency of and expanded class period and additional claims asserted in the action, and reiterating the April 13, 2020 deadline to seek Lead Plaintiff appointment.  *See* Ex. D.  Third, on April 8, 2020, the *Gopu* action was filed in the E.D.N.Y., which expanded the class period by four days, to run from May 17, 2019 through April 6, 2020.  Notice of this minor class period expansion was provided to investors, which reiterated the April 13, 2020 deadline.  Ex. E. Finally, on April 10, 2020, the action captioned *Shek v. Luckin Coffee Inc.*, No. 1:20-cv-02977-NRB ("*Shek*"), was filed in this District asserting substantially similar claims under the Exchange Act and Securities Act to the preceding Related Actions.  AP7 and Louisiana Sheriffs have timely moved for appointment as Lead Plaintiff through the filing of this motion.[3]

---

[3] AP7 and Louisiana Sheriffs note the Court's March 11, 2020 Order (ECF No. 9) concerning the filing of related actions and state there is no need to order republication of notice under the PSLRA. In this case, investors were provided more than adequate notice given that at least thirty notices were published alerting investors to the filing of the expanded class period and additional claims, and as evidenced by the filing of AP7 and Louisiana Sheriffs's motion here. Ex. F.  Although *Sterckx* and *Gopu* expanded the original nine-month class period by two months and asserted claims under the Securities Act, these minor differences do not warrant republication because these allegations present a clear continuation of the conduct at issue in the first-filed action, and there can be no credible argument that an entire class of potential lead plaintiffs was left out of the notice procedure.  *See, e.g.*, *Vale, S.A.*, 2016 WL 880201, at *4  (declining republication after year-and-a-half class period expansion and citing cases); *Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*, 2020 WL 1181366, at *10-11 (D. Conn. Mar. 10, 2020) (declining republication where class period expanded by two years and new defendants and Securities Act claims added because new allegations were a "clear continuation of the conduct" in earlier-filed complaint).  The facts here stand in stark contrast to those in *General Electric*, where the later-filed action expanded the original three-month class period by nearly five years and added entirely distinct claims concerning different misconduct in a

**2.      AP7 and Louisiana Sheriffs Have the Largest Financial Interest in the Relief Sought by the Class**

AP7 and Louisiana Sheriffs should be appointed Lead Plaintiff because they have the "largest financial interest in the relief sought by the class."  15 U.S.C. § 78u4(a)(3)(B)(iii)(I)(bb). As demonstrated herein, AP7 and Louisiana Sheriffs sustained losses of approximately $6.9 million on their Class Period purchases of approximately 187,500 Luckin Coffee ADSs.  *See* Exs. A & B.  To the best of AP7 and Louisiana Sheriffs's knowledge, there is no other applicant seeking Lead Plaintiff appointment that has a larger financial interest in the litigation.  Accordingly, AP7 and Louisiana Sheriffs have the largest financial interest of any qualified movant seeking Lead Plaintiff status and are the presumptive "most adequate plaintiff."   15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

**3.      AP7 and Louisiana Sheriffs Satisfy the Requirements of Rule 23**

In addition to possessing the largest financial interest in the outcome of the litigation, AP7 and Louisiana Sheriffs otherwise satisfy the requirements of Rule 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  On a motion to serve as Lead Plaintiff, a movant need only "make a preliminary showing that the adequacy and typicality requirements have been met."  *Vale*, 2016 WL 880201, at *6.  Here, AP7 and Louisiana Sheriffs unquestionably satisfy both requirements.

