UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARTIN COHEN, Individually and On Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>      v.<br><br>LUCKIN COFFEE, INC., *et al.*,<br><br>                    Defendants. | Case No. 1:20-cv-01293-LJL<br><br><br><u>CLASS ACTION</u> |
| WAI CHUN SHEK, Individually and On Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>      v.<br><br>LUCKIN COFFEE, INC., *et al.*,<br><br>                    Defendants. | Case No. 1:20-cv-02977-LJL<br><br><br><u>CLASS ACTION</u> |

MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF THE LUCKIN INVESTOR GROUP FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................... 1

ARGUMENT ................................................................................................................................... 4

    I.    The Luckin Investor Group Should Be Appointed Lead Plaintiff If The Court Declines To Appoint The Chesi Group ...................................................................... 4

        A.    The Luckin Investor Group Has The Next-Largest Financial Interest In The Relief Sought By The Class After the Chesi Group ............................... 5

        B.    The Luckin Investor Group Satisfies The Requirements Of Rule 23 .......... 6

        C.    The Luckin Investor Group Is An Appropriate Group .................................. 8

    II.    No Other Investor Satisfies The Statutory Criteria For Lead Plaintiff Appointment ............................................................................................................ 10

        A.    The PSLRA Does Not Privilege Institutional Investors ............................. 10

        B.    The AP7 Group Is Subject To The Unique Defense That It Lacks Standing ...................................................................................................... 12

CONCLUSION .............................................................................................................................. 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aude v. Kobe Steel, Ltd.*, 17-CV-10085 (VSB),
2018 U.S. Dist. LEXIS 57591 (S.D.N.Y. Apr. 4, 2018)...........................................................4, 6

*Barnet v. Elan Corp., PLC*,
236 F.R.D. 158 (S.D.N.Y. 2005) ...................................................................................................8

*Brady v. Top Ships Inc.*, No. 17-CV-4987 (JFB) (SIL),
2018 U.S. Dist. LEXIS 121765 (E.D.N.Y. July 20, 2018) ...........................................................9

*Chahal v. Credit Suisse Grp. AG*, 18-CV-2268 *et al.*,
2018 U.S. Dist. LEXIS 104185 (S.D.N.Y. June 21, 2018).......................................................2, 5

*China Agritech, Inc. v. Resh*,
138 S. Ct. 1800 (2018)................................................................................................................3, 8

*Dookeran v. Xunlei Ltd.*, 18-cv-467 (RJS) *et al.*,
2018 U.S. Dist. LEXIS 62575 (S.D.N.Y. Apr. 12, 2018)..............................................................7

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011) ..............................................................................................5, 7

*Greene v. Gerber Prods. Co.*,
262 F. Supp. 3d 38 (E.D.N.Y. 2017) ..........................................................................................14

*Gross v. AT&T Inc.*, 19-CV-2892 (VEC),
2019 U.S. Dist. LEXIS 225777 (S.D.N.Y. June 24, 2019).....................................................14, 15

*In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, 04-cv-0265,
2004 U.S. Dist. LEXIS 10200 (E.D. Pa. June 3, 2004) ...........................................................3, 10

*In re Bally Total Fitness Sec. Litig.*, Nos. 04 C 3530 *et al.*,
2005 U.S. Dist. LEXIS 6243 (N.D. Ill. Mar. 15, 2005)...................................................4, 12, 15

*In re Bank of America Corp. Sec., Derivative and ERISA Litig.*, No. 09-MD-2058,
2011 WL 3211472 (S.D.N.Y. 2011)............................................................................................12

*In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846 (WFK) (PK),
2017 U.S. Dist. LEXIS 207531 (E.D.N.Y. Dec. 15, 2017) ..............................................3, 8, 9

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) .......................................................................................................5

*In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825,
2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ...................................................................................6

*In re Enron Corp., Sec. Litig.*,
206 F.R.D. 427 (S.D. Tex. 2002) ......................................................................................13, 16

*In re Netflix, Inc., Sec. Litig.*, Nos. 12-0225 SC *et al.*,
2012 U.S. Dist. LEXIS 59465 (N.D. Cal. Apr. 26, 2012) ..........................................................16

*In re Orion Secs. Litig.*, 08 Civ. 1238 (RJS),
2008 U.S. Dist. LEXIS 55368 (S.D.N.Y. July 7, 2008) ..............................................................7

*In re Sequans Communs. S.A. Sec. Litig.*,
289 F. Supp. 3d 416 (E.D.N.Y. 2018) .....................................................................................11

*In re Surebeam Corp. Secs. Litig.*, No. 03 CV 1721 JM (POR),
2003 U.S. Dist. LEXIS 25022 (S.D. Cal. Jan. 5, 2004)..............................................................12

*In re Texlon Corp. Secs. Litig.*,
67 F. Supp. 2d 803 (N.D. Ohio 1999).......................................................................................10

*In re Vicuron Pharms., Inc. Sec. Litig.*,
225 F.R.D. 421 (E.D. Pa. 2005)................................................................................................6

