# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARTIN COHEN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> LUCKIN COFFEE INC., JENNY ZHIYA QIAN, and REINOUT HENDRIK SCHAKEL, <br><br> Defendants. | Case No. 1:20-cv-01293-LJL <br><br> <u>CLASS ACTION</u> <br><br> <u>ORAL ARGUMENT REQUESTED</u> |
| WAI CHUN SHEK, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> LUCKIN COFFEE INC., JENNY ZHIY A QIAN, CHARLES ZHENGYAO LU, REINOUT HENDRIK SCHAKEL, JINYI GUO, JIAN LIU, HUI LI, ERHAI LIU, CREDIT SUISSE SECURITIES (USA) LLC, MORGAN STANLEY & CO. LLC, CHINA INTERNATIONAL CAP IT AL CORPORATION HONG KONG SECURITIES LIMITED, HAITONG INTERNATIONAL SECURITIES COMPANY LIMITED, KEYBANC CAPITAL MARKETS INC., AND NEEDHAM & COMPANY, LLC, <br><br> Defendants. | Case No. 1:20-cv-02977-LJL |

| | |
|---|---|
| CHRISTOPHE STERCKX, Individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>LUCKIN COFFEE INC., JENNY ZHIYA QIAN, REINOUT HENDRIK SCHAKEL, CHARLES ZHENGYAO LU, JIAN LIU, JINYI GUO, HUI LI, ERHAI LIU, CREDIT SUISSE SECURITIES (USA) LLC, MORGAN STANLEY & CO. LLC, CHINA INTERNATIONAL CAPITAL CORPORATION HONG KONG SECURITIES LIMITED, HAITONG INTERNATIONAL SECURITIES COMPANY LIMITED, KEYBANC CAPITAL MARKETS INC., and NEEDHAM & COMPANY, LLC,<br><br>     Defendants. | Case No. 1:20-cv-03304-LJL |

**MEMORANDUM IN SUPPORT OF THE MOTION OF CHESI ASSETS LIMITED GROUP FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL; AND IN OPPOSITION TO ALL COMPETING MOTIONS**

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ............................................................................................................................ 3

I.  CHESI ASSETS LIMITED GROUP IS THE MOST ADEQUATE PLAINTIFF ........... 3

   A.  Chesi Assets Limited Group Has the Largest Financial Interest ............................ 3

   B.  Chesi Assets Limited Group Satisfies the Adequacy and Typicality
       Requirements of Rule 23 ..................................................................................... 4

       1.  Chesi Assets Limited Group Is Adequate ...................................................... 5

       2.  Chesi Assets Limited Group Is Typical ......................................................... 7

   C.  The Presumption That Chesi Assets Limited Group Should Be Appointed
       Lead Plaintiff Cannot Be Rebutted ...................................................................... 9

II.  ALL COMPETING MOTIONS SHOULD BE DENIED ............................................... 10

   A.  The Luckin Investor Group Is a Lawyer-Driven Group of Disparate
       Investors Lacking any Meaningful Connection .................................................... 10

   B.  Standing Concerns Render AP7 Inadequate .......................................................... 12

       1.  AP7 Lacks Standing and Cannot be Lead Plaintiff ................................. 12

       2.  AP7 Cannot Qualify for a Standing Exception ....................................... 13

       3.  Under *Huff*, AP7 Lacks a "Close Relationship" .................................... 14

       4.  Under *Huff*, Granting AP7 an Exception Is Not Needed to Permit
           the Injured Party to Assert Its Own Interests .......................................... 19

CONCLUSION ......................................................................................................................... 21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baldwin v. Net 1 UEPS Techs., Inc.*,
No. 19-cv-11174 (PKC), 2020 WL 1444937 (S.D.N.Y. Mar. 25, 2020) ...................................5

*Baydale v. Am. Express Co.*,
No. 09 Civ. 3016 (WHP), 2009 WL 2603140 (S.D.N.Y. Aug. 14, 2009)...............................15

*Beckman v. Ener1, Inc.*,
No. 11 Civ. 5794 PAC, 2012 WL 512651 (S.D.N.Y. Feb. 15, 2012) ....................................11

*Berdeaux v. Onecoin Ltd.*,
No. 19-CV-4074 (VEC), 2019 WL 3815147 (S.D.N.Y. July 11, 2019) ................................10

*In re Boeing Co. Aircraft Sec. Litig.*,
No. 19 CV 2394, 2019 WL 6052399 (N.D. Ill. Nov. 15, 2019) ...............................................9

*Carter v. HealthPort Techs.*,
822 F.3d 47 (2d Cir. 2016)......................................................................................................15

*City of Riviera Beach Gen. Emps.' Ret. Sys. v. Macquarie Infrastructure Corp.*,
No. 18-CV-3608 (VSB), 2019 WL 364570 (S.D.N.Y. Jan. 30, 2019)..................................4, 5

*Cohen v. U.S. District Court*,
586 F.3d 703 (9th Cir. 2009) ....................................................................................................6

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06-CV-1825 (NGG) (RER), 2008 WL 820015 (E.D.N.Y. Mar. 25, 2008) .......................9

*Constance Sczesny Tr. v. KPMG LLP*,
223 F.R.D. 319 (S.D.N.Y. 2004) ...............................................................................................5

*In re Donnkenny Inc. Sec. Litig.*,
171 F.R.D. 156 (S.D.N.Y. 1997) .............................................................................................10

*Elstein v. Net1 UEPS Techs., Inc.*,
No. 14 Civ. 9100 (ER), 2014 WL 3687277 (S.D.N.Y. July 23, 2014)...................................11

*Faig v. Bioscrip, Inc.*,
No. 13 Civ. 06922 (AJN), 2013 WL 6705045 (S.D.N.Y. Dec. 19, 2013)................................8

*Friedman v. Quest Energy Partners LP*,
261 F.R.D. 607 (W.D. Okla. 2009).........................................................................................15

*Glauser v. EVCI Career Colls. Holding Corp.*,
   236 F.R.D. 184 (S.D.N.Y. 2006) ..................................................................................3

*Glavan v. Revolution Lighting Techs., Inc.*,
   No. 19-CV-980 (JPO), 2019 WL 3406582 (S.D.N.Y. July 29, 2019).....................................4

*Goplen v. 51JOB, Inc.*,
   No. 05Civ.769CSH, 2005 WL 1773702 (S.D.N.Y. July 26, 2005).........................................9

*Greene v. Gerber Prod. Co.*,
   262 F. Supp. 3d 38 (E.D.N.Y. 2017) ...................................................................................13

*Hachem v. Gen. Elec. Inc.*,
   No. 17-cv-8457 (JMF) (S.D.N.Y. May 23, 2018) ...................................................................16

*Hedick v. Kraft Heinz Co.*,
   No. 19-cv-1339, 2019 WL 4958238 (N.D. Ill. Oct. 8, 2019) ..................................................16

