UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARTIN COHEN, Individually and On Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>   v.<br><br>LUCKIN COFFEE, INC., *et al.*,<br><br>         Defendants. | Case No. 1:20-cv-01293-LJL<br><br><br>CLASS ACTION |

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF THE
LUCKIN INVESTOR GROUP FOR APPOINTMENT AS LEAD PLAINTIFF AND
APPROVAL OF LEAD COUNSEL

Movant the Luckin Investor Group[1] respectfully submits this reply memorandum of law in further support of its motion for appointment as Lead Plaintiff and approval of Lead Counsel; and in opposition to the competing motions of (i) the AP7 Group (Dkt. No. 61); (ii) Local 710 (Dkt. No. 51); (iii) Shek (Dkt. No. 10); and (iv) Steinberg (Dkt. No. 58).

## PRELIMINARY STATEMENT

As stated in its memorandum of law in further support of its motion and in opposition to competing motions ("Opposition Brief") (Dkt. No. 93), the Luckin Investor Group has alleged the second-largest financial interest after the Chesi Group and has made the requisite *prima facie* showings of adequacy and typicality within the meaning of Rule 23.  Accordingly, the Luckin Investor Group respectfully submits that if the Court declines to appoint the Chesi Group for any reason, then the PSLRA mandates that the Court grant the Luckin Investor Group's motion.

Certain competing movants have launched meritless attacks on the Luckin Investor Group's adequacy in an effort to disqualify the group.  First, these competing movants claim to take issue with the composition of the group, citing purported concerns about the group's autonomy and ability to manage this litigation.  Yet these concerns are belied by both the relevant facts and law.  The Luckin Investor Group by now has submitted two Joint Declarations attesting to, *inter alia*, its cohesiveness, its understanding of the responsibilities of a lead plaintiff, and its readiness to supervise its chosen counsel to prosecute the putative Class's claims.  Courts in the Second Circuit routinely approve investor groups under such circumstances.  *See, e.g.*, *Peters v. Jinkosolar Holding Co.*, 11 Civ. 7133 (JPO), 2012 U.S. Dist. LEXIS 38489, at *21-*23 (S.D.N.Y. Mar. 19, 2012); *In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846 (WFK) (PK), 2017

---

[1] All capitalized terms herein are defined in the Luckin Investor Group's moving and opposition briefs, unless otherwise indicated.  *See* Dkt. Nos. 66, 93.

U.S. Dist. LEXIS 207531, at *17 (E.D.N.Y. Dec. 15, 2017); *Brady v. Top Ships Inc.*, No. 17-CV-4987 (JFB) (SIL), 2018 U.S. Dist. LEXIS 121765, at *20 (E.D.N.Y. July 20, 2018).

Additionally, the AP7 Group has leveled *false allegations* against Ian Burns, the Managing Director of Regent Mercantile Holdings Limited ("Regent Mercantile"), accusing him of engaging in serious financial misconduct related to illicit arms dealing. There is no scintilla of truth to these allegations. As set forth in the Declaration of Ian Burns, submitted herewith as Exhibit A ("Burns Decl."), the AP7 Group's accusations speculatively mischaracterize events that transpired during Mr. Burns' tenure at Investec Trust ("Investec"). Mr. Burns did *not* facilitate illicit arms dealing; he was *not* "terminated from Investec", as the AP7 Group asserts; nor has he *ever* been the subject of any regulatory sanction or censure in connection with the events in question. Rather, Mr. Burns is in fact a *Personal Fiduciary licensed by the Guernsey Financial Services Commission* ("GFSC"), and currently serves on the boards of three publicly listed companies and dozens of other entities. *See* Burns Decl. ¶¶ 13-15. There can be no legitimate question as to his fitness to carry out the fiduciary obligations of a lead plaintiff in this litigation.

By contrast, the AP7 Group's stunningly irresponsible aspersions against Mr. Burns raise serious questions as to its own fitness to serve as Lead Plaintiff. Either the AP7 Group was aware that the accusations against Mr. Burns were not credible, in which case the group knowingly smeared a fellow class member merely to secure a leadership role in this action; or the AP7 Group was unaware of the trove of public information attesting to Mr. Burns' probity, in which case the AP7 Group was less than diligent in its research. Either explanation is equally problematic for the AP7 Group.

