# EXHIBIT A

**DECLARATION OF IAN BURNS**

I, Ian Burns, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I have reviewed the allegations made against me and my former employer, Investec Trust (Guernsey) Ltd. ("Investec Trust"), made by Sjunde AP-Fonden ("AP7") and Louisiana Sheriffs' Pension & Relief Fund (collectively with AP7, the "AP7 Group") in the Memorandum of Law in Further Support of the Motion of Sjunde AP-Fonden and Louisiana Sheriffs' Pension & Relief Fund for Appointment as Lead Plaintiff, Approval of Selection of Lead Counsel, and Consolidation of Related Actions, and in Opposition to Competing Motions (the "AP7 Group's Opposition"), filed on May 13, 2020.

2.      I have personal knowledge about the information in this Declaration, and I submit this Declaration to address multiple factual inaccuracies and allegations concerning myself made in the AP7 Group's Opposition.

3.      The AP7 Group's Opposition asserts as fact, *inter alia*, that:

- "Ian Burns . . . is closely tied to a major corruption scandal that involved arms dealing and money laundering through a U.K. division of Investec, a South African merchant bank." AP7 Group Opposition at 5.

- "Mr. Burns, formerly the Group Managing Director and Director of the Guernsey, U.K. subsidiary of Investec, introduced his "long-standing client" Lightweight Body Armor ("LBA") to Investec, and appears to have supervised LBA's accounts." *Id.*

- "Ian Burns . . . has connections to financial crimes and international arms dealing that the Luckin Investor Group concealed from the Court." AP7 Group Opposition at 20.

- "In his prior role as Group Managing Director and Director at Investec Trust (Guernsey) Ltd., Mr. Burns was the lead banker for a client that engaged in illicit arms deals and money laundering." *Id.*

- "Mr. Burns introduced his 'long-standing client' LBA—an entity run by Scottish arms dealer Andrew Macgill—to Investec." *Id.*

1

4.    The statements excerpted at ¶ 3 are not accurate.  I was not involved in the purported "major corruption scandal" that the AP7 Group Opposition describes, nor have I ever been credibly "tied" to it.  The only sources of which I am aware that could have provided a purported basis for the allegations against me in the AP7 Group's Opposition are two newspaper articles, which themselves were based on incomplete and selectively edited information leaked to the press (improperly, to my understanding) and were thus inaccurate.

5.    I joined Investec Trust in 2001 as Managing Director.  The position had operational responsibility reporting to the Global Head of Private Banking, Investec Plc. I had leadership responsibility for the integration and operation of the trust group including client service, personnel, information technology and financial reporting.

6.    At the time I was Managing Director at Investec Trust, Investec Trust comprised trust companies based in Guernsey, Jersey, Geneva Switzerland, London, Johannesburg and Mauritius with an annual fee income of £20 million and 200 staff.

7.    As publicly reported, during (and following) my employment at Investec Trust, one of Investec Trust's clients was Lightweight Body Armor ("LBA"), an entity that I understand was affiliated with Andrew MacGill.  I further understand from public reports that Mr. MacGill and/or LBA also contemporaneously maintained accounts at Standard Chartered PLC, Royal Bank of Scotland, and HSBC.  I knew of LBA from my employment prior to Investec Trust, and after I joined Investec Trust, LBA moved certain of its accounts to Investec Trust.  However, I was not LBA's "lead banker" at Investec Trust.  I was not personally responsible for, nor did I oversee the day-to-day activities of, LBA's accounts at Investec Trust.

8.    At the end of 2005, Investec Trust (as publicly reported, and in line with Guernsey's anti-money laundering legislation) voluntarily submitted a Suspicious Transaction Report and

2

supporting documentation to the Guernsey Financial Services Commission (the supervisory authority for financial services in the Bailiwick of Guernsey) and the Guernsey Financial Intelligence Unit (the central point of contact for the reporting of all Suspicious Transaction Reports) concerning certain activities of LBA.  Apart from (i) a request for additional information about certain details of that submission, which was answered in early 2006, and (ii) an acknowledgement of receipt of the Suspicious Transaction Report, I have not received any communication in connection with this matter from the Guernsey Financial Services Commission, the Guernsey Financial Intelligence Unit, or from any other governmental body or regulatory entity since that time.

9.      Investec commissioned the law firms of Allen & Overy and Mourant Ozannes to internally investigate this matter, and the law firms' reports were "promptly forwarded to the relevant authorities."  I cooperated fully with both Allen & Overy and Mourant Ozannes in connection with their investigations into this matter.

10.      To the best of my knowledge, I have not been the subject of an investigation by the Guernsey Financial Services Commission, the Guernsey Financial Intelligence Unit, the U.K. Serious Fraud Office, Kenya's Anti-Corruption Commission, or any other governmental body or regulatory entity in connection with this matter.

11.      The AP7 Group's Opposition also falsely states that I was "terminated by Investec" *See* AP7 Group  Opposition at 6, 21.  This is incorrect.

12.      In August 2006 I resigned from Investec Trust, and left in November 2006 in order to pursue an alternative employment opportunity with Anson Group Ltd., a fund administrator. While employed at Anson Group I was fully authorized as a Designated Person (a designated

3

manager, trustee or custodian responsible for maintaining client financial records and firm financial statements) by the Guernsey Financial Services Commission.

13.     Since 2009 I have been licensed by the Guernsey Financial Services Commission (the regulatory body for the finance sector in the Bailiwick of Guernsey) as a Personal Fiduciary. Also in 2009, I was approved by the Bermuda Monetary Authority (the regulatory authority for Bermuda's financial services sector) to act as a Director for private trust companies.

14.     I am the Managing Director of Regent Mercantile Holdings Limited, a private investment company that suffered significant losses investing in the securities of Luckin Coffee Inc.

15.     I am a Non-Executive Independent Director at three publicly-listed companies: (i) River and Mercantile UK Micro Cap Investment Company Limited (Chairman of Audit Committee); (ii) Twenty Four Income Fund Limited (Chairman of Audit Committee); and (iii) FastForward Innovations Limited.  I am also a Non-Executive Director at dozens of private investment funds and other entities.

16.     I am a Fellow of the Institute of Chartered Accountants in England & Wales (a professional membership organization that promotes, develops and supports chartered accountants and students).

17.     I am the former Chairman of the Guernsey Association of Trustees (the industry representative body for fiduciary license holders in Guernsey), and a member of the Society of Trust and Estate Planners (STEP) (an international professional body for advisors).  I served on the STEP Guernsey committee until last year.

18.     I am the founder and Executive Director of Via Executive Limited, a specialist management consulting company.

19.      I am familiar with the subject of the allegations made against me in the AP7 Group's Opposition from prior experience.    In considering my fitness for membership, directorship, and/or employment, various of the entities and organizations named at ¶¶ 12-17 have researched my professional background and encountered the same inaccurate newspapers articles that I believe form the basis of the AP7 Group's false allegations.  On each such occasion I have provided a full and accurate recitation of the facts concerning the subject of these allegations, substantively identical to my statements in this Declaration.  I am not aware of any instance in which these false allegations were believed to be true, nor of any instance in which I was deemed unfit for membership, directorship, and/or employment, following such explanation.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the foregoing statements relating to myself are true and correct to the best of my knowledge.

Executed on this __18__ day of May 2020.

DocuSigned by:

*Ian Burns*

C2099DA981F4401...

Ian Burns

5