UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARTIN COHEN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>LUCKIN COFFEE INC., JENNY ZHIYA QIAN, and REINOUT HENDRIK SCHAKEL,<br><br>Defendants. | Case No. 1:20-cv-01293-LJL-JLC<br><br><u>CLASS ACTION</u> |

**REPLY IN FURTHER SUPPORT OF THE MOTION OF SJUNDE AP-FONDEN AND LOUISIANA SHERIFFS' PENSION & RELIEF FUND FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF SELECTION OF LEAD COUNSEL, AND CONSOLIDATION OF RELATED ACTIONS, <u>AND IN OPPOSITION TO COMPETING MOVANTS</u>**

**TABLE OF CONTENTS**

**Page**

I. ARGUMENT ................................................................................................................. 2
    A. AP7 HAS STANDING UNDER THE PRUDENTIAL EXCEPTION ................... 2
    B. AP7 IS NOT SUBJECT TO *RES JUDICATA* CONCERNS ................................. 6
    C. THE PROFESSIONAL PLAINTIFF BAR DOES NOT APPLY TO AP7 ............ 8
    D. AP7 AND LOUISIANA SHERIFFS ARE AN APPROPRIATE GROUP ............ 9
    E. THE LUCKIN INVESTOR GROUP ESTABLISHED ITS INADEQUACY ...... 10
II. CONCLUSION ............................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
   258 F.R.D. 260 (S.D.N.Y. 2009) ................................................................................... 9-10

*Baydale v. Am. Express Co.*,
   2009 WL 2603140 (S.D.N.Y. Aug. 14, 2009) .....................................................................5

*Bersch v. Drexel Firestone, Inc.*,
   519 F.2d 974 (2d Cir. 1975) ................................................................................................7

*In re The Boeing Co. Aircraft Sec. Litig.*,
   2019 WL 6052399 (N.D. Ill. Nov. 15, 2019) ......................................................................9

*Borochoff v. Glaxosmithkline PLC*,
   246 F.R.D. 201 (S.D.N.Y. 2007) ........................................................................................7

*City of Taylor Police & Fire Ret. Sys. v. W. Union Co.*,
   2014 WL 4799659 (D. Colo. Sept. 26, 2014) ............................................................ passim

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*,
   2017 WL 2608243 (S.D. Tex. June 15, 2017) ....................................................................6

*In re DaimlerChrysler AG Sec. Litig.*,
   216 F.R.D. 291 (D. Del. 2003) ...........................................................................................7

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) ............................................................................................................2

*Foley v. Transocean Ltd.*,
   272 F.R.D. 126 (S.D.N.Y. 2011) ........................................................................................7

*Forden v. Allergan plc*,
   2017 WL 452005 (D.N.J. Feb. 1, 2017) .............................................................................6

*Gross v. AT&T Inc.*,
   2019 U.S. Dist. LEXIS 225777 (S.D.N.Y. June 24, 2019) .................................................6

*Hachem v. Gen. Elec. Inc.*,
   No. 17 Civ. 8457 (JMF) (S.D.N.Y. May 23, 2018), ECF No. 140 ..............................2, 3, 6

*Hedick v. Kraft Heinz Co.*,
   2019 WL 4958238 (N.D. Ill. Oct. 8, 2019) .........................................................................6

*Hevesi v. Citigroup Inc.*,
    366 F.3d 70 (2d Cir. 2004) ............................................................................................... 10

*Hufnagle v. Rino Int'l Corp.*,
    2011 WL 710704 (C.D. Cal. Feb. 14, 2011) ....................................................................... 7

*La. Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*,
    2012 WL 12985571 (D. Vt. Apr. 27, 2012) ........................................................................ 6

*La. Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*,
    2017 WL 3149424 (D. Vt. July 21, 2017) .......................................................................... 6

*Morrison v. Nat'l Austl. Bank Ltd.*,
    561 U.S. 247 (2010) ............................................................................................................ 7

*In re Ocwen Fin. Corp. Sec. Litig.*,
    No. 14-81057 CIV-WPD (S.D. Fla. Nov. 17, 2016), ECF No. 158 .................................... 6

*OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*,
    63 F. Supp. 3d 394 (D. Del. 2014) ............................................................................ 2, 5, 6-7

*In re Parmalat Sec. Litig.*,
    2008 WL 3895539 (S.D.N.Y. Aug. 21, 2008) .................................................................... 7

*Peters v. Jinkosolar Holding Co., Ltd.*,
    2012 WL 946875 (S.D.N.Y. Mar. 19, 2012) ..................................................................... 10

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
    275 F.R.D. 187 (S.D.N.Y. 2011) ..................................................................................... 5, 6

