```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                        :
MARTIN COHEN, Individually and on Behalf of All         :
Others Similarly Situated,                              :
                                                        :
                              Plaintiff,                :   1:20-cv-01293-LJL
                                                        :
              -v-                                       :   OPINION & ORDER
                                                        :
LUCKIN COFFEE INC., et al.,                             :
                                                        :
                              Defendants.               :
                                                        :
-----------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __6/12/2020__

Presently before the Court are competing motions from the following movants: Luckin Investor Group (the "Luckin Group"); Sjunde AP-Fonden ("AP7") and Louisiana Sheriffs' Pension & Relief Fund ("Louisiana Sheriffs") (collectively, the "AP7 Group"); Teamsters Local 710 Pension Fund ("Local 710"); Wai Chun Shek ("Shek"); and Chaile Steinberg ("Steinberg"). Each of these movants seeks appointment as lead plaintiff in a class action securities case against Luckin Coffee Inc. ("Luckin" or the "Company") and certain other defendants. The case alleges violations of the Securities Act of 1933, as amended (the "Securities Act") and the Securities Exchange Act of 1934, as amended (the "Exchange Act").[1] Each movant also proposes its respective retained counsel as class counsel. As explained below, the AP7 Group is the party with the largest financial interest that also satisfies all other requirements under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). The Court therefore appoints the AP7

---

[1] A number of former movants either withdrew their motions for appointment as lead plaintiff or filed motions of non-opposition. Those former movants include: the Conway Group; Mike Farhat; the Bashy Group; Amrik Hira; Satyanarayana Kanchanapalli; Leonard Ross; Michael Bergenholtz; Boston Retirement System; Jimmy Chan; the Develter Group; Fulton County Employees' Retirement System; Wei Zuo; and Chesi Assets Limited Group.

1

Group as lead plaintiff and appoints its counsel, Bernstein Litowitz Berger & Grossman LLP and Kessler Topaz Meltzer & Check, LLP, as class counsel.

## BACKGROUND AND PROCEDURAL HISTORY

Luckin is a company based in the People's Republic of China that sells coffee, other drinks, and a variety of food items. (Dkt. No. 63 at 3.) On May 17, 2019, Luckin completed an initial public offering ("IPO") of its American Depository Shares ("ADSs"). (*Id*.) It completed a secondary offering on January 10, 2020. (*Id*.)

On January 31, 2020, Muddy Waters Research published a report stating that Luckin had fabricated key financial performance metrics. (Dkt. No. 66 at 4.) Luckin's stock price dropped immediately and substantially in the wake of this report's publication. (*Id*.) A series of actions was then filed in this Court[2] and in the Eastern District of New York[3] (collectively, the "Related Actions"), alleging that Luckin's offerings violated the Securities Act and the Exchange Act, and asserting claims for relief. (*Id*. at 2–3.) According to the complaints, Luckin failed to disclose material information and made false and misleading public statements. (*Id*.) In particular, the complaints alleged that Luckin inflated sales and revenue numbers, overstating the Company's financial health and rendering other of Luckin's public statements materially false and/or misleading. (*Id*. at 3–4.)

Luckin initially denied the Muddy Waters Research report's allegations, but on April 2, 2020, Luckin publicly announced that investors should not rely on the Company's previous financial statements. (Dkt. No. 54 at 3–4.) Following an internal investigation, Luckin announced that high-level employees at the Company had in fact fabricated certain transactions

---

[2] *See Cohen v. Luckin Coffee Inc., et al.*, Case No. 1:20-cv-01293, which was filed on February 13, 2020, and *Shek v. Luckin Coffee Inc., et al.*, Case No. 1:20-cv-02977, which was filed on April 10, 2020.
[3] *See Sterckx v. Luckin Coffee Inc. et al.*, Case No. 1:20-cv-01677, which was filed on April 2, 2020, and *Gopu, et al. v. Luckin Coffee Inc., et al.*, Case No.1:20-cv-01747, which was filed on April 8, 2020.

amounting to millions of dollars in sales revenue.  (*Id.*)  This revelation led to another precipitous drop in the Company's stock price.  (*Id.* at 4.)

