# EXHIBIT A

**⚊⚊ ALVAREZ & MARSAL**

# THE JOINT PROVISIONAL LIQUIDATORS' FIRST REPORT TO THE GRAND COURT OF THE CAYMAN ISLANDS
# LUCKIN COFFEE INC. (IN PROVISIONAL LIQUIDATION)

For the period: 15 July 2020 (date of appointment) to 17 December 2020

*Issue Date: 17 December 2020*

© Alvarez & Marsal Cayman Islands Limited. See Disclaimer. All rights reserved.

## 7 Indebtedness and stakeholders

Following their review of the financial information and documentation made available to them, the JPLs have identified the following stakeholder groups:

### 7.1 Convertible bondholders (unsecured creditors)

7.1.1 The JPLs understand that the CBs are currently owed US$467M by the Company, being the full principal and accrued interest of the issued convertible bonds as at 30 November 2020, following acceleration of the bonds.

7.1.2 To date, the JPLs together with HL have held various discussions with the Ad hoc Group and their Cayman legal counsel, CO. All discussions have been conducted under an NDA that was entered into on 4 October 2020 (as amended).

7.1.3 Following extensive negotiations, the Company and the Ad-hoc Group have reached an agreement in principle. The precise terms of a restructuring support agreement are still being negotiated between the parties.

7.1.4 The JPLs understand that the Ad hoc Group control over 80% of the issued convertible bonds, by value. With that in mind, and given that the CBs' debt is due and payable, the JPLs' view is that agreement between the Ad-hoc Group and the Company is the first, critical step in achieving a successful restructuring of the Company's indebtedness.

### 7.2 Shareholders (contingent unsecured creditors)

7.2.1 The Company (and certain directors and officers during the relevant time) presently face class action claims in U.S. federal and state courts, and in a Canadian court. The claimants are SHs, viz. current or former holders of ADSs in the Company. The actions are currently in their preliminary stages.

7.2.2 The SHs assert claims in the U.S. under section 11 of the Securities Act of 1933 and section 10b-5 of the Securities Exchange Act of 1934 in relation to alleged material misrepresentations and omissions by the Company during the period May 2019 to April 2020, prior to the public offering of the Company's ADSs and issuance of the convertible notes.

7.2.3 A restructuring of the Company's indebtedness will likely include a restructuring of these contingent claims. In that regard, the JPLs, through Campbells, have started to engage with Bedell Cristin, who act as Cayman Islands counsel for the Court appointed Lead Plaintiffs in legal proceedings in the United States Southern District of New York and their U.S. counsel.

© Alvarez & Marsal Cayman Islands Limited. See Disclaimer. All rights reserved.

ALVAREZ & MARSAL

### 7.3 Internal investigation

7.3.1 The Company provided the JPLs with the following information concerning the internal investigation which took place prior to their appointment:

> On 19 March 2020, in light of certain issues raised to the Board during the audit of the consolidated financial statements for the fiscal year ended 31 December 2019, the Board formed a Special Committee to oversee an internal investigation with the assistance of independent legal and forensic accounting advisors.

> On 1 July 2020, The Company announced that the Special Committee has substantially completed the internal investigation. Based on its work, the Special Committee found that the fabrication of transactions began in April 2019 and that, as a result, the Company's net revenue in 2019 was inflated by approximately RMB 2.12 billion (consisting of RMB 0.25 billion in the second quarter, RMB 0.70 billion in the third quarter, and RMB 1.17 billion in the fourth quarter). The Company's costs and expenses were inflated by RMB 1.34 billion in 2019 (consisting of RMB 0.15 billion in the second quarter, RMB 0.52 billion in the third quarter, and RMB 0.67 billion in the fourth quarter).

> Based on the Special Committee's recommendations, the Company has taken disciplinary measures against certain personnel, including termination of former executives involved in the misconduct, terminated business relationship and transactions with implicated third-party entities, and restructured the company's management team by changing reporting lines and functions such that the CFO gained full control over finance department, has a dotted reporting line to the Audit Committee and is budgeted to allocate sufficient resources.

> In connection with the Special Committee's findings, the Company has taken and is continuing to take steps to enhance the corporate governance structure and the accounting, banking, and financial disclosure controls.

### 7.4 SEC and DOJ

7.4.1 On 2 April 2020, the Company made voluntary disclosures in relation to its own misconduct in respect of financial reporting obligations to the SEC, during the time that it was listed on NASDAQ, and shortly thereafter the Company engaged in discussions with the DOJ. The DOJ will be conducting its own investigation into the Company's misconduct, separately from the SEC.

*This space intentionally left blank*

© Alvarez & Marsal Cayman Islands Limited. See Disclaimer. All rights reserved.

7.4.2    The Company has come to an agreement with the SEC, which is embodied in the complaint, the consent and the draft final judgment dated 16 December 2020 (see Appendix III). Under the terms of the agreement, the Company, without admitting or denying the allegations of the SEC, consented to the entry of an order requiring the Company to pay a civil penalty in the amount of US$180M. The civil penalty is to be offset by the dollar value of any cash payments made by the Company to CBs and SHs pursuant to schemes of arrangement sanctioned by the Cayman Court, if such payments are made within 42 months subject to extensions granted by the SEC staff and provided the final distribution plan is not reasonably objectionable to SEC staff.

7.4.3    The deferral of the penalty and the offsetting mechanism are, in the JPLs' view, key to ensuring that the SEC's penalty does not prejudice any restructuring. Nor will the penalty necessarily increase the Company's liabilities materially in the medium term, since credit will be given for the cash component of scheme consideration payable under any successful restructuring with the CBs and SHs. The agreement also acknowledges that in the event the restructuring is not successful the fact that there is a civil penalty would not somehow give rise to an enforceable claim in the Company's liquidation where such a claim ordinarily would not be permitted under Cayman law.

7.4.4    The Company was contacted by DOJ following its disclosure to the SEC on 2 April 2020 relating to the misconduct. The DOJ indicated that it had commenced an investigation into the misconduct. The Company has been in regular contact with the DOJ regarding its investigation including apprising the DOJ of the relevant PRC laws that restrict it from providing evidence and information without prior approval from the Chinese Ministry of Justice.

7.4.5    The JPLs note that as at the date of this Report, no fines have been imposed on the Company by the DOJ. However, its investigation is ongoing and the Company continues to cooperate with the DOJ to the extent permissible under the applicable PRC laws.

## 7.5    Chinese regulators

7.5.1    On 23 September 2020, the Company received the penalty decisions from the SAMR. The penalty decisions found that misconduct disclosed by the Company on 2 April 2020 violated the PRC Anti-Unfair Competition Laws. The SAMR imposed an aggregate fine of RMB61.0 million on Luckin Coffee Group Co., Ltd and Beijing Luckin Coffee Co., Ltd and certain implicated third-party companies as a result of their involvement in the misconduct.

7.5.2    During September and October 2020, the Company paid the fine imposed on the two Luckin entities as well as certain implicated third parties.

7.5.3    On 6 May 2020, the Ministry of Finance of the PRC initiated its investigation into the accounting information of Luckin Coffee Group Co., Ltd and Beijing Luckin Coffee Co., Ltd. On 31 July 2020, the Ministry of Finance of the PRC announced its investigation has been substantially completed. The Ministry of Finance of the PRC further announced that they would impose and publish its relevant penalty decision to the Company in due course.

© Alvarez & Marsal Cayman Islands Limited. See Disclaimer. All rights reserved.