UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE LUCKIN COFFEE INC. SECURITIES LITIGATION | Case No. 1:20-CV-01293-JPC-JLC |

**REPLY MEMORANDUM OF LAW
IN SUPPORT OF UNDERWRITER DEFENDANTS'
<u>MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT</u>**

**Table of Contents**

Page

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT .............................................................................................. 1

ARGUMENT ........................................................................................................................... 2

I.   Plaintiffs Lack Standing........................................................................................... 3

   A.   Plaintiffs Do Not Have Standing to Assert Their Section 11 IPO Claims .................... 3

   B.   Plaintiffs Lack Class Standing To Bring a Section 12 Claim Based on the IPO............ 5

   C.   Plaintiffs Lack Standing to Assert Claims Based on the SPO....................................... 7

II.   Plaintiffs Do Not Allege that the Underwriters Were Negligent in Failing to Uncover the Fraud at the Time of the IPO or SPO....................................................................... 7

III.   The Alleged Misstatements or Omissions in the IPO Registration Statement Are Not Actionable .................................................................................................................. 11

   A.   Plaintiffs Have No Claim Against the Underwriters Concerning Financial Statements or Operating Metrics ..................................................................................................... 11

   B.   Plaintiffs Do Not Identify Any Actionable Misstatements or Omissions Regarding Luckin's Internal Controls ............................................................................................. 12

   C.   Plaintiffs' Other Purported Misstatements and Omissions in the IPO Registration Statement Also Fail to State a Claim ............................................................................. 13

IV.   The Alleged Misstatements or Omissions in the SPO Registration Statement Are Not Actionable .................................................................................................................. 14

   A.   Plaintiffs Do Not State a Claim Against the Underwriters Concerning Financial Statements, Operating Metrics, or Internal Controls ...................................................... 14

   B.   Plaintiffs Do Not Identify Any Actionable Misstatements or Omissions Regarding the Margin Loan Facility ..................................................................................................... 14

   C.   Plaintiffs Cannot Premise Their Claims on Regulation S-K ........................................ 15

CONCLUSION........................................................................................................................ 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re AmTrust Financial Services, Inc. Sec. Litig.*,
　2019 WL 4257110 (S.D.N.Y. Sept. 9, 2019)...............................................................................3

*In re Ariad Pharm., Inc. Sec. Litig.*,
　842 F.3d 744 (1st Cir. 2016)......................................................................................................4

*In re Banco Bradesco S.A. Sec. Litig.*,
　277 F. Supp. 3d 600 (S.D.N.Y. 2017)......................................................................................13

*Boca Raton Firefighters & Police Pension Fund* v. *Bahash*,
　506 F. App'x 32 (2d Cir. 2012) ...............................................................................................11

*In re Century Aluminum Co. Sec. Litig.*,
　729 F.3d 1104 (9th Cir. 2013) ...............................................................................................4, 7

*Ciresi* v. *Citicorp*,
　782 F. Supp. 819 (S.D.N.Y. 1991) ...........................................................................................4

*In re Citigroup*,
　723 F. Supp. 2d 568 (S.D.N.Y. 2010).....................................................................................3n

*Citiline Holdings, Inc.* v. *iStar Fin. Inc.*,
　701 F. Supp. 2d 506 (S.D.N.Y. 2010)......................................................................................3n

*In re Commodity Exch., Inc.*,
　213 F. Supp. 3d 631 (S.D.N.Y. 2016)................................................................................... 6-7

*In re Countrywide Fin. Corp. Sec. Litig.*,
　588 F. Supp. 2d 1132 (C.D. Cal. 2008) ...................................................................................8

*De Vito* v. *Liquid Holdings Group, Inc.*,
　2018 WL 6891832 (D.N.J. Dec. 31, 2018)...............................................................................4

*Doherty* v. *Pivotal Software, Inc.*,
　2019 WL 5864581 (N.D. Cal. Nov. 8, 2019) ........................................................................ 4-5

*In re Duane Reade Inc. Sec. Litig.*,
　2003 WL 22801416 (S.D.N.Y. Nov. 25, 2003)................................................................. 13-14

*Feyko* v. *Yuhe Intl., Inc.*,
　2013 WL 816409 (C.D. Cal. Mar. 5, 2013)...............................................................................8

ii

*Holbrook* v. *Trivago N.V.*,
   2019 WL 948809 (S.D.N.Y. Feb. 26, 2019)............................................................................15

*International Union of Operating Engineers Ben. Funds of Eastern Pennsylvania*
   *and Delaware* v. *Camping World Holdings, Inc.*,
   2020 WL 1939666 (N.Y. Sup. Ct. Apr. 22, 2020)................................................................. 8-9

*Joffee* v. *Lehman Bros., Inc.*,
   2005 WL 1492101 (S.D.N.Y. June 23, 2005) .........................................................................5n

*Lewis* v. *Casey*,
   518 U.S. 343 (1996)..................................................................................................................6

*In re Marsh & McLennan Cos. Sec. Litig.*,
   501 F. Supp. 2d 452 (S.D.N.Y. 2006).................................................................................4n, 11

