**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE LUCKIN COFFEE INC. SECURITIES LITIGATION | Case No. 1:20-cv-01293-JPC-JLC |

**LEAD PLAINTIFFS' SUR-REPLY IN OPPOSITION
TO UNDERWRITER DEFENDANTS' MOTION TO DISMISS
THE CONSOLIDATED CLASS ACTION COMPLAINT**

Lead Plaintiffs Sjunde AP-Fonden ("AP7") and Louisiana Sheriffs' Pension & Relief Fund ("Louisiana Sheriffs") (together, "Lead Plaintiffs") submit this sur-reply in opposition to the Underwriter Defendants' Motion to Dismiss the Consolidated Complaint.[1]

**PRELIMINARY STATEMENT**

Lead Plaintiffs have satisfied their burden in pleading that shares purchased by Louisiana Sheriffs are traceable to the IPO and the SPO. Now, for the first time in connection with their reply submission, the Underwriter Defendants invoke new and unreliable screenshot data from Bloomberg regarding the number of shares Luckin purportedly had outstanding to argue that both IPO *and* non-IPO shares were traded following the lock-up period. This tactic fails for multiple reasons. First, the data is unreliable and disputed, and cannot be accepted for its truth, as a matter of law, on this Rule 12(b)(6) motion. Second, even if accepted as reliable, at most the data shows only that Luckin registered additional shares, *not* that any of those shares were actually traded

---

[1] The Underwriter Defendants are defined in ¶¶ 47-52 of the Consolidated Class Action Complaint ("CAC"). ECF No. 150.  Unless otherwise noted, citations to "¶__" are to the CAC; capitalized terms have the same meanings ascribed to them in the CAC; internal quotation marks, citations and alterations are omitted in quotations; and emphasis is added in quotations.

following the lock-up period. Ultimately, by making this argument, the Underwriter Defendants are asking the Court to (1) consider unreliable evidence not referenced or relied on in the CAC concerning a disputed issue of fact, (2) resolve that disputed fact issue in their favor, and then (3) draw an inference based on the resolution of that fact issue in their favor, all of which are obviously impermissible on a motion to dismiss.

## I.      THE PURPORTED DATA IS UNRELIABLE

Under Fed. R. Evid. 201(b), courts may take judicial notice only of information that is "generally known within the trial court's territorial jurisdiction," or information that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." In order for materials outside the CAC to be the basis for dismissal on a Rule 12(b)(6) motion, there must be no dispute regarding the "accuracy of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). "Because the effect of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be used in determining that a fact is beyond controversy under Rule 201(b)." *Braun v. United Recovery Sys., LP*, 14 F. Supp. 3d 159, 164 (S.D.N.Y. 2014).

Here, the data's accuracy is undeterminable. Significantly, Bloomberg is ***not*** the primary source of the information that the data purports to reflect. Instead, Bloomberg publishes information derived from an unspecified third-party source, and the Underwriter Defendants fail to provide any additional background for the source of the information or the accuracy of the data they have submitted.[2] Simply put, some screenshots of purported "data" from an unknown source, whose reliability is disputed, cannot support dismissal as a matter of law at the pleading stage.

---

[2] In support of their argument that "such shares were available," the Underwriter Defendants also cite the IPO and SPO Registration Statements. ECF No. 253 at 4. However, neither Registration Statement states the number of ADSs outstanding or whether any of those ADSs were the result of the conversions of unregistered pre-IPO shares, let alone

The Underwriter Defendants provide no support for the data's reliability or suitability for judicial notice. Instead, they rely on *Joffee v. Lehman Bros., Inc.*, 2005 WL 1492101 (S.D.N.Y. June 23, 2005), which simply states that "[a] district court may take judicial notice of well-publicized stock prices." ECF No. 253 at 5 n.4; *see also Lehman Bros.*, 2005 WL 1492101 at 1* n.2. Historical stock prices are not the issue here. Stock prices are generally appropriate for judicial notice only because they "can be readily ascertained and those prices are not subject to reasonable dispute"—the precise opposite of the situation at hand. *ScripsAmerica, Inc. v. Ironridge Global LLC*, 119 F. Supp. 3d 1213, 1231 (C.D. Cal. 2015). The Underwriter Defendants do not cite a single case that supports taking judicial notice of the number of ADSs outstanding or trading in the market based on information reported by a third party, like Bloomberg. Unlike historical share prices, the data is simply not "readily ascertained" and is currently a subject of dispute between the Parties.

## II.    THE PURPORTED DATA DOES NOT SHOW THAT ANY NON-IPO SHARES TRADED FOLLOWING THE LOCK-UP PERIOD

Even if the data were sufficiently reliable, which it is not, it still would not support the Underwriter Defendants' argument. At best, the data shows that additional ADSs were registered before the SPO, not that any of these ADSs were traded following the end of the lock-up period.[3] This is a key distinction, as the Underwriter Defendants rest their argument on cases where shares from multiple sources were indisputably trading at the time of plaintiff's purchase. *See In re Ariad Pharms., Inc. Sec. Litig.*, 842 F.3d 744, 756 (1st Cir. 2016) (shares sold in multiple offerings prior

---

whether any such ADSs were actually traded. *See* IPO Registration statement at 171; SPO Registration Statement at 179. Thus, the Underwriter Defendants' argument relies entirely on the accuracy of the data they submitted for the first time on reply. Significantly, the Underwriter Defendants have not submitted any evidence from Luckin or the Depositary of Luckin's ADSs about whether any actual conversions of pre-IPO shares for ADSs took place.

