**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE LUCKIN COFFEE INC. SECURITIES LITIGATION | Case No. 1:20-cv-01293-JPC-JLC<br><br>**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT THOMAS P. MEIER'S MOTION TO DISMISS** |

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

I.   PRELIMINARY STATEMENT .................................................................................... 1

II.  BACKGROUND .......................................................................................................... 2

III. ARGUMENT ............................................................................................................... 3

    A.   Lead Plaintiffs' Allegations Establish the Court's Personal Jurisdiction
        Over Defendant Meier ....................................................................................... 3

        1.   Legal Standards for Personal Jurisdiction in U.S. Courts........................... 4

        2.   This Court Has Personal Jurisdiction Over Meier ..................................... 5

    B.   The CAC Appropriately States a Section 15 Claim................................................ 8

        1.   Meier Exercised Control Over Luckin........................................................ 8

        2.   Lead Plaintiffs Do Not Need to Establish Meier's Culpability ................ 11

    C.   Standing and Falsity......................................................................................... 13

IV.  CONCLUSION............................................................................................................ 13

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Alstom SA*,
  406 F. Supp. 2d 346 (S.D.N.Y. 2005)................................................................5, 7, 8

*In re AstraZeneca Securities Litigation*,
  559 F. Supp. 2d 453 (S.D.N.Y. 2008)......................................................................6

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*,
  902 F.2d 194 (2d Cir. 1990)......................................................................................4

*In re BioScrip, Inc. Sec. Litig.*,
  95 F. Supp. 3d 711 (S.D.N.Y. 2015)...............................................................8, 9, 10

*In re CINAR Corp. Sec. Litig.*,
  186 F. Supp. 2d 279 (E.D.N.Y. 2002) ............................................................. *passim*

*Das v. Rio Tinto PLC*,
  332 F. Supp. 3d 786 (S.D.N.Y. 2018)...................................................................5, 7

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  352 F. Supp. 2d 429 (S.D.N.Y. 2005)......................................................................8

*In re Glob. Crossing, Ltd. Sec. Litig.*,
  322 F. Supp. 2d 319 (S.D.N.Y. 2004).....................................................................12

*In re Indep. Energy Holdings PLC Sec. Litig.*,
  154 F. Supp. 2d 741 (S.D.N.Y. 2001)................................................................11, 12

*Initial Pub. Offering Sec. Litig.*,
  241 F. Supp. 2d 281 (S.D.N.Y. 2003) .....................................................................11

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945)...................................................................................................4

*Jacobs v. Coopers & Lybrand, L.L.P.*,
  1999 WL 101772 (S.D.N.Y. Mar. 1, 1999) ........................................................9, 10

*In re JWP Sec. Litig.*,
  928 F.Supp. 1239 (S.D.N.Y. 1996) .....................................................................9, 10

*In re Longfin Corp. Sec. Class Action Litig.*,
  2019 WL 1569792 (S.D.N.Y. Apr. 11, 2019), *on reconsideration*, 2019 WL
  3409684 (S.D.N.Y. July 29, 2019) ...........................................................................4

*In re Philip Servs. Corp. Sec. Litig.*,
  383 F. Supp. 2d 463 (S.D.N.Y. 2004)...................................................................................9

*In re Refco, Inc. Sec. Litig.*,
  503 F. Supp. 2d 611 (S.D.N.Y. 2007)...............................................................................9, 11

*Rex & Roberta Ling Living Tr. u/a Dec. 6, 1990 v. B Commc'ns Ltd.*,
  2019 WL 1407453 (S.D.N.Y. Mar. 28, 2019) ...................................................................5, 6, 7

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
  351 F. Supp. 2d 334 (D. Md. 2004) .....................................................................................5

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
  380 F. Supp. 2d 509 (D.N.J. 2005) .....................................................................................5

*In re Sterling Foster & Co., Inc., Sec. Litig.*,
  222 F. Supp. 2d 216 (E.D.N.Y. 2002) ..................................................................................12

*Terra Res. I v. Burgin*,
  664 F. Supp. 82 (S.D.N.Y. 1987) .......................................................................................12

*In re Terrorist Attacks on Sept. 11, 2001*,
  714 F.3d 659 (2d Cir. 2013)...............................................................................................4

