# EXHIBIT E

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 21-10228

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In the Matter of:

LUCKIN COFFEE,

      Debtor.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

          United States Bankruptcy Court

          One Bowling Green

          New York, NY  10004

          March 16, 2021

          10:13 AM

B E F O R E :

HON MARTIN GLENN

U.S. BANKRUPTCY JUDGE

ECRO:  UNKNOWN

Page 2

HEARING re (Doc ## 1 to 8, 10, 13, 21, 22, 24, 25, 27, 29 to 33)

HEARING re Motion of the foreign representative for Chapter 15 recognition and final relief.  ECF Docket #3.

Transcribed by:  Sonya Ledanski Hyde

says that, "Upon recognition of a foreign proceeding, whether main or non-main, where necessary to effectuate the purpose of the Chapter and protect the assets of the Debtor," then skipping down to subparagraph one, "Staying the continuation of an individual action or proceeding concerning the debtor's assets, rights, obligations, or liabilities."  Obviously that's subject to provision of sufficient protection in 1522.

And so really what we're asking is for -- I'd call it a pause or a temporary stay to try to align our negotiations with the shareholders with the longstop date that we've agreed to with the bondholders so that we can focus on both schemes and resolving these issues.  And obviously in --

THE COURT:  How could your scheme of arrangement resolve the issue of any liability -- the separate liability of directors and officers, underwriters, or accountants?

MR. MARTIN:  Your Honor, I understand that it's possible in schemes to include either additional consideration from those parties or based on resolution with the foreign debtor, releases to be provided so that those indemnification obligations don't ultimately shift back to the debtor after the scheme.

THE COURT:  But you haven't briefed any of that. Have you?  I read the briefs quite carefully.

Page 38

payments.  And (indiscernible) efforts in obtaining the relief that's been sought.

THE COURT:  Oftentimes -- I don't know whether Luckin would be able to successfully reorganize or not.  I hope it can.  But for -- if statutory liability exists against underwriters, directors and officers, accountants, that may be the best hope for injured parties to recover.  So putting on hold all claims against those non-debtors may well not be in the best interest of the creditors.  And I understand, I am mindful of the interests of the foreign debtors represented by the foreign representatives.  But that's part of my concern.

Let me hear from the objectors.  I know we have a lot of people on the line today, but those who filed objections.  Who wants to be heard first?

MR. ROLNICK:  Your Honor, by agreement the objectors have agreed that I should speak first on behalf of the Winslow Funds.  This is Lawrence Rolnick from Rolnick Kramer Sadighi.

THE COURT:  Go ahead, Mr. Rolnick.

MR. ROLNICK:  Thank you, Your Honor.  So by way of background, I represent the Winslow Funds, which are a subsidiary of Nuveen and TIAA.  They manage funds that purchased a lot of shares in the IPO and secondary offerings.  And as a result of the fraud, lost over $100

million.  We have brought a suit under the '33 Act in New York state court.

And the important thing for us to recognize at the outset is that the '33 Act, as Your Honor is well aware, is a statutory scheme that was enacted for the protection of shareholders to encourage investment in the securities markets.  And it imposes statutory duties on a whole group of entities that are involved in issuance of newly-registered securities, whether by IPO or secondary.

And with respect to the issuer, it imposes strict liability for any false statements in registration statements, but it also imposes important statutory duties on the other who are actively involved in issuing new securities to the public, specifically the underwriters are statutorily required to conduct due diligence.  Auditors have special obligations, as do those who sign the registration statement.  And the purpose of all of those duties and the concomitant liabilities that come with them is to give assurances to investors that when they buy newly-issued securities, they'll have these avenues of recovery.  And that encourages people to buy in these registration offerings and these IPOs and is what acts as the engine for the capital markets in our country.

So all of those actors under the '33 Act have joint and several liability.  And that too is an important

Page 40

protection for investors because it means that if the issuer goes bankrupt or if any of those with statutory duties goes bankruptcy, they have the opportunity for full recovery remaining against the solvent defendants.

Here, Credit Suisse was the lead underwriter.  And the fact that Credit Suisse was underwriting the securities was critically important because, as Your Honor knows, the company was a foreign entity in China, a Chinese coffee chain.  And having the assurance that an underwriter like Credit Suisse had conducted due diligence was really critical to the success of their offering and the success of the listing of Luckin on American stock exchange.

So in the case of Credit Suisse, and specifically in our case, not only did we rely on the statements in the registration statement, but Credit Suisse gave our client personal assurances about the integrity of the management. And in particular the CFO, who was a former Credit Suisse employee, gave us assurances that they had carefully conducted their statutory obligations of due diligence and --

THE COURT:  Mr. Rolnick?  Mr. Rolnick?

MR. ROLNICK:  Yes.

THE COURT:  Could you briefly address what if any limitations the '33 Act imposes on Credit Suisse in seeking indemnification from Luckin?

Page 63

coverage of the entities.  So I'm familiar with priority of

payment provisions in D&O policies.  I do want to know -- I

wouldn't go through -- well, let me leave it at that.  Let's

see what you come up with.  Okay?

MR. MARTIN:  Yes, Your Honor.  That would be fine.

THE COURT:  All right.  So either do the filing or

give me a status report within a week.

MR. MARTIN:  Certainly.

THE COURT:  And I will give any objectors a week

after the actual filing by the foreign representative with

respect to policies if -- a week from whenever that's filed.

Not the status report, but the actual filling of that.

Okay?

MR. MARTIN:  Thank you, Your Honor.

THE COURT:  All right.  Anything else?  So just to

be clear, I will enter a written order that recognizes the

Cayman proceeding as a foreign main proceeding, but I'm not

deciding the issue of whether the stay should be -- for now

the stay is not extended.  You should all go forward with

any motions or pleadings, et cetera.  Okay?

MR. MARTIN:  All right.  Thank you, Your Honor.

And we will revise the order and circulate it amongst the

objectors.  And then I presume you would prefer it to be

submitted through the chambers rules mechanism with the

email and the Word version.