**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE LUCKIN COFFEE INC.
SECURITIES LITIGATION

Case No. 1:20-cv-01293-JPC-JLC

<u>**WINSLOW FUNDS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION
TO INTERVENE**</u>

**ROLNICK KRAMER SADIGHI LLP**
1251 Avenue of the Americas
New York, New York 10020
Tel. 212-597-2800

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT……………………………………………………..1

BACKGROUND……………………………………………………………………….3

ARGUMENT…………………………………………………………………………...7

    A.  Winslow is Entitled to Intervention As of Right…………………………………7

        1.  Winslow's Motion to Intervene is Timely…………………………………8

        2.  Winslow Has an Interest in the Subject Matter of the Action……………..9

        3.  Winslow's Ability to Protect Its Interests Will Be Impaired…………….11

        4.  Winslow's Interests Are Not Adquately Represented by Lead Plaintiffs…14

    B.  In the Alternative, Winslow is Entitled to Permissive Intervention…………………..18

CONCLUSION…………………………………………………………………………..20

i

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Amchem Products, Inc. v. Windsor*,
521 U.S. 591 (1997) ............................................................................................. 17

*Blatch v. Franco*,
1998 WL 265132 (S.D.N.Y. May 26, 1998) ......................................................... 9

*Brennan v. N.Y.C. Bd. of Educ.*,
260 F.3d 123 (2d Cir. 2001) ............................................................................ 8, 15

*Bridgeport Guardians, Inc. v. Delmonte*,
602 F.3d 469 (2d Cir. 2010) ................................................................................. 9

*Buchet v. ITT Consumer Fin. Corp.*,
845 F. Supp. 684 (D. Minn. 1994) ...................................................................... 20

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
250 F.3d 171 (2d Cir.2001) ................................................................................. 15

*Chen-Oster v. Goldman, Sachs & Co.*,
2015 WL 4619663 (S.D.N.Y. Aug. 3, 2015), *aff'd*, 2016 WL 11645644 (S.D.N.Y. June 6,
2016) ................................................................................................................... 18

*Cohen v. Republic of the Philippines*,
146 F.R.D. 90 (S.D.N.Y. 1993) ........................................................................... 19

*Delaware Tr. Co. v. Wilmington Tr., N.A.*,
534 B.R. 500 (S.D.N.Y. 2015) ............................................................................ 19

*Diduck v. Kaszycki & Sons Contractors, Inc.*,
149 F.R.D. 55 (S.D.N.Y. 1993) ...................................................................... 8, 10

*Eckert v. Equitable Life Assurance Soc'y of U.S.*,
227 F.R.D. 60 (E.D.N.Y. 2005) .......................................................................... 18

*German v. Federal Home Loan Mortg. Corp.*,
899 F. Supp. 1155 (S.D.N.Y. Sept. 15, 1995) ...................................................... 9

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
689 F.3d 229 (2d Cir. 2012) ................................................................................ 17

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
297 F.R.D. 90 (S.D.N.Y. 2013) .................................................................. 9, 10, 11

*In re Cmty. Bank of N. Virginia*,
418 F.3d 277 (3d Cir.2005) ........................................................................... 11, 15

*In re Holocaust Victim Assets Litig.*,
225 F.3d 191 (2d Cir. 2000) .................................................................................. 9

ii

*In re LIBOR-Based Fin. Instrument Antitrust Litig.*,
   11 MD 2262 (NRB), 2019 WL 3006262 (S.D.N.Y. July 10, 2019) ...................................... 10

*In re National Prescription Opiate Litig.*,
   976 F.3d 664 (6th Cir. 2020) ...................................................................... 12, 16, 17

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*,
   164 F.R.D. 362 (S.D.N.Y. 1996) ........................................................................ 11

*Miller v. Silbermann*,
   832 F. Supp. 663 (S.D.N.Y. 1993) ..................................................................... 18

*New Jersey Carpenters Health Fund v. Residential Capital, LLC*,
   2010 WL 5222127 (S.D.N.Y. Dec. 22, 2010) .......................................................... 9

*Republic of the Philippines v. Abaya*,
   312 F.R.D. 119 (S.D.N.Y. 2015) ....................................................................... 15

*Sherman v. Town of Chester*,
   339 F. Supp. 3d 346 (S.D.N.Y. 2018) .................................................................. 8

*Standard Fire Ins. Co. v. Knowles*,
   568 U.S. 588 (2013) ................................................................................... 8

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011) ........................................................................... 17

*Trief v. Dun & Bradstreet Corp.*,
   144 F.R.D. 193 (S.D.N.Y. 1992) ....................................................................... 8

*Turkmen v. Ashcroft*,
   No. 02-2307, 2010 WL 3398965  (E.D.N.Y. June 30, 2010) ............................................ 15

**Other Authorities**

3 William B. Rubenstein, Newberg on Class Actions § 9:46 (5th ed. June 2019 update) ........... 11

5 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 16:7 (4th ed. 2002) ............. 8

Cayman Islands Companies Law § 86(2) (2021) ...................................................... 13

Herbert Newberg & Alba Conte, Newberg on Class Actions § 16:8 (4th ed.)........................... 19

**Rules**

Fed. R. Civ. P. 23 ............................................................................ passim

Fed. R. Civ. P. 24(a) ................................................................... 7, 8, 11, 18

Fed. R. Civ. P. 24(b) ................................................................... 18

The Winslow Funds ("Winslow")[1] respectfully submit this Memorandum of Law in support of their motion, pursuant to Rule 24 of the Federal Rules of Civil Procedure, to intervene in the above-captioned case, for the purpose of objecting to the Stipulation and [Proposed] Order Regarding Dissemination of Class Notice (the "Notice") and for the opportunity to be heard in this matter, with all rights and remedies attendant to its position hereby reserved.

