**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
        :
        :
        :
        :
        :
IN RE LUCKIN COFFEE INC. SECURITIES  :
LITIGATION             :   Case No. 1:20-cv-01293-JPC-JLC
        :
        :
        :
        :
        :
------------------------------------------------------------x

**REPLY IN SUPPORT OF DEFENDANT THOMAS P. MEIER'S MEMORANDUM OF**
**LAW IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

<u>Page</u>

I. PRELIMINARY STATEMENT ........................................................................................ 1

II. ARGUMENT ................................................................................................................... 1

      A.      PLAINTIFFS FAIL TO ESTABLISH PERSONAL JURISDICTION ................. 2

      B.      PLAINTIFFS FAIL TO STATE A CONTROL PERSON LIABILITY
            CLAIM ............................................................................................................... 7

            1.      MR. MEIER'S SIGNATURES DO NOT ESTABLISH
                   CONTROL ............................................................................................ 7

            2.      PLAINTIFFS' FAILURE TO PLEAD CULPABILITY IS FATAL
                   TO A CONTROL PERSON CLAIM ....................................................... 9

III. CONCLUSION ............................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Alstom SA Sec. Litig.*,
406 F. Supp. 2d 346 (S.D.N.Y. 2005)..............................................................................2, 3, 5

*In re AstraZeneca Sec. Litig.*,
559 F. Supp. 2d 453 (S.D.N.Y. 2008).......................................................................................5

*In re CINAR*,
186 F. Supp. 2d 279 (E.D.N.Y. 2002) ..................................................................................3, 8

*Das v. Rio Tinto PLC*,
332 F. Supp. 3d 786 (S.D.N.Y. 2018)...................................................................................2, 5

*Jacobs v. Coopers & Lybrand, L.L.P.*,
1999 WL 101772 (S.D.N.Y. Mar. 1, 1999) ..........................................................................7, 8

*Leasco Data Processing Equip. Corp. v. Maxwell*,
468 F.2d 1326 (2d Cir. 1972)...................................................................................................6

*In re Lehman Bros. Mortg.-Backed Sec. Litig.*,
650 F.3d 167 (2d Cir. 2011).....................................................................................................9

*Rex & Roberta Ling Living Tr. u/a Dec. 6, 1990 v. B Commc'ns Ltd.*,
2019 WL 1407453 (S.D.N.Y. Mar. 28, 2019) ..........................................................................2

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
351 F. Supp. 2d 334 (D. Md. 2004) ......................................................................................4, 5

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
380 F. Supp. 2d 509 (D.N.J. 2005) .......................................................................................3, 4

*In re Veon Ltd. Sec. Litig.*,
2018 WL 4168958 (S.D.N.Y. Aug. 30, 2018)........................................................................2, 6

*Wilson v. Great Am. Indus., Inc.*,
855 F.2d 987 (2d Cir. 1988)......................................................................................................9

**Statutes**

15 U.S.C. §77f(a) ............................................................................................................................7

**Regulations**

17 C.F.R. §240.12b-11.....................................................................................................................7

Defendant Thomas P. Meier respectfully submits this Reply Memorandum of Law in support of his Motion to Dismiss the Consolidated Class Action Complaint ("Complaint" or "Compl.") filed by lead plaintiffs Sjunde AP-Fonden ("AP7") and Louisiana Sheriffs' Pension & Relief Fund ("Louisiana Sheriffs," together with AP7, "Plaintiffs") pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. Mr. Meier additionally incorporates Argument sections I, III, and IV of the Reply Memorandum of Law in Support of Underwriter Defendants' Motion to Dismiss (ECF 253).

## I. PRELIMINARY STATEMENT

The survival of the claims against Mr. Meier boils down to whether merely signing the SEC filing of a Chinese company, which does no business and maintains no physical presence in the United States, and serving briefly on its Audit Committee (based in China) suffice to (1) subject a Swiss citizen to personal jurisdiction in the United States and (2) render him a "control person" under Section 15 of the Securities Act. They do not. The mechanical tests for jurisdiction and control that Plaintiffs urge find no basis in controlling authority. This Court should reject such a test in favor of analyzing the specific contents of the Complaint in this case—which in 263 pages pleads no allegations that Mr. Meier ever visited the United States, did any business for Luckin Coffee Inc. ("Luckin" or the "Company") in the United States, had managerial authority at Luckin, had any financial interest in the alleged fraud, had any reason to suspect that U.S. investors would be deceived, or played any role in deceiving investors here or elsewhere. These uniquely bare allegations compel the conclusion that Mr. Meier is neither subject to personal jurisdiction nor a control person and, thus, should be dismissed.

