# EXHIBIT C

Case 1:20-cv-01293-JPC    Document 286-3    Filed 06/07/21    Page 2 of 72

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION

|  |  |  |
|---|---|---|
| ———————————————————— X | | |
| In re LUCKIN COFFEE INC. SECURITIES LITIGATION | : | Index No. 651939/2020 |
| | : | |
| ———————————————————— | : | The Honorable O. Peter Sherwood, J.S.C. |
| | : | Part 54 |
| This Document Relates To: | : | |
| | : | <u>CLASS ACTION</u> |
| THE CONSOLIDATED ACTION. | : | |
| | : | **CONSOLIDATED COMPLAINT** |
| | : | |
| ———————————————————— X | | |

# TABLE OF CONTENTS

**Page**

NATURE OF THE ACTION ....................................................................................1

JURISDICTION AND VENUE ..............................................................................8

PARTIES ................................................................................................................9

SUBSTANTIVE ALLEGATIONS .......................................................................18

    Luckin's Business Model.............................................................................18

    Defendants Raise Over $645 Million in Luckin's U.S. IPO............................19

    Luckin's Purported Growth Rate Accelerates Following the IPO....................20

    Defendants Sell $1.1 Billion Worth of Luckin Securities in Follow-On Securities Offerings ...................................................................................23

    Events Following the SPO and Note Offering................................................25

    Materially False and Misleading Statements and Omissions in the IPO Registration Statement...............................................................................34

    a)    Misstatements and Omissions Regarding Luckin's Profitability and Revenue Growth ...............................................................................34

    b)    Misstatements and Omissions Regarding Legal and Regulatory Compliance ..................................................................................39

    c)    Misstatements and Omissions Regarding Luckin's Compliance with GAAP.......................................................................................40

    d)    Misstatements and Omissions Regarding Luckin's Remediation of Internal Control Weaknesses .............................................................42

    e)    Misstatements and Omissions Regarding Subsequent Events.............................43

    f)    Misstatements and Omissions Regarding Related-Party Transactions.................43

    g)    Misstatements and Omissions Regarding Seasonality.........................................46

    Materially False and Misleading Statements and Omissions in the SPO Registration Statement and the Notes Prospectus.............................................46

**Page**

a) Misstatements and Omissions Regarding Luckin's Revenue and Expenses .........47

b) Misstatements and Omissions Regarding Luckin's Non-GAAP Measures ..........54

c) Misstatements and Omissions Regarding Subsequent Events..............................55

d) Misstatements and Omissions Regarding Luckin's Compliance with GAAP...................................................................................................................56

e) Misstatements and Omissions Regarding Internal Controls Over Financial Reporting................................................................................................................57

The Offering Materials Failed to Disclose Material Trends, Uncertainties, Events and Risks.......................................................................................................................58

CLASS ACTION ALLEGATIONS .................................................................................................60

COUNT I ..........................................................................................................................................62

Against All Defendants Except the Investment Vehicle Defendants For Violations of Section 11 of the Securities Act ...........................................................62

COUNT II .........................................................................................................................................63

Against All Defendants Except the Investment Vehicle Defendants For Violations of Section 12(a)(2) of the Securities Act ..................................................63

COUNT III........................................................................................................................................65

Against Cogency Global, the Individual Defendants and the Investment Vehicle Defendants For Violations of Section 15 of the Securities Act .........................................................65

PRAYER FOR RELIEF ...................................................................................................................66

JURY TRIAL DEMANDED............................................................................................................67

- ii -

Case 1:20-cv-01293-JPC    Document 286-3    Filed 06/07/21    Page 5 of 72

Plaintiffs Kimson Chemical, Inc., Teamsters Local 710 Pension Fund, Michael Bergenholtz, and City of Fort Myers Police Officers' Retirement System (together, "Plaintiffs") individually and on behalf of all others similarly situated, by Plaintiffs' undersigned attorneys, allege the following based upon personal knowledge as to Plaintiffs and Plaintiffs' own acts, and upon information and belief as to all other matters based upon the investigation conducted by Plaintiffs' attorneys, which included, among other things, a review and analysis of U.S. Securities and Exchange Commission ("SEC") filings made by Luckin Coffee Inc. ("Luckin" or the "Company"), Company press releases, conference call transcripts and presentations, public statements issued by Defendants (defined below), analyst and media reports and industry reports as well as information readily available on the Internet. Plaintiffs' investigation into the matters alleged herein is continuing and many relevant facts are known only to, or are exclusively within the custody and control of, the Defendants. Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for formal discovery.

## NATURE OF THE ACTION

1.      Plaintiffs bring this securities class action on behalf of all persons who purchased: (i) Luckin American Depository Receipt Shares ("ADSs") issued in the Company's May 17, 2019 initial public offering (the "IPO"); (ii) Luckin ADSs issued in the Company's January 10, 2020 secondary public offering (the "SPO"); and (iii) Luckin convertible senior notes issued concurrently with the SPO (the "Note Offering").[1] This action asserts claims under Sections 11,

---

[1]  The IPO, SPO and the Note Offering are collectively referred to as the "Offerings." The registration statements and the prospectuses for the IPO and the SPO are referred to as the "Registration Statements." The Notes prospectus and the Registration Statements are collectively referred to as the "Offering Materials."

Case 1:20-cv-01293-JPC   Document 286-3   Filed 06/07/21   Page 6 of 72

12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act") against Luckin and Luckin's most senior executive officers, directors and authorized U.S. agents; certain investment vehicles owned and controlled by Company insiders; and the underwriters for the Offerings.

2.     Founded in June 2017, Luckin engages in the retail sale of freshly brewed coffee, pre-made foods and beverage items. Since its inception, Luckin has aimed to be the largest and fastest-growing coffee retailer in China. Luckin purported to have expanded its sales and operations at breakneck speed and, by year-end 2019, had grown to more than 4,500 stores, eclipsing Starbucks as the largest coffee retailer in China.

3.     Luckin's progression from founding to conducting lucrative U.S. public offerings was also swift. In May 2019 – less than two years after launch – Luckin completed its IPO, one of the largest public offerings by a Chinese issuer that year. In the IPO, Luckin issued nearly 38 million ADSs at $17 per share, yielding over $645 million in gross proceeds. In the IPO Registration Statement (defined below), Defendants credited Luckin's burgeoning growth to favorable market trends, the Company's "disruptive" and data-driven business model, its reliance on casual "pick-up stores" to lower overhead costs, and promotional programs, such as coupon and voucher programs, to increase sales. According to Defendants, these strategies had already borne substantial fruit by the time of the IPO, as the Company's net revenues had grown an incredible ***336,000%***, from just RMB250,000 in 2017 to RMB840.7 million by 2018.

4.     Although there had been a moderation in this rapid growth rate in the first quarter of 2019, Defendants downplayed these results as attributable to ordinary seasonal sales patterns. The IPO Registration Statement maintained that Luckin's "disruptive" business model remained highly successful and continued to support the Company's spectacular growth trajectory. Unbeknownst to investors, however, the Company's stalled growth in the first quarter of 2019 was

- 2 -

Case 1:20-cv-01293-JPC    Document 286-3    Filed 06/07/21    Page 7 of 72

not the result of seasonal trends but rather the product of adverse business trends and fundamental growth constraints as the Company approached scale. Moreover, by at least April 2019, Luckin and its senior officers and directors had begun the mass falsification of the Company's sales, revenues and financial results in order to create the false and misleading impression that Luckin's astronomical growth rate was sustainable, when it in fact was not.

5.      In the second quarter of 2019, Luckin reported net revenues which appeared to demonstrate that the Company was once again experiencing robust growth and operational expansion. Luckin reported total net revenues of RMB870 million (US$127 million) for the quarter, representing a nearly *700%* year-over-year increase. These favorable growth trends also purportedly carried over into the third quarter. For that quarter, Luckin claimed to have achieved total net revenues of RMB1.5 billion (US$208.9 million), representing an approximately *560%* year-over-year increase. The Company further represented that its average monthly total items sold during the quarter had increased over *470%* year-over-year to 44.2 million.

6.      On January 10, 2020, Defendants conducted the SPO and the Note Offering, raising more than $1.1 billion from investors. In the SPO, Defendants sold to the investing public more than 15.8 million Luckin ADSs at $42 per ADS, generating over $666 million in gross proceeds. Concurrently with the SPO, Defendants also conducted the Note Offering, selling $460 million worth 0.75% Convertible Senior Notes due 2025 (the "Notes"). The SPO and the Note Offerings were interrelated offerings, conducted at the same time and for the same corporate purposes. The offering materials for the SPO and Note Offering contained largely identical representations regarding Luckin, including the same historical financial and operational information, and stated that the offerings were being carried out "concurrently" as part of a single financing plan for the Company. The Notes sold in the Note Offering were convertible into ADSs – the security sold in

- 3 -

the SPO – at a conversion price of $54.60 for each ADS, for a conversion ratio of 18.315 ADSs per bond.

7.      The SPO Registration Statement and the Notes Prospectus continued to represent that Luckin was enjoying tremendous sales and revenue growth.   In particular, Defendants represented in the offering materials that Luckin had achieved RMB2.9 billion (US$409.8 million) in total net revenues for the nine months ended September 30, 2019 – representing a *681%* year-over-year increase.  These and similar misstatements were materially false and misleading when made.  In fact, Luckin's vaunted growth rate was the product of misconduct orchestrated by the Company's most senior executive officers and directors, including its Chief Executive Officer ("CEO") Defendant Jenny Zhiya Qian, its Chief Operating Officer ("COO") Defendant Jian Liu, and its Chairman Defendant Charles Zhengyao Lu.  As Luckin would later admit, these and other Company employees fabricated *$310 million* worth of transactions in order to create the appearance of revenue and operational growth.  To generate fake transactional churn, Luckin insiders employed interrelated entities, shell companies and fictional Company employees.

8.      Soon after the SPO and the Note Offering closed, Luckin's vaunted growth story unraveled.  On April 2, 2020, the Company announced that it had formed a special committee of the Board (the "Special Committee") to investigate the Company's financial statements.  Luckin further disclosed that the Special Committee had already obtained substantial evidence of fabricated transactions perpetrated by Luckin's most senior management.  Specifically, Luckin admitted that, "beginning in the second quarter of 2019, Mr. Jian Liu, the chief operating officer and a director of the Company, and several employees reporting to him, had engaged in certain misconduct, including fabricating certain transactions."  Further, Luckin admitted that "the aggregate sales amount associated with the fabricated transactions from the second quarter of 2019

- 4 -

to the fourth quarter of 2019 amount to around RMB2.2 billion" and "[c]ertain costs and expenses were also substantially inflated by fabricated transactions during this period."  Luckin instructed investors not to rely on the Company's financial results for the nine-month period ended September 30, 2019 – the same financial results Luckin had recently highlighted in the offering materials for the SPO and the Note Offering, in which Defendants had sold more than $1.1 billion in ADSs and Notes to investors.

9.     On May 12, 2020, Luckin announced the termination of Defendants Qian and J. Liu from their positions as CEO and COO, respectively, along with several other employees, due to their participation in fabricating $310 million worth of financial transactions.

10.     Luckin continued to deteriorate as additional details emerged regarding the actions by Luckin insiders to artificially inflate the Company's results at the time of the Offerings.  For example, in a series of articles published in May and June 2020, *The Wall Street Journal* revealed how the fabrication of Luckin's operational and financial results were carried out.  One tactic involved the sale of vouchers in bulk redeemable for tens of millions of cups of coffee to companies that had ties to Luckin's Chairman, Defendant Lu.  However, the vouchers were not actually redeemed for cups of coffee.  Instead, these bulk sales allowed the Company to book significantly higher revenue than its coffee shops actually generated.  At the same time, the Company processed tens of millions of dollars' worth of phony payments for raw materials to companies with connections to Luckin or Defendant Lu.  Many of these payments were processed by a purported procurement employee, Lynn Liang, who did not exist.  Over time, these bulk coupon purchases and payments for phony materials formed a loop of transactions that allowed the Company to inflate both sales and expenses using capital that circulated in and out of Luckin accounts.

- 5 -

Case 1:20-cv-01293-JPC   Document 286-3   Filed 06/07/21   Page 10 of 72

11. On May 19, 2020, Luckin announced that its ADSs would be delisted by Nasdaq.

12. On July 1, 2020, Luckin announced that it had completed its internal investigation. The Company concluded and admitted that its historical financial results had been materially misrepresented to investors. For example, Luckin admitted that Defendants Qian, Jian Liu and certain other employees had fabricated hundreds of millions of dollars' worth of Company transactions, funneling the illicit funds through a number of related third parties. As a result, the Company's net revenues were overstated by 80% to 90% during impacted periods.

13. Luckin also admitted to material errors in its previously reported costs and expenses. Specifically, Luckin expenses were overstated by 10.4% and 32.3% for the second and third quarter of 2019, respectively.

14. The brazen nature and magnitude of the scandal and the utter failure of Defendants to conduct appropriate due diligence or deal openly and honestly with investors in connection with the Offerings has sparked wide-ranging calls for reform, including proposals by members of the U.S. Congress for tighter controls on Chinese issuers that attempt to offer and sell securities to public investors in the United States. Although these efforts may yield substantial improvements that help prevent future harm to investors, they will come too late for investors in the Offerings.

15. Luckin ADSs have been delisted. Almost the entirety of Luckin's upper management has been forced out of the Company. The Company is now the subject of multiple civil, criminal and regulatory investigations and actions in the United States and China. Chinese authorities have already fined the Company millions of dollars for misleading investors, and in December 2020, Luckin agreed to pay $180 million to resolve SEC allegations against it.

16. By May 22, 2020, Luckin ADSs closed at just $1.39 per ADS. This price represented a nearly ***97% decline*** from the price at which the ADSs had been sold to the investing

- 6 -

Case 1:20-cv-01293-JPC Document 286-3 Filed 06/07/21 Page 11 of 72

public in the SPO only four months previously. The following chart illustrates the price of Luckin ADSs from the IPO through May 22, 2020:



17. At the time of the filing of the Consolidated Complaint, the price of Luckin ADSs is less than 25% of the SPO price. The price of the Luckin Notes sold in the Note Offering has similarly plummeted, falling as much as 80% below par, as reflected in the following chart:



- 7 -

Case 1:20-cv-01293-JPC    Document 286-3    Filed 06/07/21    Page 12 of 72

18.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Luckin securities sold in the Offerings, Plaintiffs and other members of the Class have suffered hundreds of millions of dollars in losses and damages.

## JURISDICTION AND VENUE

19.     The claims alleged herein arise under Sections 11, 12(a)(2) and 15 of the Securities Act (15 U.S.C. §§77k, 77l(a)(2) and 77o).

