**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN   RE   LUCKIN   COFFEE   INC.
SECURITIES LITIGATION

Case No. 1:20-cv-01293-JPC-JLC

**WINSLOW FUNDS' SUPPLEMENTAL MEMORANDUM OF LAW OBJECTING TO
THE PROPOSED CLASS NOTICE**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND ..........................................................................................................4

ARGUMENT ..............................................................................................................5

I.    The Court Should Not Allow Lead Plaintiffs and Luckin to
      Use the Proposed Notice as a Proxy Solicitation.........................................5

      A.  Class Counsel and Luckin Agree to Use the Proposed Notice as
          a Proxy Solicitation...................................................................................6

      B.  This Court is Not Empowered by Rule 23 to Convey Voting
          Proxies to Class Counsel for Use in Creditor Approval of a
          Foreign Reorganization Proceeding.......................................................7

      C.  The Voting Proxy that Class Counsel and Luckin Seek
          Through the Class Notice Procedure Will Be Prejudicial to
          Class Members and Creditors ...............................................................10

          1.   The Proposed Notice Lacks Common Procedural
               Safeguards..................................................................................11

          2.   The Transfer of a Voting Proxy By "Inaction" is
               Particularly Inappropriate Here Because the Makeup of
               the Class is Unknown and Unknowable Unless and Until
               Claims Are Submitted................................................................15

          3.   Soliciting Proxies Through Class Notice Increases Risk
               for Class Members and Creditors With No Tangible
               Benefit........................................................................................16

II.   The Proposed Notice Should Be Modified to Conform to the
      Certification Order's Certification of a Class Solely to Settle
      Claims Against Luckin ...............................................................................19

III.  The Court Must Require That Any Settlement Negotiated By
      Class Counsel Be Presented to the Court For Approval............................20

CONCLUSION..........................................................................................................22

**<u>TABLE OF AUTHORITIES</u>**

**Page**

**Cases**

*Alvarez v. Pan American Life Insurance Co.*,
   375 F.2d 992 (5th Cir.), *cert. denied*, 389 U.S. 827 (1967) ................................................... 10

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) .......................................................................................................... 8, 20

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017) ............................................................................................... 8

*Eliason v. Englehart*,
   733 A.2d 944 (Del. 1999) ..................................................................................................... 12

*In re Chassix Hldngs., Inc.*,
   533 B.R. 64 (Bankr. S.D.N.Y. 2015) .............................................................................. 12, 14

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   No. 11-CV-5450, 2016 WL 7625708 (S.D.N.Y. Dec. 21, 2016) ........................................... 20

*In re MONY Grp., Inc. Shareholder Litig.*,
   853 A.2d 661 (Del. Ch. 2004) .............................................................................................. 12

*In re Nat'l Prescription Opiate Litig.*,
   976 F.3d 664 (6th Cir. 2020) ................................................................................................. 8

*In re Ocean Rig UDW, Inc.*,
   570 B.R. 687 (Bankr. S.D.N.Y. 2017) .................................................................................. 21

*In re SunEdison, Inc.*,
   576 B.R. 453 (Bankr. S.D.N.Y. 2017) .................................................................................. 14

*Kern v. Siemens Corp.*,
   393 F.3d 120 (2d Cir. 2004) ................................................................................................... 8

*N. Fork Bancorp., Inc. v. Toal*,
   825 A.2d 860 (Del. Ch. 2000), *aff'd sub nom. Dime Bancorp, Inc. v. N. Fork Bancorp., Inc.*,
   781 A.2d 693 (Del. 2001) ..................................................................................................... 12

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999) ............................................................................................................... 8

*Police & Fire Retirement System of Detroit v. IndyMac MBS, Inc.*,
   721 F.3d 95 (2d Cir. 2013) ..................................................................................................... 8

*Reserve Life Ins. Co. v. Provident Life Ins. Co.*,
    499 F.2d 715 (8th Cir. 1974) ................................................................ 13

*Strong v. Arkansas Blue Cross & Blue Shield Inc.*,
    87 F.R.D. 496 (E.D. Ark. 1980)............................................................ 10

*Wal–Mart Stores, Inc. v. Dukes,*
    564 U.S. 338, (2011)......................................................................... 8, 9

**Statutes**

11 U.S.C. § 1506 ........................................................................................ 21

11 U.S.C. § 1517(a) .................................................................................... 21

28 U.S.C. § 2072(b) .................................................................................. 8, 9

8 *Del. C.* § 212(c) ....................................................................................... 12

**Other Authorities**

MCBA § 7.22(a)-(c) ................................................................................... 12

MCBA § 7.22(d) ........................................................................................ 12

**Rules**

Fed. R. Civ. P. 1 ......................................................................................... 9

Fed. R. Civ. P. 23 ............................................................................... passim

Fed. R. Civ. P. 23(e) ............................................................................. 4, 20

Fed. R. Civ. P. 24 ....................................................................................... 1

**Regulations**

17 C.F.R. § 240.14a-4 ............................................................................... 13

The Winslow Funds ("Winslow")[1] respectfully submit this Memorandum of Law in further support of their motion, pursuant to Rule 24 of the Federal Rules of Civil Procedure, to intervene in the above-captioned case, for the purpose of objecting to the Stipulation and [Proposed] Order Regarding Dissemination of Class Notice (the "Proposed Notice") and for the opportunity to be heard in this matter, with all rights and remedies attendant to its position hereby reserved.

