# EXHIBIT A

L5SGlucC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

In re Luckin Coffee Inc.
Securities Litigation,

20 Civ. 1293 (JPC)

------------------------------x

New York, N.Y.
May 28, 2021
2:00 p.m.

Before:

HON. JOHN PETER CRONAN,

District Judge

APPEARANCES

BERNSTEIN LITOWITZ BERGER & GROSSMAN LLP
    Attorneys for Lead Plaintiffs
BY:  SALVATORE J. GRAZIANO

KESSLER TOPAZ MELTZER AND CHECK LLP
    Attorneys for Lead Plaintiffs
BY:  SHARAN NIRMUL

LOWENSTEIN SANDLER, LLP
    Attorneys for Lead Plaintiffs
BY:  MICHAEL S. ETKIN

DAVIS POLK & WARDWELL
    Attorneys for Defendants Luckin Coffee Inc.
BY:  LAWRENCE J. PORTNOY
         ALLISON LEHRER

DLA PIPER LLP (US)
    Attorneys for JPL
BY:  CRAIG R. MARTIN
    CARYN SCHECHTMAN

GIBSON, DUNN & CRUTCHER, LLP
    Attorneys for Defendant Meier
BY:  JASON J. MENDRO

L5SGlucC

(Appearances continued)

CAHILL GORDON & REINDEL LLP
     Attorneys for Underwriter Defendants
BY:  DAVID JANUSZWEWSKI

ROBBINS GELLER RUDMAN & DOWD LLP
     Attorneys for State Class
BY:  BRIAN E. COCHRAN

BROWN RUDNICK LLP
     Attorneys for Kingstown
BY:  SIGMUND S. WISSNER-GROSS

ROLNICK KRAMER SADIGHI LLP
     Attorneys for Winslow Funds
BY:  FRANK T.M. CATALINA
  LAWRENCE ROLNICK
  BRANDON FIERRO

AFN LAW PLLC
     Attorneys for Lai Ye
BY:  ANGUS NI

SHAPIRO HABER & URMY LLP
  Attorneys for State Class
BY:  EDWARD F. HABER

L5SGlucC

creditor majorities. And they then present the scheme to the Court for sanction, at which parties that are subject to the scheme have the opportunity to appear and be heard with respect to the scheme and object to it if that's what they feel is appropriate or offer their support.

That's a brief summary of the process. So like many complicated transactions, there would be someone that has the lead with the pen, and that might be the attorneys at the Campbells law firm that represents the JPLs. But I would anticipate that the parties to the scheme and the company would be involved in commenting on those drafts and providing feedback. And there would be back and forth between the parties before the scheme is finalized.

THE COURT:    Thank you.

And how would that work in a situation like this, assuming that I were to issue the notice, the proposed notice and that entities opt out? From what I understand, those entities would still be subject to whatever is determined at the sanction hearing. Would those entities who opt out still be part of those discussions in developing the scheme, or would that be limited to, here, the lead plaintiffs, if that makes sense?

MR. MARTIN:    No, and obviously, every creditor or potential creditor is of a different size and a different characteristic, but the intent of the JPLs is to ensure that

L5SGlucC

those parties have the right to participate and that we will be communicating with them.  The right to participate is, of course, driven by Cayman law.  And if they are subject to the treatment under the scheme, they have a right to be heard.  And because of that, naturally, we would be interested in their views on the scheme because we would have to have everyone agree to an arrangement.  And that's why, as we noted in our letter -- and I think some others did as well -- that when we convened the meeting on May 20th to propose a steering committee or an ad hoc group, we invited everyone, irrespective of if we thought they might opt out or not.

So I would anticipate that if your Honor were to approve the opt-out notice, it would go out.  We would then have a group of parties that would opt out.  And that would inform us as to who we would be interacting with between the opt-outs and the lead plaintiff group.

THE COURT:   Thank you.  That's very helpful.  I understand.

Mr. Martin, under Cayman law, who has the final say as to what goes in the scheme that goes to the Grand Court?  In other words, if some creditors are of one view, others are of different view, do the JPLs serve as potentially the decider there if there's disagreement?

MR. MARTIN:   Obviously a bit of a hypothetical, but ultimately, the JPLs have been appointed to facilitate a

L5SGlucC

productive.  Otherwise, the JPLs, we, Luckin will never know who is in the class.  And it could be very difficult to reach any resolutions.

THE COURT:    Thank you.

Mr. Graziano -- I'm sorry if I may be jumping around a bit -- can you tell me how you see this playing out with respect to the litigation before me?  The stay is lifted only for purposes of essentially settlement discussions in connection with the Cayman litigation.  Is the idea that once that is approved, whatever is finalized in Cayman is approved, to the extent that it needs to be approved by the bankruptcy court here, which is another question I have as to how that would play out, then we would be in a position to move forward with the case before me and resolve it as appropriate?

MR. GRAZIANO:    There are a number of possible courses this could take.  But certainly, your Honor, one course is that we have a successful settlement in the Cayman, and then we bring that to the United States, to Judge Glenn, potentially to you.  This settlement, by the way, it doesn't have to, but it could be a broader settlement, if counsel for the underwriters are on the phone.  I don't intend to put them on the spot today, but I'm just suggesting, as class counsel, we may settle with more parties.  We may bring that to you.  Obviously, that would be different, that would have a second class notice go out, because now the class would see different parties in the

L5SGlucC

with that purpose. We are not there to be some kind of superpower. We are focused on our Rule 23 certified class and not beyond that. I understand, in the Cayman, there are different rules and consequences. But that is a function of Cayman law, not Rule 23. We are speaking on behalf of the class in the Cayman because it's been certified before your Honor.

THE COURT:    Mr. Graziano, what would I then be approving with respect to your class pursuant to Rule 23?

MR. GRAZIANO:    The process will depend upon what exactly happens in the Cayman. But certainly, there's an opportunity for us to come back before this court to present a settlement. That is something we are contemplating, yes.

THE COURT:    And talking about specifically the scheme that Mr. Martin spoke about and wrote about, assuming that there is a scheme that goes through the entire process in the Grand Cayman and is approved -- or sanctioned, I guess is the right word -- by the Grand Court and that scheme, as I understand it, would entail reorganization of capital, if that scheme is sanctioned by the Grand Court, does that then need to be approved by Judge Glenn for it to have affect in the US?

MR. GRAZIANO:    That is our understanding, that at the very least it would be presented to Judge Glenn in the United States, if not as well to your Honor.

THE COURT:    Mr. Martin, is that your understanding as

L5SGlucC

to aggregate voting power. So I want to address some of the arguments that we've seen in the letters to your Honor and that we just heard on the phone about the proposed notice not bestowing any legal rights.

The proposed notice does say that your voting rights in the Cayman scheme may be affected. It says, if you remain a member of the class, the class representatives and class counsel will have the power to cast votes on behalf of the class, which may be deemed to be a vote cast by you as a member of the class. Now, Mr. Graziano is correct that the word "may" is included in the notice. But unless class counsel was going to seek to be able to cast votes on behalf of absent class members in the Cayman scheme, there would be no reason to tell the absent class members that class counsel may be able to vote for them. So I understand that, ultimately, a Cayman court will have to determine whether class counsel will be able to aggregate and cast those votes. But the clear purpose of putting that language in the notice is to obtain the proxies of absent class members such that they can get over the hurdle to approve a scheme in the Cayman proceedings. There's no reason otherwise to include the voting language in the notice.

And I'll note, your Honor's provisional order certifying a class did not specifically bestow the power upon class counsel to vote for absentee class members in the Cayman proceeding. However, as we understand Cayman law, the meeting