# EXHIBIT GS3

**PRACTICE DIRECTION No.2 of 2010**

**(GCR O.1, r.12)**

**SCHEMES OF ARRANGEMENT AND COMPROMISE
UNDER SECTION 86 OF THE COMPANIES LAW
(GCR O.102, r.20)**

**1      Introduction**

1.1     This practice direction supersedes Practice Direction No.1 of 2002 (issued on 4th July 2002) which is hereby revoked.

1.2     The sole purpose of replacing Practice Direction No.1 of 2002 is to provide more detailed directions and guidance about matters which will be considered by the Court at the first hearing of a petition for an order sanctioning a scheme of arrangement. Practitioners are referred in particular to paragraphs 3.1 to 3.5 below.

1.3     This practice direction will apply to proceedings commenced and/or hearings taking place on or after 1st October 2010.

**2      Commencing proceedings**

2.1     The previous practice of the Court, whereby the applications for an order convening the Court meeting and the sanction of the scheme of arrangement were treated as two entirely separate proceedings, was abolished by Practice Direction No.1/2002. These applications will continue be made in the same proceeding, thus resulting in the creation of a single Court file.

2.2     The proceeding will be commenced by petition seeking the Court's sanction of a proposed scheme of arrangement or compromise. At the same time as filing a petition, the applicant must file an interlocutory summons for an order convening the Court meeting(s). As part of the directions given on this application, the Court will fix a date for the substantive hearing of the petition, notice of which will be given to the shareholders/creditors as part of the scheme documentation.

2.3     Within seven days after the Court meeting(s) has or have been held, the applicant must file an affidavit sworn by the Chairman of the meeting(s) verifying that notice was duly sent in accordance with the order for directions; that the meeting(s) was or were duly held; and giving particulars of the result. In the event that the scheme was not approved, the applicant will also formally ask for the petition to be dismissed. In the event that the scheme was approved, the substantive hearing of the petition will take place on the predetermined date. In most cases it should be unnecessary to file any further evidence.

## 3    Matters to be determined at the first Hearing

3.1    The first hearing (on the interlocutory summons for an order to convene the Court meeting) will normally be heard ex parte, but practitioners should consider giving notice to persons affected by the scheme in cases where class or other issues as referred to in paragraph 3.3 below arise, and where it is practical to do so. Such notice should include a statement of the intention to promote the scheme and of its purpose, and also of the proposed composition of classes and of the intention to raise any issue as referred to in paragraph 3.3 below.

3.2    In every case the Court will consider whether it is appropriate to convene class meetings and, if so, the composition of the classes so as to ensure that each meeting consists of shareholders or creditors whose rights against the company which are to be released or varied under the scheme, or the new rights which the scheme gives in their place, are not so dissimilar as to make it impossible for them to consult together with a view to their common interest. It follows that the supporting affidavit must contain all such information as may be necessary to enable the Court to make this determination. The applicant should also raise at the first hearing any other matter which may affect the conduct of the meeting(s).

3.3    At the first hearing, the Court will also consider any other issue which is relevant to the jurisdiction of the Court to sanction the scheme, and any other issue which, although not strictly going to jurisdiction, is such that it would unquestionably lead the Court to refuse to sanction the scheme.

3.4    It is the responsibility of the applicant by evidence in support of the application or otherwise to draw the attention of the Court to any issue in relation to the meeting(s) or any issue in paragraph 3.3 above. Unless the applicant's case in relation to the meeting(s) or any issue in paragraph 3.3 above is a plain and obvious one, the applicant's counsel should provide the Court with a skeleton argument addressing the relevant issues.

3.5    The Court will, if necessary, give directions for the resolution of any such issues including, if necessary, directions for the postponement of meeting(s) until that resolution has been achieved, and will hear interested parties. The Court will expect any person who raises any such issue at the hearing to sanction the scheme to show good cause why they did not raise it at an earlier stage.

