# EXHIBIT F



# THE JOINT PROVISIONAL LIQUIDATORS' FIRST REPORT TO THE GRAND COURT OF THE CAYMAN ISLANDS LUCKIN COFFEE INC. (IN PROVISIONAL LIQUIDATION)

For the period: 15 July 2020 (date of appointment) to 17 December 2020

*Issue Date: 17 December 2020*

© Alvarez & Marsal Cayman Islands Limited. See Disclaimer. All rights reserved.

ALVAREZ & MARSAL

# Contents

Disclaimers ....................................................................................................................... 4

Schedule of Defined Terms ............................................................................................... 6

1    Introduction ........................................................................................................ 8

    1.2    Summary ..................................................................................................... 8

2    Appointment of the JPLs ..................................................................................... 11

3    JPLs' legal counsel .............................................................................................. 12

    3.1    Campbells .................................................................................................. 12

    3.2    DLA U.S. ..................................................................................................... 12

    3.3    DLA H.K. ..................................................................................................... 12

    3.4    YLO and TTL ............................................................................................... 12

4    Initial steps upon JPLs' appointment .................................................................. 13

    4.1    POCL, cash management & monitoring operations ................................... 13

    4.2    Initial and ongoing meetings with the Company and their advisors .......... 13

    4.3    Protocol between the JPLs and the Board .................................................. 14

    4.4    Solvency determination ............................................................................. 14

    4.5    Constitution of a creditor committee ........................................................ 14

    4.6    Financial statement audit for the year ended 31 December 2019 .............. 15

    4.7    Freezing injunction and recognition .......................................................... 15

5    Group structure .................................................................................................. 16

6    Assets ................................................................................................................. 17

7    Indebtedness and stakeholders ........................................................................... 18

    7.1    Convertible bondholders (unsecured creditors) ........................................ 18

    7.2    Shareholders (contingent unsecured creditors) ........................................ 18

    7.3    Internal investigation ................................................................................. 19

    7.4    SEC and DOJ .............................................................................................. 19

    7.5    Chinese regulators ..................................................................................... 20

    7.6    Trade & other unsecured creditors ........................................................... 21

    7.7    Petitioning creditor .................................................................................... 21

8    Business plan review ........................................................................................... 22

    8.1    Cash burn overview .................................................................................... 22

    8.2    Store level profitability .............................................................................. 23

    8.3    Other products and service lines profitability ............................................ 23

9    Update on the Company's performance ............................................................... 25

© Alvarez & Marsal Cayman Islands Limited. See Disclaimer. All rights reserved.

9.1   General performance update ............................................................................................. 25

9.2   Operational update.......................................................................................................... 25

9.3   Financial update ............................................................................................................. 26

9.4   Summary of the Company's illiquid financial investments.................................................... 27

9.5   Audit and internal control progress.................................................................................... 30

10   SAFE and the remittance of funds from the PRC ..................................................... 31

11   Proposed restructuring and preliminary timeline..................................................... 32

12   Statutory matters .................................................................................................. 33

12.1 Filing, service and registration of JPLs' appointment ........................................................... 33

12.2 Notice of JPLs' appointment ............................................................................................. 33

12.3 Books & records and disclosure of information ................................................................... 34

12.4 JPLs' powers .................................................................................................................. 34

12.5 Registered Office, FATCA, CRS and BOR ........................................................................... 35

13   JPLs' view on next steps and ongoing restructuring.................................................. 36

AI   Appointment Order dated 15 July 2020 ................................................................... 37

AII   Group structure ..................................................................................................... 38

AIII  SEC complaint, consent and draft final judgment dated 16 December 2020............................ 39

AIV  Business plan and financial forecast (RMBm).......................................................... 40

Business plan and financial forecast (USDm)...................................................................... 42

© Alvarez & Marsal Cayman Islands Limited. See Disclaimer. All rights reserved.

ALVAREZ & MARSAL

## Disclaimers

The following report has been prepared by the Joint Provisional Liquidators of Luckin Coffee Inc. (in Provisional Liquidation) for the purposes of providing the Grand Court of the Cayman Islands with an update on the conduct of the provisional liquidation. Therefore, it may not be copied or disclosed to any third party or otherwise be quoted or referred to, in whole or in part, without the Joint Provisional Liquidators' prior written consent. In the event that the following report is obtained by a third party or used for any purpose other than in accordance with its defined purpose, any such party relying on the report does so entirely at its own risk and shall have no right of recourse against the Joint Provisional Liquidators, their respective firms, partners, directors, employees, professional advisors or agents.

Any reference to legal advice or otherwise is not intended to, and does not, waive any privilege.

None of the Joint Provisional Liquidators, their respective firms, partners, directors, employees, professional advisors or agents accept any liability or assume any duty of care to any third party (whether it is an assignee or successor of another third party or otherwise) in respect of the following report and any such party who receives a copy of this report, whether from the Joint Provisional Liquidators, their respective firms, or any other source shall have no right of recourse against the Joint Provisional Liquidators or their respective firms, partners, directors, employees, professional advisors or agents.

As discussed further in the following report, whilst the Joint Provisional Liquidators will continue to request independent third-party information, the work undertaken to date to prepare this Report has been largely based on information obtained from Luckin Coffee Inc. (in Provisional Liquidation) and its advisors. The Joint Provisional Liquidators have not performed an audit examination of this information. Unless otherwise specifically stated, the Joint Provisional Liquidators have not independently verified the reliability of the sources of information presented to the Joint Provisional Liquidators.

The following report is intended to update the Grand Court of the Cayman Islands on only the relevant and material developments since the Joint Provisional Liquidators' appointment and as such it does not include details of every event that has taken place in the provisional liquidation thus far.

The following report has not been sensitised to consider the potential impact on Luckin Coffee Inc. (in Provisional Liquidation) or market conditions generally of COVID-19. It will be the stakeholder's responsibility to consider Alvarez and Marsal's findings in light of your own analysis of the impact of COVID-19 on Luckin Coffee Inc. (in Provisional Liquidation).

© Alvarez & Marsal Cayman Islands Limited. See Disclaimer. All rights reserved.



The following report contains forward-looking statements within the meaning of Section 21E of the Securities Exchange Act of 1934, as amended. These forward-looking statements are made under the "safe harbor" provisions of the U.S. Private Securities Litigation Reform Act of 1995. These statements can be identified by terminology such as "will," "expects," "anticipates," "future," "intends," "plans," "believes," "estimates," "potential," "continue," "ongoing," "targets," "guidance" and similar statements. Any statements that are not historical facts, including statements about the Company's beliefs and expectations, are forward-looking statements. Forward-looking statements involve inherent risks and uncertainties. A number of factors could cause actual results to differ materially from those contained in any forward-looking statement, including but not limited to the following: the expense, timing and outcome of existing or future legal and governmental proceedings, investigations in connection with the Company; the outcome and effect of the ongoing restructuring of the Company's financial obligations; the Company's growth strategies; its future business development, results of operations and financial condition; the effect of the non-reliance identified in, and the resultant restatement of, certain of the Company's previously issued financial results; the effectiveness of its internal control; its ability to retain and attract its customers; its ability to maintain and enhance the recognition and reputation of its brand; its ability to maintain and improve quality control policies and measures; its ability to establish and maintain relationships with its suppliers and business partners; trends and competition in China's coffee industry or China's food and beverage sector in general; changes in its revenues and certain cost or expense items; the expected growth of China's coffee industry or China's food and beverage sector in general; PRC governmental policies and regulations relating to the Company's industry; the potential effects of COVID-19; and general economic and business conditions globally and in China and assumptions underlying or related to any of the foregoing. The joint provisional liquidators and the Company undertake no obligation to update any forward-looking statement, except as required under applicable law.

© Alvarez & Marsal Cayman Islands Limited. See Disclaimer. All rights reserved.



