UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Luckin Coffee Inc. Securities Litigation | 20-cv-01293 (JPC) (JLC) |

**LUCKIN COFFEE INC.'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO PROPOSED INTERVENERS' MOTIONS TO INTERVENE**

**DAVIS POLK & WARDWELL LLP**

450 Lexington Avenue
New York, New York 10017
(212) 450-4000

Attorneys for Defendant
Luckin Coffee Inc.

# TABLE OF CONTENTS

P<small>AGE</small>

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND ......................................................................................................... 2

    A.    Procedural History .................................................................................2

    B.    Shareholder Ad Hoc Committee.............................................................5

ARGUMENT................................................................................................................ 5

  POINT I. THE PROPOSED INTERVENERS HAVE NO INTEREST IN THIS
                CLASS ACTION.......................................................................................7

  POINT II. THE PROPOSED INTERVENERS HAVE NOT SHOWN HOW
              DISSEMINATION OF CLASS NOTICE WOULD IMPAIR OR
              PREJUDICE THEIR RIGHTS .................................................................8

    A.    The Proposed Notice Does Not Confer Any Right to Vote on Behalf of
        Class Members in a Cayman Scheme .................................................8

    B.    The Proposed Notice Does Not Impair the Proposed Interveners' Opt-
        Out Rights or Ability to Object .......................................................10

    C.    The Proposed Notice Does Not Expand the Scope of the Class
        Certification Order............................................................................12

    D.    The Provisionally Certified Class and Proposed Notice Have No
        Bearing on the State Class Plaintiffs' Note Offering Claim...........13

    E.    Lai Ye's Additional Arguments Are Irrelevant to the Proposed Notice .........13

  POINT III. THE PROPOSED INTERVENERS HAVE NOT SHOWN THEIR
              INTERESTS ARE INADEQUATELY REPRESENTED ....................15

CONCLUSION................................................................................................... 16

i

## TABLE OF AUTHORITIES

PAGE(S)

CASES

*Am. High-Income Tr. v. AlliedSignal*,
329 F. Supp. 2d 534 (S.D.N.Y. 2004) ......................................................................... 13

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
297 F.R.D. 90 (S.D.N.Y. 2013) ...................................................................................... 6

*Buchet v. ITT Consumer Fin. Corp.*,
845 F. Supp. 684 (D. Minn. 1994) ................................................................................. 6

*Chen-Oster v. Goldman, Sachs & Co.*,
No. 10 Civ. 6950 (AT) (JCF), 2015 WL 4619663 (S.D.N.Y. Aug. 3, 2015) ............... 6

*In re Cmty. Bank of N. Va.*,
418 F.3d 277 (3d Cir. 2005) .......................................................................................... 6

*Diduck v. Kaszycki & Sons Contractors, Inc.*,
149 F.R.D. 55 (S.D.N.Y. 1993) ..................................................................................... 6

*Eckert v. Eq. Life Assur. Soc'y of the U.S.*,
227 F.R.D. 60 (E.D.N.Y. 2005) ..................................................................................... 6

*Gomes v. Eventbrite, Inc.*,
No. 5:19-cv-02019-EJD, 2020 WL 6381343 (N.D. Cal. Oct. 30, 2020) ...................... 6

*Hachem v. GE Inc.*,
No. 18-CV-1404 (JMF), 12373-00006 (S.D.N.Y. Apr. 11, 2018) ................................ 6

*In re Holocaust Victim Assets Litig.*,
225 F.3d 191 (2d Cir. 2000) .......................................................................................... 6

*In re Initial Pub. Offering Sec. Litig.*,
499 F. Supp. 2d 415 (S.D.N.Y. 2007) ........................................................................... 6

*Miller v. Silbermann*,
832 F. Supp. 663 (S.D.N.Y. 1993) ................................................................................ 6

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
Nos. 08 CV 8781 (HB), 08 CV 5093 (HB), 2010 WL 5222127 (S.D.N.Y. Dec. 21, 2010) .............................................................................................................................. 6

*N.Y. News, Inc. v. Kheel*,
  972 F.2d 482 (2d Cir. 1992) .................................................................................. 6

*Trief v. Dun & Bradstreet Corp.*,
  144 F.R.D. 193 (S.D.N.Y. 1992) ......................................................................... 6

*Turkmen v. Ashcroft*,
  No. 02-CV-2307 (JG), 2010 WL 3398965 (E.D.N.Y. June 30, 2010) ......................... 6

