**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE LUCKIN COFFEE INC. SECURITIES LITIGATION | Case No. 1:20-cv-01293-JPC-JLC <br><br> <u>CLASS ACTION</u> |

**LEAD PLAINTIFFS' OMNIBUS MEMORANDUM OF LAW**
**IN OPPOSITION TO MOTIONS TO INTERVENE**

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................. 1

II.    PROCEDURAL BACKGROUND ....................................................................... 4

III.   THE MOVANTS MISCHARACTERIZE THE PROPOSED NOTICE ........................... 6

IV.    THE MOVANTS CANNOT INTERVENE ........................................................... 8

       A.    Legal Standard ...................................................................................... 8

       B.    The Movants Cannot Demonstrate that Their Motions
             Are Timely or that They Have an Interest in the Subject
             Matter of This Action ........................................................................... 8

       C.    The Movants Cannot Demonstrate that Any of Their Rights
             Will Be Impaired by Dissemination of the Notice ............................... 11

       D.    The Movants Cannot Demonstrate that Their Interests Are
             Not Adequately Protected by Lead Plaintiffs ...................................... 17

       E.    The Movants Should Not Be Allowed to Permissively Intervene ....... 19

       F.    Allowing the Movants to Object to the Notice Would Be Futile ........ 20

V.     THE MOVANTS' OBJECTIONS TO THE NOTICE ARE MERITLESS .................... 21

       A.    The Notice Properly Advises Class Members of the Pendency
             of the Cayman Proceeding and the Possibility That the Cayman
             Court Will Treat Votes Cast by Lead Plaintiffs as Votes on Behalf
             of Absent Class Members ..................................................................... 21

       B.    The Notice Does Not Grant Lead Plaintiffs Any Additional
             Authority as Court-Appointed Class Representatives under Rule 23 .... 23

       C.    Opt-Out Classes Are Standard Under Rule 23, and the Notice
             Does Not Constitute a Proxy Solicitation ........................................... 26

       D.    The Movants' Speculation Concerning Potential Outcomes
             in the Cayman Islands Fails to Raise Any Colorable Deficiency
             in the Notice ........................................................................................ 31

             1.    The Potential for Non-Debtor Releases Does
                   Not Render the Notice Deficient ................................................ 31

             2.    Winslow's Vague Ascertainability Challenge Fails
                   to Identify Any Deficiency in the Notice .................................... 33

             3.    Winslow's Unsupported Speculation Regarding
                   Risks Posed by Lead Plaintiffs' Representation of
                   the Class Is Baseless .................................................................. 34

i

E.      Ye's Arguments Concerning the Composition of the
        Class Fail to Identify any Deficiency in the Notice ............................................. 36

F.      Ye's Argument that Class Members Must be Given
        a Second Opt-Out Opportunity in the Event a Scheme
        is Approved Should be Rejected .............................................................................. 37

VI.    THE MOVANTS' SELF-SERVING EDITS TO THE NOTICE
       SHOULD BE REJECTED ............................................................................................ 38

VII.   CONCLUSION ..................................................................................................................... 45

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Adelphia Commc'ns Corp.*,
  368 B.R. 140 (Bankr. S.D.N.Y. 2007) ..................................................................................27

*In re Am. Int'l Grp. Inc. Derivative Litig.*,
  2009 WL 5061745 (S.D.N.Y. Dec. 23, 2009) ......................................................................19

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
  916 F. Supp. 2d 454 (S.D.N.Y. 2013) ............................................................................18, 19

*In re Ambac Fin. Grp., Inc. Derivative Litig.*,
  257 F.R.D. 390 (S.D.N.Y.2009) ....................................................................................18, 19

*In re Avanti Commc'ns Grp. plc*,
  582 B.R. 603 (Bankr. S.D.N.Y. 2018) ..................................................................................32

*In re Barrick Gold Sec. Litig.*,
  314 F.R.D. 91 (S.D.N.Y. 2016) ............................................................................................33

*Buchet v. ITT Consumer Fin. Corp.*,
  845 F. Supp. 684 (D. Minn. 1994) ........................................................................................19

*In re Bullmore*,
  300 B.R. 719 (Bankr. D. Neb. 2003) ....................................................................................21

*In re Chassix Holdings, Inc.*,
  533 B.R. 64 (Bankr. S.D.N.Y 2015) .....................................................................................27

*In re Chateaugay Corp.*,
  104 B.R. 626 (Bankr. S.D.N.Y. 1989) ..................................................................................24

*In re Citigroup Inc. Bond Litig.*,
  296 F.R.D. 147 (S.D.N.Y. 2013) .......................................................................................7, 44

*Citizens Against Casino Gambling in Erie Cnty. v. Hogen*,
  417 F. App'x 49 (2d Cir. 2011) ............................................................................................19

*In re Cloudera, Inc. Sec. Litig.*,
  2021 WL 1238301 (N.D. Cal. Apr. 2, 2021) ........................................................................17

*Cohen v. Luckin Coffee Inc.*,
  2020 WL 3127808 (S.D.N.Y. June 12, 2020) .......................................................................37

*Cohen v. Republic of the Phil.*,
   146 F.R.D. 90 (S.D.N.Y. 1993) ..................................................................................19

*Davis v. J.P. Morgan Chase & Co.*,
   775 F. Supp. 2d 601 (W.D.N.Y. 2011) .....................................................................42

*Diduck v. Kaszycki & Sons Contractors, Inc.*,
   149 F.R.D. 55 (S.D.N.Y. 1993) ...........................................................................10, 11

*In re Direxion Shares ETF Tr.*,
   279 F.R.D. 221 (S.D.N.Y. 2012) ............................................................................8, 11

*In re Flight Transp. Corp. Sec. Litig.*,
   730 F.2d 1128 (8th Cir. 1984) ..................................................................................24

*In re Found. for New Era Philanthropy Litig.*,
   175 F.R.D. 202 (E.D. Pa. 1997)................................................................................30

*Gatdula v. CRST Int'l, Inc.*,
   2015 WL 12697656 (C.D. Cal. Aug. 26, 2015)........................................................12

*In re Glob. Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436, 458 (S.D.N.Y.2004) ..................................................................31, 38

*Gomes v. Eventbrite, Inc.*,
   2020 WL 6381343 (N.D. Cal. Oct. 30, 2020)..........................................................18

*Hevesi v. Citigroup, Inc.*,
   366 F.3d 70 (2d Cir. 2004)........................................................................................10

*In re Holocaust Victim Assets Litig.*,
   225 F.3d 191 (2d Cir. 2000)......................................................................................11

*In re IMAX Sec. Litig.*,
   272 F.R.D. 138 (S.D.N.Y. 2010) ..............................................................................37

*In re Joint E. & S. Dist. Asbestos Litig.*,
   982 F.2d 721 (2d Cir. 1992), *opinion modified*, 993 F.2d 7 (2d Cir. 1993) ...........27

*La. Mun. Police Emps. Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*,
   2017 WL 3149424 (D. Vt. July 21, 2017) ................................................................33

*Leapard v. Chan*,
   Case No. 1:12-cv-01726 (S.D.N.Y. Dec. 17, 2013), ECF No. 44 ...........................25

*In re Luckin Coffee Inc. (In Provisional Liquidation)*,
   Case No. 21-10228-MG (Bankr. S.D.N.Y. Mar. 30, 2021), ECF No. 48.................. passim

iv

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*,
   471 F.3d 377 (2d Cir. 2006)................................................................................8

*In re Merrill Lynch & Co. Rsch. Reps. Sec. Litig.*,
   2008 WL 2594819 (S.D.N.Y. June 26, 2008) ...................................................8, 20

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
   249 F.R.D. 124 (S.D.N.Y. 2008) .......................................................................38, 44

*In re Metcalfe & Mansfield Alt. Invs.*,
   421 B.R. 685 (Bankr. S.D.N.Y. 2010).................................................................32

*In re MF Glob. Inc.*,
   512 B.R. 757 (Bankr. S.D.N.Y. 2014) (Glenn, J.)...............................................14

*In re Musicland Holding Corp.*,
   632 B.R. 644 (S.D.N.Y. 2007)...........................................................................14, 15

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................................18

*In re Nat'l Prescription Opiate Litig.*,
   976 F.3d 664 (6th Cir. 2020) ............................................................................15

*In re Ocean Rig UDW Inc.*,
   570 B.R. 687 (Bankr. S.D.N.Y. 2017)...............................................................14, 30, 37

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   2019 WL 5653756 (E.D.N.Y. Oct. 30, 2019)......................................................11

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   827 F.3d 223 (2d Cir. 2016)...............................................................................18

*In re PT Bakrie Telecom Tbk*,
   2021 WL 1439953 (Bankr. S.D.N.Y. Apr. 15, 2021).........................................30, 32, 33

*In re Rede Energia S.A.*,
   515 B.R. 69 (Bankr. S.D.N.Y. 2014)..................................................................14

*In re Residential Cap., LLC*,
   2013 WL 12161584 (Bankr. S.D.N.Y. Dec. 11, 2013).......................................24, 34

*Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*,
   356 F. Supp. 3d 287 (S.D.N.Y. 2018).................................................................17

*Schoolcraft v. City of N.Y.*,
   298 F.R.D. 134 (S.D.N.Y. 2014) ........................................................................9

v

*SEC v. Luckin Coffee, Inc.*,
  Case No. 1:20-cv-10631-MKV (S.D.N.Y. Dec. 16, 2020), ECF No. 5-1 ...............................15

*In re Sino-Forest Corp.*,
  501 B.R. 655 (Bankr. S.D.N.Y. 2013) ....................................................................25, 30, 32, 34

*Stone v. Agnico-Eagle Mines Ltd.*,
  280 F.R.D. 142 (S.D.N.Y. 2012) ...................................................................................36, 37

*In re SunEdison, Inc.*,
  576 B.R. 453 (Bankr. S.D.N.Y. 2017) ...............................................................................33

*In re Drexel Burnham Lambert Grp., Inc.*,
  960 F.2d 285 (2d Cir. 1992)............................................................................................27

*United States v. Glens Falls Newspapers, Inc.*,
  160 F.3d 853 (2d Cir. 1998)............................................................................................20

*In re Vitamin C Antitrust Litig.*,
  279 F.R.D. 90 (E.D.N.Y. 2012) ...................................................................................17, 18

*In re Vitamins Antitrust Litig.*,
  2000 WL 1737867 (D.D.C. Mar. 31, 2000)..........................................................................12

*In re Vivendi Universal, S.A. Sec. Litig.*,
  242 F.R.D. 76 (S.D.N.Y. 2007) .............................................................................36, 37, 44

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005).............................................................................................41

*Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*,
  922 F.2d 92 (2d Cir. 1990)..............................................................................................17

*In re Worldcom, Inc.*,
  347 B.R. 123 (Bankr. S.D.N.Y. 2006)................................................................................22

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005)................................................................................38

*Zamora v. Ryder Integrated Logistics, Inc.*,
  2014 WL 9872803 (S.D. Cal. Dec. 23, 2014)........................................................................12

**STATUTES**

11 U.S.C. § 1126(c) ...........................................................................................................29

11 U.S.C. § 1507(b) ...........................................................................................................30

11 U.S.C. § 1522(a) ...........................................................................................................30

15 U.S. C. § 78u–4(3)(A)(i)(II) ...................................................................................................10

**RULES**

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................................................38

Lead Plaintiffs Sjunde AP-Fonden and Louisiana Sheriffs' Pension & Relief Fund respectfully submit this memorandum of law in opposition to the motions to intervene filed by The Winslow Funds ("Winslow"), Kingstown Capital Management ("Kingstown"), August Bequai, and Lai Ye (collectively, the "Opt-Outs") and Teamsters Local 710 Pension Fund ("Local 710"), City of Fort Myers Police Officers' Retirement System, Kimson Chemical Inc., and Michael Bergenholtz (collectively, the "State Court Plaintiffs" and, with the Opt-Outs, the "Movants"). The Movants seek to intervene in this action in order to object to the Stipulation and [Proposed] Order Regarding Dissemination of Class Notice ("Class Notice Order"), pursuant to which Lead Plaintiffs seek this Court's approval to disseminate the notice required by Federal Rule of Civil Procedure 23 (the "Notice") to members of the certified Class.[1]

## I.    INTRODUCTION

The Movants, after having their arguments heard and rejected by both this Court and the Bankruptcy Court, again seek to obstruct Lead Plaintiffs' efforts to comply with Rule 23 with respect to the certified Class.[2] This time, the Movants seek to intervene in this action in order to file objections to the Class Notice Order. In so doing, the Movants have demanded various changes be made to the disclosures contained in the Notice as presented to this Court by the Court-appointed Lead Plaintiffs.

