# EXHIBIT A

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NEW JERSEY CARPENTERS HEALTH FUND, ET AL., <br><br> Plaintiffs, <br><br> *v.* <br><br> RESIDENTIAL CAPITAL, LLC, ET AL., <br><br> Defendants. | Civ. No. 08-cv-8781-HB |

<u>**STIPULATION AND AGREEMENT
OF SETTLEMENT WITH CERTAIN DEFENDANTS**</u>

1748234.2

Subject to Final approval of the District Court (defined below), confirmation of the ResCap Chapter 11 Plan (defined below) and the occurrence of the Plan Effective Date (defined below), this Stipulation and Agreement of Settlement with the Settling Defendants (the "Settlement") is entered into by (i) the New Jersey Carpenters Health Fund (the "Carpenters Health Fund" or "Lead Plaintiff") and the other named Plaintiffs (defined below), on behalf of themselves and the proposed Settlement Class (defined below), by and through their counsel; and the (ii) Settling Defendants (defined below), by and through their respective counsel (collectively, the "Settling Parties").

This Settlement is intended by the Settling Parties to fully, finally and forever compromise, resolve, discharge and settle the Released Claims (defined below), subject to the terms and conditions set forth below, Final approval of the District Court, confirmation of the ResCap Chapter 11 Plan and the occurrence of the Plan Effective Date (defined below).  This Settlement does not compromise, resolve, discharge or settle any of the claims pending against the Non-Settling Defendants (defined below).

WHEREAS:

A.     All terms with initial capitalization shall have the meanings ascribed to them in paragraph 1 below or as otherwise defined herein.

B.     On September 22, 2008, the Carpenters Health Fund filed a complaint against the Settling Defendants, and certain other defendants, in the New York State Supreme Court, New York County, Index No. 2008/602727, asserting claims under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act").

C.     On October 14, 2008, Defendants removed the action to the United States District Court for the Southern District of New York, Civ. No. 08-8781.  The case was assigned to the Honorable Harold Baer, Jr.

D.      On January 12, 2009, the Carpenters Health Fund moved for appointment as lead plaintiff and approval of its selection of Schoengold Sporn Laitman & Lometti, P.C., as lead counsel.

E.      On April 15, 2009, Lead Plaintiff moved to substitute Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as proposed lead counsel.

F.      On June 30, 2009, the District Court appointed the Carpenters Health Fund as lead plaintiff and approved the Carpenters Health Fund's selection of Cohen Milstein as lead counsel.

G.      On May 18, 2009, Lead Plaintiff filed the Consolidated First Amended Securities Class Action Complaint (the "First Amended Complaint"). The First Amended Complaint asserted claims concerning 59 offerings of mortgage-backed securities (the "Offerings" as defined below) and named as plaintiffs Lead Plaintiff and additional named plaintiffs Boilermaker Blacksmith National Pension Trust ("Boilermaker Pension Trust") and New Jersey Carpenters Vacation Fund (the "Carpenters Vacation Fund") (collectively, the "Original Plaintiffs").[1]

H.      On July 17, 2009, the Defendants moved to dismiss the First Amended Complaint.

I.      On March 31, 2010, the Court issued a memorandum and order granting in part and denying in part Defendants' motions to dismiss. In the March 31 Order, the Court found that the Original Plaintiffs had adequately alleged violations of the Securities Act against the Settling Defendants, and the underwriters that participated in the Offerings in which the Original

---

[1] The First Amended Complaint named as defendants Goldman, Sachs & Co., Inc. ("GSC"), RBS Securities, Inc. f/k/a Greenwich Capital Markets, Inc. d/b/a RBS Greenwich Capital ("GCM"), Deutsche Bank Securities, Inc. ("DBS"), Citigroup Global Markets, Inc. ("CITI"), Credit Suisse Securities (USA) LLC ("CSS"), Bank of America Securities, LLC as *successor-in-interest* to Merrill Lynch, Pierce, Fenner & Smith, Inc. ("ML"), UBS Securities, LLC ("UBS"), JPMorgan Chase, Inc. as *successor-in-interest* to Bear, Stearns & Co., Inc. ("BSC"),Morgan Stanley & Co., Inc. ("MS") (collectively, the "Underwriter Defendants") and the Settling Defendants.

Plaintiffs purchased securities, namely CITI, GSC and UBS (the "Remaining Underwriter Defendants"). The Court however dismissed all claims based on any offering in which no Original Plaintiff purchased securities. The Court also dismissed claims based on the allegations that credit rating models were outdated, that credit enhancements were inadequate and that Defendants purportedly omitted disclosure of material conflicts of interest with rating agencies. The Court further dismissed control person liability claims against the Remaining Underwriter Defendants (other than defendant Residential Securities Funding Corporation).

J. On May 26, 2010, the Settling Defendants and Remaining Underwriter Defendants filed their answers to the First Amended Complaint.

K. On June 10, 2010, Mississippi Public Employees' Retirement System ("Mississippi PERS") moved to intervene in the Action on behalf of purchasers in certain offerings. On April 28, 2011, the Court issued an Opinion and Order dismissing Mississippi PERS from the action for failure to prosecute its claims.[2]

L. On July 2, 2010, Police and Fire Retirement System of the City of Detroit ("Detroit PFRS") moved to intervene as an additional named plaintiff in the Action.

M. On July 13, 2010, the Original Plaintiffs jointly moved with Midwest Operating Engineers Pension Trust Fund ("Midwest OE") to intervene on behalf of purchasers of other offerings in which the Original Plaintiffs did not themselves purchase securities.

N. Likewise, on July 30, 2010, Iowa Public Employees' Retirement System ("IPERS") and Orange County Employees Retirement System ("OCERS") moved jointly with the Original Plaintiffs to intervene in this Action.

O. On December 22, 2010, the District Court granted the Intervenor Plaintiffs' motions to intervene in this Action.

---

[2] Because the offerings on which Mississippi PERS sought to intervene overlapped with those offerings in which OCERS (defined below) also intervened, Mississippi PERS offered to withdraw its motion in the event the Court granted OCERS' motion to intervene.

P. On January 3, 2011, the Plaintiffs filed the Consolidated Second Amended Securities Class Action Complaint ("Second Amended Complaint"). The Second Amended Complaint named as defendants the Settling Defendants and Remaining Underwriter Defendants (collectively, the "Remaining Defendants") and asserted claims as to the four Original Offerings and six Intervenor Offerings. The Second Amended Complaint also asserted claims against one of the previously dismissed Underwriter Defendants, DBS.

Q. On August 16, 2010, after conducting substantial discovery, subpoenaing numerous entities for trading records, and reviewing thousands of pages of documents produced by the Remaining Defendants, the Original Plaintiffs moved to certify a class of purchasers of the four Original Offerings, to certify the Original Plaintiffs as Class Representatives and to appoint Cohen Milstein as Lead Counsel (the "First Class Certification Motion").

R. On January 18, 2011, the Court issued an Opinion and Order denying the First Class Certification Motion. While the Court found that the Original Plaintiffs had satisfied all of the Rule 23(a) factors, including numerosity, commonality, adequacy and typicality, the Court also found that individual issues of knowledge predominated, thereby precluding class certification.

S. On January 24, 2011, the Original Plaintiffs petitioned the United States Court of Appeals for the Second Circuit, pursuant to Fed. R. Civ. P. 23(f), for permission to appeal the Court's denial of class certification. On February 29, 2011, the Second Circuit granted the Original Plaintiffs' request to appeal.

T. On January 25, 2011, the Defendants moved to dismiss the Intervenor Plaintiffs' claims asserted in the Second Amended Complaint.

U. On April 28, 2011, the Court issued an Opinion and Order granting in part and denying in part the Remaining Defendants' motions to dismiss the Intervenor Plaintiffs' claims. The Court dismissed the Intervenor Plaintiffs' Section 12 claims because the Intervenor Plaintiffs did not allege that they purchased their Certificates from one of the Remaining Defendants. The

Court also dismissed the Intervenor Plaintiffs' Section 15 claims and OCERS' claims relating to RALI Series 2006-QO6. The Court denied the motions to dismiss in all other respects and sustained the Intervenor Plaintiffs' Section 11 claims on five of the Intervenor Offerings.

V. In a letter dated May 5, 2011, Lead Counsel requested that the Court stay the Action pending the Second Circuit's decision on the appeal of the Court's First Class Certification Decision. On May 12, 2011, the District Court granted Lead Counsel's request to stay the proceedings.

W. On April 30, 2012, the Second Circuit affirmed the District Court's denial of Class Certification "without prejudice to further motion practice in the District Court." The Second Circuit held that the District Court did not abuse its discretion by denying class certification but limited its review only to the class definition that the District Court rejected, and to the record as it stood at the time of the First Class Certification Motion.

X. On May 7, 2012, the District Court granted Lead Counsel's request for additional discovery and set an August 6, 2012 deadline for the submission of any additional class certification motions. As a result, Lead Counsel took certain depositions of each of the underwriters of the Original Offerings.

