UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
                       :
                       :
IN RE LUCKIN COFFEE INC.          :             20 Civ. 1293 (JPC)
SECURITIES LITIGATION           :
                       :             ORDER
                       :
----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

On May 14, 2021, Lead Plaintiffs Sjunde AP-Fonden and Louisiana Sheriffs' Pension & Relief Fund ("Lead Plaintiffs") and Defendant Luckin Coffee Inc. filed a Stipulation and Proposed Order Regarding Dissemination of Class Notice, Dkt. 258 ("Stipulation and Proposed Order"), attached to which are a proposed notice to the Class, *id.*, Exh. A ("Notice"), and a proposed summary notice, *id.*, Exh. B ("Summary Notice"). The following individuals and entities (the "Proposed Intervenors"), which all have parallel lawsuits against Luckin in federal or state court, have since filed motions to intervene with respect to the Stipulation and Proposed Order: the Winslow Funds,[1] Dkts. 262-266, 289-290, 294, the State Class Plaintiffs,[2] Dkts. 269, 284-287, Kingstown,[3] Dkts. 271, 293, August Bequai, Dkt. 272, and Lai Ye, Dkts. 278, 291-292. For the

---

[1] The "Winslow Funds" are Nuveen Winslow Large-Cap Growth ESG Fund, Nuveen Winslow Socially Aware U.S. Large-Cap Growth Fund, Winslow Large-Cap Growth Fund, MainStay Winslow Large Cap Growth Fund, MainStay VP Winslow Large Cap Growth Portfolio, St. John's University, I.B.E.W. Local Union 481 Defined Contribution Plan and Trust, St. Mary's University, Justin Kelly Revocable Trust, Justin and Susan Kelly Family, LLC, The Justin and Susan Kelly Foundation, Justin Kelly, individually and as representative for the Justin Kelly Revocable Trust, and American Medical Association.

[2] The "State Class Plaintiffs" are Teamsters Local 710 Pension Fund, City of Fort Myers Police Officers' Retirement System, Kimson Chemical, Inc., and Michael Bergenholtz.

[3] "Kingstown" refers to Kingstown Capital Management, LP, Kingstown Partners Master Ltd., Kingstown Partners II L.P., Ktown LP, Kingfishers, LP, and Kingstown 1740 Fund LP.

reasons that follow, the Court denies the motions to intervene and enters the Stipulation and Proposed Order separately.

## I. Background

In June 2020, the Honorable Lewis J. Liman, to whom this case was previously assigned, appointed Sjunde AP-Fonden and Louisiana Sheriffs' Pension & Relief Fund as Lead Plaintiffs in this action. Dkt. 118. In September 2020, Lead Plaintiffs filed the Consolidated Class Action Complaint, bringing claims under the Securities Act of 1933 and the Securities Exchange Act of 1934. Dkt. 150.

On March 2, 2021, Lead Plaintiffs filed a Stipulation and Proposed Order Regarding Provisional Class Certification for Settlement Purposes. Dkts. 234, 235. The State Class Plaintiffs and the Winslow Funds objected. Dkts. 237, 238. On March 5, 2021, after a telephonic conference during which the Court heard from the State Class Plaintiffs, the Winslow Funds, Lead Plaintiffs, and Luckin, the Court overruled the State Class Plaintiffs' and Winslow Funds' objections and entered the stipulation and proposed order. Dkt. 245 ("Provisional Certification Order"); *see also* Dkt. 244.

On March 31, 2021, Luckin filed a suggestion of bankruptcy, notifying the Court of an automatic stay as to Luckin. Dkt. 252. Luckin is a debtor in a provisional liquidation in the Grand Court of the Cayman Islands (the "Cayman Proceeding"). The United States Bankruptcy Court has recognized the Cayman Proceeding as a foreign main proceeding under Chapter 15 of the Bankruptcy Code. Dkt. 252, Exh. A ("Recognition Order"). The Bankruptcy Court has, however, modified the automatic stay to permit Lead Plaintiffs to "participate in settlement negotiations regarding a scheme of arrangement with respect to the Class . . . in the Cayman Proceeding or otherwise and take any actions regarding any proposed settlement to be implemented in an ADS

Scheme in the Cayman Proceeding." *Id.* at 5, ¶ 4(ii)(b).  The Proposed Intervenors' parallel lawsuits, however, remain stayed.

