# Exhibit B

# CONFIRMATION OF PUBLICATION

**IN THE MATTER OF:** *Luckin Coffee Securities Litigation*

I, Kathleen Komraus, hereby certify that

    (a) I am the Media & Design Manager at Epiq Class Action & Claims Solutions, a noticing administrator, and;

    (b) The Notice of which the annexed is a copy was published in the following publications on the following dates:

                              *8.5.2021 – Wall Street Journal*
                              *8.5.2021 – PR Newswire*

X *Kathleen Komraus*
                    **(Signature)**

Media & Design Manager
                    **(Title)**

THE WALL STREET JOURNAL.                    Thursday, August 5, 2021 | **B5**

## BUSINESS NEWS

---

## Fox Posts Higher Revenue On Sports

BY KIMBERLY CHIN

**Fox** Corp., parent of Fox News and the Fox broadcast network, said revenue rose in the latest quarter, as the company expects the return of live sports and entertainment events will continue to propel its growth.

Fiscal fourth-quarter revenue was $2.89 billion, up 20% from a year ago.

Revenue at Fox's cable programming, which also includes the Fox Business Network and Fox Sports channel as well as Fox News, was $1.4 billion. That is a 10% increase from a year ago, as Fox continued to monetize its digital assets and benefit from the return of live events and sports shows.

Revenue in the TV station unit rose 30% from a year ago to $1.45 billion on higher advertising sales as local markets recovered with a swath of the economy reopening from coronavirus-related restrictions a year earlier.

Profit rose to $253 million in the June quarter, or 43 cents a share, from $122 million, or 20 cents a share, a year earlier.

Fox Corp. and Wall Street Journal parent News Corp share common ownership.

Fox's entertainment arm also said it had agreed with the chef Gordon Ramsay to set up a company to create and distribute content for Fox Broadcasting and Tubi streaming.

---

# Ex-Traders Guilty of 'Spoofing'

BY DAVE MICHAELS

Two former **Bank of America** Corp. traders were convicted Wednesday of rigging precious-metals prices by using an aggressive tactic known as spoofing, the latest win for prosecutors in a yearslong effort to crack down on the practice.

A federal jury found Edward Bases and John Pacilio guilty of wire fraud and conspiracy charges after a two-week criminal trial in Chicago.

Prosecutors argued that trading by Messrs. Bases and Pacilio on futures exchanges operated by **CME Group** Inc. was deceptive, allowing the government to charge the conduct as fraud. Lawyers for the defendants argued that their style of trading was allowed before the 2010 Dodd-Frank financial overhaul law

prohibited spoofing.

Spoofing involves sending deceptive orders that can mislead traders into thinking supply and demand have changed, according to regulators and prosecutors. The mirage, which some traders and attorneys argue is lawful bluffing, can move prices in a direction desired by the spoofer, while causing their counterparties to lose money.

Prosecutors argued that Messrs. Bases and Pacilio used spoofing to gain an illicit ad-

vantage from 2008 to 2014. The law defining and making spoofing illegal took effect in 2011, after most of the alleged activity had occurred.

"The government is trying to take old conduct, that wasn't against the law at the time, and turn it into a crime today," David McGill, an attorney for Mr. Pacilio, said during opening arguments.

After the jury delivered its verdict Wednesday, Mr. McGill said: "We are disappointed in the outcome, and we are going

to continue to fight to clear John Pacilio's name."

An attorney for Mr. Bases said the former trader and his lawyers "continue to believe that Ed is innocent and that his trading was permitted under the rules existing at the time and not fraudulent." Lawyers for both men are expected to file post-trial motions challenging the outcome.

A Bank of America spokesman and a Justice Department spokesman declined to comment.

The proceeding was a test of prosecutors' efforts to punish spoofing activity that predated a law defining the tactic and making it illegal.

---

# New York Times Profit Rises on Ad Rebound

BY PATIENCE HAGGIN

**New York Times** Co.'s second-quarter revenue rose 24% on a strong rebound in its advertising business, coupled with slowing subscriber growth.

The company's results benefited from comparisons with 2020, an anomalous year in which advertisers slashed spending and news audiences soared. Operating profit more than doubled from a year earlier, hitting $73.3 million. Subscriber additions continued to slow down after rapid growth during the Trump years and the early stages of the pandemic.