AP7 and Louisiana Sheriffs's claims are typical of the claims of other purchasers of Luckin Coffee ADSs.  Typicality is satisfied where the movant's "claims arise from the same conduct

---

separate division of the company, after Judge Furman appointed a lead plaintiff under the originally-noticed periods.  *See Hachem v. Gen. Elec. Inc.*, 2018 WL 1779345, at *2 (S.D.N.Y. Apr. 11, 2018); *Dube v. Signet Jewelers, Ltd.*, 2017 WL 1379385, at *1 (S.D.N.Y. Apr. 14, 2017) (republication required after three-year class period expansion and new claims concerning new misconduct added because entire classes of potential lead plaintiffs were left out of notice procedure).  Here, investors have been on notice of the full scope of the claims for nearly two weeks.  Indeed, subsequent to the *Sterckx* action being filed, two additional cases were filed asserting claims back to the IPO.  AP7 and Louisiana Sheriffs respectfully suggest that republication of notice is not consistent with the PSLRA under these circumstances.

from which the other class members' claims and injuries arise." *Id*.  Here, AP7, Louisiana Sheriffs, and all other Class members suffered the same injuries, their claims arise from the same course of events, and their legal arguments to prove Defendants' liability are nearly identical.  Like all other Class members, AP7 and Louisiana Sheriffs: (1) purchased Luckin Coffee ADSs during the Class Period, (2) at prices artificially inflated by Defendants' materially false and misleading statements and/or omissions, and (3) were damaged as a result.  *See id*. (typicality satisfied where movant purchased "shares at artificially inflated prices during the class period, and were injured by the false and misleading statements and omissions made by defendants in violation of federal securities laws").  As such, AP7 and Louisiana Sheriffs satisfy the typicality requirement of Rule 23.

AP7 and Louisiana Sheriffs likewise satisfy the adequacy requirement of Rule 23.  Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  In order for the Class's interests to be fairly and adequately represented, the movant must show that: "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy."  *Vale*, 2016 WL 880201, at *6.  AP7 and Louisiana Sheriffs satisfy these elements because their substantial financial stake in the litigation provides AP7 and Louisiana Sheriffs with the ability and incentive to vigorously represent the Class's claims.  AP7 and Louisiana Sheriffs's interests are perfectly aligned with those of the other Class members and are not antagonistic in any way.  There are no facts to suggest any actual or potential conflict of interest or other antagonism between AP7 and Louisiana Sheriffs and other Class members.

**4.     AP7 and Louisiana Sheriffs are Precisely The Type of Lead Plaintiff Envisioned By The PSLRA**

In addition to satisfying the PSLRA's lead plaintiff provisions and the requirements of Rule 23, AP7 and Louisiana Sheriffs are the paradigmatic Lead Plaintiff envisioned by Congress in its enactment of the PSLRA—sophisticated institutional investors with a substantial financial interest in the litigation. *See Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) (noting that "the PSLRA was passed, at least in part, to increase the likelihood that institutional investors would serve as lead plaintiffs in [securities class] actions") (citation omitted); S. Rep. No. 104-98, at *11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 (1995) ("The committee intends to increase the likelihood that institutional investors will serve as lead plaintiffs[.]"); H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions").

Based on their past experience successfully supervising their proposed Lead Counsel, AP7 and Louisiana Sheriffs are well-aware of the duties the Lead Plaintiff has to oversee and supervise the litigation separate and apart from counsel, and AP7 and Louisiana Sheriffs have submitted sworn Certifications and a Joint Declaration attesting to their willingness and ability to fulfill those duties here. *See* Exs. A & G; *see also In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) ("Groups of plaintiffs are specifically permitted by the PLSRA to be appointed lead plaintiff. . . . Because they have established their ability to act independent of counsel, [the institutional investors] are a proper group and are presumptive lead plaintiffs.").

As set forth in their Joint Declaration, AP7 and Louisiana Sheriffs are sophisticated institutional investors that have combined assets under management of approximately $64 billion with extensive experience and success serving as members of Lead Plaintiff groups under the PSLRA. Ex. G ¶¶ 2-5.  They have demonstrated their willingness, resources, and ability to fulfill the Lead Plaintiff's obligations under the PSLRA and their commitment to working cohesively together in the prosecution of this action.  *Id.* ¶¶ 7, 12, 14.  Indeed, AP7 and Louisiana Sheriffs's decision to join together to prosecute this action is informed by their experience successfully prosecuting similar securities class actions as co-lead plaintiffs under the PSLRA, including some of the most significant securities class action recoveries in this District.  For example, AP7 recovered $150 million for investors when it served as co-lead plaintiff in *In re JPMorgan Chase & Co. Securities Litigation*, No. 12-cv-3852 (S.D.N.Y.) (Daniels, J.), with Bernstein Litowitz and Kessler Topaz as co-lead counsel, and Louisiana Sheriffs recovered $730 million for investors when it served as co-lead bond plaintiff in *In re Citigroup Inc. Bond Litigation*, No. 08-cv-9522 (S.D.N.Y.) (Stein, J.), with Bernstein Litowitz as lead counsel and Kessler Topaz as additional counsel. Ex. G ¶¶ 3, 5.