*Kaplan v. Gelfond*,
240 F.R.D. 88 (S.D.N.Y. 2007) ...........................................................................................4, 7

*Kowalski v. Tesmer*,
543 U.S. 125 (2004)...............................................................................................................14

*Kuriakose v. Fed. Home Loan Mortg. Co.*, 1:08-cv-7281,
2008 U.S. Dist. LEXIS 95506 (S.D.N.Y. Nov. 24, 2008) ..........................................................5

*La. Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-cv-289,
2012 U.S. Dist. LEXIS 89192 (D. Vt. Apr. 27, 2012)................................................................9

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)...............................................................................................................12

*Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*,
418 F.3d 168 (2d Cir. 2005).....................................................................................................14

*Nurlybaev v. ZTO Express (Cayman) Inc.*, 17-CV-06130 (LTS)(SN),
2017 U.S. Dist. LEXIS 187238 (S.D.N.Y. Nov. 13, 2017) ...................................................2, 6

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
275 F.R.D. 187 (S.D.N.Y. Jun. 20, 2011)................................................................................15

iii

*Reiger v. Altris Software, Inc.*, 98-cv-0528 (JFS),
    1998 U.S. Dist. LEXIS 14705 (S.D. Cal. Sept. 11, 1998) ......................................................10

*Schaffer v. Horizon Pharma PLC*, 16-CV-1763 (JMF),
    2016 U.S. Dist. LEXIS 83175 (S.D.N.Y. June 27, 2016).........................................................12

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2015)..............................................................................................................12

*Steamfitters Local 449 Pension Fund v. Cent. European Distrib. Corp.*,
    Nos. 11-6247 (JBS/KMW) *et al.*, 2012 U.S. Dist. LEXIS 118693 (D.N.J. Aug. 22, 2012) ...16

*Takara Trust v. Molex, Inc.*,
    229 F.R.D. 577 (N.D. Ill. 2005)..................................................................................................6

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*,
    454 U.S. 464 (1982)...................................................................................................................12

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008).....................................................................................2, 4

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
    549 F.3d 100 (2d Cir. 2008)..................................................................................................13, 14

*Weltz v. Lee*,
    199 F.R.D. 129 (S.D.N.Y. 2001) .................................................................................................8

*West Palm Beach Police Pension Fund v. DFC Global Corp.*, No. 13-6731,
    2014 U.S. Dist. LEXIS 49595 (E.D. Pa. Apr. 9, 2014) ..............................................................9

## Statutes

15 U.S.C. § 78u-4(a)(3)(B)(iii) ........................................................................................................5

15 U.S.C. §78u-4(a)(3)(B)(iii)(I) ...................................................................................................1, 4

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)...................................................................................................7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb) ..........................................................................................12

## Rules

Fed. R. Civ. P. 23................................................................................................................ *passim*

Movant the Luckin Investor Group[1] respectfully submits this Memorandum of Law in further support of its motion for consolidation of the Related Actions, appointment as Lead Plaintiff and approval of its selections of Pomerantz and Rosen Law as Co-Lead Counsel for the Class (Dkt. No. 64); and in opposition to the competing motions of: (i) Sjunde AP-Fonden ("AP7") and Louisiana Sheriffs Pension & Relief Fund ("Louisiana Sheriffs" and, collectively with AP7, the "AP7 Group") (Dkt. No. 61); (ii) Leonard Ross ("Ross") (Dkt. No. 38); (iii) Teamsters Local 710 Pension Fund ("Local 710") (Dkt. No. 51); (iv) Wai Chun Shek ("Shek") (Dkt. No. 10); and Chaile Steinberg ("Steinberg") (Dkt. No. 58).[2]

## PRELIMINARY STATEMENT

The PSLRA instructs the Court to appoint as Lead Plaintiff the movant or group of movants with the greatest financial interest in the outcome of the litigation; and who satisfies the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  Here, that movant appears to be a group consisting of Chesi Assets Limited and Interactive Digital Finance Limited (collectively, the "Chesi Group") (Dkt. No. 69), having alleged

---

[1] All capitalized terms herein are defined in the Luckin Investor Group's moving brief, unless otherwise indicated.  *See* Dkt. No. 66.