*In re Herley Indus. Inc. Sec. Litig.*,
   No. 06-2596, 2009 WL 3169888 (E.D. Pa. Sept. 30, 2009) .....................................................15

*Hevesi v. Citigroup Inc.*,
   366 F.3d 70 (2d Cir. 2004)....................................................................................................8

*Khunt v. Alibaba Grp. Holding Ltd.*,
   102 F. Supp. 3d 523 (S.D.N.Y. 2015).....................................................................................10

*Kniffin v. Micron Tech., Inc.*,
   379 F. Supp. 3d 259 (S.D.N.Y. 2019).....................................................................................12

*Kuriakose v. Fed. Home Loan Mortg. Co.*,
   No. 08-CV-7281, 2008 WL 4974839 (S.D.N.Y. Nov. 24, 2008).............................................6

*Li Hong Cheng v. Canada Goose Holdings Inc.*,
   No. 19-CV-8204 (VSB), 2019 WL 6617981 (S.D.N.Y. Dec. 5, 2019)................................3, 4

*Lipetz v. Wachovia Corp.*,
   No. 08 Civ. 6171 (RJS), 2008 WL 4615895 (S.D.N.Y. Oct. 10, 2008) ..................................5

*Louisiana Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*,
   No. 2:11–cv–289, 2012 WL 12985571 (D. Vt. Apr. 27, 2012)...............................................16

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)................................................................................................................13

*Mahon v. Ticor Title Ins. Co.*,
   683 F.3d 59 (2d Cir. 2012) .....................................................................................................13

iii

*Marcus v. J.C. Penney Co.*,
No. 6:13-CV-736, 2014 WL 12712592 (E.D. Tex. May 8, 2014) ..........................................15

*Monk v. Johnson & Johnson*,
No. 10-cv-0484 (D.N.J. Dec. 6, 2010)...................................................................................16

*Moshell v. Sasol Ltd.*,
No. 20-cv-1008 (JSR), 2020 WL 2115410 (S.D.N.Y. May 4, 2020).............................. *passim*

*MVP Asset Mgmt. (USA) Ltd. Liab. Co. v. Vestbirk*,
No. 2:10-cv-02483-GEB-CMK, 2011 WL 1457424 (E.D. Cal. Apr. 14, 2011) .....................15

*Northstar Fin. Advisors, Inc. v. Schwab Invs.*,
609 F. Supp. 2d 938 (N.D. Cal. 2009) ...................................................................................15

*OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*,
63 F. Supp. 3d 394 (D. Del. 2014)...........................................................................................9

*Peters v. Jinkosolar Holdings, Co.*,
No. 11 Civ. 7133 (JPO), 2012 WL 946875 (S.D.N.Y. Mar. 19, 2012) ..................................11

*Pierce v. Soc'y of Sisters*,
268 U.S. 510 (1925)................................................................................................................14

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
275 F.R.D. 187 (S.D.N.Y. 2011) .........................................................................13, 15, 16, 19

*Plaut v. Goldman Sachs Grp., Inc.*,
No. 18-CV-12084 (VSB), 2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019) ..............................16

*In re Ply Gem Holdings, Inc., Sec. Litig.*,
No. 14-CV-3577(JPO), 2014 WL 12772081 (S.D.N.Y. Oct. 14, 2014)....................................4

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
219 F.R.D. 343 (D. Md. 2003)..................................................................................................6

*Salinger v. Sarepta Therapeutics, Inc.*,
No. 19-CV-8122 (VSB), 2019 WL 6873807 (S.D.N.Y. Dec. 17, 2019)...............................7, 8

*In re Salomon Smith Barney Mut. Fund Fees Litig.*,
441 F. Supp. 2d 579 (S.D.N.Y. 2006)................................................................................20, 21

*In re SLM Corp. Sec. Litig.*,
258 F.R.D. 112 (S.D.N.Y. 2009) ............................................................................................15

*Sonterra Capital Master Fund Ltd. v. UBS AG*,
954 F.3d 529 (2d Cir. 2020)....................................................................................12, 13, 20

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016)........................................................................................20

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*
  554 U.S. 269 (2008)..........................................................................................14

*Steamfitters Local 449 Pension Fund v. Cent. European Distrib. Corp.*,
  No. 11–6247, 2012 WL 3638629 (D.N.J. Aug. 22, 2012).......................................15

*Strougo v. Brantley Capital Corp.*,
  243 F.R.D. 100 (S.D.N.Y. 2007) ...........................................................................5

*United States v. Sineneng-Smith*,
  No. 19-67, 2020 WL 2200834 (U.S. May 7, 2020)  ...............................................17

*United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 v.
  Ocwen Fin. Corp.*,
  No. 14–CIV–81507–WPD, 2014 WL 7236985 (S.D. Fla. Nov. 7, 2014)...............................16

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
  589 F. Supp. 2d 388 (S.D.N.Y. 2008)......................................................................3

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
  549 F.3d 100 (2d Cir. 2008)............................................................ *passim*

*Warth v. Seldin*,
  422 U.S. 490 (1975)..........................................................................................13


**Rules & Statutes**

Fed. R. Civ.P. 23 .......................................................................................... *passim*

15 U.S.C. § 78u-4 *et seq.* .............................................................................. *passim*


**Other Authorities**

*About US,* AP7.SE, https://www.ap7.se/english/about-us/ (last visited May 6,
  2020) ..........................................................................................................12

Brian McTeir and John Wald, *The Causes and Consequences of Securities Class
  Action Litigation,* 17 J. CORP. FIN. 649-665 (2011)................................................17

Charles Silver & Sam Dinkin, *Incentivizing Institutional Investors to Serve as
  Lead Plaintiffs in Securities Fraud Class Actions,* 57 DEPAUL L. REV. 471
  (2008)..........................................................................................................18

Elliott J. Weiss & John **S.** Beckerman, *Let the Money Do the Monitoring: How Institutional Investors Can Reduce Agency Costs in Securities Class Actions,* 104 YALE L. J**.** 2053, 2112 (1995) ..................................................................................18

Michael C. Jensen and William H. Meckling, *Theory of the Firm: Managerial Behavior, Agency Costs and Ownership Structure, 3 J. Fin. Econ.  305-360 (1976)* ..................................................................................................................17

Proposed Lead Plaintiff Chesi Assets Limited Group respectfully submits this memorandum in further support of its motion for consolidation of the above-captioned actions, appointment as Lead Plaintiff, and approval of Labaton Sucharow as Lead Counsel for the Class (ECF No. 69),[1] and in opposition to all competing motions.[2]

## PRELIMINARY STATEMENT

Chesi Assets Limited Group is the presumptive Lead Plaintiff in this litigation by virtue of the ***$19 million loss*** it incurred on its investments in the publicly-traded securities of Luckin Coffee Inc. ("Luckin" or the "Company") that are at issue in this securities class action. That loss, along with its *prima facie* showing of adequacy and typicality, qualifies it as the "most adequate plaintiff" and the presumptive Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(bb).