Moreover, as discussed at length in the Luckin Investor Group's Opposition Brief, the AP7 Group is in any event ineligible because it is subject to the disqualifying unique defense that it

lacks Article III standing to pursue fraud claims in this litigation. AP7 is an asset manager, and its submissions to date have not established that AP7 is actually the beneficial owner of the Luckin securities at issue in this litigation, nor that any exception applies that would permit it to pursue fraud claims against the Defendants. Given the glaring, unanswered questions as to its standing—conspicuously unanswered after two rounds of briefing—appointing AP7 as Lead Plaintiff would virtually ensure that it would be required to devote significant time and resources to litigating the question of its standing, at the expense of its capacity to litigate the Class's actual claims against the Defendants. "The PSLRA . . . provides that we ask simply whether [a movant] is likely to be 'subject to' the unique defense . . . ; we do not have to determine that the defense is likely to succeed." *In re Bally Total Fitness Sec. Litig.*, Nos. 04 C 3530 *et al.*, 2005 U.S. Dist. LEXIS 6243, at *19 (N.D. Ill. Mar. 15, 2005).

Accordingly, for the reasons set forth herein and in its moving and opposition briefs (Dkt. Nos. 66, 93), the Luckin Investor Group merits appointment as Lead Plaintiff in the event the Chesi Group's Motion is denied.

**ARGUMENT**

**I.      The Luckin Investor Group Is An Adequate Class Representative**

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). This presumption can *only* be rebutted upon *proof* that the movant with the largest financial interest is atypical or inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Mere speculation or innuendo is insufficient to rebut this presumption. *See*, *e.g.*, *Foley v. Transocean, Ltd.*, 272 F.R.D. 126, 131-33 (S.D.N.Y. 2011) (finding that the presumption "may only be rebutted upon 'proof'" of inadequacy or atypicality and rejecting

3

challenge founded on speculation); *In re MGT Capital Invs., Inc.*, 16 Civ. 7415 (NRB) *et al.*, 2017 U.S. Dist. LEXIS 59130, at \*9-\*10 (S.D.N.Y. Apr. 11, 2017) (rejecting "attempt to find something nefarious" in order "to discredit" a movant's certification); *Kaplan v. Gelfond*, 240 F.R.D. 88, 95-96 (S.D.N.Y. 2007) (rejecting "inconclusive" argument proffered by competing movant in attempt to disqualify presumptive lead plaintiff).

Here, the competing movants have adduced no proof whatsoever that the Luckin Investor Group is an inadequate class representative—and indeed, no such proof exists. Rather, the only arguments proffered are the very definition of speculation, and are in fact demonstrably untrue.

### A. The Luckin Investor Group Is An Appropriate Group

The AP7 Group and Local 710 spill much ink attempting to recast the Luckin Investor Group as a "sprawling" attorney-driven construct of seven investors that is inadequate to serve as Lead Plaintiff. Yet this mischaracterization is wholly at odds with both the facts of the record and Second Circuit precedent.

Contrary to the AP7 Group's assertions, the Luckin Investor Group is a small and cohesive group of only *five* investors, who have by now *twice* submitted Joint Declarations attesting in detail to, *inter alia*, their respective backgrounds, their communications with one another (both before and after the filing of their motion), their understanding of this litigation and the responsibilities of lead plaintiffs appointed pursuant to the PSLRA, and their readiness to supervise counsel. *See generally* Dkt. Nos. 66-5, 93-2. Courts in the Second Circuit and elsewhere routinely appoint groups of investors in Co-Lead Plaintiffs under such circumstances. *See, e.g.*, *Jinkosolar*, 2012 U.S. Dist. LEXIS 38489, at \*21-\*23 (appointing four-member investor group, finding that joint declaration submitted with motion "meets the standards . . . for demonstrating cohesiveness"); *Blue Apron*, 2017 U.S. Dist. LEXIS 207531, at \*17 (appointing group of four unrelated investors

4

that submitted declaration attesting "it is prepared to work cooperatively to serve the best interests of the class," and finding that the group is not "so large as to be unwieldy and impracticable"); *Top Ships*, 2018 U.S. Dist. LEXIS 121765, at *20 (appointing group of three investors as lead plaintiff, finding the group "sufficiently demonstrated its members' plans for cooperation and involvement in the litigation for the Court to find this group will best serve the class.").[2]   The Supreme Court recently endorsed the propriety of such groups.  *See China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1807 n.3 (2018) (finding that "[d]istrict courts often permit aggregation of plaintiffs into plaintiff groups").