*Plaut v. Goldman Sachs Grp., Inc.*,
    2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019) ............................................................ *passim*

*Sgalambo v. McKenzie*,
    268 F.R.D. 170 (S.D.N.Y. 2010) .................................................................................. 6-7, 7

*Shah v. Qualcomm Inc.*,
    No. 3:17-cv-00121-JAH-WVG (S.D. Cal. May 4, 2017), ECF No. 31 .............................. 6

*Smith v. JPMorgan Chase & Co.*,
    No. 1:12-cv-03852-GBD (S.D.N.Y. Aug. 21, 2012), ECF No. 29 ..................................... 6

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*,
    554 U.S. 269 (2008) .................................................................................................... 2, 4, 5

*Steamfitters Local 449 Pension Plan v. Maximus, Inc.*,
    No. 1:17-cv-00884-AJT-IDD (E.D. Va. Nov. 3, 2017), ECF No. 40 ................................. 5

*Stone v. Agnico-Eagle Mines Ltd.*,
   280 F.R.D. 142 (S.D.N.Y. 2012) ...................................................................................1, 7, 8

*Takeda v. Turbodyne Techs., Inc.*,
   67 F. Supp. 2d 1129 (C.D. Cal. 1999) .............................................................................. 6-7

*United States of Am. v. Articles of Banned Hazardous Substances*,
   34 F.3d 91 (2d Cir. 1994)........................................................................................................2

*United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8
   v. Ocwen Fin. Corp.*,
   2014 WL 7236985 (S.D. Fla. Nov. 7, 2014).................................................................. passim

*In re Vivendi Universal, S.A. Sec. Litig.*
   242 F.R.D. 76 (S.D.N.Y. 2007) ...............................................................................................7

*In re Vivendi Universal, S.A. Sec. Litig.*
   605 F. Supp. 2d 570 (S.D.N.Y. 2009).................................................................................. 4-5

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
   549 F.3d 100 (2d Cir. 2008)..........................................................................................1, 2, 5

*Wigginton v. Advance Auto Parts, Inc.*,
   2018 WL 5729733 (D. Del. Nov. 2, 2018) ........................................................................1, 9

## Statutes

15 U.S.C. § 78u-4(a) ................................................................................................... 1, 8, 8-9

## Other Authorities

H.R. Conf. Rep. No. 104-369 (1995),
   *reprinted in* 1995 U.S.C.C.A.N. 730 (1995).............................................................................9

AP7 and Louisiana Sheriffs assert the largest financial interest of any qualified movant and are entitled to appointment as Lead Plaintiff.[1] The remaining movants attempt to rebut AP7 and Louisiana Sheriffs's presumptive status by making specious arguments which are directly refuted by on-point case law and the evidence before the Court.[2] Specifically:

- AP7's standing under *W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008), has been repeatedly confirmed—including **twice** in the last two years **in this District**. *See, e.g.*, *Plaut v. Goldman Sachs Grp., Inc.*, 2019 WL 4512774, at *6 (S.D.N.Y. Sept. 19, 2019). AP7's standing is settled.

- AP7 has never faced a successful *res judicata* challenge. Similar arguments against other Swedish lead plaintiff movants—**including another AP fund in this District**—have been dismissed as speculation lacking a basis in reality. *See, e.g.*, *Stone v. Agnico-Eagle Mines Ltd.*, 280 F.R.D. 142, 146 (S.D.N.Y. 2012); *City of Taylor Police & Fire Ret. Sys. v. W. Union Co.*, 2014 WL 4799659, at *5 n.3 (D. Colo. Sept. 26, 2014). The same is warranted here.

- Arguments that the PSLRA's "professional plaintiff" restriction applies to AP7 are misleading. Consistent with the PSLRA's certification requirement, this limitation considers only cases "brought" within the last three years. *See, e.g.*, *Wigginton v. Advance Auto Parts, Inc.*, 2018 WL 5729733, at *5 (D. Del. Nov. 2, 2018). AP7 has been appointed in only three cases within the last three years. *See* ECF No. 67-1. The restriction is inapplicable to AP7.

- AP7 and Louisiana Sheriffs's submissions and history establish they are a well-functioning group that is actually overseeing this case. Arguments to the contrary are baseless.