On February 13, 2020, pursuant to PLSRA requirements for prosecuting a securities class action, notice was published on *Globe Newswire* advising prospective class members of the pendency of this action, the alleged claims, the class definition, the class period,[4] and the sixty-day deadline by which any applicant should seek appointment as lead plaintiff.  (*Id.* at 5; *see* 15 U.S.C. §78u-4(a)(3)(B)(iii).)  Several parties moved for the consolidation of the Related Actions into a single class action suit against Luckin and certain other defendants, which the Court granted on May 15, 2020.  (Dkt. No. 104.)  As described above, five movants now seek appointment as lead plaintiff in the consolidated suit, as well as the appointment of their respective counsel as class counsel.

## DISCUSSION

### A. Legal Standards

The PSLRA establishes the framework courts use to select a lead plaintiff in class actions brought under the federal securities laws.  First, the PSLRA requires any prospective lead plaintiff to file a motion for appointment as lead plaintiff within sixty days of the publication of notice of the securities class action.  15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(aa); *Id.* § 78u–4(a)(3)(A)(i).

Next, the PSLRA lays out standards for choosing one lead plaintiff from among the candidates who file motions.  The PSLRA provides that

> the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that—

---

[4] The parties define the class period as May 17, 2019 through April 6, 2020, inclusive.

> (aa) has either filed the complaint or made a motion in response to a notice [of the complaint within sixty days of the publication of this notice];
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure [("FRCP")].

15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). Once the Court identifies a presumptive lead plaintiff, this presumption

> may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—
>
> (aa) will not fairly and adequately protect the interests of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

*Id.* § 78u–4(a)(3)(B)(iii)(II). If the Court finds that the plaintiff with the largest financial interest in the class action is otherwise ineligible for appointment as lead plaintiff, the Court applies the criteria of the PSLRA to the plaintiff with the second-highest financial interest. This investigation continues until the Court identifies a suitable lead plaintiff. *See, e.g.*, *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 396 n.7 (S.D.N.Y. 2008).

For purposes of choosing a lead plaintiff under the PSLRA, "[t]he parties moving for lead plaintiff are only required to make a prima facie showing that they meet Rule 23 [of the FRCP], and courts need only consider the typicality and adequacy requirements." *Aude v. Kobe Steel, Ltd.*, 2018 WL 1634872, at *3 (S.D.N.Y. Apr. 4, 2018). Movants can demonstrate typicality by showing that their claims "arise from the same conduct from which the other class members' claims and injuries arise," *In re Crayfish Co. Sec. Litig.*, 2002 WL 1268013, at *5 (S.D.N.Y. June 6, 2002), and they can demonstrate adequacy if they "(1) [have] no conflict of interest with the other members of the class, (2) [have] sufficient interest in the outcome of the case, and (3)

4

[have] selected counsel that is qualified, experienced, and generally able to conduct the litigation in question," *Aude*, 2018 WL 1634872, at *4. The Court's determination of adequacy and typicality for purposes of appointing a lead plaintiff is not preclusive of a later challenge at the class certification stage with respect to those factors. *See, e.g.*, *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 536 (S.D.N.Y. 2015) ("[I]n deciding a motion to serve as lead plaintiff, [t]he moving plaintiff must make only a preliminary showing that the adequacy and typicality requirements under Rule 23 have been met. . . . In fact, a wide ranging analysis under Rule 23 is not appropriate at this initial stage of the litigation and should be left for consideration of a motion for class certification.") (internal quotation marks, citations, and modifications omitted).

While the PSLRA permits a "group of persons" to serve as lead plaintiff, 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I), it does not specify what constitutes an acceptable grouping. *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 99 (S.D.N.Y. 2005). "The majority of courts, including those in this District . . . permit[] unrelated investors to join together as a group seeking lead-plaintiff status on a case-by-case basis, if such a grouping would best serve the class." *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008). *Varghese* identifies factors for the Court to consider when assessing a proposed grouping of plaintiffs as lead plaintiff:

> [A] proposed group must proffer an evidentiary showing that unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers before its members will be designated as presumptive lead plaintiffs. Factors that courts have considered when evaluating whether a group's members will function cohesively and separately from their lawyers include evidence of: (1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa[.]