*In re MF Global Holdings Ltd. Sec. Litig.*,
   982 F. Supp. 2d 277 (S.D.N.Y. 2013).....................................................................................4n

*NECA-IBEW Health & Welfare Fund* v. *Goldman Sachs & Co.*,
   693 F.3d 145 (2d Cir. 2012)................................................................................................. 5-6

*Oklahoma Police Pension & Ret. Sys.* v. *U.S. Bank Nat'l Ass'n*,
   986 F. Supp. 2d 412 (S.D.N.Y. 2013).......................................................................................6

*Panther Partners, Inc.* v. *Ikanos Commc'ns, Inc.*,
   538 F. Supp. 2d 662 (S.D.N.Y. 2008).....................................................................................10

*Panther Partners Inc.* v. *Jianpu Tech. Inc.*,
   2020 WL 5757628 (S.D.N.Y. Sept. 27, 2020)........................................................................15

*In re Perrigo Co. PLC Sec. Litig.*,
   435 F. Supp. 3d 571 (S.D.N.Y. 2020).....................................................................................12

*In re Puda Coal Sec. Inc. Litig.*,
   2013 WL 5493007 (S.D.N.Y. Oct. 1, 2013) .............................................................................7

*In re Refco, Inc. Sec. Litig.*,
   503 F. Supp. 2d 611, 632 (S.D.N.Y. 2007)..............................................................................3n

*Rombach* v. *Chang*,
   355 F.3d 164 (2d Cir. 2004).....................................................................................................3

*Scott* v. *General Motors Co.*,
   46 F. Supp. 3d 387 (S.D.N.Y. 2014)..................................................................................10, 12

*Special Situations Fund III QP, L.P.* v. *Deloitte Touche Tohmatsu CPA, Ltd.*,
   33 F. Supp. 3d 401 (S.D.N.Y. 2014).........................................................................................9

*Stadnick* v. *Vivint Solar, Inc.*,
   2015 WL 8492757 (S.D.N.Y. Dec. 10, 2015) ....................................................... 5-6, 7

*In re TVIX Sec. Litig.*,
   25 F. Supp. 3d 444 (S.D.N.Y. 2014)...................................................................15

*In re UBS AG Sec. Litig.*,
   2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012)............................................................7

*In re Wachovia Equity Sec. Litig.*,
   753 F. Supp. 2d 326 (S.D.N.Y. 2011)...................................................................8

*Zirkin* v. *Quanta Capital Holdings Ltd.*,
   2009 WL 185940 (S.D.N.Y. Jan. 23, 2009) ...........................................................11

## Rules

Fed. R. Civ. P. 9(b) ....................................................................................... 2-3

## Other Authorities

*In the Matter of Equinox Fund Management, LLC*,
   CFTC No. 16-09, 2016 WL 1072519 (Mar. 16, 2016)...........................................12

*In the Matter of Wilmington Trust Corp.*, Exchange Act Release No. 73076, 2014
   WL 4467632 (Sept. 11, 2014).............................................................................12

Defendants Credit Suisse Securities (USA) LLC ("Credit Suisse"), Morgan Stanley & Co. LLC ("Morgan Stanley"), China International Capital Corporation Hong Kong Securities Limited ("CICC"), Haitong International Securities Company Limited ("Haitong"), KeyBanc Capital Markets Inc. ("KeyBanc"), and Needham & Company, LLC ("Needham") (the "Underwriters"), by their undersigned attorneys, respectfully submit this reply memorandum in further support of their motion to dismiss the Consolidated Class Action Complaint for failure to state a claim.[1]

## PRELIMINARY STATEMENT

In Plaintiffs' opposition brief ("Opposition" or "Opp."), they continue their attempt to shift blame for fraud undertaken by certain former Luckin employees to the Underwriters. This hollow attempt to stretch the securities laws to assert claims against the Underwriters fails for multiple reasons.

**Plaintiffs Lack Standing.** Plaintiffs lack standing to assert either their Section 11 or Section 12 claims against the Underwriters because they purchased their Luckin ADS when shares from multiple issuances were available in the market, and Plaintiffs fail to plead any specific allegations tracing their purchases to either the IPO or SPO. Plaintiffs' attempt to save their claims by shifting their pleading burden to the Underwriters fails. It is Plaintiffs' burden to plead traceability, it is not Defendants' burden to disprove it. And Plaintiffs concede that they do not have standing to assert their Section 12 claims. Their attempt to salvage them fails, as they cannot rely on the imagined standing of absent class members to establish their own standing.

---

[1]    As of the time the Underwriters filed their motion to dismiss, Plaintiffs had not served CICC or Haitong, which have since joined the Underwriters' motion to dismiss. ECF 231. The Underwriters also respond herein to certain arguments made in Luckin's moving brief, in which the Underwriters joined. Underwriters' Opening Brief ("Opening Brief" or "Br.") 2 n.1. Unless otherwise noted, capitalized terms have the same meaning as in the Opening Brief and internal citations and quotations are omitted.