[3] Lead Plaintiffs have searched for any evidence that insiders actually converted and sold their shares into the market after the lock-up period expired, but to date have found no evidence of such trades.

to plaintiff's purchase); *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1106 (9th Cir. 2013) (same); *De Vito v. Liquid Holdings Grp., Inc.*, 2018 WL 6891832, at *17 (D.N.J. Dec. 31, 2018) (same). Rather than supplying an appropriate source of information whose accuracy cannot reasonably be questioned regarding the ***actual trading*** in Luckin's ADSs, the information in the data, if accepted as true, only alludes to the possibility of trading after the lock-up period. This is not enough. *See Perry v. Duoyuan Printing, Inc.*, 2013 WL 4505199, at *10-11 (S.D.N.Y. Aug. 22, 2013) (rejecting standing argument based on disclosure in prospectus that pre-IPO shares would become "freely tradeable" after IPO).

The Underwriter Defendants claim that *Doherty v. Pivotal Software, Inc.*, 2019 WL 5864581 (N.D. Cal. Nov. 8, 2019) is "nearly identical," but completely ignore that in *Doherty*, the parties agreed that "GE ***sold*** 9,836,521 unregistered shares of Pivotal Class A common stock; this meant . . . Class A common stock entered the market and comingled with IPO shares." *Id.* at *8. Here, the data at most shows that additional ADSs were outstanding, not that they were actually sold or comingled with the IPO ADSs in the market.

Further, allowing the mere possible existence of outstanding shares after a lock-up period, absent evidence of actual trading in those shares, to shield the Underwriter Defendants from liability would inappropriately "inoculate a corporation against nearly all potential Section 11 liability it might face for misstatements or omissions in its registration statement" by simply including language about possible post lock-up trades in its prospectus. *In re Snap Inc. Sec. Litig.*, 334 F.R.D. 209, 224 (C.D. Cal. 2019) (rejecting standing argument based on ***actual sale*** of pre-IPO shares pursuant to limited lock-up waiver). The consequences could inspire gamesmanship during the IPO process, contrary to Section 11 of the Securities Act of 1933, which was "designed to assure compliance with the disclosure provisions of the Act by imposing a stringent standard of

liability on the parties who play a direct role in a registered offering." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381–82 (1983).

## III.   THE UNDERWRITER DEFENDANTS CANNOT ASK THE COURT TO RESOLVE DISPUTED FACTUAL ISSUES AND DRAW INFERENCES IN THEIR FAVOR

The Underwriter Defendants' attempt to inject disputed evidence into the record regarding whether non-IPO shares traded after the lock-up period is improper. It is well established on a motion to dismiss that the court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Even if the data is accurate, it at best supports an inference that the outstanding ADSs **may** have been traded following the lock-up period, not that they **were** traded. Making that inference would be improper at this stage.

Importantly, the Underwriter Defendants may raise this argument following discovery, when the Court has access to an accurate record of the ADSs outstanding and actually traded following the lock-up period. "Should it become apparent after a full factual record is established during discovery that [Lead Plaintiffs] cannot prove direct purchases from certain individual underwriters, those underwriters will have the opportunity to seek judgment as a matter of law in a motion for summary judgment." *In re MF Glob. Holdings Ltd. Sec. Litig.*, 982 F. Supp. 2d 277, 324 (S.D.N.Y. 2013). There is no need to rush forward with a decision here based solely on unsubstantiated data drawn from a third party, particularly as accurate data regarding the outstanding ADSs and ADS trades will become available through discovery.[4]

---

[4] Further, even if discovery does establish that Lead Plaintiffs cannot trace their purchases to the IPO, Lead Plaintiffs may add additional named plaintiffs who purchased ADSs prior to the expiration of the lock-up period. *See In re Gen. Motors LLC Ignition Switch Litig.*, 2017 WL 5504531, at *1 (S.D.N.Y. Nov. 15, 2017) ("In general, when a certified or putative class is left without adequate representation, courts hold that adding a new class representative is appropriate, even required, to protect class interests.") (citing *In re Nat'l Austl. Bank Sec. Litig.*, 2006 WL 3844463,

## IV.    CONCLUSION

For the reasons discussed above and in Lead Plaintiffs' Memoranda of Law in Opposition to Luckin and Underwriter Defendants' Motions to Dismiss, the Court should deny the Motion.

Dated: April 16, 2021

Respectfully submitted,

/s/ Salvatore J. Graziano

**BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP**

Salvatore J. Graziano
John Rizio-Hamilton
Jai Chandrasekhar
Kate W. Aufses
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
salvatore@blbglaw.com
johnr@blbglaw.com
jai@blbglaw.com
kate.aufses@blbglaw.com

**KESSLER TOPAZ MELTZER
   & CHECK, LLP**

Sharan Nirmul
Gregory M. Castaldo
Richard A. Russo, Jr.
Lisa M. Port
Nathan A. Hasiuk
280 King of Prussia Road
Radnor, Pennsylvania 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

---

at *3 (S.D.N.Y. Nov. 8, 2006) ("[C]ourts not only may, but *should*, respond to the pre-certification mooting of a class representative's claims by permitting substitution of a new class representative.") (emphasis in original).

snirmul@ktmc.com
gcastaldo@ktmc.com
rrusso@ktmc.com
llambport@ktmc.com
nhasiuk@ktmc.com

*Counsel for Lead Plaintiffs Sjunde AP-Fonden
and Louisiana Sheriffs' Pension & Relief Fund
and Lead Counsel for the Putative Class*

<u>**CERTIFICATE OF SERVICE**</u>

On April 16, 2021, I caused the foregoing document to be filed with the Clerk of Court by using the Court's electronic filing system, which sent notice to all counsel of record.

<u>*/s/ Salvatore J. Graziano*</u>

Attorney for Lead Plaintiffs