*In re Veon Ltd. Sec. Litig.*,
  2018 WL 4168958 (S.D.N.Y. Aug. 30, 2018).............................................................. *passim*

*In re Vivendi Universal, S.A.*,
  381 F. Supp. 2d 158 (S.D.N.Y. 2003)..................................................................................11

## STATUTES

15 U.S.C. § 77o(a) ..................................................................................................................12

15 U.S.C. § 77v.........................................................................................................................4

iii

Lead Plaintiffs Sjunde AP-Fonden and Louisiana Sheriffs' Pension & Relief Fund (together, "Lead Plaintiffs") submit this Memorandum of Law in Opposition to Defendant Thomas P. Meier's Motion to Dismiss.[1]

## I.    PRELIMINARY STATEMENT

Defendant Thomas P. Meier ("Meier") was a Luckin director and a member of its Audit Committee during the Class Period. In that capacity, Meier consented to be referenced in Luckin's materially false and misleading IPO Registration Statement and signed the materially false and misleading SPO Registration Statement. Yet, in his Motion to Dismiss, Meier's chief argument is that this Court lacks personal jurisdiction over him. In essence, Meier contends that he was free to hold himself out as an Audit Committee member and sign Registration Statements used to solicit Luckin investors in the United States in the midst of one of the most audacious frauds in recent memory, but evade accountability in U.S. courts. That argument not only contradicts common sense, but it also contradicts the law. Once Meier availed himself of the privilege of doing business in the United States, through his signature and consent to be referenced in the SPO and IPO Registration Statements, respectively, he became subject to this Court's jurisdiction for any materially false and misleading information contained within those public filings.

Meier also incorrectly contends that he cannot be held liable for claims brought under Section 15 of the Securities Act of 1933 (the "Securities Act") because he is not a control person of Luckin. Meier's control person status, however, is easily established through his signing of the Registration Statements, as well as his role on Luckin's Audit Committee at the time the false and

---

[1] Unless otherwise noted, citations to "¶__" are to the Consolidated Class Action Complaint ("CAC") (ECF No. 150); citations to "Meier MTD" are to Defendant Thomas P. Meier's Memorandum of Law in Support of Motion to Dismiss (ECF No. 225); capitalized terms have the same meanings ascribed to them in the CAC; internal quotation marks, citations and alterations are omitted in quotations; and emphasis is added in quotations.

misleading statements were being disseminated to the public.    Further, Meier's additional argument that the CAC fails to plead culpable participation in the primary Securities Act violation is also wrong.  Culpability is not a required element for pleading a claim under Section 15.  Rather, good faith is an available **affirmative defense** that Meier will have the burden of proving **after** discovery.

Finally, Meier relies on Luckin's arguments on standing and falsity contained in its motion to dismiss.  Those arguments also fail for the reasons set forth in Lead Plaintiffs' opposition to Luckin's dismissal motion.  (ECF Nos. 220, 255-1).

## II.    BACKGROUND

A description of Luckin's misconduct is set forth in the CAC and in Lead Plaintiffs' Memorandum of Law in Opposition to Luckin Coffee Inc.'s Motion to Dismiss ("Lead Plaintiffs' Opposition to Luckin's Motion") (ECF No. 220), which Lead Plaintiffs incorporate here.  As noted above, during the Class Period, Meier was a member of Luckin's Board of Directors and its Audit Committee.  Lead Plaintiffs bring claims against Meier under Sections 11 and 15 of the Securities Act based on Meier's failure to conduct a reasonable due diligence investigation into the accuracy and completeness of Luckin's IPO and SPO Registration Statements.  These claims are based solely on negligence.

As a director and member of Luckin's Audit Committee, Meier had access to internal reports and information that, had he conducted reasonable due diligence, would have put Meier on notice of the untrue and misleading statements of material fact contained in Luckin's IPO and SPO Registration Statements.  ¶215.  In fact, as a member of the Audit Committee, Meier's duties included, among other things: (i) "reviewing with the independent registered public accounting firm any audit problems or difficulties and management's response"; (ii) "discussing with [Luckin's] independent auditor, among other things, the audits of the financial statements,