## PRELIMINARY STATEMENT

Lead Plaintiffs' proposed stipulation and order, submitted to the Court on May 14, 2021, asks the Court to approve of a class notice granting to themselves sweeping (and, perhaps unprecedented) powers. Essentially, Lead Plaintiffs seek the power not only to sue on behalf of class members, but to actually cast votes as a class to approve a corporate reorganization. An analogy to the exercise of such a broad power would be to appoint a "class representative" to approve a merger, rather than to require a majority of shareholders to actually vote in favor. Among the myriad due process concerns implicated by such an unauthorized use of Rule 23 is the opportunity and incentive for collusion between the class representative and the debtor. Rather than convince claimants (who are unsecured creditors in bankruptcy) to approve a plan, the debtor need only reach agreement with one creditor—a class representative with an inconsequential claim—to cram down a reorganization. Indeed, here, the debtor has suggested that the deal it intends to strike with Lead Plaintiffs includes releases of claims against non-debtor third parties, including underwriters. These sweeping powers would be conferred on a class representative who

---

[1] The "Winslow Funds" are: Nuveen Winslow Large-Cap Growth ESG Fund, Nuveen Winslow Socially Aware U.S. Large-Cap Growth Fund, Winslow Large-Cap Growth Fund, MainStay Winslow Large Cap Growth Fund, MainStay VP Winslow Large Cap Growth Portfolio, St. John's University, I.B.E.W. Local Union 481 Defined Contribution Plan and Trust, St. Mary's University, Justin Kelly Revocable Trust, Justin and Susan Kelly Family, LLC, The Justin and Susan Kelly Foundation, Justin Kelly, individually and as representative for the Justin Kelly Revocable Trust, and American Medical Association.

has not even demonstrated that the legal requisites for representative action under Rule 23 have been met.

The procedure described in the Proposed Notice would allow Lead Plaintiffs to literally usurp the voting power in the adjacent Cayman Islands scheme of arrangement proceedings (the "Scheme") of each Class Member who does not opt out, allowing Lead Plaintiffs to transform themselves into a "supercreditor" with the potential to unilaterally approve and implement a reorganization plan in the Cayman proceedings that can be crammed down on all Class Members, even those who opt out. Such a procedure will not only vitiate the opt out rights of class members, but deprive this Court of the ability to carry out its Rule 23 duty to review and approve any settlement as "fair, reasonable, and adequate."

Winslow has significant claims against Luckin, its underwriters, and several officers, that are far greater than those of the Lead Plaintiffs, and it seeks to preserve its due process rights to recover on those claims. Accordingly, Winslow seeks to intervene to object to the Proposed Notice. Winslow has timely moved and has a significant interest in the subject matter of this action. Its ability to protect its interests will be impaired if it is unable to object to the Proposed Notice and the sweeping and unlawful powers its purports to confer on Lead Plaintiffs. Winslow is not adequately represented by Lead Plaintiffs, who are seeking to grant themselves far-reaching powers to cast votes in a foreign reorganization through the simple device of a class notice. Rule 23 allows class representatives to "sue," but not to represent creditors for purposes of "negotiation" with a bankrupt debtor or to "vote" on behalf of class members to approve a foreign plan of reorganization. Rule 23 would only allow a class to settle its claim for a specified dollar amount, and the Court can properly address the adequacy of representation and other requirements of Rule 23 only once a proposed settlement has been reached. Indeed, Lead Plaintiffs' attempt to

usurp the Class Members' voting rights—and the apparent collusion between Lead Plaintiffs and the debtor—calls the adequacy of their representation into serious doubt.

Both the provisional Certification Order and the proposed order approving the Proposed Notice have been submitted to the Court by agreement of the Lead Plaintiffs and Luckin. These orders raise significant legal issues that are not being adequately presented to the Court by any of the parties to this action. Winslow respectfully requests that the Court grant its motion to intervene so that Winslow may protect its and the Class's interests by ensuring adequate Court review and due process.

## **BACKGROUND**

This action (the "Class Action") is a putative class action arising out of a massive and admitted securities fraud perpetrated by China-based Luckin Coffee Inc. ("Luckin"), its underwriters, and various insiders. Winslow Capital Management, LLC is the investment advisor to the Winslow Funds, whose investors include pensions, charitable funds, endowments, and foundations that suffered significant monetary damages as a result of Luckin's fraud. On June 12, 2020, the Court appointed Sjunde AP-Fonden and Lousiana Sheriffs' Pension & Relief Fund as lead plaintiffs ("Lead Plaintiffs") in the Class Action. (ECF No. 118.) The putative class (the "Class"), as defined in the Consolidated Class Action Complaint (ECF No. 150) consists of "all persons and entities that purchased or otherwise acquired the American Depository Shares ("ADSs") of Luckin Coffee Inc. ("Luckin" or the "Company") from May 17, 2019 through April 1, 2020, inclusive" (the "Class Members"). Winslow is, accordingly, a putative Class Member.