## II. ARGUMENT

Mr. Meier adopts by reference Argument Sections I, III, and IV of the Reply Memorandum of Law in Support of Underwriter Defendants' Motion to Dismiss the Consolidated Class Action

1

Complaint (ECF 253), which address Plaintiffs' lack of standing and certain failures to plead misstatements.[1] Mr. Meier's additional arguments are set forth below.

### A.    PLAINTIFFS FAIL TO ESTABLISH PERSONAL JURISDICTION

In their Opposition, Plaintiffs argue that Mr. Meier's consent to references to his name on Luckin's IPO Registration Statement, signed before he joined the Company in any capacity, and his signature on Luckin's SPO Registration Statement suffice to subject him to personal jurisdiction in the United States. *See* Lead Pls.' Mem. of Law in Opp'n to Def. Meier's Mot. to Dismiss, D.E. 256 ("Opposition" or "Opp.") at 5. Plaintiffs brush off any further consideration of the context of their claims—including Mr. Meier's lack of involvement in Luckin's operations and lack of control over its statements—as "irrelevant factual distinctions." *Id.* at 6-7. But Plaintiffs cite no binding authority for such a mechanical signature rule.

To be sure, they cite several of the same cases Mr. Meier examined in his opening brief. Opp. at 5-8. As Mr. Meier explained, the allegations against the foreign officers and directors in those cases were far more substantial than those asserted here. *See* Mot. to Dismiss at 6-7. In each of those cases, the individual defendants were either senior executives of their companies or directly involved in orchestrating the allegedly fraudulent scheme. *See Rex & Roberta Ling Living Tr. u/a Dec. 6, 1990 v. B Commc'ns Ltd.*, 2019 WL 1407453, at *4 (S.D.N.Y. Mar. 28, 2019) (considering allegations against CEO and CFO); *Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 801 (S.D.N.Y. 2018) (considering allegations against CEO); *In re Veon Ltd. Sec. Litig.*, 2018 WL 4168958, at *6 (S.D.N.Y. Aug. 30, 2018) (considering allegations against "high-level official[s]"); *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 346, 363 (S.D.N.Y. 2005) (considering allegations

---

[1] In his opening brief, Mr. Meier incorporated portions of the Memorandum Of Law In Support Of Luckin Coffee Inc.'s Motion To Dismiss (ECF 211) addressing these arguments, which were further addressed in the Reply Memorandum of Law in Support of Underwriter Defendants' Motion to Dismiss the Consolidated Class Action Complaint (ECF 253) after the claims against Luckin were stayed.

against directors and officers who each knowingly and with motive disseminated false and misleading information). *In re CINAR Corp. Securities Litigation*, is similarly distinguishable, as the claims in that case were brought against the Vice President/General Counsel of the defendant company, and the court noted that "as General Counsel, [the defendant] must have known that the Statement was made to comply with the laws governing securities offerings in American markets and, as such, it would be used and relied upon by American investors." 186 F. Supp. 2d 279, 306 (E.D.N.Y. 2002). Moreover, in many of the cases Plaintiffs cite, the companies at issue had operations *in the United States*, further establishing a connection between the individual defendants and the forum state. *See id.* at 284; *In re Alstom*, 406 F. Supp. 2d at 353. These facts cannot be swept aside as "irrelevant factual distinctions," Opp. at 6-7; they relate directly to the defendants' contacts with the United States. And because Plaintiffs do not allege that Mr. Meier held an executive role, participated in fraud, or even served on the board of a company that operated in the United States, the trial-court cases Plaintiffs' cite simply are not analogous to this case.

Plaintiffs also cite two cases that Mr. Meier did not previously address. First, Plaintiffs cite *In re Royal Dutch/Shell Transport Securities Litigation*, 380 F. Supp. 2d 509 (D.N.J. 2005), Opp. at 5 n.2, but that case is similarly distinguishable. The defendant was the former chairman and held relevant executive positions, including "head of various exploration and production functions." *In re Royal Dutch,* 380 F. Supp. 2d at 518. Moreover, the court considered allegations beyond the defendant's signatures in concluding that the defendant was subject to personal jurisdiction. *Id*. at 518, 551. Indeed, after noting the defendant signed "many" SEC filings, the court explained that the defendant "was in attendance and made presentations at several U.S. conferences, and through these meetings assisted in the dissemination of the material

misrepresentations." *Id*. at 551.  Based on these allegations, which have no analogue here, the court concluded "[i]t is evident that the required nexus between this Defendant's contacts and the Plaintiffs' injuries exists, because the claims are directly related to the United States activity." *Id*. at 551.