20.     This Court has original subject matter jurisdiction over these claims under the New York Constitution, Article VI, §7(a), and Section 22 of the Securities Act. Section 22 of the Securities Act expressly prohibits removal of this action to federal court.

21.     The Court has personal jurisdiction over each of the Defendants and venue is proper in this County pursuant to Section 22 of the Securities Act and N.Y. C.P.L.R. Sections 301, 302 and 503. Defendants conducted the Offerings in this County, drafted the Offering Materials in substantial part in this County, disseminated the statements alleged to be false and misleading herein both from and into this County, solicited purchases of the Luckin securities sold in the Offerings in this County, and sold the Luckin securities in the Offerings in this County.

22.     The Underwriter Defendants (defined below) also delivered the Luckin ADSs against payment in this County, the principle executive office for the depository of the ADSs is located in this County, the ADSs are administered in this County, and the ADSs traded in this County on the Nasdaq Global Select Market ("NASDAQ") before they were delisted. The Notes were convertible into these New York-based ADSs. Furthermore, the Notes were issued pursuant to a New York-based indenture, with the Bank of New York Mellon serving as trustee. Transactions in the Notes were also cleared and settled in New York. Furthermore, the agents for service of process for the Offering are located in New York.

- 8 -

23. Pursuant to the Deposit Agreement referenced in the Offering Materials, the Company "consents and submits to the jurisdiction of any state or federal court in the state of New York in which any Proceeding may be instituted[.]" In addition, in the Underwriting Agreement for the Offerings, Luckin agreed with the Underwriter Defendants to apply New York law and that it "has the power to submit, and . . . has legally, validly, effectively and irrevocably submitted, to the personal jurisdiction of each United States federal court and New York state court located in the Borough of Manhattan, in The City of New York, New York, U.S.A." Luckin also agreed as follows:

> The Company [and the Selling Shareholder Defendant Hui Li] hereby submits to the non-exclusive jurisdiction of the Federal and state courts in the Borough of Manhattan in The City of New York in any suit or proceeding arising out of or relating to this Agreement or the transactions contemplated hereby. The Company [and the Selling Shareholder Defendant Hui Li] irrevocably and unconditionally waives any objection to the laying of venue of any suit or proceeding arising out of or relating to this Agreement or the transactions contemplated hereby in Federal and state courts in the Borough of Manhattan in the City of New York and irrevocably and unconditionally waives and agrees not to plead or claim in any such court that any such suit or proceeding in any such court has been brought in an inconvenient forum.

24. In sum, the situs of this action lies within this County, Defendants' acts occurred in this County and caused injury to the purchasers of Luckin securities in this County, and each of the Defendants and members of the Class (defined below) would foreseeably expect any case or controversy stemming from the Offerings to be adjudicated in this County.

**PARTIES**

25. Plaintiff Kimson Chemical, Inc. ("Kimson") purchased Luckin ADSs in and traceable to the IPO and has been damaged thereby. Plaintiff Kimson made these purchases prior to the expiration of the 180-day lockup period following the IPO and hence the Luckin shares it purchased are traceable to the IPO.

- 9 -

Case 1:20-cv-01293-JPC Document 286-3 Filed 06/07/21 Page 14 of 72

26. Plaintiff Michael Bergenholtz ("Bergenholtz") purchased Luckin ADSs in and traceable to the IPO and has been damaged thereby. Plaintiff Bergenholtz made these purchases prior to the expiration of the 180-day lockup period following the IPO and hence the Luckin shares he purchased are traceable to the IPO. Plaintiff Bergenholtz also purchased Luckin ADSs directly in the SPO, on the date of the SPO (January 10, 2020) and at the SPO price ($42 per ADS), and has been damaged thereby. Plaintiff Bergenholtz did not pay a commission for these transactions, which confirms that the ADSs he purchased on January 10, 2020 were issued in the SPO.

27. Plaintiff Teamsters Local 710 Pension Fund ("Teamsters 710") purchased Luckin ADSs directly in the SPO, on the date of the SPO (January 10, 2020) and at the SPO price ($42 per ADS) and has been damaged thereby. Plaintiff Teamsters 710 did not pay a commission for these transactions, which confirms that the ADSs it purchased on January 10, 2020 were issued in the SPO.

28. Plaintiff City of Fort Myers Police Officers' Retirement System ("Fort Myers Police") purchased Luckin Notes issued in the Note Offering, including purchases made directly in the Note Offering, on the date of the Note Offering (January 10, 2020) and at par, and has been damaged thereby.

29. Plaintiffs Kimson, Bergenholtz, Teamsters 710 and Fort Myers Police are collectively referred to as "Plaintiffs."

30. Defendant Luckin is a coffee chain based in Fujian, China. Luckin engages in the retail sale of food and beverage items. The Company is incorporated in the Cayman Islands and its headquarters are located in 17F Block A, Tefang Portman Tower No. 81 Zhanhong Road Siming District, Xiamen, Fujian People's Republic of China, 361008. Luckin's ADSs traded on the NASDAQ under the ticker symbol "LK." Each Luckin ADS represents eight Class A ordinary

- 10 -

Case 1:20-cv-01293-JPC Document 286-3 Filed 06/07/21 Page 15 of 72

shares of the Company. Luckin has also issued $460 million principal amount of Notes, which trade in New York and are convertible into Luckin ADSs. The Company maintains a dual-class share structure designed to concentrate control of the Company in the hands of Luckin insiders out of proportion with their economic stake. Holders of Class A shares (the shares owned by public investors) are entitled to one vote per share. By contrast, holders of Class B shares (the shares owned by Company insiders) are entitled to ten votes per share. At the time of the concurrent SPO and Note Offering, Defendant Company insiders, through their beneficial ownership of Class B shares, still controlled 88% of the voting control of Luckin.

31. Defendant Jenny Zhiya Qian ("Qian") co-founded Luckin and served as Luckin's CEO and a Luckin director at the time of the Offerings. Defendant Qian signed the Company's SEC filings, including the materially misleading Registration Statements. At the time of the IPO and the concurrent SPO and Note Offering, Defendant Qian, through her ownership of Class B shares and through her family investment vehicle, Defendant Summer Fame Limited, beneficially owned and controlled 20% and 23% of Luckin's voting shares, respectively. Defendant Qian has subsequently been terminated from Luckin because of her role in the fake transactions detailed herein.

32. Defendant Charles Zhengyao Lu ("Lu") co-founded Luckin and served as Luckin's Chairman of the Board of Directors (the "Board") at the time of the Offerings. Defendant Lu signed the Company's SEC filings, including the materially false and misleading Registration Statements. At the time of the IPO and the concurrent SPO and Note Offering, through Defendant Lu's ownership of Class B shares and through family investment vehicles, Defendants Haode Investment Inc., Primus Investments Fund, L.P., and Mayer Investments Fund, L.P., Defendant Lu beneficially owned and controlled 30% and 36% of Luckin's voting shares, respectively.

- 11 -

Defendant Lu has subsequently been forced out of his Chairmanship because of his role in the fake transactions detailed herein.

33. Defendant Reinout Hendrik Schakel ("Schakel") served as Luckin's Chief Financial Officer ("CFO") and Chief Strategy Officer at the time of the Offerings. Defendant Schakel signed the Company's SEC filings, including the materially false and misleading Registration Statements.

34. Defendant Jian Liu ("J. Liu") served as Luckin's COO and a Luckin director at the time of the Offerings. Defendant J. Liu signed the Company's SEC filings, including the materially false and misleading Registration Statements. Defendant J. Liu has subsequently been terminated from Luckin for his role in the fake transaction detailed herein.

35. Defendant Jinyi Guo ("Guo") served as a Luckin Senior Vice President and a Luckin director at the time of the Offerings. Following the ouster of Defendants Qian and Lu, he was named Luckin's CEO and Chairman. Defendant Guo signed the materially false and misleading Registration Statements.

36. Defendant Hui Li ("Li") served as a Luckin director at the time of the Offerings. Defendant Li signed the Company's SEC filings, including the materially false and misleading Registration Statements. At the time of the IPO and the concurrent SPO and Note Offering, through Defendant Li's ownership of Class B shares and through his family investment vehicles, Defendants Lucky Cup Holdings Limited and Fortunate Cup Holdings Limited, Defendant Li beneficially owned and controlled 12% and 14% of Luckin's voting shares, respectively. Defendant Li also sold ADSs representing over 44 million Luckin ordinary shares in the SPO which allowed him to generate over $230 million in gross offering proceeds from public investors. Defendant Li left Luckin's Board following an extraordinary meeting of shareholders in July 2020.

- 12 -

37.     Defendant Erhai Liu ("E. Liu") served as a Luckin director at the time of the Offerings.  Defendant E. Liu signed the Company's SEC filings, including the materially false and misleading Registration Statements.   Defendant E. Liu left Luckin's Board following an extraordinary meeting of shareholders in July 2020.

38.     Defendant Sean Shao ("Shao") served as a Luckin director at the time of the Offerings.  Defendant Shao consented to being named as an incoming Luckin director in the IPO Registration Statement.  In addition, Defendant Shao signed the Company's SEC filings, including the SPO Registration Statement.  Defendant Shao also served as the Chair of the Audit Committee of the Board of Directors of the Company.  Defendant Shao temporarily left Luckin's Board following an extraordinary meeting of shareholders in July 2020, although he was reinstated two months later.

39.     Defendant Thomas P. Meier ("Meier") served as a Luckin director at the time of the Offerings.  Defendant Meier consented to being named as an incoming Luckin director in the IPO Registration Statement.  In addition, Defendant Meier signed the Company's SEC filings, including the SPO Registration Statement.  Defendant Meier also served as a member of the Audit Committee of the Board of Directors of the Company.  Defendant Meier subsequently resigned from Luckin's Board.

40.     The Defendants identified in ¶¶31-39 are referred to as the "Individual Defendants."

41.     Each of the Individual Defendants signed the Registration Statements and/or consented to being named as incoming Luckin directors.  In addition, the Individual Defendants actively participated in the solicitation and sale of Luckin securities to investors in the Offerings for their own benefit and the benefit of Luckin as directors, executive officers, and/or major

- 13 -

shareholders of the Company.

42.     Defendant Haode Investment Inc. ("Haode Investment") is a British Virgin Islands company wholly owned by Haode International Limited and ultimately controlled by the Lu Family Trust, a trust controlled by and established for the benefit of Defendant Lu and members of his family.

43.     Defendant Primus Investments Fund, L.P. ("Primus Investments") is a Cayman Islands company wholly owned by Defendant Haode Investment, which in turn is owned and controlled by the Lu Family Trust. At the time of the IPO and the concurrent SPO and Note Offering, Defendants Primus Investments and Haode Investment owned and controlled approximately 30% and 36% of Luckin's voting shares, respectively, for the benefit of Defendant Lu through their ownership of Class B shares.

44.     Defendant Summer Fame Limited ("Summer Fame") is a British Virgin Islands company wholly owned by Summer Fame International Limited and ultimately controlled by the Qian Family Trust, a trust controlled by and established for the benefit of Defendant Qian and members of her family.  At the time of the IPO and the concurrent SPO and Note Offering, through Defendant Summer Fame's ownership of Class B shares, it owned and controlled approximately 20% and 23% of Luckin's voting shares, respectively, for the benefit of Defendant Qian.

45.     Defendant Lucky Cup Holdings Limited ("Lucky Cup") is a Cayman Islands company wholly owned by Centurium Capital Partners 2018, L.P. ("Centurium Capital") and ultimately controlled by Defendant Li.

46.     Defendant Fortunate Cup Holdings Limited ("Fortunate Cup") is a Cayman Islands company wholly owned by Centurium Capital and ultimately controlled by Defendant Li.  At the time of the IPO and the concurrent SPO and Note Offering, through their ownership of Class B

- 14 -

shares, Defendants Lucky Cup and Fortunate Cup owned and controlled approximately 12% and 14% of Luckin's voting shares for the benefit of Defendant Li, respectively.

47.     Defendant Mayer Investments Fund, L.P. ("Mayer Investments") is a Cayman Islands company controlled by Mayer Management GP, Limited and ultimately controlled by Sunying Wong, the sister of Defendant Lu, for the benefit of Defendant Lu and members of his family.  At the time of the IPO and the concurrent SPO and Note Offering, through defendant Mayer Investment's ownership of Class B shares, it owned and controlled approximately 12% and 15% of Luckin's voting shares, respectively.

48.     The Defendants identified in ¶¶42-47 are referred to herein as the "Investment Vehicle Defendants." The Investment Vehicle Defendants owned and controlled a majority of Luckin voting stock at the time of the IPO and the concurrent SPO and Note Offering for the benefit of certain Individual Defendants and their affiliates, as detailed herein.

49.     Defendant Chiang Sheung Lin ("Sheung Lin") served as the Assistant Secretary of Defendant Cogency Global Inc. at the time of the IPO.

50.     Defendant Richard Arthur ("Arthur") served as the Assistant Secretary of Defendant Cogency Global Inc. at the time of the concurrent SPO and Note Offering.

51.     Defendant Cogency Global Inc. ("Cogency Global") was Luckin's authorized U.S. Representative in connection with the Offerings, and Defendants Sheung Lin and Arthur signed the Registration Statements on their own behalf and on behalf of Cogency Global.  Defendant Cogency Global is additionally liable for the securities law violations alleged herein to have been committed by Defendants Sheung Lin and Arthur as it controlled Defendants Sheung Lin and Arthur at the time of the Offerings as a primary violator, as a control person and pursuant to the doctrine of *respondeat superior*.

- 15 -

52. The Defendants identified in ¶¶49-51 are referred to herein as the "Cogency Global Defendants."

53. Defendants Credit Suisse Securities (USA) LLC, Morgan Stanley & Co. LLC, China International Capital Corporation Hong Kong Securities Limited, Haitong International Securities Company Limited, KeyBanc Capital Markets Inc. ("KeyBanc") and Needham & Company, LLC ("Needham") were the underwriters for the IPO and the SPO, and they are collectively referred to herein as the "Underwriter Defendants." Defendants Credit Suisse Securities (USA) LLC, Morgan Stanley & Co. LLC, China International Capital Corporation Hong Kong Securities Limited, Haitong International Securities Company Limited, were the underwriters for the Note Offering and they are sometimes collectively referred to as the "Note Offering Underwriters." Pursuant to the Securities Act, the Underwriter Defendants are liable for the materially false and misleading statements in the Offering Materials as follows:

(a) The Underwriter Defendants are investment banking houses that specialize in, *inter alia*, underwriting public offerings of securities. They served as the underwriters of the Offerings and shared tens of millions in fees collectively for their services. The Underwriter Defendants determined that in return for their share of Offering proceeds, they were willing to solicit purchases of Luckin ADSs and/or Notes in the Offerings. Each of the Underwriter Defendants designated personnel to the Offering working groups, including investment bankers, analysts, associates, and counsel, to market the Luckin ADSs and/or Notes sold in the Offerings, and those personnel worked on and approved the content of the Offering Materials and other solicitation materials.