## PRELIMINARY STATEMENT

Class Counsel and Luckin seek authorization to use a Rule 23 class notice process to obtain proxies to vote in Scheme proceedings in a Cayman Islands court governed by Cayman Islands law. Such exterritorial use of Rule 23—far afield of the U.S. litigation that rule authorizes under close judicial supervision—is unprecedented, unwarranted, and unwise. Key to this novel tactic is to presume that a proxy has been given—not by any affirmative act on the part of an identifiable, injured investor—but by a *failure* to act in response to the notice. This court should not presume to authorize a voting class in a Cayman Islands reorganization by approving Class Counsel's blatant misuse of the class notice procedure in this way.

Rule 23 authorizes a court to supervise U.S. litigation in U.S. courts under close judicial scrutiny. It does not empower a court to fashion voting blocks to approve reorganizations in foreign proceedings. This Court is bound by the strictures of Rule 23, and is not free to invent new procedures, like a proxy-solicitation to exercise aggregate creditor rights (sought on stipulation here), that are not found in Rule 23. Rule 23 authorizes a U.S. court to sanction efforts

---

[1] The "Winslow Funds" are: Nuveen Winslow Large-Cap Growth ESG Fund, Nuveen Winslow Socially Aware U.S. Large-Cap Growth Fund, Winslow Large-Cap Growth Fund, MainStay Winslow Large Cap Growth Fund, MainStay VP Winslow Large Cap Growth Portfolio, St. John's University, I.B.E.W. Local Union 481 Defined Contribution Plan and Trust, St. Mary's University, Justin Kelly Revocable Trust, Justin and Susan Kelly Family, LLC, The Justin and Susan Kelly Foundation, Justin Kelly, individually and as representative for the Justin Kelly Revocable Trust, and American Medical Association.

1

by a class representative to influence a Cayman proceeding.  Indeed, Rule 23 does not authorize a court to abridge or diminish any substantive rights, including the Class Members' Cayman Islands-law-based voting rights in the Scheme.  The Court can certainly certify a litigation class and supervise litigation of claims in this Court (such as the claims against underwriters that have not been stayed).  If the class reaches a settlement with Luckin, this Court must review that settlement in compliance with Rule 23.   However, it cannot use Rule 23 to purport to transfer substantive rights in a foreign reorganization proceeding from members of a creditor class to Class Counsel, and to interfere with the voting procedures in the Scheme by allowing proxy solicitation and aggregation far beyond the scope of this Court's authority.

The *de facto* proxy Class Counsel seeks to obtain through the class notice device will be prejudicial to Class Members and creditors.  Voting proxies form a principal-agent relationship and are commonly regulated to ensure informed consent and to prevent abuses.  The discretionary proxies Class Counsel seeks here, which would be conveyed to Class Counsel through the inaction of Class Members, contain none of the protections common to proxy regulation, including those found in Luckin's articles of incorporation.  Indeed, such basic protections are impossible because at this point—and unless and until putative class members submit claims demonstrating their purchases of Luckin securities—the identities of Class Members and the size of their "creditor claim" are both unknown and unknowable.  Accordingly, the voting proxies supposedly obtained by Class Counsel (through inaction) will not be those of actual consenting Class Members, but will be the output of a damages model created by an expert to estimate both the number of injured investors and "class-wide" damages.

We certainly understand the desire on the part of the JPLs and Class Counsel to seek authorization from this Court to convey the votes of a creditor class to one party who could approve

2

a restructuring proposal.  It is easier for the JPLs to deal only with Class Counsel—and not an unwieldy class of creditors—in the Cayman Islands.  However, this presumably simple solution is in fact fraught with risk.  Class Counsel's attempt to obtain an unknown number of proxies from unknown investors, who take no affirmative action to convey their vote, may not be accepted by the Cayman court.  Such uncertainty will add an unnecessary element of risk to traditional creditor negotiations and is not conducive to incentivizing the JPLs to offer the most beneficial deal terms to ADS claimants.  Class Counsel's possession of proxies will allow the JPLs to attempt to negotiate a settlement solely with Class Counsel, a dynamic less likely to result in a greater recovery than if they had to negotiate a deal acceptable to the full range of ADS claimants.  Even if the JPLs and Class Counsel reach a deal between themselves and present it in a Scheme, if the Cayman Court determines Class Counsel's proxies are not valid, months of work will have been wasted and the likelihood of Luckin's liquidation will increase, as the two-party-negotiated Scheme will be unable to obtain approval.  Similarly, even if the Scheme passes muster in the Cayman Islands, the unprecedented nature of the proxy sought in the Proposed Notice will inevitably lead to appeal in the Cayman courts, and will lead to similar challenges in any submission for approval to the U.S. Bankruptcy Court under principles of comity.  No such risks would exist if the class simply litigated its claims, settled them with Luckin, followed any voting procedures established by the Cayman Islands court, and submitted its proposed settlement for review and approval in accordance with Rule 23.

In light of the above, we propose that the notice be revised to eliminate the unprecedented conveyance of creditor voting rights for a Cayman proceeding and to state clearly that any proposed class settlement will first be reviewed under Rule 23 by this Court before it becomes final.  There will be no delay or prejudice to any party by removing the voting language from the

Proposed Order.  Voting rights will simply be determined by the Cayman court, in accordance with Cayman Islands law, and without improper "vote certification" from this Court.  The JPLs will have to negotiate with the full range of ADS claimants—including the Class—which they have already claimed they are willing to do.  Any participants who wish to seek proxies to approve a Scheme will have to negotiate attractive terms and can seek to obtain affirmative proxies from actual claimants through a process approved by the Cayman court.