3.6    The Court will consider whether the proposed time and place of the Court meeting(s) and the method of giving notice is appropriate in all the circumstances. The test is whether the parties having the economic interest, which is typically not the registered holder of the shares or debt instruments, will have sufficient time in which to consider the scheme documentation and make an informed decision. Where necessary, the Court should be provided with evidence of the "shareholder/creditor profile". In cases where the relevant shares or debt instruments are listed on a stock exchange, the Court must be provided with all necessary evidence upon which to satisfy itself that

-3-

the proposed notice period and method of giving notice will comply with applicable rules.

3.7    The applicant must satisfy the Court that the scheme documentation will provide the shareholder/creditor (which for this purpose means the person having the ultimate economic interest) with all the information reasonably necessary to enable them to make an informed decision about the merits of the proposed scheme. Since this application will typically be made ex parte, the applicant's counsel must draw the Court's attention to any aspects of the explanatory memorandum or proxy statement which might arguably depart from best practice.

3.8    If the proposed scheme relates to shares or debt instruments which are listed on a stock exchange, the applicant must file evidence which sets out the relevant listing rules and practice and explains the steps which have been or will be taken to comply with such listing rules or practice. The Court will always require to know whether the proposed explanatory memorandum or proxy statement requires the approval of the relevant stock exchange and, if so, whether such approval has been obtained.

3.9    If one of the proposed class meetings consists of a small number of persons who are all willing to be bound by the terms of the scheme, the Court may, in its discretion, waive the requirement for a formal class meeting to be held of that particular class if the evidence before it at the first hearing shows that all of the particular members in question consent to be bound by the terms of the scheme.

## 4    "Looking through the Register"

4.1    GCR O.102, r.20 (6) confirms the existing practice of the Court which is to "look through the Register" in appropriate cases for the purpose of determining whether or not the statutory majorities have been achieved.

4.2    In the past there has been some uncertainty about the way in which the Court will interpret and apply the statutory provisions in cases where the whole or substantially the whole of the relevant shares are registered with custodians or clearing houses such as Euroclear and Clearstream Luxembourg (previously known as Cedel). In the case of schemes involving creditors, similar uncertainty has arisen in cases where the scheme relates to a global note and where the whole of the debt instruments are registered with a single trustee. In such cases the Court will "look through the register" for the purpose of determining whether or not the statutory majorities have been achieved and any necessary directions for this purpose will be given at the hearing of the interlocutory summons.

4.3    For example, the Court may direct that the custodian be permitted to vote both for and against the scheme in accordance with the instructions received from its clients and proxy forms should be prepared accordingly. In such cases the scheme documentation should include a form of voting instructions for use by custodians.

-4-

4.4 Custodians and clearing houses may be required to specify both the number of clients or members from whom they have received instructions in addition to the number of shares voted. The majority in number will be calculated on the basis of the number of clients or members giving instructions to the custodian or clearing house. The Court understands that both Euroclear and Clearstream Luxembourg are content to proceed in this way. In cases involving other custodians or clearing houses, the Court will require evidence that the custodian or clearing house is willing and able to give effect to the Court's directions.

## 5 Hearing the Petition

5.1 The substantive hearing of the petition will take place in open court.

5.2 The date for the substantive hearing of the petition will be fixed at or before the hearing of the interlocutory summons for a direction convening the Court meeting(s).

5.3 Notice of the hearing date should be included in the scheme documentation, thus avoiding any subsequent need to publish advertisements. The explanatory memorandum or proxy statement should draw attention to the fact that shareholders or creditors will have the right to attend and be heard on the hearing of the petition.

5.4 GCR O.102, r.20 (10) provides that any person who voted at the Court meeting and any person who gave voting instructions to a custodian or clearing house who voted at the Court meeting, shall be entitled to be heard on the petition. In addition, the Court may be prepared to hear any other person whom it is satisfied has a substantial economic interest in the shares or debt instruments to which the scheme relates.

## 6 Miscellaneous

6.1 The Court is prepared in appropriate cases to direct that Court meetings be held outside the Cayman Islands.

6.2 Relevant extracts from the company's memorandum and articles of association should be exhibited to the supporting affidavit. It is not necessary to exhibit the whole of the memorandum and articles of association in every case.

Dated this 17th day of September 2010

The Hon. Anthony Smellie QC,
Chief Justice