## Schedule of Defined Terms

| Term | Definition |
|---|---|
| A&M | Alvarez & Marsal Cayman Islands Limited and Alvarez & Marsal Asia Limited |
| A&M Cayman | Alvarez & Marsal Cayman Islands Limited |
| A&M H.K. | Alvarez & Marsal Asia Limited |
| Ad hoc Group | An ad hoc group of holders of the CBs, represented by CO |
| ADS | American Depositary Share |
| Appointment Order | Order dated 15 July 2020, by which the Cayman Court appointed the JPLs |
| BC | Bedell Cristin Cayman Partnership, Cayman counsel representing the Lead Plaintiffs and Petitioner |
| BNY | Bank of New York Mellon, as indenture trustee of the US$460,000,000 0.75% convertible senior notes due 2025 and the depositary bank appointed by the Company in November 2019 for listing shares on the Nasdaq |
| Board | Board of Directors of the Company |
| BOR | Cayman Islands Beneficial Ownership Regime |
| BVI | British Virgin Islands |
| Campbells | Campbells, the JPLs' legal counsel in the Cayman Islands |
| Cayman Court | The Grand Court of the Cayman Islands |
| CBs | All holders of US$460,000,000 0.75% convertible senior notes due 2025 |
| CEO | Jinyi Guo |
| CFO | Reinout Hendrik Schakel |
| CJ | Chief Justice Anthony Smellie QC |
| CO | Carey Olsen Cayman Limited, Cayman counsel representing a group of CBs who hold approximately 84% of the total convertible bonds |
| Companies Act | Cayman Islands Companies Act (2020 Revision) |
| Company | Luckin Coffee Inc. (in Provisional Liquidation) |
| Conyers | Conyers Trust Company (Cayman) Limited, registered office of the Company |
| CRS | Common Reporting Standard |
| CWR | Companies Winding Up Rules, 2018 |
| DLA H.K. | DLA Piper Hong Kong, H.K. counsel representing the JPLs in Hong Kong |
| DLA U.S. | DLA Piper LLP (US), U.S. counsel representing the JPLs in the U.S. |
| DPW | Davis Polk & Wardwell LLP, counsel for the Company in the U.S. and Hong Kong. |
| DOJ | U.S. Department of Justice |
| DTC | Depository Trust Company |
| EFG Bank | EFG Bank AG, Cayman Islands branch |
| Epiq | Epiq Corporate Restructuring LLC |
| Exchange Act | The Securities Exchange Act of 1934 |
| EY | Ernst & Young Hua Ming LLP, former auditors of the Company |
| FATCA | Foreign Account Tax Compliance Act |
| Group | Luckin Coffee Inc. (in Provisional Liquidation), its subsidiaries and affiliates |
| H.K. | Hong Kong |

© Alvarez & Marsal Cayman Islands Limited. See Disclaimer. All rights reserved.

| | |
|---|---|
| **H.K. Court** | High Court of the Hong Kong Special Administrative Region of First Instance |
| **Harneys** | Harney Westwood & Riegels, legal counsel to the Company |
| **HL** | Houlihan Lokey, the Company's financial advisor |
| **JPLs** | Alexander Lawson and Wing Sze Tiffany Wong, as joint provisional liquidators of the Company, appointed under the Appointment Order |
| **K** | Thousand ('000) |
| **Lead Plaintiffs** | Sjunde AP-Fonden and Louisiana Sheriffs' Pension & Relief Fund |
| **Luckin China** | Luckin Coffee (China) Co., Ltd. |
| **M** | Million ('000,000) |
| **Marcum** | Marcum Bernstein & Pinchuk LLP, current Company auditors |
| **Meifu Jiaye** | Meifu Jiaye (Xiamen) Automobile Service Co., Ltd. |
| **Nasdaq** | National Association of Securities Dealers Automated Quotations exchange |
| **NDA** | Non-disclosure agreement dated 4 October 2020, as amended from time to time |
| **NEED** | China's National Equities Exchange And Quotations Co., Ltd. |
| **Petition** | Winding up petition dated 10 July 2020 |
| **Petitioner** | A non-executive director who petitioned for the winding up of the Company on the basis of unpaid fees |
| **POCL** | The Proceeds of Crime Law (Cayman Islands) |
| **PRC** | People's Republic of China |
| **Protiviti** | Protiviti Hong Kong Co. Limited |
| **Protocol** | Protocol dated 16 October 2020 agreed between the JPLs and the Board with respect to the ongoing management of the Company during provisional liquidation period. |
| **Report** | The JPLs' first report to the Cayman Court (i.e. this report) |
| **RMB** | Renminbi |
| **SAFE** | State Administration of Foreign Exchange |
| **SAMR** | Chinese State Administration for Market Regulation |
| **SEC** | U.S. Securities and Exchange Commission |
| **Securities Act** | The Securities Act of 1933 |
| **SHs** | Persons who are or were holders of ADSs and who are entitled to be claimants in the class action litigation being pursued in the U.S. and Canada against the Company. |
| **U.S.** | United States of America |
| **USD** | United States Dollar |
| **Xiamen Trustee** | Xiamen International Trust Co., Ltd. |
| **Yishi** | Xiamen Yishi Finance Lease Co., Ltd. |
| **YLO and TTL** | Yaoliang Law Office and TianTong Law Firm, collectively PRC counsel representing the JPLs |
| **Yousheng Development** | Yousheng (Tianjin) Technology Development Co., Ltd. |
| **Yousheng Information** | Yousheng Chengyi (Tianjin) Information Technology Co., Ltd |
| **Yunnan Trustee** | Meifu Jiaye. Yunnan International trust Co., Ltd. |

© Alvarez & Marsal Cayman Islands Limited. See Disclaimer. All rights reserved.



# 1    Introduction

1.1.1    This is the first report of Alexander Lawson and Wing Sze Tiffany Wong of A&M in their capacities as JPLs of the Company. The JPLs were appointed over the Company for the purposes of exploring whether it is possible to develop and promote a restructuring of the Company's indebtedness, with a view to the Company continuing as a going concern. The Company is the holding company of a group engaged in selling coffee and other products in the PRC, principally through retail shops. Its principal creditors include the CBs (holders of US$460,000,000 0.75% convertible senior notes due 2025), the SHs (current or former holders of ADSs in the Company who are entitled to be claimants in the class action litigation being pursued in the U.S. and Canada against the Company), and, to the extent such claims are enforceable, regulators (and other governmental bodies) in the U.S. (in particular the SEC) and in the PRC.

1.1.2    Pursuant to paragraph 17 of the Appointment Order, this Report was to be submitted to the Cayman Court on 30 October 2020. However, as the Cayman Court will be aware, by various consent orders, that deadline has been extended to allow the Company to continue its negotiations with stakeholders. In particular, the Company, the Ad hoc Group and the JPLs have recently agreed to a further extension by consent order of the Cayman Court which requires the JPLs to file a report by 15 January 2021. This is not that report. The JPLs intend to file a further report by 15 January 2021 which will contain an update on further material developments within the provisional liquidation.

1.1.3    Negotiations with the Company and key stakeholders have progressed positively and substantially. Accordingly, the JPLs consider it useful to provide the Cayman Court and all stakeholders with a fulsome update on the steps taken by the JPLs and all other material developments since their appointment, to 17 December 2020.

1.1.4    The Cayman Court will be familiar with this matter and therefore, the JPLs do not intend to restate the detailed background already included in the evidence filed in support of the JPLs' appointment.

## 1.2    Summary

1.2.1    On 15 July 2020, by the Appointment Order of the Cayman Court, the Company was placed into provisional liquidation and the JPLs were appointed. A copy of the Appointment Order is included at Appendix I.

1.2.2    Under the Appointment Order, amongst other things, the JPLs are empowered do all things necessary and incidental to developing and proposing a restructuring of the Company's indebtedness in a manner designed to allow the Company to continue as a going concern. It is envisaged that a restructuring will be proposed by way of one or more creditors' schemes of arrangement pursuant to section 86 of the Companies Act.