*United States v. Pitney Bowes, Inc.*,
  25 F.3d 66 (2d Cir. 1994) ..................................................................................... 5

*Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*,
  922 F.2d 92 (2d Cir. 1990) ................................................................................... 15

## STATUTES & RULES

Fed. R. Civ. P. 23 ................................................................................... 2, 11, 12

Fed. R. Civ. P. 24 ......................................................................................... 5, 6

Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2) ........................................... 13

SEC Rule 144A ................................................................................................. 13

## OTHER AUTHORITIES

Newberg on Class Actions § 1.5 .................................................................................. 8

Newberg on Class Actions § 9:8 ............................................................................... 7, 8

Defendant Luckin Coffee Inc. ("Luckin" or the "Company") respectfully submits this memorandum of law in opposition to the motions to intervene filed by the State Class Plaintiffs[1] (ECF No. 284), Winslow[2] (ECF No. 262), Kingstown[3] (ECF No. 271), Lai Ye (ECF No. 278), and August Bequai (ECF No. 272) (collectively, the "Proposed Interveners").

### PRELIMINARY STATEMENT

The Proposed Interveners should not be permitted to intervene in this action. Their purported basis for intervention is to voice concerns regarding the adequacy of the Proposed Notice of Pendency of Class Action ("Proposed Notice"), but all of the Proposed Interveners have clearly indicated their intent to opt out of the provisionally certified Class based on separate actions they have commenced in this and other courts. Therefore, none of the Proposed Interveners' interests are affected by the Proposed Notice, much less aligned with other members of the Class. Indeed, the purpose of the Proposed Interveners' motions is to wrestle away the Class Representatives' ability to represent the interests of Class Members in settlement negotiations, which is not only the Class Representatives' right under U.S. law, but also their duty-bound obligation.

The Proposed Interveners simply have no interest in the Proposed Notice or the function that it serves—to afford Class Members adequate notice and opportunity to opt out of the provisionally certified Class in this case. Tellingly, only two of the Proposed Interveners even

---

[1] The "State Class Plaintiffs" are: Teamsters Local 710 Pension Fund, City of Fort Myers Police Officers' Retirement System, Kimson Chemical Inc. and Michael Bergenholtz.

[2] The "Winslow" funds are: Nuveen Winslow Large-Cap Growth ESG Fund, Nuveen Winslow Socially Aware U.S. Large-Cap Growth Fund, Winslow Large-Cap Growth Fund, MainStay Winslow Large Cap Growth Fund, MainStay VP Winslow Large Cap Growth Portfolio, St. John's University, I.B.E.W. Local Union 481 Defined Contribution Plan and Trust, St. Mary's University, Justin Kelly Revocable Trust, Justin and Susan Kelly Family, LLC, The Justin and Susan Kelly Foundation, Justin Kelly, individually and as representative for the Justin Kelly Revocable Trust, and American Medical Association.

[3] The "Kingstown" entities are: Kingstown Capital Management, LP, Kingstown Partners Master Ltd., Kingstown Partners II L.P., Ktown LP, Kingfishers, LP, and Kingstown 1740 Fund LP.

attempted to mark up the Proposed Notice, and their markups either remove information about how Class Members' rights may be affected by the ongoing Cayman provisional liquidation (the "Cayman Proceeding"), or add information relating to claims that are not asserted on behalf of the provisionally certified Class (in this or any other action). Those markups do not serve the goal of ensuring that Class Members receive adequate notice of the provisionally certified Class and their rights. This Court should reject the Proposed Interveners' attempts to interfere with the process of disseminating notice to the Class.

For the reasons stated below, the Court should deny the motions to intervene and so order the Stipulation and Proposed Order Regarding Dissemination of Class Notice (ECF No. 258), authorizing the dissemination of the Proposed Notice to potential Class Members.

## BACKGROUND

**A.    Procedural History**

On March 2, 2021, counsel for Sjunde AP-Fonden ("AP7") and Louisiana Sheriffs' Pension & Relief Fund ("Louisiana Sheriffs," together with AP7, "Lead Plaintiffs" or "Class Representatives") filed a stipulation and proposed order provisionally certifying a class for settlement purposes. (ECF No. 235.) The State Class Plaintiffs and Winslow filed letters requesting permission to be heard on the stipulation and proposed order. (ECF Nos. 237, 238.) This Court held a teleconference on March 4, 2021 regarding the stipulation and proposed order, during which the State Class Plaintiffs, Winslow, and Kingstown objected to provisional class certification.