As an initial matter, the Movants do not satisfy the standards for intervention to assert such objections. First, the Movants fail to demonstrate that their rights will be impaired by dissemination of the Notice to Class members. The Notice does not confer any legal rights on Lead

---

[1] Unless otherwise noted, (i) internal quotation marks and citations are omitted, (ii) emphasis is added, (iii) "Rule" refers to the Federal Rules of Civil Procedure, and (iv) all references to "Ex. _" are to exhibits to the accompanying Declaration of Salvatore J. Graziano.

[2] On March 5, 2021, this Court provisionally certified for settlement purposes with respect to Plaintiffs' claims against Luckin, a class consisting of "[a]ll persons and entities (and their beneficiaries) that purchased or otherwise acquired the American Depository Shares of Luckin Coffee Inc. between May 17, 2019 through July 15, 2020, inclusive" pursuant to Fed. R. Civ. P. 23(a) and (b)(3) ("Class"). ECF No. 245.

Plaintiffs over and above the rights provided to them by the Class Certification Order and Judge Glenn's Recognition Order (defined below). Similarly, dissemination of the Notice in its current form has no effect on the Movants' existing claims in their own actions or on their ability to participate in the negotiations with the Joint Provisional Liquidators ("JPLs") in the provisional liquidation proceeding (the "Cayman Proceeding") before the Grand Court of the Cayman Islands (the "Cayman Court"). *See* Financial Services Division Cause No. 157 of 2020 (ASCJ). Further, none of the Movants have demonstrated a valid interest in the subject matter of *this* action, having now filed their own actions, or that their interests—in the unlikely event they remain members of the Class here—are not adequately protected by Lead Plaintiffs. The Motions are also untimely and the proposed objections to the Class Notice Order and Notice itself are meritless, making intervention futile.

The Movants do not dispute that Rule 23 requires Lead Plaintiffs to give notice of the certification of the Class to Class members, or that the Notice contains the information required by Rule 23. Instead, each Movant makes baseless arguments regarding the content of the Notice and proposes changes to further their own interests. But the Notice as presented to this Court should not be modified in any respect. As drafted, it provides the best notice practicable to Class members under the circumstances of this action, in the context of Luckin's Cayman Proceeding and the uncertainties surrounding a resolution in that proceeding. The Movants' proposed edits are self-serving, improper and harmful to the interests of Class members, who are being asked to decide, based on the best information available at this time, whether or not to exclude themselves from the Class. To make an informed decision, Class members must be told about the status of this action, the Cayman Proceeding, and what may occur in connection with any potential settlement reached through the Scheme process (defined below) in the Cayman Proceeding. The Notice does

all of this. The Movants' concern is not the Class. They are entirely hostile to the Class and have objected at every turn to obstruct the Class in a misguided effort to further their own interests.

On a more granular level, the Movants' suggested edits to the disclosures in the Notice relating to the voting process in the Cayman Proceeding should be rejected. The Notice properly provides Class members with information regarding the *possibility* that the Cayman Court will treat votes cast by Lead Plaintiffs as votes on behalf of absent Class members. This is an issue that is yet to be determined definitively by the Cayman Court, but involves a procedure that is certainly not without precedent. In fact, it is well-established that court-appointed class representatives may act on behalf of absent class members in bankruptcy proceedings both in the United States and abroad, including by filing claims and negotiating settlements.

For similar reasons, disclosures in the Notice regarding the possibility of a settlement that releases claims against parties other than Luckin or a Scheme that is binding on all Class members under Cayman law whether or not they exclude themselves from the Class now are appropriate. Class members should be told what *may* occur once the process plays out, so that they can make an intelligent opt-out decision. And it is not unprecedented for settlements entered in the context of foreign proceedings that resolve third-party claims, even without an opt-out opportunity, to be recognized and enforced in the United States. Moreover, the numerous protections in place through both U.S. bankruptcy law and Cayman procedure that ensure the overall fairness of the Scheme and its treatment of creditors make the Movants' purported concerns illusory.

Accordingly, each of the motions is baseless, and is designed solely to thwart the Certification Order and Recognition Order, both of which are final and non-appealable, delay the dissemination of the Notice, and weaken the Class. After having made the decision to bring separate cases that have now been stayed as against Luckin, the Movants, in an effort to deprive

other Class members of the opportunity to opt out of the Class, are improperly attempting to insert themselves into this action, which they have no right or authority to do. The motions should be denied so as not to delay dissemination of the Notice to Class members and so that settlement negotiations can proceed on behalf of a defined, certified Class of Luckin investors.

## II.    PROCEDURAL BACKGROUND

In June 2020, following extensive briefing from Lead Plaintiffs, Local 710, and other parties seeking appointment as lead plaintiff under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Judge Liman appointed Lead Plaintiffs to represent the Class in this Action. ECF No. 118. In September 2020, Lead Plaintiffs filed the Consolidated Class Action Complaint, bringing claims under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act"). ECF No. 150.

In March 2021, Lead Plaintiffs submitted the Stipulation and [Proposed] Order Regarding Provisional Class Certification for Settlement Purposes ("Proposed Certification Order"), which would enable Luckin and Lead Plaintiffs to attempt to resolve Lead Plaintiffs' claims in light of rapid developments affecting the Company in the Cayman Islands, including the Cayman Proceeding and a $180 million settlement with the U.S. Securities and Exchange Commission ("SEC"). ECF Nos. 235, 245. The Court held a teleconference concerning the Proposed Certification Order, permitting the Movants to appear and be heard, and then entered that Order and issued a separate opinion (together, the "Certification Order"), provisionally certifying the Class for settlement purposes under Rules 23(a) and (b)(3). ECF Nos. 244, 245. The Court also held that provisional certification of the Class did not prejudice the Movants:

> As an initial matter, it is not clear on what basis [the Movants] have standing to challenge the provisional class certification, as they have pointed only to general "harm" that they would face in light of the parallel suits . . . . Regardless, the Court finds that there is no convincing reason to delay in entering the Stipulation and Proposed Order, as [the Movants] have not demonstrated that any prejudice would

4

result from the Court's provisional certification of the purported class in this case. The provisional certification, which concerns a class "consisting of all persons and entities who purchased or otherwise acquired Luckin [American Depository Shares] from May 17, 2019 through July 15, 2020, inclusive" (Dkt. 235 at 2), will not prevent the other actions from continuing, nor will it prevent those plaintiffs from engaging in their own negotiations with the Joint Provisional Liquidators. In fact, the Joint Provisional Liquidators confirmed during the conference their willingness to continue working with all creditors. Moreover, the provisional certification will not prevent those plaintiffs from opting out of any class in this case or from objecting to any class settlement that is reached.

ECF No. 244 at 2-3.

Subsequent to the Certification Order, Winslow argued in a letter to Bankruptcy Judge Glenn that, notwithstanding this Court's prior certification of the Class, the Bankruptcy Court's recognition order in Luckin's pending Chapter 15 proceeding should not include a carve-out permitting the parties to this action to, among other things, continue Class proceedings before Your Honor, negotiate a settlement of the Class's claims against Luckin, or take further action in this Court consistent with the Certification Order. *See In re Luckin Coffee Inc. (In Provisional Liquidation)*, Case No. 21-10228-MG, ECF No. 48 at 5, ¶4.ii.b (Bankr. S.D.N.Y. Mar. 30, 2021) (the "Recognition Order"). Judge Glenn wholly rejected that argument, and his Order including that carve-out is now final.[3]

---

[3] Judge Glenn's Order permits:

> (a) the Lead Plaintiffs to file papers or take actions in the District Court in connection with the Provisional Class Order, and the District Court to conduct any proceedings, hold hearings and issue rulings in connection therewith, (b) the Lead Plaintiffs, Luckin Coffee, the Foreign Representatives, and any other parties to the Federal Class Action to (i) participate in settlement negotiations regarding a scheme of arrangement with respect to the Class (an "ADS Scheme") in the Cayman Proceeding or otherwise and take any actions regarding any proposed settlement to be implemented in an ADS Scheme in the Cayman Proceeding, in each case, in accordance with the Provisional Class Order, and (ii) take any steps necessary to secure approval of any settlement to be implemented in the ADS Scheme in the appropriate court.

*Id.* at 5, ¶4.ii.

On May 14, 2021, Lead Plaintiffs filed the Class Notice Order (ECF No. 258), along with the Notice. In response, certain Movants moved to intervene for purposes of objecting to the Notice and requested a hearing on their motions. ECF Nos. 267, 269, 271, 272, 278.

On May 28, 2021, this Court heard oral argument on the Movants' request to intervene for purposes of objecting to the Notice and set a briefing schedule on those motions. ECF No. 292-4 ("May 28 Tr.").

On June 7, 2021, the State Court Plaintiffs filed their Motion to Intervene (ECF No. 285) ("State Intervenor Br."), and Opposition to Stipulation and [Proposed] Order Regarding Dissemination of Notice (ECF No. 285-2) ("State Opp. Br."); Winslow filed its Supplemental Memorandum of Law in Support of its Motion to Intervene (ECF No. 288) ("Winslow Supp. Br."); Ye filed a Memorandum of Law in Support and Joining Winslow's Motion (ECF No. 291) ("Ye Br."); and Kingstown filed a letter joining the arguments advanced by Winslow (ECF No. 293).

## III.    THE MOVANTS MISCHARACTERIZE THE PROPOSED NOTICE

The Notice is merely an informative tool that Rule 23 requires Lead Plaintiffs to issue to the Class to satisfy their fiduciary duties. Significantly—and contrary to what the Movants assert— the Notice does not expand Lead Plaintiffs' rights or this Court's Certification Order. Nor does it curtail the Movants' rights. The Court has already entered the Certification Order, certifying a Class for settlement purposes that specifically contemplates "an application to approve a scheme of arrangement with respect to the Plaintiff[s'] claims against Luckin" (the "Scheme"). Certification Order at 4. The Court heard these same issues raised by the Movants before entering this Order and found that the Movants had "not demonstrated that any prejudice would result from the Court's provisional certification of the purported class in this case." ECF No. 244 at 2-3.

Following the entry of the Certification Order, Bankruptcy Judge Glenn specifically carved out the continued certification proceedings of the Class from the automatic bankruptcy stay and

allowed "Lead Plaintiffs to file papers or take actions in [this Court] in connection with the Provisional Class Order." Recognition Order at 5. Under Judge Glenn's Recognition Order, the Movants' own pending claims against Luckin are stayed, and none of the Movants will be able to enforce their claims against Luckin in the United States, regardless of their attempt to thwart Lead Plaintiffs from issuing the required notice to the Class. Following the Recognition Order, on June 7, 2021, **before** Movants filed their briefs, Lead Plaintiffs and all Movants agreed to a memorandum of understanding to join an ad hoc committee in the Cayman Proceedings to negotiate any settlement (the "Ad Hoc Committee"), which was executed by all as of June 10, 2021.

To effectively inform the Class and fulfill their fiduciary duties, Lead Plaintiffs are required to issue the Notice to the Class. "Rule 23 requires notice to the class . . . when the class is certified pursuant to Rule 23(b)(3)." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 154 (S.D.N.Y. 2013). To satisfy due process, this notice "must be provided to all members who can be identified through reasonable effort." *Id.* By issuing the Notice here, Lead Plaintiffs would satisfy this obligation and further the goal of achieving the best possible recovery for the Class.

While the Movants argue that the Notice expands Lead Plaintiffs' rights beyond those stated in the Certification Order, that is not the case. That Order contemplates Class-wide voting on the Scheme (Certification Order at 4), and the Notice merely informs the Class of the potential impact, including that any vote by Class Counsel on the Scheme "*may* be deemed to be a vote cast by you as a member of the class." Notice ¶21(a). These details are "informative" and provide information "beyond your typical securities action notice as to what may happen" in the Scheme, to give Class members an informed "opportunity to opt-out." May 28 Tr. at 17:6-12. Their inclusion in the Notice does not impact either Class Counsel's ability to vote on behalf of the Class

on the Scheme or how the Cayman Court will treat that vote. As this Court has been advised (*see, e.g.*, May 28 Tr. at 17:13-18, 19:23-20:7, 25:16-21, 32:1-9, 35:17-20), that is an issue of Cayman law to be decided by the Cayman Court. The Notice should include this information so that Class members can make informed decisions on whether to opt out of the Class given what may occur in negotiating and approving any settlement reached through the Scheme process.