Y. On May 14, 2012, the Debtors (defined below) filed voluntary petitions under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court. The Debtors' chapter 11 cases are being jointly administered as *In Re Residential Capital, LLC, et al.,* Case No. 12-12020-mg (Bankr. S.D.N.Y. 2012) (the "ResCap Chapter 11 Case").

Z. On August 6, 2012, the Original Plaintiffs filed their renewed motion for class certification as to the Original Offerings (the "Second Class Certification Motion").

AA. On October 15, 2012, the Court granted in part the Second Class Certification Motion and appointed the Original Plaintiffs as the class representatives ("Class Representatives") for the four Original Offerings (the "Second Class Certification Order"). The

Court limited the Class definition to those purchasers who bought the securities on the date of offering directly from the issuers.

BB.     On November 5, 2012, the Original Plaintiffs sought reconsideration of the Second Class Certification Order seeking to expand the Class to include those who purchased Certificates on the offering date or up to ten trading days thereafter.

CC.     On November 16, 2012, Plaintiffs sought reconsideration of the Court's prior decision dismissing claims as to those offerings in which no Original Plaintiff purchased securities in light of *NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012) ("*NECA-IBEW*"), which held, in part, that a plaintiff in certain circumstances had class standing to assert claims on behalf of purchasers that purchased securities in offerings in which the named plaintiff did not purchase securities.  As a result, Plaintiffs' reconsideration motion sought to reinstate claims with respect to all 59 Offerings originally at issue in the First Amended Complaint.

DD.     On November 16, 2012, Residential Funding Securities Corporation n/k/a Ally Securities, LLC ("Ally Securities") and the Remaining Underwriter Defendants sought to dismiss the Intervenor Offerings Claims as barred by the statute of repose, and sought to stay the proceedings in light of the ResCap Chapter 11 Case.

EE.     On November 16, 2012, the Carpenters Health Fund and the Carpenters Vacation Fund filed class proofs of claim numbers 4805, 4806 and 4807 against the Debtor Defendants in the ResCap Chapter 11 Case (the "Bankruptcy Proofs of Claim").

FF.     On January 3, 2013, the Court denied Ally Securities' and the Remaining Underwriter Defendants' motion to dismiss and motion for a stay, and denied Plaintiff's motion for reconsideration under *NECA-IBEW* without prejudice for renewal following resolution of the proceedings before the U.S. Supreme Court.  The Court, however, granted Plaintiff's application for modification of the class definition (the "Amended Second Class Certification Order").  The Court expressly modified the class definition to include initial purchasers that bought the

securities directly from the underwriters or their agents no later than ten trading days after the applicable offering date and appointed New Jersey Carpenters Health Fund and New Jersey Carpenters Vacation Fund as class representatives.

GG.     On October 31, 2012 and January 18, 2013, Ally Securities and the Remaining Underwriter Defendants petitioned the Second Circuit for permission to appeal the District Court's Second Class Certification Order and Amended Second Class Certification Order pursuant to Fed. R. Civ. P. 23(f).  The Second Circuit denied the petitions on March 26, 2013.

HH.     On April 30, 2013, following the U.S. Supreme Court's denial of the *certiorari* petition in *NECA-IBEW*, the Court granted in part and denied in part Plaintiffs' motion for reconsideration of the Court's decision on the First Motion to Dismiss.  As a result, the Court reinstated claims as to 37 of the original 59 offerings (the "Reinstated Offerings").[3]

II.     On May 10, 2013, Plaintiffs filed the Consolidated Third Amended Securities Class Action Complaint ("Third Amended Complaint") asserting claims against the Settling Defendants, the Remaining Underwriter Defendants and DBS.[4]

JJ.     In or around April 2013, Lead Counsel began participating in mediations in the ResCap Chapter 11 Case that had commenced in January, 2013 by order of the Bankruptcy Court and which were supervised by court-appointed mediator, the Honorable James M. Peck.  Lead Counsel participated in several in-person mediation sessions, including a full day session on May 20, 2013, and numerous follow-up conference calls.

KK.     Throughout the mediation, there were ongoing negotiations between, among other parties, Lead Counsel, the Settling Defendants, the Debtors and the Official Committee of Unsecured Creditors appointed in the ResCap Chapter 11 Case (the "Creditors' Committee"), in the context of achieving a global resolution in the ResCap Chapter 11 Case.  Because of the

---

[3] The 37 offerings included the 5 Intervenor Offerings that were previously reinstated pursuant to the Court's December 22, 2010 order granting the motions to intervene of the Intervenor Plaintiffs.

[4] Lehman Brothers, Inc., now in a Securities Investor Protection Act proceeding, also originated some of the Reinstated Offerings but was not named as a defendant in the Third Amended Complaint.

pending ResCap Chapter 11 Case, and its interrelationship with the claims asserted in this Action against the Settling Defendants, the Lead Plaintiffs conducted parallel settlement negotiations with both counsel for the Settling Defendants and counsel for various participants in the ResCap Chapter 11 Case.

LL.    As a result of the mediation sessions, on May 14, 2013, the Debtors, Creditors' Committee, certain creditors in the ResCap Chapter 11 Case (the "Consenting Creditors")[5] and Ally Financial Inc. ("AFI") and its non-debtor subsidiaries and affiliates, including Ally Securities (collectively, "Ally"), executed a chapter 11 plan support agreement (the "Plan Support Agreement"), which outlined the terms of the ResCap Chapter 11 Plan agreed upon by the parties to the Plan Support Agreement.

MM.    On May 23, 2013, the Debtors filed a motion in the Bankruptcy Court to approve the Plan Support Agreement.

NN.    Also on May 23, 2013, the Settling Parties executed a letter agreement setting forth certain terms of the Settlement subject to the completion of definitive documentation.

OO.    Lead Counsel has conducted discovery relating to the claims and the underlying events and transactions alleged in the Third Amended Complaint.  Lead Counsel has analyzed evidence adduced in discovery, including analyzing nearly one million pages of documents produced by all Defendants and third parties and examining witnesses, and has researched the applicable law with respect to the claims of Plaintiffs and the Settlement Class against the Settling Defendants, as well as the potential defenses thereto.

---

[5] The Consenting Creditors consist of AIG Asset Management (U.S.), LLC; Allstate Insurance Company; Financial Guaranty Insurance Company ("FGIC"), which has executed the Plan Support Agreement pending approval by the New York State Supreme Court with jurisdiction over FGIC's rehabilitation proceeding; counsel to the putative class of persons represented in the consolidated class action captioned *In re Community Bank of Northern Virginia Second Mortgage Lending Practice Litigation*, MDL No. 1674, Case Nos. 03-0425, 02-01201, 05-0688, 05-1386 (W.D. Pa.); Massachusetts Mutual Life Insurance Company; MBIA Insurance Corporation; certain holders of ResCap's senior unsecured notes; Prudential Insurance Company of America; certain holders of residential mortgage-backed securities ("RMBS") sponsored by the Debtors between 2004 and 2007 and represented by Kathy Patrick of Gibbs & Bruns LLP and Keith H. Wofford of Ropes & Gray LLP; Talcott Franklin of Talcott Franklin, P.C. as counsel for certain RMBS holders; Wilmington Trust, N.A., in its capacity as Indenture Trustee for ResCap's senior unsecured notes; and certain trustees or indenture trustee for certain RMBS trusts.

PP.     Based upon its investigation, Lead Counsel has concluded that the terms and conditions of this Settlement are fair, reasonable and adequate, and are in the best interests of the Plaintiffs and the Settlement Class.  The Plaintiffs have agreed to settle the claims raised in the Action against the Settling Defendants pursuant to the terms and provisions of this Settlement, after considering (i) the benefits that Plaintiffs and the members of the Settlement Class will receive from resolution of the Action against the Settling Defendants, (ii) the attendant risks of litigation and collectability from any Settling Defendants to satisfy a judgment; (iii) the complexities and issues raised by the ResCap Chapter 11 Case; and (iv) the desirability of permitting the Settlement to be consummated as provided by the terms of the Settlement.

QQ.     This Settlement shall in no way be construed or deemed to be evidence of, or an admission or concession on the part of any of the Settling Defendants with respect to any claim of fault or liability or wrongdoing or damage whatsoever, or any infirmity in the defenses that the Settling Defendants have, or could have, asserted.  This Settlement shall not be construed or deemed to be a concession by Plaintiffs of any infirmity in the claims asserted in the Action.

NOW THEREFORE, without any admission or concession by Plaintiffs of any lack of merit of the Action whatsoever, and without any admission or concession by Settling Defendants of any liability or wrongdoing or lack of merit in the defenses whatsoever, it is hereby:

STIPULATED AND AGREED, by and among the Settling Parties, through their respective attorneys, subject to confirmation by the Bankruptcy Court of the ResCap Chapter 11 Plan, the occurrence of the Plan Effective Date and Final approval of this Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act of 1995 and other conditions set forth herein, in consideration of the benefits flowing to the Settling Parties hereto, that the Action and all Released Claims as against the Released Parties shall be fully, finally and forever compromised, settled, released, discharged and dismissed with prejudice, upon and subject to the following terms and conditions:

**DEFINITIONS**

1.      As used in this Settlement, the following terms shall have the meanings specified below.

(a)      "Action" means the securities class action styled *New Jersey Carpenters Health Fund, et al., v. Residential Capital, LLC, et al.,* No. 08-cv-8781 (HB).