Luckin is currently pursuing a reorganization plan in the Cayman Proceeding.  U.S. counsel for the Joint Provisional Liquidators ("JPLs") in the Cayman Proceeding has provided background on Cayman law as it relates to that proceeding.  *See* Dkt. 276.  Cayman law allows for a scheme of arrangement ("Scheme") to reorganize a company's capital and/or indebtedness.  *Id.* at 2.  "A Scheme is a court-approved statutory contract by which a company may enter a compromise or arrangement with its Stakeholders."  *Id.*  This process has "been part of English law since the 1860s[] and a part of Cayman Islands law since at least 1961."  *Id.*  The Grand Court appointed the JPLs, who are empowered by the Grand Court and by statute to seek a compromise to maximize return to Luckin's shareholders, creditors, or certain classes of them.  *Id.*  The JPLs have engaged in discussions with Lead Plaintiffs and other interested parties, including the Proposed Intervenors, regarding a potential compromise in the Grand Court.

Under Cayman law, a Scheme is binding on all of those whose rights are compromised by the Scheme—including those who dissent from it—if (1) it is approved by a majority in number (the "Numerosity Requirement") representing 75% by value (the "Value Requirement") of those attending and voting at the class meeting and (2) the Grand Court finds the compromise to be fair. *Id.* at 2-3.  A meeting for a vote is ordered by the Grand Court "in such manner as the court directs." *Id.* at 2.  The Grand Court controls the procedure of the meeting and mechanisms by which the majorities are calculated.  *Id.*

On May 14, 2021, Lead Plaintiffs and Luckin filed the Stipulation and Proposed Order, and the associated Notice and Summary Notice.  The notice process embodied in these documents seeks to give potential Class Members notice of their rights with respect to this action and the

Cayman Proceeding, and the opportunity to opt out of the Class, as defined in the Provisional Certification Order.  On May 17, 2021, the Winslow Funds filed a letter objecting to the Stipulation and Proposed Order, Dkt. 259, and filed a motion to intervene a day later, Dkt. 262.  Soon after, the State Class Plaintiffs, Kingstown, Bequai, and Lai Ye all filed letters in opposition to Stipulation and Proposed Order and also seeking to intervene.  Dkts. 269, 271, 272, 278.

The Court held a telephone conference on May 28, 2021 to discuss the Stipulation and Proposed Order and the requests to intervene.  The Court ordered the Proposed Intervenors to file any additional motions to intervene or memoranda of law in support of intervention by June 7, 2021, and any parties wishing to file an opposition to do so by June 14, 2021.  The Winslow Funds, the State Class Plaintiffs, Kingstown, and Lai Yi then filed several additional memoranda and letters.  Dkts. 284-294.  Luckin, Lead Plaintiffs, and the JPLs all filed oppositions to the motions to intervene.  Dkts. 297-230.

## II. Legal Standard

"Where, as here, a statute does not provide either an unconditional or a conditional right to intervene, 'an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action.'"  *R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006) (citation omitted) (quoting *In re Bank of N.Y. Derivative Litig.*, 320 F.3d 291, 300 (2d Cir. 2003)).  "Failure to satisfy any one of these [four] requirements is a sufficient ground to deny the application."  *Id.* at 241 (quoting *In re Bank of N.Y. Derivative Litig.*, 320 F.3d at 300).  "The court considers substantially the same factors whether the claim for intervention is 'of right under [Rule] 24(a)(2), or 'permissive' under [Rule] 24(b)(2)."  *Id.* at 240.

## III. Discussion

### A. Timeliness

To the extent the Proposed Intervenors seek to intervene with respect to the Notice, the Court finds that the motions, filed only days after the Stipulation and Proposed Order was filed, are timely. However, many of the Proposed Intervenors' arguments appear to be directed at the Provisional Certification Order. *See, e.g.*, Dkt. 265 at 3 (the Winslow Funds stating that they are seeking to intervene because "[b]oth the provisional Certification Order and the proposed order approving the Proposed Notice . . . raise significant legal issues that are not being adequately presented to the Court by any of the parties to this action"). The Court previously denied the Winslow Funds' and the State Class Plaintiffs' objections to the Provisional Certification Order, Dkt. 244, and they did not seek reconsideration of that ruling. The Proposed Intervenors cannot now use their efforts to challenge the Stipulation and Proposed Order, and the Notice and Summary Notice attached thereto, to argue once again that the Provisional Certification Order was improper.