The Times added 140,000 subscriptions, including 77,000 for news products and 65,000 for its cooking, games and Audm audio products in the quarter. Amid an unprecedented news cycle in the second quarter of 2020, the Times reported adding 669,000 net new digital

subscriptions, its largest single-quarter increase. "We saw moderated growth in net subscription additions in the second quarter, which we expected given that the second quarter is traditionally our softest of the year, and we were comparing against last year's historic results at the beginning of the Covid crisis," Chief Executive Meredith Kopit Levien said.

Total subscriptions rose 22% from a year earlier but 1.5% from the first quarter. Just after the quarter closed, The Times crossed 8 million paid subscriptions across all its products, Ms. Kopit Levien said during its earnings call. Of that amount, 1.8 million were for non-news products.

The Times' second-quarter revenue rose to $498.5 million from $403.8 million a year earlier. The bulk of the increase came from the rebound in advertising. Total ad revenue rose 66% to $112.8 million, driven by



Total subscriptions rose 22% from the year-earlier quarter.

an 80% increase in digital ad revenue to $71 million. Print ad revenue rose 48%, with most of the growth coming from the luxury, media and technology sectors. The Times reported earnings of 32 cents a share, up from 14 cents a year earlier.

New York Times shares rose

7.7% to $46.52 on Wednesday.

The company highlighted comparisons with the second quarter of 2019 due to the anomalies of 2020. Compared with the 2019 second quarter, its digital-ad revenue was up 22%. That increase came primarily from higher direct-sold

advertising, including in podcasts. For the third quarter, the company expects advertising revenue to rise 30% to 35% from a year earlier and subscription revenue to rise 13% to 15%.

The Times has aggressively offered a promotional subscription price of $1 a week for new subscribers' first 52 weeks. Throughout 2021, the company expects over 1.5 million subscribers will transition from the promotional price to higher prices, said Chief Financial Officer Roland Caputo.

Ms. Kopit Levien described the company's subscriber churn as "healthy," calling it improved compared with the first-quarter results. In the first quarter, a large subscriber group that joined with the pandemic's start wasn't retained at the same rate as prior cohorts. She described the $1 a week promotion as effective and said it would continue.

TIFFANY HAGLER-GEARD/BLOOMBERG NEWS

---



PAUL RATJE/AGENCE FRANCE-PRESSE/GETTY IMAGES

Shale companies are making enough cash now to reduce their hedging positions.

## Hedges Eat Into Shale Profits

*Continued from page B1*
come on $1.2 billion in revenue, its best quarterly result since 2018. Pioneer's profit rose to $380 million, the highest in three years, on $3.4 billion in revenue. Diamondback's $311 million in net income was its best since 2019, while Devon hit a two-year high of $256 million in profit.

Larger producers **Conoco-Phillips** and **Occidental Petroleum** Corp. saw revenue more than double compared with the same period last year, at $10.2 billion and $6 billion, respectively. ConocoPhillips's $2.1 billion profit was the highest since mid-2019, while Occidental recorded a net loss of $97 million.

Other U.S. oil companies reporting earnings Wednesday, including **EOG Resources** Inc., **Marathon Oil** Corp. and **APA** Corp., recorded quarterly profits despite some hedging losses.

Many of the companies managed to collect enough cash to fatten up dividends they estimated would exceed average yields in the S&P 500.

The half-dozen large U.S. oil producers that reported earnings this week collected a combined $7.2 billion of uncommitted cash in the second quarter, culminating the industry's shift from outspending cash flows to withholding money from the oil patch as prices surged.

Companies that ran up debt for an unprofitable American oil boom touted heftier dividends in the quarter, with several announcing increases in the payouts. Pioneer and Devon, which are rolling out vari-

able dividends that are paid from free cash flow, projected their dividend yields this year would be 8% and 10%, respectively. Citing FactSet, Devon said its dividend yield would be seven times higher than the average for the S&P 500.

Shale producers have high dividend yields because their share prices are still undervalued compared with the rise in commodity prices, Pioneer President Richard Dealy said in an interview. It will likely take a few quarters of bigger shareholder payouts for the shale industry to gain traction again with general investors, he said.

Pioneer said this week it would move its first, $370 million variable dividend payment to September, up from the first quarter of 2022. Still, analysts said, the Dallas company's quarterly profit was limited by oil hedges more so than any of its peers.