Moreover, as described further in the Joint Declaration, AP7 and Louisiana Sheriffs are ideally suited to lead this litigation given that they have standing to assert claims under both the Exchange Act and the Securities Act arising out of both the IPO and SO—thereby ensuring all possible claims can be asserted against all culpable parties.  Such a partnership will provide the Class with the broadest possible protection, which is a critical benefit in this case given Luckin Coffee's precarious financial position.  Ex. G ¶ 9.

Moreover, AP7 and Louisiana Sheriffs have already taken measures to ensure the claims are vigorously and effectively prosecuted in the best interests of the Class.  For example, as part

of their effort to formalize their oversight of this action and before seeking appointment as Lead Plaintiff, representatives of AP7 and Louisiana Sheriffs held a conference call in which they discussed the strength of the claims against Defendants, their strategy for prosecuting the action, the benefits that the Class will receive from the leadership of institutional investors with prior experience serving as Lead Plaintiff under the PSLRA, and the measures the funds have and will take to ensure that the Class's claims will be zealously and efficiently litigated. Ex. G ¶ 11. Among other things, AP7 and Louisiana Sheriffs directed their proposed Lead Counsel to enter into a joint prosecution agreement that outlines their proposed Lead Counsel's respective responsibilities and ensures there will be no duplication of effort and that the claims of the Class are prosecuted vigorously yet efficiently and in a cost-effective manner, and which can be provided to the Court *in camera*. Ex. G ¶ 17. Further, while AP7 and Louisiana Sheriffs appreciate that any attorneys' fees in this action, if any, will be set by the Court, they take very seriously their obligation as Lead Plaintiff and have executed retainer agreements that limit the fees counsel may request. *Id.* Through these measures and others, AP7 and Louisiana Sheriffs have sought to ensure the Class will receive the best possible representation.

In sum, AP7 and Louisiana Sheriffs have demonstrated their willingness, resources, and experience and commitment to working closely with one another to supervise Lead Counsel and obtain the best possible recovery for the Class. In other words, AP7 and Louisiana Sheriffs are precisely the type of institutional investors that Congress sought to empower as Lead Plaintiff when enacting the PSLRA. *See, e.g.*, *Mustafin v. GreenSky, Inc.*, 2019 WL 1428594, at *5 (S.D.N.Y. Mar. 29, 2019) (appointing group of three institutions that "pledge[d] to work closely together to vigorously prosecute the claims on behalf of the class"); *In re Bank of Am.*, 258 F.R.D. at 270 (appointing group of institutions as lead plaintiff that submitted declaration detailing

discussions regarding "plans for joint oversight over the litigation and joint supervision of counsel"); *Reimer v. Ambac Fin. Grp., Inc.*, 2008 WL 2073931, at *3 (S.D.N.Y. May 9, 2008) (appointing group of institutions that demonstrated they were "cooperating and pursuing the litigation separately and apart from their lawyers").

## B. AP7 and Louisiana Sheriffs Selected Well-Qualified Counsel to Represent the Class

The PSLRA provides that the Lead Plaintiff is to select and retain counsel to represent the Class it seeks to represent, subject to Court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Lead Plaintiff's choice of counsel is not to be disturbed unless doing so is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). The Court should approve AP7 and Louisiana Sheriffs's selection here.