[2] Eleven additional movants or movant groups initially filed similar competing motions: (i) Xin Huang, Chunwei Zuo, and Majid Hajizadeh Bashy (the "Huang Group") (Dkt. No. 22); (ii) Wei Zuo ("Zuo") (Dkt. No. 43); (iii) HAPNEY Investment Management LLC, Mohsen Sajjadieh, Marc Nehorayan, and Willem Develter (the "HAPNEY Group") (Dkt. No. 32); (iv) Mike Farhat ("Farhat") (Dkt. No. 28); (v) Satyanarayana Kanchanapalli ("Kanchanapalli") (Dkt. No. 48); (vi) Michael Berghenholtz ("Bergenholtz") (Dkt. No. 18); (vii) Jimmy Chan ("Chan") (Dkt. No. 44); (viii) Boston Retirement System ("BRS") (Dkt. No. 34); (ix) Daniel L. Miremont and Kevin P. Conway (collectively, "Miremont and Conway") (Dkt. No. 15); (x) Amrik Hira ("Hira") (Dkt. No. 25); and (xi) Fulton County Employees' Retirement System ("Fulton County") (Dkt. No. 41).  Zuo, Bergengholtz, Chan, the HAPNEY Group, BRS and Fulton County subsequently withdrew their motions (*see* Dkt. Nos. 77, 78, 86-87, 89, 92), while Farhat, Kanchanapalli, the Huang Group, Hira, and Miremont and Conway have filed notices stating their non-opposition to the competing motions before the Court (*see* Dkt. Nos. 74, 84, 88, 90-91).

1

a loss of $19.13 million in connection with the fraud alleged in this litigation and having made the requisite *prima facie* showing of its typicality and adequacy within the meaning of Rule 23.

If, however, the Court declines to appoint the Chesi Group as Lead Plaintiff for any reason, then the Luckin Investor Group respectfully submits that it should be appointed as Lead Plaintiff. Pursuant to the process delineated by the PSLRA, if the movant with the largest financial interest is disqualified from appointment, then the Court must consider the movant with the next-largest financial interest and undertake the same statutory inquiry with respect to adequacy and typicality. *See*, *e.g.*, *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 396 n.7 (S.D.N.Y. 2008). Here, that movant is the Luckin Investor Group, having incurred losses of ***more than $9.4 million*** in connection with its purchases of Luckin securities as a result of the fraud alleged in the Related Actions, more than any other movant apart from the Chesi Group. *See*, *e.g.*, *Chahal v. Credit Suisse Grp. AG*, 18-CV-2268 *et al.*, 2018 U.S. Dist. LEXIS 104185, at *12 (S.D.N.Y. June 21, 2018) (equating financial interest with economic loss); *Nurlybaev v. ZTO Express (Cayman) Inc.*, 17-CV-06130 (LTS)(SN), 2017 U.S. Dist. LEXIS 187238, at *3 (S.D.N.Y. Nov. 13, 2017) (same). The Luckin Investor Group would thus have the largest financial interest within the meaning of the PSLRA of any putative Class member eligible for appointment as Lead Plaintiff should the Court deny the Chesi Group's motion.

Second, in addition to its significant financial interest, the Luckin Investor Group also satisfies the adequacy and typicality requirements of Rule 23, as set forth in detail below. It is a small and cohesive group of investors who have demonstrated their adequacy by the submission of a Joint Declaration contemporaneously with their motion attesting to their shared understanding of the responsibilities of a Lead Plaintiff pursuant to the PSLRA and their preparedness to coordinate their efforts to prosecute this action diligently on behalf of the Class. *See* Dkt. No.

66-5.  The Luckin Investor Group also submits a Joint Response Declaration herewith, attesting to further communications between the group members in the weeks since their motion was filed, their understanding of the procedural posture of this litigation, and their continued dedication to the prosecution of this action.  *See* Response Declaration of Jeremy A. Lieberman in Further Support of Motion ("Lieberman Response Decl."), Ex. A.  In *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1807 n.3 (2018), the Supreme Court recently affirmed the propriety of appointing such groups as lead plaintiff, finding that "[d]istrict courts often permit aggregation of plaintiffs into plaintiff groups".  *See also In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846 (WFK) (PK), 2017 U.S. Dist. LEXIS 207531, at *13 (E.D.N.Y. Dec. 15, 2017) (affirming adequacy of group of four investors to serve as Lead Plaintiff under similar circumstances).

While two competing institutional movants have alleged significant financial interests in this litigation—specifically, the AP7 Group, with losses of $6.9 million, and Local 710, with losses of $2.1 million—none of these movants is eligible for appointment as Lead Plaintiff.  As set forth above, they do not meet the "largest financial interest" criteria mandated by the PSLRA, and on that basis alone their motions must be denied.  Their status as institutional investors has no bearing on the analysis.  The PSLRA does not even mention institutional investors, much less privilege them over individual investors.  *See In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, 04-cv-0265, 2004 U.S. Dist. LEXIS 10200, at *7 (E.D. Pa. June 3, 2004) ("The language of the [PSLRA] does not require that institutional investors take precedence over individual plaintiffs who are otherwise qualified to serve in a lead capacity.").

Finally, the AP7 Group is additionally ineligible because, as an asset manager, serious questions exist as to whether it is actually the beneficial owner of the Luckin securities at issue in this litigation, and thus whether it even possesses Article III standing to pursue fraud claims against

3

the Defendants.  Were AP7 to be appointed as Lead Plaintiff, it would undoubtedly be required to devote significant time and resources to litigating the question of its standing, at the expense of its capacity to litigate the Class's actual claims against the Defendants.  "The PSLRA . . . provides that we ask simply whether [a movant] is likely to be 'subject to' the unique defense . . . ; we do not have to determine that the defense is likely to succeed."  *In re Bally Total Fitness Sec. Litig.*, Nos. 04 C 3530 *et al.*, 2005 U.S. Dist. LEXIS 6243, at \*19 (N.D. Ill. Mar. 15, 2005).