The $19 million loss incurred by Chesi Assets Limited Group is more than twice the loss of the second and third largest movants. As demonstrated by the chart below, no other movant group has a financial interest greater than Chesi Assets Limited Group *or even* of its group member, Interactive Digital Finance Limited, whose loss of $12,851,429 is larger than any other movant.

---

[1] All definitions and abbreviations used herein remain unchanged from Chesi Assets Limited Group's previous submission before the Court. *See* ECF Nos. 69–70.

[2] Including Chesi Assets Limited Group, eighteen movants initially moved for appointment as Lead Plaintiff. Of these movants, only five remain in addition to Chesi Assets Limited Group: (i) James Sproul, John Hickey, Khaled Abdullah Almdamegh, Li Tutang, and Regent Mercantile Holdings Limited (the "Luckin Investor Group") (ECF No. 64); (ii) Louisiana Sheriffs' Pension & Relief Fund ("Louisiana Sheriffs") and Sjunde AP-Fonden ("AP7") (ECF No. 61); (iii) Teamsters Local 710 Pension Fund ("Local 710") (ECF No. 51); (iv) Wai Chun Sken ("Sken") (ECF No. 10); and (v) Chaile Steinberg (ECF No. 58).



As such, Chesi Assets Limited Group is the movant most incentivized to act as a vigorous advocate on behalf of the Class and is the presumptive Lead Plaintiff.

Chesi Assets Limited Group also satisfies the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), and is well situated to represent all Class members. Chesi Assets Limited Group members submitted declarations attesting in their own words that they "will ensure that this action is prosecuted vigorously and efficiently in order to maximize recovery for the entirety of the Class." ECF No. 76-4 ¶ 3. The owner and sole director of Interactive Digital Finance Limited, Tiah Thee Kian, is particularly well qualified to direct and oversee counsel given his extensive background as a corporate leader and his familiarity with Luckin. *Id.* ECF No. 76-4 ¶¶ 2-3. Chesi Assets Limited Group is also free of conflict, and possesses the experience, resources, and incentive needed to best protect the Class. Chesi Assets Limited Group has also demonstrated its adequacy with its selection of Labaton Sucharow, a nationally recognized securities class action firm as proposed Lead Counsel.

Because Chesi Assets Limited Group has the largest financial interest in the litigation and has made a *prima facie* showing of its typicality and adequacy, it is entitled to a strong presumption that it is the "most adequate plaintiff." Under the PSLRA, that presumption can only be rebutted "upon ***proof,***" record evidence, that Chesi Assets Limited Group is inadequate or atypical. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added). No such "proof" exists. *See Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 189-90 (S.D.N.Y. 2006) (rejecting "speculative and hypothetical argument that [presumptive lead plaintiff] ***might*** be subject to a later attack by Defendants") (emphasis in original); *see also Moshell v. Sasol Ltd.*, No. 20-cv-1008 (JSR), 2020 WL 2115410, at *2–3 (S.D.N.Y. May 4, 2020) (finding that speculative arguments did not rebut presumption of most adequate plaintiff).

**ARGUMENT**

**I.    CHESI ASSETS LIMITED GROUP IS THE MOST ADEQUATE PLAINTIFF**

Chesi Assets Limited Group, comprised of sophisticated investors and tested fiduciaries, is the presumptive Lead Plaintiff under the PSLRA.

**A.    Chesi Assets Limited Group Has the Largest Financial Interest**

Chesi Assets Limited Group's financial interest of **$19,126,029.59** is at least twice as large as the losses claimed by any other movant. *See* ECF No. 76-3. Therefore, Chesi Assets Limited Group, as the movant with "the largest financial interest in the relief sought by the class" is the "most adequate plaintiff." 15 U.S.C. § (a)(3)(B)(iii)(I)(bb).

While the PSLRA does not specify how to calculate the size of a given plaintiff's financial interest, courts in this Circuit have traditionally focused on "financial loss" as the most relevant proxy for financial interest. *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 395 (S.D.N.Y. 2008)); *Li Hong Cheng v. Canada Goose Holdings Inc.*, No. 19-CV-8204 (VSB), 2019 WL 6617981, at *3–6 (S.D.N.Y. Dec. 5, 2019) (citing cases for

3

proposition that "the magnitude of the loss suffered is normally the most significant factor when determining a movant's financial interest").  Chesi Assets Limited Group indisputably suffered the largest loss and, therefore, has the largest financial interest of any other movant.[3]

Chesi Assets Limited Group's losses are double the Luckin Investor Group's loss of $9,415,544.  *See* Keller Decl., Ex. A (loss analysis); *see also* Section II.A. *infra*.  Both Interactive Digital Finance Limited and Chesi Assets Limited, with losses of **$12,851,429** and **$6,274,600** respectively, each have a larger loss than *any other individual movant*.  Interactive Digital Finance Limited's loss, standing alone, is also larger than that of any other movant group in the aggregate.  *See In re Ply Gem Holdings, Inc., Sec. Litig.*, No. 14-CV-3577(JPO), 2014 WL 12772081, at *2 (S.D.N.Y. Oct. 14, 2014) (appointing single entity with largest financial stake as lead plaintiff).

Put simply, Chesi Assets Limited Group indisputably "has the largest financial interest in the relief sought by the [C]lass," and is the presumptive "most adequate plaintiff."  *Id.*, at *1 (quoting 15 U.S.C. § (a)(3)(B)).

### B.   Chesi Assets Limited Group Satisfies the Adequacy and Typicality Requirements of Rule 23

Chesi Assets Limited Group also satisfies the PSLRA's preliminary showing of adequacy and typicality.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *City of Riviera Beach Gen. Emps. Ret. Sys. v. Macquarie Infrastructure Corp.*, No. 18-CV-3608 (VSB), 2019 WL 364570, at *4

---

[3]  Chesi Assets Limited Group also triumphs on the three other factors considered by courts in this Circuit to determine financial interest. *Glavan v. Revolution Lighting Techs., Inc.*, No. 19-CV-980 (JPO), 2019 WL 3406582, at *3 (S.D.N.Y. July 29, 2019) ("Courts in this Circuit have traditionally examined four factors: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period . . . ; (3) the total net funds expended during the class period; and (4) the approximate loss suffered during the class period."). *See* Declaration of Christopher J. Keller ("Keller Declaration"), Ex. A (loss analysis).

(S.D.N.Y. Jan. 30, 2019) ("A potential lead plaintiff must also make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23.") (internal quotation marks and citation omitted); *Sasol Ltd.,* 2020 WL 2115410, at *1 (same).