In the face of this robust proffer, the competing movants' attempts to distort the record smack of desperation.  Noting the fact that certain of the Luckin Investor Group's counsel issued press releases alerting putative class members to the statutory deadline to seek appointment as Lead Plaintiff, the AP7 Group accuses counsel of "seeking to replace group members" and argues that the group's composition has thus been "fluid." Dkt. No. 98 at 17.  Not so.  There is no evidence on the record indicating that the composition of the AP7 Group has ever changed.  Nor is it clear why the AP7 Group would object to a greater number of class members receiving notice of the PSLRA motion deadline.  Similarly, there is obviously nothing untoward about the fact that claims were assigned to James Sproul by his brother Alessandro Sproul and his grandfather Elvio DelZatto—yet the AP7 Group recasts these innocuous assignments of claims to a trusted close relative as a nefarious effort to circumvent "case law restricting lead plaintiff groups to five

---

[2] *See also West Palm Beach Police Pension Fund v. DFC Global Corp.*, No. 13-6731, 2014 U.S. Dist. LEXIS 49595, at *7 (E.D. Pa. Apr. 9, 2014) (appointing group and noting "declaration lay[ing] out the duties and obligations of" the group's members); *La. Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-cv-289, 2012 U.S. Dist. LEXIS 89192, at *11 (D. Vt. Apr. 27, 2012) (finding a joint declaration "sufficient to assure the Court that the [lead] plaintiffs will effectively manage the litigation").

members." *Id.*[3] The AP7 Group's readiness to ascribe bad faith to other movants ironically reveals far more about the AP7 Group's own motivations.  Indeed, applying the AP7 Group's own standards, the AP7 Group itself is a motley group of dispersed and disparate investors.  There is little reason for a Swedish asset manager to align itself with a Louisiana police pension fund if not for the benefit of aggregating their financial interests in order to seize the leadership of this action.

Worse, the AP7 Group takes a gratuitous cheap shot at the Luckin Investor Group's counsel by invoking criticism it received from Judge Mark L. Wolf in *Garbowski v. Tokai Pharmaceuticals, Inc.*, 302 F. Supp. 3d 441 (D. Mass. 2018).  The AP7 Group's reference to Judge Wolf, who has criticized several class action firms in at least three recent cases before him, is ironic.  In *Arkansas Teacher Ret. Sys. v. Insulet Corp.*, No. 15-12345-MLW (D. Mass.), Judge Wolf subjected Bernstein Litowitz Berger & Grossman LLP ("BLBG") to significant scrutiny regarding the veracity of its fee application, describing it as "a matter of concern to me" and questioning "what kind of supervision you're getting from your client."  Dkt. No. 136 at 43:19-20, 44:6-7.  Judge Wolf has yet to rule on BLBG's fee request, though it has been pending for several months.

### B. Ian Burns Is An Exemplary Fiduciary And The AP7 Group's Allegations Against Him Are Meritless

In its opposition brief, the AP7 Group accuses Ian Burns, the Managing Director of Regent Mercantile, a member of the Luckin Investor Group, of very serious misconduct—namely, that Mr. Burns was involved in financial wrongdoing in connection with illicit arms dealing.  ***There is no truth whatsoever to these reckless allegations.***

---

[3] It is well settled that "an assignment of claims confers legal title or ownership of those claims and thus fulfills the constitutional requirement of an 'injury-in-fact.'"  *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008) (quoting *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17-18 (2d Cir. 1997)).