None of these arguments meet the "proof" required by the PSLRA to rebut AP7 and Louisiana Sheriffs's presumptive status. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Not only do the competing movants fail to meet their burden, but their conduct confirms their own inadequacy. The Chesi Group continues to conceal Mr. Tiah's criminal violations of Malaysian securities laws while touting his business career as evidence of his adequacy. Equally as concerning, the Luckin Investor Group abandoned any notion of protecting the class and endorses the Chesi Group without

---

[1] Terms not defined herein shall have the same meaning as in AP7 and Louisiana Sheriffs's opposition brief [ECF No. 98]. Unless otherwise indicated: all references to "ECF No. __" are to docket entries in *Cohen v. Luckin Coffee Inc., et al.*, No. 1:20-cv-01293-LJL-JLC (S.D.N.Y.); all references to "Ex. __" refer to exhibits to the Reply Declaration of Gerald H. Silk filed herewith; all emphases are added; and all internal citations and quotation marks are omitted.

[2] *See* ECF Nos. 93; 95; 97; *see also* ECF No. 101 (seeking appointment as "lead or co-lead plaintiff").

1

explaining what inquiry, if any, it undertook prior to endorsing such an unqualified movant.

I.   ARGUMENT

   A.   AP7 HAS STANDING UNDER THE PRUDENTIAL EXCEPTION

AP7's standing under the prudential exception is settled, and arguments based on theoretical "policy concerns" and phantom "unique defense[s]," *see* ECF No. 97 at 12, 19 n.18, cannot overcome the body of case law confirming AP7's adequacy to act as a lead plaintiff.  *See, e.g.*, *Goldman*, 2019 WL 4512774, at *6 (concluding that AP7 has standing under the prudential exception); Ex. A at 5:4-10 (*Hachem v. Gen. Elec. Inc.*, No. 17 Civ. 8457 (JMF) (S.D.N.Y. May 23, 2018), ECF No. 140) (same); *United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 v. Ocwen Fin. Corp.*, 2014 WL 7236985, at *3 (S.D. Fla. Nov. 7, 2014) (same); *cf. OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 403 (D. Del. 2014) (stating that challengers to European fund manager's standing "must produce more than speculation") (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)).[3]

The Chesi Group attempts to repackage well-worn (and unsuccessful) challenges to AP7 by proffering an expert opinion questioning AP7's standing.  *See* ECF No. 97 at 17.  There is nothing new about this strategy.[4]  Just last year, counsel for the Luckin Investor Group, presented an "expert" report in *Goldman* which, like the competing movants here, argued AP7's standing under the prudential exception is questionable.  *Compare* Ex. B ¶ 33 (*Goldman*, No. 1:18-cv-

---

[3] The prudential exception is firmly rooted in American law and is "routinely" used in federal courts.  *See Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 287-88 (2008); *Huff*, 549 F.3d at 109-10.  In addition to the case law applying the doctrine to AP7, the prudential exception is also routinely applied to other investors seeking appointment as lead plaintiffs under the PSLRA.  *See, e.g.*, *W. Union*, 2014 WL 4799659, at *5 (applying prudential exception to European institutional investor); *OFI*, 63 F. Supp. 3d at 403 (same).

[4] The Chesi Group's expert, a U.S. professor who lacks expertise in Swedish law or pension fund structure, provides a combination of legal conclusions and speculation—neither are appropriate expert testimony.  *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590-91 (1993) (stating expert testimony cannot be based on "subjective belief or unsupported speculation" and must "assist the trier of fact to **understand the evidence** or to **determine a fact**").  AP7's standing is a legal issue for the Court to resolve.  *See United States of Am. v. Articles of Banned Hazardous Substances*, 34 F.3d 91, 96 (2d Cir. 1994) ("experts are not permitted to present testimony in the form of legal conclusions").

12084-VSB (S.D.N.Y. Mar. 5, 2019), ECF No. 39-2) (discussing "close relationship" requirement) *with* ECF No. 97 at 14 (suggesting AP7 "[l]acks a [c]lose [r]elationship").[5] Among other similarities, the expert in *Goldman* suggested the Supreme Court's "much stricter" views on the prudential exception created uncertainty for AP7's standing. *Compare* Ex. B ¶¶ 30-31 *with* ECF No. 97 at 17. The Honorable Vernon S. Broderick rejected this argument and joined numerous courts correctly finding such challenges are "not grounded in evidence." *Goldman*, 2019 WL 4512774, at *6. Judge Broderick's findings followed the Honorable Jesse M. Furman's ruling in *General Electric* where he, a year earlier, also rejected standing challenges identical to those raised here (including overlapping case law)[6] and concluded that "the 'prudential exception' applies" to AP7 and that AP7's "**standing is not an issue**." Ex. A at 5:4-10. *Goldman* and *General Electric* accord with a third case, *Ocwen*, which likewise appointed AP7 as a sole lead plaintiff and rejected standing challenges as "not grounded in evidence." 2014 WL 7236985, at *3.