> . . .

> [C]ourts in this District do not hesitate to deny a proposed group's motion for lead-plaintiff status if the movants have not provided a sufficient evidentiary basis for aggregation or if the court otherwise is persuaded that the proposed group has been assembled as a makeshift by attorneys for the purpose of amassing an aggregation of investors purported to have the greatest financial interest in the action.

*Id*.

Finally, the PSLRA provides that, "[e]xcept as the court may otherwise permit, . . . a person may be a lead plaintiff . . . in no more than 5 securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3-year period." 15 U.S.C. § 78u–4(a)(3)(B)(vi).

### B. Lead Plaintiff

The movants here agree that the sixty-day window to file a motion for appointment as lead plaintiff closed on April 13, 2020. (*See, e.g.*, Dkt. No. 107 at 7.) All five eligible movants filed their motions within that window, and the Court therefore considers their filings timely.

The ranking, from largest to least, of the "financial interest in the relief sought," 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb), by each candidate for lead plaintiff is as follows:

1. Luckin Group, with an interest of $9.4 million (Dkt. No. 66, Exh. 4);
2. AP7 Group, with an interest of $6.9 million (Dkt. No. 67, Exh. B);
3. Local 710, with an interest of $2.1 million (Dkt. No. 56, Exh. D);
4. Shek, with an interest of $0.7 million (Dkt. No. 11 at 1); and
5. Steinberg, with an interest of $5,044 (Dkt. No. 92, Exh. C).[5]

The Court next proceeds to determine whether the movants who have proposed a "group of persons" satisfy the relevant standards under *Varghese*. This review is outcome-determinative with respect to the first two groups of potential lead plaintiffs.

---

[5] At the time of briefing, Chesi Assets Limited Group ("Chesi") claimed the largest financial interest with $19.1 million in losses. (Dkt. No. 97 at 3.) However, opposing movants questioned the presumptive adequacy of Chesi, noting the 2002 conviction of a key member of Chesi for violating Malaysian securities laws. (Dkt. No. 98 at 2.) On May 26, 2020, the Court ordered Chesi to submit all filings and other documents associated with this conviction. (Dkt. No. 115.) In lieu of compliance, Chesi withdrew its motion for appointment as lead plaintiff. (Dkt. No. 117.)

The Luckin Group does not satisfy *Varghese*. The self-titled "Group" is in fact a random assemblage of unlike individuals and a company that (with one limited exception) not only had no pre-existing relationship but apparently did not even know of one another before counsel introduced them. More specifically, the Luckin Group consists of a British privately-owned investment company; an individual in Alpharetta, Georgia with 30 years of investment experience who attended an MBA program for one year; a Canadian engineer who sues on his own behalf as well as on behalf of his brother and grandfather, who have assigned him their interests in the case; a Chinese national about whom no further information is given other than that he is 37 years old, has invested in the securities markets for approximately five years, and lives in Guangzhou, China; and a Saudi Arabian investor about whom no further information is given other than that he has a university degree. (Dkt. No. 66, Exh. 5 at 1–6.)[6] No further information is given about the sophistication of these investors.

As to the involvement of these investors in the litigation thus far, all that is provided is the following boilerplate claim, contained in a joint declaration signed by each member in counterpart: "Prior to the filing of our Lead Plaintiff motion, we discussed both with our counsel and with one another, among other things: the strength of the claims against Defendants; the responsibilities and duties of being Lead Plaintiffs; a strategy for prosecuting the action; the benefits that the class would receive from our leadership; the shared desire of each of us to achieve the best possible result for the class; our shared interest in prosecuting the case in a collaborative, likeminded manner; and the actions that we will take to continue to ensure that the class's claims will be zealously and efficiently litigated." (*Id*. at 8.) The Court would expect no

---

[6] The "limited exception" mentioned above is that the Canadian engineer and a principal of the British investment company have known one another for approximately seven years as a consequence of overlapping business interests. (Dkt. No. 66 at 9.)