**Plaintiffs Do Not Allege Any Basis for Finding the Underwriters Negligent for Failing to Uncover the Alleged Fraud.** Plaintiffs' entire theory of liability against the Underwriters is that the Underwriters should have uncovered Luckin's alleged misstatements at the time of the IPO and the SPO. Plaintiffs' Opposition confirms that they have not plead any non-conclusory allegations to support that theory. Nor could they, as Plaintiffs themselves allege that the complex fraud was well-hidden until after the SPO, not only from third parties, such as the Underwriters and Luckin's outside auditor, EY, but from Luckin's own financial department, as well. Plaintiffs' claims based on the IPO are especially deficient. Plaintiffs do not, and cannot, point to any allegation that even suggests that the Underwriters could have detected the well-hidden scheme, which they claim was hatched mere weeks before the IPO. Unable to meet their pleading burden, Plaintiffs once again attempt to shift that burden to the Underwriters, claiming it is the Underwriters' burden to disprove their negligence. But, again, on this motion to dismiss, it is Plaintiffs' burden to adequately allege their claims, not the Underwriters' burden to disprove them.

**Plaintiffs Fail to Allege that Either the IPO or SPO Registration Statements Contained Actionable Misstatements.** Plaintiffs fail to adequately allege that representations in the IPO and SPO Registration Statements regarding Luckin's financial statements, internal controls, and other items constitute actionable misstatements. Plaintiffs do not allege, as they must, that the alleged misstatements were either known or knowable to the Underwriters at the time of either offering.

## ARGUMENT

Plaintiffs incorrectly maintain that they do not need to meet the heightened pleading requirements of Rule 9(b) and the PSLRA because they divide the Complaint into two parts, their Exchange Act claims against other defendants and their Securities Act claims, and they disclaim fraud with respect to the latter. Opp. 7. Such "effort[s] to characterize claims by the label used in

2

the pleading" are irrelevant "where [as here] the gravamen of the complaint is plainly fraud." *Rombach* v. *Chang*, 355 F.3d 164, 172 (2d Cir. 2004); *see also In re AmTrust Financial Services, Inc. Sec. Litig.*, 2019 WL 4257110, at *11, 17, 31 (S.D.N.Y. Sept. 9, 2019) ("Mere disavowal of any allegations that would make Rule 9(b) applicable will not suffice."). The cases on which Plaintiffs rely are inapposite.[2] Plaintiffs' Securities Act claims against the Underwriters are based on the same theory of fraud as their Exchange Act claims. Indeed, a side-by-side comparison of the paragraphs in the Exchange Act and Securities Act sections of the Complaint reveals that the allegations are nearly identical. Plaintiffs' Securities Act claims are, therefore, subject to the heightened pleading requirements of Rule 9(b) and the PSLRA, which they cannot meet.

## I. Plaintiffs Lack Standing

### A. Plaintiffs Do Not Have Standing to Assert Their Section 11 IPO Claims

In their Opposition, Plaintiffs confirm that they have not traced any of their ADS purchases to the IPO by admitting that they made all their purchases after the lockup period expired on November 12, 2019. This concession dooms their IPO-based claims: once the lockup expired, Luckin ADS from multiple offerings were available on the market.

Plaintiffs argue that they have no obligation at the pleading stage to address the presence of these pre-IPO shares in the market, and that it is somehow incumbent upon Defendants to prove that Plaintiffs did not purchase their Luckin ADS in the IPO. But Plaintiffs cannot escape the well-established rule that they, not Defendants, bear the burden of tracing their purchases to the IPO.

---

[2]     Most of Plaintiffs' cases did not involve any allegations of fraud, and thus have no bearing here. *See, e.g.*, *In re Citigroup*, 723 F. Supp. 2d 568, 587 (S.D.N.Y. 2010) ("[T]he complaint lacks any allegation—express or implied—of fraudulent intent or motive on the part of any defendant."). The two that do are factually distinguishable. In *In re Refco, Inc. Sec. Litig.*, the court determined that Rule 9(b) did not apply because the Securities Act claims did not have "even a hint" of overlap with the Exchange Act claims. 503 F. Supp. 2d 611, 632 (S.D.N.Y. 2007). Similarly, in *Citiline Holdings, Inc.* v. *iStar Fin. Inc.*, the court was persuaded that "underwriters are alleged only to have failed to disclose facts that they knew." 701 F. Supp. 2d 506, 513 (S.D.N.Y. 2010).

*See, e.g.*, *Ciresi* v. *Citicorp*, 782 F. Supp. 819, 823 (S.D.N.Y. 1991), *aff'd*, 956 F.3d 1161 (2d Cir. 1992); *Doherty* v. *Pivotal Software, Inc.*, 2019 WL 5864581, at *8 (N.D. Cal. Nov. 8, 2019). Courts routinely have found that absent additional specific tracing allegations tying the purchases to the issuance, the existence of shares from multiple offerings requires dismissal for failure to plead Section 11 standing. *See, e.g.*, *In re Ariad Pharm., Inc. Sec. Litig.*, 842 F.3d 744, 756 (1st Cir. 2016); *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107-08 (9th Cir. 2013); *De Vito* v. *Liquid Holdings Group, Inc.*, 2018 WL 6891832, at *17 (D.N.J. Dec. 31, 2018). Plaintiffs acknowledge this rule when they concede that they cannot trace Plaintiff AP7's purchases to either the IPO or SPO because AP7 purchased its ADS after the SPO, when IPO, SPO, and other ADS were available on the market.