2

including whether any material information should be disclosed, issues regarding accounting and auditing principles and practices"; (iii) "reviewing and approving all proposed related party transactions, as defined in Item 404 of Regulation S-K under the Securities Act"; (iv) "discussing the annual audited financial statements with management and the independent registered public accounting firm"; (v) "reviewing the adequacy and effectiveness of [Luckin's] accounting and internal control policies and procedures and any special steps taken to monitor and control major financial risk exposures"; (vi) "approving annual audit plans, and undertaking an annual performance evaluation of the internal audit function"; and (vii) "meeting separately and periodically with management and the independent registered public accounting firm." *Id.*

Despite Meier's access to information directly related to Luckin's financial reporting and internal controls, he failed to fulfill his obligation to carefully vet such information before it was made public.  Without conducting a reasonable investigation into Luckin's disclosures, he consented to the reference of his name and accepted his nomination to the Luckin Board of Directors in the IPO Registration Statement, and signed Luckin's SPO Registration Statement, causing it to be declared effective by the Securities Exchange Commission ("SEC").  ¶¶45, 451, 607.  Luckin's IPO and SPO Registration Statements, each of which contained false and misleading statements and material omissions, were then used to solicit and attract U.S. investors to Luckin's ADS Offerings.

III.    **ARGUMENT**

    A.    **Lead Plaintiffs' Allegations Establish the Court's Personal Jurisdiction Over Defendant Meier**

Meier's principal argument is that the CAC's allegations fail to adequately allege personal jurisdiction over him.  As explained below, this argument fails.  Courts widely hold that allegations such as those in the CAC provide ample basis for the exercise of personal jurisdiction.

### 1.    Legal Standards for Personal Jurisdiction in U.S. Courts

"Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990).  The Securities Act permits worldwide service of process and only bounds "the exercise of personal jurisdiction to the limit of the Fifth Amendment's Due Process Clause." *In re Longfin Corp. Sec. Class Action Litig.*, 2019 WL 1569792, at *9 (S.D.N.Y. Apr. 11, 2019), *on reconsideration*, 2019 WL 3409684 (S.D.N.Y. July 29, 2019); 15 U.S.C. § 77v.

A plaintiff may satisfy due process for establishing personal jurisdiction by alleging: (1) that a defendant has "certain minimum contacts" with the relevant forum, and (2) that the exercise of jurisdiction is "reasonable in the circumstances." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Defendant Meier does not contest that the exercise of jurisdiction over him is reasonable in this case, and only argues that Lead Plaintiffs cannot establish his minimum contacts with the forum. Meier MTD at 4.

A plaintiff establishes defendant's "minimum contacts" when the plaintiff alleges a "claim aris[ing] out of, or relat[ing] to, the defendant's contacts with the forum and that the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *In re Veon Ltd. Sec. Litig.*, 2018 WL 4168958, at *5 (S.D.N.Y. Aug. 30, 2018).  "The Supreme Court has emphasized that it is the defendant's actions, not his expectations, that empower a forum's courts to subject him to judgment." *Longfin Corp.*, 2019 WL 1569792, at *9.  As set forth below, Lead Plaintiffs have easily established Meier's "minimum contacts" with this forum sufficient to convey this Court's personal jurisdiction over him.

### 2.    This Court Has Personal Jurisdiction Over Meier

Meier's signature on Luckin's SPO Registration Statement and consent to be referenced in Luckin's IPO Registration Statement alone establish this Court's jurisdiction over him in this action.  Indeed, courts regularly find personal jurisdiction over defendants who sign a relevant SEC filing.  *See, e.g.*, *In re Alstom SA*, 406 F. Supp. 2d 346, 399 (S.D.N.Y. 2005) ("The signing of documents filed with the SEC which form the basis for Plaintiffs' claims is sufficient contact with the jurisdiction to justify this Court's exercise of jurisdiction over [defendants].");  *Rex & Roberta Ling Living Tr. u/a Dec. 6, 1990 v. B Commc'ns Ltd.*, 2019 WL 1407453, at *6 (S.D.N.Y. Mar. 28, 2019) ("Courts in this District have regularly held allegations that a defendant signed off on materially misleading SEC filings to be sufficient at the pleading stage to establish minimum contacts."); *see also In re CINAR Corp. Sec. Litig.*, 186 F. Supp. 2d 279, 305-06 (E.D.N.Y. 2002).[2]