On March 2, 2021, counsel for Lead Plaintiffs filed a proposed stipulation and order with the Court, seeking entry of an order "provisionally" certifying a class "for settlement purposes" although no settlement agreement to resolve the class claims had been reached between Lead

Plaintiffs and Defendants.  Declaration of Frank T.M. Catalina ("Catalina Decl."), Ex. A.  The proposed stipulation and order was filed along with a letter from Lead Plaintiffs' counsel explaining that "a provisional liquidation proceeding concerning Luckin" was pending in the Grand Court of the Cayman Islands, and that the appointed Joint Provisional Liquidators ("JPL") in that proceeding had reached an agreement with Luckin's bondholders and now sought to resolve the claims of Luckin's securities fraud claimants.  *Id.*, Ex. B.  The JPLs are acting on behalf of the debtor Luckin to reorganize the Company.  The letter explained that counsel for Lead Plaintiffs had already been in touch with the JPL and that counsel believed "that the proposed provisional certification of the Class will enable these discussions to proceed further, and is the most effective and efficient way, for both the parties and the Court, to effect a resolution of the Class's claims against Luckin."  *Id.*  On March 3, 2021, the Court scheduled a teleconference for March 4, 2021 to discuss the requested order.  (ECF No. 236.)

On March 3, 2021, counsel for Winslow filed a letter with the Court requesting permission to be heard at the March 4, 2021 conference.  Catalina Decl., Ex. C.  The letter explained that, "[t]he five-page stipulation and proposed order contains few details of this 'provisional' certification procedure," and "[t]his short submission does not provide the Winslow Funds, who have significant claims against Luckin and other defendants, sufficient information to weigh the impact of the requested relief without further information."  *Id.*  Apparently, the March 4, 2021 conference was not transcribed as counsel for Winslow have been unable to locate a record of the proceedings.  *See* Declaration of Richard A. Bodnar ("Bodnar Decl.") ¶ 2.  At no point during the conference, however, did counsel for Lead Plaintiffs indicate they were seeking the power to obtain the voting power of each Class Member in the Cayman Scheme.  *Id.* ¶ 5.  Counsel for Winslow and for other putative Class Members raised concerns at the conference that the proposed

certification order contemplated novel procedures foreign to the typical conduct of Rule 23 securities class actions. *Id.* ¶ 3. The Court did not address the substantive merits of provisional certification at the conference, but counsel for Winslow and other putative Class Members requested the ability to submit briefing to the Court as to the propriety of certifying a class for purposes of negotiating a settlement. *See id.* ¶ 4. Despite Winslow's objections, the Court entered the proposed stipulation and order and "provisionally" certified a class (the "Certification Order"). Catalina Decl., Ex. D.

The Certification Order provisionally certified a class under Federal Rule of Civil Procedure 23(a) and 23(b)(3) consisting of "[a]ll persons and entities (and their beneficiaries) that purchased or otherwise acquired the American Depository Shares of Luckin Coffee Inc. between May 17, 2019 through July 15, 2020, inclusive." *Id.* ¶ 1 at 3. The Certification Order noted that the class was "certified provisionally for settlement purposes only with respect to Plaintiffs' claims against Luckin." *Id.*

On March 16, 2021, the United States Bankruptcy Court for the Southern District of New York held a hearing in a Chapter 15 bankruptcy case seeking recognition of the Scheme as a foreign main proceeding to determine whether the automatic bankruptcy stay should extend to non-debtor underwriters and corporate officers who have been sued in this action and in other actions brought by putative Class Members. *See* Catalina Decl., Ex. E (excerpts from transcript of hearing). Lead Plaintiffs did not object to extending the stay to these non-debtor defendants, but Winslow did object. As explained at the hearing, Winslow suffered losses of more than $100 million as a result of the fraud at issue in this case, and it has brought a currently pending suit in New York state court against Luckin, its underwriters, and several officers, including claims under the 1933 Securities Act. *See id.* at 38:13-39:2. Unlike other putative Class Members, in addition

5

to claims asserted against Luckin's underwriters arising from the registration statements issued in connection with Luckin's initial and secondary public offerings, Winslow has unique claims against Luckin's lead underwriter, Credit Suisse, for oral misrepresentations made directly to Winslow. *See id.* at 40:5-19. Importantly, at that hearing, counsel for the JPLs, who was seeking to expand the stay to include the underwriters and officers, explained, in response to a question about how the Scheme could "resolve the issue of any liability" of the underwriters and officers, that it would be possible for the non-debtor underwriters and officers to obtain in the Scheme releases of the claims being asserted against them. *See id.* at 31:15-23. The Bankruptcy Court declined to extend the stay to the underwriters and officers at that hearing. *Id.* at 63:15-20.