Second, Plaintiffs cite *In re Royal Ahold N.V. Securities & ERISA Litigation*, 351 F. Supp. 2d 334, 348 (D. Md. 2004).  Opp. at 5 n.2.  But that court's analysis of personal jurisdiction is more complex than Plaintiffs suggest.  The court considered allegations of personal jurisdiction as to *six* foreign individual defendants, finding prima facie cases of personal jurisdiction against the company's CEO, Executive Vice President/CFO, and Chairman of its Supervisory Board, but *dismissing* for lack of personal jurisdiction the three foreign individuals who were members of the company's Supervisory or Executive Boards, even though each individual was alleged to be a "'direct and substantial participant in the fraud.'"  *Id*. at 343, 354-55.  Although it is true that the three senior executives signed SEC filings and the others did not, Plaintiffs' contention that this case stands for a rote rule that signatures alone establish minimum contacts ignores the totality of the circumstances that informed the court's ruling.

Indeed, in dismissing allegations against one of the Supervisory Board members, the court in *Royal Ahold* relied on several circumstances that equally support the dismissal of Mr. Meier here.  For example, the court squarely rejected the plaintiff's "attempts to establish minimum contacts by relying on conclusory allegations and [the defendant's] status on [a board]."  351 F. Supp. 3d at 354.  "While the complaint states that [the defendant] was a 'direct and substantial participant in the fraud,'" the court explained, "it does not offer any specific factual allegations to support this claim . . . ."  *Id*.  The court also emphasized that the plaintiffs "fail to note a single specific act taken by [the defendant] directed at the U.S."  *Id*.  The same is true here.  And in some

4

significant respects *Royal Ahold* was a closer case than this one, as the foreign company at issue there also was charged for conduct stemming from a *U.S. arm* of operations. *Id*. at 353. Here, there is no allegation that Luckin operated in the United States.

Plaintiffs' authorities also belie their contention that Mr. Meier availed himself of this jurisdiction simply by serving on Luckin's Board or Audit Committee abroad. Opp. at 7-8. As those cases show, board members, employees, and executives of issuers of securities often lack minimum contacts with the United States. *See, e.g., In re Alstom*, 406 F. Supp. 2d at 399 (membership on a board of directors of U.S. issuer of securities "is too tenuous a connection to plausibly claim that this status alone directly and foreseeably gave rise" to the alleged "effects" in this forum.); *In re Royal Ahold*, 351 F. Supp. 2d at 354-55 (dismissing three Board members of U.S. issuer of securities for lack of personal jurisdiction); *Das*, 332 F. Supp. 3d at 801-02 (dismissing chief executive of division of foreign issuer of U.S. securities for lack of personal jurisdiction, despite noting that defendant had made statement in Form 6-K, developed a division of the company, and drafted the company's code of conduct, because such allegations "[were] merely conclusory statements applicable to all individual defendants as a result of their positions within the [c]ompany.") (quoting *In re AstraZeneca Sec. Litig*., 559 F. Supp. 2d 453, 467 (S.D.N.Y. 2008)).

Plaintiffs attempt to marginalize *In re AstraZeneca Securities Litigation* by pointing out that the court held both that it lacked personal jurisdiction and that the plaintiffs failed to state a claim under the Exchange Act. Opp. at 6. But the plaintiff's failure to plead a securities fraud claim in no way diminishes the relevance of the court's reasoning that the defendant's signature on an SEC filing, "undoubtedly [made] in a foreign country, [was] insufficient for personal jurisdiction." 559 F. Supp. 2d at 467. Nor does it meaningfully distinguish this case. Plaintiffs

here have not stated a claim against Mr. Meier under the Exchange Act either; they have not even tried.  Compl. ¶ 40.  Instead, their claims against Mr. Meier rely "solely on negligence," Opp. at 2, and they do not claim that Mr. Meier took any deliberate action to affect investors in the United States or elsewhere.