(b) The Underwriter Defendants demanded and obtained an agreement from Luckin that Luckin would indemnify and hold the Underwriter Defendants harmless from any

- 16 -

liability under the federal securities laws. They also made certain that Luckin had purchased millions of dollars in directors' and officers' liability insurance.

(c) In addition, representatives of the Underwriter Defendants assisted Luckin and the Individual Defendants in planning some or all of the Offerings and purportedly conducted an adequate and reasonable investigation into the business and operations of Luckin, an undertaking known as a "due diligence" investigation. The due diligence investigation was required of the Underwriter Defendants in order to engage in the Offerings. During the course of their "due diligence," the Underwriter Defendants had continual access to confidential corporate information concerning Luckin's operations and financial prospects.

(d) In addition to availing themselves of virtually unbridled access to internal corporate documents, agents of the Underwriter Defendants met with Luckin's management, top executives, and outside counsel and engaged in "drafting sessions" in advance of the Offerings. During these sessions, understandings were reached as to: (i) the strategy to best accomplish the Offerings; (ii) the terms of the Offerings, including the price range at which Luckin ADSs and/or Notes would be sold; (iii) the language to be used in the Offering Materials; and (iv) what disclosures about Luckin would be made in the Offering Materials.

(e) As a result of those constant contacts and communications between the Underwriter Defendants' representatives and Luckin's management and top executives, such as the Individual Defendants, the Underwriter Defendants should have known of Luckin's existing problems as detailed herein. The Underwriter Defendants' failure to conduct an adequate due diligence investigation was a substantial factor leading to the harm complained of herein.

(f) The Underwriter Defendants solicited and sold Luckin ADSs and/or Notes from the Offerings to Plaintiffs and other members of the Class.

- 17 -

## SUBSTANTIVE ALLEGATIONS

**Luckin's Business Model**

54.     Luckin was founded in Beijing in June 2017 by Defendants Qian and Lu.  The Company engages in the retail sale of freshly brewed coffee beverages and non-coffee drinks, as well as pre-made food and beverage items.  Luckin operates three different types of store locations: (i) "pick-up stores," which are small stores where customers can pick up their orders or have their orders delivered to them; (ii) relax stores, which are larger stores designed for branding purposes; and (iii) delivery kitchens, which are locations designated for deliveries only.  Luckin also operates Luckin Coffee EXPRESS and Luckin pop MINI, which are unmanned coffee vending machines.  Luckin primarily focuses on "pick-up stores," which are typically located in areas with high demand for coffee, such as office buildings, commercial areas and university campuses.

55.     From its inception, Luckin claimed to have experienced robust growth.  In 2017, the Company embarked on an aggressive expansion strategy, opening thousands of store locations within 18 months.  By the end of 2018, Luckin had grown from essentially no retail footprint to more than 2,000 stores.  The Company also claimed over 12.5 million cumulative transacting customers.  By year-end 2019, Luckin had opened a total of 4,507 stores and surpassed Starbucks as China's largest and purportedly fastest-growing coffee chain.

56.     Luckin chalked up this stunning success to its "disruptive new retail model," which it claimed addressed the large unmet demand for coffee and mass market consumption in China.  The Company represented that China's coffee market was "highly underpenetrated due to inconsistent qualities, high prices and inconvenience." According to Luckin, its unique business model was "disrupting the status quo of the traditional coffee shop model" thereby allowing it to gain "significant cost advantages and provid[e] attractive value propositions[.]"

57.     Luckin's mobile app platform was an important component of Luckin's

- 18 -

Case 1:20-cv-01293-JPC    Document 286-3    Filed 06/07/21    Page 23 of 72

"technology-driven new retail model[.]" According to the Company, the mobile app minimized overhead and increased efficiencies by offering customers a more streamlined and convenient purchasing experience. It also purportedly enabled the Company to utilize advanced data analytics to evaluate consumer behaviors in order to tailor Luckin's business strategies accordingly.

**Defendants Raise Over $645 Million in Luckin's U.S. IPO**

58.    On April 22, 2019, Luckin initiated the IPO by filing a registration statement on Form F-1 with the SEC, which after amendment, was declared effective on May 16, 2019 (the "IPO Registration Statement"). On May 17, 2019, the Company filed with the SEC a prospectus for the IPO on Form 424B4 (the "IPO Prospectus"), which incorporated and formed part of the IPO Registration Statement. By means of the IPO Registration Statement, Luckin issued nearly 38 million ADSs at $17 per ADS, which included the full exercise of the Underwriter Defendants' over-allotment option. Gross proceeds from the sale of Luckin ADSs in the IPO totaled over $645 million.

59.    The offering materials for the IPO highlighted the stunning growth of the Company's sales and operations in the short time since its founding. For example, the IPO Registration Statement contained the following chart which illustrated the meteoric rise in Luckin's store count since 2017:



- 19 -

Case 1:20-cv-01293-JPC   Document 286-3   Filed 06/07/21   Page 24 of 72

60.     The IPO Registration Statement also claimed that Luckin was enjoying robust customer and transactional growth. According to the IPO Registration Statement, Luckin's cumulative number of transacting customers had grown from just 11,100 in fiscal 2017 to over 16.8 million by the first quarter of 2019. This substantial rise in transactions had purportedly propelled rapid revenue growth at the Company. Luckin claimed its net revenues had increased from only RMB250,000 in fiscal 2017 to RMB840.7 million by fiscal 2018 – representing a stunning *336,000%* year-over-year increase. The trajectory of Luckin's purported revenue growth is depicted in the following chart:



**Luckin's Purported Growth Rate Accelerates Following the IPO**

61.     After the IPO, Luckin continued to report tremendous growth. Although the Company stated that its revenue growth had temporarily moderated during the first quarter of 2019, Luckin attributed this slowdown to ordinary seasonality, with the IPO Registration Statement explaining that seasonality was "primarily as a result of orders fluctuations in holiday seasons." Subsequent reported quarterly results appeared to support this claim, with Luckin reporting rapid growth in the second and third quarters of 2019.

- 20 -

Case 1:20-cv-01293-JPC    Document 286-3    Filed 06/07/21    Page 25 of 72

62.    On August 14, 2019, Luckin reported net revenues of RMB870.0 million (US$126.7 million) for the second quarter of 2019 (ended June 30, 2019), nearly *700%* higher than the RMB109.0 million reported in the same quarter of 2018.  The Company attributed these positive financial results to its "distinguished value proposition of delivering [] customers high quality, high convenience and high affordability."  Luckin similarly claimed that it was experiencing positive business and operational trends, including an average of 6.2 million monthly transacting customers (a 411% increase from 1.2 million transacting customers in the second quarter of 2018) and 27.6 million in average monthly total items sold (a 590% increase from the 4 million average monthly items sold in the second quarter of 2018).  The Company stated that Luckin's "[t]otal operating expenses were RMB1,598.8 million (US$232.9 million), representing an increase of 243.9% from RMB465.0 million in the second quarter of 2018."  Luckin claimed that the increase in operating expenses was "in line with business expansion."  Luckin further represented that despite the Company's investments in expansive growth, its store-level operating loss in the quarter had actually decreased by 32%.

63.    Commenting on the Company's revenue growth for the second quarter of fiscal 2019, Defendant Qian stated at the time: "we have substantially reduced our store operating loss as a percentage of net revenues as a result of benefits of scale and increased bargaining power, operating efficiency from technology, and higher store throughput, and we are on track to reach our store level break-even point during the third quarter of 2019."

64.    In reaction to the Company's announcement of these positive results for the second quarter of fiscal 2019, numerous analysts issued positive reports about Luckin's growth and prospects.  For instance, on October 8, 2019, a Zephirin report raised estimates for the Company's

- 21 -

Case 1:20-cv-01293-JPC Document 286-3 Filed 06/07/21 Page 26 of 72

third quarter revenues and forecasted total revenues of $219.9 million, up from prior estimates of $198.8 million.

65. On November 13, 2019, Luckin announced its third fiscal quarter 2019 financial results (ended September 30, 2019), again reporting staggering growth trends. The Company claimed net revenues of RMB$1.5 billion (US$209 million), which exceeded its prior guidance and represented a 558% increase from the RMB227.1 million in net revenues reported in the third quarter of 2018. Luckin stated that these impressive financial results were due to strong operational growth trends, including: (i) an increase in average monthly total items sold to 44.2 million, a 470.1% year-over-year increase; (ii) an increase in average total net revenues per store to RMB449.6 thousand (US$62.9 thousand), a 79.5% year-over-year increase; and (iii) an increase in store level operating profit to RMB186.3 million (US$26.1 million), compared to a loss of RMB126 million in the third quarter of 2018.

66. Luckin further stated that the Company's operational expansion was accompanied by a concomitant increase in operating expenses, as the Company continued to invest in growth strategies. For the third quarter of 2019, Luckin reported total operating expenses of RMB2.1 billion (US$298.3 million), a 194% increase from the reported operating expenses of RMB726.4 million in the third quarter of 2018. Luckin claimed that the increases in both net revenues and operating expenses were the result of its successful expansion strategy and growth initiatives.

67. Analysts again reacted positively to Luckin's reports of strong revenue growth for the third quarter of fiscal 2019. For example, a Zephirin report commented that "[t]he Q319 results were as strong as we and investors expected" and that "[w]e believe that management deserves

- 22 -

Case 1:20-cv-01293-JPC    Document 286-3    Filed 06/07/21    Page 27 of 72

full credit in continuing to quickly build out the LK brand with the new retail model partnerships[.]"

**Defendants Sell $1.1 Billion Worth of Luckin Securities in Follow-On Securities Offerings**

68.    On January 7, 2020, Luckin filed with the SEC a registration statement on Form F-1 for the SPO, which was declared effective on January 9, 2020 (the "SPO Registration Statement"). On January 10, 2020, the Company filed a prospectus for the SPO on Form 424B4 (the "SPO Prospectus"), which incorporated and formed part of the January 9, 2020 SPO Registration Statement. The SPO Registration Statement was used to sell to the investing public more than 15.8 million Luckin ADSs at $42 per ADS, which included the full exercise of the Underwriter Defendants' overallotment option. Defendants generated over $666 million in gross offering proceeds from their sale of Luckin ADSs in the SPO.

69.    Defendant Li sold ADSs representing over 44 million Luckin ordinary shares in the SPO, thereby generating over $230 million in gross offering proceeds for his personal benefit. Other Individual Defendants also personally profited from the high price of Luckin ADSs by pledging tens of millions of their personally held Luckin ADSs as collateral for personal loans. For example, through entities they owned and controlled, Defendants Qian and Lu secured a $518 million margin loan facility by pledging over 611 million Luckin ADSs as loan collateral.

70.    Concurrently with the SPO, on January 10, 2020, Defendants conducted a $460 million Note Offering. The Note Offering and the SPO were carried out at the same time and for the same reasons and formed an integrated capital raise by the Company. All of the Underwriter Defendants, except for Defendants KeyBanc and Needham, participated in the solicitation, sale and distribution of the Notes sold in the Note Offering pursuant to an offering prospectus (the "Notes Prospectus") as underwriters, joint book managers and initial purchase agents. The Notes Prospectus heavily referenced the SPO, which it referred to as the "Concurrent

- 23 -

Primary Offering," and the SPO Registration Statement heavily referenced the Note Offering, which it referred to as the "Concurrent Convertible Note Offering." The Notes Prospectus contained essentially all of the information necessary to be included in a registration statement for the public sale of securities, including discussions of the ADSs and Luckin's business, financial results and risks that were almost identical to representations made in the SPO Registration Statement. In addition, the Notes Prospectus referred to the proceeds from the Note Offering and the SPO jointly and stated that the proceeds to the Company from the concurrent offerings would be used for the same general corporate purposes. Notably, the Notes sold in the Note Offering were convertible into Luckin ADSs at any time and were fungible with the public ADSs after the resale restriction termination date.

71. While in the Notes Prospectus Luckin stated that it was relying on exemptions from registration under the Securities Act, the Note Offering was effectively a bona fide public offering. The Notes sold in the Note Offering were purchased by hundreds if not thousands of investors that were geographically dispersed across the United States. Many of these included retirement and pension plans operated for the benefit of public and private employees, such as Plaintiff Fort Myers Police, and the Notes were sold to a wide-cross section of U.S. investors and impacted the retirement savings of thousands, if not millions, of Americans. In addition to being widely marketed and publicized (including in the SPO Registration Statement), the Note Offering was conducted with and formed an integral part of the SPO as both offerings were being conducted at the same time and as part of a single plan to raise capital for Luckin through the sale of Luckin securities.

72. The Notes Prospectus and the SPO Registration Statement included substantially identical representations to investors, including the materially false and misleading description of

- 24 -

Luckin's historical operating and financial results for the nine months ended September 30, 2020, as detailed herein. Like the SPO Registration Statement, the Notes Prospectus represented that Luckin was thriving as a result of the success of its unique business model and ambitious expansion plan. Both the SPO Registration Statement and the Notes Prospectus underscored Luckin's "disruptive model" which "fulfilled the large unmet demand for coffee" and purportedly allowed the Company to "achieve [its] significant scale and growth since [its] inception." The SPO Registration Statement and the Notes Prospectus also made identical statements regarding Luckin's "centralized technology system" which purportedly enabled the Company to improve efficiency and scale up its business, among many other overlapping statements.

**Events Following the SPO and Note Offering**

73.    On April 2, 2020, Luckin announced that it had suspended the Company's COO, Defendant Liu, and formed an independent Special Committee to conduct an internal investigation of the Company's financial statements. In addition, Luckin admitted to "certain misconduct" and the "fabricating [of] transactions" by senior-level Luckin employees. Luckin instructed investors not to rely on the Company's financial statements for the nine-month period ended September 30, 2019, despite the fact that these financial results had just recently been used to sell over $1.1 billion worth of Luckin securities in the SPO and the Note Offering. Luckin stated, in pertinent part, as follows:[2]

> The Special Committee today brought to the attention of the Board information indicating that, ***beginning in the second quarter of 2019, Mr. Jian Liu, the chief operating officer and a director of the Company, and several employees reporting to him, had engaged in certain misconduct, including fabricating certain transactions***. The Special Committee recommended certain interim remedial measures, including the suspension of Mr. Jian Liu and such employees implicated in the misconduct and the suspension and termination of contracts and dealings with the parties involved in the identified fabricated transactions. The Board accepted

---

[2]    Emphasis added here and throughout unless otherwise noted.