Accordingly, Winslow submits herewith a proposed revised notice (the "Revised Notice") excising the language in the Proposed Notice regarding voting rights in the Cayman Scheme, as well as language relating to Class Counsel's ability to compromise claims against parties other than Luckin, which is not permitted by the Certification Order.  Winslow further respectfully requests that the Court revise the Certification Order to require Rule 23(e) approval of any tentative settlement reached by Class Counsel.  In their letter to the Court and in remarks during the May 28, 2021 Hearing, Class Counsel made clear their belief such approval is optional, and something Class Counsel is merely "contemplating."  It is not optional.  Rule 23(e) requires that any tentative settlement be presented to this Court for approval before any claims in this action can be dismissed, and the Court, and Class Counsel, lack the discretion to employ an alternative procedure.

## BACKGROUND

On May 18, 2021, Winslow, a putative Class Member in the above-captioned action, moved to intervene for the purpose of objecting to the Stipulation and [Proposed] Order Regarding Dissemination of Class Notice (the "Notice" or "Proposed Notice").  Winslow references and incorporates herein the Background section in its May 18, 2021 memorandum of law in support of its motion to intervene (the "5/18/21 Brief"). (ECF No. 265.)[2]

---

[2] Undefined capitalized references herein have the same meaning as in the 5/18/21 Brief.

Winslow's motion to intervene was followed by multiple submissions from other interested parties who shared the same concerns as Winslow, including the State Class Plaintiffs (ECF No. 269), the Kingstown entities (ECF No. 271), August Bequai (ECF No. 272), and Lai Ye (ECF No. 278.)   Lead Plaintiffs, Luckin and the JPLs each filed letters in response to the motion to intervene. (ECF Nos. 273-276.)  On May 28, 2021, the Court held a hearing to discuss Winslow's motion to intervene as well as the letter submissions from the other interested parties (the "May 28, 2021 Hearing").  At the conclusion of the hearing, the Court ordered that any first or supplemental submissions in favor of intervention and/or objecting to the Proposed Notice be submitted to the Court no later than June 7, 2021.   This brief supplements both the arguments made in the 5/18/21 Brief, and those made orally during the May 28, 2021 Hearing.

## **ARGUMENT**

### I.   **The Court Should Not Allow Lead Plaintiffs and Luckin to Use the Proposed Notice as a Proxy Solicitation**

The Proposed Notice has been crafted and presented on stipulation by Class Counsel and Luckin to obtain the voting proxies of absent Class Members, the identities of whom are unknown and unknowable, for use as creditor votes in the Cayman Scheme proceedings.   There is no question that the purpose is to aggregate the votes of a creditor class to approve a reorganization in the Cayman Islands.  The Proposed Notice improperly states that: (1) Class Members' voting rights in the Scheme proceeding may be affected by this action (5/18/21 Declaration of Frank Catalina ("5/18/21 Catalina Decl.), Ex. G at 1 ¶ 3), (2) Class Counsel will have the power to cast votes on behalf of the Class in the Scheme proceedings (*id.* ¶ 21.a), and (3) those votes may be considered votes cast by individual Class Members.  *Id.*  This Court should not use Rule 23 to allow a class representative to cast creditor votes in a foreign proceeding because it is not empowered to do so, and because doing so will prejudice Class Members and creditors.  We are

not aware of any U.S. federal court ever issuing an order interfering in the voting process in a Cayman proceeding through a form of proposed class notice.  The mechanics of proxy solicitation, collection and vote-approval in the Scheme proceedings should be left to the Cayman Islands courts, and this Court should not interfere with that process by authorizing an unprecedented use of Rule 23 to stray so far beyond the bounds of U.S. litigation in U.S. Courts.

### A.  Class Counsel and Luckin Agree to Use the Proposed Notice as a Proxy Solicitation

As an initial matter, there can be no genuine dispute that Class Counsel and Luckin seek to use the Proposed Notice as a proxy solicitation for purposes of approving the Scheme.[3]  Winslow's 5/18/21 Brief repeated several times that the Proposed Notice was being used to solicit creditor voting proxies for the Scheme.  (*See* 5/18/21 Brief (ECF No. 265) at 7 ("Class Members must decide now whether to give Lead Plaintiffs their proxy without knowing the terms of the settlement their voting rights will ultimately be used to approve"); at 9 ("Lead Plaintiffs intend to use Rule 23 to essentially collect proxies and arrogate super-majority voting power in the Scheme"); *see also* at 12, 13, 14.)  None of the response letters from Class Counsel, Luckin, or the JPLs denies their intent to argue in the Scheme proceedings that the class notice acted as a proxy obtained with the approval of this Court.  (*See* ECF Nos. 273, 274, 276.)  Similarly, after counsel for Winslow articulated the same point at the May 28, 2021 Hearing, none of the three proponents of the Proposed Notice denied this intent.  *See* 6/7/21 Declaration of Frank Catalina ("6/7/21 Catalina Decl."), Ex. A (5/28/21 Hearing Tr.) at 24:17-21 ("[T]he clear purpose of putting that language in

---

[3] Notably the JPLs, who have no interest in this action, and who should have no interest in the form of notice to the Class, have appeared here to urge the Court to approve the Proposed Notice in its current form. (ECF No. 276.)  It is difficult to imagine why they would do so unless it was to assist Class Counsel in obtaining proxies sufficient to allow the JPLs to strike a favorable deal with Class Counsel, while freezing out other Class Members.

the notice is to obtain the proxies of absent class members such that they can get over the hurdle to approve a scheme in the Cayman proceedings.  There's no reason otherwise to include the voting language in the notice.").  If they do not intend to use the notice to cast creditor votes on behalf of putative class members who have taken no action, they should have no issue with excising the voting language from the Proposed Notice and distributing the Revised Notice.