© Alvarez & Marsal Cayman Islands Limited. See Disclaimer. All rights reserved.

1.2.3    As detailed in the subsequent sections of this Report, since their appointment, the JPLs have successfully achieved the following:

- took immediate steps to develop open lines of communication with the Company's management and their advisors such that the JPLs attend weekly calls with each of these groups. The JPLs and the Company continue to work collaboratively on all aspects of the restructuring proposal;
- undertook an extensive review of the Company's business plan to understand (amongst other things) the business, its internal control environment, cash demands and growth prospects, and for the quarter ended 30 September 2020 the Company achieved a net revenue growth of 35.8% YoY;
- supported the Company throughout its negotiations with the Ad hoc Group, which has resulted in a deal in principle being reached between the parties, subject to agreement on the terms of a restructuring support agreement;
- worked collaboratively with DPW to successfully develop a framework within which a settlement could be entered into with the SEC without impeding the proposed restructuring which ultimately aims to bring restitution to the victims of the misconduct;
- together with Cayman Islands and U.S. legal counsel considered a number of complex legal and commercial issues related to the development of a robust restructuring proposal that will completely resolve a number of issues for the Company and its stakeholders;
- worked with PRC counsel to consider various PRC legal issues that may impact the restructuring, particularly with respect to the legalities associated with obtaining SAFE approval of the remittance of funds out of the PRC;
- instructed H.K. legal counsel and obtained an order of the H.K. Court recognising the JPLs' appointment;
- assisted the Company in its negotiations with certain service providers with outstanding balances;
- pursuant to paragraph 16 of the Appointment Order, agreed to a Protocol with the Board which sets out the terms upon which the JPLs and the Board will cooperate with respect to the management of the Company (and wider group) during the provisional liquidation;
- started and continued to monitor and oversee operational and cash management controls per the Protocol; and
- observed and occasionally participated in meetings of the Board as agreed under the Protocol.

1.2.4    At the outset of the provisional liquidation, the JPLs together with their legal counsel completed an extensive review of the Company's operations and its financial position to better understand the restructuring needs of the Company and its stakeholders.

© Alvarez & Marsal Cayman Islands Limited. See Disclaimer. All rights reserved.

1.2.5    The result of that review is that the JPLs, in conjunction with the Company, have developed a detailed, robust restructuring proposal to scheme the Company's indebtedness, with a view to the Company emerging from the provisional liquidation as a going concern, for the benefit of all stakeholders. For the purposes of this report, however, it would be premature for the JPLs to present the restructuring proposal in its entirety. The JPLs intend to file a further report by 15 January 2021, which is a deadline agreed by consent of the parties, and that second report will contain an update on material developments between now and then.

1.2.6    **The JPLs' present view is that there is a viable path to restructuring the Company's indebtedness in a manner designed to allow the Company to continue as a going concern.**

*This space intentionally left blank*

© Alvarez & Marsal Cayman Islands Limited. See Disclaimer. All rights reserved.

## 2    Appointment of the JPLs

2.1.1    On 10 July 2020, the Petitioner presented a winding up petition (Cause No. FSD 157 of 2020 (ASCJ)), by which the Petitioner sought an order of the Cayman Court winding up the Company under section 92(d) of the Companies Act. This application was on the basis that the Company is unable to pay its debts, and therefore is insolvent on a cashflow basis.

2.1.2    Under section 104(3) of the Companies Act, the Company then made an *ex parte* application for the appointment of the JPLs on the grounds that:

- the Company is unable to pay its debts within the meaning of section 93 of the Companies Act; and
- the Company intends to present a compromise or arrangement to its creditors, under the supervision of the Cayman Court through the JPLs.

2.1.3    By the Appointment Order, the Court ordered the appointment of the JPLs on a restructuring mandate.

2.1.4    The evidential basis for the Company's application for the appointment of the JPLs was the fact that monies held within the Group could be considered, as a matter of Cayman Islands law, to be the proceeds of crime for the purposes of the POCL. In the circumstances, the Company could not pay its debts as they fell due without giving rise to potential offences of money laundering under POCL.

2.1.5    As a result of the JPLs' appointment, the hearing of the winding up petition has been adjourned. The Petitioner's debt was satisfied by the Company on 2 October 2020, and on 12 October 2020 by consent it was agreed that one of the CBs be substituted as the petitioner. The Court has yet to seal the consent order filed in respect of that substitution application.

2.1.6    It is presently contemplated that the petition will be listed for hearing on or after the 15 February 2021, pursuant to the 16 December 2020 consent order by the Cayman Court.

*This space intentionally left blank*

© Alvarez & Marsal Cayman Islands Limited. See Disclaimer. All rights reserved.

ALVAREZ & MARSAL

# 3 JPLs' legal counsel

In accordance with the Appointment Order, the JPLs have engaged legal counsel in the Cayman Islands the U.S., H.K. and the PRC to advise and assist them in the performance of their duties.

## 3.1 Campbells

3.1.1 On 20 July 2020 the JPLs engaged Campbells as their Cayman Islands legal counsel. Campbells have been principally engaged in advising the JPLs on all aspects of the restructuring of the Company's indebtedness which are connected to the Cayman Islands. This includes advice on negotiating with key stakeholders and the presentation of one or more schemes of arrangement in the Cayman Court.

## 3.2 DLA U.S.

3.2.1 On 4 August 2020 the JPLs engaged DLA U.S. as their U.S. legal counsel.

3.2.2 DLA U.S. have been principally involved in providing the JPLs with legal advice as it relates to the settlement the Company has reached with the SEC (subject to approval by a U.S. court), the ongoing investigation of the Company by the DOJ, the various legal proceedings (including a number of class action lawsuits) being pursued by the SHs against the Company principally in the U.S..

## 3.3 DLA H.K.

3.3.1 On 6 August 2020 the JPLs engaged DLA H.K. as their H.K. legal counsel.

3.3.2 DLA H.K. were engaged principally for the purposes of assisting the JPLs with their application to the H.K. Court for an order recognising the JPLs' appointment in H.K.

3.3.3 Additionally, DLA H.K. have been working collaboratively with YLO and TTL on cross-border cash pooling matters and an assessment of compliance needs with PRC regulators. DLA H.K. have also advised the JPLs in connection with legal issues relating to developing and proposing a financial restructuring of the Company.

## 3.4 YLO and TTL

3.4.1 On 30 July 2020 the JPLs engaged YLO and TTL as their PRC counsel.

3.4.2 The PRC counsel have been engaged for the purposes of advising the JPLs on PRC law matters in connection with the operating entities the PRC, in particular any matters with local regulators and assessing the legalities associated with obtaining SAFE approval of the remittance of funds out of the PRC.

© Alvarez & Marsal Cayman Islands Limited. See Disclaimer. All rights reserved.

## 4    Initial steps upon JPLs' appointment

### 4.1    POCL, cash management & monitoring operations

4.1.1    The basis for the JPLs' appointment has already been described in section 2, and as such shortly after their appointment it was necessary for the JPLs to engage with the RCIPS Bureau of Financial Investigation in the Cayman Islands in respect of the POCL issues.

**4.1.2    Campbells appeared before the Cayman Court on 31 July 2020, with the JPLs in attendance, to update the Court on the JPLs' assessment of the position under POCL. In the context of the overall restructuring, the JPLs do not believe there to be any material POCL issues at this time which may impact upon the successful restructuring of the Company.**

4.1.3    Upon their appointment and prior to the Protocol being agreed, it was of critical importance to the JPLs to develop and agree with the Company on an interim cash management framework to allow for sufficient cash controls whilst not disrupting the day-to-day operations of the Company. These steps were also necessary in light of the relevant sub sections of paragraph 4 of the Appointment Order, and relate to only the expenses of the Company (i.e. not the underlying subsidiaries).