On March 5, 2021, this Court issued an order concluding that the stipulation and proposed order provisionally certifying a class "is proper under Rule 23(a) and (b)(3)." (ECF No. 244 at 2.) This Court's order considered and rejected the objections made by the State Class Plaintiffs, Winslow, and Kingstown because (i) "it is not clear on what basis [they] have standing

2

to challenge the provisional class certification," and (ii) in any event, they "have not demonstrated that any prejudice would result" from provisional class certification, as certification "will not prevent those plaintiffs from opting out of any class in this case or from objecting to any class settlement that is reached." (*Id.* at 2–3.)

That same day, this Court so ordered the stipulation, which "provisionally certified for settlement purposes only with respect to Plaintiffs' claims against Luckin" a class of "[a]ll persons and entities (and their beneficiaries) that purchased or otherwise acquired the American Depository Shares of Luckin Coffee Inc. between May 17, 2019 through July 15, 2020" (the "Class" or "Class Members"). (ECF No. 245 ("Class Certification Order") ¶ 1.) The Class Certification Order appointed Lead Plaintiffs as Class Representatives and Lead Plaintiffs' counsel as class counsel ("Class Counsel"). (*Id.* ¶¶ 2–3.) The Class Certification Order also provides:

> In the event that (i) an application to approve a scheme of arrangement with respect to the Plaintiff's claims against Luckin (the "Scheme") is not made to the Grand Court of the Cayman Islands on or before December 31, 2021; or (ii) the Grand Court of the Cayman Islands declines to make an order convening class meetings for the purpose of considering and, if thought fit, approving the Scheme; or (iii) the Class declines to approve the Scheme at a class meeting convened in accordance with an order of the Grand Court of the Cayman Islands; or (iv) the Grand Court of the Cayman Islands declines to sanction the Scheme; or (v) following the sanction of the Scheme by the Grand Court of the Cayman Islands, any condition precedent to the effectiveness of the Scheme or the settlement contemplated by the Scheme does not occur and is not waived, the Class will, subject to any extension or variation by further stipulation of the parties, be decertified automatically.

(*Id.* ¶ 4.)

On March 30, 2021, the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") issued an order recognizing Luckin's Cayman Proceeding as a foreign main

3

proceeding and imposing an automatic stay of U.S. litigation against Luckin.  (ECF No. 252-1.)

The Bankruptcy Court's recognition order contained a carve-out that (i) allows this Court to

conduct proceedings, hold hearings, and issue rulings in connection with the Class Certification

Order, and (ii) allows the parties in this action to participate in settlement negotiations regarding

a scheme of arrangement with respect to the Class in the Cayman Proceeding ("Cayman

Scheme" or "Scheme") and to "take any steps necessary to secure approval of any settlement to

be implemented in the [] Scheme in the appropriate court."  (*Id.* ¶ 4(ii).)  Luckin filed a notice of

imposition of automatic stay with this Court on March 31, 2021.  (ECF No. 252.)

On May 14, 2021, the Class Representatives filed a stipulation and proposed order (ECF

No. 258) seeking to disseminate the Proposed Notice of Pendency of Class Action (ECF No.

258-1) to potential Class Members, which provides them with an opportunity to opt out of the

Class.

Winslow filed its motion to intervene on May 18, 2021 to challenge the Proposed Notice.

(ECF No. 262.)  Over the following week, the State Class Plaintiffs, Kingstown, Lai Ye, and

August Bequai submitted letters to the Court seeking leave to file similar motions to intervene.

(ECF Nos. 269, 271, 272, 278.)

On May 28, 2021, the Court held a teleconference with the Class Representatives,

Luckin, Luckin's joint provisional liquidators ("JPLs"), and the Proposed Interveners to discuss

the motions to intervene.  At the conference, the Court set a briefing schedule requiring that

additional motions to intervene or memoranda of law be filed by June 7, 2021, and that

oppositions be filed by June 14, 2021.  On June 7, 2021, the State Class Plaintiffs, Winslow,

Kingstown, and Lai Ye filed their additional submissions in support of intervention.  (ECF Nos.

284–94.)

**B.    Shareholder Ad Hoc Committee**

On May 20, 2021, the JPLs convened a meeting of shareholder claimants to discuss the formation of an "ad-hoc committee to represent the interests of current or former holders of ADSs in [Luckin] who are entitled to be claimants in the class action[]." (ECF No. 264-1 at 6.) Counsel for each of the Proposed Interveners (except Mr. Bequai) attended this meeting.