## IV.    THE MOVANTS CANNOT INTERVENE

The Movants fail to establish ***any*** of the requirements for intervention under Rule 24.

### A.    Legal Standard

To intervene as of right under Rule 24(a)(2), a proposed intervenor must demonstrate that: (1) the motion is timely; (2) the movant asserts an interest relating to the property or transaction that is the subject of the action; (3) the movant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the movant's ability to protect its interest; and (4) the movant's interest is not adequately represented by the other parties. *See MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006). Failure to demonstrate any of these elements requires denial of intervention. *See In re Direxion Shares ETF Tr.*, 279 F.R.D. 221, 234 (S.D.N.Y. 2012). Additionally, "[a]lthough legal futility is not mentioned in Rule 24, courts have held that futility is a proper basis for denying a motion to intervene." *In re Merrill Lynch & Co. Rsch. Reps. Sec. Litig.*, 2008 WL 2594819, at *5 (S.D.N.Y. June 26, 2008).

### B.    The Movants Cannot Demonstrate that Their Motions Are Timely or that They Have an Interest in the Subject Matter of This Action

First, the Motions should be denied because they are untimely attempts to ask the Court to reconsider its Certification Order. The Movants have repeatedly sought to derail class certification at every turn to gain a perceived litigation advantage over other Class members. This is their third bite at the apple: they first unsuccessfully opposed entry of the Certification Order (*see* ECF No.

8

238), and then unsuccessfully opposed Lead Plaintiffs' request for a carve-out from the bankruptcy stay to continue with necessary proceedings before this Court (*see* Recognition Order, at 5 ¶4.ii). The Movants now seek again to nullify this Court's Certification Order by preventing notice from being issued to members of the certified Class.

But there are no intervening changes in the law or previously unavailable facts to warrant reconsideration of the Certification Order. Courts grant reconsideration only where the moving party demonstrates an "intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Schoolcraft v. City of N.Y.*, 298 F.R.D. 134, 136 (S.D.N.Y. 2014). None of those factors are present here. Both this Court and the Bankruptcy Court have already determined that it is appropriate for Lead Plaintiffs to seek to negotiate a settlement on behalf of the certified Class; issuing notice is necessary for that to happen; and the Movants provide no legitimate basis for overturning this Court's and the Bankruptcy Court's prior decisions.

Moreover, the Opt-Outs are pursuing their own individual actions against Luckin while simultaneously claiming to be absent Class members in this action with an interest that must be protected to the detriment of other Class members. But the Opt-Outs cannot have it both ways. Upon issuance of the Notice, the Opt-Outs will have the opportunity to formally opt out of the Class in accordance with the Notice and to represent their "unique" interests in their individual actions and as individual shareholder claimants in the Cayman Proceeding, which they have stated they intend to do when permitted. May 28 Tr. at 29:4-19.

What the Opt-Outs are really attempting to do is to prevent other Class members from receiving notice of their opt-out right, thereby also preventing Lead Plaintiffs from effectively representing those Luckin shareholders who choose to remain in the Class for the purpose of

9

negotiating a potential settlement in the Cayman Proceeding. By preventing those investors who choose to remain in the Class from negotiating effectively with Luckin and the JPLs there, the Opt-Outs hope to obtain a disproportionate recovery through their individual actions. That is a misguided approach. The Movants will not serve their own interests by obstructing the Class.

Moreover, the appropriate process, consistent with Rule 23 and due process, is to disseminate the Notice promptly and give all Class members the opportunity to opt out of the Class if they wish. After having filed their own individual actions, the Opt-Outs are now seeking to deny this relief to other Class members, even though it is the very relief this Court noted that the Opt-Outs can exercise in overruling their objections to the Certification Order.

Winslow attempts to bolster its argument by claiming to have greater individual damages than Lead Plaintiffs. Winslow Funds' Memorandum of Law in Support of their Motion to Intervene (ECF No. 265) ("Winslow Br.") at 10. But again, Winslow filed its own individual action to recover those damages. In any event, unlike Lead Plaintiffs, Winslow never presented its trading data or moved for appointment as lead plaintiff. Its efforts to commandeer this action are inconsistent with the PSLRA. After the statutory 60-day motion deadline (15 U.S.C. § 78u–4(3)(A)(i)(II)), Judge Liman issued a lead plaintiff order empowering Lead Plaintiffs, not Winslow, to represent the putative Class, and Your Honor appointed Lead Plaintiffs, not Winslow, as Class Representatives. Thus, Lead Plaintiffs, not Winslow or any other individual Class member, have the authority to speak for the Class. *See Hevesi v. Citigroup, Inc.*, 366 F.3d 70, 82 n.13 (2d Cir. 2004) ("the main purpose of having a lead plaintiff . . . [is] to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole").

At the same time, the State Court Plaintiffs fail to identify an interest in the subject matter of this action sufficient to permit intervention. The court in *Diduck v. Kaszycki & Sons*

10

*Contractors, Inc.*—which the State Court Plaintiffs rely upon—stated that an intervenors' interest "must be significant," and "based on a right which belongs to the proposed intervenor rather than an existing party to the suit." 149 F.R.D. 55, 58 (S.D.N.Y. 1993). Here, the State Court Plaintiffs rely upon their Securities Act claims to support intervention. State Intervenor Br. at 6. However, Lead Plaintiffs have already brought the same shareholder claims in this action. While the State Court Plaintiffs claim an additional interest arising from a January 2020 convertible note offering (the "Note Offering"), those notes are not at issue in the Scheme that Lead Plaintiffs or the other Movants and the JPLs are pursuing. Given that the State Court Plaintiffs' "interest"—their ADS claim—"is one that is common to all [C]lass members," including Lead Plaintiffs, they have no right to intervention. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2019 WL 5653756, at \*4 (E.D.N.Y. Oct. 30, 2019).

The fact of the matter is that the State Court Plaintiffs brought a largely overlapping state court action after failing to be appointed lead plaintiff in this case. They now seek to effectively displace the duly appointed Lead Plaintiffs in this federal action, and stymie their efforts to comply with Rule 23. That is just obstructionism; it not the sort of "interest" that justifies intervention.

### C. The Movants Cannot Demonstrate that Any of Their Rights Will Be Impaired by Dissemination of the Notice

The Movants' motions also fail because they cannot show that their rights will be impaired by dissemination of the Notice. To satisfy Rule 24, a proposed intervenor must show that it "is situated such that disposition of the action may, as a practical matter, impair or impede [its] ability to protect [its] interests." *Direxion*, 279 F.R.D. at 234; *see also In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 199 (2d Cir. 2000). As an initial matter, the fact that Winslow, Kingstown and Ye have clearly indicated their intention to opt out of the Class makes their motions to intervene transparently inappropriate, because investors who opt out of a class do not have the right either

11

to intervene in the class action or to object to a class settlement. *See Gatdula v. CRST Int'l, Inc.*, 2015 WL 12697656, at *6 (C.D. Cal. Aug. 26, 2015) (investor who opted out of class had no standing to intervene or to object to settlement); *Zamora v. Ryder Integrated Logistics, Inc.*, 2014 WL 9872803, at *1 (S.D. Cal. Dec. 23, 2014) ("Lack of standing is also fatal to [the opt-out plaintiff's] motion to intervene."); *In re Vitamins Antitrust Litig.*, 2000 WL 1737867, at *6 (D.D.C. Mar. 31, 2000) ("The Court finds that both groups of opt-out plaintiffs lack standing to intervene in the proposed Settlement since they have opted out of the class.").

In any event, none of the Movants' rights will be impaired by the Notice. The Movants argue that issuance of the Notice will impair their rights in the Cayman Proceeding by improperly bestowing on Lead Plaintiffs "outsized voting rights" and a "supermajority" in deciding whether to approve the Scheme. Winslow Br. at 11; State Intervenor Br. at 16.[4] However, in rejecting the Movants' objections to class certification, this Court already held that the Movants "have not demonstrated that any prejudice would result," because "[t]he provisional certification . . . will not prevent the other actions from continuing, nor will it prevent those plaintiffs from engaging in their own negotiations with the Joint Provisional Liquidators." ECF No. 244, at 2-3. This is *a fortiori* true with respect to the Movants' objections to the Notice, which simply implements the Certification Order, and dooms the Movants' motions.[5]

The Movants will have an opportunity to negotiate with the JPLs, who owe fiduciary duties to all creditors, before any Scheme is presented to the Cayman Court. In fact, even though they

---

[4] Kingstown, Ye, and Bequai join in the Rule 24 arguments raised by Winslow, and their arguments are addressed together except where otherwise noted. (ECF Nos. 271-2, 272, 278).

[5] Bequai raises additional arguments that his rights will be impaired because the as yet non-existent Scheme will block the resolution of claims against Luckin "in the U.S. Courts," and "move the negotiations affecting all claims to the Caymans." ECF No. 272 ¶6. However, the Cayman Proceeding has already been given Chapter 15 recognition by Judge Glenn, and none of the other Movants argue that those proceedings should not be allowed to continue. *See* Recognition Order. The Notice does not impact this fact, and Mr. Bequai offers no support for why his arguments permit intervention.

12

omit it from their briefs, all of the Movants (with the exception of Bequai) are directly represented on the Ad Hoc Committee formed in the Caymans Proceeding to receive information about Luckin's restructuring and communicate directly with the JPLs in connection therewith. Indeed, during the March 4, 2021 teleconference before Your Honor, the JPLs confirmed their willingness to continue working with all creditors in furtherance of the Scheme. ECF No. 244. Those negotiations are ongoing, as evidenced by a recent meeting between the JPLs and all shareholder plaintiffs who have filed claims against Luckin, including the Movants, and the execution of a memorandum of understanding among members of the Ad Hoc Committee. And, while the ultimate treatment of the Class' votes in the Cayman Proceeding is a question for the JPLs and the Cayman Court, if the Movants are not satisfied with their treatment in the context of the Scheme, they can oppose it in the Cayman Court, if they so choose. In fact, several of the Movants are currently represented by counsel in the Cayman Islands, demonstrating their ability to assert their rights before that court.

Further, the Opt-Outs have failed to identify any effect the Notice will have on their existing claims in their individual actions, which claims have already been stayed as against Luckin by virtue of the Recognition Order. The only purported "harm" asserted is the possibility set out in the Notice that Lead Plaintiffs *may* have the ability to vote on behalf of all Class Members in deciding whether to approve the Scheme as part of a settlement of Class claims, including potential third-party releases in favor of the Underwriter Defendants or officer defendants. Winslow Br. at 12-14. But, as Class Counsel explained at the May 28 hearing, the Notice simply tracks a typical securities class action notice—which regularly includes disclosures about potential third-party releases—in order to be accurate and informative in terms of what *may* happen in the Cayman Proceeding in order to give all Class Members the information necessary to make an informed

13

decision as to whether or not to exclude themselves from the Class. May 28 Tr. at 16:15-23. The Notice does not give Lead Plaintiffs any additional legal rights or powers over and above those provided by the Certification Order. Nor does the Notice determine what rights the Lead Plaintiffs may have in the Cayman Proceeding or how a vote on a yet non-existent scheme under Cayman law will affect any existing shareholder claims, which are issues that will be decided by the Cayman Court. The Notice simply does not and *cannot* convey or dictate any such rights; it merely provides Class members with information about what may happen in the Cayman Proceeding.

For similar reasons, the Opt-Outs' contention that the Notice empowers Lead Plaintiffs to operate "with no effective oversight" is baseless. Winslow Br. at 12. If a scheme is approved by the Cayman Court, that scheme would only become effective in the United States upon Judge Glenn's issuance of a further Recognition Order. *See In re Ocean Rig UDW Inc.*, 570 B.R. 687, 707 (Bankr. S.D.N.Y. 2017) ("If the Cayman Court sanctions the Foreign Debtors' schemes of arrangement, upon application of the Foreign Representatives, the Court will proceed to determine whether each scheme of arrangement should be recognized and enforced by this Court."); *In re Rede Energia S.A.*, 515 B.R. 69, 92-93 (Bankr. S.D.N.Y. 2014) (granting relief to enforce reorganization plan approved in foreign bankruptcy proceeding). Moreover, any settlement with additional Defendants would require this Court's approval. *See* May 28 Tr. at 19:15-20:1.