(b)      "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York.

(c)       "Claims Administrator" shall mean the claims administrator selected by Lead Counsel to administer the Settlement.

(d)      "Class Distribution Order" means an order entered by the Court authorizing and directing that the Net Settlement Fund be distributed, in whole or in part, to eligible Class Members.

(e)       "Class Member" or "Settlement Class Member" means a person or entity that is a member of the Settlement Class and that does not exclude himself, herself or itself by timely filing a request for exclusion in accordance with the requirements set forth in the Notice, or is not otherwise excluded because it is defined as a Private Securities Claimant in the Supplemental Term Sheet attached as Exhibit B to the Plan Support Agreement.

(f)      "Court" or "District Court" means the United States District Court for the Southern District of New York.

(g)      "Debtors" means Residential Capital, LLC and its direct and indirect subsidiaries, including Residential Accredit Loans, Inc. and Residential Funding, LLC.

(h)       "Defendants" means the Settling Defendants and the Non-Settling Defendants.

(i)      "Effective Date" means the first day following the day on which the settlement contemplated by this Settlement shall become effective as set forth in ¶ 36 below.

(j)      "Escrow Account" means an escrow account maintained by the Escrow Agent and controlled by Lead Counsel into which the Settlement Amount shall be deposited.

(k)     "Escrow Agent" means Lead Counsel.

(l)     "Final" means with respect to the Order and Final Judgment substantially in the form of Exhibit B hereto, when the last of the following shall occur: (i) the Plan Effective Date; and (ii) the entry of the Order and Final Judgment by the District Court so as to permit the consummation of the Settlement substantially in accordance with the terms and conditions of this Settlement Agreement, it being understood by the Settling Parties that the Plan Releases, upon the occurrence of the Plan Effective Date, shall preclude any relief on appeal in the event of an appeal of the Order and Final Judgment entered by the District Court. Any proceeding or order, or any appeal or petition for a writ of certiorari pertaining solely to the issue of attorneys' fees and reimbursement of costs or the Plan of Allocation of the Settlement Fund shall not in any way delay or preclude the Judgment from becoming Final.

(m)     "Final Approval Hearing" means the hearing set by the Court under Rule 23(e) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

(n)     "Individual Defendants" means Bruce J. Paradis, Kenneth M. Duncan, Davee L. Olson, Ralph T. Flees, Lisa R. Lundsten, James G. Jones, David M. Bricker and James N. Young.

(o)     "Intervenor Offerings" means the following offerings of mortgage pass-through certificates:  RALI Series 2006-QO9, RALI Series 2006-QO10, RALI Series 2006-QS8, RALI Series 2006-QS18 and RALI Series 2007-QO2.

(p)     "Intervenor Plaintiffs" shall mean Midwest Operating Engineers Pension Trust Fund ("Midwest OE"), Police and Fire Retirement System of the City of Detroit ("Detroit PFRS"), Iowa Public Employees' Retirement System ("OPERS") and Orange County Employees Retirement System ("OCERS").

(q)     "Investment Vehicle" means any investment company or pooled investment fund (including, but not limited to, mutual fund families, exchange-traded funds, fund of funds and hedge funds) in which any of the Defendants have or may have a direct or indirect interest, or as

to which its affiliates may act as investment advisors, but in which any of the Defendants or any of their respective affiliates is not a majority owner or does not hold a majority beneficial interest.

(r) "Lead Counsel" or "Class Counsel" means the law firm of Cohen Milstein.

(s) "Lead Plaintiff" means New Jersey Carpenters Health Fund.

(t) "Litigation Expenses" means the reasonable costs and expenses incurred by Plaintiffs' Counsel in connection with commencing and prosecuting the Action, for which Lead Counsel intends to apply to the Court for reimbursement from the Settlement Fund. Litigation Expenses may also include reimbursement of the expenses of Plaintiffs in accordance with 15 U.S.C. § 77z-1(a) (4).

(u) "MBS" means residential mortgage-backed securities.

(v) "Net Settlement Fund" means the Settlement Fund less: (i) any Taxes and Tax Expenses; (ii) any Notice and Administration Costs; and (iii) any attorneys' fees and Litigation Expenses awarded by the District Court.

(w) "Non-Settling Defendants" means: Goldman, Sachs & Co. ("GSC"); Deutsche Bank Securities Inc. ("DBS"); Citigroup Global Markets Inc. ("CITI"); and UBS Securities LLC ("UBS") as well as any other defendant(s) later brought into the case (but shall not include the Settling Defendants).

(x) "Notice" means the Notice of Pendency of Class Action and Proposed Settlement, Settlement Fairness Hearing and Motion for Reimbursement of Litigation Expenses (substantially in the form attached hereto as Exhibit A-1), which is to be sent to members of the Settlement Class.

(y) "Notice Amount" means four hundred fifty thousand dollars ($450,000) in cash.

(z) "Notice and Administration Costs" means the costs, fees and expenses that are incurred by the Claims Administrator in connection with (i) providing notice to the Settlement Class; and (ii) administering the Claims process.

(aa) "Notice Order" means the order (substantially in the form attached hereto as Exhibit A) to be entered by the Court, approving dissemination of the Notice and Publication Notice to the Settlement Class and certifying the Settlement Class for purposes of the Settlement.

(bb) "Offerings" means the following offerings of mortgage pass-through certificates: the Original Offerings, the Intervenor Offerings, the Reinstated Offerings, RALI Series 2006-QA5, RALI Series 2006-QA9, RALI Series 2006-QH1, RALI Series 2006-QO4, RALI Series 2006-QS5, RALI Series 2006-QS16, RALI Series 2006-QS17, RALI Series 2007-QH1, RALI Series 2007-QO1, RALI Series 2007-QS3, RALI Series 2007-QA4, RALI Series 2007-QH7, RALI Series 2007-QS8, RALI Series 2007-QS10, RALI Series 2006-QS12, RALI Series 2006-QS13, RALI Series 2006-QS6 and RALI Series 2007-QS9.

(cc) "Order and Final Judgment" means the order(s) and final judgment(s) to be entered in this Action pursuant to ¶ 34 of this Settlement, substantially in the form of Exhibit B attached hereto.

(dd) "Original Offerings" means RALI Series 2007-QS1, RALI Series 2007-QO4, RALI Series 2007-QH4 and RALI Series 2006-QO7.

(ee) "Person" and "Persons" means any individual, corporation, limited liability company, limited partnership, partnership, professional corporation, association, affiliate, joint stock company, estate, trust, unincorporated association, entity, government and any political subdivision thereof, or any other type of business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assignees.

(ff) "Plaintiffs" means Lead Plaintiff Carpenters Health Fund, additional named plaintiffs, Carpenters Vacation Fund, Boilermaker Pension Trust, Intervenor Plaintiffs Detroit PFRS, Midwest OE, OCERS and OPERS.

(gg) "Plan Effective Date" means the date upon which the ResCap Chapter 11 Plan becomes effective pursuant to its terms.

(hh)     "Plaintiffs Counsel" means all counsel representing Lead Plaintiff, additional named plaintiffs and Intervenor Plaintiffs.

(ii)     "Plan of Allocation" means any plan of allocation of the Net Settlement Fund as the Court shall approve.  Any Plan of Allocation is not part of the Settlement, and the Settling Defendants shall have no responsibility therefor or liability with respect thereto.

(jj)     "Publication Notice" or "Summary Notice" means the Summary Notice, substantially in the form attached hereto as Exhibit A-2, to be published as set forth in the Notice Order.

(kk)     "Reinstated Offerings" means the following thirty-two (32) offerings of mortgage pass-through certificates:  RALI Series 2007-QS5; RALI Series 2006-QS7; RALI Series 2006-QS11; RALI Series 2007-QS4; RALI Series 2006-QA4; RALI Series 2006-QA6; RALI Series 2006-QA7; RALI Series 2006-QA8; RALI Series 2006-QA10; RALI Series 2006-QA11; RALI Series 2007-QA1; RALI Series 2007-QA2; RALI Series 2007-QO3; RALI Series 2007-QA3; RALI Series 2007-QA5; RALI Series 2007-QH8; RALI Series 2007-QH9; RALI Series 2007-QO5; RALI Series 2007-QS11; RALI Series 2007-QS6; RALI Series 2006-QS9; RALI Series 2007-QS7; RALI Series 2007-QH2; RALI Series 2007-QH5; RALI Series 2007-QH6; RALI Series 2006-QO3; RALI Series 2006-QO6; RALI Series 2007-QH3; RALI Series 2007-QS2; RALI Series 2006-QO8; RALI Series 2006-QO5; and RALI Series 2006-QS15.