Accordingly, with this framing in mind, the Court turns to the other requirements for intervention to determine if the Proposed Intervenors are entitled to, or should be permitted to, intervene with respect to the Stipulation and Proposed Order, and the attached Notice and Summary Notice.

### B. Interest in the Action

"For an interest to be cognizable under Rule 24(a)(2), it must be 'direct, substantial, and legally protectable.'" *United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411, 415 (2d Cir. 2001) (quoting *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990)). "In other words, '[a]n interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will

not satisfy the rule.'"  *Floyd v. City of New York*, 770 F.3d 1051, 1060 (2d Cir. 2014) (quoting *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 129 (2d Cir. 2001)).

The Proposed Intervenors have made clear that they intend to opt out of the Class and that their primary "interest" purportedly justifying intervention is their own parallel lawsuits, all of which have been stayed as to Luckin in light of Luckin's bankruptcy.  *See, e.g.*, Dkt. 285 at 6 ("The State Class Plaintiffs clearly have a significant interest, not only in the outcome of the settlement and the Scheme, but also in retaining their ability to pursue their Securities Act claims in the State Class Action, making intervention proper."); *id.* at 6 (State Class Plaintiffs complaining that "the Proposed Notice fails to mention the State Class Action entirely"); Dkt. 265 at 13 ("Critically, Winslow and other Class Members who wish to opt out and pursue claims against solvent entities and individuals, such as the underwriters and officers, may have their claims extinguished in the Scheme by the agreement of Lead Plaintiffs.").

Courts regularly hold that one who opts out of the class lacks standing to object.  *See, e.g.*, *Gatdula v. CRST Int'l, Inc.*, No. 11 Civ. 01285 (VAP) (OPX), 2015 WL 12697656, at *6 (C.D. Cal. Aug. 26, 2015) ("Had Segura, Herroz, and Carroll submitted their opt-out forms timely, any objections they had would be meritless as they would lack standing to object."); *Zamora v. Ryder Integrated Logistics, Inc.*, No. 13 Civ. 2679 (CAB), 2014 WL 9872803, at *2 (S.D. Cal. Dec. 23, 2014) ("Here, by opting out of the class, Martinez fully preserved his right to litigate any claims he may have independently, and therefore has no significant protectable interest in the settlement."); *In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 28-29 (D.C. Cir. 2000) (noting that "class members who have opted out of a 23(b)(3) class action have no standing to object to a subsequent class settlement" because "by opting out they 'escape the binding effect of the class settlement'" (quoting *Mayfield v. Barr*, 985 F.2d 1090, 1093 (D.C. Cir. 1993))).

6

Although the Proposed Intervenors have not yet opted out of the Class, and "most courts hold that pending parallel litigation is not sufficient to communicate an opt-out request," *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 Civ. 5450 (NRB), 2019 WL 3006262, at *5 (S.D.N.Y. July 10, 2019) (internal quotation marks omitted), the fact that the Proposed Intervenors intend to opt out cuts against a finding that they have "an interest in *this* action" sufficient to justify intervention, *Petersville Sleigh Ltd. v. Schmidt*, 124 F.R.D. 67, 73 (S.D.N.Y. 1989). This is particularly true because, as noted above, any intervention would be limited to the Notice, not the Provisional Certification Order. The Court thus agrees with Luckin that "[t]he Proposed Interveners simply have no interest in the Proposed Notice or the function that it serves— to afford Class Members adequate notice and opportunity to opt out of the provisionally certified Class in this case." Dkt. 297 at 1. The Proposed Intervenors' desire to pursue their own lawsuits or to limit the recovery of the Class Members in this action are not "interests" that would justify intervention.

## C. Impairment

But even if the Proposed Intervenors did have an interest in the action for the purposes of Rule 24, they have not shown how the Notice impairs those interests.