$50
The price of oil that some hedgers locked in

It had inherited many of the contracts from Parsley Energy Inc. and DoublePoint Energy, two companies it acquired this past year. Last year, at the height of the pandemic, hedging had been the best option for many.

"It just seemed, at that point in time, prices were going to be lower for longer," Mr. Dealy said. Pioneer and other producers are likely to hedge less of their production going forward as they maintain smaller investment budgets and their balance sheets improve, he added.

Drillers that went the other way, and allowed themselves to be exposed to commodities

prices, reaped bigger rewards this year. Continental has historically avoided locking in prices for the oil it pumps and did so again this year. It now projects it will collect $2.4 billion in free cash flow this year, more than twice as much as it originally anticipated.

ConocoPhillips, which doesn't hedge because it has a hefty balance sheet, said it could afford to forgo oil-field earnings and cut production sharply during last year's downturn. It squeezed $4 billion in cash from its business in the second quarter, well more than the $2.5 billion it needed to pay shareholders and for its investments.

"I'm surprised to hear the analysts aren't asking the question to the [producers] that are hedged, 'What happened?'" ConocoPhillips Chief Executive Ryan Lance said in an earnings call. "There could even be more cash flow if you hadn't hedged your position."

Continental and Diamondback didn't respond to requests for comment. Devon declined to comment.

Analysts said shale companies are making enough cash now to reduce their hedging positions. This year, their average free cash flow yield, on an enterprise-value basis, is projected to be about 9%, according to an analysis by Raymond James.

In earnings calls, shale executives continued to play down the possibility of lifting output in response to higher prices. Diamondback CEO Travis Stice told investors the global oil market is still artificially undersupplied because the Organization of the Petroleum Exporting Countries and its allies are holding back on millions of barrels of oil a day they could pump into the market.

"There is not a call on shale production growth today," Mr. Stice said.

---

ADVERTISEMENT

## The Marketplace
To advertise: 800-366-3975 or WSJ.com/classifieds

### CLASS ACTION

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE LUCKIN COFFEE INC. SECURITIES LITIGATION    Case No. 1:20-cv-01293-JPC-JLC

**SUMMARY NOTICE OF PENDENCY OF CLASS ACTION**

**To:** All persons and entities (and their beneficiaries) that purchased or otherwise acquired the American Depository Shares of Luckin Coffee Inc. (In Provisional Liquidation) between May 17, 2019 through July 15, 2020, inclusive (the "Class").

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Southern District of New York that the above-captioned action (the "Action") has been provisionally certified to proceed as a class action on behalf of the Class described above, for settlement purposes. Please note: at this time, there is no judgment, settlement, or monetary recovery.

IF YOU ARE A MEMBER OF THE CLASS, your rights may be affected. The Class has been provisionally certified solely for the purpose of effectuating a potential settlement with Defendant Luckin Coffee Inc. (In Provisional Liquidation) ("Luckin") in this Action and pursuant to the relevant legislation under Cayman Islands law, including but not limited to presenting a scheme of arrangement under section 86 of the Companies Act (2021 Revision) referred to herein as a "Settlement"). More details are provided in the full Notice of Pendency of Class Action ("Notice"), which is currently being mailed to known potential Class Members.

If you have not yet received the full printed Notice, you may obtain a copy of the Notice by downloading it from www.LuckinCoffeeSecuritiesLitigation.com, or by contacting the Notice Administrator by toll-free phone at 1-855-535-1824, by email at info@LuckinCoffeeSecuritiesLitigation.com, or in writing at:

*In re Luckin Coffee Inc. Securities Litigation*
c/o Epiq
P.O. Box 5887
Portland, OR 97228-5887

Inquiries, other than requests for the Notice, may be made to the following representatives of Class Counsel:

Salvatore J. Graziano, Esq.                    Sharan Nirmul, Esq.
**BERNSTEIN LITOWITZ BERGER**          **KESSLER TOPAZ MELTZER**
**& GROSSMANN LLP**                              **& CHECK, LLP**
1251 Avenue of the Americas                  280 King of Prussia Road
New York, NY 10020                                 Radnor, PA 19087
1-800-380-8496                                          1-610-667-7706

If you are a Class Member, you have the right to decide whether to remain a member of the Class. *If you want to remain a member of the Class, you do not need to do anything at this time.* If you are a Class Member and do not exclude yourself from the Class, you will be bound by all proceedings in this Action that pertain to the Class and any Settlement reached. If you move, or if the Notice was mailed to an old or incorrect address, please send the Notice Administrator written notification of your new address.