Kessler Topaz specializes in prosecuting complex class action litigation and is one of the leading law firms in its field. *See* Ex. H (Kessler Topaz's Firm Résumé). The firm is actively engaged in complex litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors and has obtained record recoveries in those cases, including in *In re Tyco International, Ltd. Sec. Litig.*, No. 02-md-1335 (PB) (D.N.H.) ($3.2 billion recovery) and *Luther v. Countrywide Fin. Corp.*, No. 2:12-CV-05125 MRP (MANx) (C.D. Cal.) ($500 million recovery). Further, Kessler Topaz is currently serving as Lead Counsel in some of the most significant securities fraud class actions in this District, including *Sjunde AP-Fonden v. General Electric Co.*, No. 17-cv-8457 (S.D.N.Y.) (with AP7 serving as Lead Plaintiff) (Furman, J.), and *Sjunde AP-Fonden v. The Goldman Sachs Group, Inc.*, No. 18-cv-12084 (S.D.N.Y.) (with AP7 serving as Lead Plaintiff) (Broderick, J.). Kessler Topaz also obtained a rare jury verdict in investors' favor after a week-long trial in *In re Longtop Financial Technologies Ltd. Sec. Litig.*,

No. 11-cv-3658 (SAS) (S.D.N.Y.) (Scheindlin, J.)—one of just thirteen securities class actions to reach a verdict since enactment of the PSLRA in 1995 (based on post-enactment conduct).

Similarly, Bernstein Litowitz is among the preeminent securities class action law firms in the country.  *See* Ex. I (Bernstein Litowitz's Firm Résumé).  Bernstein Litowitz served as Lead Counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-cv-3288 (S.D.N.Y.) (Cote, J.), in which recoveries totaling in excess of $6 billion—one of the largest recoveries in securities class action history and the largest in this District—were obtained for the class.  Other significant examples in which courts in this District have recognized Bernstein Litowitz as adequate and qualified class counsel in securities class actions include: *In re Nortel Networks Corp. Securities Litigation*, No. 05-md-1659 (S.D.N.Y.) (recovering $1.3 billion for investors) (Berman, J., Preska, J.), and *In re Bear Stearns Mortgage Pass-Through Litigation*, No. 1:08-cv-8093 (S.D.N.Y.) (recovering $500 million for investors) (Swain, J.).

Moreover, Kessler Topaz and Bernstein Litowitz have a history of successfully prosecuting securities fraud class actions together—including in cases where AP7 and Louisiana Sheriffs served as co-lead plaintiff with other institutional investors.  Kessler Topaz and Bernstein Litowitz's joint prosecutions, which have resulted in recoveries collectively exceeding $4.5 billion in recent years, include, among others: *In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litigation*, No. 09-md-2058 (S.D.N.Y.) ($2.425 billion recovery with Kessler Topaz and Bernstein Litowitz as co-lead counsel) (Castel, J.); *In re Citigroup Inc. Bond Litigation*, No. 08-cv-9522 (S.D.N.Y.) ($730 million recovery with Bernstein Litowitz as lead counsel and Kessler Topaz as additional counsel and Louisiana Sheriffs serving with two other institutions as court-appointed bond plaintiffs) (Stein, J.); *In re Wachovia Preferred Securities & Bond/Notes Litigation*, No. 09-cv-6351 (S.D.N.Y.) ($627 million recovery

with Kessler Topaz and Bernstein Litowitz as co-lead counsel with Louisiana Sheriffs as co-lead plaintiff) (Sullivan, J.); *In re Lehman Bros. Equity/Debt Securities Litigation*, No. 08-cv-5523 (S.D.N.Y.) ($615 million recovery with Kessler Topaz and Bernstein Litowitz as co-lead counsel) (Kaplan, J.); and *In re JPMorgan Chase & Co. Securities Litigation*, No. 12-cv-3852 (S.D.N.Y.) ($150 million recovery with Bernstein Litowitz and Kessler Topaz as co-lead counsel) (Daniels, J.). Furthermore, Kessler Topaz and Bernstein Litowitz are currently serving together as co-lead counsel in *In re Kraft Securities Litigation*, No. 19-cv-1339 (N.D. Ill.) (with AP7 serving as a co-lead plaintiff with another institutional investor).