For the reasons set forth herein, the Luckin Investor Group respectfully submits that if the Court declines to appoint the Chesi Group for any reason, then the Luckin Investor Group's motion should be granted in its entirety, and the competing motions denied.

## ARGUMENT

**I.     The Luckin Investor Group Should Be Appointed Lead Plaintiff If The Court Declines To Appoint The Chesi Group**

The PSLRA creates a strong presumption that the Lead Plaintiff is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The movant that has the largest financial interest must "make a *prima facie* showing that they meet [the requirements of] Rule 23."  *Aude v. Kobe Steel, Ltd.*, 17-CV-10085 (VSB), 2018 U.S. Dist. LEXIS 57591, at \*8 (S.D.N.Y. Apr. 4, 2018); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007).  Here, applying those statutory criteria, the most adequate class representative appears to be the Chesi Investor Group.  However, if the Court declines to appoint the Chesi Group as Lead Plaintiff, then the PSLRA requires the Court to consider the movant with the next-largest financial interest and undertake the same statutory inquiry with respect to that movant's adequacy and typicality.  *See*, *e.g.*, *Varghese*, 489 F. Supp. 2d at 396 n.7 ("If [the movant alleging the greatest financial interest] does not satisfy the criteria of  Rule 23, the Court must repeat the Rule 23 inquiry, this time

considering the plaintiff with the next-largest financial stake. The Court so proceeds until it finds a plaintiff who is willing to serve and is able to satisfy the requirements of Rule 23.") (citing *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002)); *Kuriakose v. Fed. Home Loan Mortg. Co.*, 1:08-cv-7281 (JFK), 2008 U.S. Dist. LEXIS 95506, at *16 (S.D.N.Y. Nov. 24, 2008) (the motion of the movant with the greatest financial interest having been denied, "[t]he lead plaintiff presumption thus passes to [the movant with] the next largest financial stake in the action and [that] has shown, at least as a preliminary matter, that it satisfies Rule 23's requirements."). Here, that movant is the Luckin Investor Group. As set forth below, its losses of $9.7 million in connection with the fraud alleged are second only to those of the Chesi Group, and it has made a robust showing of its adequacy and typicality within the meaning of Rule 23, which more than satisfies the *prima facie* showing required at this stage.

### A.   The Luckin Investor Group Has The Next-Largest Financial Interest In The Relief Sought By The Class After the Chesi Group

The PSLRA requires the court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). While the PSLRA itself does not provide any guidance concerning the method of calculating which plaintiff has the "largest financial interest," courts recognize that the amount of financial loss is the most significant factor to be considered. *See, e.g., Foley v. Transocean Ltd.*, 272 F.R.D. 126, 128 (S.D.N.Y. 2011) ("[W]e, as have other courts, shall place the most emphasis on . . . the approximate loss suffered by the movant"); *Chahal*, 2018 U.S. Dist. LEXIS 104185, at *12 (equating financial interest with

economic loss); *Nurlybaev*, 2017 U.S. Dist. LEXIS 187238, at *3 (same); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825, 2007 WL 680779, at *3 (E.D.N.Y. Mar. 2, 2007) (same).[3]

Under the foregoing analysis, only the Chesi Group has claimed a larger financial interest in the action than the Luckin Investor Group.  The following chart summarizes the Luckin Investor Group's substantial financial interest compared to the other remaining movants:

| Movant | Loss |
| --- | --- |
| Chesi Assets Limited Interactive Digital Finance Limited | $19.13 million |
| ***Luckin Investor Group*** | ***$9.42 million*** |
| Leonard Ross | $3.73 million |
| Teamsters Local 710 Pension Fund | $2.1 million |
| Wai Chun Shek | $675,000 |
| Chaile Steinberg | $5,044 |
| ~~AP7 Group~~[4] | ~~$6.9 million~~ |

The Luckin Investor Group suffered a loss of roughly $9.42 million in connection with its Class Period purchases of Luckin securities, second only to the Chesi Group and significantly more than all other movants ***combined***.  Accordingly, if the Court were to deny the Chesi Group's motion, the Luckin Investor Group would have the largest financial interest in this litigation among the remaining eligible movants.

### B.    The Luckin Investor Group Satisfies The Requirements Of Rule 23

The Luckin Investor Group has also made the requisite *prima facie* showing that it satisfies the typicality and adequacy requirements of Rule 23.  *See Aude*, 2018 U.S. Dist. LEXIS 57591, at

---

[3] *See also In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 421, 511 (E.D. Pa. 2005) (finding the amount of financial loss "the most significant" factor); *Takara Trust v. Molex, Inc.*, 229 F.R.D. 577, 579 (N.D. Ill. 2005) ("most courts simply determine which potential lead plaintiff has suffered the greatest total losses").