### 1. Chesi Assets Limited Group Is Adequate

First, as to its adequacy, the interests of Chesi Assets Limited Group mirror those of the Class in maximizing potential recovery in this litigation. Chesi Assets Limited Group suffered substantial losses in its Luckin investments and is highly incentivized to vigorously pursue this litigation and oversee counsel. *See Lipetz v. Wachovia Corp.*, No. 08 Civ. 6171 (RJS), 2008 WL 4615895, at *3 (S.D.N.Y. Oct. 10, 2008) (noting investor's "substantial financial stake in the litigation" suggests that it would vigorously prosecute claims on behalf of the class); *see also Baldwin v. Net 1 UEPS Techs., Inc.*, No. 19-cv-11174 (PKC), 2020 WL 1444937, at *3 (S.D.N.Y. Mar. 25, 2020) (noting that "financial loss and . . . moving to be appointed lead plaintiff demonstrate sufficient interest in the outcome of the case"). Further, Chesi Assets Limited Group lacks any antagonism towards the Class. *See City of Riviera Beach Gen. Employees Ret. Sys.*, 2019 WL 364570, at *7 (adequacy inquiry tests whether "there exists any conflict between [the movant's] claims and those asserted on behalf of the class").[4]

Second, Chesi Assets Limited Group, comprised of two sophisticated entities with extensive experience overseeing counsel, has selected and retained Labaton Sucharow as its proposed Lead Counsel for the Class after lengthy discussion and negotiation of a detailed

---

[4] *See also, e.g., Strougo v. Brantley Capital Corp.*, 243 F.R.D. 100, 105 (S.D.N.Y. 2007) ("[s]peculation and conjecture from one interested party is not enough" to rebut presumption of adequacy, instead requiring "evidence currently before [the] Court"); *Constance Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 324–25 (S.D.N.Y. 2004) (finding that "conclusory assertions of inadequacy" were "insufficient to rebut the statutory presumption under the PSLRA with specific support in evidence of the existence of an actual or potential conflict of interest or a defense to which [movant] would be uniquely subject").

retainer agreement.  *See* ECF No. 76-4 ¶ 3 ("I have substantial experience in interacting with and directing lawyers, while ensuring efficient and effective representation"); *Id.* ¶ 6 ("My staff and I have had numerous conversations with the representatives of Chesi Assets and with the counsel since learning of this case"); *see also Cohen v. U.S.  District Court*, 586 F.3d 703, 712 (9th Cir. 2009) (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001)) (considering "the process through which the lead plaintiff selected its candidates for and final choice of lead counsel").  Labaton Sucharow has decades of experience successfully litigating complex securities class actions, including numerous landmark cases in this District, and is therefore well suited to prosecute this litigation.  *See* ECF No. 70 at 10-11;  *Sasol Ltd.*, 2020 WL 2115410, at *2 (finding adequacy requirement satisfied where movant selected "firm experienced in securities class action litigation").[5]

Beyond selecting highly qualified counsel, Chesi Assets Limited Group has the sophistication and experience necessary to effectively oversee counsel in this case, a lead plaintiff's critical function.  *See* ECF Nos. 76-1, 76-4.

Finally, as set forth in the supplemental declarations of its members, Chesi Assets Limited Group has gone beyond its required *prima facie* showing of adequacy to establish it has the sophistication, experience, and resources necessary to effectively and efficiently represent the Class in this litigation.  Interactive Digital Finance Limited, the investor claiming the largest individual or collective loss out of all competing movants, will be represented by Tiah Thee Kian

---

[5] *See also In re Royal Ahold N.V. Sec. & ERISA Litig.*, 219 F.R.D. 343, 350 (D. Md. 2003) ("In making the adequacy determination the court also should consider . . . 'whether the movant has demonstrated a willingness and ability to select competent class counsel.'") (emphasis added); *Kuriakose v. Fed. Home Loan Mortg. Co.*, No. 08-CV-7281, 2008 WL 4974839, at *9 (S.D.N.Y. Nov. 24, 2008) ("The PSLRA . . . evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.") (quotations omitted) (emphasis added).

("Kian"), its sole director.  As set forth in his detailed declaration, Kian possesses a wealth of experience in running numerous international companies, including serving as the Non-Executive Chairman of TA Enterprise Berhad and the Executive Chairman of TA Global Berhad, which are both listed on the Main Board of the Bursa Malaysia.  ECF No. 76-4.  Through this experience, Kian is adept in supervising and directing counsel in complex litigation and is committed to doing so here.  *Id.*

Chesi Assets Limited will be represented by Lau Lai Sze ("Sze"), Executive Director and Head of Private Wealth Services at Intertrust Group ("Intertrust"), and Lau Lui Yeuk Hang ("Hang"), Senior Manager of Private Wealth Services at Intertrust.  Intertrust serves both Chesi Assets Limited and Interactive Digital Finance.  Sze and Hang oversee and manage the day-to-day operations of Chesi Assets Limited through the company's sole director, INB Holdings.  INB Holdings is a company that serves as a corporate director for Intertrust clients of which Sze and Hang are authorized signatories.  ECF No. 76-1 ¶ 2.  Both are experienced in communicating with, managing, and overseeing lawyers.  *Id.* ¶ 7.  Sze in particular has over 20 years' experience advising a wide range of clients in complex financial and corporate matters, and currently leads a team of trust and corporate professionals.  Both Sze and Hang have similarly affirmed they will zealously carry out the obligations and duties of Chesi Assets Limited if appointed as Lead Plaintiff.

Accordingly, Chesi Assets Limited Group is adequate to represent the Class.

### 2. Chesi Assets Limited Group Is Typical

Chesi Assets Limited Group is typical to the Class and not subject to any potentially disqualifying unique defenses.  "With respect to typicality, courts consider whether the claims of the proposed lead plaintiff 'arise from the same conduct from which the other class members' claims and injuries arise.'" *Salinger v. Sarepta Therapeutics, Inc.*, No. 19-CV-8122 (VSB), 2019

7

WL 6873807, at *3 (S.D.N.Y. Dec. 17, 2019) (quoting *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002)).  Additionally, Rule 23 does not require the lead plaintiff to be identically situated with all class members to satisfy the typicality requirement.  *See id.*, (noting that "claims need not be identical"); *see also Faig v. Bioscrip, Inc.*, No. 13 Civ. 06922 (AJN), 2013 WL 6705045, at *3 (S.D.N.Y. Dec. 19, 2013) (same); *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2004) ("[n]othing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action.  Rather, because the PSLRA mandates that courts must choose a party who has, among other things, the largest financial stake in the outcome of the case, it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim.").

As applied, Chesi Assets Limited Group's claims are typical of the proposed Class. Chesi Assets Limited Group: (i) suffered losses on its investments in Luckin securities; (ii) as a result of its reliance on Defendants' alleged misstatements concerning the Company's revenues and compliance with applicable accounting rules; (iii) therefore, the claims of Chesi Assets Limited Group are based on the same course of events as the claims of the Class; and (iv) as a result thereof, Chesi Assets Limited Group's claims will rely upon the same legal theories as the Class as a whole.  Therefore, the typicality requirement is satisfied as to Chesi Assets Limited Group.  *See Sasol Ltd.*, 2020 WL 2115410, at *1 (finding typicality where a plaintiff sought "recovery for losses incurred as a result of defendants alleged misrepresentations and omissions with respect to a single course of conduct whose revelation resulted in declines in the price of . . . securities") (internal quotation marks and citation omitted).