As Mr. Burns attests under the penalty of perjury in his Declaration, submitted herewith, he joined Investec Trust in 2001. Burns Decl. ¶ 6. During and following his employment at Investec, one of Investec's clients was Lightweight Body Armor ("LBA"), a company affiliated with one Andrew MacGill that also maintained accounts at Standard Chartered PLC, Royal Bank of Scotland and HBC. *Id.* ¶ 7. Mr. Burns was not personally responsible for, nor did he oversee the day-to-day activities of, LBA's accounts at Investec. *Id.* At the end of 2005, Investec (as publicly reported, and in line with the Bailiwick of Guernsey's anti-money laundering legislation), voluntarily submitted a Suspicious Transaction Report and supporting documentation to the GFSC and the Guernsey Financial Intelligence Unit. *Id.* ¶ 8. Apart from a request for additional information about certain details of that submission, Burns received no further communication regarding the reported matter from either of the foregoing regulators, nor from any other governmental body or regulatory entity. *Id.* Further, Mr. Burns fully cooperated with the two law firms—Allen & Overy and Mourant Ozannes—commissioned by Investec to investigate the matter. *Id.* ¶ 9. There was no allegation nor finding of wrongdoing against Mr. Burns in any investigation or by any regulator.

Mr. Burns was *not* "terminated by Investec" as the AP7 Group asserts *Id.* ¶ 11. Mr. Burns resigned from Investec in 2006 to pursue an alternative employment opportunity with Anson Group Ltd., a fund administrator. *Id.* ¶ 12. While employed at Anson, Mr. Burns was fully authorized as a Designated Person (*i.e.*, a designated manager, trustee or custodian responsible for maintaining client financial records and firm financial statements) by the Guernsey Financial Services Commission. *Id.* Since 2009, Mr. Burns has been licensed by the GFSC as a Personal Fiduciary. *Id.* ¶ 13. Also in 2009, Mr. Burns was approved by the Bermuda Monetary Authority (the regulatory authority for Bermuda's financial services sector) to act as a Director for private

trust companies. *Id.* ¶ 13. Mr. Burns also currently serves as a Non-Executive Independent Director at three publicly-listed companies and a Non-Executive Director at dozens of private investment funds and other entities. *Id.* ¶ 15. He is a Fellow of the Institute of Chartered Accountants in England & Wales, the former Chairman of the Guernsey Association of Trustees (the industry representative body for fiduciary license holders in Guernsey), and a member of the Society of Trust and Estate Planners (an international professional body of advisors). *Id.* ¶¶ 16-17.

As Mr. Burns attests, he is familiar from prior experience with the subject of the AP7 Group's false allegations. *Id.* ¶ 19. In considering his fitness for membership, directorship and/or employment, various of the entities and organizations discussed above have researched his professional background and encountered the same false reports that Mr. Burns believes form the purported basis of the AP7 Group's false allegations. *Id.* On each such occasion, Mr. Burns has provided a full and accurate recitation of the facts concerning the subject of these allegations. *Id.* He is unaware of any instance in which those false allegations were believed to be true, nor of any instance in which he was deemed unfit for membership, directorship and/or employment, following such explanation. *Id.*

The foregoing facts leave only two possible explanations for the AP7 Group's baseless attacks on Mr. Burns. Either: (1) the AP7 Group was unaware of the trove of publicly available information attesting to Mr. Burns' fitness as a fiduciary, in which case it was obviously less than thorough in its investigation into Mr. Burns' professional background; or (2) the AP7 Group *was* aware of those facts, yet chose nonetheless to attack Mr. Burns' character baselessly, purely to secure a leadership role in this litigation. Both explanations likewise call into question whether the AP7 Group is competent to make credible and factually supported allegations in this action,

the primary duty of any Lead Plaintiff in a securities class action.  Accusing a class member of facilitating an illegal arms deal without a scintilla of evidence cannot be waived away an innocuous error.  Rather, it speaks volumes regarding the ability of the AP7 Group to act as a responsible fiduciary in this action.  Because this litigation is a complex securities class action, the prosecution of which will require thorough and scrupulous work by a lead plaintiff, the Luckin Investor Group respectfully submits that both of the foregoing explanations for the AP7 Group's attacks on Mr. Burns are equally problematic with respect to the AP7 Group's own motion.