AP7's structure has not changed since the *Goldman*, *General Electric*, and *Ocwen* rulings. As was true then, AP7 is exclusively authorized under Swedish law to act on behalf of the Equity Fund, and the Equity Fund is a pool of assets that has **no board**, **no management**, and **no employees**. *See* Ex. D §§ 2; 4.4 (*Gen. Elec.*, ECF No. 123-1 (S.D.N.Y. May 17, 2018)). The Equity Fund has no independent legal identity and no ability to take legal action on its own. *See id*. Without AP7 pursuing claims, the Equity Fund is legally incapable of acting. *See id.* § 2(b); *Ocwen*, 2014 WL 7236985, at *3 (discussing AP7's relationship to the Equity Fund). None of these facts—which are plainly sufficient for standing under *Huff*—are challenged by competing

---

[5] The Luckin Investor Group's claim that AP7 has left parties "guessing" as to how it has standing, *see* ECF No. 93 at 14, is baseless given its counsel's previous unsuccessful standing attacks against AP7 and the fact that basic legal research would identify numerous cases rejecting these challenges. *See, e.g.*, *Goldman*, 2019 WL 4512774, at *6; *see also* ECF Nos. 63 at 12 (listing AP7's appointments); 67-1 (same).

[6] *Compare* ECF Nos. 95 at 12-13 & 97 at 15 n.11; *with* Ex. C at 6-7 (*Gen. Elec.*, ECF No. 109 (S.D.N.Y. May 11, 2018)).

3

movants. *See, e.g.*, *Goldman*, 2019 WL 4512774, at \*6; *Ocwen*, 2014 WL 7236985, at \*3.

The Chesi Group meekly attempts to distinguish this overwhelming case law by suggesting that courts appointing AP7 failed to "discuss[] both required prongs under *Huff*." ECF No. 97 at 16. This is false. *Ocwen*—which was relied on by *Goldman* and *General Electric*—specifically addressed *Huff's* two prongs, stating that the prudential exception "applies where the plaintiff can demonstrate: (1) a close relationship to the injured party ***and*** (2) a barrier to the injured party's ability to assert its own interests." 2014 WL 7236985, at \*2 (citing *Huff*). The court applied both prongs to AP7, noting: (1) AP7's obligation "by law to protect" the Equity Fund; and (2) the Equity Fund's inability to "tak[e] any legal action" without AP7. *See id.* at \*3.[7] *Huff* is central to *Ocwen*'s analysis. *See id.*; *see also Sprint*, 554 U.S. at 288 (accepting that aggregators have "obligation to the parties whose interests they vindicate" similar to "trustees, guardians ad litem, and the like").

Application of the prudential exception to AP7 also accords with a number of cases recognizing that Swedish fund managers, like AP7, have standing to pursue claims under the federal securities laws. For example, in *In re Vivendi Universal, S.A. Securities Litigation*, the Honorable Richard J. Holwell, in a detailed, post-*Huff* summary judgment analysis, held that a Swedish fund manager structured like AP7 had standing as a matter of law:

> The Court need look no further than defendants' own expert to conclude that [the Swedish manager], the undisputed management company for the fund, has standing to bring its claims. Defendants' expert concedes that the fund "does not have standing before a court of law, as it is not a legal person", that the management company "shall represent the [investors in the fund] in respect to all issues", and that "the Swedish management company shall act in its own name stating the fund's generic name." Defendants' expert further

---

[7] The Chesi Group's expert's failure to consider *Goldman* and *General Electric*—two recent rulings from this District refuting his arguments to limit the prudential exception in class actions—further undermines his opinion. *See* ECF No. 99-3 at Ex. 3 (failing to list *Goldman* or *General Electric* in considered "Memorandum Opinions and Orders"). Nor does the expert reconcile his views concerning a lead plaintiff's need for a "direct economic stake" with the fact his client is allowing Intertrust employees (who have no financial interest) to direct this litigation. *Compare* ECF No. 99-3 ¶ 23 *with* ECF Nos. 76-4 ¶ 5 (confirming Intertrust employees will direct litigation with Mr. Tiah); 97 at 6-7.

4

> concedes that in writing the law governing the funds, the legislature intended to "import the main characteristics of the **Common law trust**." In light of these statements, the court concludes that [the Swedish manager] has standing to sue on behalf of the [Swedish] fund because ***it qualifies for the Huff exception***.