less from *any* person or persons proposing to be lead counsel. The rote recitation of those factors does not provide evidence that any member of the group—much less the group as a whole—has had significant involvement in the litigation thus far. As to plans for cooperation, the Luckin Group states that it will "make all efforts, in good faith, to reach consensus with respect to litigation decisions, and to that end will consult with each other and our counsel as we deem necessary to fulfill our fiduciary obligations to the Class." (*Id*. at 9.) No more is stated.

More significantly, although the Luckin Group claims to believe that "geographically disperse representation will benefit the class—particularly in light of the present global COVID-19 pandemic," the group members provide no plan for communicating with one another across time zones. (Dkt. No. 66, Exh. 5 at 7.) Nor do they indicate how, if their only communication will be by phone or internet, the fact that they are geographically dispersed will be any advantage over a group that is more centrally located. Finally, the Luckin Group members provide no evidence that they chose outside counsel, as opposed to counsel choosing them. As a formal matter, they attest that they "selected" two firms to serve as co-lead counsel. (*Id.* at 10.) From the disparate nature of the Luckin Group, there is every reason to believe that the members agreed to be assembled by counsel and to ratify counsel's representation of them—rather than that they gathered together and engaged in a truly independent selection of counsel.[7]

---

[7] The Luckin Group's reliance on *Peters v. Jinkosolar Holding Co., Ltd.*, 2012 WL 946875 (S.D.N.Y. Mar. 19, 2012), is misplaced. In that case, Judge Oetken expressed concern that the aggregation into a single group of putative class members (each of whom had relatively small losses) would "run[] afoul of the policy behind the [PSLRA] statute" that presumptively awarded lead plaintiff status to the class member with the largest financial interest. *Id.* at *9. He appointed a group there as lead plaintiff because three of the four of its individual members each had losses in excess of any other individual that moved for appointment as lead plaintiff and thus it could not be said that the group was formed solely "for the obvious purpose of creating a large enough grouping of investors to qualify as lead plaintiff." *Id.* at *8 (citing *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 308 (S.D.N.Y. 2001) (internal quotation marks omitted). By contrast here, the members of the Luckin Group do not individually hold the largest financial interests of the investors competing to be lead plaintiff.

The Court now turns to the holder of the next-largest financial interest: the AP7 Group. The AP7 Group consists of AP7, a Swedish pension fund, and the Louisiana Sheriffs' Pension & Relief Fund. The AP7 Group provides no evidence of a pre-litigation relationship between group members. That is a negative factor but not disqualifying. *See, e.g.*, *Elstein v. Net1 UEPS Techs., Inc.*, 2014 WL 3687277, at *4 (S.D.N.Y. July 23, 2014) ("[P]laintiffs seeking appointment as a group are not required to show a pre-litigation relationship."). Both members of the AP7 Group are sophisticated and have experience in securities litigation.[8] In particular, both parties are institutional plaintiffs who have acted as fiduciaries and who have combined assets under management of $64 billion along with track records of successfully serving in lead plaintiff groups under the PSLRA. (Dkt. No. 98 at 23–24.)

AP7 manages $60 billion, has invested as part of Sweden's national pension system since 2000, and has recovered hundreds of millions of dollars for investors as lead or co-lead plaintiff in recent securities class action suits. (Dkt. No. 67, Exh. G at 2–3 (identifying recent appointments of AP7 as lead or co-lead counsel).) Similarly, Louisiana Sheriffs is a sophisticated pension fund managing $4 billion. (*Id.* at 4–5.) It, too, has recovered hundreds of millions of dollars for investors as lead or co-lead plaintiff in recent securities class action suits. (*Id.*) The parties note that "AP7 and Louisiana Sheriffs each have dedicated and experienced personnel who will oversee this matter and are available to confer via telephone and email to ensure that the funds are able to make timely decisions." (*Id.* at 14.) Their combined experience and resources give some confidence that the group members will have the knowledge and background to appropriately supervise counsel and protect against lawyer-driven litigation.

---

[8] Their application is also supported by a joint declaration signed in counterparts. (Dkt. No. 67, Exh. G.)