Plaintiffs suggest that AP7's lack of standing is "irrelevant" because another Plaintiff—Louisiana Sheriffs—has standing to assert IPO-based claims. In fact, however, Plaintiffs do not and cannot allege that Louisiana Sheriffs purchased its ADS traceable to the IPO rather than after the lockup period. Pls.' Opp. to Luckin's Mot. to Dismiss ("Luckin Opp.") at 11 n.3.[3] As a result, in order to save their IPO-based claims, Plaintiffs attempt to distinguish purchases made after the SPO from those made after the lockup period by simply dismissing the availability of shares subject to the lockup as speculation. *See id*. at 11-12. But both the IPO and SPO registration statements confirm that such shares were available (IPO RS at 171; SPO RS at 179), as does publicly available data (Reply Declaration of Sheila C. Ramesh ("Ramesh Reply Decl."), Exs. 1-2. Specifically, the data reveals that when Louisiana Sheriffs made its first purchase of 8,600

---

[3]    The cases on which Plaintiffs rely are inapposite because either defendants did not challenge plaintiffs' traceability allegations, *see, e.g.*, *In re MF Global Holdings Ltd. Sec. Litig.*, 982 F. Supp. 2d 277, 324 (S.D.N.Y. 2013), or the purchases occurred where there were only shares from a single offering available on the market, *see, e.g.*, *In re Marsh & McLennan Cos. Sec. Litig.*., 501 F. Supp. 2d 452, 491 (S.D.N.Y. 2006).

Luckin ADS on January 8, 2020 (Dkt. 150-2), there were more than 45 million additional shares of Luckin ADS trading on the market that were not issued in the IPO.[4]

Plaintiffs' false distinction should be set aside here for the same reasons that the court rejected a nearly identical argument in *Doherty* v. *Pivotal Software,* 2019 WL 5864581. There, as here, plaintiffs alleged that they purchased shares in a "mixed-market scenario"—*i.e.*, where both IPO and pre-IPO shares that had been subject to a lockup period were available on the market— and that the "market was dominated by IPO shares." *Doherty*, 2019 WL 5864581, at *9. The court dismissed plaintiffs' claims because in a "mixed-market scenario" a plaintiff must allege "a greater level of factual specificity that [plaintiffs'] shares are traceable to the IPO," which plaintiffs failed to do. *Id.* Because those specific allegations are absent here, as well, this Court should dismiss Plaintiffs' IPO claims for lack of standing.

### B. Plaintiffs Lack Class Standing To Bring a Section 12 Claim Based on the IPO

Plaintiffs concede that they lack standing to pursue their Section 12 claims based on the IPO because neither Plaintiff purchased any shares directly from an Underwriter during the IPO. Opp. 28. They nonetheless argue that, based on the Second Circuit's decision in *NECA-IBEW Health & Welfare Fund* v. *Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012), Plaintiffs have class standing to pursue their IPO-based claims because they believe that some members of the putative class likely would have purchased ADS directly from an Underwriter during the IPO. This measure of last resort is an impermissible "attempt to create standing where standing does not exist." *Stadnick* v. *Vivint Solar, Inc.*, 2015 WL 8492757, at *17 (S.D.N.Y. Dec. 10, 2015),

---

[4]    In the IPO, 37.95 million Luckin ADS were sold to investors (Compl. ¶ 7). Publicly available trading data shows that on January 8, 2020, there were 83.086 million Luckin ADS outstanding, 45.136 million more shares than were issued in the IPO. *See* Ramesh Reply Decl. at Exs. 1-2. Publicly available information regarding trading activities can be considered on a motion to dismiss. *See Joffee* v. *Lehman Bros., Inc.*, 2005 WL 1492101, at *1 n.2 (S.D.N.Y. June 23, 2005) ("The Second Circuit has stated that '[a] district court may take judicial notice of well-publicized stock prices without converting the motion to dismiss into a motion for summary judgment.").

*aff'd,* 861 F.3d 31 (2d Cir. 2017).  *NECA* does "not stand for the sweeping proposition that an individual may represent absent class members with regard to claims as to which he or she has no individual standing, although that is how it is now sometimes cited." *Id.*  Unsurprisingly, courts routinely reject efforts to establish class standing in circumstances like these, as evidenced by Plaintiffs' inability to cite any authority to support their position.