Finding jurisdiction over Meier based on his signature and consent to be referenced in SEC filings aligns with the fundamental principles for establishing personal jurisdiction.  By signing a filing with the SEC, Meier purposefully availed himself of the privilege of doing business with American investors.  *See Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 801 (S.D.N.Y. 2018) (by making "SEC filings, [defendant] knew or had reason to know that any false or misleading financial reports would be given to prospective American purchasers of those securities.").  Similarly, by consenting to be referenced in the IPO Registration Statement, Meier insured that his presence as a member on Luckin's Board would be advertised to American investors.  *See CINAR*,

---

[2] *See also Veon*, 2018 WL 4168958, at *6 (personal jurisdiction found where "[p]laintiffs allege that . . . Defendant signed specific SEC filings that contained allegedly misleading information."); *In re Royal Dutch/Shell Transp. Sec. Litig.*, 380 F. Supp. 2d 509, 551 (D.N.J. 2005) ("United States courts frequently have asserted personal jurisdiction over individual defendants who sign  . . . particular forms required by the SEC which they knew or should have known would be relied on by U.S. investors."); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 351-52 (D. Md. 2004) (same).

186 F. Supp. at 305-06 ("[Defendant] must have known that the Statement was released in connection with a secondary stock offering designed to attract American investment.  There is no clearer example of purposeful availment of the privilege of doing business in the United States than this.").  Moreover, Meier's actions allowed Luckin to raise $650 million in gross proceeds from investors through its IPO, where its ADSs were initially listed on the NASDAQ, and an additional $448.6 million through its subsequent SPO.  ¶¶7, 12.  It is entirely reasonable for Meier to now face claims in this Court based on alleged materially false and misleading statements in the SEC filings that were used to solicit those investments.

Meier relies on *In re AstraZeneca Securities Litigation*, 559 F. Supp. 2d 453 (S.D.N.Y. 2008) as the ***sole*** cited decision in this District where a court declined to find personal jurisdiction over individuals who allegedly signed SEC filings promulgating materially false and misleading statements.  Meier MTD at 6.  However, subsequent decisions from this District have directly disputed this piece of cited dicta because, in part, "the *AstraZeneca* court had little occasion to consider the question fully."  *Rex & Roberta Ling Living Tr.*, 2019 WL 1407453, at \*6-7 & n.6 (defendants "hav[ing] signed or approved allegedly misleading SEC filings" sufficient to establish personal jurisdiction).  Notably, the court in *AstraZeneca* made clear that its decision was made "in light of its holding that plaintiffs had failed to state an Exchange Act violation."  *Id.* at \*7 n.6; *AstraZeneca*, 559 F. Supp. at 467.  Given the overwhelming weight of authority running counter to *AstraZenca*, the cursory assessment of the issue in that case, and the fact that the decision in *AstraZenca* was ultimately based on the failure to state a substantive claim, that decision cannot shield Meier from this Court's jurisdiction.

Meier then attempts to distinguish the vast majority of cases establishing clear precedent for finding personal jurisdiction where defendants authorized or signed SEC filings by raising

irrelevant factual distinctions.  Meier MTD at 6-7.  For example, Meier claims that in those cases, the courts considered defendants' signatures on SEC filings alongside their involvement in business operations or control over the statements, and that "[t]hese circumstances contributed to findings that the individual defendants' actions had effects in the forum."  Meier MTD at 7.  This is not true.  As an initial matter, courts have unambiguously found "that it is perfectly reasonable to exercise jurisdiction over [a defendant] based *solely* on her signing" of a registration statement giving rise to a plaintiff's claims.  *CINAR*, 186 F. Supp. 2d at 305.  Further, none of the cases that Meier cites held that a signature on an SEC filing *in conjunction* with other conduct or other roles in the organization is *required* to establish personal jurisdiction—because that is simply not the case.  *See Rex & Roberta Ling Living Tr.*, 2019 WL 1407453, at \*6 ("Defendants are each alleged to have signed or approved allegedly misleading SEC filings on behalf of BComm.  These actions are sufficient to establish a *prima facie* case that these defendants have minimum contacts with the United States for purposes of the instant suit."); *Das*, 332 F. Supp. 3d at 801 ("the complaint alleges that those [SEC] filings contained materially misleading information . . . . [T]hrough making regular SEC filings, [defendant] knew or had reason to know that any false or misleading financial reports would be given to prospective American purchasers of those securities."); *Veon*, 2018 WL 4168958, at \*6 (same); *Alstom SA*, 406 F. Supp. 2d at 401 (same).