On May 14, 2021, Lead Plaintiffs and Luckin agreed to enter a proposed stipulation and order seeking to authorize the Lead Plaintiff to approve a plan of reorganization in the Cayman Islands. *Id.*, Ex. F. The proposed order seeks approval for a Notice of Pendency of Class Action to be sent to class members (the "Proposed Notice") and a summary notice for publication. *Id.*, Ex. G. The Proposed Notice makes clear, for the first time, Lead Plaintiffs' intention to obtain the voting power to approve a reorganization plan in the Cayman Islands Scheme. If any member of the class does not wish to confer its voting power on the class representative, according to the Proposed Notice, it must opt out. *Id.* ¶¶ 21.a, 21.b. However, since only an extremely small number of passive class members ever opt out, Lead Plaintiffs would presumably have sufficient voting power to approve the reorganization.[2] It is unknown what the terms of the reorganization plan will be, and accordingly Class Members must opt out prior to knowing the terms of either the

---

[2] Winslow disputes Lead Plaintiffs' ability to usurp each Class Member's voting power through this mechanism under Cayman Islands law. For purposes of this motion, however, Winslow addresses the voting power that Lead Plaintiffs purport to obtain through the Proposed Notice.

reorganization plan or the terms of any proposed settlement. *See id*. ¶ 4 ("There is no judgment, settlement, or monetary recovery at this time.").

The Proposed Notice states on its first page that "if you are a class member, your rights, including your rights with respect to participation and voting in a Cayman Islands scheme of arrangement, may be affected by a class action lawsuit pending in this Court." *Id.* at 1.  It further explains that "[i]f you remain a member of the Class, the [Lead Plaintiffs] and Class Counsel will have the power to cast votes on behalf of the Class in relation to the Scheme, which may be deemed to be a vote cast by you as a member of the Class." *Id.* ¶ 21.a.  By the plain terms of the Proposed Notice, however, Class Members must decide whether to opt out and retain their voting rights, or cede them through inaction. *See id.* ¶ 21.  The terms of the restructuring plan are not known or knowable.  Nor is it clear whether Lead Plaintiffs—now vested with supermajority voting power— will approve a restructuring plan that can be crammed down on objecting unsecured-creditor Class Members.  What is clear, however, is that unsecured-creditor Class Members must decide now whether to give Lead Plaintiffs their proxy without knowing the terms of the settlement their voting rights will ultimately be used to approve. *See id.* ¶ 4 ("There is no judgment, settlement, or monetary recovery at this time.).

Winslow now brings this motion to intervene for the purposes of protecting its rights and objecting to the Proposed Notice.

## ARGUMENT

### A.      Winslow Is Entitled to Intervention As of Right

Rule 24(a)(2) of the Federal Rules of Civil Procedure provides that "the [C]ourt *must* permit anyone to intervene" if that person "(1) timely file[d] an application, (2) show[ed] an interest in the action, (3) demonstrate[d] that the interest may be impaired by the disposition of the action, and (4) show[ed] that the interest is not protected adequately by the parties to the action."

Fed. R. Civ. P. 24(a) (emphasis added); *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 128-29 (2d Cir. 2001) (internal quotations omitted); *see also Sherman v. Town of Chester*, 339 F. Supp. 3d 346, 358 (S.D.N.Y. 2018).

Intervention is "liberally allowed" in the class action context "to assur[e] that the class is adequately represented," especially since "members of a class are normally bound by the judgment in the class action." *See Diduck v. Kaszycki & Sons Contractors, Inc.*, 149 F.R.D. 55, 58 (S.D.N.Y. 1993) (internal quotations omitted); *see also Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 202 (S.D.N.Y. 1992) (intervention in class actions "to ensure adequate class representation is highly desirable").[3]   Rule 24 governing intervention should also be construed harmoniously with Rule 23, which permits a court to give absentee class members the opportunity "to intervene and present claims or defenses, or otherwise to come into the action." *Diduck*, 149 F.R.D. at 58 (internal quotations omitted).   For that matter, the Supreme Court has explicitly acknowledged that class members "have a right to intervene if their interests are not adequately represented by existing parties." *See Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 594 (2013) (parenthetically quoting 5 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 16:7 (4th ed. 2002)).

### 1.    Winslow's Motion to Intervene Is Timely

Winslow's application to intervene is timely.   To determine whether a motion for intervention is filed in a timely matter, courts generally consider:   "(1) how long the applicant had notice of its interest in the action before making its motion; (2) the prejudice to the existing parties resulting from this delay; (3) the prejudice to the applicant resulting from a denial of the motion;

---

[3] *See also* Fed. R. Civ. P. 24, Advisory Committee Note (1966) ("A class member who claims that his 'representative' does not adequately represent [the class member] and is able to establish that proposition with sufficient probability, should not be put to the risk of having a judgment entered in the action which by its terms extends to [him or her], and be obliged to test the validity of the judgment as applied to his interest by a later collateral attack. Rather [the class member] should, as a general rule, be entitled to intervene in the action.").

and (4) any unusual circumstance militating in favor of or against intervention." *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 198 (2d Cir. 2000).

Winslow immediately filed this motion within two business days of learning that Lead Plaintiffs intend to use Rule 23 to essentially collect proxies and arrogate super-majority voting power in the Scheme, including the right to cast votes on Class Members' behalf.  Any delay that might be occasioned by considering objections to the proposed stipulation is not prejudicial to the existing parties at this early stage of the litigation, where no discovery has occurred.[4]  Rather, it is Winslow and the other putative Class Members that will suffer substantial prejudice if they are forced to determine whether to cede their voting power and remain in the class without proper notice of the terms of a proposed settlement or an opportunity to be heard.  *See New Jersey Carpenters Health Fund v. Residential Capital*, *LLC*, 2010 WL 5222127, at *3 (S.D.N.Y. Dec. 22, 2010) ("failure to add [Intervenors'] claims will work significant prejudice to" them).  Moreover, Lead Plaintiffs' novel and unexpected attempt to use the class action device to approve a reorganization in a foreign tribunal constitutes "unusual circumstances militating for ... a finding of timeliness."  *See In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 297 F.R.D. 90, 96 (S.D.N.Y. 2013) (internal quotations omitted).