Plaintiffs vaguely imply that personal jurisdiction is warranted because of Mr. Meier's proximity to "one of the most audacious frauds in recent memory."  Opp. at 1; *see also id.* at 7. But as the Opposition concedes, Plaintiffs do not allege that Mr. Meier was aware of or culpable in this "audacious" fraud in the least.  *Id.* at 1.  Plaintiffs cannot disclaim any allegations of fraud to avoid the burden to plead particularized allegations of fact on the one hand, and claim that fraud warrants personal jurisdiction on the other.

At the end of the day, the question is whether "the defendant purposefully availed [himself] of the privilege of doing business in the forum and could foresee being haled into court there." *In re Veon,* 2018 WL 4168958, at *5 (quotation marks omitted); *see also Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1341 (2d Cir. 1972) ("The person sought to be charged must know, or have good reason to know, that his conduct will have effects in the state seeking to assert jurisdiction over him.").  For the reasons set forth in Mr. Meier's opening brief, the answer is no.  *See* Mot. to Dismiss at 4-8.  Plaintiffs fail to plead that Mr. Meier held any managerial position at Luckin; knew of any false or misleading information; was a culpable participant in any alleged wrongdoing; played a role in drafting any of Luckin's statements; owned any Luckin securities; or traveled to or had communication with any individuals in the United States.  Nor do they plead that Luckin itself had any operations in the United States.  The Complaint simply does not plead that Mr. Meier purposefully availed himself of this forum.

6

The Opposition resorts to formulaic reliance on Mr. Meier's title and signatures because Plaintiffs can plead nothing more. They seek a rule that would subject *any* foreign director of a foreign company to jurisdiction in the United States no matter how tenuous his or her connection is to this forum or the claims.[2] This Court should reject such a blanket rule in favor of an individualized assessment of Mr. Meier's alleged contacts, and based on that assessment, it should dismiss the claims against him.

### B.    PLAINTIFFS FAIL TO STATE A CONTROL PERSON LIABILITY CLAIM

#### 1.    MR. MEIER'S SIGNATURES DO NOT ESTABLISH CONTROL

The Opposition all but abandons the Section 15(a) claim against Mr. Meier concerning the IPO Registration Statement. In his opening brief, Mr. Meier explained that his letter consenting to references to his name in the IPO Registration Statement cannot conceivably show control over Luckin because he signed that letter *before* joining the Board of Directors. *See* Mot. to Dismiss at 11. It makes no sense to argue that Mr. Meier controlled Luckin before he held any role with the Company. The Opposition offers no response. Thus, at the very least, the Section 15(a) claims concerning the IPO Registration Statement should be dismissed.

The Section 15(a) claim concerning the SPO Registration Statement also is deficient. Again, Plaintiffs rely almost entirely on Mr. Meier's signature and position. For largely the same reasons those allegations fail to plead personal jurisdiction, they also fail to plead control. *See* Mot. to Dismiss at 11-12. Mr. Meier has acknowledged that some cases have considered signatures on

---

[2] That Mr. Meier's name appears on two registration statements does not set this case apart. The Securities Act requires that registration statements be signed by a "majority of [the] board of directors" of a corporation issuing covered securities. 15 U.S.C. § 77f(a). Directors, thus, routinely sign registration statements, as well as other SEC filings. *See also, e.g.*, 17 C.F.R. § 240.12b-11.

SEC filings as indicative of control. *Id*. As the Opposition confirms, however, there is no binding precedent holding that such signatures are dispositive of control. *See* Opp. at 8-11.

Of course, other cases have rejected the claim that signing an SEC filing establishes control under Section 15(a). The Opposition fails to persuasively distinguish *Jacobs v. Coopers & Lybrand, L.L.P.*, 1999 WL 101772 (S.D.N.Y. Mar. 1, 1999), which dismissed a very similar claim of control. Plaintiffs do not dispute that Mr. Meier joined Luckin's board *after* the fraud began, just like the director who was dismissed from the *Jacobs* case. Opp. at 9-10. Instead, they stress their claim that the same fraud continued after Mr. Meier joined. *Id*. at 10. This is hardly a meaningful distinction, given that they disclaim any allegation that Mr. Meier ever knew about the fraud; in fact, they allege the individuals who orchestrated the fraud before Mr. Meier's arrival went to great lengths to conceal it. Compl. ¶¶ 384-88 (alleging that "[e]ven among those working in Luckin's corporate offices. . . all financial data was strictly firewalled and there was a separate, siloed unit that deals specifically with revenue and income that was only accessible to a few select high-level executives"). Thus, here, as in *Jacobs*, "it is not logical to presume that, as a signatory of the form, [Mr. Meier] was a person able to exert control over those who wrote the material misstatements the form contained." *Jacobs*, 1999 WL 101772 at *18.[3]