- 25 -

the Special Committee's recommendations and implemented them with respect to the currently identified individuals and parties involved in the fabricated transactions. The Company will take all appropriate actions, including legal actions, against the individuals responsible for the misconduct.

The information identified at this preliminary stage of the Internal Investigation indicates that *the aggregate sales amount associated with the fabricated transactions from the second quarter of 2019 to the fourth quarter of 2019 amount to around RMB2.2 billion. Certain costs and expenses were also substantially inflated by fabricated transactions during this period*. The above figure has not been independently verified by the Special Committee, its advisors or the Company's independent auditor, and is subject to change as the Internal Investigation proceeds. The Company is assessing the overall financial impact of the misconduct on its financial statements. *As a result, investors should no longer rely upon the Company's previous financial statements and earning releases for the nine months ended September 30, 2019 and the two quarters starting April 1, 2019 and ended September 30, 2019, including the prior guidance on net revenues from products for the fourth quarter of 2019, and other communications relating to these consolidated financial statements*. The investigation is ongoing and the Company will continue to assess its previously published financials and other potential adjustments.

74. The accounting misstatements revealed by Luckin had resulted in a staggering overstatement of the Company's net revenues by approximately $310 million in 2019.

75. On April 3, 2020, *The Wall Street Journal* reported that Luckin's auditor, Ernst & Young, had found that "management personnel engaged in fabricated transactions which led to the inflation of the Company's income, costs and expenses" from the second quarter of 2019 to the fourth quarter of 2019. The report estimated that the transactions impacted $310 million in purported sales, which would represent nearly half of the Company's reported net revenues during that period.

76. A slew of governmental investigations followed the disclosure of Luckin's falsification of historical financial results and operational trends. For example, on April 3, 2020, the China Securities Regulatory Commission ("CSRC") issued a press release condemning the Company and stating its intent to investigate Luckin. Shortly thereafter, on April 29, 2020, multiple news outlets reported that the SEC was investigating Luckin for "fabricating millions of

dollars' worth of sales[.]" The CSRC also said that it had been in contact with the SEC regarding its investigation.

77.    On April 6, 2020, it was revealed that Defendants Lu and Qian had defaulted on their $518 million margin loan facility, which they had secured by pledging their Luckin shares. While Luckin's ADSs were artificially inflated by the misrepresentations and omissions in the Offering Materials, Defendants Lu and Qian had pledged their inflated holdings as collateral for personal loans, and thereafter, defaulted on these loans. The lenders sought to liquidate the entities which held the pledged shares in order to collect on Defendants Lu's and Qian's debts.

78.    On April 29, 2020, Luckin filed with the SEC a current report on Form 6-K stating that the Company would be unable to timely file its annual financial report for the fiscal year ended December 31, 2019.

79.    On May 12, 2020, Luckin announced that it had terminated Defendants Qian and J. Liu from their positions as CEO and COO, respectively, along with certain other employees, due to their participation in fabricating $310 million worth of financial transactions that had inflated the Luckin financial and operational results provided to investors, including the results presented in the Offering Materials. The press release stated, in pertinent part, as follows:

> BEIJING, May 12, 2020 (GLOBE NEWSWIRE) – Luckin Coffee Inc. (the "Company") (NASDAQ: LK), today announced changes to its Board of Directors ("Board") and senior management, effective May 11, 2020. During its ongoing internal investigation (the "Internal Investigation"), the Special Committee of the Board (the "Special Committee") has brought to the attention of the Board evidence that sheds more light on the fabricated transactions described in the press release issued by the Company on April 2, 2020. ***After considering such information, the Board has terminated Ms. Jenny Zhiya Qian and Mr. Jian Liu from the positions of the Chief Executive Officer and the Chief Operating Officer, respectively***. The Board also demanded and received from Ms. Qian and Mr. Liu their resignations from the Board. In addition to Ms. Qian and Mr. Liu, since the beginning of the Internal Investigation, the Company has placed six other employees, who were involved in or had the knowledge of the fabricated transactions, on suspension or leave.

- 27 -

80.     On May 19, 2020, Luckin announced that its ADSs would be delisted from NASDAQ.  According to Luckin: "The Listing Qualifications Staff cited two bases for the delisting determination: (i) public interest concerns as raised by the fabricated transactions disclosed by the Company in a Form 6-K on April 2, 2020, pursuant to Nasdaq Listing Rule 5101; and (ii) the Company's past failure to publicly disclose material information, citing a business model through which the previously disclosed fabricated transactions were executed, pursuant to Nasdaq Listing Rule 5250."

81.     On May 28, 2020, *The Wall Street Journal* reported more details regarding Luckin's fabrication of its operational and financial results.  *The Wall Street Journal's* reporting was based on an extensive analysis of internal Company documents and public records obtained by the paper and interviews with inside sources.  According to *The Wall Street Journal*, Luckin sold in bulk vouchers redeemable for tens of millions of cups of coffee to companies with ties to Luckin's Chairman, Defendant Lu.  These bulk sales allowed the Company to book significantly higher revenue than its stores actually generated. In addition, the Company processed tens of millions of dollars in payments for raw materials to companies with connections to Luckin or Defendant Lu.  Many of the payments were processed by a purported procurement employee, Lynn Liang, who did not exist.  As explained by *The Wall Street Journal*, purchases and payments from entities related to Luckin's officers formed "a loop of transactions that allowed the company to inflate sales and expenses with a relatively small amount of capital that circulated in and out of the

- 28 -

company's accounts." The below graphic illustrates the web of interrelated entities and individuals that facilitated the Company's fabrication of revenues:



82.   In addition, purchasers of Luckin vouchers had links to Defendant Lu's previous ventures such as Car Inc. or Ucar, or links to a relative or friend of Defendant Lu. For example, according to *The Wall Street Journal*, Date Yingfei (Beijing) Data Technology Development Co. Ltd. ("Yingfei") – one of the regular bulk buyers of coffee vouchers – "has the same phone number as a branch of CAR Inc. and a predecessor of Ucar." The article further reported that Qingdao Zhixuan Business Consulting Co. Ltd. – a company connected to Defendant Lu and his personal

- 29 -

Case 1:20-cv-01293-JPC   Document 286-3   Filed 06/07/21   Page 34 of 72

venture, Ucar Inc. – bought RMB960,000 ($134,000) worth of Luckin vouchers in a single order and made more than a hundred similar purchases over a seven-month period from May 2019 to November 2019. Corporate records "link this company to a relative of Mr. Lu, to an executive of Mr. Lu's previously founded Ucar Inc. and to a Luckin executive, via a complex web of other companies and their directors and shareholders." The article further reported that "Qingdao Zhixuan also has the same telephone number as a branch of CAR Inc. and is registered with a Ucar email address." In another example, Zhengzhe International Trade (Xiamen) Co. ("Zhengzhe") – a supplier of raw materials to Luckin – shared a legal representative with Yingfei, Wang Baiyin, who was a former classmate of Mr. Lu. According to the article, "Mr. Wang owns 60% of Date and 95% of Zhengzhe[.]"

83. On June 19, 2020, Luckin announced that it would hold an extraordinary general meeting scheduled for July 5, 2020, to allow shareholders to vote on resolutions to oust several members of Luckin's Board, including Defendants Lu, Shao, Li, and E. Liu.

84. On June 23, 2020, the Company announced that it had received a second notice from NASDAQ that its ADSs would be delisted due to its failure to complete its annual report and conclude its investigation. Luckin's ADSs were delisted from the NASDAQ at market open on June 29, 2020.

85. On July 1, 2020, Luckin announced the conclusions of its internal investigation stating, in pertinent part, as follows: "[e]vidence discovered to date demonstrates that the Company's former Chief Executive Officer, Ms. Jenny Zhiya Qian, former Chief Operating Officer, Mr. Jian Liu and certain employees reporting to them participated in the fabricated transactions and that the funds supporting the fabricated transactions were funneled to the Company through a number of third parties associated with the Company employees and/or related

- 30 -

parties." Luckin also stated that, in an effort to strengthen its materially deficient internal control system, it would "charter[] an internal audit function to test and evaluate its control functions."

86. On July 31, 2020, China's Ministry of Finance announced that, following a months-long investigation, its Supervision and Evaluation Bureau would impose fines on two of Luckin's Chinese-registered subsidiaries. The Ministry of Finance's report also confirmed that between April 2019 and December 2019, Luckin had inflated its sales revenue, income, operating expenses, and profit by engaging in hundreds of millions of dollars' worth of fabricated transactions.

87. On September 22, 2020, the Chinese State Administration for Market Regulation ("SAMR") similarly announced its own conclusion that Luckin Company inflated its sales revenue, costs, profit and other key indicators of its business operations. After raiding Luckin's corporate headquarters, the SAMR determined that it would impose RMB61 million (US$8.61 million) in administrative sanctions on Luckin and each of these related entities.

88. On December 16, 2020, Luckin agreed to pay $180 million to settle SEC allegations that the Company had misled investors by failing to accurately report its revenues, expenses and net operating losses to investors. The SEC also filed a complaint which found that Luckin had employed at least three methods to fabricate its financial results. In the first, Luckin fabricated coupon sales and redemptions by purported individual customers to create artificial revenue. In the second, Luckin employees fabricated coupon sales to purported corporate customers – all of whom were in fact associated with Luckin's related entities. In the third, Luckin employees fabricated sales to third-party shell-companies that re-sold coupons to individual customers.

89. At the close of Luckin's own internal investigation, the Company admitted that its net revenues had been overstated by between *80% to 90%*. The discrepancy between the Company's actual and reported net revenues is illustrated in the chart below:

- 31 -

Case 1:20-cv-01293-JPC    Document 286-3    Filed 06/07/21    Page 36 of 72



90.     Luckin has also admitted that it had materially misstated its reported costs and expenses in its representations to investors.  Specifically, Luckin stated that its expense had been overstated by 10.4% and 32.25% for the second and third quarter of 2019, respectively.

91.     Following the Offerings, the price of Luckin ADSs fell as low as $1.39 per ADS. This price represented a nearly **97% *decline*** from the price at which Luckin's ADSs had been sold to the investing public in the SPO.  The dramatic decline in the Company's share price so soon after the Offerings is illustrated in the graph below:

- 32 -

Case 1:20-cv-01293-JPC    Document 286-3    Filed 06/07/21    Page 37 of 72



92.     At the time of the filing of this Consolidated Complaint, the price of Luckin ADSs has remained significantly below IPO and SPO prices.  The price of the Luckin Notes sold in the Note Offering has similarly plummeted, falling as much as 80% below par, as reflected in the following chart:



- 33 -

**Materially False and Misleading Statements and Omissions in the IPO Registration Statement**

93. The IPO Registration Statement was negligently prepared and, as a result, contained untrue statements of material fact, omitted material facts necessary to make the statements contained therein not misleading and failed to make adequate disclosures required under the rules and regulations governing the preparation of such documents.

> a) **Misstatements and Omissions Regarding Luckin's Profitability and Revenue Growth**

94. The IPO Registration Statement represented that Luckin's "revenue growth [was] mainly driven by [its] ability to attract new customers and actively engage existing customers."

95. In particular, the IPO Registration Statement represented that the core of Luckin's business was a "technology-driven new retail model to provide coffee and other products with high quality, high affordability and high convenience to our customers." According to the IPO Registration Statement, this "disruptive model has fulfilled the large unmet demand for coffee and driven its mass market consumption in China, while allowing [the Company] to achieve significant scale and growth since [its] inception." The IPO Registration Statement claimed that Luckin's "focus on technologies has enabled [it] to operate efficiently, [and] grow rapidly while maintaining quality control."

96. In addition, the IPO Registration Statement stated that a core component of Luckin's "new retail model" was its "mobile apps" and quickly growing store network. The IPO Registration Statement claimed that the Company's mobile app "offer[s] customers a 100% cashier-less environment, enabling them to purchase coffee and other product items at their fingertips" and to "easily choose the nearest store automatically recommended and view other store options, place orders in advance without queuing, make payment, watch live streams of the coffee-making process and receive real-time order status updates."

- 34 -

97.     According to the IPO Registration Statement, Luckin harnessed its technological innovations to create a customized experience for its consumers. The IPO Registration Statement described Luckin's "centralized technology system" as follows: "[w]e will continue to analyze customer behavior and transaction data to more accurately identify [customer] needs and tailor our sales and marketing efforts towards each customer. By matching customers' needs with our high-quality and affordable product offerings, we expect to improve customer retention." The IPO Registration Statement continued, in pertinent part, as follows:

> Leveraging our big data analytics and AI capabilities, we have adopted a dynamic pricing model where we use algorithms to adjust and apply different discounts to our customers with different consumption preferences in the form of coupons and discount vouchers, taking into account a number of factors, including costs of materials and customer demand. Specifically, we analyze customer behavior and transaction data to more accurately identify their needs and tailor our sales and marketing efforts towards each customer.

98.     The IPO Registration Statement also claimed that Luckin's technology infrastructure had enabled it to take advantage of "effective selling prices" to increase profitability. The IPO Registration Statement explained that the Company "adopted a dynamic pricing model where we use algorithms to adjust and apply different discounts to our customers with different consumption preferences in the form of coupons and discount vouchers." It continued, "[t]he effective selling prices of our products represent our retail prices after applying such discounts."

99.     The IPO Registration Statement further described Luckin's store network, which it stated focused predominantly on "pick-up stores," with these stores accounting for 91.3% of all Company stores as of March 31, 2019. The IPO Registration Statement claimed that these stores were particularly profitable because they had limited seating and were located in areas of high demand for coffee such as office buildings, commercial areas and university campuses. The IPO Registration Statement further stated that these pick-up stores allowed the Company to "stay close to our target customers and expand rapidly with low rental and decoration costs."