**B.  This Court is Not Empowered by Rule 23 to Convey Voting Proxies to Class Counsel for Use in Creditor Approval of a Foreign Reorganization Proceeding**

Class Counsel's and Luckin's joint attempt to use the Proposed Notice to convey voting proxies for creditor approval in the Scheme is not allowed by Rule 23, and the Court is not empowered to approve such a process.  Rule 23 authorizes procedures to conduct U.S. litigation in U.S. courts that must be carefully supervised by U.S. District Courts.  As far as Winslow can ascertain, by approving the Proposed Notice, this Court would become the first U.S. District Court supervising a Rule 23 class action to allow the class notice procedure of Rule 23(c)(2)(B) to be used to convey voting proxies for use in a foreign reorganization.  Even more concerning, the creditor votes would not be conveyed through affirmative action—as is normally the case with a proxy—but through the failure to act.  Such a process is far outside the Court's role to preside over a U.S.-based litigation in a manner authorized by Rule 23.  As laudable as is the goal of facilitating a reorganization of Luckin in the Cayman Islands may be, this Court is simply not free to invent new procedures or to grant Class Counsel new, unprecedented voting powers to be used in foreign proceedings.[4]  Accordingly, the Court should not interfere with the voting procedures of the

---

[4] We are unaware of any Cayman Islands court recognizing a "class" proxy like the one sought by Class Counsel here.  As is explained in the Declaration of Gary Smith ("Smith Decl."), submitted herewith, Cayman law requires, among other things, that shareholders/creditors who may be affected by a scheme of arrangement must be provided "all the information reasonably necessary

Scheme by allowing Class Counsel to use the class notice procedure as a proxy solicitation procedure found nowhere in either Rule 23 or the law of the Cayman Islands.

The Supreme Court has explicitly warned against the lure of "judicial inventiveness" in applying Rule 23. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). "'[T]he Rules Enabling Act forbids interpreting Rule 23 to abridge, enlarge or modify any substantive right,' *Wal–Mart Stores, Inc. v. Dukes,* [564] U.S. [338], 131 S. Ct. 2541, 2561, 180 L.Ed.2d 374 (2011) (quoting 28 U.S.C. § 2072(b)), and 'underscores the need for caution[,] ... counsel[ing] against adventurous application of' the Rule, *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 845, 119 S. Ct. 2295, 144 L.Ed.2d 715 (1999)." *Police & Fire Retirement System of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 109 (2d Cir. 2013). "The text of a rule [proposed and reviewed under the Rules Enabling Act] limits judicial inventiveness. Courts are not free to amend a rule outside the process Congress ordered . . ." *Amchem Prods., Inc.*, 521 U.S. at 620. *See also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 363 (2011) ("a mere negative inference does not ... suffice to establish a disposition that has no basis in [Rule 23's] text"); *In re Nat'l Prescription Opiate Litig.*, 976 F.3d 664, 672 (6th Cir. 2020) ("a new form of class action, wholly untethered from Rule 23, may not be employed by a court"); *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1126 (9th Cir. 2017) ("Supreme Court precedent . . . counsels in favor of hewing closely to the text of Rule 23."); *accord Kern v. Siemens Corp.*, 393 F.3d 120, 128 (2d Cir. 2004) (district courts cannot invoke equitable powers to certify a class beyond Rule 23's explicit bounds, as "Rule 23 offers the *exclusive* route to forming a class action").

---

to enable them to make an informed decision about the merits of the proposed Scheme of Arrangement," the Cayman court will have to approve any proxy form, and the giving of a proxy will require an affirmative act. *See* Smith Decl. ¶¶ 18-25.

Nowhere does the text of Rule 23 contemplate certifying a class for purposes of voting creditor approval in a foreign reorganization,[5] nor does it contemplate the class notice procedure being used to collect voting proxies from putative class members.  *See* Fed. R. Civ. P. 23.  Indeed, except for a class member's decision whether to pursue its claims through the class or to opt out (which must be set forth in a class notice), Rule 23 makes no provision for the transfer of any substantive rights—let alone affirmative creditor voting rights—from putative class members to the class representative.  *Id.*  Rule 23(c)(2)(B) sets forth the contents of a notice to be provided to members class certified under Rule 23(b)(3), and makes no mention of the transfer of substantive rights, (other than the right to independently *litigate* and be bound by a class judgment if choosing not to opt out).  Absent express textual authority in Rule 23, a class notice authorized and required by that Rule simply authorizes U.S. litigation to proceed in U.S. courts and cannot act to transfer the voting rights of putative Class Members to provide creditor approval of a Cayman Islands reorganization.  *See Wal-Mart Stores, Inc.*, 564 U.S. at 367 ("[T]he Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right.'") (quoting 28 U.S.C. § 2072(b)).

That the Cayman Islands court overseeing the Scheme will ultimately determine the voting procedures required for creditor approval of the reorganization is irrelevant to the question of whether Class Counsel can attempt to obtain creditor voting proxies from Class Members through inaction in response to the class notice.  Rule 23 only allows this Court to preside over and supervise litigation and/or settlement of *litigation* claims *in this Court*.  *See generally* Fed. R. Civ. P. 23; *see also* Fed. R. Civ. P. 1 (stating that the Federal Rules of Civil Procedure "govern the

---

[5] As noted in Winslow's brief in support of its motion to intervene, and repeated during the Court's May 28, 2021, hearing, the Provisional Certification Order *as entered* does not provide for Class Counsel's soliciting voting proxies from Class Members.

procedure in all civil actions and proceedings in the *United States district courts* . . ." (emphasis

added).  It does not empower the Court to approve a form of proxy solicitation of creditor votes

for use *in a foreign proceeding* (even if the foreign Court may ultimately find the proxy authorized

by this Court unlawful under Cayman Islands law).[6]  Nonetheless, the Proposed Notice expressly

states that this class action, which must proceed in compliance with Rule 23, may *affect* Class

Members' "rights with respect to participation and voting in a Cayman Islands scheme of

arrangement," and purports to "advise [Class Members] of [their] options regarding . . . the

Cayman Islands scheme of arrangement."  5/18/21 Catalina Decl., Ex. G (ECF No. 263-7) at 1.