### 4.2    Initial and ongoing meetings with the Company and their advisors

4.2.1    Following the appointment of the JPLs, immediate steps were taken to meet with management, and arrange an ongoing dialogue with the Company and their advisors. This can be summarised as follows:

- bi-weekly calls (minimum) with the Company's CEO and CFO;
- weekly (minimum) calls with the Company's financial advisors, HL;
- regular meetings and calls with the Company's Cayman Islands legal counsel, Harneys; and
- invitation and inclusion in all ongoing board meetings from the date of appointment.

4.2.2    In addition to these calls, the JPLs are provided with regular updates on measures of the Company's and group's performance – such as the share price of the Company (which was delisted from NASDAQ but trades Over The Counter), the Company's market capitalisation, the price of the 0.75% convertible senior notes due 2025 (held by the CBs), as well as daily operations and payment summaries concerning the wider Group (including any payment requests as required). This level of oversight by the JPLs will continue throughout the provisional liquidation.

4.2.3    The JPLs continue to keep detailed records of all cash transactions and are closely monitoring the daily operations of the Company in line with its business plan.

© Alvarez & Marsal Cayman Islands Limited. See Disclaimer. All rights reserved.

## 4.3    Protocol between the JPLs and the Board

4.3.1    Pursuant to paragraph 16 of the Appointment Order, the JPLs and the Company were empowered to seek to agree a Protocol between the JPLs and the Board. The Protocol is designed to set out the terms upon which the JPLs and the Board shall cooperate with respect to the ongoing management of the Company during the provisional liquidation period.

4.3.2    Due to the complex nature and structure of the Group, prior to the JPLs being able to agree a protocol (particularly in respect of the cash management processes, cash controls, and cash allocation/purpose within the Group), the JPLs and the Board (on behalf of the Company) entered into detailed and extensive discussions regarding its form and structure.

4.3.3    Aspects of the Protocol were anchored to the Company's business plan, in particular the cash management controls. Therefore, it was of critical importance to the JPLs that they review and understand the Company's business plan (and its accompanying cash needs) before agreeing to the cash allocations as described in detail in the Protocol.

4.3.4    The final version of the Protocol was agreed on 16 October 2020.

4.3.5    The JPLs are satisfied that the Company continues to adhere to the Protocol and the ongoing operations have continued in an efficient and controlled manner.

## 4.4    Solvency determination

4.4.1    The JPLs will continue to monitor and reassess the Company's solvency throughout the restructuring period and will provide the Cayman Court with any updates as required, but for present purposes consider the Company to be of doubtful solvency.

## 4.5    Constitution of a creditor committee

4.5.1    Paragraph 4(xxii) of the Appointment Order empowered (but did not oblige) the JPLs to establish a creditors' committee in such manner as contemplated by Order 9 of the CWR.

4.5.2    Following consultation with various stakeholders, the JPLs (with advice from Campbells) determined that a creditors' committee would be of little benefit to the provisional liquidation in circumstances where the JPLs already had well established lines of communication with the Ad hoc Group, and a committee for a company of doubtful solvency comprising both creditors and shareholders was not regarded as likely to be an effective body for the JPLs to consult with regarding the separate negotiations which would be necessary with the CBs and the SHs regarding the terms on which their respective debt might be restructured.

© Alvarez & Marsal Cayman Islands Limited. See Disclaimer. All rights reserved.

## 4.6    Financial statement audit for the year ended 31 December 2019

4.6.1    Following the JPLs' appointment, they were made aware that the Company's former auditors, EY, would not be engaged to audit the financial statements for the financial year ended 2019, and they would be replaced by Marcum.

4.6.2    The JPLs understood that Marcum needed to be engaged on an expedited basis due to certain SEC filing requirements and the Company's focus on updating the market on an urgent basis in relation to its audited financial statements. Further, the JPLs have been advised that any restructuring proposal will need to be supported (if possible) by audited financial statements of the Company and so, given the clear and obvious benefit to both the Company and its stakeholders, as of 30 November 2020, the JPLs approved payment of US$3,128,889.04 on account to Marcum to allow for them to commence their audit field work.

4.6.3    As at the date of this Report, the audit of the Company's financial statements for the period ended 31 December 2019, though on schedule, has not been completed and is currently still underway. The JPLs continue to obtain regular updates from the Company on Marcum's progress.

## 4.7    Freezing injunction and recognition

Worldwide freezing order

4.7.1    Prior to the appointment of the JPLs, on 8 May 2020 the Cayman Court granted an ex-parte worldwide freezing order in favour of a CB against the Company. The ancillary relief was granted in relation to alleged causes of action against the Company for misrepresentation arising from the issuance of the convertible bonds. Following the appointment of the JPLs, the worldwide freezing order was discharged.

4.7.2    Ancillary relief of a similar kind had also been obtained before the H.K. Court, but has since been discharged.

H.K. Recognition

4.7.3    Upon the ex parte application of the JPLs of the Company, filed on 10 September 2020, the H.K. Court recognised the appointment of the JPLs in H.K., on 12 October 2020.

*This space intentionally left blank*

© Alvarez & Marsal Cayman Islands Limited. See Disclaimer. All rights reserved.

ALVAREZ & MARSAL

# 5    Group structure

5.1.1    As the Cayman Court is aware, the Company has a complex corporate structure between offshore (Cayman Islands, BVI and H.K.) and onshore (PRC) entities. The Group's structure can be summarised as:

- the Company is an investment holding company which wholly owns Luckin Coffee Investment Inc., a company incorporated in the British Virgin Islands;
- in turn, Luckin Coffee Investment Inc. wholly owns three subsidiaries incorporated in H.K., Luckin Coffee (Hong Kong) Limited, Luckin Coffee Roastery (Hong Kong) Limited and Luckin Coffee Roasting (Hong Kong) Limited; and
- those H.K. subsidiaries do not have operations of their own and only hold investments in the various PRC operating subsidiaries.

5.1.2    The complete Group structure has been included at Appendix II.

*This space intentionally left blank*

© Alvarez & Marsal Cayman Islands Limited. See Disclaimer. All rights reserved.

ALVAREZ & MARSAL

# 6    Assets

6.1.1    The Company is an investment holding company and its principal assets are shares held in its wholly-owned BVI subsidiaries, and cash in the amount of approximately US$27.9M as of 30 November 2020. In turn, the BVI subsidiaries own H.K. subsidiaries.

6.1.2    The Company's operations are principally conducted through its PRC subsidiaries, Luckin Coffee Group Co., Ltd and Beijing Luckin Coffee Co., Ltd, and so the majority of the Group's assets (including cash) are located in the PRC.

6.1.3    Pursuant to paragraph 4(xiii) of the Appointment Order, the JPLs opened a Cayman Islands bank account with EFG Bank on 5 August 2020. On 13 August 2020, the Company made a transfer of US$31.2M to the JPLs' bank account for the purpose of payment of the JPLs' fees and expenses, and also for the payment of various offshore restructuring expenses of the Company.

6.1.4    Following agreement of the Protocol (as discussed in section 4.3), the JPLs have visibility over the operation of the entire Group's cash.

*This space intentionally left blank*

© Alvarez & Marsal Cayman Islands Limited. See Disclaimer. All rights reserved.

## 7    Indebtedness and stakeholders

Following their review of the financial information and documentation made available to them, the JPLs have identified the following stakeholder groups:

### 7.1    Convertible bondholders (unsecured creditors)

7.1.1    The JPLs understand that the CBs are currently owed US$467M by the Company, being the full principal and accrued interest of the issued convertible bonds as at 30 November 2020, following acceleration of the bonds.

7.1.2    To date, the JPLs together with HL have held various discussions with the Ad hoc Group and their Cayman legal counsel, CO. All discussions have been conducted under an NDA that was entered into on 4 October 2020 (as amended).