As of the filing of this brief, Luckin understands that representatives of Luckin's ADS holders—including the Proposed Interveners—have agreed to terms in principle, to be recorded under a Memorandum of Understanding, to form an ad hoc committee for the purpose of negotiating a settlement.

## ARGUMENT

The Proposed Interveners are not entitled to intervention as of right under Rule 24(a) or permissive intervention under Rule 24(b).

"Intervention as of right under Rule 24(a)(2) is granted when an applicant:  (1) files a timely motion; (2) asserts an interest relating to the property or transaction that is the subject of the action; (3) is so situated that without intervention the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) has an interest not adequately represented by the other parties . . . .  The intervention application will be denied unless all four requirements are met." *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994) (citations omitted).

Permissive intervention under Rule 24(b) may be granted when an applicant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).  "The principal guide in deciding whether to grant permissive intervention is whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Pitney Bowes*, 25 F.3d at 73 (citation and internal quotation marks omitted).

5

"The district court has broad discretion to deny an applicant's motion for intervention under Rule 24(b)(2)." *N.Y. News, Inc. v. Kheel*, 972 F.2d 482, 487 (2d Cir. 1992).

The Proposed Interveners have not identified a single decision that permits intervention in the circumstances present here—to prevent notice from being disseminated to the class where no settlement has been reached.[4]  That is not surprising, because it is counterintuitive to suggest members of a class could have their interests impaired or prejudiced by dissemination of notice to the class.  As explained below, the Proposed Interveners have not demonstrated that they are entitled to intervene under either the standard for intervention as of right or permissive intervention because (i) they have no interest in this class action, (ii) the dissemination of the

---

[4] None of the decisions cited by the Proposed Interveners support intervention here.  Only one decision even relates to interveners contending that notice was deficient, but that case is inapposite as (i) that notice was of a proposed settlement, and was sent only six weeks before the final approval hearing, and (ii) some class members thought the notice meant they were being sued by the defendant.  *See Buchet v. ITT Consumer Fin. Corp.*, 845 F. Supp. 684 (D. Minn. 1994) (class members objecting to settlement agreement moved to intervene for limited purposes of appeal and participation in further settlement discussions).

The other decisions cited by the Proposed Interveners regarding intervention in class actions are even further afield.  *See Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193 (S.D.N.Y. 1992) (proposed intervener sought to serve as class representative in order to cure named plaintiffs' standing issues); *New Jersey Carpenters Health Fund v. Residential Capital, LLC*, Nos. 08 CV 8781 (HB), 08 CV 5093 (HB), 2010 WL 5222127 (S.D.N.Y. Dec. 22, 2010) (same); *Chen-Oster v. Goldman, Sachs & Co.*, No. 10 Civ. 6950 (AT) (JCF), 2015 WL 4619663 (S.D.N.Y. Aug. 3, 2015) (same); *Diduck v. Kaszycki & Sons Contractors, Inc.*, 149 F.R.D. 55 (S.D.N.Y. 1993) (class members sought to intervene to replace named plaintiff who passed away); *Eckert v. Eq. Life Assur. Soc'y of U.S.*, 227 F.R.D. 60 (E.D.N.Y. 2005) (intervener sought to replace class representative who settled his claim and moved to withdraw as class representative); *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 297 F.R.D. 90 (S.D.N.Y. 2013) (class member moved to intervene to participate in previously approved settlement); *In re Cmty. Bank of N. Virginia*, 418 F.3d 277 (3d Cir. 2005) (objectors moved to intervene to stay fairness hearing in order to conduct discovery on adequacy and fairness of proposed settlement); *Gomes v. Eventbrite, Inc.*, No. 5:19-cv-02019-EJD, 2020 WL 6381343 (N.D. Cal. Oct. 30, 2020) (intervening to seek continuance of preliminary settlement approval hearing); *Turkmen v. Ashcroft,* No. 02-2307 (JG), 2010 WL 3398965 (E.D.N.Y. June 30, 2010) (proposed interveners sought to file a complaint alleging additional facts regarding detainment on immigration violations); *Miller v. Silbermann*, 832 F. Supp. 663 (S.D.N.Y. 1993) (proposed interveners sought to intervene as defendants in action brought by landlords challenging housing court procedures); *In re Holocaust Victim Assets Litig.*, 225 F.3d 191 (2d Cir. 2000) (nonprofit organization sought to intervene to seek redress for wrongs arising out of Swiss banks' participation and complicity in crimes committed by the Nazi regime); *Hachem v. GE Inc.*, No. 17-cv-8457 (JMF), 2018 WL 1779345 (S.D.N.Y. Apr. 12, 2018) (proposed intervener sought vacatur of order appointing lead plaintiff and lead counsel and republication of notice after a new action with expanded claims and class period was filed); *In re Initial Pub. Offering Sec. Litig.*, 499 F. Supp. 2d 415 (S.D.N.Y. 2007) (class members moved to intervene to remove law firm as lead counsel).