Contrary to the Opt-Outs' hyperbole, there is nothing unique—or "collusive"—about a lead plaintiff in a securities class action negotiating, voting, and filing a proof of claim on behalf of a certified class in a bankruptcy proceeding. As Class Representatives, Lead Plaintiffs have well-established authority to do just that. *See In re MF Glob. Inc.*, 512 B.R. 757, 762 (Bankr. S.D.N.Y. 2014) (Glenn, J.) ("most courts agree that class proofs of claim are allowed in bankruptcy proceedings"); *In re Musicland Holding Corp.*, 632 B.R. 644, 654 (S.D.N.Y. 2007) (a "class

certified by district court may file class proof of claim") (citing *Trebol Motors Distrib. Corp. v. Bonilla (In re Trebol Motors Distrib. Corp.)*, 220 B.R. 500, 502 (1st Cir. B.A.P. 1998)). Indeed, the Certification Order expressly contemplated Class-wide voting. *See* ECF No. 245, at 4 (ordering that the Class will be decertified if "the Class declines to approve the Scheme at a class meeting convened in accordance with an order of the Grand Court of the Cayman Islands."). The Recognition Order also recognized and specifically carved out Lead Plaintiffs' authority to negotiate a settlement of the Class's claims against Luckin in connection with the Cayman Proceeding. *See* Recognition Order, at 5, ¶4(ii)(b) (permitting Lead Plaintiffs to "participate in settlement negotiations regarding a scheme of arrangement with respect to the Class . . . in the Cayman Proceeding or otherwise and take any actions regarding any proposed settlement to be implemented in an ADS Scheme in the Cayman Proceeding").[6]

The Opt-Outs plainly object to the Notice because of their perceived self-serving concern that it could affect their ability to extract a premium recovery over any Class-wide settlement at the expense of other Class members who have chosen not to opt out. *See* Winslow Br. at 13 ("Winslow and other Class Members who wish to opt out and pursue claims against solvent entities and individuals, such as the underwriters and officers, may have their claims extinguished in the Scheme by the agreement of Lead Plaintiffs"). This is entirely speculative, as there have been no discussions to date regarding potential settlements involving defendants other than Luckin.

---

[6] The Opt-Outs' reliance on *In re Nat'l Prescription Opiate Litigation*, 976 F.3d 664, 672-74 (6th Cir. 2020), is misplaced. Winslow Br. at 12, 16-17. That case, which has not been followed by any court in the Second Circuit, involved a class certified over defendants' objections. *See Opiate Litig.*, 976 F.3d at 669. Moreover, unlike the negotiation class at issue in *Opiate Litigation*, which involved a "speculative possibility" of a settlement, *id.* at 673, here Lead Plaintiffs are actively involved in negotiations with Luckin and the JPLs, and Luckin has already entered into a settlement with the SEC agreeing to pay a $180 million civil penalty, to be offset by any cash payment by Luckin to its security holders as part of the Scheme. *See SEC v. Luckin Coffee, Inc.*, Case No. 1:20-cv-10631-MKV (S.D.N.Y. Dec. 16, 2020), ECF No. 5-1. The JPLs and Luckin have clearly indicated their desire to promptly negotiate a settlement of the Class's claims.

Moreover, this objection—as well as the broader complaint about whether Cayman law might potentially render an opt-out right "illusory"—fails because they have nothing to do with the Notice. Again, the Notice does not enlarge or impair anyone's rights. Thus, it will not "extinguish" any claims, or impair any opt-out right. It simply provides information about potential future outcomes so that Class members can make an informed decision about what to do now. How any Movants' claims will be treated under a Scheme, along with other similar claims, ultimately is a question to be decided by a future decision of the Cayman Court, the Bankruptcy Court, or this Court. Complaints about that possibility are not truly complaints about the Notice; they are complaints about Cayman law and/or U.S. bankruptcy law, given that Luckin has filed for bankruptcy protection. Those questions are simply not being litigated in the Notice. And the Movants will have every opportunity to argue the point in the appropriate forum if and when the time comes. Rule 23 requires that Notice be issued now, and none of these speculative future complaints about what the Cayman Court may do should prevent that mandate from being fulfilled. Finally, this purported harm—i.e., potentially impairing the Opt-Outs' ability to extract a premium to the detriment of other Class members—is not a cognizable harm under Rule 24, and this Court should not endorse their efforts to gain a litigation advantage in a competing action by frustrating the ability to achieve a Class-wide settlement in this case.

The State Court Plaintiffs likewise fail to articulate a cognizable harm in arguing that the Notice impedes their ability to protect their interests. They rely solely on their arguments that they will not be adequately represented by Lead Plaintiffs, contending that their ability to protect their interests will be impaired by the Notice. State Intervenor Br. at 13. However, their arguments are entirely without merit as discussed below. *Infra* at 18-19.

16

**D.**     **The Movants Cannot Demonstrate that Their Interests Are Not Adequately Protected by Lead Plaintiffs**

Intervention is also inappropriate here because, to the extent the Movants choose to remain part of the Class (a clearly unlikely outcome), their interests are more than adequately represented by Lead Plaintiffs, who are presumed to adequately represent all Class members' interests in seeking to maximize a recovery for the Class. *See Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 98 (2d Cir. 1990) ("Where there is an identity of interest between a putative intervenor and a party, adequate representation is assured."); *Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*, 356 F. Supp. 3d 287, 297 (S.D.N.Y. 2018) ("a higher burden [for intervention] applies when the movant seeks the same relief as one of the parties to the action") (citing *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 180 (2d Cir. 2001) (requiring "a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective")). The Court has "already determined that Lead Plaintiff[s] ha[ve] a presumption of adequacy of representation" by appointing them as lead plaintiffs and subsequently as Class Representatives. *In re Cloudera, Inc. Sec. Litig.*, 2021 WL 1238301, at *4 (N.D. Cal. Apr. 2, 2021).

Once again, the Opt-Outs' claims of conflict and collusion are entirely speculative and legally and factually baseless. In the Opt-Outs' view, the mere *possibility* of third-party releases negotiated in a settlement with Luckin establishes Lead Plaintiffs' "adversity of interest and apparent collusion with the JPLs." Winslow Br. at 15 n.6. First, there is no settlement, and Movants have been invited to participate in the Cayman Proceeding and are members of the Ad Hoc Committee. Additionally, this empty speculation does not defeat the presumption of adequate representation or demonstrate the existence of a conflict between Lead Plaintiffs and other Class members, particularly given the numerous procedural safeguards that exist regarding approval of any settlement or Scheme (including any third-party releases). *See In re Vitamin C Antitrust Litig.*,

17

279 F.R.D. 90, 102 (E.D.N.Y. 2012) ("conflicts which are merely speculative . . . should be disregarded at the class certification stage"); *see also In re Am. Int'l Grp., Inc. Sec. Litig.*, 916 F. Supp. 2d 454, 469 (S.D.N.Y. 2013). Only a "fundamental" conflict between named parties and the class "go[ing] to the very heart of the litigation" can establish inadequate representation. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 231 (2d Cir. 2016). No evidence presented suggests that any conflict exists, let alone a "fundamental" conflict. To the contrary, Lead Plaintiffs are vigorously prosecuting this action to maximize recovery for all Class members and have no interest in abandoning valuable claims against any third party as part of any settlement with Luckin.

Likewise, the State Court Plaintiffs attempt to create the appearance of separate interests by noting that they brought claims arising from the Note Offering. State Intervenor Br. at 7. However, any purported claims based on the Note Offering are not part of this action, the Class, the Notice, or any of the negotiations at issue in the Cayman Proceeding concerning recoveries for shareholders. ECF Nos. 244, 258; State Intervenor Br. at 6. Intervention on that basis is inappropriate. *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 491–92 (S.D.N.Y. 1998) (potential intervenors cannot "inject collateral issues into an existing action").[7] Further, the fact that the State Court Plaintiffs brought an additional claim does not render Lead Plaintiffs inadequate. *See In re Ambac Fin. Grp., Inc. Derivative Litig.*, 257 F.R.D. 390, 394 (S.D.N.Y. 2009)

---

[7] The State Court Plaintiffs add a slew of unsubstantiated accusations to further create the illusion that Lead Plaintiffs are not adequate. State Intervenor Br. at 7. As demonstrated below, the Notice is not defective (*infra* at 38-45), and there is no evidence that Lead Plaintiffs are trying to "leverage" the State Court Plaintiff's claims, nor is it clear how Lead Plaintiffs could "leverage" those claims, as they are largely subsumed within the Class. Further, Lead Plaintiffs have not "agreed to a stay of litigation against third parties," and no such stay is currently in place. In addition, *Gomes v. Eventbrite, Inc.*, is inapposite, as that court justified the proposed intervention because it was "reasonable to await the outcome of the State Court's ruling" before issuing notice to the class; here, the state court proceedings against Luckin have already been stayed. 2020 WL 6381343, at *3 (N.D. Cal. Oct. 30, 2020).

("the mere fact that plaintiffs also assert . . . different claims from those asserted by Proposed Intervenors does not render the former inadequate to represent the interests of the latter").

### E.    The Movants Should Not Be Allowed to Permissively Intervene

Finally, for the reasons discussed above, the Movants also cannot establish a basis for permissive intervention. "Courts consider substantially the same factors for permissive intervention under Rule 24(b) as for intervention as of right under Rule 24(a)," and "the decision regarding whether to grant permissive intervention is wholly discretionary with the trial court." *Ambac Derivative Litig.*, 257 F.R.D. at 392; *see also id.* at 394 (denying permissive intervention where Movants "have not presented any arguments other than those . . . with respect to the purported inadequacy of the existing plaintiffs"); *In re Am. Int'l Grp. Inc. Derivative Litig.*, 2009 WL 5061745, at *3 (S.D.N.Y. Dec. 23, 2009) (same).

Further, allowing permissive intervention here would prejudice Lead Plaintiffs and the Class through undue delay. In exercising its discretion for permissive intervention, the Court must also "consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Citizens Against Casino Gambling in Erie Cnty. v. Hogen*, 417 F. App'x 49, 50 (2d Cir. 2011). Any delay in issuing the Notice will prejudice the Class's ability to recover from the $180 million penalty that Luckin has agreed to pay to the SEC. May 28 Tr. at 51:19-21. It would be inappropriate to inflict this delay based on the Movants' "sheer speculation." *Am. Int'l Grp.*, 916 F. Supp. 2d at 468.[8]

---

[8] The Opt-Outs rely on two cases in arguing that their intervention would not cause undue delay, but neither is relevant here. In *Cohen v. Republic of the Philippines*, the proposed intervenor's interest was "contrary to the interest of both existing parties," which is not the case here, where the Opt-Outs are bringing the same claims as Lead Plaintiffs and maintain they are currently part of the Class. 146 F.R.D. 90, 92 (S.D.N.Y. 1993). In *Buchet v. ITT Consumer Financial Corp.*, delay was not at issue because the court was simultaneously denying settlement approval and decertifying the class. 845 F. Supp. 684, 689 (D. Minn. 1994).

19

In arguing for permissive intervention, the State Court Plaintiffs further mischaracterize the Order issued by the Supreme Court of New York to create an illusory right to negotiate the settlement of the claims in the state action. State Intervenor Br. at 17. In truth, the Order specifies that the State Court Plaintiffs will be "responsible for coordinating all activities . . . of *this Court*," in reference to the New York State trial court. ECF No. 286-2 at 6. Nowhere does the Order purport to inject the State Court Plaintiffs into the proceedings in this action or the Cayman Proceeding, nor do the State Court Plaintiffs provide any support for the proposition that a state court can mandate inclusion of the State Court Plaintiffs in settlement negotiations for claims over which the state court does not even have jurisdiction, such as the claims Lead Plaintiffs bring under the Exchange Act (which are subject to exclusive federal jurisdiction).