(ll)     "Released Claims" means any and all claims, demands, rights, liabilities, and causes of action of every nature and description, known or Unknown (as defined below), suspected or unsuspected, contingent or non-contingent, matured or unmatured, whether or not concealed or hidden, which now exist, or heretofore have existed, whether arising under federal, state, common or foreign law, that Plaintiffs or any Settlement Class Member (a) asserted in this Action, or (b) could have asserted in any forum arising from or related in any way to the acts, failures to act, transactions, facts, events, matters, disclosures, statements, occurrences, representations, or omissions asserted or that could have been asserted in the Action against the

Released Parties (defined below). "Released Claims" shall not include (a) any rights or claims against the Debtors that any Plaintiff or Settlement Class Member may possess or be entitled to as a holder of RALI RMBS pursuant to the RMBS Trust Settlement Agreement, dated as of May 13, 2012, by and among the Debtors and a steering committee group of RMBS holders represented by Gibbs & Bruns LLP and Ropes & Gray LLP, which is incorporated in the ResCap Chapter 11 Plan (the "RMBS Trust Settlement"), or any other distribution in the ResCap Chapter 11 Case in connection with the claims asserted in connection with the RMBS Trust Settlement, or (b) any claims against any Non-Settling Defendant in the Action.

(mm) "Released Parties" means the Settling Defendants and their parents, subsidiaries, and affiliates and all of their respective past, current, and future respective directors, officers, employees, partners, insurers, co-insurers, reinsurers, agents, controlling shareholders, shareholders, attorneys, accountants, auditors, advisors, investment advisors, personal or legal representatives, predecessors, successors, divisions, joint ventures, assigns, spouses, heirs, related or affiliated entities, and any entity in which any Settling Defendants has a controlling interest, and all of their respective property.

(nn) "ResCap Chapter 11 Case" means the Debtors' chapter 11 cases being jointly administered as *In re Residential Capital LLC*, Case No. 12-12020-MG, pending in the United States Bankruptcy Court for the Southern District of New York.

(oo) "ResCap Chapter 11 Plan" means the plan to be jointly proposed by the Creditors Committee and the Debtors, as outlined in the Plan Support Agreement filed in the ResCap Chapter 11 Case.

(pp) "Settlement" means this Stipulation and Agreement of Settlement and the settlement contained herein.

(qq) "Settlement Amount" means one hundred million U.S. dollars ($100,000,000.00).

(rr) "Settlement Class" or "Class" means

All persons or entities who purchased or otherwise acquired beneficial interests in any of the following Certificates and who were allegedly damaged thereby: RALI Series 2007-QS1, RALI Series 2007-QO4, RALI Series 2007-QH4, RALI Series 2006-QO7, RALI Series 2007-QS5, RALI Series 2006-QS7, RALI Series 2007-QO2, RALI Series 2006-QS11, RALI Series 2007-QS4, RALI Series 2006-QA4, RALI Series 2006-QA6, RALI Series 2006-QA7, RALI Series 2006-QA8, RALI Series 2006-QA10, RALI Series 2006-QA11, RALI Series 2007-QA1, RALI Series 2007-QA2, RALI Series 2007-QO3, RALI Series 2007-QA3, RALI Series 2007-QA5, RALI Series 2007-QH8, RALI Series 2007-QH9, RALI Series 2007-QO5, RALI Series 2007-QS11, RALI Series 2007-QS6, RALI Series 2006-QS8, RALI Series 2006-QS9, RALI Series 2007-QS7, RALI Series 2007-QH2, RALI Series 2007-QH5, RALI Series 2007-QH6, RALI Series 2006-QS18, RALI Series 2006-QO10, RALI Series 2006-QO3, RALI Series 2006-QO6, RALI Series 2007-QH3, RALI Series 2007-QS2, RALI Series 2006-QO9, RALI Series 2006-QO8, RALI Series 2006-QO5, RALI Series 2006-QA5, RALI Series 2006-QA9, RALI Series 2006-QH1, RALI Series 2006-QO4, RALI Series 2006-QS5, RALI Series 2006-QS16, RALI Series 2006-QS17, RALI Series 2007-QH1, RALI Series 2007-QO1, RALI Series 2007-QS3, RALI Series 2007-QA4, RALI Series 2007-QH7, RALI Series 2007-QS8, RALI Series 2007-QS10, RALI Series 2006-QS12, RALI Series 2006-QS13, RALI Series 2006-QS6, RALI Series 2007-QS9 and RALI Series 2006-QS15. Excluded from the Class are Defendants, and their respective officers, affiliates and directors at all relevant times, members of their immediate families and their legal representatives, executors, estates, administrators, successors and assigns, insurers, and any entity in which any defendants have or had a controlling interest, provided that any Investment Vehicle shall not be deemed an excluded person or entity by definition. Also excluded from the Class are any persons or entities who exclude themselves by filing a valid request for exclusion in accordance with the requirements set forth in the Notice and all persons or entities defined as Private Securities Claimants in the Supplemental Term Sheet attached as Exhibit B to the Plan Support Agreement.

(ss) "Settlement Fund" means the Settlement Amount plus any interest earned thereon.

(tt) "Settling Defendants" means Residential Capital, LLC, Residential Funding Company, LLC, Residential Accredit Loans, Inc., Bruce J. Paradis, Kenneth M. Duncan, Davee L. Olson, Ralph T. Flees, Lisa R. Lundsten, James G. Jones, David M. Bricker, James N. Young and Ally Securities.

(uu) "Settling Debtors" means Residential Capital, LLC, Residential Funding Company, LLC, and Residential Accredit Loans, Inc.

(vv)   "Settling Defendants' Counsel" means Carpenter, Lipps & Leland LLP ("Carpenter Lipps") and Kirkland & Ellis LLP ("Kirkland & Ellis").

(ww)   "Settling Parties" means (i) Settling Defendants and (ii) Plaintiffs on behalf of themselves and the Settlement Class.

(xx)   "Tax Expenses" means any expenses and costs incurred in connection with the payment of Taxes (including, without limitation, expenses of tax attorneys and/or accountants and other advisors and expenses relating to the filing or failure to file all necessary or advisable tax returns).

(yy)   "Taxes" means any taxes due and payable with respect to the income earned by the Settlement Fund, including any interest or penalties thereon.

(zz)   "Unknown Claims" means any and all Released Claims that Lead Plaintiff, Original Plaintiffs, Intervenor Plaintiffs and/or any Class Member does not know or suspect to exist in his, her or its favor at the time of the release of the Released Parties, which if known by him, her or it might have affected his, her or its settlement with and release of the Released Parties, or might have affected his, her or its decision not to object to this Settlement or not exclude himself, herself or itself from the Settlement Class.  With respect to any and all Released Claims, the parties stipulate and agree that, upon the Effective Date, Plaintiffs shall expressly waive, and each Class Member  shall be deemed to have waived, and by operation of the Order and Final Judgment shall have expressly waived, to the fullest extent permitted by law, any and all provisions, rights and benefits conferred by Cal. Civ. Code § 1542 (to the extent it applies to the Action), and any law of any state or territory of the United States, or principle of common law, or the law of any foreign jurisdiction, that is similar, comparable or equivalent to Cal. Civ. Code § 1542, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

18

Plaintiffs and Class Members may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Released Claims, but Plaintiffs shall expressly fully, finally and forever settle and release – and each Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Order and Final Judgment shall have fully, finally and forever settled and released – any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. Plaintiffs acknowledge, and Class Members by law and operation of the Order and Final Judgment shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and was a material element of the Settlement.

## CLASS CERTIFICATION

2. The Settlement Class shall have the meaning set forth above in paragraph 1(qq). Solely for purposes of the Settlement and for no other purpose, the Settling Defendants stipulate and agree to: (a) certification of the Settlement Class as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Settlement Class; (b) appointment of Plaintiffs as Class Representatives; (c) appointment of Lead Counsel as Class Counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure; and (d) if the Settling Parties conclude it is necessary to effectuate the Settlement, certification of the Settlement Class pursuant to Rule 7023 of the Federal Rules of Bankruptcy Procedure. Certification of the Settlement Class and appointment of Class Counsel and the Class Representatives shall be binding only with respect to the Settlement of the Action and the Bankruptcy Proofs of Claim. In the event this Stipulation is terminated pursuant to its terms, or a Final Judgment and approval

of the Settlement and dismissal of the Action for any reason does not occur, certification of the Settlement Class shall be nullified, and the Action shall proceed as though the Settlement Class had never been certified, with the Settling Parties reserving all their rights regarding class certification in this Action.

SCOPE AND EFFECT OF SETTLEMENT

3. The Settlement is subject to, among other things, the ResCap Chapter 11 Plan being consistent in all material respects with the terms provided for herein.

4. The obligations incurred pursuant to this Settlement shall be in full and final disposition of the Action as against the Settling Defendants and any and all Released Claims as against all Released Parties.

5. Upon the Effective Date of this Settlement, Plaintiffs and all other Settlement Class Members shall be deemed to have released, dismissed and forever discharged the Released Claims against each and all of the Released Parties, with prejudice and on the merits, without costs to any party.