### 1. Proxy Voting Power

The Proposed Intervenors' principal argument is that the Notice would improperly grant Lead Plaintiffs the power to vote by proxy as to the Scheme in the Cayman Proceeding, in a manner that would harm the Proposed Intervenors' ability to pursue a settlement for the plaintiffs in their parallel suits. *See, e.g.*, Dkt. 294 at 5 (the Winslow funds arguing that "[t]his Court should not use Rule 23 to allow a class representative to cast creditor votes in a foreign proceeding because it is not empowered to do so, and because doing so will prejudice Class Members and creditors"); Dkt.

265 at 11 (the Winslow Funds arguing that their "rights will be impaired in the Scheme if the Court purports to grant class-wide voting power to Lead Plaintiffs on stipulation because Lead Plaintiffs will obtain outsized voting rights allowing them to potentially compromise Winslow's claims, including those against the underwriters and officers, without a meaningful opportunity to object in this Court"); Dkt. 285 at 1 (the State Class Plaintiffs arguing that "as currently drafted, the Proposed Notice envisions an unprecedented proxy voting plan that would effectively allow the Lead Plaintiffs to singlehandedly dictate the terms of any restructuring proceeding").  The Winslow Funds accuse the Court of "interfering in the voting process in a Cayman proceeding through [the] proposed class notice."  Dkt. 294 at 6.  They argue that the Court cannot "convey voting proxies for creditor approval," *id.* at 7, and have submitted a declaration from counsel in the Cayman Islands contending that, under Cayman law, the Class cannot vote on behalf of absent members, Dkt. 290.

As the JPLs have made clear, the voting rights in a Scheme "are technical and complex and require consideration of procedural rules, practice directions issued by the Grand Court, and a body of Cayman case law."  Dkt. 276 at 4.  As such, the Court agrees with the Winslow Funds that "[t]he mechanics of proxy solicitation, collection and vote-approval in the Scheme proceedings should be left to the Cayman Islands courts."  Dkt. 294 at 6.

But the Notice does not grant proxy voting power—nor could it.  The Notice merely informs the Class Members of their rights in this Court, and notifies them of the Scheme and what *may* happen in that proceeding.  *See, e.g.*, Notice ¶ 21(a) (stating that the Lead Plaintiffs' vote in the Scheme "*may* be deemed to be a vote cast by you as a member of the Class" (emphasis added)).  The Notice warns the Class that it is the Grand Court that will determine who can vote in the Scheme, and that—pursuant to Cayman law—the Scheme is binding on all creditors, regardless of

whether they consent.  In fact, the Proposed Notice explicitly recognizes that the Class may be decertified if "the Grand Court declines to make an order convening class meetings for the purpose of considering and, if thought fit, approving the Scheme."  *Id.* ¶ 19.

Accordingly, the Proposed Intervenors' objections should be directed at the Grand Court, not this Court.  The JPLs have represented that the proposed intervenors will have multiple opportunities to make such objections, including at the Convening Hearing, the initial hearing at which the Grand Court will first consider the Scheme, Dkt. 276 at 4 ("The Convening Hearing will provide Winslow an opportunity to address any concern about any proposed treatment of the Lead Plaintiffs for the purposes of the tabulation of a vote on the Scheme as the proposed method of tabulation of votes must be disclosed to the Grand Court to enable it to provide appropriate directions at the Convening Hearing."), and the Sanction Hearing, during which the Grand Court will be asked to sanction the Scheme, *id.* at 5 ("Winslow will have another opportunity at the Sanction Hearing to present objections it may have to the Scheme to the Grand Court, including on vote tabulation.").  And if the Grand Court ultimately sanctions the Scheme, the United States Bankruptcy Court will still need to recognize the Scheme for it to be enforced in the United States. *See In re Ocean Rig UDW Inc.*, 570 B.R. 687, 707 (Bankr. S.D.N.Y. 2017) ("If the Cayman Court sanctions the Foreign Debtors' schemes of arrangement, upon application of the Foreign Representatives, the Court will proceed to determine whether each scheme of arrangement should be recognized and enforced by this Court.").  This will give the Proposed Intervenors yet another opportunity to object.