If you ask to be excluded from the Class, under U.S. law, you will not be bound by any order or judgment of this Court in this Action that pertains to the Class; however, you may not be entitled to participate in or be eligible to share in any Settlement reached, except for where the Settlement is effected by a scheme of arrangement under section 86 of the Cayman Islands' Companies Act, which may be binding on all members of the Class irrespective of whether they choose to be excluded from the Class or not. To exclude yourself from the Class, you must submit a written request for exclusion postmarked *no later than September 17, 2021*, in accordance with the instructions set forth in the full printed Notice. Pursuant to Rule 23(e)(4) of the Federal Rules of Civil Procedure, it is within the Court's discretion as to whether a second opportunity to request exclusion from the Class will be allowed in the event there is a Settlement.

The Settlement may be effected through a scheme of arrangement process under the laws of the Cayman Islands ("Scheme"). If the Scheme is sanctioned by the Grand Court of the Cayman Islands ("Grand Court"), it will be binding on all creditors of the same class. Whether creditors are of the same class pursuant to the Scheme is a matter of Cayman Islands law but in the likely event that the Grand Court finds that all members of the Class for the purposes of U.S. law are also creditors of the same class under the Scheme, then the Scheme, once sanctioned, will be binding on you regardless of whether you exclude yourself from the Class. If you remain a member of the Class, your interests will be represented in the Scheme process by the Class Representatives and Class Counsel appointed by this Court, as well as by Cayman counsel retained by Class Counsel. If you exclude yourself from the Class, you must participate directly in the Scheme process in order to have your interests represented there.

**Further information regarding this notice may be obtained by writing to the Notice Administrator at the address provided above.**

**PLEASE DO NOT CONTACT THE COURT REGARDING THIS NOTICE.**

BY ORDER OF THE COURT:
United States District Court for the
Southern District of New York

---

**BUSINESS OPPORTUNITIES**

**Opportunity for Strategic or Tech Partner Investor**

Investment in an Entertaining Social Audio Clubhouse of $1 Million for Equity Position. Membership Generated Intellectual Property Based on True Stories for Audio Books, Film and TV. Monetized for Commercial Exploitation and Member Prizes. Business Owns Rights to Short Subject Catalog of 1,800 Real Stories Valued at $3.5 Million. Founders Have 50+ Years Combined Experience in Entertainment and Publishing.

August Media Company LLC
212-874-7150
bobacohen@me.com

THE WALL STREET JOURNAL.
**THE MARKETPLACE**
(800) 366-3975
wsj.com/classifieds
© 2021 Dow Jones & Company, Inc.
All Rights Reserved.

**BUSINESS OPPORTUNITIES**

# BUYING BILLBOARDS
Major Metro Areas only.
$1 million - $5 million range.
Cash, close in 30 days.
**Bill McKenna**
whmckenna@gmail.com
**502-724-5202**

**BUSINESS OPPORTUNITIES**

**GOLD BLACK SANDS - BOOMING !!**
**GOLD** tailings – All Metal Extractions
**300% + year / 25% month**
**PAID WEEKLY**
**MIN - $25k** - Accred Investors Only
**1-888-411-3140**

**BUSINESS OPPORTUNITIES**

**Facial Plastic Surgery Practice for sale**
One of Tampa Bay's most successful, long established practice is now available for purchase to qualified Physicians or PE firms. For more info about this opportunity email fstans@gmail.com
**Principals only Please**

# Bernstein Litowitz Berger & Grossmann LLP and Kessler Topaz Meltzer & Check, LLP Announce Provisional Certification of Class Action Involving Purchasers of Luckin Coffee Inc. American Depository Shares

NEWS PROVIDED BY
**Bernstein Litowitz Berger & Grossmann LLP and Kessler Topaz Meltzer & Check, LLP →**
Aug 05, 2021, 08:00 ET

NEW YORK, August 5, 2021 /PRNewswire/ --

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE LUCKIN COFFEE INC. SECURITIES LITIGATION | Case No. 1:20-cv-01293-JPC-JLC |

### SUMMARY NOTICE OF PENDENCY OF CLASS ACTION

**To:  All persons and entities (and their beneficiaries) that purchased or otherwise acquired the American Depository Shares of Luckin Coffee Inc. (In Provisional Liquidation) between May 17, 2019 through July 15, 2020, inclusive (the "Class").**

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Southern District of New York that the above-captioned action (the "Action") has been provisionally certified to proceed as a class action on

behalf of the Class described above, for settlement purposes.  Please note: at this time, there is no judgment, settlement, or monetary recovery.