Thus, the Court may be assured that by granting this motion, the Class will receive the highest caliber of legal representation.

**C.      The Actions Should Be Consolidated**

AP7 and Louisiana Sheriffs respectfully request that the actions listed below against Luckin Coffee be consolidated pursuant to Rule 42(a). Rule 42(a) permits consolidation where "actions before the court involve a common question of law or fact." Fed. R. Civ. P. 42(a). The Court has "broad discretion to determine whether to consolidate actions, and in making this determination, [it is] to consider whether judicial economy favors consolidation." *Gelfond*, 240 F.R.D. at 91, o*n reconsideration in part sub nom. In re IMAX Sec. Litig.*, 2009 WL 1905033 (S.D.N.Y. June 29, 2009); *see also In re Bank of Am.*, 258 F.R.D. at 267 (ordering separate consolidations of 30 putative class actions into securities, derivative, and ERISA actions because differences in causes of action, defendants, or class periods did not render consolidation inappropriate due to sufficiently common questions of fact and law and the interests of judicial economy).[4]

---

[4] If appointed Lead Plaintiff, AP7 and Louisiana Sheriffs intend to move to transfer the *Sterckx* and *Gopu* actions to this District and seek consolidation upon transfer.

| Caption | Civil No. | Date Filed |
|---|---|---|
| *Cohen v. Luckin Coffee Inc.* | 1:20-cv-01293 | February 13, 2020 |
| *Shek v. Luckin Coffee Inc.* | 1:20-cv-02977 | April 10, 2020 |

Each of the plaintiffs in the above-captioned actions is an investor in Luckin Coffee and asserts claims concerning the same parties, transactions, and events.  The actions present virtually identical factual and legal issues because they each assert claims under Sections 10(b) and 20(a) of the Exchange Act against Luckin Coffee and its senior executives, and are premised upon substantially similar alleged misstatements regarding the Company's sales figures and the accuracy of the Company's financial statements.[5]  Consolidation would promote the conservation of judicial resources by preventing the substantial duplication of labor that would result if the actions were heard by different judges.

Therefore, AP7 and Louisiana Sheriffs respectfully request that the Court consolidate the above-captioned actions.

## CONCLUSION

For the reasons discussed above, AP7 and Louisiana Sheriffs respectfully requests that the Court: (1) appoint them as Lead Plaintiff; (2) approve their selection of Kessler Topaz and Bernstein Litowitz as Lead Counsel for the Class; (3) consolidate the above-captioned actions, and (4) grant any such further relief as the Court may deem just and proper.

---

[5] While *Cohen* and *Shek* assert slightly different class periods, and *Shek* names additional defendants and pleads additional allegations under the Securities Act, courts have routinely held such differences do not outweigh the benefits of judicial economy favoring consolidation. *See, e.g.*, *Pinkowitz v. Elan Corp.*, 2002 WL 1822118, at *3-4 (S.D.N.Y. July 29, 2002) (holding that differences in causes of action, defendants, or the class period did not render consolidation inappropriate because the cases presented sufficiently common questions of fact and law).

Dated:  April 13, 2020

Respectfully Submitted,

**BERNSTEIN LITOWITZ BERGER**
    **& GROSSMANN LLP**

*/s/ Gerald H. Silk*
Gerald H. Silk
Avi Josefson
Michael D. Blatchley
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
jerry@blbglaw.com
avi@blbglaw.com
michaelb@blbglaw.com

*Counsel for Proposed Lead Plaintiff Louisiana Sheriffs' Pension & Relief Fund and Proposed Lead Counsel for the Class*


**KESSLER TOPAZ MELTZER**
    **& CHECK, LLP**

Naumon A. Amjed
Darren J. Check
Ryan T. Degnan
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
dcheck@ktmc.com
rdegnan@ktmc.com

*Counsel for Proposed Lead Plaintiff Sjunde AP-Fonden and Proposed Lead Counsel for the Class*