[4] As discussed *infra* at Section II.B., the AP7 Group is subject to unique defenses related to its Article III standing and thus ineligible for appointment as Lead Plaintiff irrespective of its financial interest.

*8; *Kaplan*, 240 F.R.D. at 94.  First, the Luckin Investor Group's claims satisfy the typicality requirement of Rule 23(a)(3) because its claims against Luckin and the other Defendants are based on the same legal theory and arise from the same events and course of conduct as the Class's claims.  *See*, *e.g.*, *In re Orion Secs. Litig.*, 08 Civ. 1238 (RJS), 2008 U.S. Dist. LEXIS 55368, at *12 (S.D.N.Y. July 7, 2008).  Second, the Luckin Investor Group satisfies the adequacy requirement of Rule 23(a)(4) because "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy."  *Foley*, 272 F.R.D. at 131; *see also Dookeran v. Xunlei Ltd.*, 18-cv-467 (RJS) *et al.*, 2018 U.S. Dist. LEXIS 62575, at *6 (S.D.N.Y. Apr. 12, 2018) (same).

Moreover, as discussed in greater detail below, as the Luckin Investor Group's Certifications (Dkt. No. 66-3), Joint Declaration (Dkt. No. 66-5), and Joint Response Declaration (Lieberman Response Decl., Ex. A) reflect, the Luckin Investor Group stands ready to vigorously prosecute this litigation on behalf of the investor class.  Finally, the Luckin Investor Group has further demonstrated its adequacy by selecting Pomerantz and Rosen Law—counsel highly capable and experienced in prosecuting securities cases and managing complex litigation—to serve as Co-Lead Counsel for the Class.

To overcome the strong presumption entitling the Luckin Investor Group to appointment as Lead Plaintiff, the PSLRA requires "***proof***" that the presumptive Lead Plaintiff is inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added).  No such proof exists with respect to the Luckin Investor Group and any suggestions to the contrary should be rejected as mere speculation.

### C.   The Luckin Investor Group Is An Appropriate Group

The Luckin Investor Group is an appropriate group, and as such the Court should consider the Group's aggregate financial interest in this litigation in determining the most adequate plaintiff for the Class.  Indeed, the Supreme Court recently acknowledged the utility of appointing groups of investors as lead plaintiff.  *China Agritech*, 138 S. Ct. at 1807 n.3 ("District courts often permit aggregation of plaintiffs into plaintiff groups").  *See also Blue Apron*, 2017 U.S. Dist. LEXIS 207531, at *13; *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) ("recogniz[ing] that appointing a group of people as co-lead plaintiffs is allowable under the PSLRA" and finding that a group of seven shareholders with the greatest loss was "presumptively the most adequate plaintiff"); *Barnet v. Elan Corp., PLC*, 236 F.R.D. 158, 162 (S.D.N.Y. 2005) (holding that "there can be no doubt" that the PSLRA permits appointment of groups and appointing group consisting of six members with the largest financial interest as lead plaintiff); *Cendant*, 264 F.3d at 266 ("The PSLRA explicitly permits a 'group of persons' to serve as lead plaintiff") (citation omitted).

Here, the group is a small, cohesive partnership of five investors, all of whom incurred significant losses in connection with their purchases of Luckin securities.  *See* Dkt. Nos. 66-3, 66-4.  The group's members have made a robust proffer as to their own identities and background), and comprise a diverse and educated group of investors from a variety of professional backgrounds, with more than 65 years cumulative experience investing in the securities markets.  *See* Dkt. No. 66-5 ¶¶ 2-6.  Moreover, the Luckin Investor Group's members have communicated several times via telephone and email—both before and after the filing of their motion—and discussed, *inter alia*:

- their strategy for prosecuting this case;
- their reasons for seeking appointment as a group;

8

- their common goals in ensuring that the Class achieves the best possible result, and that this action is litigated as efficiently as possible;

- the steps that the Luckin Investor Group's members will take to ensure that the Class's claims will be zealously and efficiently litigated;

- their understanding of the procedural posture of this litigation, the status of their motion, and their continued desire to serve as Co-Lead Plaintiffs.

*See generally* Dkt. No. 66-5; Lieberman Response Decl. Ex. A.  In addition, the Luckin Investor Group's members understand and appreciate the obligations of a Lead Plaintiff under the PSLRA. *Id.*  The group's members also recognize the benefits that a group of geographically diverse class representatives would bring to this litigation, in light of the ongoing COVID-19 pandemic.  *Id.*  As the group's members have attested, their counsel have kept them apprised of the status of this litigation generally and of their pending motion, and their Joint Response Declaration affirms that they remain no less committed to this litigation now than they did at the time that the group's motion was filed.  *See generally* Lieberman Response Decl. Ex. A.