8

### C.    The Presumption That Chesi Assets Limited Group Should Be Appointed Lead Plaintiff Cannot Be Rebutted

To overcome the presumption that Chesi Assets Limited Group should be appointed as Lead Plaintiff, the PSLRA allows competing movants to offer ***proof*** that Chesi Assets Limited Group is atypical or inadequate.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Sarepta Therapeutics, Inc.*, 2019 WL 6873807, at *5 (noting that proof is required to rebut presumption); *OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 402 (D. Del. 2014) ("the PSLRA requires 'actual proof' that the presumptive lead plaintiffs are inadequate representatives of the class or subject to unique defenses") (citing *In re Cendant*, 264 F.3d at 269).  No such proof exists here.

Predictably, movants will challenge Chesi Assets Limited Group in an attempt to gain the "procedural plum[]" of lead plaintiff appointment.  *Goplen v. 51JOB, Inc.*, No. 05Civ.769CSH, 2005 WL 1773702, at *1 (S.D.N.Y. July 26, 2005); *Sasol Ltd.*, 2020 WL 2115410, at *2–3 (finding that speculative arguments did not rebut presumption of most adequate plaintiff).[6] Such challenges will do nothing to weaken the inarguable fact that Chesi Assets Limited Group will best represent the Class, and is most qualified to do so.  As the Court's ultimate inquiry is to

---

[6]    Opposing movants may question whether Chesi Assets Limited Group's purchases after the January 31, 2020, Muddy Watters report raise issues as to its typicality.  Not so.  *See, e.g.*, *In re Boeing Co. Aircraft Sec. Litig.*, No. 19 CV 2394, 2019 WL 6052399, at *9 (N.D. Ill. Nov. 15, 2019) (finding lead plaintiff movant who purchased 99.4 percent of shares after first partial disclosure was typical and holding that "there is no requirement that a lead plaintiff's purchases have been uniformly distributed over the course of a putative class period"); *see also In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2008 WL 820015, at *3 (E.D.N.Y. Mar. 25, 2008) (rejecting opposing movant's argument that purchases after alleged partial disclosures created a unique defense where the partial disclosures were too weak to "counter-balance effectively" the company's previous false and misleading statements and "[t]here are undoubtedly many members of the class of plaintiffs who, like [the lead plaintiff], purchased shares of [the company] only after the [partial disclosures]"); *see also* Ex. B, Declaration of Chad Coffman (opining that there is no fundamental difference in the economic logic of the claims made by purchasers prior to or after January 31, 2020).

identify the "most adequate" movant to represent the Class, the Court will find no better representative than Chesi Assets Limited Group.

## II.   ALL COMPETING MOTIONS SHOULD BE DENIED

Although the sequential PSLRA selection process prohibits a "freewheeling comparison" of movants, it is appropriate for the presumptive Lead Plaintiff to highlight for the Court the deficiencies in the motions of the other movants.  *See* 15 U.S.C. § 78u-4(a)(3)(B); *see also Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 535–36 (S.D.N.Y. 2015) ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status . . . .'") (quoting *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002)). There are many.

### A.   The Luckin Investor Group Is a Lawyer-Driven Group of Disparate Investors Lacking any Meaningful Connection

The Luckin Investor Group is a disparate group of investors lacking any kind of pre-litigation relationship.  These strangers were cobbled together in a makeshift "group" solely for "'the purpose of amassing an aggregation of investors purported to have the greatest financial interest in the action.'"  *Berdeaux v. Onecoin Ltd.*, No. 19-CV-4074 (VEC), 2019 WL 3815147, at *1 (S.D.N.Y. July 11, 2019) (quoting *Verghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008)).  This patchwork of movants and counsel stands as the antithesis to the PSLRA's policy goals and, therefore, renders this makeshift "group" inadequate under Rule 23.  *See In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 158 (S.D.N.Y. 1997) (noting that in passing the PSLRA, "Congress hoped that the lead plaintiff would seek the lawyers, rather than having the lawyers seek the lead plaintiff").

The Luckin Investor Group fails to justify how the appointment of seven unrelated investors, represented by four different law firms, "would best serve the class"—nor can they.

10

*Varghese*, 589 F. Supp. 2d at 392 (burden on proposed group).  Indeed, the Luckin Investor Group does not even attempt to justify its lawyer-driven origins, leaving unanswered the paramount question of *how* the group was formed and *why* the seven member group requires two co-lead counsel and two "additional counsel."  *See Beckman v. Ener1, Inc.,* No. 11 Civ. 5794 PAC, 2012 WL 512651, at *3 (S.D.N.Y. Feb. 15, 2012) (finding request for three laws firms as co-lead counsel "demonstrate[d] a lack of cohesion").

Moreover, in an effort to "reduce" its unwieldy membership, the Luckin Investor Group manufactures a group of five (the upper end of acceptable PSLRA group size) by arranging for James Sproul to be assigned the claims of his brother, Alessandro Sproul, and grandfather, Elvio Delzotto.  *See* ECF No. 66 at 12-13.  *Peters v. Jinkosolar Holdings, Co.*, No. 11 Civ. 7133 (JPO), 2012 WL 946875, at *7 (S.D.N.Y. Mar. 19, 2012) ("courts appear to generally agree that a group comprising five or fewer members is appropriate.").  This effort to manufacture cohesion, in fact, does the opposite.  It demonstrates that the group is a creation of counsel, unwieldy and lacking cohesion.  Alessandro Sproul and Elvio DelZatto would still likely be called to participate in discovery at class certification regarding their transactions in Luckin.  *Cf. Elstein v. Net1 UEPS Techs., Inc.*, No. 14 Civ. 9100 (ER), 2014 WL 3687277, at *5 (S.D.N.Y. July 23, 2014) ("courts have typically required that plaintiffs lacking [pre-litigation] relationship present a more compelling showing as to their fitness for the position" to eliminate any "concern that [the] group has simply been 'cobbled together' for the purpose of achieving the lead plaintiff designation.")

Finally, the Luckin Investor Group's token efforts to frame the "individual members' investing experience and sophistication" as a boon to the Class should "merit little weight," as the Luckin Investor Group is nevertheless "lawyer-created . . . in the hope of thereby becoming

11

the biggest loser." *Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 263 (S.D.N.Y. 2019) (quoting *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 532 (S.D.N.Y. 2015)). Simply put, the Luckin Investor Group has failed to make the required "***compelling showing***" as to how its appointment would be in the best interests of the Class, and in turn, is inherently and demonstrably inadequate. *See Net1 UEPS Techs., Inc.*, 2014 WL 3687277, at \*4 (emphasis added). Accordingly, its motion should be denied.