## II.      AP7 Lacks Standing To Pursue Fraud Claims Against The Defendants

Moreover, the AP7 Group is itself ineligible to serve as Lead Plaintiff because it has not, after two rounds of briefing, demonstrated that it actually possesses standing to pursue fraud claims in this litigation.  The PSLRA precludes appointment of a Lead Plaintiff who "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb).  "The PSLRA . . . provides that we ask simply whether [a movant] is likely to be 'subject to' the unique defense . . . ; we do not have to determine that the defense is likely to succeed."  *Bally Total Fitness*, 2005 U.S. Dist. LEXIS 6243, at *19.

"[S]tanding requires that the plaintiff 'personally has suffered some actual or threatened injury.'"  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2015) (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982).  "[T]he injury must affect the plaintiff in a personal and individual way."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n. 1 (1992).  In a securities fraud action under Section 10(b) of the Exchange Act, the injury-in-fact requirement is satisfied when the plaintiff was a beneficial owner of the securities at issue, and engaged in a purchase or sale, during the relevant period during which misconduct allegedly occurred.  See, e.g., *In re Bank of America Corp. Sec., Derivative and ERISA*

*Litig.*, No. 09-MD-2058, 2011 WL 3211472, at *12 (S.D.N.Y. 2011). Standing is a "bedrock" requirement to pursue claims in federal court, *Sonterra Capital Master Fund Ltd. v. UBS AG*, 954 F.3d 529, 533-34 (2d Cir. 2020) (citation omitted), and courts in the Second Circuit rigorously scrutinize the standing of asset/investment managers at the lead plaintiff appointment stage in PSLRA actions.[4]

AP7 has failed to demonstrate that it is the beneficial owner of the Luckin securities at issue and thus has incurred an injury-in-fact as a result of Defendants' alleged malfeasance.[5] Nor has AP7 submitted any assignment of the claims of the Equity Fund, the apparent owner of the securities at issue, or demonstrated that the prudential exception to Article III's injury-in-fact requirement applies. *See*, *e.g.*, *Huff*, 549 F.3d at 109. With such an essential threshold question remaining unanswered after two rounds of briefing, the Defendants in this action are virtually certain to challenge the AP7 Group's standing if the AP7 Group were to be appointed as Lead Plaintiff. Appointing the AP7 Group would thus risk the dismissal of this entire action, to the obvious prejudice of the class. "In good conscience this Court cannot endanger this litigation by ignoring [these] issues." *In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427, 456 (S.D. Tex. 2002).

### CONCLUSION

For the foregoing reasons, and for the reasons set forth in the Luckin Investor Group's moving and opposition briefs (Dkt. Nos. 66, 93), if the Court denies the motion of the Chesi Group, then the Luckin Investor Group respectfully requests that the Court grant its motion in all respect and deny the competing motions.

---

[4] *See*, *e.g.*, *Gross v. AT&T Inc.*, 19-CV-2892 (VEC), 2019 U.S. Dist. LEXIS 225777, at *4-*5 (S.D.N.Y. June 24, 2019); *Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 191 (S.D.N.Y. 2011).

[5] As the Chesi Group correctly notes in its opposition brief, "AP7 has moved for appointment as lead plaintiff [in PSLRA actions] numerous times and has ***never*** claimed to have suffered injury in fact." Dkt. No. 97 at 13 (emphasis added).

Dated:  May 20, 2020

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
(212) 661-1100
jalieberman@pomlaw.com
ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
(312) 377-1181
pdahlstrom@pomlaw.com

THE ROSEN LAW FIRM, P.A.
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*Counsel for the Luckin Investor Group and
Proposed Co-Lead Counsel for the Class*

THE SCHALL FIRM
Brian Schall
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: 310-301-3335
Fax: 877-590-0482
Email: brian@schallfirm.com

*Additional Counsel for the Luckin Investor
Group*

KASKELA LAW LLC
Seamus Kaskela

11

18 Campus Boulevard, Suite 100
Newtown Square, PA 19073
Telephone: (888) 715-1740
Email: skaskela@kaskelalaw.com

*Additional Counsel for the Luckin Investor Group*