605 F. Supp. 2d 570, 581 (S.D.N.Y. 2009) (second set of brackets in original). *Western Union* tracked *Vivendi* and applied *Huff*'s prudential exception to a Swedish fund manager. 2014 WL 4799659, at *5. As explained in *Western Union*, "concerns about [a Swedish fund manager]'s standing are unfounded" as the fund manager "comfortably fits within *Huff*'s prudential exception." Id.[8] *Goldman*, *General Electric*, *Ocwen*, *Vivendi*, and *Western Union* establish that Swedish fund managers—and specifically AP7—have standing under *Huff*.[9]

The Honorable William H. Pauley III's decisions in *Pipefitters Local No. 636 Defined Benefit Plan v. Bank of America Corp.*, 275 F.R.D. 187 (S.D.N.Y. 2011), and *Baydale v. American Express Co.*, 2009 WL 2603140 (S.D.N.Y. Aug. 14, 2009)—competing movants' primary legal support against AP7's standing—have been rejected as inconsistent with the PSLRA. As explained in *OFI*, *Baydale* "**rel[ies] on mere speculation**, not actual proof provided by the opposing movant." 63 F. Supp. 3d at 403 ("neither *Baydale* nor [*Marcus v. J.C. Penney Co.*, 2014 U.S. Dist. LEXIS 198543 (E.D. Tex. May 8, 2014)] is persuasive"). Similarly, *Ocwen* noted that "*Baydale*, and by extension, *Pipefitters*, has been **rejected** by other courts." 2014 WL 7236985, at

---

[8] *Huff* refused to apply the prudential exception to an investment advisor claiming standing on behalf of "relatively sophisticated parties with a demonstrated capacity to protect their own interests" some of whom already "filed parallel individual suits." 549 F.3d at 110. *Goldman*, *General Electric*, *Ocwen*, *Vivendi*, and *Western Union* establish that the facts in *Huff* are distinguishable from the facts establishing AP7 and other Swedish managers' standing.

[9] Ignoring these courts' straightforward application of *Huff*, the Chesi Group ventures down a rabbit hole to argue that the "injured party" when assessing *Huff*'s second prong is actually the entire class. *See* ECF No. 97 at 19-20. The Chesi Group then argues that because **someone** from the class can seek appointment, the prudential exception can never be applied in class actions. *See id.* Of course, the Chesi Group cites no case law for this misguided proposition, which is refuted by overwhelming case law. *Cf. Sprint,* 554 U.S. at 288 (rejecting interpretation of third party standing that "if taken seriously, would work a sea change in the law"). Indeed, the Chesi Group's counsel has sought appointment on behalf of investors (such as trustees) who rely upon the prudential exception and have been appointed as lead plaintiffs under the PSLRA. *See, e.g.*, Ex. E (*Steamfitters Local 449 Pension Plan v. Maximus, Inc.,* No. 1:17-cv-00884-AJT-IDD (E.D. Va. Nov. 3, 2017), ECF No. 40). Such appointments would be impossible under the Chesi Group's novel theory. *See Sprint*, 554 U.S. at 288 (noting trustees' reliance on prudential exception).

5

\*3.  *Goldman*'s and *General Electric*'s adoption of *Ocwen* confirms that *Pipefitters* is no longer followed, even in this District.[10]  *Pipefitters* is further undermined by the fact that, in the nine years *after* that opinion was issued, AP7 was appointed as a lead plaintiff in *eight* actions (including three in this District) and certified as a representative plaintiff several times.[11]  AP7 is a proven fiduciary for investors, recovering hundreds of millions of dollars for classes it represented.[12]  Tellingly, no defendant in any of the actions noted herein even challenged AP7's standing and AP7 was never disqualified due to concerns about its standing.  This exact point was noted by Judge Broderick: "[A]lthough AP7 is regularly appointed as lead plaintiff in securities class action lawsuits [competing movant] has **not identified a single case** in which a defendant has successfully challenged AP7's standing."  *Goldman*, 2019 WL 4512774, at \*6 n.12.  This fact is undisputed.[13]

### B.      AP7 IS NOT SUBJECT TO *RES JUDICATA* CONCERNS

As with standing, no defendant has challenged AP7's propriety as a lead plaintiff on *res judicata* grounds.  The reason why is simple: "[C]ourts routinely appoint foreign investors as lead plaintiffs," *Sgalambo v. McKenzie*, 268 F.R.D. 170, 176 (S.D.N.Y. 2010), and *res judicata*

---

[10] Suggestions that AP7 should have submitted an "assignment" from the Equity Fund, *see* ECF Nos. 93 at 14 & 97 at 14 n.10, is misleading.  Basic research exposes this argument as meritless.  *See Ocwen*, 2014 WL 7236985, at \*3 (noting that the AP7 Equity Fund is "a pool of assets **not capable** of taking any legal action").