The AP7 group members are more concrete than the members of the Luckin Group about their involvement in the litigation thus far.  They discuss having participated in a "conference call."  (*Id*. at 11.)  They also discuss having instructed their lawyers to enter into a Joint Prosecution Agreement and to provide it to the Court for *in camera* review should the Court deem such review to be helpful.  (*Id*. at 17.)[9]  Significantly, the parties have laid out plans for cooperation in the future that include communications with each other (and not just each individually with counsel) on short notice by email and by telephone.  (Dkt. No. 67, Exh. G at 14.)  They also make commitments with respect to their individual participation in the litigation, stating that each of them will attend "court proceedings, depositions, any settlement mediations, and hearings as needed" and that they will review important litigation documents.  (*Id.* at 7.)

Although it appears from the papers that the members of the AP7 Group—like the members of the Luckin Group—may have had the litigation opportunity identified for them by counsel rather than having independently identified the litigation themselves and then chosen counsel, the AP7 Group at least provides a logic for the selection of counsel.  Each party has had prior, extensive experience prosecuting class action securities suits alongside its proposed class counsel.  That is, both members and their selected counsel bring benefits of long-standing lawyer-client relationships, which include, *inter alia*, trust, effective communication, and cost-effectiveness.  (Dkt. No. 67, Exh. G at 2–5.)  It makes sense that, if the experiences of AP7 and Louisiana Sheriffs with their counsel were positive, they would decide to retain those law firms even if the original lawsuit idea came from the lawyers and not the clients.

---

[9] The Court declined the offer and thus expresses no view as to whether the division of work between the firms will be efficient.  That issue, if it arises at all, will arise only when and if there is a request for fees in this case (in which event the Joint Prosecution Agreement may be relevant).  What matters at this stage is that the parties appear to have engaged in an effort to require counsel to efficiently divide work in the form of an agreement with legal significance.  For the same reasons, the Court declines at this stage to review the retainer agreement each client has with counsel, reserving the right to review such agreements at the time of any fee request.

The parties also provide a logic for their grouping; they claim that, together, they would have standing to bring claims under both the Securities Act and the Securities Exchange Act. (*Id.* at 9.)  Considering all of the above factors, the Court finds that the AP7 Group satisfies the standards under *Varghese* for a grouping of plaintiffs.

The AP7 Group also makes a prima facie showing of typicality and adequacy under Federal Rule of Civil Procedure 23.  The AP7 Group claims that it "(1) purchased Luckin Coffee ADSs during the Class Period, (2) at prices artificially inflated by Defendants' materially false and misleading statements and/or omissions, and (3) were damaged as a result."  (Dkt. No. 63 at 8.)  Thus, their injury is of the same kind, and arises out of the same facts, as that of other class members.  (*Id.*)  Their legal arguments are accordingly very similar.  (*Id.*)  At this stage, the AP7 Group is adequate since its large financial stake incentivizes vigorous representation.  *See Lipetz v. Wachovia Corp.*, 2008 WL 4615895, at *3 (S.D.N.Y. Oct. 10, 2008) (observing that a party having "a substantial financial stake in the litigation . . . leads the Court to believe that as lead plaintiff, [the party] would prosecute the claim vigorously").  There is no evidence suggesting a conflict of interest with other class members.  And, AP7 Group has retained counsel highly experienced with securities class actions.

Opposing movants offer several arguments to rebut the AP7 Group's presumptive adequacy and typicality, none of which the Court finds convincing.