A review of *NECA*'s analysis reveals the weakness of Plaintiffs' position.  In *NECA*, the Court held that "a plaintiff has class standing if [it] plausibly alleges (1) that [it] personally has suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the 'same set of concerns' as the conduct alleged to have caused injury to other members of the putative class by the same defendants."  693 F.3d at 162.  While *NECA* permits class standing in specific circumstances where claims implicate the "same set of concerns," *id.*, "there is no case law supporting the [P]laintiff[s'] theory that a plaintiff can pursue a claim that it does not have on behalf of a class simply because the plaintiff suffered a similar injury for a different claim."[5] *Oklahoma Police Pension & Ret. Sys.* v. *U.S. Bank Nat'l Ass'n*, 986 F. Supp. 2d 412, 418–20 (S.D.N.Y. 2013); *see also Lewis* v. *Casey*, 518 U.S. 343, 357 (1996) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."); *In re Commodity Exch., Inc.*, 213 F. Supp. 3d 631, 677 (S.D.N.Y. 2016) (same).

---

[5]    Plaintiffs do not and cannot argue that standing under Section 12 for the SPO would confer standing with respect to the IPO.  The two offerings do not implicate the "same set of concerns," as indicated by Plaintiffs' allegations describing a different set of purported misrepresentations and omissions, red flags, and circumstances surrounding the SPO.

Although Plaintiffs ask the Court to defer determination of this issue until class certification, they cannot seriously claim that the fundamental issue of standing be set aside to allow their case to proceed. Opp. 30. Courts routinely rule on class standing issues at the pleading stage. *See, e.g.*, *Stadnick*, 2015 WL 8492757, at \*18; *In re Commodity Exch., Inc.*, 213 F. Supp. 3d 631, 677 (S.D.N.Y. 2016); *In re UBS AG Sec. Litig.*, 2012 WL 4471265, at \*25 (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom.*, *City of Pontiac Policemen's and Firemen's Retirement System* v. *UBS AG*, 752 F.3d 173 (2d Cir. 2014). Plaintiffs' Section 12 claims based on the IPO should be dismissed.

### C. Plaintiffs Lack Standing to Assert Claims Based on the SPO

Plaintiffs claim to have sufficiently alleged standing to assert their SPO-based Section 11 and 12 claims based on general allegations that Louisiana Sheriffs purchased ADS in the SPO from Credit Suisse.[6] But these allegations do not establish standing because, at the time, Luckin ADS from multiple issuances were trading on the market, and Plaintiffs' allegations are "consistent with [Credit Suisse] having filled the order with previously issued shares it was holding." *In re Century*, 729 F.3d at 1109; *see also In re Puda Coal Sec. Inc. Litig.*, 2013 WL 5493007, at \*7 (S.D.N.Y. Oct. 1, 2013). Without specific allegations tying Louisiana Sheriffs' purchases to the SPO (*see* Section I.A), Plaintiffs have not traced any purchases to the SPO.[7]

### II. Plaintiffs Do Not Allege that the Underwriters Were Negligent in Failing to Uncover the Fraud at the Time of the IPO or SPO

Unable to satisfy their burden of pleading that the Underwriters were negligent in failing to uncover the fraud at the time of the IPO or SPO, Plaintiffs again resort to a strategy of burden

---

[6]   Plaintiffs do not dispute that AP7 lacks standing to assert either Section 11 or 12 SPO-based claims.

[7]   Despite Plaintiffs' claims to the contrary, the Underwriters made this argument in their Opening Brief. Br. 2 n.1.

shifting to claim that the Underwriters must prove that they were not negligent as part of their due diligence defense.  Opp. 8-12.  In so arguing, Plaintiffs ignore their affirmative obligation to sufficiently allege that the Underwriters were negligent in failing to uncover the alleged misstatements in order to sustain Section 11 or 12 claims against them.  *See, e.g.*, *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 367-68 (S.D.N.Y. 2011).  Although Plaintiffs repeatedly claim that they are asserting "negligence claims" against the Underwriters in hopes of avoiding the application of the higher pleading standards of the PSLRA and Rule 9(b) (Opp. 7), they fail to support those claims because they do not (and cannot) explain that the Underwriters had any reason to believe that any alleged misstatement was false at the time of either offering.  *See International Union of Operating Engineers Ben. Funds of Eastern Pennsylvania and Delaware* v. *Camping World Holdings, Inc.*, 2020 WL 1939666, at *7 (N.Y. Sup. Ct. Apr. 22, 2020) (dismissing Section 11 claims against underwriters where plaintiffs failed to plead underwriters were negligent on the face of the complaint); *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1174-75 (C.D. Cal. 2008) (same); *Feyko* v. *Yuhe Intl., Inc.*, 2013 WL 816409, at *9 (C.D. Cal. Mar. 5, 2013) (dismissing Section 11 claim where nothing "would have alerted the Underwriter Defendants to the [] deal being fraudulent").  A ruling to the contrary would subject the Underwriters "to the heavy burden of discovery without even any minimal justification." *Camping World*, 2020 WL 1939666, at *8.  The cases on which Plaintiffs rely (Opp. 11-12) are inapposite because they all involve situations where, unlike here, the plaintiffs satisfied their initial pleading burden.