In any event, even if something more than signing SEC filings were required to establish personal jurisdiction (it is not), Meier's close proximity to Luckin's misconduct contributes to a finding of personal jurisdiction over Meier.  Meier sat on Luckin's Audit Committee, which was purportedly responsible for preventing the types of gross financial malfeasance that Luckin committed.  Meier ignores that Lead Plaintiffs' claims directly relate to the Audit Committee's oversight—or lack thereof—of the Company and the malfeasance that occurred to give rise to this

action.  The Audit Committee was responsible for, among other things, "discussing the annual audited financial statements with management and the independent registered public accounting firm," "reviewing and approving all proposed related party transactions," and "reviewing the adequacy and effectiveness of [Luckin's] accounting and internal control policies."  ¶215.  As a result of Meier's specific role on Luckin's Board and Audit Committee, he was directly responsible for the failure to detect and disclose the alleged fraud to U.S. investors prior to the IPO and SPO.

Finally, Meier asserts that his link to the IPO and SPO Registration Statements is tenuous because he consented to his reference for the IPO Registration Statement and signed the SPO Registration Statement through a power of attorney, but Meier provides no support for this argument.  Meier MTD at 8.  In truth, neither fact impacts the Court's personal jurisdiction over Meier.  *See Alstom SA*, 406 F. Supp. 2d at 400 (finding personal jurisdiction over defendant where the company's senior executive vice president and Chief Financial Officer allegedly signed the SEC filing as attorney-in-fact for defendant).  Both actions furthered the filing of false and misleading Registration Statements used to solicit investors in the United States, which is the operative consideration for a finding of personal jurisdiction.  *See supra* p. 5-6.

### B.    The CAC Appropriately States a Section 15 Claim

#### 1.    Meier Exercised Control Over Luckin

For reasons similar to those supporting this Court's exercise of personal jurisdiction over Meier, the CAC also establishes that Meier had the ability to exercise control over Luckin for purposes of Lead Plaintiffs' Section 15 claim.  "[C]ontrol of a primary violator at the time of an offering is sufficiently pled where a plaintiff alleges that the defendant signed a registration statement containing materially false or misleading statements."  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 352 F. Supp. 2d 429, 457 (S.D.N.Y. 2005); *see also In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 741 (S.D.N.Y. 2015) ("[D]irectors and officers who sign registration

8

statements or other SEC filings are presumed to control those who draft those documents."); *In re Philip Servs. Corp. Sec. Litig.*, 383 F. Supp. 2d 463, 485 (S.D.N.Y. 2004) ("[I]t comports with common sense to presume that a person who signs his name to a report has some measure of control over those who write the report.").

Moreover, a defendant's position on an audit committee that allegedly oversaw a company's "financial reporting, accounting, and internal controls, and coordinating [of] outside audits" establishes their control when the underlying claims are based on financial and accounting malfeasance. *See In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 639 (S.D.N.Y. 2007); *see also In re JWP Sec. Litig.*, 928 F.Supp. 1239, 1260 (S.D.N.Y. 1996) ("A reasonable jury could find that the audit committee's recommendations would carry sufficient weight . . . that the audit committee had the practical ability to direct [the company's] accounting policies."). Importantly, "audit committee defendants need not, of course, have actually exercised that authority to be held liable as control persons." *Id.*

Meier relies on *Jacobs v. Coopers & Lybrand, L.L.P.* to argue that while his signature on the Registration Statements is merely "indicative of control," he was not a control person of Luckin because the CAC lacks other allegations to raise that inference. 1999 WL 101772 (S.D.N.Y. Mar. 1, 1999). But *Jacobs* in fact **supports** a finding of control here. The court in that case acknowledged that "courts in this district have . . . rul[ed] that allegations that an outside director signed a fraudulent report and was in the position to exercise control over the primary violation are sufficient to withstand a motion to dismiss." *Id.* at \*18. The court also found that the plaintiff in that case sufficiently pled control by an outside director, like Meier, who sat on the defendant's audit committee and signed the fraudulent SEC filing underlying the plaintiff's claims. *Id.* While the *Jacobs* court did dismiss claims against a director who joined the board **after** the fraud

9

occurred, here Luckin has admitted that the fraud began prior to the IPO and continued throughout the Class Period, and was thus occurring when Meier joined the Company and during his tenure on the Board.  ¶¶174, 178.