### 2.      Winslow Has an Interest in the Subject Matter of the Action

Winslow clearly has a "direct, substantial, and legally protectable" interest relating to the property or transaction that is the subject of the action.  *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010); see also Fed.R.Civ.P. 24(a)(2).  Winslow is a putative Class Member and purchaser of Luckin ADS who suffered significant damages, and thus clearly has an

---

[4] *See Blatch v. Franco*, 1998 WL 265132 (S.D.N.Y. May 26, 1998) (intervention was timely and would not prejudice defendants; the case was still in the early stages and no discovery had been taken); *German v. Federal Home Loan Mortg. Corp.*, 899 F. Supp. 1155, 1166 (S.D.N.Y. Sept. 15, 1995) (intervention proper because the litigation was in the early stages).

interest in the claims and interests Lead Plaintiffs will bargain over in the Scheme.  *See In re Bear Stearns*, 297 F.R.D. at 97 ("[A]s a member of the certified Settlement Class, [the intervenor] has an 'interest relating to the property or transaction that is the subject of the action.'"); *Diduck*, 149 F.R.D. at 58 (holding class members who will be bound by a pending class action settlement had a sufficient interest to intervene).  Winslow's interest in this matter is greater than the Lead Plaintiffs themselves—who have not suffered damages as large as Winslow.  Winslow's substantial independent claims are clearly to be affected as the Proposed Notice itself concedes:

> **IF YOU ARE A CLASS MEMBER, YOUR RIGHTS, INCLUDING YOUR RIGHTS WITH RESPECT TO PARTICIPATION AND VOTING IN A CAYMAN ISLANDS SCHEME OF ARRANGEMENT, MAY BE AFFECTED BY A CLASS ACTION LAWSUIT PENDING IN THIS COURT.**

Catalina Decl., Ex. G at 1; *see also id.* ¶ 3 ("If you are a Class Member, your rights may be affected by this Action.").

Furthermore, the Class definitions in the Certification Order and the Proposed Notice, both of which were prepared and submitted to the Court on stipulation by Lead Plaintiffs, unambiguously include Winslow.  *See id.*, Ex. D ¶ 1 at 3 (Certification Order) (defining Class as "All persons and entities (and their beneficiaries) that purchased or otherwise acquired the American Depository Shares of Luckin Coffee Inc. between May 17, 2019 and July 15, 2015" and not excluding those who have commenced separate actions); *id.*, Ex. G ¶ 2 (same); *id.* ¶ 24 (describing mandatory procedure for opting out of class).  Winslow remains a putative Class Member with an interest in the subject matter of this action.  No opt out procedures have yet been adopted by the Court, let alone implemented, and Winslow's pursuit of an action in the New York Supreme Court does not, as a matter of law, constitute an opt out.  *See, e.g.*, *In re LIBOR-Based Fin. Instrument Antitrust Litig.*, 11 MD 2262 (NRB), 2019 WL 3006262, at *5 (S.D.N.Y. July 10, 2019) ("'most courts hold that pending parallel litigation is not sufficient to communicate an opt-

10

out request.'") (quoting 3 William B. Rubenstein, Newberg on Class Actions § 9:46 (5th ed. June 2019 update)); *see also In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 164 F.R.D. 362, 370 (S.D.N.Y. 1996) ("It is well-established that pendency of an individual action does not excuse a class member from filing a valid request for exclusion.") (internal quotation omitted), *aff'd sub nom. In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 107 F.3d 3 (2d Cir. 1996).

### 3.      Winslow's Ability to Protect Its Interests Will Be Impaired

Winslow is "so situated that disposing of the action may as a practical matter impair or impede the movant[s'] ability to protect [their] interest[s]." Fed. R. Civ. 24(a)(2).  As this Court held in *In re Bear Stearns*, 297 F.R.D. at 97, "'in the class action context, the second and third prongs of the Rule 24(a)(2) inquiry are satisfied by the very nature of Rule 23 representative litigation.'"   (quoting *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 314 (3d Cir.2005)). Winslow's rights will be impaired in the Scheme if the Court purports to grant class-wide voting power to Lead Plaintiffs on stipulation because Lead Plaintiffs will obtain outsized voting rights allowing them to potentially compromise Winslow's claims, including those against the underwriters and officers, without a meaningful opportunity to object in this Court.  Accordingly, Winslow must be allowed to intervene to protect its interests before Lead Plaintiffs are granted such sweeping authority.[5]  *See* Id. at 97; *In re Cmty. Bank of N. Virginia*, 418 F.3d at  314.