Finally, Plaintiffs' authorities undermine their claim that Mr. Meier's brief Audit Committee membership is dispositive of control. *See* Opp. at 11 (citing *In re CINAR*, 186 F. Supp. 2d at 309 (observing that it is "well accepted" that such allegations are insufficient to plead control)).

---

[3] Confronted with their admission that Mr. Meier resigned when the fraud came to light, Mot. to Dismiss at 12, Plaintiffs say "it is not clear why Meier's subsequent resignation should have any impact on his ability to exert control over Luckin during his tenure on Luckin's Board." Opp. at 10. But Plaintiffs argue that his resignation supports the inference that *other defendants* acted deceptively. Compl. ¶ 391 (alleging that the resignation of Mr. Meier and others "further supports an inference of the Exchange Act Defendants' scienter."). If Mr. Meier's resignation supports this inference, it stands to reason that he had no meaningful control over them or the Company they managed.

In sum, Plaintiffs' Section 15(a) claims should be dismissed for failure to adequately plead control.

### 2.    PLAINTIFFS' FAILURE TO PLEAD CULPABILITY IS FATAL TO A CONTROL PERSON CLAIM

Mr. Meier's opening brief explained that Section 15(a) of the Securities Act should be construed to require proof of culpable participation.  *See* Mot. to Dismiss at 13-14.  In response, the Opposition relies extensively on non-binding decisions and ignores that the Second Circuit has expressly left open whether "culpable participation" is an essential element of a Section 15(a) claim.  *In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 186 (2d Cir. 2011) ("We need not decide here whether 'culpable participation' is a necessary element for § 15 liability because plaintiffs' § 15 claims fail in any event for inadequate pleading of the undisputed element of control.").  Plaintiffs' principal argument that culpable participation is not required is that scienter is not a required element of a Section 11 claim, a predicate claim that can give rise to control-person liability.  Opp. at 11-12.  But Plaintiffs fail to explain why the standards for liability should not be more demanding for secondary actors than primary violators.  Moreover, Plaintiffs acknowledge, as they must, that culpable participation *is* an essential element of a control-person-liability claim under Section 20(a), the analogous provision of the Exchange Act.  *Id*. at 12.  They attempt to explain this requirement away by observing that at least one predicate violation of the Exchange Act—namely, securities fraud under Section 10(b)—requires proof of scienter.  *Id*.  But Plaintiffs ignore that other predicate violations do not.  For instance, Section 14(a) claims for false proxy statements are predicate violations that can rest on mere negligence and require no proof of scienter.  *See Wilson v. Great Am. Indus., Inc.*, 855 F.2d 987, 995 (2d Cir. 1988).  Plaintiffs have no response to the fact that culpable participation must be proven for Section 20(a) claims even though it need not be proven for all the predicate violations that support those claims.  *Compare*

Mot. to Dismiss at 13-14 *to* Opp. at 11-13.  These legal standards refute Plaintiffs' contention that they are excused from proving culpability for a control-person claim unless culpability also is an element of the predicate claim.

Finally, Plaintiffs retreat to contending that "even if the Court were to impose a requirement that Lead Plaintiffs plead Meier's culpability, the [Complaint] adequately does so."  Opp. at 13. This unsupported contention cannot be reconciled with Plaintiffs' repeated admission that their claims against Mr. Meier are based "solely on negligence." *Id.* at 2, 10.  The Complaint admittedly fails to allege culpability.

### III. CONCLUSION

For the above reasons, Mr. Meier respectfully requests that the Court dismiss the claims against him with prejudice for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), or, in the alternative, or for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

Dated: June 4, 2021

By: _____

Jason J. Mendro, SBN 5423710

GIBSON, DUNN & CRUTCHER LLP

1050 Connecticut Avenue, N.W.
Washington, DC  20036-5306
Telephone:  202.887.3726
Facsimile:  202.530.9626

*Attorney for Defendant Thomas P. Meier*

10