- 35 -

Case 1:20-cv-01293-JPC    Document 286-3    Filed 06/07/21    Page 40 of 72

100.   The IPO Registration Statement represented that Luckin's business initiatives and disruptive business model had resulted in rapidly accelerating operational trends, including in the number of store openings, transacting customers, and items sold.   Specifically, the IPO Registration Statement stated that the Company had grown its store count from just nine stores in 2017 to 2,370 by the first quarter of 2019.   The IPO Registration Statement also stated that, during this time period, Luckin's cumulative number of transacting customers grew from just 11,100 to more than 16.8 million.   The IPO Registration Statement summarized these results in the following tables:

|  | For the three months ended, | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
|  | December 31, 2017 | March 31, 2018 | June 30, 2018 | September 30, 2018 | December 31, 2018 | March 31, 2019 |
| Number of stores at the beginning of the period | 0 | 9 | 290 | 624 | 1,189 | 2,073 |
| Number of stores at the end of the period | 9 | 290 | 624 | 1,189 | 2,073 | 2,370 |
| Net increase in the number of stores | 9 | 281 | 334 | 565 | 884 | 297 |

|  | For the three months ended or as of | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
|  | December 31, 2017 | March 31, 2018 | June 30, 2018 | September 30, 2018 | December 31, 2018 | March 31, 2019 |
| Total stores | 9 | 290 | 624 | 1,189 | 2,073 | 2,370 |
| Pick-up stores | 4 | 83 | 356 | 903 | 1,811 | 2,163 |
| Relax stores | 5 | 15 | 22 | 45 | 86 | 109 |
| Delivery kitchens | 0 | 192 | 246 | 241 | 176 | 98 |
| Cumulative number of transacting customers (in thousands)[1] | 11.1 | 485.0 | 2,917.8 | 5,984.3 | 12,529.5 | 16,872.3 |
| Average monthly transacting customers (in thousands)[2] | 4.0 | 179.5 | 1,207.6 | 1,877.4 | 4,325.9 | 4,402.0 |
| Average monthly total items sold (in thousands)[3] | 8.6 | 487.5 | 4,001.0 | 7,760.3 | 17,645.1 | 16,275.8 |
| Freshly brewed drinks | 8.0 | 451.7 | 3,743.7 | 6,220.4 | 13,418.8 | 13,077.2 |
| Other products | 0.5 | 35.8 | 257.3 | 1,539.9 | 4,226.4 | 3,198.6 |

101.   According to the IPO Registration Statement, the Company's store network was critical to Luckin's growth.   The IPO Registration Statement stated, in pertinent part, as follows:

> Our expanding presence in the market will also enhance our brand image, which we believe will further reduce our customer acquisition costs.  We believe that our new retail model can help create a virtuous cycle which reinforces our leadership position.  With more stores, we can serve more customers, accumulate more data, and achieve higher operational efficiency.

102.   The IPO Registration Statement also represented that the Company's rapid store and customer growth had propelled an extraordinary expansion in quarterly net revenues.  The IPO Registration Statement stated that Luckin had only achieved RMB250,000 in net revenues in 2017,

- 36 -

Case 1:20-cv-01293-JPC Document 286-3 Filed 06/07/21 Page 41 of 72

but that this figure had increased to over RMB840 million by 2018. The IPO Registration Statement included the following tables depicting this astronomical growth in net revenues:

| | Period from the inception date to December 31, 2017 | | For the year ended December 31, 2018 | | | For the three months ended March 31, 2018 | | 2019 | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | RMB | % | RMB | US$ | % | RMB | % | RMB | US$ | % |
| | | | | | (in thousands, except for percentages) | | | | | |
| **Net revenues:** | | | | | | | | | | |
| Freshly brewed drinks | 215 | 86.0% | 649,609 | 96,795 | 77.3% | 9,575 | 73.9% | 361,095 | 53,805 | 75.4% |
| Other products | 25 | 10.0% | 135,642 | 20,211 | 16.1% | 1,403 | 10.8% | 83,980 | 12,513 | 17.6% |
| Others | 10 | 4.0% | 55,444 | 8,261 | 6.6% | 1,976 | 15.3% | 33,435 | 4,982 | 7.0% |
| **Total net revenues** | 250 | 100.0% | 840,695 | 125,267 | 100.0% | 12,954 | 100.0% | 478,510 | 71,300 | 100.0% |

| | For the three months ended | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | March 31, 2018 | | June 30, 2018 | | September 30, 2018 | | December 31, 2018 | | March 31, 2019 | |
| | RMB | % | RMB | % | RMB | % | RMB | % | RMB | % |
| | (RMB in thousands, except for percentages) | | | | | | | | | |
| **Net revenues:** | | | | | | | | | | |
| Freshly brewed drinks | 9,575 | 73.9% | 100,518 | 82.7% | 192,666 | 80.0% | 346,850 | 74.6% | 361,095 | 75.4% |
| Other products | 1,403 | 10.8% | 8,449 | 7.0% | 34,397 | 14.3% | 91,393 | 19.6% | 83,980 | 17.6% |
| Others | 1,976 | 15.3% | 12,542 | 10.3% | 13,736 | 5.7% | 27,190 | 5.8% | 33,435 | 7.0% |
| **Total net revenues** | 12,954 | 100.0% | 121,509 | 100.0% | 240,799 | 100.0% | 465,433 | 100.0% | 478,510 | 100.0% |

103.     The IPO Registration Statement also described favorable business trends with respect to Luckin's new customer acquisition costs. According to the IPO Registration Statement, throughout 2018, Luckin had experienced a dramatic increase in its customer count and a simultaneous decline in customer acquisition expenses as the Company achieved economies of scale. Luckin summarized these trends in the IPO Registration Statement using the following charts:

- 37 -

Case 1:20-cv-01293-JPC    Document 286-3    Filed 06/07/21    Page 42 of 72



104.    The IPO Registration Statement also claimed that Luckin's revenue growth and reduction in store-level operating losses were "mainly driven by [its] ability to attract new customers and actively engage existing customers." According to the IPO Registration Statement, this growth was due to the Company's "new retail model . . . built upon [its] mobile apps and store network[.]"

105.    The IPO Registration Statement highlighted Luckin's marketing and advertising initiatives as the impetus of the Company's explosive growth. For example, the IPO Registration Statement stated that Luckin had "invested significantly in branding, sales and marketing to acquire and retain customers since [the Company's] inception." Luckin further represented that,

- 38 -

Case 1:20-cv-01293-JPC    Document 286-3    Filed 06/07/21    Page 43 of 72

as a result of the Company's "strong data analytics capabilities and smart supply chain management system, [it was] able to analyze sales and inventory status for each store on a real-time basis and efficiently replenish inventory."

106.    The statements referenced in ¶¶94-105 above were materially false and misleading because they failed to disclose that, at the time of the IPO, Luckin's business was not as successful as represented and that Luckin's senior officers were actively involved in a scheme to materially overstate the Company's financial results through fabricated transactions and the establishment of an illicit network of related entities, shell companies and fictitious personnel.

### b)    Misstatements and Omissions Regarding Legal and Regulatory Compliance

107.    The IPO Registration Statement contained a section entitled "Risk Factors," which stated that Luckin's success depended on its ability to "ensure full compliance with relevant laws and regulations, and maintain adequate and effective control, supervision and risk management over our stores[.]"  The IPO Registration Statement similarly stated that "[w]e may be unsuccessful in operating our stores" and that "operating results of our stores have been and will continue to be subject to a number of factors" including the Company's "ability to ensure full compliance with relevant laws and regulations, and maintain adequate and effective control, supervision and risk management over our stores[.]"

108.    The IPO Registration Statement also acknowledged that Luckin's ability to successfully grow its brand and business depended on its ability to "stay compliant with relevant laws and regulations[.]"  Luckin further explained that its ability to "successfully manage [its] rapid growth" depended on "effectively managing [its] supply chain and ensuring [its] third-party suppliers continue to meet [its] quality and other standards and satisfy [its] future operations' needs[.]"

- 39 -

109. The statements set forth in ¶¶107-108 above were materially false and misleading at the time of the IPO. Specifically, although the IPO Registration Statement acknowledged the material importance of Luckin maintaining effective internal controls and complying with relevant laws and regulations, it failed to disclose that, at the time of the filing of the IPO Registration Statement and at the time of the IPO, the Company's senior management was actively generating fictitious transactions to create the illusion of sales growth, in violation of the law – including the U.S. federal securities laws. Furthermore, the IPO Registration Statement misleadingly presented as potential risks adverse facts that had already materialized, including the fact that Luckin and its senior officers were actively involved in a scheme to materially overstate the Company's financial results through fabricated transactions, and had been since at least April 2019.

### c) Misstatements and Omissions Regarding Luckin's Compliance with GAAP

110. The IPO Registration Statement claimed that Luckin's financial statements and disclosures had been prepared in accordance with GAAP and that the Company's consolidated financial statements contained all necessary adjustments. The IPO Registration Statement included operating data and audited consolidated financial data for the periods from June 16, 2017 through December 31, 2017, and the year ended December 31, 2018, and operating data and unaudited quarterly financial data for the four quarters of 2018 and the three months ended March 31, 2019. The IPO Registration Statement stated, in pertinent part, as follows:

**Critical Accounting Policies**

***We prepare our financial statements in accordance with U.S. GAAP, which requires our management to make estimates and assumptions that affect the reported amounts of assets and liabilities at the balance sheet dates and revenues and expenses during the reporting periods***. We continually evaluate these judgments and estimates based on our own historical experience, knowledge and assessment of current business and other conditions, our expectations regarding the future based on available information and assumptions that we believe to be reasonable, which together form our basis for making judgments about matters that

- 40 -

are not readily apparent from other sources. Since the use of estimates is an integral component of the financial reporting process, our actual results could differ from those estimates. Some of our accounting policies require a higher degree of judgment than others in their application.

111.    The statements referenced in ¶110 above regarding the Company's compliance with GAAP were materially false and misleading because they failed to disclose that, at the time of the IPO, Luckin's senior officers were actively involved in a scheme to materially overstate the Company's financial results through fabricated transactions in violation of applicable GAAP standards and procedures. Notably, SEC Regulation S-X, 17 C.F.R. §210, *et seq.*, governs the content of financial statements filed with the SEC in registration statements under the Securities Act. Regulation S-X, 17 C.F.R. § 210 – 01 (a)(1) states that "[f]inancial statements filed with the [SEC] which are not prepared in accordance with generally accepted accounting principles will be presumed to be misleading or inaccurate[.]"

112.    The IPO Registration Statement also contained representations regarding the Company's purported revenue recognition practices, which it claimed complied with standard accounting principles. The IPO Registration Statement stated, in pertinent part, as follows:

(l) *Revenue recognition*

\*      \*      \*

*From time to time, for promotional purposes, the Group issues to customers discounts in the form of coupons that can be applied for future purchases. As the customers are required to make future purchases of freshly brewed drinks or pre-made food and beverage items when redeeming the coupons, the Group recognizes the amounts of discounts as reductions of revenues at the time of coupon redemption in accordance with ASC 605-50.*

113.    The statements in ¶112 above were materially false and misleading because they failed to disclose that, at the time of the IPO, Luckin and its senior officers were actively involved in a scheme to materially overstate the Company's financial results through fabricated sales of coupons which Luckin and its senior officers knew would never be redeemed for "freshly brewed

- 41 -

drinks or premade food and beverage items." This violated applicable revenue recognition standards and procedures, including those set forth in ASC 605-50.

### d) Misstatements and Omissions Regarding Luckin's Remediation of Internal Control Weaknesses

114. The IPO Registration Statement stated that during the audit of Luckin's consolidated financial statements for the year ended December 31, 2018, the Company and its outside auditor identified the following two material weaknesses in the Company's internal control over financial reporting: (i) the "lack of sufficient accounting and financial reporting personnel with requisite knowledge and experience in application of U.S. GAAP and the Securities Exchange Commission, or the SEC, rules"; and (ii) the "lack of financial reporting policies and procedures that are commensurate with U.S. GAAP and the SEC reporting requirements." The Company further represented that remediation of these internal control weaknesses was currently underway. Luckin stated, in pertinent part, as follows:

> The material weaknesses identified are our company's lack of sufficient accounting and financial reporting personnel with requisite knowledge and experience in application of United States generally accepted accounting principles and Securities and Exchange Commission rules, and lack of financial reporting policies and procedures that are commensurate with U.S. GAAP and SEC reporting and compliance requirements.
>
> *We are in the process of implementing a number of measures to address these material weaknesses identified, including: (i) hiring additional accounting and financial reporting personnel with U.S. GAAP and SEC reporting experience, (ii) expanding the capabilities of existing accounting and financial reporting personnel through continuous training and education in the accounting and reporting requirements under U.S. GAAP, and SEC rules and regulations, (iii) developing, communicating and implementing an accounting policy manual for our accounting and financial reporting personnel for recurring transactions and period-end closing processes, and (iv) establishing effective monitoring and oversight controls for non-recurring and complex transactions to ensure the accuracy and completeness of our company's consolidated financial statements and related disclosures*.

- 42 -

115.    The statements set forth in ¶114 above regarding the Company's internal control over financial reporting were materially false and misleading because, at the time of the IPO, Luckin had not taken steps to fortify its internal controls and did not "charter[] and internal audit function to test and evaluate its control functions" until forced to do so after the accounting scandal became public in 2020.  Rather, at the time of the IPO, the Company's senior officers were exploiting those weaknesses to execute their plan to fabricate Luckin's revenues and expenses.

### e)    Misstatements and Omissions Regarding Subsequent Events

116.    As required by ASC 855, the IPO Registration Statement purported to disclose all material "SUBSEQUENT EVENTS" impacting the Company in the notes to the financial statements.  Note 20 to Luckin's consolidated financial statements identified only two subsequent events: (i) the issuance of Series B Preferred Shares on January 9, 2019; and (ii) the adoption of a share option plan on January 18, 2019.

117.    The subsequent event statements set forth in ¶116 above were materially false and misleading because they failed to disclose the material subsequent event that the Company and its senior officers were actively engaged in a scheme to inflate the Company's revenues and expenses through fabricated transactions which ultimately resulted in the overstatement of Luckin's revenues by 40.3% and expenses by 10.4% in the second quarter of 2019 – the quarter in which the IPO occurred.  Pursuant to ASC 855, Defendants were required to disclose all events "of such nature that they must be disclosed to keep the financial statements [of Luckin] from being misleading," but failed to do so.

### f)    Misstatements and Omissions Regarding Related-Party Transactions

118.    The IPO Registration Statement was required to disclose, and purported to have disclosed all material related-party transactions involving Luckin and its officers and directors. The IPO Registration Statement contained the following discussion of related-party transactions:

- 43 -

Case 1:20-cv-01293-JPC Document 286-3 Filed 06/07/21 Page 48 of 72

**Transactions with Ms. Jenny Zhiya Qian and Mr. Min Chen**

In 2017, we received a loan from Ms. Jenny Zhiya Qian of RMB50 million and a loan from Mr. Min Chen, our then director, of RMB10 million to support our working capital management. The loan is interest-free with a term of one year and permits prepayment. We settled all the outstanding balance of the related party loans due to Ms. Jenny Zhiya Qian and Mr. Min Chen in 2018.

**Transactions with Haode Investment, Haode Group, UCAR and QWOM**

In 2017, we received a loan of RMB1.8 million from Haode Investment Inc., a shareholder of our company and an affiliate of Mr. Charles Zhengyao Lu, to support our working capital management. The loan is interest-free with a term of one year and permits prepayment. We settled all the outstanding balance of the related party loan due to Haode Investment Inc. in 2018.

In 2018, we provided a loan of RMB147.6 million (US$22.0 million) to Haode Group Inc., an affiliate of by [sic] Mr. Charles Zhengyao Lu. The loan is interest-free with a term of six months and permits prepayment. We settled all the outstanding balance of the related-party loan due from Haode Group Inc. in February 2019.