The class action vehicle cannot be used to affect the rights of creditors arising under Cayman

Islands law.

This Court lacks the authority to authorize a notice purporting to transfer Class Members'

voting rights in the Cayman Scheme or to advise Class Members of their options in that Scheme,

which can and should proceed *solely* in accordance with Cayman Islands law.  Class Counsel and

Luckin should not be allowed to divert the Court far outside the bounds of Rule 23 in order to

streamline their attempt to gain creditor approval in the Scheme proceedings.  The Court should

refuse to approve the Proposed Notice and instead approve and distribute the Revised Notice.

### C. The Voting Proxy that Class Counsel and Luckin Seek Through the Class Notice Procedure Will Be Prejudicial to Class Members and Creditors

Allowing Class Counsel to use the Proposed Notice to obtain voting proxies—from absent

Class Members through inaction—will unnecessarily prejudice Class Members and creditors,

---

[6] *See, e.g.*, *Strong v. Arkansas Blue Cross & Blue Shield Inc.*, 87 F.R.D. 496, 508 (E.D. Ark. 1980) ("Congress did not expand the jurisdiction of the federal courts by adopting Rule 23 of the Federal Rules of Civil Procedure."); *accord Alvarez v. Pan American Life Insurance Co.*, 375 F.2d 992, 995-96 (5th Cir.), *cert. denied*, 389 U.S. 827 (1967).

whereas the Revised Notice will result in no prejudice to any party.  The Proposed Order is an untethered discretionary proxy.  It authorizes the class representative to give creditor approval to any proposal—even one with third-party releases of solvent underwriters (which the JPLs have already suggested is their goal).  There is no limitation on what the vote can be cast to approve if accepted by the Cayman court.  The creditor voting proxy Class Counsel seeks to obtain through the Proposed Notice lacks every procedural safeguard common to statutes and regulations governing the granting of voting proxies: the proxies will be given by inaction rather than affirmative grant, Class Members will not know what reorganization they are voting to approve, the proxies do not appear to be revocable, and innumerable Class Members who will not receive notice will be deemed to have given their proxy without their knowledge, let alone consent.  Further, because the number and identities of Class Members are *unknown and unknowable* absent a claims submission process, a "proxy by inaction" will result in Class Counsel obtaining proxy voting power *not of actual claimants and creditors* but of *estimated numbers of claimants with estimated credit claims* stemming from the mathematical models of paid experts.  Finally, forcing Class Members to give up their Cayman Islands-law-based creditor voting rights prior to knowing how those voting rights will be used (including to extinguish valuable claims against solvent third-parties) will likely result in a lower recovery for Luckin creditors, and greater risk of Luckin's liquidation, with no countervailing benefit.

### 1.  The Proposed Notice Lacks Common Procedural Safeguards

Class Counsel seeks this Court's approval to obtain Class Members' proxies to vote as creditors, through inaction, to approve a reorganization plan that has not yet been devised and is likely to include broad third-party releases of solvent underwriters.  This attempted procedure ignores every procedural safeguard commonly applied to proxy solicitation and "stretch[es] the

meaning of consent beyond the breaking point." *See In re Chassix Hldngs., Inc.*, 533 B.R. 64, 81 (Bankr. S.D.N.Y. 2015).   Obtaining a voting proxy allows the obtaining party to exercise the personal right to cast a vote belonging to the party giving the proxy.   It is both a common process in matters of corporate governance and bankruptcy proceedings, and one that can be abused without ensuring it is given affirmatively with knowledge of how it will be used.   For this reason, proxy voting is regulated by statutes, regulations, and corporate by-laws, among other sources, to provide common safeguards for the process of proxy voting.   The Proposed Notice provides for none of those safeguards and is therefore prejudicial to the Class Members and creditors.   They are being forced to give their proxy to vote in favor of a reorganization plan as a condition for remaining in a class that should be certified only to pursue U.S. litigation.

"A proxy [card] is evidence of an agent's authority to vote shares owned by another." *N. Fork Bancorp., Inc. v. Toal*, 825 A.2d 860, 867 (Del. Ch. 2000), *aff'd sub nom. Dime Bancorp, Inc. v. N. Fork Bancorp., Inc.*, 781 A.2d 693 (Del. 2001) (quoting *Eliason v. Englehart*, 733 A.2d 944, 946 (Del. 1999)).   "[T]he integrity of the entire proxy voting procedure necessarily and implicitly rests upon the premise that the agency relationship is genuine and, correlatively, that the proxy instrument accurately and reliably evidences that relationship." *In re MONY Grp., Inc. Shareholder Litig.*, 853 A.2d 661, 680 (Del. Ch. 2004) (internal quotations omitted).

The Model Business Corporation Act ("MBCA"), upon which numerous states' corporation laws are based, allows for the giving of a proxy by a shareholder's *affirmative act* of signing a form or through electronic transmission.   *See* MCBA § 7.22(a)-(c); *see also* 8 *Del. C.* § 212(c).   The proxy cannot be irrevocable unless it is "coupled with an interest," such as a voting agreement or a creditor relationship with the corporation.   *See* MCBA § 7.22(d); *see also* 8 *Del. C.* § 212(c) (same).