7.1.3    Following extensive negotiations, the Company and the Ad-hoc Group have reached an agreement in principle. The precise terms of a restructuring support agreement are still being negotiated between the parties.

7.1.4    The JPLs understand that the Ad hoc Group control over 80% of the issued convertible bonds, by value. With that in mind, and given that the CBs' debt is due and payable, the JPLs' view is that agreement between the Ad-hoc Group and the Company is the first, critical step in achieving a successful restructuring of the Company's indebtedness.

### 7.2    Shareholders (contingent unsecured creditors)

7.2.1    The Company (and certain directors and officers during the relevant time) presently face class action claims in U.S. federal and state courts, and in a Canadian court. The claimants are SHs, viz. current or former holders of ADSs in the Company. The actions are currently in their preliminary stages.

7.2.2    The SHs assert claims in the U.S. under section 11 of the Securities Act of 1933 and section 10b-5 of the Securities Exchange Act of 1934 in relation to alleged material misrepresentations and omissions by the Company during the period May 2019 to April 2020, prior to the public offering of the Company's ADSs and issuance of the convertible notes.

7.2.3    A restructuring of the Company's indebtedness will likely include a restructuring of these contingent claims. In that regard, the JPLs, through Campbells, have started to engage with Bedell Cristin, who act as Cayman Islands counsel for the Court appointed Lead Plaintiffs in legal proceedings in the United States Southern District of New York and their U.S. counsel.

© Alvarez & Marsal Cayman Islands Limited. See Disclaimer. All rights reserved.

### 7.3    Internal investigation

7.3.1    The Company provided the JPLs with the following information concerning the internal investigation which took place prior to their appointment:

> On 19 March 2020, in light of certain issues raised to the Board during the audit of the consolidated financial statements for the fiscal year ended 31 December 2019, the Board formed a Special Committee to oversee an internal investigation with the assistance of independent legal and forensic accounting advisors.

> On 1 July 2020, The Company announced that the Special Committee has substantially completed the internal investigation. Based on its work, the Special Committee found that the fabrication of transactions began in April 2019 and that, as a result, the Company's net revenue in 2019 was inflated by approximately RMB 2.12 billion (consisting of RMB 0.25 billion in the second quarter, RMB 0.70 billion in the third quarter, and RMB 1.17 billion in the fourth quarter). The Company's costs and expenses were inflated by RMB 1.34 billion in 2019 (consisting of RMB 0.15 billion in the second quarter, RMB 0.52 billion in the third quarter, and RMB 0.67 billion in the fourth quarter).

> Based on the Special Committee's recommendations, the Company has taken disciplinary measures against certain personnel, including termination of former executives involved in the misconduct, terminated business relationship and transactions with implicated third-party entities, and restructured the company's management team by changing reporting lines and functions such that the CFO gained full control over finance department, has a dotted reporting line to the Audit Committee and is budgeted to allocate sufficient resources.

> In connection with the Special Committee's findings, the Company has taken and is continuing to take steps to enhance the corporate governance structure and the accounting, banking, and financial disclosure controls.

### 7.4    SEC and DOJ

7.4.1    On 2 April 2020, the Company made voluntary disclosures in relation to its own misconduct in respect of financial reporting obligations to the SEC, during the time that it was listed on NASDAQ, and shortly thereafter the Company engaged in discussions with the DOJ. The DOJ will be conducting its own investigation into the Company's misconduct, separately from the SEC.

*This space intentionally left blank*

© Alvarez & Marsal Cayman Islands Limited. See Disclaimer. All rights reserved.



7.4.2    The Company has come to an agreement with the SEC, which is embodied in the complaint, the consent and the draft final judgment dated 16 December 2020 (see Appendix III). Under the terms of the agreement, the Company, without admitting or denying the allegations of the SEC, consented to the entry of an order requiring the Company to pay a civil penalty in the amount of US$180M. The civil penalty is to be offset by the dollar value of any cash payments made by the Company to CBs and SHs pursuant to schemes of arrangement sanctioned by the Cayman Court, if such payments are made within 42 months subject to extensions granted by the SEC staff and provided the final distribution plan is not reasonably objectionable to SEC staff.

7.4.3    The deferral of the penalty and the offsetting mechanism are, in the JPLs' view, key to ensuring that the SEC's penalty does not prejudice any restructuring. Nor will the penalty necessarily increase the Company's liabilities materially in the medium term, since credit will be given for the cash component of scheme consideration payable under any successful restructuring with the CBs and SHs. The agreement also acknowledges that in the event the restructuring is not successful the fact that there is a civil penalty would not somehow give rise to an enforceable claim in the Company's liquidation where such a claim ordinarily would not be permitted under Cayman law.

7.4.4    The Company was contacted by DOJ following its disclosure to the SEC on 2 April 2020 relating to the misconduct. The DOJ indicated that it had commenced an investigation into the misconduct. The Company has been in regular contact with the DOJ regarding its investigation including apprising the DOJ of the relevant PRC laws that restrict it from providing evidence and information without prior approval from the Chinese Ministry of Justice.

7.4.5    The JPLs note that as at the date of this Report, no fines have been imposed on the Company by the DOJ. However, its investigation is ongoing and the Company continues to cooperate with the DOJ to the extent permissible under the applicable PRC laws.

## 7.5    Chinese regulators

7.5.1    On 23 September 2020, the Company received the penalty decisions from the SAMR. The penalty decisions found that misconduct disclosed by the Company on 2 April 2020 violated the PRC Anti-Unfair Competition Laws. The SAMR imposed an aggregate fine of RMB61.0 million on Luckin Coffee Group Co., Ltd and Beijing Luckin Coffee Co., Ltd and certain implicated third-party companies as a result of their involvement in the misconduct.

7.5.2    During September and October 2020, the Company paid the fine imposed on the two Luckin entities as well as certain implicated third parties.

7.5.3    On 6 May 2020, the Ministry of Finance of the PRC initiated its investigation into the accounting information of Luckin Coffee Group Co., Ltd and Beijing Luckin Coffee Co., Ltd. On 31 July 2020, the Ministry of Finance of the PRC announced its investigation has been substantially completed. The Ministry of Finance of the PRC further announced that they would impose and publish its relevant penalty decision to the Company in due course.

© Alvarez & Marsal Cayman Islands Limited. See Disclaimer. All rights reserved.

7.5.4   The JPLs note that as at the date of this Report, no fines have been imposed on the Company by the Ministry of Finance of the PRC.

7.5.5   Whilst no further fines have been imposed on the Company by other Chinese regulators, the JPLs are not able to confirm whether their investigations have been concluded.

## 7.6     Trade & other unsecured creditors

BNY

7.6.1   The JPLs understand that BNY were appointed as the depository to provide the Company with a depository receipts facility and secondary market support services. In its capacity as the depository, and prior to the Appointment Order, BNY paid or waived certain upfront fees and expenses which have not yet been reimbursed by the Company.

7.6.2   Following the de-listing of the Company's ADSs from NASDAQ, and pursuant to the terms of the agreement between the parties BNY are entitled to claim payment in the amount of US$13M in respect of sums not yet reimbursed. The US$13M is comprised of an outstanding principal amount of US$11.3M and interest of US$1.7M.

Other unsecured creditors

7.6.3   As at the date of this Report, the JPLs are also aware of other unsecured creditors of the Company in the amount of approximately US$6.6M.

## 7.7     Petitioning creditor

7.7.1   As noted in section 2, the original Petitioner's debt was discharged on 2 October 2020 and so there is no outstanding amount in respect of that Petitioner's debt. However, as previously noted, one of the CBs has applied to the Cayman Court to be substituted as the petitioning creditor and an order to that effect has been lodged by consent, although has not yet been sealed.

*This space intentionally left blank*

© Alvarez & Marsal Cayman Islands Limited. See Disclaimer. All rights reserved.