6

Proposed Notice would not impair or prejudice any of their rights, and (iii) they have not shown that their interests are inadequately represented.

## POINT I.

### THE PROPOSED INTERVENERS HAVE NO INTEREST IN THIS CLASS ACTION

As made abundantly clear by their act of filing individual actions against Luckin, the Proposed Interveners have no intention to remain members of the provisionally certified Class once notice and an opportunity to opt out are given. Indeed, as discussed below, the main thrust of their concerns relate to whether the *Cayman* Proceeding will impair their ability to continue to maintain their separate actions. But, as this Court previously concluded, provisional certification of a class in this action "will not prevent the other actions from continuing, nor will it prevent those plaintiffs from engaging in their own negotiations with the Joint Provisional Liquidators." (ECF No. 244 at 3.) As a result, and as this Court previously concluded, the Proposed Interveners lack standing and cannot show any prejudice from provisional class certification in this action. (*Id.* at 2.) The Proposed Interveners' interests now are no different.

Intervention is inappropriate because the Proposed Interveners do not intend to remain as Class Members in this litigation, meaning their interests are *contrary* to those of the Class. Indeed, as demonstrated by their motions, the Proposed Interveners are seeking to gain greater control over the settlement negotiation process by reducing the influence of the Class Representatives and Class Counsel. Presumably, the goal of obtaining such control is to maximize their own recovery at the expense of Class Members. This Court should not countenance the Proposed Interveners' attempt to effectively disenfranchise members of the Class who are represented by Class Counsel. *See* Newberg on Class Actions § 9:8 ("[C]lass counsel and class members enjoy a full attorney-client relationship with one another following class certification.")

Because the Proposed Interveners have no interest in this action and their interests are contrary to those of the Class, their motions for intervention should be denied.

**POINT II.**

**THE PROPOSED INTERVENERS HAVE NOT SHOWN HOW DISSEMINATION OF CLASS NOTICE WOULD IMPAIR OR PREJUDICE THEIR RIGHTS**

The Proposed Interveners' sole basis for intervening is to make various objections to the Proposed Notice.  However, they have not demonstrated how dissemination of the Proposed Notice—which allows each of the Proposed Interveners to opt out of the provisionally certified Class—would impair or prejudice their rights.

**A.    The Proposed Notice Does Not Confer Any Right to Vote on Behalf of Class Members in a Cayman Scheme**

The Proposed Interveners argue that "Class Counsel[] and Luckin[] joint[ly] attempt to use the Proposed Notice to convey voting proxies for creditor approval in the [Cayman] Scheme."  (ECF No. 294 at 7.)  That assertion grossly mischaracterizes the Proposed Notice.

First, dissemination of any class notice—including the Proposed Notice—cannot, as a matter of law, convey rights to Class Counsel or Class Representatives.  Any such rights flow from certification of the Class itself.  *See* Newberg on Class Actions § 9:8 ("[C]lass counsel and class members enjoy a full attorney-client relationship with one another following class certification."); *id.* § 1.5 ("[U]nnamed parties" are "bound by any class judgment, whether favorable or adverse, assuming that they have been adequately represented with respect to issues that they share in common with the class representative").  Thus, any rights that the Class Representatives and Class Counsel have to act on behalf of the Class under U.S. law were already conferred when the Class was provisionally certified for settlement purposes (over the objection of many of the same investors who now seek to intervene).  (*See* Class Certification

Order.)  The Proposed Notice does not—and cannot—alter these rights.  Instead, the Proposed Notice explains those rights to members of the Class in order to ensure they are afforded fair notice and opportunity to opt out.

Second, the Proposed Notice itself does not purport to convey any "voting proxies" to Class Counsel.  On the contrary, the Proposed Notice clearly states that the Class Representatives and Class Counsel will only represent the interests of those Class Members who "choose not to directly participate in the Scheme process."  (Proposed Notice at 6.)  Therefore, even if Class Members do not opt out, they can still vote on their own behalf in connection with any Cayman Scheme.