### F.    Allowing the Movants to Object to the Notice Would Be Futile

Intervention should also be denied because any motion objecting to dissemination of the Notice would be futile for the reasons discussed herein. The Notice simply implements the Certification Order that this Court has entered in compliance with Rule 23, conveying no additional legal rights or powers. As discussed below, the Movants fail to identify any reason why the Notice should not be approved and disseminated to the Class, making their motions futile. *See Merrill Lynch & Co.*, 2008 WL 2594819, at *5 ("futility is a proper basis for denying a motion to intervene"); *United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 856 (2d Cir. 1998) (affirming denial of intervention as futile where relief sought by intervenors would delay or prevent settlement).

Accordingly, the Movants fail to fulfill any of the requirements for any intervention whether as of right under Rule 24(a)(2) or permissively under Rule 24(b).

20

## V.    THE MOVANTS' OBJECTIONS TO THE NOTICE ARE MERITLESS

The Movants contend that the Notice is deficient because it would allow Lead Plaintiffs "to cast creditor votes in a foreign proceeding," which they claim is "unprecedented," is beyond the Court's authority under Rule 23, and would "interfer[e] in the voting process" in the Cayman provisional liquidation proceeding. Winslow Supp. Br. at 5-6; *see also* State Opp. Br.at 8-9, 16; Ye Br. at 5. The Movants are wrong on all counts.

### A.    The Notice Properly Advises Class Members of the Pendency of the Cayman Proceeding and the *Possibility* That the Cayman Court Will Treat Votes Cast by Lead Plaintiffs as Votes on Behalf of Absent Class Members

Winslow contends that approving the Notice exceeds this Court's authority under Rule 23 because it would "abridge, enlarge or modify any substantive right." Winslow Supp. Br. at 8-9. Specifically, Winslow claims that the Notice "convey[s] voting proxies for use in a foreign reorganization" and would "interfere with the voting procedures of the Scheme" in the Cayman Islands. *Id.* at 7-8. Not so. The Notice simply and properly advises Class members of the pending Cayman Proceeding and explains that a vote cast by Lead Plaintiffs "*may* be deemed to be a vote cast by you." ECF No. 258-1 at ¶ 21(a); *see* Winslow Supp. Br. at 14. This disclosure plainly does not impact any rights of absent Class members, because how a vote on the yet-to-be-negotiated Scheme will be counted by the Cayman Court is a matter of Cayman Islands law. *See In re Bullmore*, 300 B.R. 719, 736 (Bankr. D. Neb. 2003) ("Whether the Cayman Islands law recognizes class action lawsuits or not . . . is a matter best left to the discretion of the Grand Court."). Indeed, Winslow concedes that the Cayman Court will have to determine whether Lead Plaintiffs may act on behalf of absent Class members in connection with a Scheme. Winslow Supp. Br. at 7 n.4; *see also* State Opp. Br. at 8-9, 16; May 28 Tr. at 24:15-17. That concession alone demonstrates the fallacy of Winslow's arguments.

21

Given the undisputed fact that the Cayman Court will ultimately determine whether Lead Plaintiffs can act on behalf of the Class in the Cayman Proceeding (and protect the Class's interests in accordance with their obligations under Rule 23), nothing in the Notice expands Lead Plaintiffs' authority under Rule 23. Rather, it simply discharges Lead Plaintiffs' obligation to give the Class notice of the *possibility* that Lead Plaintiffs will be deemed to represent absent Class members in the Cayman Proceeding. Facially, this is important information for Class members to consider in deciding whether to remain in the Class. For the same reason, the State Court Plaintiffs' suggestion that the Notice should "simply inform Class members of the Provisional Certification Order" and say nothing about the binding nature of a Scheme approved by the Cayman Court would make the Notice potentially misleading and deny Class members the information necessary to decide whether to opt out and represent their own interests in the Cayman Proceeding. *See* State Opp. Br. at 17; *In re Worldcom, Inc.*, 347 B.R. 123, 141 (Bankr. S.D.N.Y. 2006) (overruling objection to class notice that advised that "any class member who opts-out may be subject in the future to an individual expropriation action" because this was "simply a fair statement of possible consequences . . . and the Movants would likely be remiss if they did not include such information").

The Notice is not only appropriately informative but consistent with Rule 23. Winslow's unsupported suggestion that this Court is unable to approve a Notice merely "advis[ing] Class Members of their options" with respect to the Cayman Proceeding is baseless. Winslow Supp. Br. at 10. As explained below, Lead Plaintiffs, as Court-appointed representatives of the Class, have the authority to act on behalf of the Class in bankruptcy proceedings. Concomitantly, this Court possesses well-established authority under Rule 23 to *approve* a settlement negotiated in connection with a bankruptcy proceeding, foreign or domestic, and so is clearly empowered to

approve a notice merely advising Class members of such a possibility.[9] The Notice does not, as Movants suggest, preordain any outcome in the Cayman Proceeding or in the Bankruptcy Court. Rather, the Notice merely provides additional disclosures concerning what *may* happen in the Cayman Proceeding as settlement negotiations proceed. Providing additional, accurate information regarding Luckin's pending Cayman Proceeding—a proceeding that impacts Class members' rights whether they opt out or not—does not offend any Constitutional or Rule 23 safeguards. Indeed, if the limitations on the Notice suggested by Movants were to be implemented, Movants would no doubt argue in the Cayman Court and the Bankruptcy Court that the Notice was inadequate in an attempt to defeat any Scheme.

**B.    The Notice Does Not Grant Lead Plaintiffs Any Additional Authority as Court-Appointed Class Representatives Under Rule 23**

Both this Court's Certification Order and Judge Glenn's Recognition Order acknowledge and provide for Lead Plaintiffs' ability to represent the interests of the Class in the Cayman Proceeding. The Certification Order expressly contemplates Class-wide voting on the Scheme. *See* ECF No. 245 ¶4. The Recognition Order also carves out Lead Plaintiffs' authority to negotiate a settlement of the Class's claims against Luckin in the Cayman Proceeding from the Chapter 15 stay of proceedings against Luckin. *See* Recognition Order, at 5, ¶4.ii.b.

Far from representing an "unprecedented" departure from Rule 23, these Orders reflect clear authority recognizing class representatives' ability to represent a class's interests in parallel insolvency proceedings involving a defendant-debtor. Indeed, it is well established that Court appointed class representatives can act on behalf of absent class members in bankruptcy

---

[9] Ye effectively concedes that the Notice is sufficient as drafted, but argues that additional procedural steps must be mandated by this Court now in order for the overall settlement process contemplated by Lead Plaintiffs, Luckin, and the JPLs to "pass muster under Rule 23." Ye Br. at 5-6. However, Ye cites no legal authority requiring that a class settlement negotiated in connection with a foreign liquidation proceeding occur in the manner he prefers, and as demonstrated below, there is no such requirement.

proceedings, including by filing claims on behalf of class members and negotiating settlements through a bankruptcy proceeding. *Supra* at 14-15; *see also In re Chateaugay Corp.*, 104 B.R. 626, 634 (Bankr. S.D.N.Y. 1989) ("filing of a proof of claim on behalf of a class is permissible under the Bankruptcy Code"). In securities fraud cases in particular, there is also ample precedent for lead counsel's authority to represent a certified (or even putative) class in settlement negotiations with a defendant debtor and to cast votes or object on behalf of a class in connection with a restructuring or liquidation.

For example, in *In re Residential Capital, LLC*, 2013 WL 12161584, at *59, *93 (Bankr. S.D.N.Y. Dec. 11, 2013), Judge Glenn approved a Chapter 11 plan that included a settlement of securities fraud claims asserted by lead plaintiffs in *New Jersey Carpenters Health Fund v. Residential Capital, LLC*, Civ. No. 08–8781(HB) (S.D.N.Y. Oct. 14, 2008), who had filed class proofs of claims in the bankruptcy court and voted to accept the plan. *See id.* at *74, *81, *93; *see also* Ex. A (stipulation of settlement in *N.J. Carpenters Health Fund v. Residential Cap., LLC*, Civ. No. 08-cv-8781 (S.D.N.Y. June 14, 2013), ECF No. 226 (providing that "*Lead Plaintiff, on behalf of the Settlement Class Members, shall . . . vote to accept the ResCap Chapter 11 Plan*"). The Chapter 11 plan provided that the $100 million settlement fund would be distributed pursuant to a plan of allocation to be approved by and administered in the district court presiding over the *New Jersey Carpenters* action. *See Residential Cap.*, 2013 WL 12161584, at *58, *122 n.6 ("the effectiveness of the NJ Carpenters Settlement and the related NJ Carpenters Claims Distribution is subject to District Court approval"). *See also In re Flight Transp. Corp. Sec. Litig.*, 730 F.2d 1128, 1131, 1139 (8th Cir. 1984) (approving settlement negotiated between putative class representatives and other interested parties regarding claims to escrow fund established in connection with insolvent entity's bankruptcy).

24

The fact that the bankruptcy proceedings at issue are a foreign provisional liquidation proceeding and a Chapter 15 proceeding under the Bankruptcy Code is also unremarkable. Other courts in this District have recognized and enforced settlements entered pursuant to foreign insolvency proceedings in which U.S. class representatives represented a class's interests, including in connection with settlements reached before class certification. *In re Sino-Forest Corp.*, 501 B.R. 655 (Bankr. S.D.N.Y. 2013), is instructive. There, the bankruptcy court recognized and enforced a Canadian court's order approving a settlement of class action claims asserted by U.S. and Canadian plaintiffs against Sino-Forest Corp.'s ("SFC") external auditor, Ernst & Young ("E&Y"). The settlement, which included a global release in favor of E&Y, was reached in connection with SFC's reorganization under Canadian law, which the bankruptcy court had previously recognized as a foreign main proceeding. *See id.* at 657. In *Sino-Forest*, "the plaintiffs in the U.S. Class Action filed a claim in the Canadian Proceeding, and Canadian counsel for the U.S. plaintiffs appeared on their behalf at the respective hearings on the Plan Sanction Order and the Settlement Order." *Id.* at 658. Significantly, the U.S. lead plaintiffs, who were putative class representatives, negotiated and presented the E&Y settlement to both the bankruptcy court and the district court even though the class in that case had not been certified. *See* Ex. B (joint stipulation to dismiss E&Y in *Leapard v. Chan*, Case No. 1:12-cv-01726 (S.D.N.Y. Dec. 17, 2013), ECF No. 44 at 3-4). Moreover, in lieu of class notice, the lead plaintiffs only provided notice of the recognition hearing and of class members' ability to object to the recognition order. *Id.* at 3. Following the recognition order, the U.S. lead plaintiffs and E&Y stipulated to E&Y's dismissal in the U.S. putative class action, and the settlement itself was administered through the Canadian court in connection with the Canadian securities class action. *See id.* at 4-5.

25

As the foregoing cases demonstrate, there is nothing "unprecedented" or even novel in the Notice. Consistent with Rule 23, it simply advises Class members of the potential consequences of remaining a part of the Class that this Court has certified, which include the benefit of the carve-out from the automatic stay of litigation against Luckin negotiated by Lead Plaintiffs and approved by the Bankruptcy Court. Accordingly, Winslow's argument that the Court's approval of the Notice would constitute "judicial inventiveness," Winslow Supp. Br. at 8, is without merit.

### C.    Opt-Out Classes Are Standard Under Rule 23, and the Notice Does Not Constitute a Proxy Solicitation

Movants next challenge the Notice as an "untethered discretionary proxy" that would grant Lead Plaintiffs the unfettered ability to approve any Scheme (including a Scheme that involves the release of non-debtor claims), to the detriment of absent Class members and other creditors. Winslow Supp. Br. at 11; *see also* State Opp. Br. at 1-2, 8-9, 16; Ye Br. at 5, 12-13. These arguments again are purely speculative in the absence of a Scheme, overlook on-point authority regarding the distinction between opt-out classes under Rule 23 and proxy solicitations in other contexts, and likewise ignore the numerous procedural safeguards in this Court, the Bankruptcy Court, and the Cayman Court that ensure equitable treatment of all creditors, including opt-outs and objectors, consistent with relevant statutory authority.

Winslow acknowledges that proxy voting is "a common process in . . . bankruptcy proceedings," but contends that the representation of absent Class members by Lead Plaintiffs in the Cayman Proceeding—which is contemplated by the Certification Order and the Recognition Order and is properly reflected in the Notice—is improper because it does not follow the exact procedure employed for proxy voting under the federal securities laws and state laws regulating corporate governance. Winslow Supp. Br. at 12-13. However, as the cases cited by Winslow expressly recognize, the scope of representation in classes certified under Rule 23 is much broader

26

than the agency relationship established for purposes of proxy voting in other contexts, including votes to approve reorganization plans in bankruptcy proceedings.