6. Upon the Effective Date, each of the Released Parties shall be deemed to have, and by operation of the Final Order and Judgment shall have, fully, finally, and forever released, relinquished and discharged the Lead Plaintiff, each and all of the Class Members, and Lead Counsel (and other Plaintiffs' counsel) from all claims (including, without limitation, unknown claims) arising out of, relating to, or in connection with the institution, prosecution, assertion, Settlement or resolution of the Action or the Released Claims.

THE SETTLEMENT CONSIDERATION

7. In consideration of the Settlement of claims as set forth in this Settlement, the ResCap Chapter 11 Plan shall provide for the payment of the Settlement Amount from the Debtors' estates to Lead Plaintiff, on behalf of the Settlement Class. Lead Plaintiff shall distribute the Settlement Amount to the members of the Settlement Class pursuant to the Plan of Allocation, which is subject to approval by, and is under the jurisdiction of, the District Court.

Subject to Bankruptcy Court approval, which the Settling Debtors agree to seek on an expedited basis upon preliminary approval of the Settlement by the District Court, the Settling Debtors shall deposit, from the Settlement Amount, the Notice Amount into the Escrow Account (established for the Settlement Fund by Lead Counsel for the benefit of the Settlement Class). For the avoidance of doubt, the Settlement Amount is final and capped and cannot be increased or decreased in any way, directly or indirectly.

8. The Settling Debtors further agree, subject to the terms and conditions of this Settlement, to remit to Lead Plaintiff the Settlement Amount (net of the Notice Amount) within ten (10) business days of the Plan Effective Date. The Settlement Fund shall be invested or held as provided in ¶ 14 hereof. The Parties expressly acknowledge and agree that: (1) the Individual Defendants shall have no responsibility to pay any portion of the Settlement Amount; (2) Ally shall have no responsibility to pay any portion of the Settlement; and (3) all obligations of the Settling Debtors with respect to the Settlement Amount are subject to and conditioned on confirmation of the ResCap Chapter 11 Plan by the Bankruptcy Court, the occurrence of the Plan Effective Date, and Final approval of the Settlement by the District Court.

9. On the Plan Effective Date, in the case of the ResCap Chapter 11 Plan, and on the Effective Date, in the case of the Settlement, each shall include full and complete releases by the Settlement Class of the Released Parties, from any and all Released Claims. The releases provided in the Settlement to the Settling Defendants shall in no way limit the scope of the injunction and releases included in the ResCap Chapter 11 Plan (the "Plan Releases") protecting the Settling Defendants from any third-party claims, contribution claims, or indemnification claims related to this Action. For the avoidance of doubt, nothing herein shall modify or limit the terms of the releases set forth in the Term Sheet for the proposed ResCap Chapter 11 Plan annexed to the Plan Support Agreement or the ResCap Chapter 11 Plan.

10. Upon preliminary approval of the Settlement by the District Court, the Settling Debtors agree to cooperate in good faith with the production of documents in their possession,

custody or control reasonably requested by Lead Plaintiff in connection with the continued prosecution of the Action against the Non-Settling Defendants, including loan files and documents pertaining to due diligence conducted in connection with the RMBS offerings at issue in the Action (the "Offerings"). Notwithstanding the foregoing sentence, the Settling Debtors acknowledge that due to the sales of their loan servicing platforms, the Settling Debtors' access to, and ability to produce, certain documents (including loan files and documents pertaining to due diligence conducted in connection with the Offerings at issue) relevant to the Action may be limited and the Settling Defendants make no representations concerning the production of documents that are contingent on the cooperation and assistance of third parties. All reasonable costs of production are to be borne by the Settling Debtors, up to an aggregate cost of $100,000, including reasonable attorneys' fees. No Settling Defendant other than Settling Debtors shall be responsible for the costs of production of the Settling Debtors. Nothing herein shall be construed as requiring Ally Securities or any of its parents, subsidiaries, or affiliates, or the Individual Defendants, to produce additional documents or bear the costs of any production by any of them or any other party, nor does this Settlement alter their obligations under the Federal Rules of Civil Procedure to respond to discovery requests.

11. So long as the ResCap Chapter 11 Plan is consistent in all material respects with the terms of the Settlement, Lead Plaintiff, on behalf of the Settlement Class Members, shall (a) support confirmation of the ResCap Chapter 11 Plan and approval of the Plan Releases; (b) refrain from objecting to confirmation of the ResCap Chapter 11 Plan or otherwise opposing the ResCap Chapter 11 Plan or the Plan Releases; (c) upon filing a motion in the Court requesting preliminary approval of the Settlement, seek to implement a stay of litigation against the Settling Defendants pending Final approval of the Settlement; and (d) subject to preliminary approval of the Settlement, vote to accept the ResCap Chapter 11 Plan before the applicable voting deadline and not cause such votes to be withdrawn. For the avoidance of doubt, the Lead Plaintiffs, on behalf of the Settlement Class Members, shall support the ResCap Chapter 11 Plan

unless and until the Settlement has been terminated or the Court declines to approve the Settlement.

## USE OF SETTLEMENT FUND

12.     Subject to the terms and conditions of this Settlement, the Settlement Fund shall be used to pay:  (i) Taxes and Tax Expenses; (ii) Notice and Administration Costs; and (iii) any attorneys' fees and Litigation Expenses awarded by the District Court.  The Lead Plaintiffs shall distribute the balance remaining in the Settlement Fund, *i.e.,* the Net Settlement Fund to Authorized Claimants as provided below.  All costs and expenses incurred by or on behalf of the Plaintiffs and the other members of the Settlement Class associated with the Settlement shall be paid from the Settlement Fund as awarded by the Court.  In no event shall the Released Parties bear any responsibility for any such costs or expenses beyond payment of the Settlement Amount by the Settling Debtors.

13.     After the Settlement becomes Final, the Settlement Fund will be distributed in accordance with the Plan of Allocation consistent with this Settlement that Plaintiffs will submit at the appropriate time, subject to Court approval, and subject to any award of attorneys' fees and costs by the Court.  No distribution will be made to any person whose distribution would be less than $10.  Subsequent to the initial distribution of the Settlement Fund, in the sole discretion of Plaintiffs' Counsel, any remaining funds shall be held in the Escrow Account pending further recoveries in the Action and combined with any future recoveries for distribution at a later date.

14.     Except as provided herein or pursuant to orders of the District Court, the Net Settlement Fund shall remain in the Escrow Account prior to the distribution.  All funds held by the Escrow Agent shall be deemed to be in the custody of the District Court and shall remain subject to the jurisdiction of the District Court until such time as the funds shall be distributed or returned pursuant to the terms of this Settlement and/or further order of the District Court.  The Escrow Agent shall invest any funds in the Escrow Account in United States Treasury Bills (or a mutual fund invested solely in such instruments or another similarly secure investment) and shall

collect and reinvest all interest accrued thereon, except that any residual cash balance in the Escrow Account of less than $250,000.00 may be held in a cash account in an FDIC-insured financial institution or invested in money market mutual funds comprised exclusively of investments secured by the full faith and credit of the United States. In the event that the yield on United States Treasury Bills is negative, in lieu of purchasing such Treasury Bills, all or any portion of the funds held by the Escrow Agent may be deposited in a non-interest bearing account that is fully insured by the FDIC.

15. The Parties agree that the Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-1 and that the Claims Administrator, under the supervision of Lead Counsel, as administrator of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing or causing to be filed all informational and other tax returns as may be necessary or appropriate (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)) for the Settlement Fund. Such returns shall be consistent with this paragraph and in all events shall reflect that all Taxes on the income earned on the Settlement Fund shall be paid out of the Settlement Fund as provided by ¶ 16 below. The Claims Administrator, under the supervision of, Lead Counsel shall also be solely responsible for causing payment to be made from the Settlement Fund of any Taxes and Tax Expenses owed with respect to the Settlement Fund. The Settling Debtors will provide to Lead Counsel the statement described in Treasury Regulation § 1.468B-3(e). The Claims Administrator, under the supervision of Lead Counsel, as administrator of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall timely make such elections as are necessary or advisable to carry out this paragraph, including, as necessary, making a "relation back election," as described in Treasury Regulation § 1.468B-1(j), to cause the Qualified Settlement Fund to come into existence at the earliest allowable date, and shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith.

16.     All Taxes (including any interest or penalties) and Tax Expenses shall be considered to be a cost of administration of the Settlement and shall be paid out of the Settlement Fund.  The Released Parties shall not have any liability or responsibility for any such Taxes or Tax Expenses.  The Claims Administrator, under the supervision of Lead Counsel, or its agents, shall timely and properly file all information and other tax returns necessary or advisable with respect to the Settlement Fund and the distributions and payments therefrom, including, without limitation, the tax returns described in Treas. Reg. § 1.468B-2(k), and, to the extent applicable, Treas. Reg. § 1.468B-2(l).  Such returns shall be consistent with the terms hereof and in all events shall reflect that all such Taxes, including any interest or penalties, on the income earned by the Settlement Fund shall be paid out of the Settlement Fund, subject to the limitations set forth in this paragraph.  The Claims Administrator, under the supervision of Lead Counsel, or its agents, shall also timely pay Taxes and Tax Expenses, subject to the limitations set forth in this paragraph, out of the Settlement Fund, and are authorized to withdraw, without prior order of the District Court, from the Settlement Fund amounts necessary to pay Taxes and Tax Expenses. The Parties agree to cooperate with each other, and their tax attorneys and accountants, to the extent reasonably necessary to carry out the terms of this Settlement.  The Released Parties shall have no responsibility or liability for the acts or omissions of the Claims Administrator, Lead Counsel or their agents, as described herein.