### 2.  Third-Party Releases

The Proposed Intervenors also contend that the Notice goes beyond the scope of the Provisional Certification Order, on the basis that it gives Lead Plaintiffs the ability to settle claims

against additional third parties beyond Luckin.  Dkt. 269 at 2; Dkt. 285 at 6, 7.  Specifically, the Proposed Intervenors argue that the Provisional Certification Order allows Lead Plaintiffs to negotiate "*only* with respect to Plaintiffs' claims against Luckin."  Dkt. 285 at 6; Provisional Certification Order ¶ 1 ("Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), the following Class is provisionally certified for settlement purposes only with respect to Plaintiffs' claims against Luckin . . . .").  But the Provisional Certification Order does not prohibit Lead Plaintiffs from releasing certain third-party claims in furtherance of a settlement with Luckin; it simply makes clear that the Class was not being certified for settlement discussions with any other defendant. This makes sense:  Lead Plaintiffs would arguably face an uphill battle in attempting to settle with Luckin without being able to address the claims of third parties that might seek indemnification from Luckin.  Moreover, the Second Circuit has made clear that "[p]laintiffs in a class action may release claims that were or could have been pled in exchange for settlement relief."  *Wal-Mart Stores Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106 (2d Cir. 2005); *see also In re Avanti Commc'ns Grp.*, 582 B.R. 603, 606 (Bankr. S.D.N.Y. 2018) (concluding that, in assessing whether a third-party release is appropriate, bankruptcy courts in Chapter 15 cases "focus[] primarily on the foreign court's authority to grant such relief").

The Proposed Intervenors speculate that the Lead Plaintiffs will release certain third-party claims to the Proposed Intervenors' detriment.  For instance, the Winslow Funds contend, without support, that "there is reason to believe that Lead Plaintiffs and the JPLs may be negotiating a settlement in the Scheme that would extinguish Winslow's and the Class Members' claims against the underwriters and officers, without their consent, by seeking third-party releases in favor of those entities and individuals."  Dkt. 265 at 13-14.   And the State Class Plaintiffs argue that the "Proposed Notice thus asserts that the Lead Plaintiffs have the ability to settle the State Class

Plaintiffs claims out from under them, including Securities Act claims arising from the Note Offering that are not part of the Federal Class Action and are not encompassed by the Provisional Certification Order, which is limited to ADS purchasers." Dkt. 285 at 6.[4]

But these concerns are entirely speculative.  In fact, the record reflects that the Proposed Intervenors are actively participating in the Scheme negotiation process, and the JPLs have repeatedly represented that they will continue to negotiate with the Proposed Intervenors in reaching a compromise.  *See, e.g.*, Dkt. 244.  Even the Winslow Funds have recognized that the shareholder claimants had a meeting with the JPLs on May 20, 2021 to discuss the formation of an "ad-hoc committee to represent the interests of the current or former holders of ADSs in [Luckin] who are entitled to be claimants in the class action." Dkt. 264, Exh. 1 at 6.  Counsel for all of the proposed intervenors, save Mr. Bequai, attended.  *See* Dkt. 273 at 2.  And Luckin has conveyed its understanding that, as of June 14, 2021, when it filed its brief, "representatives of Luckin's ADS holders—including the Proposed Interveners—have agreed to terms in principle, to be recorded under a Memorandum of Understanding, to form an ad hoc committee for the purpose of negotiating a settlement." Dkt. 297 at 5.  The Proposed Intervenors' conjecture that their rights might be harmed down the road is insufficient to overcome the reality of these discussions so far.  *See Floyd*, 770 F.3d at 1061-62 (affirming the district court's denial of intervention where the proposed intervenors "ha[d] not shown in any meaningful way how" the order at issue "would have any 'practical impact'" on the proposed intervenors' rights, based in part on the parties' representations that they would not inhibit the proposed intervenors' rights).

---

[4] Bequai also argues that the Scheme will inhibit resolution of claims against Luckin "in the U.S. Courts," and "move the negotiations affecting all claims to the Caymans." Dkt. 272 ¶ 6. But the United States Bankruptcy Court has already recognized the Cayman Proceeding, and the Notice has no impact on this.