IF YOU ARE A MEMBER OF THE CLASS, your rights may be affected. The Class has been provisionally certified solely for the purpose of effectuating a potential settlement with Defendant Luckin Coffee Inc. (In Provisional Liquidation) ("Luckin") in this Action and pursuant to the relevant legislation under Cayman Islands law, including but not limited to presenting a scheme of arrangement under section 86 of the Companies Act (2021 Revision) (referred to herein as a "Settlement"). More details are provided in the full Notice of Pendency of Class Action ("Notice"), which is currently being mailed to known potential Class Members.

If you have not yet received the full printed Notice, you may obtain a copy of the Notice by downloading it from www.LuckinCoffeeSecuritiesLitigation.com, or by contacting the Notice Administrator by toll-free phone at 1-855–535-1824, by email at info@LuckinCoffeeSecuritiesLitigation.com,  or in writing at:

*In re Luckin Coffee Inc. Securities Litigation*
c/o Epiq
P.O. Box 5887
Portland, OR 97228-5887

Inquiries, other than requests for the Notice, may be made to the following representatives of Class Counsel:

Salvatore J. Graziano, Esq.
**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
1-800-380-8496

Sharan Nirmul, Esq.
**KESSLER TOPAZ MELTZER**
**& CHECK, LLP**

280 King of Prussia Road

Radnor, PA 19087

1-610-667-7706

If you are a Class Member, you have the right to decide whether to remain a member of the Class. **If you want to remain a member of the Class, you do not need to do anything at this time**. If you are a Class Member and do not exclude yourself from the Class, you will be bound by all proceedings in this Action that pertain to the Class and any Settlement reached. If you move, or if the Notice was mailed to an old or incorrect address, please send the Notice Administrator written notification of your new address.

If you ask to be excluded from the Class, under U.S. law, you will not be bound by any order or judgment of this Court in this Action that pertains to the Class; however, you may not be entitled to participate in or be eligible to share in any Settlement reached, except for where the Settlement is effected by a scheme of arrangement under section 86 of the Cayman Islands' Companies Act, which may be binding on all members of the Class irrespective of whether they choose to be excluded from the Class or not. To exclude yourself from the Class, you must submit a written request for exclusion postmarked **no later than September 17, 2021**, in accordance with the instructions set forth in the full printed Notice. Pursuant to Rule 23(e)(4) of the Federal Rules of Civil Procedure, it is within the Court's discretion as to whether a second opportunity to request exclusion from the Class will be allowed in the event there is a Settlement.

The Settlement may be effected through a scheme of arrangement process under the laws of the Cayman Islands ("Scheme"). If the Scheme is sanctioned by the Grand Court of the Cayman Islands ("Grand Court"), it will be binding on all creditors of the same class. Whether creditors are of the same class pursuant to the Scheme is a matter of Cayman Islands law but in the likely event that the Grand Court finds that all members of the Class for the purposes of U.S. law are also creditors of the same class under the Scheme, then the Scheme, once sanctioned, will be binding on you regardless of whether you exclude yourself from the Class. If you remain a member of the Class, your interests will be represented in the Scheme process by the Class Representatives and Class Counsel appointed by this Court, as well as by Cayman counsel retained by Class Counsel.  If you exclude yourself from the Class, you must participate directly in the Scheme process in order to have your interests represented there.

**Further information regarding this notice may be obtained by writing to the Notice Administrator at the address provided above.**

**PLEASE DO NOT CONTACT THE COURT REGARDING THIS NOTICE.**

BY ORDER OF THE COURT:

United States District Court for the

Southern District of New York

SOURCE Bernstein Litowitz Berger & Grossmann LLP and Kessler Topaz Meltzer & Check, LLP

Related Links

http://www.LuckinCoffeeSecuritiesLitigation.com