Courts routinely appoint investor groups as lead plaintiff under such circumstances.  *See, e.g.*, *Blue Apron*, 2017 U.S. Dist. LEXIS, at *17 (appointing group of four unrelated investors that submitted declaration attesting "it is prepared to work cooperatively to serve the best interests of the class," and finding that the group is not "so large as to be unwieldy and impracticable"); *Brady v. Top Ships Inc.*, No. 17-CV-4987 (JFB) (SIL), 2018 U.S. Dist. LEXIS 121765, at *20 (E.D.N.Y. July 20, 2018) (appointing group of three investors as lead plaintiff, finding the group "sufficiently demonstrated its members' plans for cooperation and involvement in the litigation for the Court to find this group will best serve the class."); *West Palm Beach Police Pension Fund v. DFC Global Corp.*, No. 13-6731, 2014 U.S. Dist. LEXIS 49595, at *7 (E.D. Pa. Apr. 9, 2014) (appointing group and noting "declaration lay[ing] out the duties and obligations of" the group's members); *La. Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-cv-289, 2012 U.S. Dist.

9

LEXIS 89192, at *11 (D. Vt. Apr. 27, 2012) (finding a joint declaration "sufficient to assure the Court that the [lead] plaintiffs will effectively manage the litigation").

**II.      No Other Investor Satisfies The Statutory Criteria For Lead Plaintiff Appointment**

      **A.      The PSLRA Does Not Privilege Institutional Investors**

Anticipating a potential argument by the institutional investors seeking lead plaintiff appointment—specifically, the AP7 Group and Local 710—each of which alleges a significantly smaller loss than the Luckin Investor Group, the Luckin Investor Group respectfully submits that the clear language of the PSLRA does not mention, much less privilege, institutional investors. *See In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, 04-cv-0265, 2004 U.S. Dist. LEXIS 10200, at *7 (E.D. Pa. June 3, 2004) ("The language of the [PSLRA] does not require that institutional investors take precedence over individual plaintiffs who are otherwise qualified to serve in a lead capacity."). While there is no dispute in the congressional record that Congress hoped that institutional investors would seek appointment as lead plaintiffs, Congress did not make such an aspiration a basis in the text of the PSLRA to deny lead plaintiff status to individuals that had larger losses than institutional investors. Courts that have addressed this issue directly have held that:

> The institutional investor is not presumptively the most adequate plaintiff solely by virtue of its status as an institutional investor, however. If that were the case, Congress would have simply provided that institutional investors are presumptively the most adequate plaintiffs regardless of the size of financial loss and saved the Court from the need to engage in the very analysis it undertakes here. Instead, Congress chose to use the size of financial loss as the initial proxy for determining whether a particular plaintiff would be the "most adequate plaintiff."

*In re Texlon Corp. Secs. Litig.*, 67 F. Supp. 2d 803, 820-22 (N.D. Ohio 1999) (citations omitted). *See also Reiger v. Altris Software, Inc.*, 98-cv-0528 (JFS), 1998 U.S. Dist. LEXIS 14705, at *14 (S.D. Cal. Sept. 11, 1998) ("If Congress had intended to restrict the application of the rebuttable presumption to institutional investors, it could have stated such in the statute.").

The Eastern District of New York's decision in *In re Sequans Communs. S.A. Sec. Litig.*, 289 F. Supp. 3d 416 (E.D.N.Y. 2018) is instructive. There, as here, the court faced competing motions filed by (1) a group of individuals alleging an aggregate loss of $144,271, and (2) the Boca Raton Police and Firefighters' Retirement System (the "Retirement System"), an institutional investor alleging a significantly smaller loss of $45,948. *Id.* at 421. The court soundly rejected the argument that, as an institutional investor, the Retirement System should be appointed over the group of individuals in clear contravention of the PSLRA, particularly given the significantly larger losses alleged by the group:

> It is true that several courts have found that the PSLRA's legislative history embodies a preference for institutional investors serving as lead plaintiffs. Whatever the merits of that position may be—the preference is not embodied in the statutory text in any respect—that preference has been "determinative" when an "institutional investor has a slightly lower loss than another potential lead plaintiff." But as discussed above, Retirement System does not have a "slightly lower" loss than Johal and McGee, and the Court rejects the contention (based on an analysis of all four Olsten factors) that the financial interests are comparable.

*Id.* at 422 (citations omitted). Here, as in *Sequans Communs.*, the differential between the competing movants' losses is considerable: the Luckin Investor Group's loss of $9.42 million is roughly $2.5 million larger than the $6.9 million loss claimed by the AP7 Group, the institutional movant with the largest loss, and is more than four times the size of the $2.1 million loss claimed by Local 710. *See* Dkt. No. 56-4.

In sum, there is no basis in either the clear text of the PSLRA or in federal securities jurisprudence to appoint any institutional investor over the Luckin Investor Group simply because it is an institutional investor. Doing so would constitute an impermissible end-run around the unambiguous appointment procedure set forth in the PSLRA.