### B.   Standing Concerns Render AP7 Inadequate

AP7, on behalf of the AP7 Equity Fund, moved as a member of a group along with the Louisiana Sheriffs' Pension & Relief Fund, which collectively claim the third largest financial interest in the litigation. AP7's loss of $5,447,570 dwarfs the loss of Louisiana Sheriffs by more than $4 million. AP7, however, does not have Article III standing, nor does it qualify for an exception to the Article III standing requirement. As explained by Professor Jonathan R. Macey of Yale Law School (an expert on the economic implications of corporate governance in the litigation context),[7] policy concerns also weigh against granting an exception.

### 1.   AP7 Lacks Standing and Cannot be Lead Plaintiff

AP7 is not the beneficial owner of the Luckin securities purchased by the AP7 Equity Fund. ECF No. 67-1 at 2 n.1. Rather, AP7 acts as an investment advisor for certain investment funds as part of the Swedish retirement system, including the AP7 Equity Fund.[8]

Standing is a "bedrock" requirement of the federal legal system. *See Sonterra Capital Master Fund Ltd. v. UBS AG*, 954 F.3d 529, 533–34 (2d Cir. 2020) (citation omitted); Macey

---

[7] *See* Keller Declaration, Ex. C. Professor Macey is the Sam Harris Professor of Corporate Law, Corporate Finance, and Securities Law at Yale Law School, and is a Professor in the Yale School of Management. Macey Decl. ¶ 7. He has more than 30 years of experience in the fields of law and economics, corporate governance, the economic underpinnings of fiduciary duties, and agency costs in securities class action litigation. *Id*. ¶ 8.

[8] *About US,* AP7.SE, https://www.ap7.se/english/about-us/ (last visited May 6, 2020).

Decl. ¶¶ 15-16.  Standing is such a basic constitutional requirement that it may not be waived.

*Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019) ('As a jurisdictional

requirement, standing to litigate cannot be waived or forfeited.").  AP7 has the burden of

establishing its own standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  To

have standing one must show they have "suffered an injury in fact," among other elements.

*Sonterra,* 954 F.3d at 533–34.  AP7 has moved for appointment as lead plaintiff numerous times

and has never claimed to have suffered injury in fact.  *E.g.*, *Pipefitters Local No. 636 Defined

Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 189 (S.D.N.Y. 2011) ("AP7 . . . does not

directly own any [of the] shares" at issue in the action).

Here too, AP7 does not claim an injury-in-fact.  Barring an exception to the constitutional

requirement of standing, as addressed in the next section, AP7 is incapable of serving as Lead

Plaintiff.  *See Warth v. Seldin*, 422 U.S. 490, 502 (1975) (named plaintiff "show that they

personally have been injured, not that injury has been suffered by other, unidentified members of

the class to which they belong and which they purport to represent").

### 2.     AP7 Cannot Qualify for a Standing Exception

AP7 will likely move the Court for an exception to the standing rules, but such exception

should not be granted.  Standing exceptions have been granted sparingly, due to the

constitutional importance of the standing requirements.  "In practice, almost without exception,

the Supreme Court allows [standing exceptions] ***only to preserve the constitutional rights of

third parties*** who are unable to challenge the infringement of those rights."  *See Greene v.

Gerber Prod. Co.*, 262 F. Supp. 3d 38, 57 (E.D.N.Y. 2017) (emphasis added); *Mahon v. Ticor

Title Ins. Co.*, 683 F.3d 59, 67 (2d Cir. 2012) (Hall, J., concurring) (noting limited exception

where party is pursuing "public interests" rather than "private interest."); Macey Decl. ¶¶ 20-21.

Even in the context of claims seeking to preserve constitutional rights, courts have traditionally

13

predicated the grant of third party standing on the litigating party *also* having suffered its own actual injury.[9] AP7 could not qualify for this sort of exception, given that it does not claim its own injury and seeks to pursue private statutory rights, not constitutional rights.

Against this backdrop, the Second Circuit in *W.R. Huff Asset Management Company, LLC v. Deloitte & Touche LLP* articulated the following third party standing rule: parties may be eligible for a prudential (third party) standing where they "demonstrate" both "(1) a close relationship to the injured party *and* (2) a barrier to the injured party's ability to assert its own interests." 549 F.3d 100, 109–10 (2d Cir. 2008) (citing *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004) (assertion of federal due process and equal protection rights violations) and citing *Smith v. Org. of Foster Families for Equality & Reform*, 431 U.S. 816, 841 n. 44 (1977) (recognizing third-party standing for foster parents to raise claims on behalf of children)) (emphasis added).

Notably, *Huff* itself denied standing to an investment manager (much like AP7) finding that *both* prongs were not satisfied.[10] *Id.* Here too, neither prong is satisfied.

### 3.      Under *Huff*, AP7 Lacks a "Close Relationship"

*Huff* held that there is an extremely narrow set of sufficiently "close relationships" that may, when the second prong is also satisfied, qualify for a prudential exception. *Id.* It listed a set of relationships that traditionally may qualify, such as trustees, guardians *ad litem*, receivers, and assignees in bankruptcy. *Id.* *Huff* then held: "***the investment advisor-client relationship is***

---

[9] Erwin Chemerinsky, Federal Jurisdiction § 2.3.4 at 84 (6th ed. 2012) ("It must be stressed that the person seeking to advocate the rights of third parties ***must meet the constitutional standing requirements of injury***, causation, and redressability ***in addition to fitting within one of the [prudential] exceptions.***"); *e.g.*, *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 535 (1925) (permitting schools to assert constitutional challenge where their own property rights were violated by law that unconstitutionally constrained parents educational decisions).

[10] Notably, *Huff* makes a distinction between this "prudential exception" and circumstances involving a valid assignment of claims. *Id.* at 105 (citing *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc*. 554 U.S. 269 (2008)). AP7 has made no showing that it has received a valid assignment of claims, which showing would require a different analysis under *Sprint*.

***not the type of close relationship courts have recognized as creating a 'prudential exception' to the third-party standing rules***." *Id.* (citation omitted).

Courts across the country have consistently declined to extend prudential, third party standing to investment managers and entities such as AP7 to bring suit on behalf of clients or funds under management.[11]  Further, at least two courts in this District have denied lead plaintiff motions filed by Swedish institutions—including AP7—finding that the failure to demonstrate standing precluded appointment and subjected them to unique defenses.  *See Baydale v. Am. Express Co.*, No. 09 Civ. 3016 (WHP), 2009 WL 2603140 (S.D.N.Y. Aug. 14, 2009); *Pipefitters*, 275 F.R.D. at 191.  The risk that AP7 lacks standing is equally disqualifying here, especially because "the standing issue 'may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Carter v. HealthPort Techs.*, 822 F.3d 47, 56 (2d Cir. 2016) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006)).