[11] *See Goldman*, 2019 WL 4512774, at \*7 (appointing AP7 as the sole lead plaintiff); Ex. A (*Gen. Elec.*; same); *Ocwen*, 2014 WL 7236985 (same); *Hedick v. Kraft Heinz Co.*, 2019 WL 4958238, at \*14 (N.D. Ill. Oct. 8, 2019) (appointing AP7 lead plaintiff); Ex. F (*Shah v. Qualcomm Inc.*, No. 3:17-cv-00121-JAH-WVG (S.D. Cal. May 4, 2017), ECF No. 31) (same); *Forden v. Allergan plc*, 2017 WL 452005 (D.N.J. Feb. 1, 2017) (same); Ex. G (*Smith v. JPMorgan Chase & Co.*, No. 1:12-cv-03852-GBD (S.D.N.Y. Aug. 21, 2012), ECF No. 29) (same); *La. Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, 2012 WL 12985571 (D. Vt. Apr. 27, 2012) (same); Ex. H (*In re Ocwen Fin. Corp. Sec. Litig.*, No. 14-81057 CIV-WPD (S.D. Fla. Nov. 17, 2016), ECF No. 158) (appointing AP7 as a class representative); *Green Mountain*, 2017 WL 3149424 (D. Vt. July 21, 2017) (same); *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, 2017 WL 2608243 (S.D. Tex. June 15, 2017) (same).

[12] AP7 has secured significant settlement recoveries in three of the actions—*Cobalt* ($389.6 million recovery), *Ocwen* ($56 million recovery days before jury selection), and *JPMorgan* ($150 million recovery).

[13] *Gross v. AT&T Inc.*, 2019 U.S. Dist. LEXIS 225777 (S.D.N.Y. June 24, 2019), *see* ECF No. 93 at 14-15, is inapposite.  The movant in *AT&T* never argued that it qualified for the prudential exception (like AP7).  It argued that it had a power of attorney under management agreements—a singular fact that *AT&T* found "insufficient to confer standing." 2019 U.S. Dist. LEXIS 225777, at \*5.  *AT&T* does not address (let alone conflict with) the body of case law confirming AP7's standing.  *See, e.g.*, *Goldman*, 2019 WL 4512774, at \*6.

concerns "are not an issue with respect to the selection of Lead Plaintiffs, since those persons will clearly be bound by the judgment of the court." *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1139 (C.D. Cal. 1999); *see also OFI*, 63 F. Supp. 3d at 407 (explaining that *res judicata* is "not at issue in this case, because this case involves securities purchased on a domestic stock exchange and [the movant] has submitted to this Court's jurisdiction").[14] The ability of non-U.S. investors to pursue federal securities claims based on transactions made on U.S. exchanges—like the claims here—cannot be disputed following the decision in *Morrison v. National Australian Bank Ltd.*, 561 U.S. 247 (2010), which conclusively established federal subject matter jurisdiction for such claims. *See Foley v. Transocean Ltd.*, 272 F.R.D. 126, 133-34 (S.D.N.Y. 2011) ("nothing in the Court's decision provides any support for the notion that foreign investors are not adequate plaintiffs in United States courts when the securities . . . were purchased on a United States exchange").[15] Indeed, in *Agnico-Eagle Mines* the Honorable J. Paul Oetken rejected *res judicata* arguments against AP1—one of AP7's sister pension funds—stating: "The Court is not persuaded that AP1 is inadequate to serve as lead plaintiff due to the risk of Swedish courts denying *res judicata* effect to this Court's ruling." 280 F.R.D. at 146. Likewise, *Western Union* dismissed *res judicata* arguments against a Swedish movant as "based on an entirely speculative fear" devoid of factual support. 2014 WL 4799659, at *5, *5 n.3 ("like most boogeymen, [*res judicata* concerns

---

[14] Local 710 provides no proof that Sweden would not recognize a judgment involving AP7 as lead plaintiff. *See Sgalambo*, 268 F.R.D. at 176 (rejecting challenge where "[n]o evidence or expert submissions" beyond "secondary sources" were provided). Moreover, that Sweden does not have a treaty with the United States is not dispositive given that AP7 is before the Court. *See Hufnagle v. Rino Int'l Corp.*, 2011 WL 710704, at *6 (C.D. Cal. Feb. 14, 2011) (rejecting *res judicata* argument based on fact that "[Luxembourg] does not have a formal treaty with the U.S.").