First, opposing movants argue that AP7 may face a unique defense in the form of *res judicata* concerns.  (*See, e.g.*, Dkt. No. 95 at 14–16.)  Given AP7's status as a Swedish pension fund, Swedish courts may not uphold judgments of United States courts, and so a prevailing defendant may not be protected from relitigation in Sweden.  (*Id.*; *see Borochoff v. Glaxosmithkline PLC*, 246 F.R.D. 201, 203 (S.D.N.Y. 2007) (denying lead plaintiff certification

11

to a German movant in part due to *res judicata* concerns).) In the Court's judgment, the concerns expressed in *Borochoff* go more to whether a class should be certified at all, regardless of who is appointed lead plaintiff, and not to whether a foreign litigant should represent the class. In some jurisdictions, a judgment against an absent class member is not accorded *res judicata* effect. *See Borochoff*, 246 F.R.D. at 203–04 (discussing how a class comprised of members who are not bound by *res judicata* may not satisfy the "superiority" requirement); *see also In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 107 (S.D.N.Y. 2007) (limiting a class "to foreign shareholders whose courts, in the unlikely event of successive litigations, are likely to give *res judicata* effect to any judgment herein"). Those concerns may be a "focus of decisional discussion of the difficulties inherent in certifying transnational classes," but they "are not an issue with respect to the selection of Lead Plaintiffs, since those persons will clearly be bound by the judgment of the court." *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1139 (C.D. Cal. 1999); Dkt. No. 109 at 7. Indeed, "courts routinely appoint foreign investors as lead plaintiffs," *Sgalambo v. McKenzie*, 268 F.R.D. 170, 176 (S.D.N.Y. 2010), and foreign lead plaintiffs have been responsible for many large securities class actions in this Court. (*See* Dkt. No. 109 at 8 (listing various cases).) More recently, *Stone v. Agnico-Eagle Mines Ltd.* rejected *Borochoff* in appointing AP1, a related Swedish pension fund, as lead plaintiff in that case. 280 F.R.D. 142, 146 (S.D.N.Y. 2012). The court noted that "*res judicata* concerns are 'explicitly rejected when the foreign lead plaintiff movants are suing as a result of purchases made on a domestic securities exchange.'" *Id.* (quoting *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 133 (S.D.N.Y. 2011)). This Court agrees with the reasoning in *Stone* and does not find the opposing movants' *res judicata* argument persuasive.

Next, opposing movants challenge AP7's standing.  "[A]t an irreducible minimum, Art[icle] III [of the Constitution] requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant."  *Valley Forge Christian Coll. v. Am. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) (internal quotations omitted).  In *W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*, the Second Circuit held that an investment advisor lacks direct standing to bring suit for federal securities law violations on behalf of its clients: the advisor, not being the "Beneficial Owner[]" of the securities in question, does not suffer "injury-in-fact."  549 F.3d 100, 110 (2d Cir. 2008).  AP7 does not dispute this characterization, but rather asserts that it is entitled to a "prudential exception," being the only party able to pursue claims on behalf of its fund.  (Dkt. No. 109 at 3.)

Because AP7 is a frequent movant for appointment as lead plaintiff in securities class actions, this precise point has arisen repeatedly, including in this District.  In *Pipefitters Local No. 636 Defined Ben. Plan v. Bank of Am. Corp.*, for example, the court declined to appoint AP7 as lead plaintiff, rejecting its prudential exception argument.  275 F.R.D. 187, 191 (S.D.N.Y. 2011).  But subsequently, in *United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 v. Ocwen Fin. Corp.*, the court noted that the *Pipefitters* determination had "been rejected by other courts" and concluded that doubts regarding AP7's standing did not overcome its presumptive adequacy.  2014 WL 7236985, at *3 (S.D. Fla. Nov. 7, 2014).  Most recently, the *Ocwen* reasoning prevailed, with a court finding that concerns about AP7's standing "are not grounded in evidence" and appointing AP7 as lead plaintiff.  *Plaut v. Goldman Sachs Grp., Inc.*, 2019 WL 4512774, at *6 (S.D.N.Y. Sept. 19, 2019) (quoting *Ocwen,* 2014 WL 7236985, at *3); *see also Hachem v. Gen. Elec. Inc.*, No. 17-cv-8457, Dkt. No. 139 (S.D.N.Y. May 23, 2018)

(also appointing AP7 as lead plaintiff); *id.*, Dkt. No. 140 (transcript of hearing at which the court cited *Ocwen* in concluding that "the 'prudential exception' applies here . . . and that standing is not an issue"). Importantly, the *Plaut* court noted that the party opposing AP7's appointment "ha[d] not identified a single case" in which AP7's standing was "successfully challenged." 2019 WL 4512774 at *6 n.12. The PSLRA requires "proof" that the presumptive lead plaintiff "is subject to unique defenses." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II). Competing movants have not presented such proof and their standing argument is therefore rejected.