Plaintiffs also fail to allege that the Underwriters could have uncovered the fraud through reasonable diligence.  Plaintiffs make generic claims that the Underwriters were negligent (Opp. 13-14; Compl. ¶¶ 439, 493, 612) and should have uncovered the fraud because, like any

Underwriter, they had greater access to Luckin's books and records than the general public (Opp. 14-15; Compl. ¶ 526). These allegations do no more than restate the uncontroversial fact that the Underwriters participated in the offering process. *See Camping World*, 2020 WL 1939666, at *8.

Plaintiffs' claims are also contradicted by their own theory that the individuals who orchestrated the purported fraud went to great lengths to conceal its existence. Plaintiffs allege that certain Luckin employees created a fabricated version of Luckin's business operations database that contained both legitimate and fabricated transactions. Compl. ¶¶ 152, 181. They go on to describe the ways in which those former Luckin employees maintained the covert fraud by hiding it from not only outside parties like the Underwriters and EY, but also from most employees at Luckin itself, including its finance function (*id.* ¶¶ 152, 181), making it impossible for Underwriters to detect the fraud prior to the IPO or SPO. *See Special Situations Fund III QP, L.P.* v. *Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 429 (S.D.N.Y. 2014) ("[T]he law is clear that an unseen red flag cannot be heeded."); *Camping World*, 2020 WL 1939666, at *8 ("The Underwriter Defendants are not corporate directors with broad access to information who can reasonably be expected to know more about the issuer."). Indeed, the auditor EY was unable to detect any trace of impropriety prior to either offering (Compl. ¶ 197), rendering facially implausible any claim that the Underwriters' failure to do so could have been negligent. Moreover, even when EY identified potential improprieties, an exhaustive investigation was still required to fully uncover the entire scheme. *Id.* ¶¶ 172, 198-99.

Plaintiffs offer no explanation of these contradictory allegations. Instead, they claim that the release of an Anonymous Report three weeks after the SPO that raised questions about Luckin's financials and was based on public information somehow shows that the Underwriters could have uncovered the scheme. Opp. 24-25. But the Anonymous Report only confirms how

well-hidden the alleged fraud was.  The large-scale undertaking used to generate the report, reportedly involving over 1,500 individuals and observation of Luckin stores for more than two years, far exceeds the type of due diligence required of Underwriters.  Compl. ¶ 160.  Moreover, even after that intensive effort, only limited potential evidence of fraud was uncovered.  *Id.*   An in-depth investigation by trained forensic accountants and other professionals was still required to fully reveal both the scope and depth of the alleged fraud.  *Id.* ¶¶ 172, 181, 198-200.

Equally deficient is Plaintiffs' reliance on reports written by research analysts affiliated with certain Underwriters and published in February 2020, one month *after* the SPO, to support their claims concerning what the Underwriters should have known *before* either offering.  Opp. 26.  These reports are irrelevant here, where the only inquiry involves what the Underwriters knew at the time of the IPO and SPO.  *Scott* v. *General Motors Co.*, 46 F. Supp. 3d 387, 393-94 (S.D.N.Y. 2014) ("[T]he relevant inquiry is not whether the statement later turned out to be correct, but rather whether the defendant knew or had reason to know, at the time the offering documents were filed, that the statement was untrue."), *aff'd*, 605 F. App'x 52 (2d Cir. 2015); *Panther Partners, Inc.* v. *Ikanos Commc'ns, Inc.*, 538 F. Supp. 2d 662, 673 (S.D.N.Y. 2008) (same), *aff'd,* 347 F. App'x 617 (2d Cir. 2009).  They cannot support Plaintiffs' Securities Act claims.

Even among their wholly deficient allegations against the Underwriters, Plaintiffs' conclusory claims are particularly baseless with respect to the IPO.  Plaintiffs do not dispute that the Underwriters were permitted to rely on Luckin's audited financial statements incorporated into the IPO Registration Statement. Opp. 19.  While they insist that the fraud began in April 2019, when certain Luckin employees began to make fraudulent sales, Plaintiffs concede that the alleged fraud did not become fully developed until, at the earliest, May 2019.  Opp. 12-13; Br. 22 & n.14; Compl. ¶¶ 134, 511.  Plaintiffs nonetheless argue that the Underwriters should have identified

certain red flags of misconduct before the IPO.  (Opp. 15-16.)  But these claims are not plausible, because, as Plaintiffs admit, the alleged fraud was not operational at that time.  *See In re Marsh & McLennan Companies, Inc.*, 501 F. Supp. 2d at 487.  It is thus unsurprising that Plaintiffs are unable to offer any theory explaining how the Underwriters might have been able to compile and analyze any aspect of the alleged fraud before the May 17, 2019 IPO:  it was not possible.