Further, although Meier argues that he was not involved in the drafting or revising of the IPO and SPO Registration Statements, that is not the relevant consideration for purposes of finding control.  Meier MTD at 12.  It is well established that when assessing a Section 15 defendant's control person status, courts look to whether he or she *could* have exercised control over the filing, not whether they "actually exercised that authority."  *JWP,* 928 F. Supp. at 1260.  For example, in his position, Meier could have easily requested revisions to the filings or ultimately refused to be referenced in or sign the Registration Statements.  In fact, his failure to do so helped further the resulting harm to Class members by allowing and authorizing the dissemination of false and misleading statements and material omissions to the market.

Meier also asserts, without any support, that his resignation demonstrates that he was not a control person.  Meier MTD at 12.  But it is not clear why Meier's subsequent resignation should have any impact on his ability to exert control over Luckin during his tenure on Luckin's Board.  Importantly, the question is not whether Meier knew about the fraud or actually exerted control over Luckin—the operative question is whether Meier *could have* exerted control over Luckin, and, as detailed above, the CAC more than adequately pleads that proposition.

Finally, even if the Court credits Meier's arguments on this point, the issue should not be resolved in his favor on a motion to dismiss.  "Determining an individual defendant's liability as a control person is a fact-intensive inquiry that generally should not be resolved on a motion to dismiss."  *BioScrip*, 95 F. Supp. 3d at 741.  Moreover, "[a]llegations of control are not averments of fraud and therefore need not be pleaded with particularity."  *Veon*, 2018 WL 4168958 at *21.

Here, the CAC adequately alleges that Meier not only consented to be referenced in and signed Luckin's IPO and SPO Registration Statements respectively, but sat on the Audit Committee overseeing Luckin's admitted fraudulent activities. These facts alone are sufficient to satisfy the pleading standard for control, and Meier will have ample opportunity to argue these points once a complete factual record is available for the Court.

### 2. Lead Plaintiffs Do Not Need to Establish Meier's Culpability

Meier contends that Lead Plaintiffs need to establish Meier's "culpable participation" in order to bring a Section 15 claim against him. But they do not. Numerous courts in this District have held that plaintiffs need not plead a defendant's culpable participation in order to allege a Section 15 claim. *See In re Indep. Energy Holdings PLC Sec. Litig.*, 154 F. Supp. 2d 741, 770 (S.D.N.Y. 2001), *abrogated on other grounds by In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281 (S.D.N.Y. 2003) ("[T]o plead control person liability under the Securities Act, it is sufficient to allege an underlying primary violation of the Securities Act and control over the controlled person."); *CINAR*, 186 F. Supp. 2d at 310 ("The Court . . . declines to require plaintiffs to allege culpable participation [for Section 15 claims]."). This is because Section 11 claims "sound in strict liability and do not require knowledge of the misrepresentations." *Indep. Energy*, 154 F. Supp. 2d at 770. Accordingly, "[t]he concept of culpability is therefore inapposite [to Section 15 claims]." *Id.*[3]

Meier acknowledges that cases requiring culpability for Section 15 claims adopt ***by analogy*** the requirements to establish liability under Section 20(a) of the Exchange Act of 1934

---

[3] *See also In re Vivendi Universal, S.A.*, 381 F. Supp. 2d 158, 188 (S.D.N.Y. 2003) ("I concur with Judge Stein's reasoning . . . and the apparent majority of judges in the Southern District that have determined that culpable participation is not an element of § 15."); *See Refco,* 503 F. Supp. 2d at 637 n.24 ("[Defendant] contends that culpable participation is an element of a claim under Section 15. It is not.").

(the "Exchange Act").  Meier MTD at 13.  But blindly imputing the requirements under Section 20(a) to Section 15 ignores key differences in the predicate violations.  Whereas Section 10(b) of the Exchange Act, the predicate violation for a Section 20(a) claim, includes a scienter component, Section 11 does not, but rather imposes strict liability.  *See Indep. Energy*, 154 F. Supp. 2d at 770; *see also In re Glob. Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 349 (S.D.N.Y. 2004) (stating that "Section 20(a) contains the additional requirement that plaintiff allege culpable participation" when comparing claims brought under Sections 20(a) and 15).  As another court in this Circuit has explained, "claims under Section 11 . . . do not contain an intent element—indeed, defendants need not even know about the misrepresentations—[so] it would make little sense to compel plaintiffs to allege a culpable state of mind in order to state a claim under Section 15."  *CINAR*, 186 F. Supp. 2d at 310; *see also Indep. Energy*, 154 F. Supp. 2d at 770; *In re Sterling Foster & Co., Inc., Sec. Litig.*, 222 F. Supp. 2d 216, 282 (E.D.N.Y. 2002).