Winslow seeks to intervene, in part, to object to approval of the Proposed Notice because the Proposed Notice purports to grant new, unlawful powers to Lead Plaintiffs, which may allow them—through collusion with the debtor—to approve a Scheme that vitiates opt out rights of Class Members, such as Winslow, and undermines the Court's Rule 23 supervisory role.  *First*, the Proposed Notice's purported grant of voting power to approve a reorganization plan through the

---

[5] Upon grant of its motion to intervene, Winslow will formally move to object to the Proposed Notice and will provide more fulsome briefing as to why it should not be approved.

Scheme is unlawful and beyond the scope of Rule 23 and the Certification Order.  While the Certification Order "provisionally" certified a class "for settlement purposes," nowhere in the order were Lead Plaintiffs granted the power to vote on behalf of the unsecured-creditor Class Members in the Scheme.  *See* Catalina Decl., Ex. D.  Such a grant of powers would not be permitted by law.  Rule 23 allows a class representative, after certification, to "sue and be sued" or to settle such suits with court approval, but it makes no provision for allowing a class representative to cast votes on behalf of class members in foreign reorganization proceedings.  *See generally*, Fed. R. Civ. P. 23; *see also In re National Prescription Opiate Litig.*, 976 F.3d 664, 672-74 (6th Cir. 2020) (reversing certification of a "negotiation class" because it is not provided for in Rule 23 and explaining that "a new form of class, wholly untethered from Rule 23, may not be employed by a court.").  Nonetheless, the Proposed Notice purports to arrogate any voting rights Class Members have in the Scheme to Lead Plaintiffs, despite the lack of any legal authority for such power.  *See* Catalina Decl., Ex. G ¶ 21.a ("If you remain a member of the Class, the Class Representatives and Class Counsel will have the power to cast votes on behalf of the Class in relation to the Scheme, which may be deemed a vote cast by you as a member of the Class.").  Thus, Class Members will essentially give Lead Plaintiff countless proxies to rubber stamp whatever potentially collusive arrangement Lead Plaintiffs and Luckin come up with in the Scheme *sight unseen*.

*Second*, this backdoor transfer of voting power will damage Winslow and other Class Members by creating a "supercreditor" with the power to dominate the Scheme and force a binding resolution—and perhaps even a cram down—without this Court's oversight.  Given the small volume of opt outs in class actions in general, the Proposed Notice is likely to result in a transfer to Lead Plaintiff of the vast majority of the Class Members' voting power in the Scheme and the ability to use it as a "super-proxy" with no effective oversight.  It is also an attempt to end-run

Section 86 of the Cayman Islands' Companies Law.  That law allows for a compromise or arrangement in a scheme of arrangement to bind all members of a class of creditors only based upon actual vote in person or by proxy.  Specifically, the law allows cram down only where "a majority in number representing seventy-five percent in value of the creditors or class of creditors … present and voting either in person or by proxy at the meeting" vote to agree to such compromise or arrangement.  Cayman Islands Companies Law § 86(2) (2021).

Because Lead Plaintiffs are seeking to arrogate to themselves such outsized voting power in the Proposed Notice, any meaningful objection rights for Class Members and oversight by the Court will be vitiated.  Lead Plaintiffs will be able to vote proxies improperly obtained via Rule 23 "provisional certification" to essentially approve a restructuring agreement that will bind all Class Members in whatever settlement they negotiate.  *See* Catalina Decl., Ex. G ¶ 21.b (explaining that, even if class member opts out, "where the Settlement is effected by a Scheme passed in accordance with section 86 of the Cayman Islands' Companies Act, [it] may be binding on all members of the Class irrespective of whether they choose to be excluded from the Class or not.").  Lead Plaintiffs' attempt to collusively ram a settlement through in the Scheme will also deprive this Court of the ability to perform its duty, under Rule 23(e)(2) to review any proposed settlement to determine if it is "fair, reasonable, and adequate…."   Class members will have no meaningful opportunity to object, and the Court will be unable to "undo" the reorganization approved, and carried out, by the Cayman Court.

Critically, Winslow and other Class Members who wish to opt out and pursue claims against solvent entities and individuals, such as the underwriters and officers, may have their claims extinguished in the Scheme by the agreement of Lead Plaintiffs.  In fact, there is reason to believe that Lead Plaintiffs and the JPLs may be negotiating a settlement in the Scheme that would

extinguish Winslow's and the Class Members' claims against the underwriters and officers, without their consent, by seeking third-party releases in favor of those entities and individuals. Counsel for the JPLs at the March 16, 2021 bankruptcy hearing, expressly noted the ability of the Cayman Islands court administering the Scheme to grant such releases.  In answering the Court's question as to how the Scheme could resolve the liability of the underwriters and officers, counsel for the JPLs answered, "I understand that it's possible in schemes to include either additional consideration from [the underwriters and officers] or based on resolution with the foreign debtor, releases to be provided so that those indemnification obligations don't ultimately shift back to the debtor after the scheme."  Catalina Decl., Ex. E at 31:15-23.  This would leave Winslow, and other Class Members, holding the bag if, after opting out (before the terms of a settlement are known), Lead Plaintiffs release Winslow's claims against third-parties and exercise the voting power of the entire class to approve those non-consentual releases.

Winslow's ability to protect its interests will be significantly impaired if the Court approves the Proposed Notice and allows Lead Plaintiffs to exercise the voting power of each individual Class Member.  Approval would also deprive the Court of a meaningful opportunity to exercise its duties under Rule 23 to ensure any settlement is "fair, reasonable, and equitable . . . ."  *See* Fed. R. Civ. P. 23(e)(2).  The Court should allow Winslow to intervene so that it may fully consider these issues raised by the Proposed Notice.