We rent certain office space from UCAR Inc. In 2018 and in the three months ended March 31, 2019, the amount for the rent for UCAR. Inc. was RMB3.2 million (US$0.5 million) and RMB 1.0 million (US$0.1 million), respectively, and as of December 31, 2018 and March 31, 2019, the amount due to UCAR. Inc. was RMB1.0 million (US$0.1 million) and RMB 1.0 million (US$0.1 million), respectively.

We received advertising service from Beijing QWOM Digital Technology Co., Ltd., or QWOM, an affiliate of CAR Inc., which is an affiliate of Mr. Charles Zhengyao Lu. In 2018 and in the three months ended March 31, 2019, the amount for advertising service fee for QWOM was RMB 42.9 million (US$ 6.4 million) and RMB 7.6 million (US$1.1 million), respectively, and as of December 31, 2018 and March 31, 2019, the amount due to QWOM was RMB 23.2 million (US$3.5 million) and RMB 7.0 million (US$1.0 million), respectively.

**Transaction with Primus**

In 2017, we received a loan of RMB92.9 million from Primus Investments Fund, L.P., a shareholder of our company and an affiliate of Mr. Charles Zhengyao Lu, to support our working capital management. The loan is interest-free with a term of one year and permits prepayment. We settled all the outstanding balance of the related party loan due to Primus Investments Fund, L.P. in 2018.

- 44 -

**Transaction with Star Grove**

In 2017, we received a loan of RMB227.5 million from Star Grove Global Limited, a shareholder of our company, to support our working capital management. The loan is interest-free with a term of one year and permits prepayment. We settled all the outstanding balance of the related party loan due to Star Grove Global Limited in 2018.

119.    The statements set forth in ¶118 above regarding Luckin's related-party transactions were materially incomplete and therefore false and misleading when made. ASC 850 (Related Party Disclosures) required that defendants disclose the following facts regarding all of Luckin's material related-party transactions: (i) the nature of the relationship; (ii) a description of the transactions (even if the transaction involved nominal amounts) including "information deemed necessary to an understanding of the effects of the transactions on the financial statements"; (iii) the dollar amount of the transactions for all periods that income statements were presented; and (iv) "amounts due from or to related parties." ASC 850-10-50-1. Luckin has subsequently admitted that "[e]vidence discovered to date demonstrates that the Company's former Chief Executive Officer, Ms. Jenny Zhiya Qian, former Chief Operating Officer, Mr. Jian Liu and certain employees reporting to them participated in the fabricated transactions and that the funds supporting the fabricated transactions were funneled to the Company through a number of third parties associated with the Company employees and/or related parties." In addition, Luckin sold purported vouchers and made supplier payments to dozens of entities linked directly to Defendant Lu. Per ASC 850, these facts were required to be disclosed in the IPO Registration Statement as transactions with a related-party or entity with common control relationships as the information "would make a difference in decision making." ASC 850-10-10-1.

- 45 -

### g)      Misstatements and Omissions Regarding Seasonality

120.      The IPO Registration Statement represented that Luckin's business was seasonal and that the Company expected a slow-down in orders in the first quarter of every year as a result of this seasonality.  The IPO Registration Statement stated, in pertinent part, as follows:

> We experience seasonality in our business, primarily as a result of orders fluctuations in holiday seasons.  For example, we generally experience fewer purchase orders during Chinese New Year holidays which fall between late January and late February.  The decrease of sales during the holiday seasons is a typical pattern in the coffee market.

121.      The statements referenced in ¶120 above were materially false and misleading when made because they failed to disclose that the deceleration in Luckin's growth trends that occurred in the first quarter of 2019 was not due to these seasonal factors, but instead a function of the Company's flagging business as Luckin reached market saturation, which Luckin officers were in the process of reversing by engaging in the large-scale fabrication of the Company's financial results as detailed herein.

### Materially False and Misleading Statements and Omissions in the SPO Registration Statement and the Notes Prospectus

122.      The SPO Registration Statement and the Notes Prospectus were negligently prepared and, as a result, contained untrue statements of material fact, omitted material facts necessary to make the statements contained therein not misleading and failed to make adequate disclosures required under the rules and regulations governing the preparation of such documents.

123.      The SPO Registration Statement and the Notes Prospectus included representations that were substantially similar to those set forth in the IPO Registration Statement.  These included representations regarding, *inter alia*: (i) the Company's innovative "technology-driven new retail model," as detailed in ¶¶95-98; (ii) the Company's store network growth initiatives, as detailed in ¶¶99-102; (iii) the Company's "centralized technology system," as detailed in ¶97; (iv) the

- 46 -

Company's revenue derived from new customer acquisitions, as detailed in ¶¶103-104; (v) the Company's internal controls and compliance with applicable laws and regulations, as detailed in ¶114; (vi) related-party transactions involving the Company's senior officers and directors, as detailed in ¶118; and (vii) the Company's purported first quarter seasonality, as detailed in ¶120.

### a)  Misstatements and Omissions Regarding Luckin's Revenue and Expenses

124.    In addition to the materially false and misleading statements identified above, the SPO Registration Statement and the Notes Prospectus claimed that the Company's impressive growth trends had continued in the lead up to the SPO and the Note Offering.  The SPO Registration Statement and the Notes Prospectus stated, in pertinent part, as follows:

> We have also been able to cultivate a large and loyal customer base and achieve strong growth.  Within two years, we expanded from a single trial store in Beijing to 3,680 self-operated coffee stores in 43 cities in China as of September 30, 2019. We had over 30.7 million of cumulative transacting customers as of September 30, 2019.  In addition, our customer repurchase rate in 2018 was over 54%.

125.    Additionally, under the heading "Recent Developments," Luckin stated that it believed that, as of December 31, 2019, the Company had met its goal of becoming the largest coffee network in China, in terms of store count.  Luckin reported that it had opened 4,507 self-operated stores in China and had over 40 million cumulative transacting customers as of December 31, 2019.

126.    The statements in ¶¶124-125 above were materially false and misleading because Luckin's recent purported growth trends were not attributable to the Company's successful business model or technological innovation.  Rather, the Company and its senior officers had perpetrated an elaborate scheme to fabricate financial transactions ultimately valued at RMB2.2 billion (US$310 million) since at least April 2019.  Thus, claimed growth trends in the SPO Registration Statement and the Notes Prospectus were driven, in large part, by the

- 47 -

overstatement of revenues and operational results as a result of hundreds of millions of dollars' worth of illicit transactions.

127. The SPO Registration Statement and the Notes Prospectus stated that Luckin had achieved RMB2.9 billion (US$409.8 million) in total revenues for the nine months ended September 30, 2019. This represented a stunning 680.6% increase from RMB375.3 million reported for the nine months ended 2018. The offering materials credited Luckin's rapid revenue growth to the "significant increase in the number of our transacting customers, effective selling prices and purchasing frequency per customer." The following table provided in the SPO Registration Statement and the Notes Prospectus claimed to illustrate Luckin's extraordinary net revenue growth in the first nine months of 2019:

| | Period from the inception date to December 31, | | For the year ended December 31, | | | For the nine months ended September 30, | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 2017 | | 2018 | | | 2018 | | 2019 | | |
| | RMB | % | RMB | US$ | % | RMB | % | RMB | US$ | % |
| | | | | | (in thousands, except for percentages) | | | | | |
| Net revenues : | | | | | | | | | | |
| Freshly brewed drinks | 215 | 86.0% | 649,609 | 90,884 | 77.3% | 302,759 | 80.7% | 2,165,614 | 302,981 | 74.0% |
| Other products | 25 | 10.0% | 135,642 | 18,977 | 16.1% | 44,249 | 11.8% | 642,662 | 89,912 | 21.9% |
| Others | 10 | 4.0% | 55,444 | 7,757 | 6.6% | 28,254 | 7.5% | 120,940 | 16,920 | 4.1% |
| Total net revenues | 250 | 100.0% | 840,695 | 117,618 | 100.0% | 375,262 | 100.0% | 2,929,216 | 409,813 | 100.0% |

128. Additionally, the SPO Registration Statement and the Notes Prospectus stated that for the nine-month period ended September 30, 2019, Luckin's "other revenue" was RMB120.9 million (US$16.9 million), representing an increase of 328% over the same period in 2018. According to the offering documents, "[t]he growth of . . . other revenue was in line with the increase of delivery orders."

129. The SPO Registration Statement and the Notes Prospectus included the following table, which compared the Company's financial results from 2017, 2018 and the nine-month period ended September 30, 2019, and purportedly showed tremendous growth across the Company's key financial and operating metrics:

- 48 -

Case 1:20-cv-01293-JPC   Document 286-3   Filed 06/07/21   Page 53 of 72

| | Period from the inception date to December 31, 2017 | For the year ended December 31, 2018 | | For the nine months ended September 30, | | |
|---|---|---|---|---|---|---|
| | | | | 2018 | 2019 | |
| | RMB | RMB | US$ | RMB | RMB | US$ |
| | | | (in thousands) | | | |
| **Summary Consolidated Statements of Comprehensive Loss Data:** | | | | | | |
| **Net revenues:** | | | | | | |
| Freshly brewed drinks | 215 | 649,609 | 90,884 | 302,759 | 2,165,614 | 302,981 |
| Other products | 25 | 135,642 | 18,977 | 44,249 | 642,662 | 89,912 |
| Others | 10 | 55,444 | 7,757 | 28,254 | 120,940 | 16,920 |
| **Total net revenues** | 250 | 840,695 | 117,618 | 375,262 | 2,929,216 | 409,813 |
| **Operating expenses:** | | | | | | |
| Cost of materials | (789) | (532,217) | (74,460) | (236,838) | (1,462,763) | (204,648) |
| Store rental and other operating costs | (1,559) | (576,244) | (80,619) | (292,710) | (1,131,136) | (158,252) |
| Depreciation expenses | (917) | (106,690) | (14,926) | (47,811) | (280,979) | (39,310) |
| Sales and marketing expenses | (25,464) | (746,018) | (104,372) | (457,728) | (1,115,872) | (156,116) |
| General and administrative expenses | (22,005) | (379,738) | (53,127) | (232,236) | (684,836) | (95,812) |
| Store preopening and other expenses | (5,723) | (97,794) | (13,682) | (62,174) | (61,318) | (8,579) |
| **Total operating expenses** | (56,457) | (2,438,701) | (341,186) | (1,329,497) | (4,736,904) | (662,717) |
| **Operating loss** | (56,207) | (1,598,006) | (223,568) | (954,235) | (1,807,688) | (252,904) |
| Interest income | 11 | 8,915 | 1,247 | 3,716 | 47,538 | 6,651 |
| Interest and financing expenses | — | (16,121) | (2,255) | (7,982) | (24,098) | (3,371) |
| Foreign exchange (loss) gain, net | (175) | 13,113 | 1,835 | 15,627 | 29,741 | 4,161 |
| Other expenses | — | (7,777) | (1,088) | (6,288) | (2,092) | (293) |
| Change in the fair value of warrant liability | — | (19,276) | (2,697) | (991) | (8,322) | (1,164) |
| **Net loss before income taxes** | (56,371) | (1,619,152) | (226,526) | (950,153) | (1,764,921) | (246,920) |
| Income tax expense | — | — | — | — | — | — |
| **Net loss** | (56,371) | (1,619,152) | (226,526) | (950,153) | (1,764,921) | (246,920) |
| Add: accretion to redemption value of convertible redeemable preferred shares | — | (1,571,182) | (219,816) | (793,992) | (552,036) | (77,233) |
| Add: deemed distribution to a certain holder of Series B convertible redeemable preferred shares | — | — | — | — | (2,127) | (298) |
| **Net loss attributable to our company's Ordinary Shareholders** | (56,371) | (3,190,334) | (446,342) | (1,744,145) | (2,319,084) | (324,451) |

130. Moreover, the SPO Registration Statement and the Notes Prospectus represented that Luckin had achieved net revenues of RMB643 million (US$90 million) in its "other products" category for the nine months ended September 30, 2019 (about 22% of the Company's total net revenues), a category which included non-coffee items such as tea, juices and light meals. The offering materials also represented that for the "freshly brewed drinks" category, it had achieved net revenues of RMB2,165.6 (US$303 million) for the nine months ended September 30, 2019, representing a 615% increase from the same period in the prior year. The offering documents claimed that "[t]he growth of [Luckin's] freshly brewed drinks revenue was primarily driven by the significant increase in the number of . . . freshly brewed drinks sold."

131. The statements set forth in ¶¶127-130 above were materially false and misleading because the financial results reported in the SPO Registration and the Notes Prospectus were materially overstated and included fabricated financial transactions during 2019 ultimately

- 49 -

calculated to total RMB2.2 billion (US$310 million), including tens of millions of dollars' worth of falsified transactions for the second and third fiscal quarters of 2019. In addition, revenues in Luckin's "other" products category had been overstated by approximately 400% in the third quarter of 2019.

132. The SPO Registration Statement and Notes Prospectus also highlighted Luckin's purportedly successful efforts to optimize product selling prices and grow its customer base. For example, the offering materials claimed that the purported increase in Luckin's net revenues "was primarily driven by the significant increase in the number of [its] transacting customers, effective selling prices and purchasing frequency per customer." Specifically, the offering materials stated, in pertinent part, as follows:

> ### Effective selling prices of our products
>
> We have adopted a dynamic pricing model where we use algorithms to adjust and apply different discounts to our customers with different consumption preferences in the form of coupons and discount vouchers. ***The effective selling prices of our products represent our retail prices after applying such discounts***. We take into account a number of factors, including cost of materials and customer demand when determining our effective selling prices. Our future profitability will be affected by our ability to properly manage the effective selling prices of our products.

133. The statements set forth in ¶132 above were materially false and misleading at the time of the SPO and the Note Offering because the net selling prices used by the Company did not actually represent retail prices after applying appropriate discounts, but rather had been overstated by more than 12% across the Company's product portfolio. Excluding free products, the actual selling prices of Luckin products was, on average, only 46% of the products' listed prices. Furthermore, the Company's historical net losses were materially higher than represented, a fact obscured by the inclusion of hundreds of millions of dollars' worth of fabricated financial transactions.

134. The SPO Registration Statement and the Notes Prospectus also misrepresented

- 50 -

Case 1:20-cv-01293-JPC    Document 286-3    Filed 06/07/21    Page 55 of 72

Luckin's key operating data.  For example, the offering materials stated that Luckin's cumulative transactions for the three months ended September 30, 2019 totaled over 30.7 million, a five-fold increase in a single year.  The offering materials similarly claimed that Luckin had over 9.3 million average monthly transacting customers during the third quarter of 2019, a nearly five-fold increase year over year, and that the Company had achieved over 44.2 million average monthly items sold during the quarter, a nearly six-fold increase year over year.