Federal securities regulations provide further requirements for shareholder proxies. "Under [SEC] rules, an atmosphere of 'fair play' must pervade the solicitation of proxies so that in struggles for corporate control . . . competing interests are furnished equal opportunities to communicate with and thereby influence the shareholders in the exercise of their corporate suffrage rights." *Reserve Life Ins. Co. v. Provident Life Ins. Co.*, 499 F.2d 715, 725–26 (8th Cir. 1974). The SEC also regulates the content and form of proxies so that shareholders know exactly what it is they are giving their proxies for. Shareholder proxies "[s]hall identify clearly and impartially each separate matter intended to be acted upon," and "[m]eans shall be provided in the form of proxy whereby the person solicited is afforded an opportunity to specify by boxes a choice between approval or disapproval of, or abstention with respect to each separate matter referred to therein as intended to be acted upon . . ." 17 C.F.R. § 240.14a-4(a)(3), (b)(1). Other than for certain items of significance, such as calling a shareholder meeting or approving minutes of a prior meeting, shareholder proxies cannot give authority except as to items where a choice on a particular matter is not specified by the shareholder and the form discloses how votes shares will be voted in that case. 17 C.F.R. § 240.14a-4(b)(1), (c). Even Luckin's own articles of incorporation, as disclosed in its Registration Statement, require that a proxy be given in a writing executed by the appointing party, a requirement absent from the procedure set forth in the Proposed Notice. 6/7/21 Catalina Decl., Ex. B.

The proxies to vote creditor approvals in the Cayman Islands—sought to be conveyed to Class Counsel through the Proposed Notice—contain no such protections. Class Members need not even affirmatively give their proxy. The proxy will be "deemed" given through inaction. Moreover, the proxies are transferred to Class Counsel—to provide creditor approval in the Cayman Islands—without any disclosure of the terms of the Scheme their votes will be used to

pass.  *See* 5/18/21 Catalina Decl., Ex. G (ECF No. 263-7) ¶ 21.a ("If you remain a member of the Class, the Class Representatives and Class Counsel will have the power to cast votes on behalf of the Class *in relation to the Scheme*, which may be deemed to be a vote cast by you as a member of the Class.") (emphasis added).  There is no disclosure that any such proxy would be revocable.  *See id.*  There is not even a requirement that a Class Member identify him or herself and provide evidence that he or she has a claim, is an actual creditor, or will provide a written authorization in order to give the voting proxy.  *See id.*  This lack of basic procedural safeguards will unnecessarily prejudice Class Members and creditors by forcing them to give their votes, irrevocably, to provide creditor approval for a Scheme without even knowing the terms of that Scheme.

Furthermore, that the proxies may be used to compromise valuable third-party claims against solvent non-debtors heightens the need for affirmative, knowing consent.  In the analogous situation of a U.S. Bankruptcy Court approving a reorganization plan releasing non-debtor third parties, the bankruptcy courts are highly reluctant to allow non-voting creditors to count as votes in favor of such a plan, even if they receive express warning that their inaction will be counted as a vote in favor.  *See, e.g.*, *In re SunEdison, Inc.*, 576 B.R. 453, 460-61 (Bankr. S.D.N.Y. 2017) (concluding that non-voting creditors did not consent to broad third-party releases in plan despite warning in disclosure statement that failure to vote would count as consent); *In re Chassix Hldngs., Inc.*, 533 B.R. at 81 ("Charging all inactive creditors with full knowledge of the scope and implications of the proposed third party releases, and implying a 'consent' to the third party releases based on the creditors' inaction, is simply not realistic or fair, and would stretch the meaning of 'consent' beyond the breaking point.").

The proxies sought by Class Counsel ignore commonplace safeguards common to proxy solicitation that are meant to ensure proxies are given with informed consent. The Court must not allow Class Counsel to attempt to collect proxies without any such safeguards.

## 2. The Transfer of a Voting Proxy By "Inaction" Is Particularly Inappropriate Here Because the Makeup of the Class is Unknown and Unknowable Unless and Until Claims are Submitted

The Proposed Notice conveys a proxy to cast a creditor vote by "inaction." Unless a putative class member opts out, it is deemed to convey an affirmative (and presumably irrevocable) voting right to Class Counsel to vote on their behalf as creditors in the Scheme. In other words, they convey a voting proxy by taking no action. *See* 5/18/21 Catalina Decl., Ex. G (ECF No. 263-7) ¶ 21.a. This procedure is a particularly inappropriate method for proxy solicitation in this case, however, because the identities of the putative Class Members and the size of their claims (or value of their credit) are *unknown and unknowable*. There is no "list" or record of individuals and entities meeting the broad class definition in the Provisional Order, nor is there a record of their damages. This information is not known until putative class members submit claims documenting their purchases and sales of Luckin securities. Thus, the voting proxies that will be given, both as to number of shareholders and as to damages (the two metrics relevant to voting in the Scheme) will not be *actual proxies of actual shareholders, Class Members or creditors*, but will have to be estimated using mathematical models proffered by Class Counsel.

Securities fraud damages in class actions are generally a function of share price inflation based upon the alleged misrepresentations, and damaged shares, or those shares purchased during the class (or inflated) period and held until after the fraud is discovered (when the inflation from the misrepresentations no longer affects share price). *See* 6/7/21 Catalina Decl., Ex. C (David H. Topol, *Attacking Plaintiff-Style Damages During Mediation of Securities Cases*, PLUS Journal

(May & June 2004)), at 2-3 (discussing methods for calculating share price inflation and number of shares damaged).  However, given the lack of available information as to what portion of a stock's trading volume on a given day during the class period consists of shares that were both bought and sold during the class period – and therefore presumably not "damaged" – and who was trading them, plaintiffs commonly use models to estimate the number of "damaged" shares and aggregate damages.  *Id.*  Numerous commentators have called the accuracy of such models into question, and two recent commentators have noted that while "[a]ggregate damages are still routinely calculated by both plaintiffs and defendants[,]" they are "rarely presented in motions and reports that are subject to cross examination."  *See* 6/7/21 Catalina Decl., Ex. D (Narinder Walia and Adam Werner, *Validating Aggregate Securities Class Damage Estimates*, Law360 (Feb. 24, 2021)).