## 8      Business plan review

The Company, together with its advisors, formulated the draft business plan dated 23 July 2020, which was shared with the JPLs prior to agreeing to the Protocol and the Company entering further negotiations with the CBs.

The JPLs have considered the reasonableness of the assumptions underlying the business plan to ensure that they are comfortable that any restructuring is not only achievable, but also allows the Company to continue as a going concern following sanction by the Cayman Court (in the event the restructuring is approved by its stakeholders). As a result the JPLs have undertaken the following:

- reviewed, analysed and tested the business plan assumptions to confirm that they were reasonable; and
- attended various meetings with the Company's senior and middle management to discuss the key assumptions and the JPLs' divergent views in relation to certain of the key assumptions.

As a result of the Company and the JPLs working closely together to refine the overall business plan and its assumptions, pursuant to the Protocol, a revised business plan was agreed between the JPLs and the Directors on 8 October 2020. Further information on the business plan and financial forecasts are shown in Appendix IV.

The JPLs have outlined below the key outcomes from their review of the business plan.

### 8.1     Cash burn overview

8.1.1    Initially the Company's business model was predicated on the rapid expansion of its physical and digital presence. Whilst expansion is still important to the Company's growth strategy, the primary focus has shifted from rapid expansion to more targeted expansion and improving both profitability and cash flows.

8.1.2    To facilitate its initial high growth model, the Company entered into a number of long-term contracts which at the time, aligned with the commercial realities of the business and its growth plans.

8.1.3    However, following a review of the cash burn rate and the performance of the various service lines, the Company has identified the need to retire certain service lines and potentially renegotiate certain long-term contracts, both of which may result in the Company incurring certain one-off 'exit fees'.

8.1.4    Whilst the expansion plans of the Group have been curtailed to an extent, a significant portion of the Group's cash on hand is still required to execute the revised business plan (which includes settling the one-off costs noted above) and the overall growth strategy.

© Alvarez & Marsal Cayman Islands Limited. See Disclaimer. All rights reserved.

8.1.5    In addition, the Group's cash burn rate is further impacted by one-off costs related to the closure of underperforming stores and the professional expenses related to the restructuring.

8.1.6    Based on the business plan, the Company is expected to reach its cash flow breakeven point on a normalised basis (ie excluding restructuring and other non-recurring expenses) in the first half of 2023 or possibly before.

## 8.2    Store level profitability

8.2.1    As previously mentioned, the Company implemented various improvement measures to refine and optimise its store portfolio and pricing and as a result of these efforts, the Company achieved positive store level profit[1] at the aggregate level for the first time in August 2020. Additionally, more than 60% of the approximately 3,898 self-operated stores were profitable on store level[1] in November 2020.

8.2.2    Following their review of the business plan, the JPLs are satisfied that the Company's revised expansion plan is achievable and reasonable and so they expect store level profitability to continue to improve.

## 8.3    Other products and service lines profitability

8.3.1    To support its expansion plans at a rate which exceeds its organic growth, the Company has developed a partnership model and as of 30 November 2020 it operates 894 partnership stores.

8.3.2    Whilst the partnership business was loss making prior to June 2020, recent changes to the partnership model have contributed to the turnaround of this service line and in November 2020, more than 70% of the partnership stores have reached the required minimum gross profit threshold and are therefore required to share profits with the Company.[2]

8.3.3    Earlier this year the Company entered the unmanned retail market with the launch of its Luckin Express offering and currently operates approximately 150 express machines.

---

[1] Store level profit calculation: Self-operated store revenue - Direct cost of materials (excluding wastage in warehouse) - Cost of delivery packaging materials - Storage & logistics expenses - Store D&A expenses (excluding decoration lost for store closure) - Store rental and other operating costs (excluding delivery expense, new store pre-opening expense, loss of rent from store closure and transaction fee). Store level profitability excludes SG&A and overhead costs at the group level.

[2] Luckin takes a percentage share of partnership stores' gross profit based on partnership agreements.

© Alvarez & Marsal Cayman Islands Limited. See Disclaimer. All rights reserved.

8.3.4    Although the Luckin Express business line is currently loss making, the Company is committed to improving its profitability and has a dedicated team charged with optimizing its operations.

8.3.5    The Company has decided to retire the Luckin Pop service line due to the significant further investment and scale of operations required to make it profitable.

© Alvarez & Marsal Cayman Islands Limited. See Disclaimer. All rights reserved.

## 9 Update on the Company's performance

### 9.1 General performance update

9.1.1 As described in the business plan review (section 8), the Company has, with the assistance of the JPLs, developed an updated business plan. Based thereon, the Company has implemented a strategy to focus on growing its core coffee business (namely, the operation of its self-operated and partnership stores) and achieving profitability.

9.1.2 The Company has implemented a series of measures, including closing underperforming stores, strengthening store open criteria, adjusting the resources allocated to non-core businesses, optimizing product portfolio, product pricing and discount policies, continuously focusing on customer retention and purchase frequency, as well as optimizing cost control.

### 9.2 Operational update

9.2.1 The JPLs understand that the Company is committed to its long term growth plans. As set out in the business plan, the Company is targeting a portfolio of between 4,800 and 6,900 self-operated stores by 2023.

9.2.2 To improve profitability, the Company has conducted store performance reviews and has strengthened its store opening criteria. In 2020, the Company opened new stores in areas with strong growth potential, while closing some existing underperforming stores.

9.2.3 As of 30 November 2020, the Company had 3,898 self-operated stores and 894 partnership stores. The below table sets out the details of the Company's stores for each quarter of 2019 and first three quarters of 2020.

| | For the Three Months Ended Or As of | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 31-Mar-19 | 30-Jun-19 | 30-Sep-19 | 31-Dec-19 | 31-Mar-20 | 30-Jun-20 | 30-Sep-20 | 30-Nov-20 |
| Total Self-operated Stores | 2,370 | 2,963 | 3,680 | 4,507 | 4,511 | 4,267 | 3,952 | 3,898 |
| *Number of Self-operated Store New Openings* | 407 | 630 | 776 | 882 | 69 | 134 | 133 | *76 (for the month of Oct and Nov 2020)* |
| *Number of Self-operated Store Closures* | 110 | 37 | 59 | 55 | 65 | 378 | 448 | *130 (for the month of Oct and Nov 2020)* |
| | | | | | | | | |
| Total Partnership Stores | - | - | - | 282 | 501 | 824 | 879 | 894 |

© Alvarez & Marsal Cayman Islands Limited. See Disclaimer. All rights reserved.

9.2.4    Additionally, the Company adjusted its business plan for its non-core business, including its unmanned retail initiative, to focus its resources on its core-business.

## 9.3    Financial update[3]

9.3.1    The content included in this section is based on unaudited financial information provided by the Company. Accordingly, the Company's audited financial data may differ from the preliminary results presented here.

9.3.2    Unrestricted cash and cash equivalents and short-term investments were RMB 5,175.0 million (US$742.7 million) as of 30 November 2020.

| Cash and Cash Equivalents | As of November 30, 2020 (RMB in million) | As of November 30, 2020 (USD in million) |
|---|---|---|
| China | 4,949.7 | 710.3 |
| Hong Kong | 31.1 | 4.5 |
| Cayman Islands and BVI | 194.3 | 27.9 |
| **Total** | **5,175.0** | **742.7** |

9.3.3    The Company's estimated preliminary unaudited cash and cash equivalents and short-term investments as of 30 November 2020 discussed above excluded the considerations of restricted cash of about RMB145M and illiquid investments of RMB1,140M. For details of illiquid investments, see section 9.4.

9.3.4    While the Company's operations had been adversely affected by COVID-19, particularly in the first quarter of the 2020, the Company has returned to normal operations.