Third, the Proposed Notice merely states that Class Members' rights with respect to a Cayman Scheme "*may* be affected" by this action and that a vote cast by the Class Representatives "*may* be deemed to be a vote cast by you."  (*Id.* at 1, 6 (emphases added).)  Whether the Class Representatives' votes *will* be counted as votes on behalf of Class Members is a matter of Cayman law.  To the extent the Proposed Interveners seek to challenge the Cayman Scheme voting process, that challenge can—and should—be made to the Cayman court.

Notably, it is clear from the Proposed Interveners' vociferous objections that there is a real possibility that the Class Representatives' votes *may* be counted as votes on behalf of Class Members who do not directly participate in the Cayman Scheme process.  Therefore, it is appropriate for the Proposed Notice to inform Class Members of this possibility.  The markups of the Proposed Notice submitted by the State Class Plaintiffs (ECF No. 286-1) and Winslow (ECF No. 289-5) both seek to remove any reference to this possibility from the notice, which would *deprive* Class Members of information that may affect their rights.  Clearly, that does not serve the interests of the Class.

9

Accordingly, the Proposed Interveners' concerns about the Proposed Notice's supposed conferral of proxy voting rights upon the Class Representatives are unfounded.

## B.    The Proposed Notice Does Not Impair the Proposed Interveners' Opt-Out Rights or Ability to Object

The Proposed Interveners' concern that any opt-out right is "illusory" or "meaningless" is not relevant to the Proposed Notice. (*See* ECF No. 285-2 at 13, 20; ECF No. 291 at 2.) Instead, their objection is to the possibility that if a settlement is reached and sanctioned (i.e., approved) by way of a Cayman Scheme, they will not be able to pursue their opt-out claims. But this is the result of settled Cayman law (which indisputably provides no opt-out mechanism for a Scheme that is sanctioned by the Cayman court) and has nothing to do with the sufficiency of the Proposed Notice. Nor is there anything unfair about the Proposed Interveners' rights being determined by Cayman law. Luckin is a Cayman company and the Proposed Interveners knew—from the time of Luckin's IPO—that investing in a Cayman company might result in "difficulties in protecting [investors'] interests," and that Cayman law might provide less protection to investors as compared to U.S. law.[5]

In any event, if a settlement is reached, the Proposed Interveners' interests will be protected regardless of whether the settlement is effectuated through a Cayman Scheme or not. If a settlement is reached in the context of the Cayman Proceeding, such a settlement would be effectuated through a Cayman Scheme, which is required to be sanctioned by the Cayman court. As described in the JPLs' letter to the Court, the Cayman court would "consider the general

---

[5] Luckin's registration statements disclosed to investors the risks related to Luckin's incorporation in the Cayman Islands. *See* ECF No. 212-4 at 39 ("You may face difficulties in protecting your interests, and your ability to protect your rights through U.S. courts may be limited, because we are incorporated under Cayman Islands law."); *id.* at 67 ("[C]ertain disadvantages accompany incorporation in the Cayman Islands," including that "the Cayman Islands has a less developed body of securities laws as compared to the United States and may provide protection for investors to a lesser extent").

fairness of the Scheme" and "only approve and sanction a Scheme that is fair" to the stakeholders, including members of the Class and the Proposed Interveners. (ECF No. 276 at 5.) As part of the Cayman process, there would be two opportunities for the Proposed Interveners to object to the Scheme, if they elect to do so—at a Convening Hearing prior to any creditor meeting and, if the Scheme receives the requisite support from creditors at the meeting, a Sanction Hearing. (*Id.* at 4–5.) If the Scheme is sanctioned, any party believing the Cayman court erred in sanctioning the Scheme may appeal the decision to "a dedicated Cayman Islands Court of Appeal and ultimately to the Judicial Committee of the Privy Council in London as the superior appellate court." (*Id.* at 5.) And if the Scheme is sanctioned by the Cayman court, the JPLs will seek recognition of that Scheme in the Bankruptcy Court, which affords the Proposed Interveners another opportunity to object to the Cayman Scheme's application in the U.S. (*Id.*) The Bankruptcy Court's decision will then be subject to the usual U.S. appellate process. (*Id.*)[6]

If, however, there is no settlement reached during the pendency of the Cayman Proceeding, the Cayman court declines to consider or approve the Scheme, or a Scheme is otherwise not reached, the Class will "be decertified automatically." (Class Certification Order ¶ 4.) In that scenario, if a settlement is later reached with the Class Representatives, such settlement would automatically be subject to the normal Rule 23 settlement approval process.