As the court in *In re Chassix Holdings, Inc.*, 533 B.R. 64, 78 (Bankr. S.D.N.Y 2015) (cited in Winslow Supp. Br. at 11-12, 14), explained, "[t]here are circumstances in which public policy justifies a rule under which people are bound by a proposed action unless they take affirmative steps to note their disagreement. Class actions pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure are a well-known example of a situation in which parties may be bound by their own inaction and in which parties will be deemed to be part of a class in the absence of an affirmative 'opt out' vote." Winslow's attempt to analogize the Notice to a proxy solicitation to approve a merger or other corporate action ignores this distinction. Winslow Supp. Br. at 11-14.

The Second Circuit has also approved the use of mandatory, non-opt out classes in cases involving insolvent defendants. *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 292 (2d Cir. 1992) (affirming certification of mandatory, non-opt-out class of securities fraud claimants where debtor's assets were limited and protracted litigation of individual claims would diminish recovery by all class-members); *In re Joint E. & S. Dist. Asbestos Litig.*, 982 F.2d 721, 738 (2d Cir. 1992) ("a mandatory non-opt-out (b)(1)(B) class action may be used to accomplish some readjustment of creditors' rights against an insolvent entity, without observing the protections of bankruptcy law"), *opinion modified*, 993 F.2d 7 (2d Cir. 1993).

Given the broad authority under Rule 23 for Lead Plaintiffs to represent absent Class members' interests, and the "explicit and well-advertised" disclosure in the Notice concerning the potential treatment of Class votes in the Cayman Proceeding, Movants' arguments that the Notice amounts to an improper proxy solicitation are meritless. *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 260 (Bankr. S.D.N.Y. 2007); *see also Chassix*, 533 B.R. at 78. Beyond this, the whole point

27

of the Notice is to give Class members the chance to opt-out in the event that they want to cast their own individual vote.

Additionally, as the above cases make clear, neither Rule 23 nor the Constitution guarantees opt-outs the right to do with their claims "what [they] will," as Winslow argues. May 28 Tr. at 31:21-23. The fact that the ability of opt-outs to continue pursuing their own individual claims will be impacted if a Scheme is approved in the Cayman Proceeding and recognized in Luckin's Chapter 15 proceeding is simply a function of Luckin's insolvency and the relevant insolvency laws in the Cayman Islands and bankruptcy laws in the United States, and is a commonplace occurrence in cases involving debtor-defendants. *See* May 28 Tr. at 35:22-24 ("Mr. Martin: [. . .] [I]t's not unusual in a bankruptcy case for a class of creditors to be bound by a resolution of a corporate debtor under Chapter 11."). Creditors in Chapter 11 restructurings are consistently faced with the reality that they may simply be outvoted and forced to accept the same treatment that the requisite number of creditors in their class voted to approve. So long as creditors are afforded procedural safeguards ensuring the opportunity to present arguments to the court, this is exactly how the process of compromising creditor claims is intended to function. Again, arguments regarding the treatment of an opt-out claim under a yet to be negotiated Scheme are not really complaints about the Notice; they are gripes about the impact of Luckin's insolvency proceeding, Cayman law, and U.S. bankruptcy law, and they provide no reason to delay the Notice as presented to the Court.

Contrary to Winslow's arguments that the Notice would remove typical safeguards associated with creditor votes, Winslow Supp. Br. at 14-15, there are numerous protections in place to ensure the overall fairness of the Scheme and its treatment of creditors, which go well beyond the minimum threshold. Winslow ignores both the fact that Luckin is the subject of two insolvency

proceedings and the statutory regimes that govern those proceedings. Here, just like any other creditors, opt-outs such as Winslow will have the right to participate directly in the Cayman Proceeding, work towards negotiating a consensual Scheme, vote on a scheme once one is put forth, and advance arguments for or against approval of the Scheme in the Cayman Court. When deciding whether to approve a Scheme that has been approved by creditors, the Cayman Court will consider arguments by creditors—such as Winslow—and make any necessary findings concerning the fairness of the process. In the event the Cayman Court ultimately approves the Scheme, Winslow—again, just like any other creditor—will also have the opportunity to participate in proceedings in the Bankruptcy Court when the JPLs seek recognition and enforcement of that Scheme in the United States.

Numerous additional layers of protection are also in place to protect the rights of creditors. *First*, as explained by the JPLs, the Cayman Companies Act requires that any Scheme be approved by a majority of creditors actually attending and voting and by creditors representing 75% of claims by value. ECF No. 276 at 2, 5. This is a higher threshold than even required under U.S. bankruptcy law. *See* 11 U.S.C. § 1126(c). *Second*, the JPLs owe a fiduciary obligation to all creditors and have expressed their willingness to work with all creditors in furtherance of the Scheme, despite the Movants' obstructionism. *See* ECF No. 244 at 3. *Third*, Winslow and the State Court Plaintiffs are both currently participating in the Ad Hoc Committee, which was formed for the specific purpose of negotiating with the JPLs, and the JPLs have indicated that they intend to negotiate with all investors who have filed cases and choose to participate in the Ad Hoc Committee. *Fourth*, any Scheme that is approved by the requisite majority of creditors both in number (over 50%) and value (over 75%) will be presented to the Cayman Court, which will evaluate the Scheme's fairness and any objections by dissenting creditors. *See* ECF No. 276 at 5.

29

*Fifth*, the U.S. Bankruptcy Court will evaluate the Scheme for fundamental fairness consistent with principles of comity before granting its recognition and enforcement. *See Sino-Forest*, 501 B.R. at 665-66; *Ocean Rig*, 570 B.R. at 707. In so doing, the Bankruptcy Court must consider, *inter alia*, whether the "interests of the creditors and other interested entities . . . are sufficiently protected," whether creditors of the same class are treated equally in the distribution of assets, and whether there has been any preferential or fraudulent disposition of property of the debtor. 11 U.S.C. §§ 1522(a), 1507(b)(1)-(4); *Sino-Forest*, 501 B.R. at 662-63.[10] Finally, Lead Plaintiffs have committed to presenting any settlements with parties to this action other than Luckin to this Court for approval under Rule 23 as required. May 28 Tr. at 19:15-20:13.

In approving a mandatory class settlement that had also been approved in parallel bankruptcy proceedings, another district court held that given the numerous procedural and substantive safeguards in place, "*Amchem*'s demand for 'undiluted, even heightened, attention in the settlement context,' has been amply met." *In re Found. for New Era Philanthropy Litig.*, 175 F.R.D. 202, 207 (E.D. Pa. 1997) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (finding "the rights of class members have now been doubly scrutinized under the protections of Rule 23 and of the Bankruptcy Code"). The same is true here.

---

[10] Far from a rubber stamp, the Bankruptcy Court is required by statute and case law to conduct a diligent, independent analysis of the foreign scheme and the process leading to it, taking into account the interests of all parties—including Movants—to decide whether granting recognition of the scheme and other related additional relief is warranted under the circumstances. Courts have refused to enforce provisions of plans where the fundamental fairness of the underlying bankruptcy proceeding was not established. *See, e.g.*, *In re PT Bakrie Telecom Tbk*, 2021 WL 1439953, at *20 (Bankr. S.D.N.Y. Apr. 15, 2021) (refusing to enforce third-party releases negotiated in Indonesian restructuring where foreign representative failed to present "at least a rudimentary record in the foreign proceeding as to the basis for such releases and procedural fairness of the underlying process").

**D.    The Movants' Speculation Concerning Potential Outcomes in the Cayman Islands Fails to Raise Any Colorable Deficiency in the Notice**

**1.    The Potential for Non-Debtor Releases Does Not Render the Notice Deficient**

Winslow next suggests that the Cayman Court's potential approval of a Scheme settling claims against Luckin is "analogous" to "a U.S. Bankruptcy Court approving a reorganization plan releasing non-debtor third parties," and therefore the absence of "affirmative, knowing consent" makes the Notice deficient. Winslow Supp. Br. at 14. Winslow is wrong. Likewise, the State Court Plaintiffs' objection to the Notice based on the possibility that a settlement achieved through a Cayman Scheme *might* include non-debtor defendants is baseless. *See* State Opp. Br. at 1, 8.

As an initial matter, there is no settlement or Scheme and the Notice only advises Class members about their rights with respect to the Certification Order entered by this Court. ECF No. 258-1 at 1; *id.* at 4, ¶ 18 ("The Class has been provisionally certified for the purpose of effectuating a potential settlement with Luckin in this Action . . . "). While the Notice properly advises Class members of the *possibility* of additional releases, *id.* at 6 ¶ 21.a, as Class Counsel explained at the May 28 Hearing, to the extent Lead Plaintiffs enter into a settlement with Defendants other than Luckin, that settlement would be presented to this Court for approval and certification of that settlement class and class members would then be provide another opportunity to opt out. *See* May 28 Tr. at 18:22-19:1 ("[A]s class counsel, we may settle with more parties. . . . [That would have a second class notice go out, because now the class would see different parties in the [Notice].").

Even without a second opt-out opportunity for additional non-debtor settlements, the Notice as drafted would still be appropriate. Class representatives have broad discretion in negotiating releases of claims in connection with settlements, provided the settlements are fair and reasonable. *See, e.g.*, *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("a class-action settlement can release a claim based on factual predicates similar to those

underlying the class's claims even though the claim was not presented and might not have been presentable in the class action").

Moreover, contrary to Winslow's arguments, the "affirmative, knowing consent" of creditors would not necessarily be a pre-requisite to the approval of a reorganization plan that includes third-party releases if Luckin were a Chapter 11 debtor (which, in any event, it is not). "Circuit courts in the Second, Fourth, Sixth, Seventh and Eleventh Circuits have held that third-party releases may be given consensually and, in limited circumstances, may be approved without consent." *In re Avanti Commc'ns Grp. plc*, 582 B.R. 603, 606 (Bankr. S.D.N.Y. 2018).

Numerous decisions in this District have also recognized and enforced settlements entered pursuant to foreign proceedings that resolve third-party claims, even where no opt-out opportunity was provided. For example, the E&Y settlement in *Sino-Forest* included non-debtor third-party releases, which were approved by the Canadian court and recognized and enforced by the bankruptcy court, despite the fact that there was no opt-out provided for creditors with claims against these third parties. 501 B.R. at 660, 665-66 (finding that approval of the third-party releases was proper under comity principles given that Canadian proceedings satisfied U.S. "fundamental standards of fairness"); *see also In re Metcalfe & Mansfield Alt. Invs.*, 421 B.R. 685, 700 (Bankr. S.D.N.Y. 2010) (recognizing and enforcing broad non-debtor third-party releases and injunctions on future proceedings negotiated as part of a restructuring plan approved by a Canadian court). As such cases make clear, where the non-debtor releases stem from a foreign bankruptcy proceeding, "[t]he relief granted in the foreign proceeding and the relief available in a U.S. proceeding need not be identical." *Id.* at 697. As long as the procedures applied in the foreign proceeding met "fundamental standards of fairness," a U.S. bankruptcy court "is not required to make an independent determination about the propriety of individual acts of a foreign court." *Id.*; *see PT*

32

*Bakrie Telecom*, 2021 WL 1439953, at \*20 ("the releases in a foreign proceeding subject to Chapter 15 need not be identical to those that a U.S. court would endorse in a Chapter 11 case") (collecting cases).[11] Ultimately, these arguments are preemptively attacking a Scheme that does not even exist yet, and are arguments for the Cayman Court and the Bankruptcy Court to consider in connection with Cayman approval and U.S. recognition and enforcement of a Scheme once one exists, if ever. They do not justify withholding a Notice that Rule 23 mandates be issued.