17.     This Settlement is not a claims-made settlement.  As of the Effective Date, neither the Settling Defendants, the Debtors' Chapter 11 estate, nor any other Person who paid any portion of the Settlement Fund on any of their behalf, shall have any right to the return of the Settlement Fund or any portion thereof after the Settlement Amount has been remitted pursuant to ¶¶ 7 and 8, irrespective of the number of Claims filed, the collective amount of losses of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement Fund.  If any portion of the Net Settlement Fund remains following distribution pursuant to ¶ 12 and is of such an amount that in the discretion of

Lead Counsel it is not cost effective or efficient to redistribute the amount to the Settlement Class, then such remaining funds, after payment of any further Notice and Administration Costs and Taxes and Tax Expenses, shall be donated to a non-profit charitable organization selected by Plaintiffs and approved by the Court.

18. The Claims Administrator shall discharge its duties under Lead Counsel's supervision and subject to the jurisdiction of the Court. Except as otherwise expressly provided herein, the Released Parties shall have no responsibility whatsoever for the administration of the Settlement, and shall have no liability whatsoever to any person, including, but not limited to, the Settlement Class Members, in connection with any such administration. Lead Counsel shall make available to the Settling Defendants' Counsel copies of all non-proprietary mailing lists used to serve the Notice in order for the Settling Debtors to provide notice of the ResCap Chapter 11 Plan Confirmation Hearing to the Settlement Class. Lead Counsel shall cause the Claims Administrator to mail the Notice to those members of the Settlement Class who may be identified through reasonable effort, including through the cooperation of the Settling Debtors and/or their agents. Lead Counsel will cause to be published the Summary Notice pursuant to the terms of the Notice Order or whatever other form or manner might be ordered by the Court. The Settling Debtors agree to cooperate reasonably with Lead Counsel in identifying the names and addresses of potential Class Members.

19. Lead Counsel may pay up to $450,000 from the Escrow Account, without further approval from the Settling Defendants or further order of the Court, for reasonable Notice and Administration Costs actually incurred. Such costs and expenses shall include, without limitation, the actual costs of publication, printing and mailing the Notice, reimbursements to nominee owners for forwarding the Notice to their beneficial owners, the administrative expenses actually incurred and fees reasonably charged by the Claims Administrator in connection with searching for Class Members and providing Notice and processing the submitted claims, and the reasonable fees, if any, of the Escrow Agent. To the extent that Notice and

Administration Costs exceed $450,000, they may be paid only pursuant to further Order of the District Court. In the event that the Settlement is terminated pursuant to the terms of this Settlement, all Notice and Administration Costs properly paid or incurred, including any related fees, shall not be returned or repaid to the Settling Defendants or other Person who paid any portion of the Settlement Fund. The finality of the Settlement shall not be conditioned on any ruling by the District Court concerning the Plan of Allocation or any award of attorneys' fees or reimbursement of Litigation Expenses. Any order or proceeding relating to a request for approval of the Plan of Allocation, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate the Settlement or affect or delay the Effective Date or the effectiveness or finality of the Order and Final Judgment and the release of the Released Claims. There shall be no distribution of any of the Settlement Fund to any Settlement Class Member until the Plan of Allocation is finally approved and such order of approval is affirmed on appeal and/or is no longer subject to review by appeal or certiorari, and the time for any petition for rehearing, appeal, or review, by certiorari or otherwise, has expired.

## ATTORNEYS' FEES AND LITIGATION EXPENSES

20. Lead Counsel, on behalf of all Plaintiffs' Counsel, may apply to the Court for a collective award from the Settlement Fund of attorneys' fees, plus interest. Lead Counsel also may apply to the Court for reimbursement from the Settlement Fund of Plaintiffs' Counsel's Litigation Expenses, plus interest. Litigation Expenses may include reimbursement of the expenses of Plaintiffs in accordance with 15 U.S.C. § 77z-1(a)(4). Lead Counsel shall allocate the attorneys' fees and expense awards amongst Plaintiffs' Counsel in a manner in which it in good faith believes reflects the contributions of such counsel to the prosecution and settlement of the Action.

21. The Released Parties shall have no responsibility for, and no liability with respect to, the attorneys' fees or Litigation Expenses that the District Court may award in the Action or the allocation of the fees and Litigation Expenses that Lead Counsel may make to other

Plaintiffs' Counsel in connection with this Action or any other person who may assert some claim thereto.

22.     The procedure for and amounts of any award of attorneys' fees and Litigation Expenses, and the allowance or disallowance by the District Court thereof, shall not be a condition of the Settlement.  Lead Counsel shall request that its application for an award of attorneys' fees and Litigation Expenses be considered by the District Court separately from the District Court's consideration of the fairness and adequacy of the Settlement.  Any order or proceedings relating to such request, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate the Settlement or affect the release of the Released Claims.  The finality of the Settlement shall not be conditioned on any ruling by the District Court concerning Lead Counsel's application for attorneys' fees and Litigation Expenses. The Settling Defendants will take no position on the request for attorneys' fees or reimbursement of expenses.

23.     The attorneys' fees and Litigation Expenses, as awarded by the District Court, shall be paid to Lead Counsel from the Escrow Account, immediately upon award, but in no event prior to the time the Settlement Amount is deposited into the Escrow Account and the Plan Effective Date, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof.

**CLAIMS ADMINISTRATOR**

24.     The Claims Administrator, subject to the supervision, direction and approval of Lead Counsel and the District Court, shall administer and calculate the Claims submitted by Settlement Class Members, oversee distribution of the Net Settlement Fund and perform all claims administration procedures necessary or appropriate in connection therewith.  Other than Settling Debtors' agreement to assist in identifying potential Settlement Class Members as provided herein, the Released Parties shall have no liability, obligation or responsibility for the Notice, administration or processing of claims or of the Settlement or disbursement of the Net

28

Settlement Fund, including without limitation, determinations as to the validity of any Proof of Claim, the amounts of claims, distributions of the Settlement Fund, or any loss incurred by the Escrow Agent or the Claims Administrator. The Settling Defendants shall cooperate in the administration of the Settlement to the extent reasonably necessary to effectuate its terms.

25. The Claims Administrator shall receive Claims and administer them according to the Plan of Allocation later approved by this Court.

26. The future allocation of the Net Settlement Fund among Authorized Claimants is a matter separate and apart from the proposed Settlement between the Settling Defendants and Plaintiffs, and any decision by the Court concerning the Plan of Allocation shall not affect the validity or finality of the proposed Settlement. The Plan of Allocation is not a necessary term of this Settlement, and it is not a condition of this Settlement that any particular plan of allocation be approved by the Court. Plaintiffs and Lead Counsel may not cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to the Plan of Allocation or any plan of allocation in this Action. Neither the Settling Defendants nor any other Released Party shall have any responsibility or liability whatsoever for allocation of the Net Settlement Fund, nor shall the Settling Defendants object to the Plan of Allocation proposed by Plaintiffs.

27. Any Class Member who does not timely submit a valid Claim Form at the time later set by the Court will not be entitled to receive any distribution from the Net Settlement Fund but will nevertheless be bound by all of the terms of the Settlement, including the terms of the Order and Final Judgment to be entered in the Action and the releases provided for therein, and will be permanently barred and enjoined from bringing any action, claim or other proceeding of any kind against any Released Party concerning any Released Claim.

28. Lead Counsel shall be responsible for supervising the administration of the Settlement and disbursement of the Net Settlement Fund. No Released Party shall have any liability, obligation or responsibility whatsoever for the administration of the Settlement or

disbursement of the Net Settlement Fund. No Released Party shall be permitted to contest or object to any Claim Form or any decision of the Claims Administrator or Lead Counsel with respect to accepting or rejecting any Claim Form or Claim for payment by a Class Member.

29. Lead Counsel will apply to the Court, with reasonable notice to the Settling Defendants, for a Class Distribution Order, *inter alia*: (i) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (ii) approving payment of any outstanding administration fees and expenses associated with the administration of the Settlement from the Escrow Account; and (iii) if the conditions set forth in ¶ 13 above have occurred, directing payment of the Net Settlement Fund to Authorized Claimants.

30. Payment pursuant to the Class Distribution Order shall be final and conclusive against any and all Settlement Class Members. All Settlement Class Members whose Claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Settlement, including the terms of the Order and Final Judgment to be entered in this Action and the releases provided for therein, and will be permanently barred and enjoined from bringing any action against any and all Released Parties concerning any and all of the Released Claims.

31. All proceedings with respect to the administration, processing and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court.