### 3. The Proposed Intervenors' Remaining Arguments

None of the Proposed Intervenors' remaining arguments in favor of intervention are persuasive.  For instance, the State Class Plaintiffs object that the Notice does not reference their own Securities Act claim based on Luckin's January 2020 convertible note offering.  Dkt. 285 at 7.  But the offering that forms the basis of that claim is not before the Court in this case.  The State Class Plaintiffs have not provided any compelling reason for requiring the Notice to inform the Class Members in this case about the State Class Plaintiffs' claim.  Moreover, the Notice simply does not prevent the State Class Plaintiffs from pursuing that claim.

And Lai Ye raises several arguments concerning Chinese shareholder lawsuits and the enforcement of the Scheme in China.  Dkts. 278, 291.  But these have nothing to do with the Notice.  Whether or not the Scheme will be enforced in China is a question for Chinese courts, not this one.  The only arguably relevant objection that Lai Ye makes is that, in his view, the Notice does not sufficiently notify potential Class Members in China of this action.  Nonetheless, this argument too fails:  "While individual notice, where reasonably possible, is required, when class members' names and addresses may not be ascertained by reasonable effort, publication notice has been deemed adequate to satisfy due process."  *In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 107 (S.D.N.Y. 2007), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016).  "As long as the Court is persuaded that class counsel acted reasonably in selecting means likely to inform persons affected, notice will be considered adequate."  *Id.* at 107-08 (internal quotation marks omitted).  The Stipulation and Proposed Order mandates that the administrator send the Notice via first-class mail to each person or entity that Luckin identifies as having purchased or otherwise acquired Luckin ADSs at any time during the Class Period.  Stipulation and Proposed Order ¶¶ 3, 4.  It also requires publication on a separate website established for this Action and in

*The Wall Street Journal*, as well as transmission over *PR Newswire*. *Id.* ¶¶ 6-7.  The Court concludes that this process satisfies the requirements of Rule 23.  *See In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 120 (S.D.N.Y. 2009) (approving a similar notification process).

**D.  Representation**

"While the burden to demonstrate inadequacy of representation is generally speaking 'minimal,' [the Second Circuit has] demanded a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective."  *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001) (first quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972); and then citing *Wash. Elec. Coop., Inc.*, 922 F.2d at 98). "Where there is an identity of interest . . . the movant to intervene must rebut the presumption of adequate representation by the party already in the action."  *Id.* at 179-80.

To the extent the Proposed Intervenors attempt to rely on their status as class members to establish their "interest" in the scheme, *see* Dkt. 265 at 9-10, they have not shown that Lead Plaintiffs will not represent their interests or maximize their recovery for the Class.  *See Hevesi v. Citigroup, Inc.*, 366 F.3d 70, 82 n.13 (2d Cir. 2004) ("[T]he main purpose of having a lead plaintiff . . . [is] to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole."); *Wash. Elec. Coop., Inc.*, 922 F.2d at 98 ("Where there is an identity of interest between a putative intervenor and a party, adequate representation is assured."). The fact Lead Plaintiffs might have the ability to represent the class in the context of a bankruptcy proceeding does not somehow alter this calculus.  *See In re MF Glob. Inc.*, 512 B.R. 757, 762 (Bankr. S.D.N.Y. 2014) ("[M]ost courts agree that class proofs of claim are allowed in bankruptcy proceedings . . . ."); *In re Musicland Holding Corp.*, 362 B.R. 644, 654 (S.D.N.Y. 2007) (a "class

certified by district court may file class proof of claim" (citing *In re Trebol Motors Distrib. Corp.*, 220 B.R. 500, 502 (1st Cir. B.A.P. 1998))).

And to the extent the Proposed Intervenors rely on their roles as counsel for *other* classes of plaintiffs—which, as is clear from their briefs, is the true basis for their purported "interest" in this case—there is no reason to think that the Proposed Intervenors cannot continue independent discussions with the JPLs or that the Notice will somehow allow Lead Plaintiffs to "extinguish[]" the Proposed Intervenors' claims. *See, e.g.*, Dkt. 265 at 14.  Again, any arguments otherwise are entirely speculative.

### IV. Conclusion

For the reasons stated above, the Court denies the motions to intervene and enters the Stipulation and Proposed Order.  The Clerk of the Court is respectfully directed to terminate the motions pending at Docket Numbers 262, 278, and 284.

SO ORDERED.

Dated: July 6, 2021
       New York, New York

_____
JOHN P. CRONAN
United States District Judge

14