11

**B.       The AP7 Group Is Subject To The Unique Defense That It Lacks Standing**

Finally, even if the AP7 Group possessed the largest financial interest in this litigation (and as discussed herein, it plainly does not), it would in any event be ineligible for appointment as Lead Plaintiff in this action because serious questions exist with respect to its standing to pursue securities fraud claims against the Defendants in this action.  The PSLRA precludes appointment of a Lead Plaintiff who "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb).  "The PSLRA . . . provides that we ask simply whether [a movant] is likely to be 'subject to' the unique defense . . . ; we do not have to determine that the defense is likely to succeed."  *Bally Total Fitness*, 2005 U.S. Dist. LEXIS 6243, at *19.

AP7 has not established that it the owner of the Luckin securities listed on its Certification, and thus has not established that it has satisfied the injury-in-fact requirement necessary to establish Article III standing.  "[S]tanding requires that the plaintiff 'personally has suffered some actual or threatened injury.'"  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2015) (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982).  "[T]he injury must affect the plaintiff in a personal and individual way."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n. 1 (1992).  In a securities fraud action under Section 10(b) of the Exchange Act, the injury-in-fact requirement is satisfied when the plaintiff was a beneficial owner of the securities at issue, and engaged in a purchase or sale, during the relevant period during which misconduct allegedly occurred.  See, e.g., *In re Bank of America Corp. Sec., Derivative and ERISA Litig.*, No. 09-MD-2058, 2011 WL 3211472, at *12 (S.D.N.Y. 2011). [5]

---

[5] *See also In re Surebeam Corp. Secs. Litig.*, No. 03 CV 1721 JM (POR), 2003 U.S. Dist. LEXIS 25022, at *22 (S.D. Cal. Jan. 5, 2004) (denying lead plaintiff motion upon "find[ing] that there is at least a potential that [movant] will be subject to unique defenses and will not fairly and adequately protect the interests of the class."); *Schaffer v. Horizon Pharma PLC*, 16-CV-1763

A recurring issue in federal securities cases concerns the Article III standing of an investment company, investment advisor, or asset manager seeking to sue for injuries to its funds or customers who were themselves the beneficial owners of the securities at issue. The rule in these investment management company cases is that the company has Article III standing only if it has acquired "legal title to, or a proprietary interest in, the claim" of the beneficial owner of the securities. *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008). The Article III standing doctrine is not satisfied if the investment management company simply has some more limited form of authorization from its clients—for example, a power of attorney, or a similar agency relationship—but is not itself "the beneficial owner[ ] of the underlying securities." *Huff* at 103.

Here, the declaration submitted with the AP7 Group's motion describes AP7 as a Swedish asset manager. Dkt. No. 67-7 at ¶ 2. Asset managers provide management services with respect to assets, such as securities, the beneficial owners of which are often other investors, not the asset manager. AP7's Certification asserts that AP7 is acting on behalf of an entity named the AP7 Equity Fund (the "Equity Fund") (Dkt. No. 67-1 at *2 n.1), but does not explain the nature of the relationship between AP7 and the Equity Fund. Indeed, nothing in AP7's motion papers establishes that AP7 is, in fact, the beneficial owner of the Luckin securities listed on its Certification. Whether AP7 is the owner of the fund that invested in Luckin securities—apparently the Equity Fund, although again, this remains unclear from the AP7 Group's submissions—is separate and distinct from the question of whether AP7 is the owner of the assets of those funds—

---

(JMF), 2016 U.S. Dist. LEXIS 83175, at *11 (S.D.N.Y. June 27, 2016) ("'proof' of a non-speculative risk that the movant will not be adequate" sufficient to "rebut the presumption in favor of the movant with the greatest financial loss"); *In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427, 456 (S.D. Tex. 2002) (denying motion for lead plaintiff appointment due to "information [that] raises more than the mere specter of . . . unique defenses").

namely, the Luckin securities at issue in this litigation. Nor has AP7 submitted any assignment of the Equity Fund's claims to AP7.

In the absence of any such assignment, AP7 thus appears to be relying on the prudential exception to Article III's injury-in-fact requirement, which "permit[s] third-party standing where the plaintiff can demonstrate (1) a close relationship to the injured party and (2) a barrier to the injured party's ability to assert its own interests." *Huff*, 549 F.3d at 109 (citing *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004)). *See also Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 174 (2d Cir. 2005) ("[A] plaintiff seeking third-party standing in federal court must . . . demonstrat[e] a close relation to the injured third party and a hindrance to that party's ability to protect its own interests.") (internal quotation marks omitted). The prudential exception is construed extremely narrowly, as the Supreme Court has made clear that it does "'not look favorably upon third-party standing' except in certain circumstances." *Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 56-57 (E.D.N.Y. 2017) (quoting *Kowalski*, 543 U.S. at 130). Yet AP7 has made no showing in its motion papers as to why the prudential exception would apply here. The time for AP7 to make the requisite showing that it meets these prudential requirements was when it filed its motion. Yet it failed to do so. With AP7 having failed to explain the nature of its relationship to the Equity Fund or to demonstrate why the Equity Fund is unable to assert its own interests in this litigation, the Court is left guessing as to precisely how AP7 meets the Article III standing requirement.