---

[11] *See*, *e.g.*, *In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112, 114 (S.D.N.Y. 2009) (holding that "an investment advisor without a valid assignment of its clients' claims, did not have Article III standing at the time this Court appointed it lead plaintiff"); *Marcus v. J.C. Penney Co.*, No. 6:13-CV-736, 2014 WL 12712592, at *2-3 (E.D. Tex. May 8, 2014) (holding that an Italian investment manager was not the most adequate plaintiff because the investment manager did not produce affirmative evidence it had standing); *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 609 F. Supp. 2d 938, 942 (N.D. Cal. 2009) ("Under *Huff*, which this Court finds persuasive, [the plaintiff] cannot bring claims on behalf of its clients simply by virtue of its status as an investment advisor."); *MVP Asset Mgmt. (USA) Ltd. Liab. Co. v. Vestbirk*, No. 2:10-cv-02483-GEB-CMK, 2011 WL 1457424, at *2 (E.D. Cal. Apr. 14, 2011) ("MVPAM's 'status as both an attorney-in-fact for litigation purposes and an investment advisor with unfettered discretion over its client[s'] investment decisions does not confer on [MVPAM] Article III standing); *In re Herley Indus. Inc. Sec. Litig.*, No. 06-2596, 2009 WL 3169888, at *4-5 (E.D. Pa. Sept. 30, 2009) (finding *Huff* "persuasive" and holding that an investment advisor had no standing and the third-party exception did not apply); *Friedman v. Quest Energy Partners LP*, 261 F.R.D. 607, 612 (W.D. Okla. 2009) (denying lead plaintiff motion of investment advisor because it had not been assigned its clients' claims); *Steamfitters Local 449 Pension Fund v. Cent. European Distrib. Corp.*, No. 11–6247 (JBS/KMW), 2012 WL 3638629, at *11 (D.N.J. Aug. 22, 2012) (holding that a Russian investment manager did not have standing to sue when its subsidiary funds were the entities that purchased shares and suffered losses).

Admittedly, some district courts have granted investment advisors a prudential exception—and in some cases AP7 has been permitted such an exception. *But see Pipefitters,* 275 F.R.D. at 191 (denying AP7 lead plaintiff status due to standing concerns). However, none of the opinions granting AP7 lead plaintiff under a prudential exception have discussed both required prongs under *Huff.* In fact, several of the cases did not decide the issue of AP7's standing at all.[12] The remaining cases have relied on AP7's representation that it is "obligated by law to protect and act on behalf of the underlying Equity Fund—a pool of assets not capable of taking any legal action." *United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 v. Ocwen Fin. Corp.*, No. 14–CIV–81507–WPD, 2014 WL 7236985, at \*1 (S.D. Fla. Nov. 7, 2014).[13] In other words, the cases that have granted AP7 a standing exception, have done so based on a concern that without a such an exception the underlying Equity Fund would face barriers to "taking . . . legal action."

However, this flawed reasoning allows the second prong of *Huff's* two-prong test to completely swallow the first prong. The *Huff* opinion explained that to be eligible for a prudential exception there must be ***both*** a sufficiently close relationship and a barrier preventing the injured party from asserting its rights. Decisions that expand *Huff's* first prong by permitting investment advisors an exception, due to analysis that the second prong would be satisfied are at odds with the controlling Second Circuit authority holding that "***the investment advisor-client***

---

[12] *E.g., Hedick v. Kraft Heinz Co.*, No. 19-cv-1339, 2019 WL 4958238, at \*1 (N.D. Ill. Oct. 8, 2019) (AP7 appointed lead plaintiff without analysis of standing issues); *Monk v. Johnson & Johnson,* No. 10-cv-04841 (D.N.J. Dec. 6, 2010), ECF No. 7 (same); *Louisiana Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11–cv–289, 2012 WL 12985571, at \*1 (D. Vt. Apr. 27, 2012) (appointing a group that included AP7 upon recognizing it had the largest losses even without including AP7).

[13] *See also* Transcript of Oral Argument at 5:4-10, *Hachem v. Gen. Elec. Inc.*, No. 17-cv-8457 (JMF) (S.D.N.Y. May 23, 2018), ECF No. 140 (relying on "the reasons set forth in" *Ocwen*); *Plaut v. Goldman Sachs Grp., Inc.*, No. 18-CV-12084 (VSB), 2019 WL 4512774, at \*6 (S.D.N.Y. Sept. 19, 2019) ("adopting the reasoning in *Ocwen*").

16

*relationship*" is not the sort of close-relationship that satisfies the first prong of *Huff*. *Huff*, 549 F.3d at 109–10. Such an expansion of the prudential exception would also be at odds with the recent Supreme Court cases recognizing the importance of limiting standing exceptions. *E.g.*, *United States v. Sineneng-Smith*, No. 19-67, 2020 WL 2200834, at *10 (U.S. May 7, 2020) (Thomas, J., concurring) (arguing that the Court "has no business creating ad hoc exceptions" merely to allow litigants to "vindicate" constitutional rights on behalf of "others").

Additionally, extending a prudential "exception" to AP7 in order to overcome otherwise strict constitutional standing requirements is contrary to the economic policy objectives embedded in Article III and the PSLRA. The economic basis for the injury-in-fact requirement is "to ensure that the plaintiff has a significant 'personal stake in the outcome of the controversy." *Id.* ¶ 16 (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). The central goal of the standing rules is to achieve "incentive compatibility,"[14] which reduces agency costs[15] in order to efficiently achieve the "positive externalities" associated with securities class actions.[16] Macey Decl. ¶ 16.

---

[14] *Id.* ¶ 16 (quoting Leonid Hurwicz, *On Informationally Decentralized Systems*, in C. B. McGuire and R. Radner, eds., DECISION AND ORGANIZATION: A VOLUME IN HONOR OF JACOB MARSHAK, 297–336, at 320 (1972)).

[15] An agency problem refers to the problems associated with the fact that agents (corporate officers and directors) do not always act in the best interests of their principals (shareholders). The seminal work in this field of law and economics is Michael C. Jensen and William H. Meckling, *Theory of the Firm: Managerial Behavior, Agency Costs and Ownership Structure,* 3 J. FIN. ECON. 305-360 (1976).

[16] Brian McTeir and John Wald, *The Causes and Consequences of Securities Class Action Litigation*, 17 J. CORP. FIN. 649-665 (2011) (Examining the impact of securities class action lawsuits on firms' investment and financing choices and finding that firms that overinvest are more likely to be sued. Other findings are that after securities class action litigation, firms on average decrease overinvestment activity, and they decrease payouts while increasing leverage, cash holdings, and firm- specific risk. The Article reports that after such litigation there is a "decrease in agency problems which lead to significant changes in real investment policies," and finds that the evidence is consistent with the notion that security class action lawsuits draw attention to agency problems which are then at least partly resolved.").