[15] Local 710's reliance on pre-*Morrison* authority is misplaced. *In re Parmalat Securities Litigation*, 2008 WL 3895539 (S.D.N.Y. Aug. 21, 2008), *Vivendi*, 242 F.R.D. 76 (S.D.N.Y. 2007), *In re DaimlerChrysler AG Securities Litigation*, 216 F.R.D. 291 (D. Del. 2003), and *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974 (2d Cir. 1975), each excluded non-U.S. investors (who purchased non-U.S. traded securities) from remaining passive class members—not from serving as a lead plaintiff in connection with U.S. traded securities (and thus, affirmatively consenting to U.S. jurisdiction). *See Sgalambo*, 268 F.R.D. at 176 (rejecting cases like *Vivendi* that "involved foreign cubed plaintiffs"). *Borochoff v. Glaxosmithkline PLC*, 246 F.R.D. 201 (S.D.N.Y. 2007), is similarly distinguishable given its reliance on *Drexel Firestone*'s and *Vivendi*'s concerns about foreign class members in rejecting a non-U.S. movant.

are] more fearsome in theory than in reality"). Theoretical concerns are insufficient to rebut AP7's presumptive status. *See id.*; 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Consistent with *Agnico-Eagle Mines* and *Western Union*, non-U.S. investors—including AP7—are responsible for many of the largest securities class action recoveries in this District, including: *In re Bank of America Corp. Securities, Derivative, & Employee Retirement Income Security Act (ERISA) Litigation*, No. 09-md-2058 (S.D.N.Y.) ($2.425 billion recovery with Swedish and Dutch lead plaintiffs); *In re Lehman Bros. Equity/Debt Securities Litigation*, No. 08-cv-5523 (S.D.N.Y.) ($615 million recovery with U.K. lead plaintiffs); *Jones v. Pfizer Inc.*, No. 10-cv-3864 (S.D.N.Y.) ($400 million recovery with Dutch lead plaintiff); and *In re JP Morgan Chase & Co. Securities Litigation*, No. 12-cv-3852 (S.D.N.Y.) ($150 million recovery with AP7 as lead plaintiff). Local 710 and its counsel are well aware that *res judicata* concerns are inapplicable to lead plaintiffs given that they are serving as co-lead plaintiff and co-lead counsel with a German investor in *In re Philip Morris Int'l Inc. Securities Litigation*, No. 1:18-cv-08049 (S.D.N.Y.).[16]

### C. THE PROFESSIONAL PLAINTIFF BAR DOES NOT APPLY TO AP7

Local 710 incorrectly argues that the PSLRA's limitation on "professional plaintiffs" (the "Five-in-Three Rule") applies to AP7 because it "is ***currently serving*** as lead plaintiff in five cases [and] is seeking appointment to its sixth." ECF No. 95 at 17. Local 710 distorts the PSLRA. The Five-in-Three Rule's plain language considers only cases that were "***brought***" in the last three years—not all cases that were ***active*** during this period. 15 U.S.C. § 78u-4(a)(3)(B)(vi). Consistent with this language, the PSLRA requires movants to identify in their certifications only actions "***filed*** during the 3-year period preceding the date on which the certification is signed by the plaintiff, in which the plaintiff has sought to serve as a representative party." *Id.* § 78u-

---

[16] *See* ECF 56-3. Local 710's counsel also served as lead counsel with a non-U.S. lead plaintiff in *Pfizer*, and is currently serving as lead counsel on behalf of non-U.S. lead plaintiffs in more than ten cases. *See* Ex. I.

8

4(a)(2)(A)(v).  AP7 has served as a lead plaintiff in only three actions filed in the preceding three years: *Goldman*; *Kraft*; and *General Electric*.  See ECF No. 67-1.  Thus, AP7 is not subject to the Five-in-Three Rule.  *See Advanced Auto*, 2018 WL 5729733, at *5 (analyzing certification to assess appointments "within the last three years").[17]

Local 710's claim that the Five-in-Three Rule "is broader" than the certification requirement, ECF No. 95 at 18 n.12, defies all logic.  The certification requirement's ***only*** purpose is to identify individuals that have served as lead plaintiffs in more than five cases brought in a three-year period.  *See* H.R. Conf. Rep. No. 104-369, at 33 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 732 (1995) ("To further deter the use of professional plaintiffs, the plaintiff must also identify . . . any other lawsuits in which [it] has sought to serve as lead plaintiff in the last three years.").  The certification requirement would be pointless under Local 710's interpretation.[18]

### D.    AP7 AND LOUISIANA SHERIFFS ARE AN APPROPRIATE GROUP

AP7 and Louisiana Sheriff are a proper group and have provided specific evidence of their ability to direct this litigation.  *See* ECF Nos. 63 at 10-11 & 67-7 ¶¶ 3, 5, 17.  AP7 and Louisiana Sheriffs's decision to jointly prosecute this case is not based simply on theoretical benefits of joint decision making, but is predicated on actual experience successfully serving as lead plaintiffs with other institutional investors.  *See* ECF Nos. 67-7 ¶¶ 8-10, 12-14.  No other movant can claim a similar track record.  While Local 710 speculates that AP7 and Louisiana Sheriffs's appointment

---

[17] Louisiana Sheriffs has served as a lead plaintiff in only three actions filed in the preceding three years: *Intel*; *Bristol-Myers*; and *Evoqua*.  *See* ECF No. 67-1.