Local 710 argues that AP7 violates the PSLRA's so-called "five-in-three rule," which provides: "Except as the court may otherwise permit, . . . a person may be a lead plaintiff . . . in no more than 5 securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3-year period." 15 U.S.C. § 78u–4(a)(3)(B)(vi). Local 710 reads the word "brought" expansively, asserting that AP7 "is currently serving as lead plaintiff in five cases [and] is seeking appointment to its sixth case." (Dkt. No. 95 at 17.) In fact, however, Local 710 recognizes that AP7 was appointed as lead plaintiff in only three cases *filed* in the past three years. (Dkt. No. 95 at 18 n.12.) Not only does Local 710's interpretation of the word "brought" divorce the text from its natural meaning, it also runs contrary to another part of the PSLRA. In order to help courts enforce the five-in-three rule, the statute mandates that

> [e]ach plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certification . . . that . . . identifies any other action under this chapter, *filed* during the 3-year period preceding the date on which the certification is signed by the plaintiff, in which the plaintiff has sought to serve as a representative party on behalf of a class.

15 U.S.C. § 78u–4(a)(2)(A)(v) (emphasis added). It would make no sense for the statute to require plaintiffs to identify only actions *filed* in the past three years if the PSLRA really meant to exclude parties that served as lead plaintiffs in more than five cases that *were pending* in the

14

past three-year time period. The only reasonable reading of the word "brought" is as a synonym for "filed." The Court therefore rejects Local 710's argument.

Consistent with the foregoing discussion, the presumption that AP7 Group is the most adequate lead plaintiff remains unrebutted. It is therefore unnecessary to evaluate the remaining movants, all of whom claim a lesser financial interest.[10]

### C. Class Counsel

Under the PSLRA, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). The PSLRA "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 2008 WL 4128702, at *2 (S.D.N.Y. Sept. 3, 2008) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001)); *see, e.g.*, *In re Ply Gem Holdings, Inc., Sec. Litig.*, 2014 WL 12772081, at *2 (S.D.N.Y. Oct. 14, 2014) (same). The AP7 Group has selected Bernstein Litowitz Berger & Grossman LLP and Kessler Topaz Meltzer & Check, LLP, firms highly experienced in securities class action litigation. The Court sees no reason why these firms would not adequately represent the class.

### CONCLUSION

---

[10] Steinberg seeks appointment as lead plaintiff or co-lead plaintiff on the grounds that, among the movants, only she purchased securities in the Company's IPO. (Dkt. No. 101 at 2.) Accordingly, unlike opposing movants, Steinberg asserts that she will not be susceptible to the defense that her securities purchases were not be traceable to Luckin's allegedly misleading public statements. (*Id.* at 3.) As Steinberg offers no further evidence that other movants' securities are not traceable to Luckin's public statements, her unsupported assertions clearly do not constitute "proof" for rebuttal of adequacy. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II). While the Court does have discretion to appoint co-lead plaintiffs, Steinberg has not demonstrated that "novel circumstances" in this class action call for such a structure. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 420 (S.D.N.Y. 2004). Indeed, Steinberg's small financial interest of $5,044 weighs heavily against giving Steinberg a co-leading role in this case. (Dkt. No. 92, Exh. C.) The Court sees no compelling reason to complicate the structure of the lead plaintiff group.

For the foregoing reasons, the Court GRANTS the AP7 Group's motion (Dkt. No. 61). The Court appoints the AP7 Group as lead plaintiff and appoints its counsel, Bernstein Litowitz Berger & Grossman LLP and Kessler Topaz Meltzer & Check, LLP, as class counsel.

The Court therefore DENIES the remaining motions for appointment to lead plaintiff. The Clerk of Court is respectfully directed to terminate Dkt. Nos. 10, 15, 18, 22, 25, 28, 32, 34, 38, 41, 43, 44, 48, 51, 58, 64, and 69.

IT IS FURTHER ORDERED that the newly-appointed lead plaintiff shall meet and confer with the defendants on a briefing schedule for a consolidated amended complaint and any motion to dismiss. The parties shall jointly submit a proposed schedule on ECF no later than June 26, 2020 at 5:00 p.m. If the parties are unable to agree on a proposed schedule, they may file separate proposals.

SO ORDERED.

Dated: June 12, 2020
New York, New York

_____
LEWIS J. LIMAN
United States District Judge