III.    **The Alleged Misstatements or Omissions in the IPO Registration Statement Are Not Actionable**

A.    **Plaintiffs Have No Claim Against the Underwriters Concerning Financial Statements or Operating Metrics**

Plaintiffs argue that even though the financial data contained in the IPO Registration Statements—*i.e.*, the data for 2017, 2018, and the first quarter of 2019—was entirely accurate, the IPO Registration Statement contained material misstatements by omitting information that affected Luckin's *future* fiscal disclosures.  But the Underwriters cannot be held liable for their failure to predict Luckin's future financial performance.  *Boca Raton Firefighters & Police Pension Fund* v. *Bahash*, 506 F. App'x 32, 38-39 (2d Cir. 2012) ("It is clear that a violation of federal securities law cannot be premised upon a company's disclosure of accurate historical data" because "[w]hatever the scope of the responsibility not to make statements that constitute 'half-truths,' that surely does not apply to the reporting of unmanipulated corporate earnings."); *see also Zirkin* v. *Quanta Capital Holdings Ltd.*, 2009 WL 185940, at *10–11 (S.D.N.Y. Jan. 23, 2009) ("The relevant inquiry under the Securities Act is not whether the estimate disclosed in the offering documents later turned out to be correct, but rather whether the [defendant] knew or had reason to know, at the time the offering documents were filed, that the statement was untrue.").

Plaintiffs argue that even though the IPO Registration Statement did not include financial information for the time period between the end of Q1 2019 and the May 2019 IPO, ASC 855 required the Underwriters to disclose the alleged fraud.  Opp. 20-21.  But ASC 855 does no such

11

thing. Tellingly, Plaintiffs do not cite, and the Underwriters are not aware of, any decisions premising securities liability on ASC 855.

In any event, to the extent such a claim is even viable, a duty to disclose under ASC 855 exists only where subsequent conduct impacts prior financial statements. *In re Perrigo Co. PLC Sec. Litig.*, 435 F. Supp. 3d 571, 583 (S.D.N.Y. 2020) ("If such events provide additional evidence about conditions that existed at the date of the balance sheet, then the entity must recognize the effects of those events in its financial statements."). Plaintiffs concede that no such events occurred here. Opp. 21-22. Plaintiffs also fail to allege, as they must, that the Underwriters knew about the non-disclosed information. *See In the Matter of Wilmington Trust Corp.*, Exchange Act Release No. 73076, 2014 WL 4467632, at *8-9 (Sept. 11, 2014); *see also In the Matter of Equinox Fund Management, LLC*, CFTC No. 16-09, 2016 WL 1072519, at *5 (Mar. 16, 2016). Indeed, Plaintiffs have not plead that the Underwriters could have known of the alleged fraud, much less that they did know of it (*see supra* Section II) at the time of the IPO (or the SPO, for that matter).

### B. Plaintiffs Do Not Identify Any Actionable Misstatements or Omissions Regarding Luckin's Internal Controls

For similar reasons, Plaintiffs also fail to adequately allege that the IPO Registration Statement's robust disclosures regarding deficiencies in Luckin's internal controls were false. Plaintiffs do not argue that these disclosures misstated what Luckin was actually doing. Instead, they argue that the disclosures were false because they omitted the fact that "senior executives were exploiting Luckin's materially deficient controls to engage in fraudulent transactions." Luckin Opp. 23. In other words, they claim that a disclosed risk—that Luckin's internal controls might not be sufficient to prevent a fraud—materialized. This theory cannot sustain a Securities Act claim against the Underwriters. Indeed, it is precisely the type of fraud by hindsight pleading that Courts routinely reject, *Scott*, 46 F. Supp. 3d at 394, and that Plaintiffs disclaim (Opp. 20).

12

Plaintiffs also argue that their claim that the alleged fraud was in its infancy at the time of the IPO somehow renders Luckin's disclosures regarding its internal controls false. It does not. The IPO Registration Statement disclosed that there were weaknesses in Luckin's internal controls and that Luckin was working to address them. IPO RS at 32-33, 103. That a fraud may have been ongoing does not transform these admittedly true statements into a Securities Act violation. Plaintiffs' reliance on *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600 (S.D.N.Y. 2017), is thus misplaced. Luckin Opp. 23. There, the court held that while the company's internal controls disclosures were accurate, its anti-corruption and ethics disclosures were not because they suggested that the company's senior executives did not engage in misconduct. *Banco Bradesco*, 227 F. Supp. 3d at 660. Plaintiffs do not cite any language in the Registration Statements that makes similar assurances, because there is none. Equally specious is Plaintiffs' claim that Luckin's disclosures were inadequate because Luckin did not develop an internal audit function, particularly in light of Plaintiffs' concession that the Registration Statements did not suggest that Luckin would do so. Luckin Opp. 25.

### C.   Plaintiffs' Other Purported Misstatements and Omissions in the IPO Registration Statement Also Fail to State a Claim

Plaintiffs' remaining arguments regarding related party transactions, compliance with laws and regulations, and declining growth (Opp. 21-22) are all premised on the same fatal flaw: they presume that the Underwriters must have been able to uncover a well-hidden fraud allegedly at its infancy at the time of the IPO. They could not, for the reasons discussed in Section II. In addition, Plaintiffs' argument that Luckin falsely described its reduced growth in the first quarter of 2019 fails because Luckin's quarterly growth metrics were fully disclosed and are not alleged to have been inaccurate. *See In re Duane Reade Inc. Sec. Litig.*, 2003 WL 22801416, at *6 (S.D.N.Y.