Meier also conflates the standard for finding liability under Section 15 with the standard for pleading a claim under Section 15 by arguing that 15 U.S.C. § 77o(a) requires Lead Plaintiffs to plead Meier's culpability.  Meier MTD at 14.  It is well established that 15 U.S.C. § 77o(a) merely creates a good faith affirmative defense that is irrelevant at this stage of the proceedings and that Meier may attempt to prove after discovery, if he so chooses.  *See Initial Pub. Offering*, 241 F. Supp. 2d at 352 & n.84 (for Section 15 claims "a defendant may raise, as an affirmative defense, that the underlying violation occurred without her knowledge"); *Terra Res. I v. Burgin*, 664 F. Supp. 82, 88 (S.D.N.Y. 1987) ("[I]t would seem imprudent to construct a pleading requirement that demands that plaintiffs anticipate and negate an alleged controlling defendant's good faith defense[.]").  Meier, therefore, cannot raise this affirmative defense now to argue in favor of dismissing the CAC.

Furthermore, even if the Court were to impose a requirement that Lead Plaintiffs plead Meier's culpability, the CAC adequately does so. As discussed above, the CAC alleges that Meier sat on Luckin's Audit Committee, which oversaw a wide swath of financial disclosures directly implicated in Luckin's false and misleading statements, including "reviewing and approving all proposed related party transactions," "discussing the annual audited financial statements with management and the independent registered public accounting firm," and "reviewing the adequacy and effectiveness of [Luckin's] accounting and internal control policies and procedures." ¶215. At a minimum, these facts demonstrate Meier's reckless disregard for the fraud permeating Luckin and satisfy any pleading requirement for demonstrating his culpability.

### C.    Standing and Falsity

In moving to dismiss the CAC, Meier also relies on the arguments raised by Defendant Luckin in its motion to dismiss that the CAC fails to establish standing and falsity with respect to the financial statements in Luckin's IPO Registration Statement, the personal loans of Luckin's former Chairman and former CEO, Luckin's remediation of internal control weaknesses, and certain statements regarding Luckin's growth prospects that Meier asserts are non-actionable puffery. Meier MTD at 8. Those arguments are without merit as detailed in Lead Plaintiffs' Opposition to Luckin's Motion. ECF No. 220.

## IV.    CONCLUSION

For the above reasons, the Court should deny Defendant Meier's Motion to Dismiss.

Dated: May 5, 2021

Respectfully submitted,

*/s/ Salvatore J. Graziano*

**BERNSTEIN LITOWITZ BERGER**
   **& GROSSMANN LLP**

Salvatore J. Graziano
John Rizio-Hamilton

13

Jai Chandrasekhar
Kate W. Aufses
Nicholas Gersh
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
salvatore@blbglaw.com
johnr@blbglaw.com
jai@blbglaw.com
kate.aufses@blbglaw.com
nicholas.gersh@blbglaw.com


**KESSLER TOPAZ MELTZER
 & CHECK, LLP**

Sharan Nirmul
Gregory M. Castaldo
Richard A. Russo, Jr.
Lisa M. Port
Nathan A. Hasiuk
280 King of Prussia Road
Radnor, Pennsylvania 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
snirmul@ktmc.com
gcastaldo@ktmc.com
rrusso@ktmc.com
llambport@ktmc.com
nhasiuk@ktmc.com

*Counsel for Lead Plaintiffs Sjunde AP-Fonden
and Louisiana Sheriffs' Pension & Relief Fund
and Lead Counsel for the Putative Class*

14

## <u>CERTIFICATE OF SERVICE</u>

On May 5, 2021, I caused the foregoing document to be filed with the Clerk of Court by using the Court's electronic filing system, which sent notice to all counsel of record.

*/s/ Salvatore J. Graziano*_____
Attorney for Lead Plaintiff