### 4. Winslow's Interests Are Not Adequately Represented by Lead Plaintiffs

Winslow's interests are not being adequately represented by Lead Plaintiffs.  Indeed, Lead Plaintiffs are attempting to undermine Winslow's ability to maximize its recovery and eliminate Winslow's ability to pursue claims against third-parties if it chooses to opt out.  Once Lead Plaintiff has obtained "super-creditor" status and wields a "class proxy" it will apparently seek to approve a reorganization that "crams down" an agreement on an unwilling Winslow, including, potentially,

14

an agreement that releases Winslow's claims not only against Luckin, but also against the non-debtor underwriters and officers.  This makes Winslow—and any other member of the class who might wish to opt out—a captive to Lead Plaintiffs and the JPLs.

The intervenor's burden of demonstrating inadequacy of "representation is generally speaking 'minimal[.]'"  *See Republic of the Philippines v. Abaya*, 312 F.R.D. 119, 124 (S.D.N.Y. 2015) (quoting *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir.2001)).[6]  If there is reason to doubt that class representatives are fairly representing the interests of the class, other class members may be allowed to intervene. *Cmty. Bank of Northern Virginia*, 418 F.3d at 315; *Brennan*, 260 F.3d at 133.  Concerns about inadequate representation are also heightened when as here, the class action settlement is proposed *before* a litigation class is certified. As the Court observed in *Turkmen v. Ashcroft*, "[P]laintiffs' counsel did not actually represent the proposed intervenors or other absent class members, and certainly was not acting on their behalf, when they negotiated the settlement of the [class] claims."  No. 02-2307, 2010 WL 3398965 at *3 (E.D.N.Y. June 30, 2010).

---

[6] Although a presumption of adequate representation arises when there is an identity of interest between the putative intervenor and one of the existing parties (*see Butler,* 250 F.3d at 179),  the interests of Winslow and Lead Plaintiffs are not aligned.  Lead Plaintiffs seek to usurp the voting rights of the Class Members in the Scheme, while Winslow seeks to preserve those rights for itself and for the Class Members.  In addition, as described above, the statements of the JPL's attorneys suggest Lead Plaintiffs and the JPLs are contemplating approval of a reorganization plan that would release Winslow's claims against the underwriters and officers, including claims against Credit Suisse that are unique to Winslow, without Winslow's consent.  *See* § A.3, *supra.*  This not only demonstrates that Lead Plaintiffs' interests are not aligned with Winslow's, but that any presumption of adequate representation is rebutted by Lead Plaintiffs' adversity of interest and apparent collusion with the JPLs to release Winslow's claims.  *See id.* at 180 ("evidence of collusion, adversity of interest, nonfeasance, or incompetence may suffice to overcome the presumption of adequacy.")

Such concerns plainly arise in the current litigation. Lead Plaintiffs' effort to seize the absent Class Members' voting power and approve a reorganization in the Scheme proceedings, while depriving Class Members of a meaningful opt-out right, is antithetical to the interests of Winslow and other class members. Although the Certification Order did not grant Lead Plaintiffs the voting rights they now seek through the Proposed Notice, the Certification Order goes beyond the bounds permitted by Rule 23 by certifying a "negotiation class" that now seeks power to vote in favor of a yet-undetermined reorganization plan that will bind all Class Members and deprive them of the ability to opt out. Winslow's interests are not adequately protected by Lead Plaintiffs because, among other things, Rule 23 does not allow Lead Plaintiffs to "vote harvest" and enter a foreign reorganization as representatives of a "negotiating class."

Aside from the fact that Lead Plaintiffs appear poised to bargain away Winslow's third-party claims without Winslow's consent, the Court is unable to determine that Lead Plaintiffs adequately represent Winslow's interests at this point in the action as a matter of law. Rule 23 does not authorize class certification "for negotiation or anything along those lines" and, under Rule 23(e), "certification of a class for settlement purposes may occur only *after a settlement has been proposed*." *In re Nat'l Prescription Opiate Litig.*, 976 F.3d at 673 (emphasis added). Indeed, in *In re Nat'l Prescription Opiate Litig.*, the Sixth Circuit explicitly rejected the exact kind of "negotiation class" Lead Plaintiffs successfully certified by stipulation here as "simply [] not authorized by the structure, framework, or language of Rule 23." 976 F.3d at 676. As that Court explained:

> before approving a proposed settlement, the court must determine that "class representative and class counsel *have* adequately represented the class," that "the proposal *was* negotiated at arm's length," and "the relief *provided* for the class is adequate." Fed. R. Civ. P. 23(e)(2) (emphasis added). *None of these determinations can be made in the case of a negotiation class because there is no*

> proposal to consider at the time the negotiation class is presented to
> the court for approval.

*Id.* at 673 (emphasis added).   Thus, because The Court "provisionally certified" the Class in the absence of a proposed settlement, the Court *is unable to make a determination* that Lead Plaintiffs are adequately representing Winslow at this point in the action.