135.    The statements set forth in ¶134 above were materially false and misleading because the number of items sold per store by Luckin during the third quarter of 2019 had been overstated by at least 69%.

136.    The SPO Registration Statement and the Notes Prospectus also reported operating expenses for Luckin's fiscal 2018 and the nine-month period ended on September 30, 2019 by providing the following chart which purported to detail the Company's historical expenses:

| | Period from the inception date to December 31, 2017 | | For the year ended December 31, 2018 | | | For the nine months ended September 30, 2018 | | For the nine months ended September 30, 2019 | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | RMB | % | RMB | US$ | % | RMB | % | RMB | US$ | % |
| | | | | | (in thousands, except for percentages) | | | | | |
| **Operating expenses:** | | | | | | | | | | |
| Cost of materials | 789 | 1.4% | 532,217 | 74,460 | 21.8% | 236,838 | 17.8% | 1,462,763 | 204,648 | 30.9% |
| Store rental and other operating costs | 1,559 | 2.8% | 576,244 | 80,619 | 23.6% | 292,710 | 22.0% | 1,131,136 | 158,252 | 23.9% |
| Depreciation expenses | 917 | 1.6% | 106,690 | 14,926 | 4.4% | 47,811 | 3.6% | 280,979 | 39,310 | 5.9% |
| Sales and marketing expenses | 25,464 | 45.1% | 746,018 | 104,372 | 30.6% | 457,728 | 34.4% | 1,115,872 | 156,116 | 23.6% |
| General and administrative expenses | 22,005 | 39.0% | 379,738 | 53,127 | 15.6% | 232,236 | 17.5% | 684,836 | 95,812 | 14.4% |
| Store preopening and other expenses | 5,723 | 10.1% | 97,794 | 13,682 | 4.0% | 62,174 | 4.7% | 61,318 | 8,579 | 1.3% |
| | 56,457 | 100.0% | 2,438,701 | 341,186 | 100.0% | 1,329,497 | 100.0% | 4,736,904 | 662,717 | 100.0% |

- 51 -

137.    Regarding operating expenses, the SPO Registration Statement and the Notes Prospectus further stated, in pertinent part, as follows:

> Our operating expenses were RMB4,736.9 (US$662.7 million) in the nine months ended September 30, 2019, compared to RMB1,329.5 million in the nine months ended September 30, 2018. The growth of our operating expenses was in line with our business expansion. Meanwhile, our operating expenses as a percentage of our net revenues decreased from 354.3% in the nine months ended September 30, 2018 to 161.7% in the nine months ended September 30, 2019, mainly driven by the increased economies of scale and our technology-driven operations.

138.    The statements set forth in ¶¶136-137 above were materially false and misleading because the Company's operating expenses had been overstated by 10.4% and 32.25% in the second and third quarter of 2019, respectively.

139.    The SPO Registration Statement and the Notes Prospectus contained the following table purporting to show a tremendous increase in the number of Luckin stores in the periods leading up to the SPO and the Note Offering:

| | For the three months ended or as of | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | December 31, 2017 | March 31, 2018 | June 30, 2018 | September 30, 2018 | December 31, 2018 | March 31, 2019 | June 30, 2019 | September 30, 2019 |
| **Total coffee stores** . . . . . . . | **9** | **290** | **624** | **1,189** | **2,073** | **2,370** | **2,963** | **3,680** |
| Pick-up stores . | 4 | 83 | 356 | 903 | 1,811 | 2,163 | 2,741 | 3,433 |
| Relax stores  . . | 5 | 15 | 22 | 45 | 86 | 109 | 123 | 138 |
| Delivery kitchens  . . . | 0 | 192 | 246 | 241 | 176 | 98 | 99 | 109 |
| **Cumulative number of transacting customers (in thousands)**[1] . . | **11.1** | **485.0** | **2,917.8** | **5,984.3** | **12,529.5** | **16,872.3** | **22,777.5** | **30,723.7** |
| **Average monthly transacting customers (in thousands)**[2] . . | **4.0** | **179.5** | **1,207.6** | **1,877.4** | **4,325.9** | **4,402.0** | **6,166.0** | **9,339.7** |
| **Average monthly total items sold (in thousands)**[3] . . | **8.6** | **487.5** | **4,001.0** | **7,760.3** | **17,645.1** | **16,275.8** | **27,593.0** | **44,244.6** |
| Freshly brewed drinks . . . . . | 8.0 | 451.7 | 3,743.7 | 6,220.4 | 13,418.8 | 13,077.2 | 21,055.7 | 34,655.4 |
| Other products | 0.5 | 35.8 | 257.3 | 1,539.9 | 4,226.4 | 3,198.6 | 6,537.3 | 9,589.2 |

140.    The SPO Registration Statement and the Notes Prospectus also underscored Luckin's apparent success in accumulating new transacting customers. Favorable new transaction

- 52 -

Case 1:20-cv-01293-JPC   Document 286-3   Filed 06/07/21   Page 57 of 72

growth trends were depicted in the graph below, which was included in the SPO Registration

Statement and the Notes Prospectus:



**New transacting customers**

141.    The statements in ¶¶139-140 above regarding Luckin's positive trends with respect

to store growth and customer acquisitions were materially false and misleading because these

results were inflated by $310 million worth of fabricated transactions, as detailed herein.

142.    The SPO Registration Statement and the Notes Prospectus also made the following

representations regarding the costs associated with Luckin's sales and marketing initiatives:

> We have invested significantly in sales and marketing activities to promote our
> brand and our products and to deepen our relationships with customers.  We
> incurred RMB25.5 million, RMB746.0 million (US$104.4 million) and
> RMB1,115.9 million (US$156.1 million) in sales and marketing expenses for the
> period from June 16, 2017 (inception date) to December 31, 2017, the year ended
> December 31, 2018 and the nine months ended September 30, 2019, respectively.

143.    The statements in ¶142 above regarding Luckin's purported investments in sales

and marketing activities were materially false and misleading because Luckin's total costs and

expenses (including sales and marketing expenses) were materially overstated. Luckin used

promotional activities, such as its voucher and coupon program, to facilitate the creation of

fictitious transactions and to inflate Luckin's revenues in the lead-up to the SPO and the Note

Offering.

- 53 -

Case 1:20-cv-01293-JPC   Document 286-3   Filed 06/07/21   Page 58 of 72

144. Luckin subsequently retracted its reported financial results for the second and third quarters of 2019, and all "other communications relating to these consolidated financial statements," stating that "investors should no longer rely upon the Company's previous financial statements and earnings releases."

### b) Misstatements and Omissions Regarding Luckin's Non-GAAP Measures

145. The SPO Registration Statement and the Notes Prospectus contained the following non-GAAP financial measures, including adjusted operating loss, adjusted net loss, and non-GAAP net loss attributable to ordinary shareholders, as reflected in the following table:

| | Period from the inception date to December 31, 2017 | For the year ended December 31, 2018 | | For the nine months ended September 30, 2018 | For the nine months ended September 30, 2019 | |
|---|---|---|---|---|---|---|
| | RMB | RMB | US$ | RMB | RMB | US$ |
| | | | (in thousands) | | | |
| Operating loss | (56,207) | (1,598,006) | (223,568) | (954,235) | (1,807,688) | (252,904) |
| Adjusted for: Share-based compensation expenses | — | — | — | — | 111,210 | 15,559 |
| **Non-GAAP operating loss** | **(56,207)** | **(1,598,006)** | **(223,568)** | **(954,235)** | **(1,696,478)** | **(237,345)** |
| Net loss | (56,371) | (1,619,152) | (226,526) | (950,153) | (1,764,921) | (246,920) |
| Adjusted for: Share-based compensation expenses | — | — | — | — | 111,210 | 15,559 |
| Adjusted for: Change in the fair value of warrant liability | — | 19,276 | 2,697 | 991 | 8,322 | 1,164 |
| **Non-GAAP net loss** | **(56,371)** | **(1,599,876)** | **(223,829)** | **(949,162)** | **(1,645,389)** | **(230,197)** |
| Net loss attributable to our company's Ordinary Shareholders | (56,371) | (3,190,334) | (446,342) | (1,744,145) | (2,319,084) | (324,451) |
| Add: Accretion to redemption value of convertible redeemable preferred shares | — | 1,571,182 | 219,816 | 793,992 | 552,036 | 77,233 |
| Add: Share-based compensation expenses | — | — | — | — | 111,210 | 15,559 |
| Add: Change in the fair value of warrant liability | — | 19,276 | 2,697 | 991 | 8,322 | 1,164 |
| **Non-GAAP net loss attributable to our company's Ordinary Shareholders** | **(56,371)** | **(1,599,876)** | **(223,829)** | **(949,162)** | **(1,647,516)** | **(230,495)** |

146. The SPO Registration Statement and the Notes Prospectus stated that Luckin defined "non-GAAP operating loss as operating loss excluding share-based compensation expenses, and non-GAAP net loss as net loss excluding share-based compensation expenses and change in fair value of warrant liability." The SPO Registration Statement and the Notes Prospectus claimed that these non-GAAP financial measures "help identify underlying trends in [Luckin's] business, provide further information about [its] results of operations, and enhance the overall understanding of [its] past performance and future prospects."

147. The statements in ¶¶145-146 above regarding Luckin's non-GAAP financial measures were materially false and misleading because the Company's financial results for the

- 54 -

second and third quarters of 2019, including its non-GAAP financial measures, were materially inflated. Luckin overstated its net revenues by 40% and 88% in the second and third quarters of 2019, respectively. This, in turn, resulted in the massive overstatement of Luckin's reported non-GAAP operating loss and net loss figures, which were derived in part from the Company's net revenues.

#### c)    Misstatements and Omissions Regarding Subsequent Events

148.    Pursuant to ASC Topic 855, Luckin was required to disclose all subsequent events "of such nature that they must be disclosed to keep the financial statements from being misleading." The SPO Registration Statement and the Notes Prospectus purported to disclose all material "SUBSEQUENT EVENTS" impacting the Company in the notes to the financial statements incorporated therein. In Note 20, it stated that "[o]n January 9, 2019, the Company issued additional 6,809 Series B Preferred Shares to Galaxy Shine Limited at US$737.37 per share for an aggregate purchase consideration of US$5,000" and that "[o]n January 18, 2019, [Luckin] adopted the 2019 share option plan providing for the grants of share options to its employees and directors."

149.    The statements in ¶148 above regarding Luckin's "Subsequent Events" were materially false and misleading because they failed to disclose that, at the time of the SPO and Note Offering, Luckin's management had perpetrated and was continuing to execute a scheme to inflate the Company's revenues and expenses through fabricated transactions. These efforts had resulted in, *inter alia*: (i) the overstatement of Luckin's revenues by 40.3% and expenses by 10.4% in the second and third quarter of 2019, respectively; (ii) an overstatement of Luckin's revenues by 88% and expenses by 32% in the third quarter of 2019; and (iii) an overstatement of Luckin's revenues by at least 95% in the fourth quarter of 2019. By failing to disclose Luckin's

- 55 -

overstatement of revenues and expenses as subsequent events, the SPO Registration Statement and Notes Prospectus violated ASC Topic 855.

### d) Misstatements and Omissions Regarding Luckin's Compliance with GAAP

150. The SPO Registration Statement and the Notes Prospectus stated that Luckin's financial statements and disclosures had been prepared and were being presented in accordance with GAAP and that the Company's consolidated financial statements contained all necessary adjustments. The offering materials included the Company's operating data and audited consolidated financial data for the periods from June 16, 2017 through December 31, 2017, and the year ended December 31, 2018, and operating data and unaudited quarterly financial data for the four quarters of 2018 and the nine-month period ended September 30, 2019.

151. The SPO Registration Statement and the Notes Prospectus contained misrepresentations that were substantially similar to those set forth in ¶110 above in the IPO Registration Statement regarding the Company's compliance with GAAP. The SPO Registration Statement and the Notes Prospectus also contained misrepresentations regarding Luckin's revenue recognition practices that were substantially similar to those set forth in ¶112 above in the IPO Registration Statement.

152. The statements in ¶¶150-151 above were further materially false and misleading because the SPO Registration Statement and Notes Prospectus did not provide Luckin's historical financial results in accordance with accepted accounting principles, and the large-scale fabrication of financial results by Company management detailed herein violated accepted standards for revenue recognition and GAAP principles, including those specified in ¶112 above. Indeed, Luckin's purportedly favorable results and growth trends as stated in the SPO Registration

- 56 -

Statement and Notes Prospectus were driven, in large part, by the overstatement of revenues through fabricated transactions.

### e) Misstatements and Omissions Regarding Internal Controls Over Financial Reporting

153.    The SPO Registration Statement and the Notes Prospectus stated that during the audit of Luckin's consolidated financial statements for the year ended December 31, 2018, the Company and its outside auditor identified the following two material weaknesses in the Company's internal controls over financial reporting: (i) the "lack of sufficient accounting and financial reporting personnel with requisite knowledge and experience in application of U.S. GAAP and the Securities Exchange Commission, or the SEC, rules"; and (ii) "lack of financial reporting policies and procedures that are commensurate with U.S. GAAP and the SEC reporting requirements."  The offering materials further represented that remediation of these internal control weaknesses was underway.  The offering materials stated, in pertinent part, as follows:

> The material weaknesses identified are our company's lack of sufficient accounting and financial reporting personnel with requisite knowledge and experience in application of United States generally accepted accounting principles and Securities and Exchange Commission rules, and lack of financial reporting policies and procedures that are commensurate with U.S. GAAP and SEC reporting and compliance requirements.
>
> *We are in the process of implementing a number of measures to address these material weaknesses identified, including: (i) hiring additional accounting and financial reporting personnel with U.S. GAAP and SEC reporting experience, (ii) expanding the capabilities of existing accounting and financial reporting personnel through continuous training and education in the accounting and reporting requirements under U.S. GAAP, and SEC rules and regulations, (iii) developing, communicating and implementing an accounting policy manual for our accounting and financial reporting personnel for recurring transactions and period-end closing processes, and (iv) establishing effective monitoring and oversight controls for non-recurring and complex transactions to ensure the accuracy and completeness of our company's consolidated financial statements and related disclosures.*

- 57 -

Case 1:20-cv-01293-JPC    Document 286-3    Filed 06/07/21    Page 62 of 72

154.    The statements set forth in ¶153 above were materially false and misleading because Luckin's internal controls over financial reporting were so deficient that, at the time of the SPO and the Note Offering, Luckin and its senior officers had already perpetrated and were continuing to execute a scheme to generate $310 million dollars' worth of fictitious sales transactions. Luckin had not taken steps to fortify its internal controls. Furthermore, Luckin only "charter[ed] an internal audit function to test and evaluate its control functions" after its overstatement of revenues and expenses was revealed to the market.