Here, the proxies Class Counsel seeks to obtain through the Proposed Notice will not be from confirmed, identifiable Class Members, with actual damages claims, but will be estimated according to a (yet undisclosed) model of unknown accuracy.  No information has been provided as to how Class Counsel will attempt to quantify, both in number of shareholders and in damages, the number of proxies it has received through this "proxy by inaction" method.  All that is clear at this point is that if the Proposed Notice is approved, Class Counsel will use it to claim they have obtained the proxies of some unknown number of unidentified Class Members with an unknown amount of claims.  The Court should not allow proxies to be conveyed to Class Counsel when there is no method for determining the number, identity or claim size of the transferors.

### 3. Soliciting Proxies Through Class Notice Increases Risk for Class Members and Creditors With no Tangible Benefit

Allowing Class Counsel to solicit creditor proxies through inaction in the Proposed Notice is not only unauthorized by Rule 23, untethered from common proxy protections, and opaque as

to whose proxies are actually being obtained, but it is also poor judicial policy from a risk/benefit perspective. As Class Counsel, Luckin, and the JPLs have pointed out, if this Court allows them to use the class notice procedure to attempt to collect proxies to cast creditor votes, the Cayman court should have final say on whether that proxy collection method was valid under Cayman Islands law. *See, e.g.*, 5/25/21 Letter from C. Martin to Court (ECF No. 276) at 2 (After a Scheme is prepared and submitted, "the Grand Court will exercise its discretion about the procedure by which the meeting will be convened and also the mechanisms by which the statutory majorities will be calculated. The Grand Court will give appropriate voting directions consistent with the statutory purpose."). Thus, if the JPLs strike the deal they want with Class Counsel supported by a voting agreement (as was given by the bondholders), it will be premised on the assumption Class Counsel can provide the necessary votes to approve the Scheme. However, there is a significant risk that the deal will fall through if the Cayman court decides this negative-consent class notice procedure was insufficient to convey the proxies of Luckin creditors. If that occurs, months will have been wasted negotiating a Scheme designed solely to satisfy Class Counsel, and the likelihood of Luckin's liquidation will increase.

On the other hand, there is no potential harm, and indeed there is a likelihood of significant benefit, if this Court stays out of the proxy collection for creditor votes in the Caymans and allows the Cayman Scheme process to play out on its own. Under that scenario, no Class Members would be cloaked with the voting approval rights of a "super creditor." The JPLs will be forced to negotiate with all of the defrauded ADS holders, increasing the likelihood of achieving the best possible deal for the ADS holders, all of whom will be bound by a court-approved Scheme. Any party seeking proxies from ADS claimants would have to negotiate a Scheme attractive enough to those creditor-claimants that they would be willing to affirmatively provide their proxy. In order

17

to attract the buy-in of more than just Class Counsel, the JPLs will be forced to offer more attractive settlement terms.

Indeed, the fact that both Luckin and the JPLs have thrown their support behind Class Counsel's attempt to obtain voting proxies through the class notice mechanism should give the Court pause.  If the JPLs, in particular, were genuinely interested in negotiating a deal that would be broadly acceptable to all ADS creditor-claimants, they should have no interest in vesting Class Counsel with supermajority voting rights.  Rather, the choice to support Class Counsel's proxy solicitation in this action indicates a preference on their part to choose Class Counsel to simplify and expediate settlement negotiations with creditors.  This preference is only economically rational if the JPLs believe they can achieve a better deal with Class Counsel than they can through meaningful negotiations with all creditor-claimants.  Accordingly, the Court should be highly skeptical about whether the transfer of the Class Members' Cayman Islands-law-based voting rights will inure to the benefit of the Class Members, creditors, or the Defendants.

Finally, removing the voting provisions from the Proposed Notice, and approving the Revised Notice, will not delay Scheme negotiations or jeopardize a successful reorganization in the Cayman Islands.  The JPLs started with bondholders and successfully reached agreement without resort to making an individual bondholder act as class representative, certifying a U.S. "settlement class," and aggregating creditor votes.  It can now follow the same process with injured equity investors that it pursued with bondholders.  In the meantime, Luckin is fully operational and is operating hundreds of coffee shops in China.  The Revised Notice—removing the voting proxy and requiring review of any settlement before this Court—will allow them to proceed in a meaningful way with the full range of ADS claimants.  As counsel for the JPLs noted at the May 28, 2021 Hearing, the ad hoc committee, which is in the process of formation, includes a number

of ADS claimants.  The only difference in the process that would follow issuance of the Revised

Notice is that, rather than simply "communicating with" ADS claimants other than Class Counsel,

and being "interested in their views on the [S]cheme" as counsel for the JPLs said they would be

during the May 28, 2021 Hearing, the JPLs will have to engage in meaningful negotiations with

the entire creditor group, increasing the likelihood of a better outcome as explained above.  *See*

6/7/21 Catalina Decl., Ex. A at 13:23-14:7.  While this may not be as easy as a collusive deal with

the Class, a meaningful process involving all stakeholders should result in a better outcome for all

of the ADS claimants.

As a practical matter, the Court's approval of the Proposed Notice is likely to inject

additional risk of failure into the Scheme process or to result in a settlement more beneficial to

Luckin and the JPLs than may otherwise be achieved.  Approving the Revised Notice will leave

matters of creditor voting in the Cayman proceeding where they belong, with the Cayman Court,

free from any interference from this Court.  By declining to approve Class Counsel's and Luckin's

Proposed Notice, all parties will be incentivized to negotiate a more attractive deal for the ADS

claimants in the Scheme in order to win approval.  Accordingly, the Court should reject the

Proposed Notice and instead approve the Revised Notice.