9.3.5    From April 2020 to November 2020, the Company has experienced continued growth in its net revenue and revenue per self-operated stores, which was primarily driven by factors including the increased number of our transacting customers, purchasing frequency per customer, higher effective selling prices of freshly-brewed products and our increased efforts in enriching our product portfolio.

---

[3] Unless otherwise noted, the conversion from Renminbi to U.S. dollars is made at RMB6.968 to US$1.00.

© Alvarez & Marsal Cayman Islands Limited. See Disclaimer. All rights reserved.



9.3.6    The below table sets out the details of the Company's revenue performance for each quarter of 2019 and first three quarters of 2020.

| (RMBm) | For the Three Months Ended Or As of | | | | | | |
|---|---|---|---|---|---|---|---|
| | 31-Mar-19 | 30-Jun-19 | 30-Sep-19 | 31-Dec-19 | 31-Mar-20 | 30-Jun-20 | 30-Sep-20 |
| | | | | | | | |
| Net Revenue | 479 | 653 | 843 | 1,050 | 565 | 980 | 1,145 |
| YoY Growth %[4] | n.m. | n.m. | n.m. | n.m. | 18.1% | 49.9% | 35.8% |
| Self-operated Store Revenue[5] | 445 | 614 | 793 | 971 | 512 | 843 | 976 |
| YoY Growth %[4] | n.m. | n.m. | n.m. | n.m. | 15.1% | 37.3% | 23.1% |

9.3.7    The Company estimates the net revenue for the fiscal year of 2020 to be between RMB 3.8 billion and RMB 4.2 billion.[6]

9.3.8    Store level profitability has been improving since May 2020, and the Company achieved store level break-even for the first time in August 2020.

## 9.4    Summary of the Company's illiquid financial investments

9.4.1    The JPLs have been informed by the Company of the following information in respect of the illiquid financial instruments currently held:

In mid-April 2020, after changes to the Company's management team and reporting lines following the suspension of the then-CEO, the Board and the current management of the Company identified two trust investments, namely Xiamen Trust and Yunnan Trust, established by Luckin China. Below sets forth a summary of the key information on the two trusts and the actions taken or to be taken by the Company.

---

[4] "n.m." means non-meaningful
[5] Self-operated store level revenue is net revenue generated by self-operated stores which includes revenues from freshly brewed drinks and other products
[6] This estimation reflects the Company's current and preliminary views, which are subject to change.

© Alvarez & Marsal Cayman Islands Limited. See Disclaimer. All rights reserved.



Background of Xiamen Trust

Xiamen Trust was established on 12 March 2020 with (i) a term of 12 months from the establishment date, and (ii) a total trust investment of RMB600million.

Luckin China invested RMB590million in Xiamen Trust. The Company understands that the other trustor/beneficiary to be Meifu Jiaye. Xiamen Trustee is the trustee of Xiamen Trust.

The trust instruments provide that the trust funds would be used to purchase receivables from Yishi relating to assets (auto assembly line and facilities) leased to Borgward automobile (China) Co., Ltd., or Borgward. Borgward is controlled by UCAR Inc. (Stock code:838006), a company which Mr. Lu Zhengyao, former chairman of the board of Luckin, serves as chairman of the board, according to UCAR Inc.'s public disclosures.

The receivables are not backed by any guarantees and the ownership of the leased assets still reside with Yishi and does not belong to Luckin China.

In accordance with the trust instruments, Borgward pays Xiamen Trust lease interest on a monthly basis. The annual rate for the trustors is 6.1%. All outstanding interest payments have been received to date as per the contractual agreement.

Background of Yunnan Trust

Yunnan Trust was established on 17 March 2020 with a term of 24 months from the establishment date, and a total trust investment of RMB600 million. Luckin China invested RMB550 million in a trust fund of Yunnan Trust. The Company understands the other trustor/beneficiary to be Yunnan Trustee is the trustee of Yunnan Trust.

According to the trust instruments, the entirety of the trust fund is supposed to be invested in 46.15% equity interests of Yousheng Information.

The trust instruments indicate that Yousheng Information has pledged to the Yunnan Trustee 40.36 million shares of UCAR Inc. as guarantee. UCAR Inc.'s shares are listed on NEED and have been suspended from trading by the NEED. The stock price of UCAR Inc. dropped to RMB0.99 at the point that its shares were suspended on 31 August 2020.

The trust instruments stipulate that Yousheng Development, the other shareholder of Yousheng Information holding 52.85% of its equity interests, is required to buy back the equity interest held by Yunnan Trust, at the end of the trust term of 24 months. Public record searches show that Yousheng Development has a registered capital of RMB5 million.

© Alvarez & Marsal Cayman Islands Limited. See Disclaimer. All rights reserved.



The trust instruments provide that Yousheng Development shall pay Yunnan trust the premium of the principal on a quarterly basis. The annual rate for the trustors is 6.5%. All outstanding interest payments have been received to date as per contractual agreement.

<u>Action taken or to be taken by the Company's management</u>

After the Board and the current management of the Company identified the trust investments by Luckin China, they have been assessing the information concerning the two trusts and manage dissipation risk. With the help of the forensic advisors of the Special Committee of the Board, the Company obtained copies of the underlying trust agreements and immediately engaged reputable PRC law firms to look into the issue and formulate action plans to preserve the investments and recover the assets. Throughout the process, the Board has been kept updated about the progress and instructed management to explore options with respect to the trusts and take the appropriate action.

Following its review of these options, and to safeguard the assets of the Company and mitigate the dissipation risk, the Company intends to exercise all rights available to it to request for early termination of the two trusts and redeem the funds invested by Luckin China on an accelerated basis. Specifically:

For Xiamen Trust. Pursuant to the trust instruments, early redemption is allowed starting six months from the date of creation of the trust. As authorized by the Board, the Company's management issued the formal early redemption notice to Xiamen Trustee on 4 November 2020, demanding that the Xiamen Trustee request Borgward to promptly pay back the principal and corresponding interests. Xiamen Trustee has since confirmed with Borgward that Borgward cannot make the payment as requested on time, and has asked the Company to confirm that an in-kind distribution of the trust asset to the Company should be made. With assistance from PRC counsel, Luckin China has subsequently confirmed with Xiamen Trustee and is in the process of early terminating the Xiamen Trust and receiving in-kind distribution.

For Yunnan Trust. The right of early redemption is not provided for in the trust arrangements. Therefore, Luckin China cannot unilaterally terminate the trust by exercising such right. However, with the consent of the other trustor/beneficiary of the trust Meifu Jiaye at a beneficiary meeting, Luckin China can request an early termination of Yunnan trust. Luckin China has attempted but not yet been able to obtain the consent of Meifu Jiaye to make such early termination request.

© Alvarez & Marsal Cayman Islands Limited. See Disclaimer. All rights reserved.

With assistance from its PRC counsel, on 13 November 2020, Luckin China has issued a letter to the Yunnan Trustee demanding that the Yunnan Trustee (i) request Yousheng Information to add or provide a new guarantee considering the significant decrease in value of current guarantee; and (ii) request Yousheng Development to provide further details of how the trust's funds were utilized by Yousheng Information. Luckin China has been in close communication and discussion with the Yunnan Trustee, Yongsheng Information and Yongsheng Development to resolve aforesaid issues.

Dialogue with various parties is ongoing and the proposed action plans are subject to change. However, there are no assurances that the Company will be able to recover funds it invested in Xiamen Trust and Yunnan Trust in whole or in part.

## 9.5    Audit and internal control progress

9.5.1    On the date of the issuance of this report, the audit for the Company's financial statements as of 31 December 2019 and for the year ended, though on schedule, has not been completed yet and currently is still underway.