In either scenario, the Proposed Interveners (and any other members of the Class, whether they opt out or not), will have opportunities to be heard about the fairness of any settlement reached with the Class Representatives.

---

[6] Although the State Class Plaintiffs propose that any settlement or scheme should first be approved by this Court before it is presented to the Cayman court (ECF No. 286-1 at 6), that is not how Cayman schemes are effected.

11

In sum, the Proposed Notice does not affect the Proposed Interveners' opt-out rights, and the Proposed Interveners will have multiple opportunities to raise objections and protect their interests before the Cayman and U.S. courts.

## C.    The Proposed Notice Does Not Expand the Scope of the Class Certification Order

Based on an incorrect interpretation of the Class Certification Order, the Proposed Interveners contend that the Class Representatives are prohibited from negotiating with defendants or related parties other than Luckin, and contend the Proposed Notice somehow expands the scope of that order.  (*See* ECF No. 285-2 at 18–19; ECF No. 294 at 19–20.)

Paragraph one of the Class Certification Order states:  "Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), the following Class is provisionally certified for settlement purposes only with respect to Plaintiffs' claims against Luckin:  [description of class]."  (Class Certification Order ¶ 1.)  The plain purpose of the words "only with respect to Plaintiffs' claims against Luckin" is to signify that the Class was not being certified as to any other defendant.  Indeed, the Class Certification Order was the result of a stipulation between the Class Representatives and Luckin only (i.e., not involving any other defendant).  (*Id.*)  Adopting the Proposed Interveners' interpretation of those words—i.e., to limit the Class Representatives' ability to negotiate a settlement as to any defendant other than Luckin or for claims held by the Class Representatives but not asserted—would be nonsensical.  If the Class Representatives only had authority to compromise claims they asserted against Luckin on behalf of the Class, that would result in a scenario that may never lead to a settlement.  That is because other defendants (such as the directors, officers, and underwriters) have the right to seek indemnification from Luckin for any settlement or judgment reached with the Class.  And Luckin could face additional claims that are not presently asserted by the Class Representatives.  It would be illogical for Luckin to attempt

12

to negotiate a settlement that would leave unresolved potentially significant indemnification claims of other defendants and claims of the Class not presently asserted by the Class Representatives.  Such an interpretation would render the Class Certification Order meaningless.

The Proposed Interveners are simply wrong in contending that the Proposed Notice misrepresents the Class Certification Order.

**D.  The Provisionally Certified Class and Proposed Notice Have No Bearing on the State Class Plaintiffs' Note Offering Claim**

The State Class Plaintiffs contend that the Proposed Notice is deficient because it fails to reference the Securities Act claim asserted in the State Class Action arising from Luckin's January 2020 convertible note offering (the "Note Offering") and have sought to mark up the Proposed Notice to include information regarding that claim.  (*See* ECF No. 285 at 6–7; ECF No. 286-1.)  This is a red herring.  The Note Offering claim asserted by the State Class Plaintiffs is, by definition, brought on behalf of purchasers of the Note Offering.  The provisionally certified Class, however, consists of purchasers of Luckin's ADS, which are separate securities.  (Class Certification Order ¶ 1.)  Therefore, nothing about the Proposed Notice impairs or prejudices the rights of the State Class Plaintiffs to pursue their Note Offering claim.[7]

**E.  Lai Ye's Additional Arguments Are Irrelevant to the Proposed Notice**

Lai Ye's arguments concerning Chinese shareholder lawsuits, the enforcement of a Cayman Scheme in China, and Luckin's assets in China have nothing to do with the Proposed

---

[7] The Note Offering claim is in any event without merit as a matter of law.  In particular, the Note Offering was a private offering exempt from registration under the Securities Act under SEC Rule 144A.  Such offerings do not give rise to liability under Section 12(a)(2) of the Securities Act.  *See Am. High-Income Tr.* v. *Alliedsignal*, 329 F. Supp. 2d 534, 543 (S.D.N.Y. 2004) ("[O]fferings under Rule 144A are by definition non-public, and offering memoranda distributed in connection with such offerings cannot give rise to Section 12(a)(2) liability.").

13

Notice. At most, these arguments relate to whether a class should be certified (an issue that this Court has already decided). (ECF Nos. 244, 245.)