**2.    Winslow's Vague Ascertainability Challenge Fails to Identify Any Deficiency in the Notice**

Winslow argues that the Notice is deficient because the exact composition of the Class will not be precisely known following the opt-out deadline. Winslow Supp. Br. at 15. However, such a requirement has no basis in Rule 23, and moreover has no bearing on the adequacy of the Notice. All that is required to support certification is that the Class be "sufficiently ascertainable" such that its "membership is based on objective, definite criteria—namely the dates of shareholders' acquisition of [Luckin's ADSs]." *In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91, 104 (S.D.N.Y. 2016); *cf. La. Mun. Police Emps. Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, 2017 WL 3149424, at \*4 (D. Vt. July 21, 2017) (class ascertainable where "records of shareholder acquisitions of Green Mountain common stock will make it readily feasible to ascertain the members of the class"). Lead Plaintiffs and Luckin agree that the Class is ascertainable, and the Court likewise found this to be true in provisionally certifying the Class. ECF No. 245 at 2, ¶3.b.

---

[11] Winslow's reliance on *In re SunEdison, Inc.*, 576 B.R. 453, 460-61 (Bankr. S.D.N.Y. 2017) is misplaced. Winslow Supp. Br. At 14. *SunEdison* involved a U.S. bankruptcy proceeding, and the debtors sought approval of third-party releases on the theory that the disclosure statement warned that a failure to object to the plan would be deemed a consent to such releases. *Id.* Here, if and when the treatment of third-party releases becomes relevant as part of a Scheme, that would be a matter of Cayman law, which would then be evaluated under standards of fundamental fairness by the Bankruptcy Court in deciding whether to recognize and enforce that Scheme. Moreover, Lead Plaintiffs do not contend that a failure to opt out of the Class constitutes an automatic acceptance of any settlement with parties other than Luckin.

Winslow nonetheless complains that to estimate the value of creditor claims represented by the Class, Lead Plaintiffs will have to rely on "commonly use[d] models to estimate the number of 'damaged' shares and aggregate damages." Winslow Supp. Br. at 16. But this does not identify any deficiency in the Notice, which simply implements the Certification Order. Once again, the treatment of votes cast by Lead Plaintiffs in the Cayman Proceeding is a matter for the Cayman Court. In any event, such issues have been no impediment in bankruptcy cases approving settlements negotiated by lead plaintiffs in foreign insolvency proceedings. *See Sino-Forest*, 501 B.R. at 658 ("the plaintiffs in the U.S. Class Action filed a claim in the Canadian Proceeding, and Canadian counsel for the U.S. plaintiffs appeared on their behalf at the respective hearings on the Plan Sanction Order and the Settlement Order"); *Residential Cap.*, 2013 WL 12161584, at *74 (settlement fund negotiated in connection with Chapter 11 reorganization distributed via plan of allocation submitted to district court).

### 3. Winslow's Unsupported Speculation Regarding Risks Posed by Lead Plaintiffs' Representation of the Class Is Baseless

Having failed to identify any legal deficiency, Winslow offers its unsupported opinion that approval of the Notice constitutes "poor judicial policy from a risk/benefit perspective." Winslow Supp. Br. at 17. Winslow's opinions are irrelevant to whether the Notice comports with Rule 23, and Winslow's criticisms speak volumes about its true intentions in seeking to frustrate this Court's implementation of the Certification Order. Winslow speculates that there is a risk that any Scheme approved by Lead Plaintiffs in their capacity as Class Representatives risks rejection by the Cayman Court should that court determine that Class-wide voting is impermissible under Cayman law. *See id.* at 18. However, there is no reason such an outcome should result in a failure of the Scheme, provided it otherwise meets the requisite creditor majorities. As noted above, Winslow and the other Movants are members of the Ad Hoc Committee, and the JPLs have

repeatedly expressed their intention to negotiate a Scheme with all interested parties. In truth, Winslow's speculation is wishful thinking, as they are clearly intent on depriving Class members of the only meaningful opportunity to resolve their claims in the hopes of extracting a more favorable settlement for Winslow. Far from being "crammed down," what Winslow is actually concerned about are the consequences of being outvoted in an insolvency/bankruptcy context, an unremarkable outcome.

Contrary to Winslow's speculation, the fact that Luckin and the JPLs support Lead Plaintiffs' representation of absent Class members does not reflect their economic self-interest. Winslow Supp. Br. at 18. Rather, it reflects the inherently unmanageable process of trying to achieve consensus among all ADS purchaser claimants. This is particularly true as to the JPLs, whose mandate is to achieve a restructuring that serves the interests of all stakeholders. *See* ECF No. 276 at 2 ("[T]he JPLs are appointed as officers of the Grand Court and are independent, court-supervised fiduciaries, akin to a Chapter 11 Trustee.").

Winslow also cites the bondholder scheme as evidence that a successful Scheme can easily be negotiated without the benefit of Lead Plaintiffs' representation of absent Class members. Winslow Supp. Br. at 18. This is a red herring. Winslow declines to mention that the bondholder ad hoc group controlled over 80% of the issued convertible bonds, while the parties to the recent restructuring support agreement hold or control approximately 59% in aggregate principal amount of the bonds. *See* ECF No. 292-6 (First JPL Report) at 7.1.4; Ex. C (Luckin Coffee Inc., Form 6-K (Mar. 16, 2021)). By comparison, the losses of the individual Movant members of the Ad Hoc Committee represent a small fraction of total aggregate Class-wide damages. Winslow would prefer that no one represent the interests of these victims of the fraud in the Cayman Proceeding so that Winslow could extract benefits for itself relative to the Class. There can no other motivation

35

for its objection. Thus, Lead Plaintiffs' representation of absent Class members in negotiations that include the other members of the Ad Hoc Committee is by far the most effective means of achieving a successful settlement of all ADS claims and protecting the Class's interests.

**E.    Ye's Arguments Concerning the Composition of the Class Fail to Identify any Deficiency in the Notice**

Ye acknowledges that he is an "opt-out direct litigant[]" who intends to opt out of the Class and pursue his own individual action, Ye Br. at 15, and does not even attempt to articulate a basis for his standing to object on behalf of unidentified absent Class members concerning the adequacy of the Notice. Even if the Court were to consider Ye's arguments, they only raise speculative issues concerning the presence of Chinese investors in the Class that are irrelevant. Ye speculates that there are a "large" but "unknown" number of potential Class members in China and concludes that the composition of the Class renders the Notice deficient. Ye Br. at 6. Even if his speculation was true, this would not be an impediment to issuing the Notice as it simply seeks to implement the Certification Order, which found the Class as defined met all the requirements for provisional certification under Rule 23. ECF No. 245.

Moreover, Ye fails to establish that any *res judicata* issues are present, as he does not cite a shred of evidence to support his claim that "enforceability of the class judgment will be unlikely" in China. Ye Br. at 6; *see Stone v. Agnico-Eagle Mines Ltd.*, 280 F.R.D. 142, 146 (S.D.N.Y. 2012) (rejecting *res judicata* argument of lead plaintiff movant where movant cited "a case from 1895 and two law review articles" in arguing that Sweden would likely not enforce a U.S. class action judgment); *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 105 (S.D.N.Y. 2007) (relying on competing expert affidavits in finding that German and Austrian investors had to be excluded from the proposed class). Ye's arguments regarding Luckin's corporate structure and citation to risk disclosures in Luckin's registration statement, (Ye Br. at 7-8), fall far short of establishing a

36

probability that a Chinese court would not recognize a class action judgment. *Vivendi*, 242 F.R.D. at 95.[12]

Ye's arguments concerning the location of Luckin's assets are even more misguided. Ye Br. at 9. As Judge Glenn found, "the location of [Luckin's] center of main interests" is in the Cayman Islands. Recognition Order at 3. This fact was undisputed before Judge Glenn, and any challenge to that determination has been waived. Contrary to Ye's suggestion, the fact that a settlement impacts "property that is outside of the territorial jurisdiction of the United States" does not render it invalid. Ye Br. at 9. Indeed, there is ample precedent for U.S. bankruptcy courts recognizing and enforcing Cayman Island schemes of arrangement involving property outside the U.S. *See Ocean Rig*, 570 B.R. at 694 (enforcing scheme involving operator of offshore drilling rigs located throughout the world, including Norway, Brazil, and Angola).

Finally, Ye's undeveloped argument that the pendency of actions against Luckin in China and Canada mean that the Court "should hesitate before certifying a class" should also be rejected. Ye Br. at 2, 9. It is unclear why Ye contends this poses an issue for class certification—which is no longer in dispute—as courts regularly certify U.S. class actions despite there being parallel foreign suits. *See In re IMAX Sec. Litig.*, 272 F.R.D. 138, 159 (S.D.N.Y. 2010) (certifying class despite parallel class action in Canada).

### F.    Ye's Argument that Class Members Must be Given a Second Opt-Out Opportunity in the Event a Scheme is Approved Should be Rejected

Ye argues, without any authority, that in order for the Notice to comport with Rule 23, Lead Plaintiffs must present "a negotiated proposed Scheme to this and the bankruptcy court for

---

[12] Ye's reliance on Judge Liman's order appointing Lead Plaintiffs is misplaced, Ye Br. at 6, as Judge Liman *rejected* such arguments in appointing AP7 as a Lead Plaintiff. *See Cohen v. Luckin Coffee Inc.*, 2020 WL 3127808, at *6 (S.D.N.Y. June 12, 2020) (noting that "'*res judicata* concerns are 'explicitly rejected when the foreign lead plaintiff movants are suing as a result of purchases made on a domestic securities exchange'" (citing *Stone*, 280 F.R.D. at 146).

notice and an opportunity to opt-out under Rule 23(e) prior to any voting on such proposed Scheme in the Cayman proceeding." Ye Br. at 5. "[T]he Second Circuit has explicitly rejected the contention that Class Members must be given a second opportunity to opt out after the terms of a settlement are announced." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 342 (S.D.N.Y. 2005) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005)). This is also true with respect to settlements that include third-party releases. *Id.* ("[t]here is obviously no legal requirement that a notice of the pendency of a class action include a description of a release that may someday be negotiated to resolve claims brought in the class action.").

The fact that the settlement at issue here will be negotiated in connection with the Cayman Proceeding does not alter the analysis. *See supra* at 27-30.

## VI.   THE MOVANTS' SELF-SERVING EDITS TO THE NOTICE SHOULD BE REJECTED

Each of the Movants (all of whom are plaintiffs in separate actions pending against Luckin) requests that this Court endorse edits to the Notice that do nothing more than reflect the Movants' efforts to promote their own self-interest rather than the interests of the Class. This is highly inappropriate and contrary to the intent of Rule 23, which requires that the Court direct to Class members the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see also Glob. Crossing*, 225 F.R.D. 436; *In re Merrill Lynch Tyco Rsch. Sec. Litig.,* 249 F.R.D. 124. 132 (S.D.N.Y. 2008) ("While there are no rigid rules to determine the adequacy of notice in a class action, the standard is generally that of reasonableness."). It would be unprecedented and contrary to Rule 23 for the Court to stitch together competing edits from various factions, all of whom are adverse to the Class in one way or another. The changes the Movants suggest are misleading, confusing, detrimental to the interests of the Class, and must be rejected.

The Opt-Outs primarily demand that the Notice be changed to delete language relating to the Cayman Proceeding and the voting procedures that may be implemented there. These changes are inappropriate because they seek to eliminate information necessary to adequately inform potential Class members of their rights and what "may" occur in the context of the Scheme. For example, the Opt-Outs seek to remove the following language: "If you remain a member of the Class, the Class Representatives and Class Counsel will have the power to cast votes on behalf of the Class in relation to the Scheme which may be deemed to be a vote cast by you as a member of the Class." ECF No. 289-5 at 6; May 28 Tr. at 24:6-24:10. Through this language, Class members are clearly being notified of what may occur in the Cayman Proceeding for purposes of voting on a Scheme if they choose to remain a member of the Class. *Id.* at 16:15-22, 17:5-18, 25:13-21. 37:6-20. It is illogical to withhold that information from Class members who are entitled to full and fair disclosures about this action and the Cayman Proceeding. As explained previously, the Notice does not confer substantive rights on Lead Plaintiffs or determine what rights they may have in the Cayman Proceeding. Rather, the Notice provides necessary information about how voting may be calculated with respect to a Scheme in the Cayman Proceeding, to be determined by the JPLs and the Cayman Court.

Similarly, all Movants seek to remove the Notice's statement that if a settlement is reached, the claims released "may include claims asserted against all Defendants and certain related parties" (i.e., not just Luckin). *See* ECF Nos. 289-5 at 6; 286-1 at 6-7. The Movants argue that this language exceeds the Certification Order's scope. But the Notice does not preordain the particulars of any future settlement. To the contrary, and as required by Rule 23, it provides Class members the best notice practicable *under the circumstances*, where it is unknown what claims *may* be impacted by a settlement.