**REQUESTS FOR EXCLUSION**

32. A Class Member requesting exclusion from the Settlement Class shall provide the following information to the Administrator: (i) name, (ii) address, (iii) telephone number, (iv) identity and original face value of mortgage pass-through certificates traceable to the Offerings purchased (or otherwise acquired) or sold, (v) prices or other consideration paid or received for

such mortgage pass-through certificates, (vi) the date of each purchase or sale transaction, and (vii) a statement that the person or entity wishes to be excluded from the Settlement Class. Unless otherwise ordered by the District Court, any Class Member who does not submit a timely written request for exclusion as provided by this section shall be bound by the Settlement. Plaintiffs shall request that the deadline for submitting requests for exclusion be 28 calendar days prior to the Final Approval Hearing.

33. The Claims Administrator shall scan and send electronically copies of all requests for exclusion in PDF format (or such other format as shall be agreed) to Settling Debtors' Counsel and to Lead Counsel expeditiously (and not more than three (3) business days) after the Claims Administrator receives such a request. As part of the motion papers in support of the partial settlement of the Action, Lead Counsel will cause to be provided a list of all the persons who have requested exclusion from the Settlement Class, and shall cause to be certified that all requests for exclusion received by the Claims Administrator have been copied and provided to Settling Debtors' Counsel.

**TERMS OF NOTICE ORDER**
**IN CONNECTION WITH SETTLEMENT PROCEEDINGS**

34. Promptly after execution of this Settlement, Lead Plaintiffs, by and through Lead Counsel, with Settling Defendants' Counsel's consent, shall submit the Settlement together with its Exhibits to the District Court and shall move for entry of the Notice Order substantially in the form annexed hereto as Exhibit A.

**TERMS OF ORDER AND FINAL JUDGMENT**

35. Plaintiffs, by and through Lead Counsel, with Settling Defendants' Counsel's consent, shall request that the District Court enter an Order and Final Judgment substantially in the form attached hereto as Exhibit B. The Settlement is expressly conditioned upon, among other things, the entry of an Order and Final Judgment substantially in the form attached hereto as Exhibit B and in all respects consistent with this Settlement.

## EFFECTIVE DATE OF SETTLEMENT, WAIVER OR TERMINATION

36. The Effective Date of the Settlement shall be the latest date when all of the following shall have occurred:

(a) entry of the Notice Order;

(b) Final approval by the District Court of the Settlement following notice to the Settlement Class and a hearing in accordance with Rule 23 of the Federal Rules of Civil Procedure;

(c) entry by the District Court of an Order and Final Judgment. In the event that the District Court enters a judgment materially different than the proposed Final Judgment and Order attached hereto as Exhibit B ("Alternative Judgment") and none of the Parties hereto elects to terminate this Settlement, the date that such Alternative Judgment becomes Final;

(d) payment of the Settlement Amount by the Settling Debtors; and

(e) the occurrence of the Plan Effective Date.

37. The Settling Defendants and Lead Plaintiffs each shall have the right to terminate the Settlement by providing written notice of their election to do so ("Termination Notice") to the other within twenty (20) days of the date on which: (a) the District Court declines to enter the Notice Order in any material respect; (b) the District Court refuses to grant final approval to this Settlement or any material part of it; (c) the District Court declines to enter the Order and Final Judgment in any material respect that is not consistent with this Settlement, including, but not limited to, the failure to enter the Order and Final Judgment at least two weeks prior to the scheduled confirmation hearing of the ResCap Chapter 11 Plan; (d) an Alternative Judgment is vacated, modified or reversed in any material respect that is not consistent with this Settlement; (e) the ResCap Chapter 11 Plan is not confirmed by the Bankruptcy Court and the Plan Effective Date does not occur; (f) the Effective Date of the Settlement otherwise does not occur; (g) the payment of the Settlement Amount is not satisfied; or (h) the Plan Support Agreement is terminated. The foregoing list is not intended to limit or impair the parties' rights under the law

of contracts of the State of New York with respect to any breach of this Settlement.  In the event the Settlement is terminated, the provisions of ¶¶ 19 and 38 shall survive termination.

38.     Except as otherwise provided herein, in the event this Settlement is terminated prior to the Plan Effective Date or the Settlement Amount is not received in accordance with this Settlement, the Parties reserve their rights to proceed in all respects as if this Settlement had not been entered into and without any prejudice in any way from the negotiation, fact or terms of this Settlement, provided, that the Parties reserve their rights to revisit the scheduling order for the conduct of discovery in this Action.   The Settling Defendants reserve their rights to argue (and Plaintiffs reserve their rights to oppose the argument) that the Plan Releases bar all Released Claims against the Settling Defendants, effective as of the Plan Effective Date, even if this Settlement is terminated for any reason.

## NO ADMISSION OF WRONGDOING

39.     Whether or not the Settlement is approved by the Court, and whether or not the Settlement is consummated, the fact and terms of this Settlement, including Exhibits, all negotiations, discussions, drafts and proceedings in connection with the Settlement, and any act performed or document signed in connection with the Settlement:

(a)     shall not be offered or received against the Released Parties, Plaintiffs or the other members of the Settlement Class as evidence of, or be deemed to be evidence of, any presumption, concession or admission by any of the Released Parties or by Plaintiffs or the other members of the Settlement Class with respect to the truth of any fact alleged by Plaintiffs or the validity, or lack thereof, of any claim that has been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault or wrongdoing of the Released Parties;

(b)     shall not be offered or received against the Released Parties as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to

any statement or written document approved or made by any Released Party, or against Plaintiffs or any of the other members of the Settlement Class as evidence of any infirmity in the claims of Plaintiffs and the other members of the Settlement Class;

(c) shall not be offered or received against the Released Parties, Plaintiffs or the other members of the Settlement Class as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the parties to this Settlement, in any arbitration proceeding or other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Settlement; provided, however, that if this Settlement is approved by the District Court, the Released Parties may refer to it to effectuate the liability protection granted them hereunder;

(d) shall not be construed against the Released Parties, Lead Counsel or Plaintiffs or the other members of the Settlement Class as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; and

(e) shall not be construed as or received in evidence as an admission, concession or presumption against Plaintiffs or the other members of the Settlement Class or any of them that any of their claims are without merit or that damages recoverable under the Complaint would not have exceeded the Settlement Fund.

<strong><u>MISCELLANEOUS PROVISIONS</u></strong>

40. All of the Exhibits attached hereto are hereby incorporated by reference as though fully set forth herein. Notwithstanding the foregoing, in the event that there exists a conflict or inconsistency between the terms of this Settlement and the terms of any Exhibit hereto, the terms of this Settlement shall prevail.

41.     The Settling Parties intend this Settlement to be a final and complete resolution of all disputes asserted or that could be asserted by the Plaintiffs or any other Class Member(s) against all Released Parties with respect to all Released Claims.

42.     The Parties shall use their reasonable best efforts to include in the Order and Final Judgment a bar order that permanently bars, enjoins and restrains:

Any and all persons and entities (including but not limited to Non-Settling Defendants, their successors or assigns, and any other person or entity later named as a defendant or third-party in the Action) from instituting, commencing, prosecuting, asserting or pursuing any claim against any of the Released Parties for contribution or indemnity (whether contractual or otherwise), however denominated, arising out of, based upon or related in any way to the Released Claims or claims and allegations asserted in the Action (or any other claims where the alleged injury to the entity/individual is the entity's/individual's actual or threatened liability to one or more members of the Settlement Class), whether arising under state, federal or foreign law as claims, cross-claims, counterclaims, or third-party claims, whether asserted in this Court, in any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States or elsewhere, and whether such claims are legal or equitable, known or Unknown, foreseen or unforeseen, matured or unmatured, accrued or unaccrued.  All such claims are hereby extinguished, discharged, satisfied and unenforceable, subject to a hearing to be held by the Court, if necessary.

43.     Any person or entity so barred and enjoined shall be entitled to appropriate judgment reduction in accordance with applicable statutory or common law rule to the extent permitted under the Securities Act for the claims alleged herein.

44.     This Settlement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all parties hereto or their successors-in-interest.

45.     The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

46.     Neither the Stipulation nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (a) is or may be deemed to be or may be used as an admission or evidence of the validity of any Released Claim or of any wrongdoing or liability of any of the Released Parties; or (b) is or may be deemed to be or may be used as an admission or evidence of any fault or omission of any of the Released Parties in any civil, criminal or administrative proceeding in any court, any arbitration proceeding or any administrative agency or other tribunal, other than in such proceedings as may be necessary to consummate or enforce the Stipulation, the Settlement or the Order and Final Judgment.

47.     The parties to this Settlement intend it to be a final and complete resolution of all disputes asserted or which could be asserted by the Settlement Class Members and Plaintiffs against the Released Parties with respect to the Released Claims.  Accordingly, except in the event of Termination of this Settlement, Plaintiffs and Settling Defendants agree not to assert any claim under Rule 11 of the Federal Rules of Civil Procedure or any similar law, rule or regulation, that the Action was brought or defended in bad faith or without a reasonable basis. The parties to this Stipulation agree that the amount paid and the other terms of the Settlement were negotiated at arm's length, in good faith by the parties and reflect a settlement that was reached voluntarily based upon adequate information and after consultation with experienced legal counsel.