Courts in the Second Circuit rigorously scrutinize the standing of asset/investment managers at the lead plaintiff appointment stage in PSLRA actions. Less than one year ago, in *Gross v. AT&T Inc.*, 19-CV-2892 (VEC), 2019 U.S. Dist. LEXIS 225777 (S.D.N.Y. June 24, 2019), Judge Valerie Caproni denied the lead plaintiff motion of Belgian asset manager KBC Asset

14

Management NV ("KBC"), finding that because "KBC does not own the underlying securities and has not been assigned an ownership interest in the claims at issue", it was therefore not an adequate lead plaintiff because it is subject to a unique defense"—namely, lack of standing to pursue securities fraud claims against the Defendants. *Id.* at \*4-\*5. AP7 specifically has failed to establish its Article III standing to bring such claims in other PSLRA actions. In *Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187 (S.D.N.Y. Jun. 20, 2011), the court found that AP7 itself lacked standing because it did not directly own any securities of the defendant company, and on that basis denied AP7's lead plaintiff motion because "arguments could be raised regarding AP7's third party standing, which subjects it to a unique defense and may prejudice the class." While other courts in the Second Circuit have found AP7 to have standing to assert securities fraud claims in other PSLRA actions, AP7's inconsistency in this respect underscores the likelihood that defendants will aggressively litigate this issue, and creates a non-speculative risk that even if this Court finds that AP7 does possess Article III standing, the Second Circuit may reach a different conclusion if the issue were to be the subject of appeal. The Class should not be burdened with such uncertainty throughout the progress of this litigation.

In sum, having failed to demonstrate that it is the owner of the Luckin securities listed on the Certification submitted with its motion papers, apparently lacking any assignments from the fund at issue, and failing to demonstrate the necessary criteria to invoke the prudential exception, AP7 has failed to establish that it has Article III standing to bring securities fraud claims against Luckin in this action—and, moreover, has at best a mixed record with respect to establishing its standing in prior PSLRA actions in which it was a litigant. Again, "[t]he PSLRA . . . provides that we ask simply whether [a movant] is likely to be 'subject to' the unique defense . . . ; we do not have to determine that the defense is likely to succeed." *Bally Total Fitness* 2005 U.S. Dist. LEXIS

15

6243, at \*19.  *See also Steamfitters Local 449 Pension Fund v. Cent. European Distrib. Corp.*, Nos. 11-6247 (JBS/KMW) *et al.*, 2012 U.S. Dist. LEXIS 118693, at \*26-\*27 (D.N.J. Aug. 22, 2012) ("There is no requirement at this  [\*27] early stage to 'prove a defense, only to show a degree of likelihood that a unique defense might play a significant role at trial. . . . The point . . . is not to adjudicate the case before it has even begun, but rather to protect the absent class members from the expense of litigating defenses applicable to lead plaintiffs but not to the class as a whole.'") (quoting *In re Netflix, Inc., Sec. Litig.*, Nos. 12-0225 SC *et al.*, 2012 U.S. Dist. LEXIS 59465 (N.D. Cal. Apr. 26, 2012)).  In light of all of the foregoing, AP7's standing is practically certain to be raised by Defendants in this litigation.  Accordingly, the risk that AP7 may be found to lack standing altogether, thus needlessly mandating the dismissal of the entire litigation to the obvious prejudice of the investor class, is clearly far more than mere speculation.  "In good conscience this Court cannot endanger this litigation by ignoring [these] issues".  *Enron*, 206 F.R.D. at 456.  The Class should not be saddled with a Lead Plaintiff subject to such lethal questions regarding its capacity to bring this lawsuit on its own behalf, let alone on behalf of the rest of the Class.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in the Luckin Investor Group's moving brief (Dkt. No. 66), if the Court denies the motion of the Chesi Group, then the Luckin Investor Group respectfully requests that the Court grant its motion in all respect and deny the competing motions.

Dated:  May 13, 2020

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor

16

New York, New York 10016
(212) 661-1100
jalieberman@pomlaw.com
ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
(312) 377-1181
pdahlstrom@pomlaw.com

THE ROSEN LAW FIRM, P.A.
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*Counsel for the Luckin Investor Group and Proposed Co-Lead Counsel for the Class*

THE SCHALL FIRM
Brian Schall
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: 310-301-3335
Fax: 877-590-0482
Email: brian@schallfirm.com

*Additional Counsel for the Luckin Investor Group and Proposed Co-Lead Counsel for the Class*

KASKELA LAW LLC
Seamus Kaskela
18 Campus Boulevard, Suite 100
Newtown Square, PA 19073
Telephone: (888) 715-1740
Email: skaskela@kaskelalaw.com

*Additional Counsel for the Luckin Investor Group and Proposed Co-Lead Counsel for the Class*

17