17

Permitting an investment manager like AP7 to pursue litigation without an actual stake in the outcome of the controversy is contrary to these goals.[17]  *Id.*

The PSLRA reflects an expectation that the lead plaintiff movant "with the largest financial interest in the litigation, will [best] oversee the conduct of the case and monitor the decisions of class counsel."  *Id*. ¶ 18 (citing Jill E. Fisch, "Aggregation, Auctions, and Other Developments in the Selection of Lead Counsel Under the PSLRA," 64 Law & Contemp. Problems 53, 53-96 (2001)).  This monitoring of lead class counsel by lead plaintiffs "has the potential to reduce agency costs and improve litigation decisions."  Macey Decl. ¶ 18.  Agency problems *increase* when a court appoints a lead plaintiff with relatively small stakes.  *See id*. ¶ 19.  Similarly, agency costs increase when a party like AP7, who is not the beneficial owner of the Luckin securities*,* is appointed as Lead Plaintiff, as there is simply no substitute for a direct economic injury.  *Id.*  The injury in fact requirement of Article III and the PSLRA's largest financial interest requirement both recognize this fact and caution against eroding constitutional standing by endorsing AP7's request for the extraordinary relief of third party standing.  *Id.*

Permitting an expansion for AP7 is also unreasonable given its unique structure under Swedish law.  The Swedish government ***chose*** a structure that avoided putting share ownership in the hands of a legal entity or person who had direct power to sue or be sued.  It would be

---

[17] Elliott J. Weiss & John **S.** Beckerman, *Let the Money Do the Monitoring: How Institutional Investors Can Reduce Agency Costs in Securities Class Actions,* 104 YALE L. J**.** 2053, 2112 (1995) (in enacting the PSLRA and, in particular, its lead plaintiff provision, Congress sought to replace figurehead named plaintiffs with institutional investors.  Investors with large holdings and, consequently, large financial interests in the outcome of class litigation would select good lawyers, bargain hard over fees, and actively monitor the conduct of litigation, producing spillover benefits for all defrauded investors); *see* Charles Silver & Sam Dinkin, *Incentivizing Institutional Investors to Serve as Lead Plaintiffs in Securities Fraud Class Actions,* 57 DEPAUL L. REV. 471 (2008) (Congress expected that the incentives of plaintiffs with financial stakes in the litigation would more actively monitor the conduct of a securities fraud class action in order to reduce the litigation agency costs that may arise when class counsel's interests diverge from those of the shareholder class).

anomalous for the United States to contort its constitutional standing doctrine to permit an exception for the unique, statutory creation of a foreign country. And it would be especially problematic to do so here, where AP7 does not seek to preserve constitutional rights, or even legal claims, but instead for the sole purpose of seeking a procedural appointment to the special role of Lead Plaintiff.[18]

### 4.    Under *Huff*, Granting AP7 an Exception Is Not Needed to Permit the Injured Party to Assert Its Own Interests

The second prong of *Huff's* two-part test asks whether the "injured party," on whose behalf third party standing is sought, faces a "a barrier" preventing it from "assert[ing] its own interests." *Huff*, 549 F.3d at 109–10; Macey Decl. ¶ 24. But *Huff* was not a class action—and did not resolve who the "interested party" is in the context of a class case. As the Court is aware, class actions are unique procedural animals under Rule 23. Class actions upend the traditional notion of direct party litigation. From a corporate governance perspective, the "injured party" here is the Class itself, not its constituent members. Macey Decl. ¶ 25. Thus, there must be "a barrier to the [class'] ability to assert its own interests," before a prudential exception may be granted to a proposed lead plaintiff. *Huff*, 549 F.3d at 109; Macey Decl. ¶ 25.

The Supreme Court has held that even corporations (along with other forms of business association such as partnerships) are at their core appropriately conceptualized as "associations of persons." Macey Decl. ¶ 25 (quoting *Citizens United v. Fed'l Election Comm'n*, 558 U.S. 310, 349, 354, 356 (2010)). Both that holding and basic principles of corporate governance

---

[18] At a minimum, the substantial risk that AP7 lacks standing firmly establishes that it is subject to unique defenses, such that it should not be appointed Lead Plaintiff. *See e.g., Pipefitters*, 275 F.R.D. at 191 (holding that at the Lead Plaintiff appointment stage "it is sufficient to note that arguments could be raised regarding AP7's third party standing, which subjects it to a unique defense and may prejudice the class.").

19

dictate that members of a class of plaintiffs clearly constitute a ***party***, which is not unlike a form of business organization.  *See* Macey Decl. ¶¶ 26-29.  This point is further emphasized by the fact that class representatives have fiduciary duties ***to the class***, not merely to the individual members of that class.  *Id.* (citing *Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 331 (1980) ("A separate consideration, distinct from their private interests, is the responsibility of named plaintiffs to represent the collective interests of the putative class")).

Given that the relevant "injured party" is the "class" as Professor Macey explains, there is no reasonable argument that the "injured party" faces an impediment in asserting its interests, since there are other movants, such as Chesi Assets Limited Group, with actual standing seeking to serve as Lead Plaintiff on behalf of the Class.  *Id.*  Therefore, a prudential exception should not be granted to AP7, since it cannot satisfy the second prong of *Huff*'s two-part test.

Moreover, regardless of who the injured party is, *Huff*'s second prong is also not satisfied because appointment as lead plaintiff is irrelevant to *anyone's* ability to assert its own interests.  Rather, AP7 is seeking a procedural appointment for the special position to serve as Lead Plaintiff *on behalf* of a Class.  Whether it can obtain that appointment has no bearing on whether the Class can assert its rights.  Permitting an exception to the "bedrock" requirement of standing (*Sonterra,* 954 F.3d at 533–34), to permit a procedural appointment pushes the narrow standing exceptions far beyond the rule stated by *Huff*.   Furthermore, expanding the narrow exception recognized in *Huff* is problematic, because standing is an "irreducible constitutional minimum," *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citation omitted), meaning exceptions should be made as narrowly as possible.  *See In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d 579, 606 (S.D.N.Y. 2006) (noting the "Supreme Court's aversion to creating

broad exceptions" to Article III requirements) (quoting *In re Eaton Vance Corp. Sec. Litig.*, 220 F.R.D. 162, 169 (D. Mass. 2004).

## CONCLUSION

For the foregoing reasons, Chesi Assets Limited Group respectfully requests that the Court grant its motion and enter an Order: (i) consolidating the above-captioned actions: (ii) appointing Chesi Assets Limited Group as Lead Plaintiff; (iii) approving Chesi Assets Limited Group's selection of Labaton Sucharow as Lead Counsel for the Class; and (iv) granting such other and further relief as the Court may deem just and proper.

DATED:  May 13, 2020

Respectfully submitted,

*/s/ Christopher J. Keller*

Christopher J. Keller
Thomas A. Dubbs
Eric J. Belfi
Francis P. McConville
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile:  (212) 818-0477
ckeller@labaton.com
tdubbs@labaton.com
ebelfi@labaton.com
fmcconville@labaton.com

*Counsel for Lead Plaintiff Movant Chesi Assets Limited Group and Proposed Lead Counsel for the Class*

21