[18] Even if AP7 triggered the Five-in-Three Rule (it does not), Local 710's attempt to apply it to institutional investors like AP7 is based on outdated, outlier case law.  *See, e.g.*, *In re The Boeing Co. Aircraft Sec. Litig.*, 2019 WL 6052399, at *8 (N.D. Ill. Nov. 15, 2019) ("the '5-in-3' provision plainly does not bar the appointment of institutional investors as lead plaintiff more than five times in three years"); *Advance Auto*, 2018 WL 5729733, at *5 (rejecting Local 710's arguments and explaining that the PSLRA's "**preference** for institutional investors . . . necessarily suggests that institutional investors are likely not the intended targets of the 5-in-3 Rule").  Nor has Local 710 "offer[ed] any evidence that [AP7] has inadequately represented the interests of any class based on its lead-plaintiff role in multiple securities class actions . . . or that it will do so here." *Advance Auto*, 2018 WL 5729733, at *6.  The actual evidence before the Court confirms AP7's ability to oversee this litigation.

9

may create additional expense or inefficiency, *see* ECF No. 95 at 6, it fails to identify any instance where AP7 or Louisiana Sheriffs duplicated efforts in their decades of experience representing investors in lead plaintiff groups. *See Bank of Am.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) (appointing institutions detailing "plans for joint oversight over the litigation").[19] Tellingly, Local 710 is serving in lead plaintiff groups in two cases in this District: *Philip Morris*; and *City of Birmingham Firemen's & Policemen's Supplemental Pension System v. Credit Suisse Group AG*, No. 17-cv-10014 (S.D.N.Y.). *See* ECF No. 56-3.

### E. THE LUCKIN INVESTOR GROUP ESTABLISHED ITS INADEQUACY

The Luckin Investor Group supports the Chesi Group and represented that the Chesi Group "made the requisite *prima facie* showing of its typicality and adequacy." ECF No. 93 at 2. That statement not only ignores the Chesi Group's criminal history, but begs the question as to whether the Luckin Investor Group's four law firms did any due diligence into the Chesi Group's numerous deficiencies, why such obviously disqualifying facts were disregarded, and, if there was due diligence, whether the results of any investigation were shared with the group's members. The Luckin Investor Group's willingness to allow the class to be represented by an admitted criminal and an opaque shell company conclusively establishes the Luckin Investor Group's inadequacy.[20]

## II. CONCLUSION

AP7 and Louisiana Sheriffs respectfully request the Court grant their motion in its entirety.

Dated: May 20, 2020                                        Respectfully submitted,

---

[19] Courts routinely appoint lead plaintiff groups where, like AP7 here, one member individually asserts a larger financial interest than any other qualified movants. *See, e.g.*, *Peters v. Jinkosolar Holding Co., Ltd.*, 2012 WL 946875, at *9 (S.D.N.Y. Mar. 19, 2012) (appointing group where a member had the largest loss of any movant).

[20] There is no justification to appoint Ms. Steinberg—who claims a loss of just $5,044—as a co-lead plaintiff given her purchase of Luckin shares pursuant to the Company's IPO. First, Louisiana Sheriffs also purchased shares pursuant to the IPO. *See* ECF Nos. 63 at 10 & 67-1. Second, "any requirement that a different lead plaintiff be appointed to bring every single available claim would contravene the main purpose of having a lead plaintiff—namely, to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole." *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 n.13 (2d Cir. 2004).

**BERNSTEIN LITOWITZ BERGER  & GROSSMANN LLP**

*/s/ Gerald H. Silk*
Gerald H. Silk
Avi Josefson
Michael D. Blatchley
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
jerry@blbglaw.com
avi@blbglaw.com
michaelb@blbglaw.com

*Counsel for Proposed Lead Plaintiff Louisiana Sheriffs' Pension & Relief Fund and Proposed Lead Counsel for the Class*

**KESSLER TOPAZ MELTZER  & CHECK, LLP**
Naumon A. Amjed
Darren J. Check
Ryan T. Degnan
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
dcheck@ktmc.com
rdegnan@ktmc.com

*Counsel for Proposed Lead Plaintiff Sjunde AP-Fonden and Proposed Lead Counsel for the Class*