Nov. 25, 2003) ("[D]isclosure of accurate historical data does not become misleading even if less favorable results might be predictable by the company in the future.").

**IV.    The Alleged Misstatements or Omissions in the SPO Registration Statement Are Not Actionable**

  **A. Plaintiffs Do Not State a Claim Against the Underwriters Concerning Financial Statements, Operating Metrics, or Internal Controls**

Plaintiffs fail to adequately allege that the financial statements in the SPO Registration Statement contain any actionable misstatements or omissions supporting claims against the Underwriters.  While the financial statements in the SPO Registration Statement covered fiscal periods affected by the fabricated transactions, nothing in the Complaint plausibly suggests the Underwriters could have uncovered the alleged misstatements through a reasonable investigation. *See supra* Section II.  Plaintiffs' allegations regarding the disclosures of Luckin's internal controls also cannot support a Securities Act claim for the reasons discussed in Section III.C.

  **B.  Plaintiffs Do Not Identify Any Actionable Misstatements or Omissions Regarding the Margin Loan Facility**

Plaintiffs' arguments concerning the margin loan facility and internal controls also fail. Plaintiffs concede that the material provisions of the margin loan facility were disclosed in the SPO Registration Statement and, instead, argue that they are false because Luckin effectively disclaimed any risk of change of control based on the shares pledged in connection with the loan facility.  Luckin Opp. 28.  That misses the mark for two reasons:  (i) Luckin only stated that it was *not aware* of any arrangement that could result in a change of control, it did not disclaim all risk associated with a change of control (Compl. ¶ 599); and (ii) this disclaimer does not overrule Luckin's other disclosures.

Plaintiffs do not plead any facts suggesting that the circumstances that might lead to a change of control were known to the Underwriters.  Moreover, no reasonable investor would have

read a single sentence regarding Luckin's awareness that a change of control was possible and believe that it was a disclaimer of the "existence" of any event that could lead to a change in control. *See Holbrook* v. *Trivago N.V.*, 2019 WL 948809, at \*14 (S.D.N.Y. Feb. 26, 2019) ("[W]here there is disclosure that is broad enough to cover a specific risk, the disclosure is not misleading simply because it fails to discuss the specific risk."); *In re TVIX Sec. Litig.*, 25 F. Supp. 3d 444, 455 (S.D.N.Y. 2014) ("[T]he phrase focused on by the Plaintiffs, when read in context, does not undermine the other disclosures."). There is no dispute that the offering materials disclosed information regarding Lu and Qian's pledging a significant portion of their holdings in Luckin to this loan facility. Any reasonable investor would have understood that there was some risk of a change in control associated with large share pledges by a company's co-founders.

### C. Plaintiffs Cannot Premise Their Claims on Regulation S-K

Plaintiffs' Opposition confirms that their allegations based on Items 101, 303, and 503 of Regulation S-K cannot support a claim against the Underwriters. First, none of these Items applies to foreign issuers, like Luckin, as Plaintiffs' own authority acknowledges. *See Panther Partners Inc.* v. *Jianpu Tech. Inc.*, 2020 WL 5757628, at \*7 n.5 (S.D.N.Y. Sept. 27, 2020) ("Item 303 does not apply to foreign corporations"); *see also* Br. 27-28. Second, to sustain their claims, Plaintiffs must plead that the Underwriters knew of the "trend or uncertainty" that should have been disclosed. Plaintiffs acknowledge that this heightened standard applies to Luckin (Opp. 27) but argue that it should not apply to the Underwriters (Opp. 28 n.3). Plaintiffs cite nothing to support this distinction nor can they because nothing in any of these Items or elsewhere in Regulation S-K supports it. Plaintiffs fail to state claims arising out of Items 101, 303, and 503.

### CONCLUSION

Plaintiffs' claims against the Underwriters should be dismissed.

Dated: April 6, 2021
      New York, New York

                         Respectfully submitted,

                         By:  /s/ David G. Januszewski
                         **CAHILL GORDON & REINDEL LLP**
                         Herbert S. Washer
                         David G. Januszewski
                         Sheila C. Ramesh
                         Adam S. Mintz
                         Samuel G. Mann
                         32 Old Slip
                         New York, New York 10005
                         212-701-3000 (Telephone)
                         212-269-5420 (Facsimile)
                         hwasher@cahill.com
                         djanuszewski@cahill.com
                         sramesh@cahill.com
                         amintz@cahill.com
                         smann@cahill.com

                         *Attorneys for Defendants Credit Suisse (USA)*
                         *LLC, Morgan Stanley & Co. LLC, China*
                         *International Capital Corporation Hong Kong*
                         *Securities Limited, Haitong International*
                         *Securities Company Limited, KeyBanc Capital*
                         *Markets Inc., and Needham & Company, LLC*