Nonetheless, Lead Plaintiffs, because of the Certification Order and Proposed Notice, now stand on the verge of seizing the entire Class's voting power and using it to approve a yet unknown plan of reorganization in the Scheme, essentially binding even those Class Members who would opt out.   Such a result violates the due process rights of Class Members and stretches class representation beyond the limits of Rule 23.   Winslow must be allowed to intervene as of right to properly raise this issue with the Court so that the Court is ultimately able to exercise its duty in supervising the class, ensuring due process, and making sure that the class was adequately represented (and protected) and that any settlement is "fair, reasonable, and adequate."   *See In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 239 (2d Cir. 2012).   These requirements are indispensable, as the Supreme Court recognized in the landmark decision of *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 618, 620 (1997) (noting that "the 'settlement only' class has become a stock device" in modern class action litigation and stressing that "other specifications of [Rule 23]—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention).   *See also In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d at 239 ("other inquiries [in a settlement class] assume heightened importance and heightened scrutiny because of the danger of conflicts of interest, collusion, and unfair allocation.") (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 335 (3d Cir. 2011) (Scirica, J., concurring))).

Winslow's interests are not being adequately represented by the Lead Plaintiffs, who are seeking to unlawfully use the voting power of the Class Members to release Winslow's claims. Because the Certification Order does not pertain to an actual settlement, the Court has not yet been able to assess the adequacy of Lead Plaintiffs' representation of the Class. The Court should allow Winslow to intervene for the purpose of objecting to the Proposed Notice and otherwise protecting its rights.

**B.      In the Alternative, Winslow Is Entitled To Permissive Intervention**

While Winslow vigorously maintains that it has a right to intervene in this action, should this Court not grant Winslow the right to intervene under 24(a), Winslow is entitled to permissive intervention under Rule 24(b). This rule provides that "[o]n timely motion, the court may permit anyone to intervene who ... has a claim or defense that shares with the main action a common question of law or fact."

Permissive intervention is accorded "broad" discretion of the Court, and "is to be liberally granted." *Miller v. Silbermann*, 832 F. Supp. 663, 673 (S.D.N.Y. 1993). Moreover, Rule 24(b)(2) merely requires a single common question of law or fact, not an identity of facts. *Id.* In determining whether to grant permissive intervention, courts consider factors that include:

> the nature and extent of the intervenors' interests, the degree to which those interests are adequately represented by other parties, and whether parties seeking intervention will significantly contribute to the full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*Chen-Oster v. Goldman, Sachs & Co.*, 2015 WL 4619663, at *5 (S.D.N.Y. Aug. 3, 2015), *aff'd*, 2016 WL 11645644 (S.D.N.Y. June 6, 2016) (internal quotations omitted); *see also Eckert v. Equitable Life Assurance Soc'y of U.S.*, 227 F.R.D. 60, 64 (E.D.N.Y. 2005) (holding permissive intervention is allowed in a class action when "no additional issues are presented to the case, when

18

the intervenor's claims are 'virtually identical' to class claims, and when intervention would strengthen the adequacy of class representation.") (quoting Herbert Newberg & Alba Conte, Newberg on Class Actions § 16:8 (4th ed.)).

Winslow's claims against Luckin share common issues of fact and law with those of the Class Action, and a significant portion of its claims arise from the same allegedly fraudulent statements at issue in the Class Action.  By intervening, Winslow provides additional protection to the class, ensuring that this Court makes an informed decision as to the transfer of their voting rights in the Scheme.  *See Delaware Tr. Co. v. Wilmington Tr., N.A.*, 534 B.R. 500, 510 (S.D.N.Y. 2015) (holding that while the Court cannot assess whether intervenor's interests will be adequately represented by Wilmington Trust, it is clear from the "submissions that its participation will helpfully contribute to the Court's understanding and just resolution of the issues in play" due to interest in portion of the proceeds at issue).  No party in the case has raised the serious and foundational issues Winslow seeks to raise upon intervention.  Indeed, both the Certification Order, and the order seeking approval of the Proposed Notice, which will work in tandem to extinguish the Class Members' rights as creditors in the Scheme, were presented to the Court on stipulation of Lead Plaintiffs and Luckin.

Moreover, as discussed above, this Motion is timely and will not result in any prejudice or undue delay. Winslow seeks to intervene to ensure that the Class Action complies with Rule 23, and these concerns should not be set aside merely for expedience.  *See, e.g., Cohen v. Republic of the Philippines*, 146 F.R.D. 90, 92 (S.D.N.Y. 1993) (where settlement would defeat proposed intervenor's interest, court would not deny motion to intervene "simply to allow the speedy but possibly unjust disposition" of the actions); *Buchet v. ITT Consumer Fin. Corp.*, 845 F. Supp. 684,

689 (D. Minn. 1994) ("the fact that additional parties may make future negotiations more difficult is insufficient to prevent them from joining the action").

## **CONCLUSION**

For the reasons set forth above, Winslow respectfully requests that the Court grant its motion to intervene.

Dated: May 18, 2021          **ROLNICK KRAMER SADIGHI LLP**
New York, New York

By: _/s/ Frank T.M. Catalina_
Lawrence M. Rolnick
Frank T.M. Catalina
1251 Avenue of the Americas
New York, New York 10020
Tel. 212.597.2800
lrolnick@rksllp.com
fcatalina@rksllp.com
_Attorneys for the Winslow Funds_