**The Offering Materials Failed to Disclose Material Trends, Uncertainties, Events and Risks**

155.    In addition to issuing the materially false and misleading statements in the Offering Materials identified above, Defendants also violated their affirmative obligations to provide certain material information as required by applicable SEC rules and regulations.

156.    As detailed herein, Luckin filed a registration statement on Form F-1 for the IPO and a registration statement on Form F-1 for the SPO, which was conducted concurrently with the Note Offering. Part I of Form F-1, entitled "Information Required in Prospectus," governs the nature and content of information an issuer must disclose in connection with an offering. Item 4 of Part I, entitled "Information with Respect to the Registrant and the Offering," requires, in subpart (a) thereof, disclosure of the "[i]nformation required by Part I of Form 20-F."

157.    Item 5 of Part I of Form 20-F, entitled "Operating and Financial Review and Prospects," requires an issuer to disclose "*management's assessment of factors and trends which are anticipated to have a material effect on the company's financial condition and results of operations in future periods*." (Emphasis in original). Specifically, Item 5(D), entitled "Trend Information," provides, in full, as follows:

> ***Trend information***. The company should identify the most significant recent trends in production, sales and inventory, the state of the order book and costs and selling prices since the latest financial year. The company also should discuss, for

- 58 -

at least the current financial year, any known trends, uncertainties, demands, commitments or events that are reasonably likely to have a material effect on the company's net sales or revenues, income from continuing operations, profitability, liquidity or capital resources, or that would cause reported financial information not necessarily to be indicative of future operating results or financial condition.

158.    The scope of the information whose disclosure is required under this paragraph on trends, uncertainties and events is substantially similar to the requirements of Item 303(a)(3)(ii) of SEC Regulation S-K, 17 C.F.R. §229.303(a)(3)(ii), which requires an issuer to "[d]escribe any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations."

159.    In May 1989, the SEC issued an interpretive release on Item 303 ("1989 Interpretive Release"), stating, in pertinent part, as follows:

Required disclosure is based on currently known trends, events, and uncertainties that are reasonably expected to have material effects, such as: A reduction in the registrant's product prices; erosion in the registrant's market share; changes in insurance coverage; or the likely non-renewal of a material contract.

*        *        *

A disclosure duty exists where a trend, demand, commitment, event or uncertainty is both presently known to management and reasonably likely to have material effects on the registrant's financial condition or results of operation.

160.    Further, the 1989 Interpretive Release sets forth the following test to determine if disclosure under Item 303(a) is required:

Where a trend, demand, commitment, event or uncertainty is known, management must make two assessments:

(1)    Is the trend, demand, commitment, event or uncertainty likely to come to fruition? If management determines that it is not reasonably likely to occur, no disclosure is required.

(2)    If management cannot make that determination, it must evaluate objectively the consequences of the known trend, demand, commitment, event or uncertainty, on the assumption that it will come to fruition.  Disclosure is then required unless

- 59 -

Case 1:20-cv-01293-JPC Document 286-3 Filed 06/07/21 Page 64 of 72

management determines that a material effect on the registrant's financial condition or results of operations is not reasonably likely to occur.

161. The Offering Materials violated Item 5(D) and Item 303. That Luckin's senior officers and directors were engaged in an elaborate scheme to fabricate revenues and expenses by creating fictitious transactions created a known "trend" and "uncertainty" and constituted "unusual or infrequent events or transactions" required to be disclosed under applicable SEC rules and regulations, but Defendants failed to make these required disclosures. Ultimately, Luckin's scheme resulted in, among other things, the material overstatement of Luckin's revenues by 40.3% and 88% in the second and third quarter of 2019, respectively, and subjected the Company to grave financial, legal, reputational and regulatory liabilities and harm.

## CLASS ACTION ALLEGATIONS

162. Plaintiffs bring this action as a class action pursuant to New York Civil Practice Law and Rules, Article 9, Section 901, on behalf of a class consisting of all persons who acquired the Luckin securities issued in the IPO, the SPO and/or the Note Offering and who were damaged thereby (the "Class"). Excluded from the Class are Defendants and their families, the officers, directors and affiliates of Defendants, at all relevant times, members of their immediate families, and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.

163. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery, Plaintiffs believe that there are thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Luckin or its transfer agent and may be notified of the pendency of this action.

- 60 -

Case 1:20-cv-01293-JPC    Document 286-3    Filed 06/07/21    Page 65 of 72

164.    Plaintiffs' claims are typical of the Class because Plaintiffs' and the Class members' claims and damages arise from and were caused by the same omissions and misleading statements in the Offering Materials.

165.    Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.  Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

166.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class members.  Among the questions of law and fact are:

(a)    whether the Securities Act was violated by Defendants' acts as alleged herein;

(b)    whether the Offering Materials contained materially false and misleading statements about the business, operations, and financials of Luckin;

(c)    whether Defendants violated their affirmative disclosure obligations and applicable SEC rules in conducting the Offerings; and

(d)    to what extent the members of the Class have sustained damages and the proper measure of damages.

167.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.

168.    Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

- 61 -

## COUNT I

### Against All Defendants Except the Investment Vehicle Defendants
### For Violations of Section 11 of the Securities Act

169.     Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.  This claim is not based on and does not sound in fraud. Plaintiffs do not need to and do not allege that Defendants had scienter or fraudulent intent, which are not elements of a Section 11 claim.

170.     This claim is brought by Plaintiffs and on behalf of themselves and other members of the Class who purchased or otherwise acquired Luckin ADSs pursuant to the IPO Registration Statement and/or the SPO Registration Statement.

171.     Luckin is the issuer of the ADSs sold in the IPO and the SPO.  The Individual Defendants, who were executive officers, directors, major shareholders and/or authorized U.S. representatives for the Company, were signatories and/or consented to being named as incoming Luckin directors in the IPO Registration Statement and the SPO Registration Statement. The Underwriter Defendants served as underwriters for the IPO and the SPO.

172.     Defendants issued and disseminated, and caused to be issued and disseminated, and participated in the issuance and dissemination of, material misstatements and/or omissions to the investing public that were contained in the IPO Registration Statement and the SPO Registration Statement, which misrepresented or failed to disclose, among other things, the facts as set forth above regarding Luckin's business, operations and financial results.  By reason of the conduct alleged herein, each Defendant named in this Count I violated Section 11 of the Securities Act, 15 U.S.C. §77k.

173.     At the time of their purchases of Luckin ADSs, Plaintiffs and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and

- 62 -

Case 1:20-cv-01293-JPC    Document 286-3    Filed 06/07/21    Page 67 of 72

could not have reasonably discovered those facts prior to the disclosures herein. This claim is brought within one year after discovery of the untrue statements and/or omissions in the IPO Registration Statement and the SPO Registration Statement that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective dates of both the IPO and SPO. It is therefore timely.

174.    At the time of the purchases and/or acquisitions by Plaintiffs and the Class, the true value of the Luckin ADSs sold in the IPO and the SPO were substantially lower than the prices paid by Plaintiffs and the other members of the Class and the prices have such ADSs have subsequently declined. By reason of the foregoing, Plaintiffs and the other members of the Class are entitled to damages as measured by the provisions of Section 11(e), 15 U.S.C. 77K(e), from the Defendants named in this Count I and each of them, jointly and severally.

## COUNT II

### Against All Defendants Except the Investment Vehicle Defendants
### For Violations of Section 12(a)(2) of the Securities Act

175.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein. This claim is not based on and does not sound in fraud. Plaintiffs do not need to and do not allege that Defendants had scienter or fraudulent intent, which are not elements of a Section 12(a)(2) claim.

176.    This claim is brought by Plaintiffs and on behalf of themselves and other members of the Class who purchased or otherwise acquired the Luckin securities issued in the Offerings pursuant to the Offering Materials.

177.    Section 12(a)(2) gives rise to liability as to "[a]ny person who . . . offers or sells a security . . . by means of a prospectus or oral communication, which includes an untrue statement

- 63 -

of material fact or omits to state a material fact necessary in order to make the statements, in light of the circumstances under which they were made, not misleading. . . ." 15 U.S.C. §77l(a)(2).

178. By means of the defective IPO Prospectus, SPO Prospectus and Notes Prospectus (the "Prospectuses"), the Defendants named in this Count II promoted and sold Luckin securities to Plaintiffs and other members of the Class for their own benefit and the benefit of their associates. The Underwriter Defendants additionally solicited their brokerage clients and other members of the investing public to submit indications of interest and subscriptions to purchase Luckin securities in the Offerings. Furthermore, the Note Offering Underwriters solicited their brokerage clients and other members of the investing public to submit indications of interest and subscriptions to purchase Luckin Notes in the Offerings.

179. The Prospectuses contained untrue statements of material fact and concealed and failed to disclose material facts, as detailed above. Defendants named in Count II owed Plaintiffs and the other members of the Class who purchased Luckin securities pursuant to the Prospectuses the duty to make a reasonable and diligent investigation of the statements contained in the Prospectuses to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading. Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the Prospectuses as set forth above.

180. Plaintiffs did not know, nor in the exercise of reasonable diligence could Plaintiffs have known, of the untruths and omissions contained in the Prospectuses at the time Plaintiffs acquired the Luckin securities issued in the Offerings.

181. By reason of the conduct alleged herein, the Defendants named in this Count II violated Section 12(a)(2) of the Securities Act. As a direct and proximate result of such violations,

- 64 -

Case 1:20-cv-01293-JPC    Document 286-3    Filed 06/07/21    Page 69 of 72

Plaintiff and the other members of the Class who purchased Luckin securities pursuant to the Prospectuses sustained substantial damages in connection with their purchases. Accordingly, Plaintiffs and the other members of the Class who purchased the Luckin securities issued pursuant to the Prospectuses seek damages to the extent permitted by law or seek to rescind and recover the consideration paid for the Luckin securities so purchased, and hereby tender such Luckin securities to the Defendants named in this Count.

**COUNT III**

**Against Cogency Global, the Individual Defendants
and the Investment Vehicle Defendants
For Violations of Section 15 of the Securities Act**

182. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

183. This claim is asserted against Cogency Global, the Individual Defendants and the Investment Vehicle Defendants, each of whom was a control person of one or more primary violators of the Securities Act at relevant times as detailed herein.

184. The Individual Defendants and Investment Vehicle Defendants were control persons of the Company by virtue of, *inter alia*, their positions as senior officers and/or directors of the Company and controlling shareholders of the Company, and they were in positions to control and did control, the issuance of the Offering Materials, which contained materially false and misleading statements and omissions, as detailed herein.

185. Similarly, Defendant Cogency Global controlled Defendants Arthur and Sheung Lin and all of its employees, and acted through these employees in signing the IPO Registration Statement and the SPO Registration Statement, soliciting the purchase of the Luckin securities issued in the Offerings, and serving as the authorized U.S. Representative for the Company in connection with each of the Offerings.

186. The Individual Defendants, the Investment Vehicle Defendants and Defendant Cogency Global did not make reasonable investigation or possess reasonable grounds for the belief that the statements contained in the Offering materials were accurate and complete in all material respects. Had they exercised reasonable care, they could have known of the material misstatements and omissions alleged herein.

187. By reason of the above conduct, for which Defendants are primarily liable, the Individual Defendants, the Investment Vehicle Defendants and Defendant Cogency Global are jointly and severally liable with and to the same extent as the persons that they controlled who committed the violations of Section 11 and/or Section 12(a)(2) complained of herein, as controlling persons pursuant to Section 15 of the Securities Act, 15 U.S.C. §77o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of itself and the Class, prays for judgment and relief as follows:

A. Declaring this action to be a proper class action, certifying Plaintiffs as class representatives under Section 901 of the N.Y. C.P.L.R. and appointing Shapiro Haber & Urmy LLP, Robbins Geller Rudman & Dowd LLP and Berger Montague PC as Co-Class Counsel and Lowey Dannenberg, P.C. as Liaison Counsel for the Class;

B. Awarding compensatory damages in favor of Plaintiffs and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding Plaintiffs and other members of the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

- 66 -

D.    Awarding such equitable/injunctive or other relief as the Court may deem just and proper, including permitting any putative Class members to exclude themselves by requesting exclusion through noticed procedures;

E.    Awarding rescission or rescissionary measure of damages;

F.    Declaring that Plaintiffs and other members of the Class have the right to a jury trial and that any purported agreement otherwise is invalid and unenforceable; and

G.    Awarding Plaintiffs and the other members of the Class such other and further relief as the Court may deem just and proper.

<b>JURY TRIAL DEMANDED</b>

Plaintiffs hereby demand a trial by jury.

DATED:  December 23, 2020                ROBBINS GELLER RUDMAN
                                          & DOWD LLP
                                         SAMUEL H. RUDMAN
                                         BRIAN E. COCHRAN
                                         AVITAL O. MALINA


                                            */s/ Samuel H. Rudman*
                                         SAMUEL H. RUDMAN

                                         58 South Service Road, Suite 200
                                         Melville, NY  11747
                                         Telephone:  631/367-7100
                                         631/367-1173 (fax)
                                         srudman@rgrdlaw.com
                                         bcochran@rgrdlaw.com
                                         amalina@rgrdlaw.com

                                         BERGER MONTAGUE PC
                                         MICHAEL C. DELL'ANGELO
                                         BARBARA A. PODELL
                                         ANDREW ABRAMOWITZ
                                         1818 Market Street, Suite 3600
                                         Philadelphia, PA  19103
                                         Telephone:  215/875-3000
                                         mdellangelo@bm.net
                                         bpodell@bm.net
                                         aabramowitz@bm.net

- 67 -

SHAPIRO HABER & URMY LLP
EDWARD F. HABER
ADAM M. STEWART
Two Seaport Lane
Boston, MA 02210
Telephone: 617/439-3939
ehaber@shulaw.com
astewart@shulaw.com

*Co-Lead Counsel for the Consolidated Action*

LOWEY DANNENBERG, P.C.
DAVID C. HARRISON
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: 914/997-0500
914/997-0035 (fax)
dharrison@lowey.com

*Liaison Counsel*

CHRISTIANSEN & DEHNER, P.A.
SCOTT CHRISTIANSEN
63 Sarasota Center Blvd., Suite 107
Sarasota, FL 34240
Telephone: 941/377-2200
941/377-4848 (fax)

SCHUBERT JONCKHEER & KOLBE LLP
ROBERT C. SCHUBERT
WILLEM F. JONCKHEER
3 Embarcadero Center, Suite 1650
San Francisco, CA 94111
Telephone: 415/788-4220
rschubert@sjk.law
wjonckheer@sjk.law

*Additional Counsel*

- 68 -