## II.   THE PROPOSED NOTICE SHOULD BE MODIFIED TO CONFORM TO THE CERTIFICATION ORDER'S CERTIFICATION OF A CLASS SOLELY TO SETTLE CLAIMS AGAINST LUCKIN

The Provisional Order provisionally certified a class "for settlement purposes *only with*

*respect to Plaintiff's claims against Luckin*."  5/18/21 Catalina Decl., Ex. D ¶ 1 at 3 (emphasis

added).  The purported reason for this limitation was self-evident.  The bankruptcy filing had

imposed an automatic stay of litigation against Luckin, but all other litigation (including against

solvent underwriters) could proceed.  Despite the limitation imposed by the Certification Order,

the Proposed Notice impermissibly informs Class Members that "the Settlement may include all claims arising out of the facts alleged in the Complaint and may include claims asserted against *all Defendants and certain related parties*."   5/18/21 Catalina Decl., Ex. G ¶ 21.a (emphasis added).  This language goes beyond the express scope of the Certification Order—is broad enough to include the claims against solvent third parties and underwriters--and should therefore be excised from the Proposed Notice.  The Proposed Notice cannot be broader than the Certification Order.  The Revised Notice removes this language.  *See* 6/7/21 Catalina Decl., Ex. E ¶ 21.a.

## III.   THE COURT MUST REQUIRE THAT ANY SETTLEMENT NEGOTIATED BY CLASS COUNSEL BE PRESENTED TO THE COURT FOR APPROVAL

It is beyond cavil that any settlement between Luckin and the Class must be reviewed and approved by this Court.  "The claims, issues, or defenses of a certified class … may be settled, voluntarily dismissed, or compromised *only with the court's approval*."  Fed. R. Civ. P. 23(e) (emphasis added).  This Court's approval of any settlement is mandatory.  *See Amchem Prods., Inc.*, 521 U.S. at 620-21; *see also In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-CV-5450, 2016 WL 7625708, at *2 (S.D.N.Y. Dec. 21, 2016) (holding a class action settlement approval involves a two-step process: (1) preliminary approval — where "prior to notice to the class, a court makes a preliminary evaluation of fairness," and (2) final approval — where "notice of a hearing is given to the class members, [and] class members and settling parties are provided the opportunity to be heard on the question of final court approval.").  "The inquiry appropriate under Rule 23(e) … protects unnamed class members from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise."  *Amchem Prods., Inc.*, 521 U.S. at 623 (internal quotations omitted).   Nevertheless, the unprecedented procedure contemplated here—which seeks to use Rule 23 to empower a creditor settlement of a foreign

reorganization—does not require such approval.  Accordingly, the Certification Order does not require that any settlement be brought before this Court for approval, and Class Counsel does not appear to view it as mandatory.  In Class Counsel's May 25, 2021 letter to the Court, counsel explained that "[i]f a Scheme is approved by the Cayman court, that scheme would become effective in the United States only upon Bankruptcy Judge Glenn's issuance of a further recognition order making the scheme binding in the United States."  (ECF No. 274 at 4.)  But entering a recognition order domesticating the Scheme in a bankruptcy proceeding would not hew to Rule 23 standards, and could only be prevented where doing so "would be 'manifestly contrary to the public policy of the United States,'" a "narrowly construed" exception that is used "sparingly."  *See In re Ocean Rig UDW, Inc.*, 570 B.R. 687, 707 (Bankr. S.D.N.Y. 2017) (Glenn, J.) (quoting 11 U.S.C. § 1506, 1517(a)).  More troublesome than Class Counsel's letter were his comments at the May 28, 2021 Hearing, in which he repeatedly hedged on whether settlement approval by this Court was necessary.   *See* 6/7/21 Catalina Decl., Ex. A at 18:16-19 ("one course is that we have a successful settlement in the Cayman, and then we bring that to the United States, to Judge Glenn, *potentially to you.*"); 18:22-23 ("I'm just suggesting, as class counsel, we may settle with more parties. *We may bring that to you.*"); 20:10-13 ("[C]ertainly there is *an opportunity* for us to come back before this court to present a settlement.  That is something *we are contemplating.*") (emphasis added).

Adherence to Rule 23(e) is not an optional procedure for Class Counsel to "contemplate" or for them to "potentially" do.  It is mandatory and the Court should revise the Provisional Order to make clear that Court approval of any class settlement is required.[7]

---

[7] Class Counsel's insistence that the "Provisional" Order is "final and non-appealable" is flat wrong.  (*See* ECF No. 274 at 2.)  Pursuant to Rule 23(c)(1)(C), a class certification order "may be

<u>**CONCLUSION**</u>

For the reasons set forth above, Winslow respectfully requests that the Court grant its motion to intervene, grant its objection to the Proposed Notice, and approve for distribution the Revised Notice submitted herewith.

Dated: June 7, 2021  
New York, New York

**ROLNICK KRAMER SADIGHI LLP**

By: *<u>/s/ Frank T.M. Catalina</u>*  
Lawrence M. Rolnick  
Frank T.M. Catalina  
1251 Avenue of the Americas  
New York, New York 10020  
Tel. 212.597.2800  
lrolnick@rksllp.com  
fcatalina@rksllp.com  
*Attorneys for the Winslow Funds*

---

altered or amended before final judgment." The Provisional Order itself also specifically provides that it may be altered or amended by the Court prior to final judgment. 5/18/21 Catalina Decl., Ex. D ¶ 5 at 5.

22