9.5.2    The management of the Company has invested great efforts in making necessary changes and improvements to its internal controls. With the assistance of the independent professional advisors, the Company has taken steps to enhance its corporate governance structure and the accounting, banking, and financial disclosure controls. Specifically, the Company has implemented substantially all recommendations from the Special Committee following the internal investigation of the accounting fraud, has significantly enhanced its internal control capabilities by ensuring the staff in the key functions and positions have relevant experience and suitable background, and has strengthened its controls on payment, the contract cycle, and the supervision over access to and activities conducted on the IT systems and databases, among others. Further details on the remediation efforts undertaken by the Company will be disclosed separately by the Company in due course.

© Alvarez & Marsal Cayman Islands Limited. See Disclaimer. All rights reserved.

## 10    SAFE and the remittance of funds from the PRC

10.1.1    SAFE regulates and categorises all foreign exchange transactions that may involve cross-border remittance of funds into and out of the PRC.

10.1.2    At the outset of the provisional liquidation, the JPLs were made aware that the Company's foreign exchange transactions are heavily regulated by SAFE and thus any funds currently in the PRC that are needed to facilitate the restructuring will be subject to SAFE approval.

10.1.3    As at 30 November 2020, approximately US$718.9M (i.e. 97%) of the Group's cash is located in the PRC and, therefore, it is of critical importance to the JPLs that they determine how much of this cash can be remitted from the PRC for the purposes of the restructuring.

10.1.4    The Company's PRC counsel and the JPLs' PRC counsel continue their dialogue with SAFE officials in relation to approval of the remittance of funds required to facilitate a restructuring of the Company's indebtedness.

*This space intentionally left blank*

© Alvarez & Marsal Cayman Islands Limited. See Disclaimer. All rights reserved.



## 11     Proposed restructuring and preliminary timeline

11.1.1    Since their appointment, the JPLs have been working closely with the Company and its advisors to develop a comprehensive restructuring proposal for key stakeholders.

11.1.2    Negotiations with different stakeholder groups are at different stages of development. This phased approach is deliberate, given the legal and commercial complexities of the case. Discussions with the Ad hoc Group are the most advanced, given that the CBs' debt is the Company's largest outstanding liability. Significant progress has been made in that regard (and with the SEC, as noted above) and the JPLs have started to engage with Cayman Islands counsel for some of the SHs. Overall, the JPLs are satisfied that the restructuring is developing positively.

11.1.3    In the event that the restructuring is implemented by way of schemes of arrangement, the JPLs' reasonable expectation is that completion of the whole process will take approximately 1-1.5 years (from the date of appointment of the JPLs). That includes, however, a period after sanction for scheme implementation which may last a number of months.

11.1.4    The JPLs will keep the Cayman Court updated about the progress made with respect to the proposed restructuring and will advise the Cayman Court of any material updates thereto, as soon as practicable. In particular, the JPLs intend to file a further report by 15 January 2021.

*This space intentionally left blank*

© Alvarez & Marsal Cayman Islands Limited. See Disclaimer. All rights reserved.

## 12    Statutory matters

### 12.1    Filing, service and registration of JPLs' appointment

12.1.1    Pursuant to Order 4, rule 8 of the CWR the JPLs have fulfilled the following statutory requirements:

- filed the Appointment Order with the Cayman Islands Registrar of Companies on 20 July 2020; and
- sent notice of their appointment together with a copy of the Appointment Order to the following classes of stakeholders:

  - CBs (the use of Epiq assisted with coordinating the notice dissemination to the CBs via the DTC);
  - BNY;
  - U.S., H.K. and PRC regulators;
  - Shareholders (i.e. Co-founder, Angel1-1, Series A preferred etc);
  - EY; and
  - Other trade creditors of the Company.

12.1.2    Further, the JPLs have advertised their appointment in the following publications as required by the Appointment Order:

- the Cayman Islands Extraordinary Gazette issue number 58/2020 on 17 July 2020;
- the Wall Street Journal on 23 July 2020;
- South China Morning Post on 21 July 2020; and
- China Business Herald, in Chinese, on 28 July 2020.

The JPLs are also aware that their appointment was announced in a Form 6-K filed with the SEC on 15 July 2020.

### 12.2    Notice of JPLs' appointment

12.2.1    In addition to advertising their appointment, the JPLs also provided stakeholders with formal notice of their appointment in a letter dated 29 July 2020. The letter also includes further information regarding the JPLs' role during the provisional liquidation period and the role of the existing board of directors.

*This space intentionally left blank*

© Alvarez & Marsal Cayman Islands Limited. See Disclaimer. All rights reserved.



### 12.3    Books & records and disclosure of information

12.3.1    Pursuant to paragraph 4 (ix) of the Appointment Order, the JPLs may request and take into their possession and control the books, papers, and records of the Company including the accountancy and statutory records of the Company. Further, and as set out in section 6 of the Protocol, the Company is to provide the JPLs any information being reasonably requested, as soon as reasonably practical.

12.3.2    Upon their appointment the JPLs sent a comprehensive information request list to the Company for documents that would allow them to familiarise themselves with the financial and operational aspects of the Company. In order to establish an efficient system for sharing documentation and information between the parties, it was agreed that a secure data room be established for both parties to use.

12.3.3    The JPLs confirm that the Company has complied with all information requests as and when it has been required.

12.3.4    Due to the confidential nature of certain of the information requests by the JPLs, it became necessary for the JPLs and the Company to execute a common interest privilege agreement to allow for the exchange of information in furtherance of their common interests.

### 12.4    JPLs' powers

12.4.1    As noted in section 2 above, the appointment of the JPLs was primarily driven by the fact that the monies held within the Group could be considered, as a matter of Cayman Islands law, to be the proceeds of crime for the purposes of the POCL.

Therefore, the appointment of the JPLs has had two effects:

- the Company could continue to use the money in the ordinary course of business under the supervision of the JPLs and the Cayman Court; and
- the JPLs are empowered to do all things necessary and incidental to developing and proposing a restructuring of the Company's indebtedness in a manner designed to allow the Company to continue as a going concern, with a view to making arrangement with the Company's creditors, including (without limitation) a compromise or arrangement by way of a scheme of arrangement pursuant to section 86 of the Companies Act.

Accordingly, all of the powers detailed in paragraph 4 of the Appointment Order have been specifically conferred upon the JPLs for the purposes set out above.

*This space intentionally left blank*

© Alvarez & Marsal Cayman Islands Limited. See Disclaimer. All rights reserved.

**12.5      Registered Office, FATCA, CRS and BOR**

12.5.1   The JPLs confirm that the registered office remains in the care of Conyers.

12.5.2   On 16 July 2020, the JPLs sent a letter to Conyers informing them of their appointment and requested the statutory books and records of the Company. Electronic copies of the statutory books and records which were provided on 20 July 2020. The JPLs have conducted a review of the books and records received.

12.5.3   The JPLs also understand that Conyers will continue to fulfil their obligations to the Company in respect of the necessary statutory filings under FATCA, CRS and the BOR.

*This space intentionally left blank*

© Alvarez & Marsal Cayman Islands Limited. See Disclaimer. All rights reserved.

## 13    JPLs' view on next steps and ongoing restructuring

13.1.1    In light of the work that the JPL team and their legal counsel (in all jurisdictions) have undertaken since the appointment, it is the JPLs' view that there is scope for a viable restructuring of the Company's indebtedness, with a view to a restructuring being presented by way of one or more schemes of arrangement before the Cayman Court. The JPLs intend to file a further report by 15 January 2021, in advance of the adjourned winding up petition coming on for hearing, in order to update the Cayman Court in relation to the progress of the restructuring.



**Alexander Lawson**

Joint Provisional Liquidator

**Wing Sze Tiffany Wong**

Joint Provisional Liquidator

Alexander Lawson and Wing Sze Tiffany Wong are authorised to act as JPLs in accordance with the Companies Act (2020 Revision). The JPLs act as agents of the Company only and do so without personal liability.

© Alvarez & Marsal Cayman Islands Limited. See Disclaimer. All rights reserved.