First, the Chinese lawsuits Lai Ye refers to are not actually pending in any court in China at this time. Under Chinese court rules, the court must first determine whether or not to accept a lawsuit before a case is formally commenced and any defendant can be served. Neither Luckin nor any of its Chinese subsidiaries have been served with any lawsuit in China relating to Luckin securities. In any event, it is not clear why the existence of a lawsuit under Chinese law proceeding in China would have an impact on the issuance of notice to the Class under U.S. law.

Second, Lai Ye's argument that it is unclear how a Cayman Scheme would be enforced in China is beside the point. The Proposed Notice does not have any impact on the procedures that would ordinarily be required to obtain recognition in foreign jurisdictions.[8]

Third, the fact that Luckin's operating assets are based in China similarly has no bearing on the Proposed Notice.

Finally, contrary to Lai Ye's contention, the Proposed Notice will not exclude notice to Chinese purchasers of Luckin's ADS. The provisionally certified Class includes *all persons* and entities that purchased or otherwise acquired Luckin ADS between May 17, 2019 through July 15, 2020, irrespective of their residence. (Class Certification Order ¶ 1.) The notice procedures contemplate making reasonable efforts to disseminate the Proposed Notice to all members of the Class. If those who have purportedly brought suit in China are members of the Class, they are entitled to participate or opt out just like any other member of the Class. Undoubtedly, the same media coverage that resulted in them purportedly filing claims in China either already has alerted, or will alert, them to the pendency of this class action.

---

[8] Moreover, this same issue would be raised regardless of whether a settlement results in a Cayman or U.S. judgment.

14

## POINT III.

## THE PROPOSED INTERVENERS HAVE NOT SHOWN THEIR INTERESTS ARE INADEQUATELY REPRESENTED

As discussed in Point I, *supra*, the Proposed Interveners' interest is to maintain their ability to pursue their own interests—not those of the Class—either in litigation or negotiations. The Proposed Interveners have not explained how either their own interests or those of the Class are inadequately represented by the Class Representatives or Class Counsel. Indeed, "[w]here there is an identity of interest between a putative intervenor and a party, adequate representation is assured." *Wash. Elec. Co-op., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 98 (2d Cir. 1990).

The Proposed Notice does nothing to prevent the Proposed Interveners from representing their own interests in any settlement negotiations. As this Court has been previously advised, on May 20, 2021, Luckin's JPLs convened a meeting of shareholder claimants to discuss the formation of an "ad-hoc committee to represent the interests of current or former holders of ADSs in [Luckin] who are entitled to be claimants in the class action[]." (ECF No. 264-1 at 6.) Counsel for each of the Proposed Interveners (except Mr. Bequai) attended. During the May 20, 2021 meeting, the JPLs made clear that all are welcome, though not required, to join this committee, and that the purpose of the committee is to represent the interests of all shareholder claimants. Luckin and the JPLs have not sought to and do not intend to exclude the Proposed Interveners (or any other claimants) from the negotiation process. As of the filing of this brief, Luckin understands that representatives of Luckin's ADS holders—including the Proposed Interveners—have agreed to terms in principle, to be recorded under a Memorandum of Understanding, to form an ad hoc committee for the purpose of negotiating a settlement.

15

As for the interests of the Class, the Proposed Interveners have not demonstrated why the Class Representatives and Class Counsel would inadequately represent the interests of absent Class Members.[9]  There is simply no basis to believe that the Class Representatives and Class Counsel would engage in anything less than an arm's-length negotiation with Luckin to determine whether a settlement can be reached.

## CONCLUSION

For the reasons stated above, the Court should deny the motions to intervene and so order the Stipulation and Proposed Order Regarding Dissemination of Class Notice (ECF No. 258), authorizing the dissemination of the Proposed Notice to potential Class Members.

---

[9] The State Class Plaintiffs point to the fact that the Class Representatives did not assert a claim based on the Note Offering.  However, as explained above, the Class does not include purchasers of the Note Offering.

16

Dated:    New York, New York
          June 14, 2021

DAVIS POLK & WARDWELL LLP

By:        /s/ Lawrence Portnoy
           Lawrence Portnoy
           Brian S. Weinstein
           450 Lexington Avenue
           New York, New York 10017
           (212) 450-4000

           Jonathan K. Chang
           18/F, The Hong Kong Club Building
           3A Chater Road
           Central, Hong Kong SAR
           Telephone: +852 2533 1028


*Attorneys for Defendant Luckin Coffee Inc.*

17