39

Indeed, a class action notice regularly includes disclosures about *potential* third-party releases. Here, that language is similarly included to be accurate and informative about what *could* happen to the Class's claims in the Cayman Proceeding in order to give all Class members the information necessary to make an informed decision as to whether to exclude themselves from the Class. As written, the disputed language is reasonable and does not confer any additional rights on Lead Plaintiffs. In fact, omitting the possible scenario that a release of non-debtor parties could occur in a potential settlement would be improper.

The Opt-Outs further seek to delete language from the Notice informing Class members that Lead Plaintiffs and Class Counsel will represent their interests in the Scheme, including at hearings and creditor meetings. ECF No. 289-5 at 6. It is not clear why the Opt-Outs propose to delete this language, because Lead Plaintiffs and Class Counsel indisputably have the authority to negotiate a settlement for the Class and in so doing, may appear at hearings or creditor meetings on its behalf. In fact, the Ad Hoc Committee has already been formed in the Cayman Proceeding to receive information about Luckin's restructuring and negotiate with the JPLs. Lead Plaintiffs, through Class Counsel, represent the Class in that capacity. There is no reason not to notify the Class of this fact.

Finally, the Opt-Outs seek to add to the Notice that any "proposed Settlement releasing and/or dismissing any of the Class's claims must be reviewed and approved by the Court following notice to Class Members and a hearing." *Id.* This language is unnecessary and speculative. As Class Counsel stated at the hearing, it is not yet clear how approval of any settlement reached in the context of a scheme will be secured. The Recognition Order recognizes this uncertainty by empowering Lead Plaintiffs "to take any steps necessary to secure approval of any settlement to be implemented in the ADS Scheme *in the appropriate court*." Recognition Order, at 5, ¶4.ii.b.

40

Moreover, the particulars of any settlement reached through the Scheme process, including who may be parties to that settlement, are as yet unknown, and such information may inform whether this Court will be asked to approve a future settlement. Thus, it is premature and unnecessary to include the Opt-Outs' proposed language in the Notice.

The State Court Plaintiffs' proposed edits, which mostly reflect their efforts to inappropriately insert themselves into this action, should also be rejected in full. While currently absent Class members, the State Court Plaintiffs filed their own state court action after failing to secure lead plaintiff status in this action. They purport to represent an uncertified class (that overlaps with the certified Class here) in the state court case, which has been stayed by the Bankruptcy Court. Their edits to the Notice are unreasonable and would only confuse Class members while providing no valuable information about whether to opt out of the Class here.

For example, the State Court Plaintiffs propose changes to the Notice describing their state court action, and even ask to include their counsel's contact information in the Notice. *See, e.g.*, ECF No. 286-1 at 3, 10. There can only be one, self-serving reason for this—to solicit Class members. This should not be permitted. The Notice as drafted does precisely what it is supposed to do, which is to inform Class members of the claims asserted in this case and to provide information about the ability to opt out. It is not intended to be a mechanism to further the interests of investors and their counsel who chose to file a separate action in state court after being denied lead plaintiff status here. The Notice as drafted protects the interest of the Class members, who are represented by Class Counsel, the only counsel authorized to negotiate a settlement for the certified Class by both this Court and the Bankruptcy Court.[13]

---

[13] The State Court Plaintiffs cite *Wal-Mart*, 396 F.3d at 96, where the Second Circuit stated that it is "encourage[d]" but not required for notice of a class-action settlement to mention other pending actions alleging the same claims. State Opp. Br. at 17-18; *Wal-Mart,* 396 F.3d at 116 n.22. Here, the Notice is not of a proposed settlement but only of certification of the Class to try to achieve a settlement, so there is no valid reason for mentioning the State Court

41

For similar reasons, the State Court Plaintiffs' suggested inclusion of language from a stipulation in the state court action is not only inappropriate but misleading. That stipulation provides no authority for the State Court Plaintiffs or their counsel to inject themselves into this action or negotiate on behalf of the certified Class here. Indeed, the state court judge has no jurisdiction over such discussions at this juncture, given that the state court case against Luckin has been stayed by the Bankruptcy Court. Effectively, the State Court Plaintiffs are seeking to accomplish something here that they lack authority to do in state court. In any event, the State Court Plaintiffs have a seat on the Ad Hoc Committee to represent their interests in the Scheme process with the JPLs. There is no need—and it would be misleading, and prejudicial to the Class's interests—to include the State Court Plaintiffs' self-serving disclosures concerning a non-certified, stayed state court action that covers only a subset of the claims asserted here.

Similarly, referring to this action as the "Federal Class" Action would be confusing. *See generally* ECF No. 286-1. Only the Class here has been certified to negotiate a settlement in the Scheme process, and there is no need to suggest that there are several relevant class actions.

The State Court Plaintiffs also propose to include language in the Notice regarding the Scheme process and the role of Lead Plaintiffs and Class Counsel in the Cayman Proceeding. *See, e.g.*, *id.* at 5-6. But the State Court Plaintiffs have no authority to dictate what is included in the Notice on these matters or what responsibilities Lead Plaintiffs and Class Counsel have in negotiating and voting on any settlement in the Cayman Proceeding. The State Court Plaintiffs

---

Plaintiffs' uncertified action in the Notice. Likewise, the State Court Plaintiffs' citation of *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601 (W.D.N.Y. 2011), State Opp. Br. at 18, fails because that case also involved notice of a proposed settlement, and while the *Davis* court held that notice of the proposed settlement should mention the pendency of other purported class actions asserting the same claims, the court denied motions to intervene by the plaintiffs in those actions, *see id.* at 605-07, and denied their request that the notice include their counsel's contact information and their criticisms of the settlement, S*ee id.* at 611. Thus, *Davis* weighs strongly against the State Court Plaintiffs.

42

point to nothing incorrect or misleading in the Notice as drafted in this regard—and they cannot, as it tracks the language in both the Certification Order and the Recognition Order.

The State Court Plaintiffs also propose adding to the Notice that the state court action includes claims relating to the Note Offering that are not part of the Class here. But there is no reason to do so. First, there is already a negotiated settlement for noteholders, subject to approval by the Cayman Court. *See* Ex. C at Ex. 99.1 at 1 (announcing agreement with holders of a majority of the Notes, reflecting "*91-96% of the Par Value of the Existing Notes*") (emphasis in original). In any event, these claims are irrelevant to the Notice, since the scheme negotiated for the noteholders is different from any Scheme that may be negotiated for the Class.

Furthermore, as with the language suggested by the Opt-Outs, the language suggested by the State Court Plaintiffs to be added to the Notice regarding releases, opt-out rights, and voting and approval procedures is unnecessary, inappropriate, and should not be included in this Notice. *See* ECF No. 286-1 at 6-7. As explained above, it is premature to opine on how any settlement reached through the Scheme process will be structured and what approval, opt out, and voting procedures will be implemented. There is no reason to include in a Notice a definitive, yet speculative, explanation about how a currently non-existent potential settlement will proceed. As drafted, the Notice provides Class members with information on what "may" occur, which is wholly appropriate since none of these issues have yet been determined definitively, and many will depend on Cayman law and procedure.

Finally, the State Court Plaintiffs' self-serving proposed deletions of paragraphs 26 and 27 from the Notice regarding the effects of opting out of the Class should not be made. As explained, this is a notice to members of the Class in this action; it is correct and typical to let Class members know that if they exclude themselves from the Class, they will not be able to share in a settlement

43

reached *on behalf of the Class in this action* or bound by any orders of the Court *in this action*. It is entirely apparent why the State Court Plaintiffs request deletion of the following statement in paragraph 27 of the Notice: "Do not request exclusion from the Class if you wish to be eligible to share in any Settlement with Luckin obtained for members of the Class." They want this Notice— even though they have no role or authority in this action and even though their case is completely stayed as to Luckin—to promote exclusions and weaken the status of the certified Class in the Scheme process. The State Court Plaintiffs' self-serving behavior should not be encouraged.

Ye's criticisms of the Notice and the proposed process for issuing it are also unfounded. Ye. Br. at 10. Rule 23 requires notice to potential class members "who can be identified through reasonable effort." *Citigroup Inc.*, 296 F.R.D. at 154. While some courts have approved issuance of class notice in multiple languages, these cases typically involved securities that were sold outside the U.S. *See Vivendi*, 242 F.R.D. at 108 (class included purchasers of both ADSs and French shares). Here, Luckin's ADSs were registered with the SEC, using registration statements in English, and were traded on the NASDAQ exchange. *See* ECF No. 292-5. There are no grounds for issuance of the Notice in Chinese, particularly given the absence of evidence concerning how many Chinese investors may be Class members.

Ye's strained interpretation of the Notice and suggestion that it is crafted to "discourage opt-outs" should also be rejected. Ye Br. at 10. Notice "is generally deemed reasonable if the average person understands the terms of the proposed settlement and the options provided to class members . . . ." *Merrill Lynch*, 249 F.R.D. at 133. Here, Ye's reading of the Notice is unreasonable. Ye concedes that it accurately informs Class members that if any settlement with Luckin is approved by the Cayman Court, Class members who opt out will not be able to pursue their own claims. *See* Ye Br. at 10.  However, he contends this is misleading because it fails to inform Class

members that if enough Class members opt out, this would limit Lead Plaintiffs' ability to "single-handedly" negotiate a settlement for the Class that meets the requisite creditor majorities under Cayman law. *See id.* But Lead Plaintiffs do not intend to do anything single-handedly in the Cayman Proceeding, as shown by their participation in the Ad Hoc Committee.

There is also no reason Lead Plaintiffs should be required to disparage their representation of the Class in the Notice so as to encourage more opt-outs, as Ye proposes. Lead Plaintiffs have vigorously prosecuted this action, including by negotiating the Certification Order and a valuable carve-out from the Recognition Order, and are committed to maximizing the recovery for all Class members. Modifying the Notice—how exactly is unclear, as Ye fails to suggest any alternative language—would only increase the risk that a Scheme would not be approved and that Class members could lose their only meaningful opportunity to obtain compensation from Luckin.

Accordingly, contrary to the Movants' protestations, there is nothing unique or unreasonable about the Notice in the form presented to the Court. It does not confer any substantive legal rights on Lead Plaintiffs or their counsel, but rather informs Class members, as Rule 23 and the PSLRA require, of all relevant aspects of the action, including the events occurring in the Cayman Proceeding. It explains the nature and substance of the claims asserted, the role of the Lead Plaintiffs and Class Counsel in the Scheme process, what voting procedures "may" be employed, and what the terms of a settlement "may" include, in order to allow them to make an informed decision regarding whether to opt-out of the certified Class at this time. This is not the time or place to allow investors who have chosen to file their own actions to insert themselves in this case in an attempt to weaken the Class and promote their own interests. The Notice should be approved in its current form, and the changes proposed by the Movants should be rejected.

## VII.    CONCLUSION

The motions to intervene should be denied.

45

Dated: June 14, 2021

Respectfully submitted,

*/s/ Salvatore J. Graziano*

**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**

Salvatore J. Graziano
John Rizio-Hamilton
Jai Chandrasekhar
Kate W. Aufses
Nicholas Gersh
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
salvatore@blbglaw.com
johnr@blbglaw.com
jai@blbglaw.com
kate.aufses@blbglaw.com
nicholas.gersh@blbglaw.com

**KESSLER TOPAZ MELTZER**
 **& CHECK, LLP**

Sharan Nirmul
Gregory M. Castaldo
Richard A. Russo, Jr.
Lisa M. Port
Nathan A. Hasiuk
280 King of Prussia Road
Radnor, Pennsylvania 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
snirmul@ktmc.com
gcastaldo@ktmc.com
rrusso@ktmc.com
llambport@ktmc.com
nhasiuk@ktmc.com

*Counsel for Lead Plaintiffs Sjunde AP-Fonden and Louisiana Sheriffs' Pension & Relief Fund and Class Counsel*

46

## CERTIFICATE OF SERVICE

On June 14, 2021, I caused the foregoing document to be filed with the Clerk of Court by

using the Court's electronic filing system, which sent notice to all counsel of record.


/s/ Salvatore J. Graziano_____
Attorney for Lead Plaintiffs

47