48.     While retaining their right to deny that the claims asserted in the Action were meritorious, the Settling Defendants in any statement made to any media representative (whether or not for attribution) will not deny that the Action was commenced and prosecuted in good faith and is being settled voluntarily after consultation with competent legal counsel.  In all events, Plaintiffs and the Settling Defendants shall refrain from any accusations of wrongful or

actionable conduct by either party concerning the prosecution and resolution of the Action, and shall not otherwise suggest that the Settlement constitutes an admission of any claim or defense alleged.

49. The waiver by one party of any breach of this Settlement by any other party shall not be deemed a waiver of any other prior or subsequent breach of this Settlement.

50. This Settlement and its Exhibits constitute the entire agreement among the Parties, and no representations, warranties or inducements have been made to any party concerning this Settlement or its Exhibits, other than the representations, warranties and covenants contained and memorialized in such documents.

51. This Settlement may be executed in one or more counterparts, including by signature transmitted via facsimile, or by a .pdf/.tif image of the signature transmitted via e-mail. All executed counterparts and each of them shall be deemed to be one and the same instrument.

52. The parties hereto and their respective counsel of record agree that they will use their best efforts to obtain all necessary approvals of the District Court and Bankruptcy Court required by this Settlement.

53. Each counsel signing this Settlement represents that such counsel has authority to sign this Settlement on behalf of Lead Plaintiffs or Settling Defendants, as the case may be, and that they have the authority to take appropriate action required or permitted to be taken pursuant to this Settlement to effectuate its terms.

54. This Settlement shall be binding upon and shall inure to the benefit of the successors and assigns of the parties hereto, including any and all Released Parties and any corporation, partnership, or other entity into or with which any party hereto may merge, consolidate or reorganize.

55. Notices required by this Settlement shall be submitted either by any form of overnight mail, electronic e-mail, facsimile, or in person to each of the signatories below.

56.     The administration, consummation and enforcement of the Settlement as embodied in this Settlement shall be under the authority of the Court and the parties intend that the Court retain jurisdiction for the purpose of, *inter alia*, entering orders, providing for awards of attorneys' fees and Litigation Expenses, and enforcing the terms of this Settlement and the Settlement.

57.     The construction, interpretation, operation, effect and validity of this Settlement, and all documents necessary to effectuate it, shall be governed by the internal laws of the State of New York without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

58.     This Settlement shall not be construed more strictly against one Settling Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations among the Settling Parties and all Settling Parties have contributed substantially and materially to the preparation of this Settlement.

59.     Class Counsel, and any other counsel representing Lead Plaintiff and the Settlement Class in the Action or in the ResCap Chapter 11 Case, agree that any representation, encouragement, solicitation or other assistance, including, but not limited to, referral to the other counsel, of or to any person seeking exclusion from the Settlement Class or any other person seeking to litigate with any of the Released Parties over any of the Released Claims or to represent any form of opt-out class from this Settlement, could place Class Counsel in an untenable conflict of interest with the Settlement Class Members.  Accordingly, Class Counsel and their respective firms agree (only to the extent that it is otherwise not violative of any applicable rules governing the practice of law) not to represent, encourage, solicit, or otherwise assist, in any way whatsoever (including, but not limited to referrals to other counsel) any Person in requesting exclusion from the Settlement Class, except that referring such person to the Notice or suggesting to any such person the option of obtaining separate counsel, without specifically

identifying options for such counsel, shall be permitted under the terms of this provision. Additionally, Class Counsel and their respective firms agree (only to the extent that it otherwise not violative of any applicable professional rules) not to represent, encourage, solicit or otherwise assist, in any way whatsoever, any Person who requests exclusion from the Settlement Class, or seeks to represent any form of opt-out class from this Settlement, or any other Person, in any subsequent litigation that Person may enter into with Released Parties regarding the Released Claims or any related claims, except that suggesting to any such Person the option of obtaining separate counsel, without specifically identifying options for such counsel, shall be permitted under the terms of this provision.

IN WITNESS WHEREOF, the parties hereto have caused this Settlement to be executed, by their duly authorized attorneys as of June __, 2013.

**COHEN MILSTEIN SELLERS & TOLL PLLC**

_____

Joel P. Laitman
Christopher Lometti
Michael Eisenkraft
Richard Spiers
Daniel B. Rehns
Kenneth M. Rehns
88 Pine Street, 14th Fl.
New York, New York 10005
Tel: (212) 838-7797
Fax: (212) 838-7745
jlaitman@cohenmilstein.com
clometti@cohenmilstein.com
meisenkraft@cohenmilstein.com
rspeirs@cohenmilstein.com
drehns@cohenmilstein.com
krehns@cohenmilstein.com

Steven J. Toll
Joshua S. Devore
S. Douglas Bunch
1100 New York Avenue, N.W.
Suite 500 West
Washington, D.C. 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
stoll@cohenmilstein.com
jdevore@cohenmilstein.com
dbunch@cohenmilstein.com
*Attorneys for Lead Plaintiff and the Class*

**KIRKLAND & ELLIS LLP**

_____

Robert J. Kopecky
300 North LaSalle
Chicago, Illinois 60654
Tel: (312) 862-2084
Fax: (312) 862-2200
Robert.kopecky@kirkland.com
*Attorneys for Defendant Ally Securities, LLC*

**CARPENTER LIPPS & LELAND LLP**

_____

Jeffrey A. Lipps
280 North High Street
Columbus, Ohio 43215
Tel: (614) 365-4105
Fax: (614) 365-9145
lipps@carpenterlipps.com
*Attorneys for the Individual Defendants and Debtor Defendants*

IN WITNESS WHEREOF, the parties hereto have caused this Settlement to be executed, by their duly authorized attorneys as of June __, 2013.

**COHEN MILSTEIN SELLERS & TOLL PLLC**

_____

Joel P. Laitman
Christopher Lometti
Michael Eisenkraft
Richard Spiers
Daniel B. Rehns
Kenneth M. Rehns
88 Pine Street, 14th Fl.
New York, New York  10005
Tel: (212) 838-7797
Fax: (212) 838-7745
jlaitman@cohenmilstein.com
clometti@cohenmilstein.com
meisenkraft@cohenmilstein.com
rspeirs@cohenmilstein.com
drehns@cohenmilstein.com
krehns@cohenmilstein.com

Steven J. Toll
Joshua S. Devore
S. Douglas Bunch
1100 New York Avenue, N.W.
Suite 500 West
Washington, D.C. 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
stoll@cohenmilstein.com
jdevore@cohenmilstein.com
dbunch@cohenmilstein.com
*Attorneys for Lead Plaintiff and the Class*

**KIRKLAND & ELLIS LLP**

_____

Robert J. Kopecky
300 North LaSalle
Chicago, Illinois 60654
Tel: (312) 862-2084
Fax: (312) 862-2200
Robert.kopecky@kirkland.com
*Attorneys for Defendant Ally Securities, LLC*

**CARPENTER LIPPS & LELAND LLP**

_____

Jeffrey A. Lipps
280 North High Street
Columbus, Ohio 43215
Tel: (614) 365-4105
Fax: (614) 365-9145
lipps@carpenterlipps.com
*Attorneys for the Individual Defendants and Debtor Defendants*

IN WITNESS WHEREOF, the parties hereto have caused this Settlement to be executed, by their duly authorized attorneys as of June *14*, 2013.

**COHEN MILSTEIN SELLERS & TOLL PLLC**

Joel P. Laitman
Christopher Lometti
Michael Eisenkraft
Richard Spiers
Daniel B. Rehns
Kenneth M. Rehns
88 Pine Street, 14th Fl.
New York, New York 10005
Tel: (212) 838-7797
Fax: (212) 838-7745
jlaitman@cohenmilstein.com
clometti@cohenmilstein.com
meisenkraft@cohenmilstein.com
rspeirs@cohenmilstein.com
drehns@cohenmilstein.com
krehns@cohenmilstein.com

Steven J. Toll
Joshua S. Devore
S. Douglas Bunch
1100 New York Avenue, N.W.
Suite 500 West
Washington, D.C. 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
stoll@cohenmilstein.com
jdevore@cohenmilstein.com
dbunch@cohenmilstein.com
*Attorneys for Lead Plaintiff and the Class*

**KIRKLAND & ELLIS LLP**

Robert J. Kopecky
300 North LaSalle
Chicago, Illinois 60654
Tel: (312) 862-2084
Fax: (312) 862-2200
Robert.kopecky@kirkland.com
*Attorneys for Defendant Ally Securities, LLC*

**CARPENTER LIPPS & LELAND LLP**

Jeffrey A. Lipps
280 North High Street
Columbus, Ohio 43215
Tel: (614) 365-4105
Fax: (614) 365-9145
lipps@carpenterlipps.com
*Attorneys for the Individual Defendants and Debtor Defendants*