# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

IN RE LUCKIN COFFEE INC.
SECURITIES LITIGATION

Case No. 1:20-cv-01293-JPC-JLC

**MEMORANDUM OF LAW IN SUPPORT OF CLASS REPRESENTATIVES'
UNOPPOSED MOTION FOR AN ORDER PRELIMINARILY APPROVING
PROPOSED SETTLEMENT AND AUTHORIZING DISSEMINATION OF
<u>SETTLEMENT NOTICE TO THE CLASS</u>**

# TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ...................................................................................1

II.     FACTUAL BACKGROUND......................................................................................4

    A.      Overview of the Action.................................................................................4

    B.      Certification of Class for Purposes of Settlement........................................7

    C.      Settlement Negotiations and Terms of the Proposed Settlement...........................8

III.    THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ..................9

    A.      Standards Governing Approval of Class Action Settlements ..................................9

    B.      The Court "Will Likely Be Able to" Approve the Proposed Settlement
            Under Rule 23(e)(2)...........................................................................................11

          1.      "Procedural" Aspects of the Settlement Satisfy Rule 23(e)(2)..................11

          2.      The Settlement's Terms Are Adequate.......................................................13

                  a.      The Settlement Provides Substantial Relief, Especially in
                          Light of the Costs, Risks, and Delay of Further Litigation............14

                  b.      The Proposed Settlement Does Not Unjustly Favor Any
                          Class Member ............................................................................17

                  c.      The Anticipated Request for Attorneys' Fees is Reasonable.........18

                  d.      Class Representatives Have Identified All Agreements
                          Made in Connection with the Settlement......................................19

IV.     THE COURT SHOULD APPROVE THE FORM, CONTENT, AND METHOD
       FOR DISSEMINATING NOTICE OF THE SETTLEMENT TO THE CLASS .............20

V.      THE COURT SHOULD NOT REQUIRE A SECOND OPT-OUT PERIOD.................22

VI.     PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS ...........................24

VII.    CONCLUSION....................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arbuthnot v. Pierson*,
 607 F. App'x 73 (2d Cir. 2015) ............................................................................20

*In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.*,
 148 F. Supp. 3d 303 (S.D.N.Y. 2015)...................................................................19

*Christine Asia Co., Ltd. v. Jack Yun Ma*,
 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ........................................................19

*In re Citigroup Inc. Bond Litig.*,
 296 F.R.D. 147 (S.D.N.Y. 2013) ...........................................................................17

*City of Detroit v. Grinnell Corp.*,
 495 F.2d 448 (2d Cir. 1974)...................................................................................11

*City of Providence v. Aeropostale, Inc.*,
 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ....................................................13, 22

*Denney v. Deutsch Bank AG*,
 443 F.3d 253 (2d Cir. 2006)...................................................................................23

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*,
 343 F. Supp. 3d 394 (S.D.N.Y. 2018).....................................................................12

*In re Gilat Satellite Networks, Ltd.*,
 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) .......................................................16

*In re Glob. Crossing Sec. & ERISA Litig.*,
 225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................11, 12

*In re Graña y Montero S.A.A. Sec. Litig.*,
 2021 WL 4173684 (E.D.N.Y. Aug. 13, 2021)...........................................9, 10, 13

*In re Initial Pub. Offering Sec. Litig.*,
 243 F.R.D. 79 (S.D.N.Y. 2007) .............................................................................11

*Low v. Trump Univ., LLC*,
 881 F.3d 1111 (9th Cir. 2018) ...............................................................................23

*McMahon v. Olivier Cheng Catering & Events, LLC*,
 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) .........................................................11

*Menkes v. Stolt-Nielsen S.A.*,
 270 F.R.D. 80 (D. Conn. 2010)..............................................................................22

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................13

*NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*,
    2016 WL 3369534 (S.D.N.Y. May 2, 2016) ..........................................19

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972) ...............................................................14

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019) ...........................................................14

*In re Polaroid ERISA Litig.*,
    240 F.R.D. 65 (S.D.N.Y. 2006) ..........................................................13

*In re Signet Jewelers Ltd. Sec. Litig.*,
    2020 WL 4196468 (S.D.N.Y. July 21, 2020) ......................................19

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) ................................................18

*Velez v. Novartis Pharm. Corp.*,
    2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ......................................18

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) .......................................................9, 22, 23

*In re Warner Chilcott Ltd. Sec. Litig.*,
    2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ......................................22

**Statutes**

15 U.S.C. § 77z-1(a) ................................................................21, 22

15 U.S.C. § 78u-4(a) ..........................................................18, 21, 22

**Other Authorities**

Fed. R. Civ. P. 23 ..........................................................9, 10, 11, 17

Court-appointed Class Representatives Sjunde AP-Fonden ("AP7") and Louisiana Sheriffs' Pension & Relief Fund ("Louisiana Sheriffs" and, together with AP7, "Class Representatives" or "Lead Plaintiffs") respectfully submit this Memorandum of Law in support of their unopposed motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rules"), for entry of the Settling Parties' agreed-upon [Proposed] Order Preliminarily Approving Settlement and Providing for Notice of the Settlement ("Preliminary Approval Order"), submitted herewith.[1]

## I.    PRELIMINARY STATEMENT

Class Representatives have reached an agreement with Luckin Coffee Inc. (in Provisional Liquidation) ("Luckin" or the "Company") to resolve all claims asserted in the Action against Defendants[2] in exchange for a $175,000,000 cash payment pursuant to the Stipulation. If approved, the Settlement will resolve the Action in its entirety. At this time, Class Representatives seek the Court's preliminary approval of the Settlement under Rule 23 so that Class Representatives can disseminate notice of the Settlement to the Class and the Court can schedule the Settlement Hearing.

The Settlement represents an excellent result for the Class in light of the risks and challenges of the Action, including the fact that Luckin is in liquidation proceedings. In agreeing to resolve the Action, Class Representatives and Class Counsel made a fully informed evaluation

---

[1]    All capitalized terms not defined herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated October 20, 2021 ("Stipulation"), filed concurrently herewith.

[2]    The term Defendants refers collectively to: (i) Luckin; (ii) Charles Zhengyao Lu, Jenny Zhiya Qian, Jian Liu, and Reinout Hendrik Schakel (the "Executive Defendants"); (iii) Hui Li, Erhai Liu, Jinyi Guo, Sean Shao, and Thomas P. Meier (the "Director Defendants"); and (iv) Credit Suisse Securities (USA) LLC, Morgan Stanley & Co. LLC, China International Capital Corporation Hong Kong Securities Limited, Haitong International Securities Company Limited, KeyBanc Capital Markets Inc., and Needham & Company, LLP (the "Underwriter Defendants").

of the risks of continued litigation and the fairness of resolution at this time. Class Representatives respectfully submit that the Settlement appropriately balances Class Representatives' objective of securing the highest possible monetary recovery for the Class against the significant risk that they could receive a smaller recovery—or no recovery at all—after further litigation.

Had the Action continued, Class Representatives would have faced significant challenges to proving liability and damages against any solvent Defendant in the case and in securing payment for any judgment obtained. At the time of settlement, Luckin—the issuer of the securities that form the basis for this Action—had entered into provisional liquidation proceedings in the Cayman Islands and commenced a proceeding under Chapter 15 of the United States ("U.S.") Bankruptcy Code, which stayed the litigation of claims against it. All of the Executive Defendants, and all but one of the Director Defendants were residents of the Peoples Republic of China ("PRC") and despite being served internationally via The Hague Convention procedures, had not appeared in the Action. In addition, the Underwriter Defendants and one outside director, Mr. Thomas P. Meier (the only Defendants other than Luckin who appeared in the Action), had filed motions to dismiss Class Representatives' Consolidated Class Action Complaint ("Complaint") which were fully briefed and pending. Even if Class Representatives defeated these pending motions, in whole or in part, they would have faced additional risks to proving their claims against these Defendants at summary judgment and trial. These risks included a substantial due diligence defense by the Underwriter Defendants, who would have asserted that the alleged fraud at Luckin was hidden from them. And to the extent that Class Representatives were able to obtain a judgment against the Director Defendants or Executive Defendants, enforcing such judgment against these Defendants would have presented significant challenges. In sum, there can be no doubt that Luckin's financial condition made achieving a recovery in this Action more challenging (and

urgent); however, Class Representatives and Class Counsel were able to negotiate a resolution of the Action that provides a very favorable recovery for the Class under the circumstances.

Class Representatives and Class Counsel have devoted a substantial amount of time, effort, and resources to litigating this Action. Prior to settlement, Class Representatives and Class Counsel conducted an extensive investigation, including interviews with former Luckin employees; filed a detailed complaint; briefed oppositions to motions to dismiss; navigated Luckin's insolvency proceedings in the Cayman Islands and bankruptcy filing in the U.S. and their implications for the Action with the assistance of Cayman Islands' counsel and U.S. bankruptcy counsel; and developed and executed a strategy that allowed the Class to achieve the result reflected by the Settlement. Class Representatives and Class Counsel also engaged in hard-fought, arm's-length settlement negotiations with Luckin through the Joint Provisional Liquidators ("JPLs") appointed by the Cayman Islands Grand Court and also directly with Luckin, through its counsel. In connection with Class Representatives' active participation in the Cayman insolvency proceedings, and based on Class Representatives' requests for information in connection with those proceedings, Luckin made various disclosures to Class Representatives including of its current financial condition which were analyzed by Class Representatives and their valuation and bankruptcy experts. Accordingly, Class Representatives and Class Counsel had a detailed and well-developed understanding of the strengths, weaknesses, and risks of the Action, which informed their determination that the Settlement is fair, reasonable, and adequate.

At the Settlement Hearing, the Court will have before it more extensive submissions in support of the Settlement, and will be asked to determine whether, in accordance with Rule 23(e)(2), the Settlement is fair, reasonable, and adequate. Entry of the Preliminary Approval Order will begin the process for consideration of final approval of the Settlement by, among other things:

(i) preliminarily approving the Settlement on the terms set forth in the Stipulation; (ii) approving the retention of Epiq Class Action & Claims Solutions, Inc. ("Epiq"), the administrator previously approved by the Court in connection with Class Notice, as Claims Administrator; (iii) approving the form and content of the Settlement notices and Claim Form (Exhibits 1, 2, and 3 to the Preliminary Approval Order); (iv) finding the plan for disseminating the notices constitutes the best notice practicable under the circumstances and complies with due process, Rule 23, and the PSLRA; and (v) setting a date and time for the Settlement Hearing, at which the Court will consider final approval of the Settlement, the Plan of Allocation, and Class Counsel's request for attorneys' fees and expenses, as well as a schedule for related events and deadlines.

For the reasons set forth herein, Class Representatives respectfully submit that the Settlement warrants the Court's preliminary approval and respectfully request the Court enter the Preliminary Approval Order.

## II.    FACTUAL BACKGROUND

### A.    <u>Overview of the Action</u>

Luckin is a Cayman Islands corporation with principal executive offices in Fujian, China. During the Class Period, Luckin operated an extensive network of retail coffee stores in China. Luckin reported increasing revenues in the offering materials for Luckin's initial public offering of American Depository Shares ("ADSs") on May 17, 2019 ("IPO"), in the quarters following the IPO, and in the offering materials for Luckin's secondary public offering on January 10, 2020 ("SPO" and, together with the IPO, the "Offerings").

On January 31, 2020, an anonymous report was published by Muddy Waters Research, suggesting that Luckin's increased revenues were fraudulent. On April 2, 2020, Luckin voluntarily disclosed that nearly $300 million of its sales between the second and fourth quarters of 2019 were associated with fabricated transactions and advised investors to "no longer rely upon the

Company's previous financial statements and earnings releases for the nine months ended September 30, 2019 and the two quarters starting April 1, 2019 and ended September 30, 2019, including the prior guidance on net revenues from products for the fourth quarter of 2019, and other communications relating to these consolidated financial statements." Following these revelations, the price of Luckin ADSs dropped dramatically. On June 29, 2020, trading of Luckin ADSs on the NASDAQ was suspended.

Beginning in February 2020, a series of lawsuits alleging that Luckin and the other Defendants had violated United States securities laws were filed in this Court. On May 15, 2020, the Court consolidated all related actions into this Action. ECF No. 104. On June 12, 2020, the Court appointed AP7 and Louisiana Sheriffs as Lead Plaintiffs pursuant to the PSLRA and approved Lead Plaintiffs' selection of Kessler Topaz Meltzer & Check, LLP ("KTMC") and Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") as Lead Counsel. ECF No. 118.

On September 24, 2020, Lead Plaintiffs filed the Complaint, asserting claims under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Section 11 of the Securities Act of 1933 ("Securities Act") against Luckin and the other Defendants. ECF No. 150. The Complaint alleges, among other things, that Defendants included material misstatements and omissions in the offering documents for the IPO and the SPO regarding, *inter alia*: (i) Luckin's compliance with laws and regulations, GAAP, and internal controls over financial reporting; (ii) the reasons for Luckin's increased earnings and growth leading up to the IPO and between the IPO and the SPO; (iii) Defendants' reported revenues and expenses; and (iv) Luckin's related-party transactions. The Complaint also alleges that the offering materials for the SPO omitted material facts concerning the margin loan facility some of the underwriters for the SPO entered into with Charles Zhengyao Lu, Luckin's co-founder and then Chairman of Luckin's Board of

Directors, and Jenny Zhiya Qian, Luckin's co-founder and then member of Luckin's Board of Directors. Additionally, Lead Plaintiffs allege that between the IPO and SPO, Luckin and certain other Defendants made material misstatements and omissions regarding, among other things, Luckin's operating expenses and financial reports, and, following the SPO, falsely denied allegations contained in the report published by Muddy Waters Research on January 31, 2020.

On November 23, 2020, Luckin moved to dismiss certain portions of the Complaint and the Underwriter Defendants moved to dismiss the Complaint in its entirety. ECF Nos. 204 & 210. Lead Plaintiffs opposed these motions to dismiss on January 22, 2021. ECF Nos. 220 & 222. On February 4, 2021, Defendant Thomas P. Meier filed a motion to dismiss the Complaint. ECF No. 224. Lead Plaintiffs opposed Mr. Meier's motion on May 5, 2021. ECF No. 256.

While the Action was proceeding in this Court, Luckin entered into provisional liquidation proceedings. More specifically, on July 15, 2020, Luckin announced that by order of the Grand Court of the Cayman Islands ("Grand Court"), the JPLs had been appointed over the Company following the presentation of a winding-up petition filed by a Luckin creditor.

In December 2020, Luckin reached a settlement with the Securities and Exchange Commission in which it agreed to pay a $180 million fine, which could be offset by any settlement Luckin reached with either the holders of Luckin's convertible bonds or Luckin's shareholders in connection with the Cayman proceedings. On January 29, 2021, Luckin's JPLs disclosed that they had reached an agreement in principle with holders of Luckin's convertible bonds, and that they would separately seek to resolve the claims of investors in Luckin ADSs that are members of the Class in the Action. Thereafter, on February 5, 2021, Luckin's JPLs commenced a proceeding under Chapter 15 of the U.S. Bankruptcy Code, captioned *In re Luckin Coffee Inc. (In Provisional Liquidation)*, No. 21-10228 (MG) (Bankr. S.D.N.Y.), to recognize the Cayman Islands provisional

liquidation proceedings as a foreign main proceeding in order to seek certain protections under the U.S. Bankruptcy Code.

  **B.**   <u>**Certification of Class for Purposes of Settlement**</u>

  On March 2, 2021, Lead Plaintiffs and Luckin filed a stipulation and proposed order provisionally certifying the Class for purposes of negotiating and implementing a settlement. ECF No. 235. On March 5, 2021, the Court issued an Order: (i) granting provisional class certification of the Class for settlement purposes; (ii) certifying a class consisting of all persons and entities (and their beneficiaries) that purchased or otherwise acquired the ADSs of Luckin between May 17, 2019 through July 15, 2020, inclusive; (iii) appointing Lead Plaintiffs AP7 and Louisiana Sheriffs as Class Representatives; and (iv) appointing KTMC and BLB&G as Class Counsel. ECF No. 245.

  On May 14, 2021, Class Representatives and Luckin filed a stipulation and proposed order regarding dissemination of class notice. ECF No. 258. On July 6, 2021, the Court issued an Order approving the form and manner of notifying the Class of the pendency of the Action as a class action. ECF No. 304. Pursuant to the Order, and beginning on July 13, 2021, Epiq mailed the Notice of Pendency of Class Action ("Class Notice") to potential Class Members and nominees. ECF No. 309, ¶¶ 6-10. Pursuant to the Order, Epiq also caused a summary class notice to be published in *The Wall Street Journal* and transmitted over *PR Newswire* on August 5, 2021 and developed a case-dedicated website, www.LuckinCoffeeSecuritiesLitigation.com. *Id.*, ¶¶ 11, 14.

  The Class Notice provided Class Members with the opportunity to request exclusion from the Class, explained that right, and set forth the procedures for doing. *Id.* at Ex. A. The Class Notice also advised Class Members that it would be within the Court's discretion whether to permit a second opportunity to request exclusion if there was a settlement. *Id*. In addition, the Class Notice informed Class Members that if they chose to remain a member of the Class and a settlement was

reached, they would "be bound by all past, present, and future orders and judgments in the Action related to the settlement, whether favorable or unfavorable." *Id.*

On October 8, 2021, Class Representatives submitted the Declaration of Alexander P. Villanova, who reported that Epiq had mailed an aggregate of 455,352 Class Notices to potential Class Members and nominees via first-class mail. ECF No. 309, ¶ 10. Out of the hundreds of thousands of Class Notices mailed, a total of one hundred and ten (110) requests for exclusion from the Class were received. *See* Stipulation (App. 1); ECF No. 309, ¶¶ 15-16, Ex. C. Nearly all of the institutions and individuals who previously objected to the Court's certification of the Class for settlement purposes and the sending of notice to Class Members have requested exclusion from the Class and thus will not be affected by the proposed Settlement. In addition, the institutions and individuals that appealed the Court's order approving sending of notice to the Class have voluntarily dismissed their appeals with prejudice.

### C.    Settlement Negotiations and Terms of the Proposed Settlement

In connection with the insolvency proceedings and facilitated by the JPLs, Class Representatives and Luckin begin discussing the possibility of resolving the Action. Thereafter, while the Class Notices were being mailed, Class Representatives and Luckin began negotiating directly a potential resolution. Following lengthy, hard-fought negotiations, the Settling Parties reached an agreement in principle to settle the Action and executed a term sheet memorializing their agreement on September 20, 2021.

Thereafter, the Settling Parties negotiated the specific terms of their agreement to resolve the Action, executing the Stipulation on October 20, 2021. On October 21, 2021, the Grand Court approved proceeding with the Settlement, as required under Schedule 3, Part 1, paragraph 5 of the Cayman Islands' Companies Act (2021 Revision). The Stipulation provides that Luckin, on behalf of all Defendants' Released Parties, will pay or cause to be paid $175,000,000 into an interest-

bearing escrow account controlled by Class Counsel. The Settlement is not a claims-made settlement. The Class will receive the full benefit of the $175,000,000 payment net of Court-approved fees and expenses, and there will be no reversion of funds to Luckin or any other person or entity who or which paid any portion of the Settlement Amount once the Settlement has become Final. *See* Stip., ¶¶ 1(x); 16. Once the Settlement becomes Final, the Net Settlement Fund will be distributed among eligible Class Members who submit valid Claims in accordance with a Court-approved plan of allocation.

Upon the Effective Date of the Settlement, Class Members will release the "Released Plaintiffs' Claims" against Defendants and certain related persons and entities in exchange for the Settlement Amount and the right to participate in the distribution of the Net Settlement Fund. *See* Stip., ¶ 1(pp). The release's scope is reasonable as it is limited to claims related to the purchase or acquisition of Luckin ADSs during the Class Period, and to the allegations, transactions, facts, matters or occurrences, representations, or omissions set forth in the Complaint. *Id*.

## III.    THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

### A.    <u>Standards Governing Approval of Class Action Settlements</u>

Rule 23(e) requires judicial approval for a compromise of claims brought on a classwide basis. Fed. R. Civ. P. 23(e) ("The claims . . . of a certified class . . . may be settled . . . only with the court's approval.").[3] Strong judicial policy favors settlement of class actions. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy."); *In re Graña y Montero S.A.A. Sec. Litig.*, 2021 WL 4173684, at \*7 (E.D.N.Y. Aug. 13, 2021), R&R adopted,

---

[3]    Unless otherwise noted, all emphasis in quotations is added, and internal quotation marks, citations and footnotes are omitted.

2021 WL 4173170 (E.D.N.Y. Sept. 14, 2021) ("[C]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.") (alteration in original).

The procedure for approval of a proposed class action settlement is a well-established, two-step process. First, the court performs a preliminary review of the terms of the proposed settlement to determine whether to send notice of the proposed settlement to the class, *see* Fed. R. Civ. P. 23(e)(1); and second, after notice has been provided and a hearing has been held, determines whether to grant final approval of the settlement, *see* Fed. R. Civ. P. 23(e)(2).

With respect to the first step of the process, the Rules instruct that a court should grant preliminary approval to authorize notice of a settlement to the class upon a finding that it "*will likely be able to*" (i) finally approve the settlement under Rule 23(e)(2) and (ii) certify the class for purposes of the settlement.[4] *See* Fed. R. Civ. P. 23(e)(1)(B). In considering whether final approval is likely, Rule 23(e)(2) provides that the Court consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

At the final approval stage, the Court will also be asked to consider the Second Circuit approval factors—many of which overlap with the Rule 23(e)(2) factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial;

---

[4]     Here, the Court has already certified the Class in the Action for purposes of settlement. ECF No. 245.

> (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000), *see also* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendments (noting that Rule 23(e)(2) factors are not intended to "displace any factor" previously adopted by the Court of Appeals, "but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").

The Rule 23(e)(2) factors effectively codify prior case law providing that courts should grant preliminary approval "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

Because each of the Rule 23(e)(2) factors are satisfied here, final approval of the Settlement is "*likely*", and preliminary approval is merited.

**B.    The Court "Will Likely Be Able to" Approve the Proposed Settlement Under Rule 23(e)(2)**

**1.    "Procedural" Aspects of the Settlement Satisfy Rule 23(e)(2)**

Rule 23(e)(2)'s first two factors "look[] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Rule 23(e)(2) advisory committee's note to 2018 amendments. The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *McMahon v. Olivier Cheng Catering & Events, LLC*, 2010 WL 2399328, at *5 (S.D.N.Y. Mar. 3, 2010); *see also In re Glob. Crossing Sec. & ERISA*

*Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("Formal discovery is not a prerequisite [to settlement]; the question is whether the parties had adequate information about their claims.").

This Settlement embodies all the hallmarks of a procedurally fair resolution under Rule 23(e)(2). *First*, at the time the Settlement was reached, Class Counsel were well informed by, among other things, the significant work performed in: (i) investigating and drafting the detailed Complaint, including the review of voluminous public documents, extensive consultation with relevant experts, and interviews with former employees of Luckin; (ii) opposing Defendants' motions to dismiss the Complaint; (iii) navigating Luckin's bankruptcy filing and its implications for the Action with the assistance of experienced bankruptcy counsel; (iv) monitoring documents filed in proceedings involving Luckin and Defendants in the Grand Court with the assistance of Cayman counsel; and (v) obtaining information from Luckin through the Cayman proceedings regarding Luckin's present financial condition and analyzing such information with assistance from Class Representatives' valuation and bankruptcy experts. Armed with this knowledge, Class Counsel—who have extensive experience litigating securities class actions—conducted the settlement negotiations seeking to achieve the best possible result for the Class, while at the same time accounting for the significant risks of continued litigation. *See, e.g., In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 343 F. Supp. 3d 394, 412 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020) (finding support for settlement where plaintiffs and their counsel had a "sufficient understanding of the case to gauge the strengths and weaknesses of their claims as well as the adequacy of the settlement").

*Second*, as the Court recognized in appointing AP7 and Louisiana Sheriffs as Class Representatives and KTMC and BLB&G as Class Counsel in connection with class certification (ECF No. 245), Class Representatives and Class Counsel have adequately represented the Class in

the Action and Class Representatives have claims typical of those of other Class Members. Moreover, like the rest of the Class, Class Representatives have an interest in obtaining the largest possible recovery from Defendants. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

*Third*, the Settlement is the result of hard-fought negotiations between the Settling Parties. It was only following about eight weeks of arm's-length discussions, that followed negotiations first initiated by the JPLs in connection with the Cayman insolvency proceedings, requiring consultation with both bankruptcy counsel and Cayman counsel and analysis of complicated issues concerning damages as well as settlement with a PRC and Cayman Island-based defendant, that Class Representatives and Class Counsel agreed to resolve the Action with Luckin. *See City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at \*4 (S.D.N.Y. May 9, 2014) ("initial presumption of fairness and adequacy applies" where "Settlement was reached by experienced, fully-informed counsel after arm's-length negotiations"), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (Courts have consistently given "'great weight' . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation."). Moreover, "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Graña y Montero S.A.A. Sec. Litig.*, 2021 WL 4173684, at \*11(alterations in original).

## 2. The Settlement's Terms Are Adequate

Rules 23(e)(C) and (D) direct the Court to evaluate whether "the relief provided for the class is adequate" and "the proposal treats class members equitably relative to each other." Here, the Settlement represents a very favorable result for the Class in light of the risks of further

litigation. Furthermore, Class Counsel, with the assistance of Class Representatives' damages consultant, has proposed a plan for allocating the Settlement proceeds that ensures all Class Members will be treated equitably relative to their respective losses.

### a.  The Settlement Provides Substantial Relief, Especially in Light of the Costs, Risks, and Delay of Further Litigation

A key factor to be considered in assessing approval of a class action settlement is the plaintiff's likelihood of success on the merits, balanced against the relief offered in the settlement. Here the Settlement provides for a near-term cash recovery of $175,000,000 to be allocated among Class Members following the deduction of Court-approved fees and expenses. In comparison, had the Action continued, Class Representatives would face numerous risks that could have precluded them from securing any recovery on behalf of the Class. As the Second Circuit has explained, there is "a range of reasonableness with respect to a settlement" that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 33 (E.D.N.Y. 2019) (in considering reasonableness, "a court must compare the terms of the compromise with the likely rewards of litigation").

While Class Representatives remain confident in their ability to prove their claims, further litigation is always a risky proposition, and that was particularly so here. As noted above, Luckin, the Underwriter Defendants, and Director Defendant Thomas Meier each filed a motion to dismiss the Complaint and these motions were pending when the Settlement was reached. The bankruptcy stay precluded the claims against Luckin from proceeding at all. Even if Class Representatives' claims survived the remaining motions to dismiss, in whole or in part, they faced substantial challenges of proof, at summary judgment and trial, that these Defendants were liable for the

alleged material misrepresentations and omissions during the Class Period. With respect to their Securities Act claims, Class Representatives faced substantial challenges to proving that the Underwriter Defendants and Director Defendant Thomas Meier failed to perform adequate due diligence to have discovered the alleged fraud. The Securities Act claims were also limited to those investors who purchased in, or traceable to, the Offerings and in this regard, there were significant risks to establishing that Class Members purchased ADSs traceable to the allegedly false or misleading registration statements.

The risk to continued litigation, and ultimately, the collectability of a judgment, was especially acute here as the issuer of the securities forming the basis of the Action was in bankruptcy. Moreover, even if Luckin had not discharged its liabilities to Class Representatives through bankruptcy, there would be significant challenges in enforcing any judgment against Luckin's assets located in the PRC. Similarly, there also were risks to securing and enforcing a judgment against the Executive Defendants—the only Defendants, besides Luckin, that were subject to Class Representatives' Exchange Act claims—and the Director Defendants, as they were all foreign nationals and all but one—Thomas Meier, a Director Defendant who resides in Switzerland—were residents of the PRC and did not enter appearances in the Action. Two of the six Underwriter Defendants were also based in the PRC.

Additionally, further litigation would have required substantial additional expenditures of time and resources. Discovery would be particularly complex given that Luckin is a Cayman Islands corporation with principle executive offices in the PRC, and the majority of the Executive and Director Defendants are foreign nationals residing in the PRC. As such, there was no guarantee that Class Representatives would have been able to obtain the necessary evidence to prove their case through discovery; and even if they could do so, it would be costly (*e.g.,* requiring extensive

translation or the retention of bilingual attorneys to facilitate document review) and significantly delay any potential recovery to Class Members. *See In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *10 (E.D.N.Y. Sept. 18, 2007) (finding complications of discovery with foreign defendant to weigh in favor of settlement).

The Settling Parties have estimated the Class's absolute maximum aggregate damages in the Action to be approximately $2.75 billion. Using this estimate, the Settlement represents approximately 6.4% of the absolute maximum damages. This damages estimate presupposes that Class Representatives would have been able to secure a judgment against the Section 10(b) Defendants for liability that extended throughout the Class Period. As noted above, none of the Section 10(b) Defendants except for Luckin had appeared in the Action and the claims against Luckin were stayed by virtue of the Bankruptcy Stay. The live claims against the Underwriter Defendants and Director Defendant Meier were exclusively under the Securities Act based on shares traceable to the IPO and SPO and the estimated damages for those claims was approximately $800 million. And this estimate of damages would have been reduced if the Underwriter Defendants were successful in arguing that the fraud did not begin until after the IPO, as Luckin's internal investigation concluded. Damages based only on the SPO, when Luckin had conceded that the fraud had materially inflated its revenues, were estimated to be approximately $360 million. And of course, these damages would have been zero if the Underwriter Defendants and Mr. Meier were successful in proving that their due diligence was adequate and could not have discovered the fraud. In light of the substantial risks of further litigation, including the hurdles resulting from Luckin's liquidation and bankruptcy proceedings, and the challenges of proceeding against defendants located in the PRC, Class Representatives believe the Settlement is a very

favorable result for the Class. Accordingly, the recovery obtained here would be a good recovery in any securities action, but is particularly favorable considering the circumstances of this Action.

**b.**        **The Proposed Settlement Does Not Unjustly Favor Any Class Member**

The Court must also ultimately assess the Settlement's effectiveness in distributing relief to members of the Class. Fed. R. Civ. P. 23(e)(2)(C)(ii). Here, too, the Court can readily find the Settlement will likely earn approval. The Plan of Allocation ("Plan") that Class Representatives propose provides for a straightforward and effective means of distributing the Net Settlement Fund to the Class, and treats Class Members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(D).

Here, the Plan provides for distribution of the Net Settlement Fund to Class Members who submit timely and valid Claims demonstrating a loss on their transactions in Luckin ADSs purchased or acquired during the Class Period. The formula to apportion the Net Settlement Fund—developed in consultation with Class Representatives' damages consultant—is based on, for Exchange Act losses, the estimated artificial inflation in the price of Luckin ADSs over the course of the Class Period that was allegedly caused by Defendants' alleged misconduct and, for Securities Act losses, the statutory formula at Section 11(e). *See In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 158 (S.D.N.Y. 2013) ("When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis."). Further, the Plan apportions the Net Settlement Fund among Class Members based on when they purchased, acquired, and/or sold their Luckin ADSs, and was created without consideration of Class Representatives' individual transactions.[5] This method ensures Class Members' recoveries

---

[5]       As set forth in the Settlement Notice, based on Class Representatives' damages consultant's estimate of the number of Luckin ADSs that may have been affected by the alleged misconduct, and assuming that all Class Members elect to participate in the Settlement, the

are based upon the relative losses they sustained, and eligible Class Members will receive a *pro rata* distribution from the Net Settlement Fund calculated in the same manner. *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 581 (S.D.N.Y. 2008) ("Pro-rata distribution of settlement funds based on investment loss is clearly a reasonable approach."). Accordingly, the Plan applies in an equitable manner to all Class Members.[6]

<strong>c.    <u>The Anticipated Request for Attorneys' Fees is Reasonable</u></strong>

The Settlement Notice provides that Class Counsel will apply for an award of attorneys' fees not to exceed 25% of the Settlement Fund, plus reimbursement or payment of litigation expenses incurred by Plaintiffs' Counsel in connection with the institution, prosecution, and resolution of the claims against Luckin and the other Defendants. A fee of up to 25% is reasonable here, and is supported by case law in this District. *See Velez v. Novartis Pharm. Corp.*, 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010) ("The federal courts have established that a standard fee in complex class action cases like this one, where plaintiffs counsel have achieved a good recovery for the class, ranges from 20 to 50 percent of the gross settlement benefit."). Moreover,

---

estimated average recovery (before deduction of Court-approved fees, expenses, and costs) per eligible Luckin ADS is approximately $0.44. This is only an estimate and some Class Members may recover more or less than this amount depending on, *inter alia*: (i) when and the price at which they purchased/acquired their ADSs; (ii) whether the ADSs were purchased in the Offerings or on the open market; (iii) whether they sold their ADSs; (iv) the total value of valid Claims submitted; (v) the amount of Notice and Administration Costs; and (vi) the amount of attorneys' fees and Litigation Expenses awarded by the Court.

[6]    The proposed Settlement Notice (Ex. A-1 to the Stipulation) also explains that Class Counsel's request for expenses may include a request for reimbursement of Class Representatives' reasonable costs and expenses directly relating to their representation of the Class, as permitted by the PSLRA. 15 U.S.C. § 78u-4(a)(4) ("The share of any final judgment or of any settlement that is awarded to a representative party serving on behalf of a class shall be equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class. Nothing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class.").

there is ample precedent for granting fees of 25% (or greater) in securities class actions where the recovery obtained for the class is of comparable size. *See, e.g., In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *15-16 (S.D.N.Y. July 21, 2020) (awarding 25% of $240 million settlement net of expenses); *Christine Asia Co., Ltd. v. Jack Yun Ma*, 2019 WL 5257534, at *17 (S.D.N.Y. Oct. 16, 2019) (awarding 25% of $250 million settlement); *In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.*, 148 F. Supp. 3d 303, 305 (S.D.N.Y. 2015) (awarding 25% of $180 million settlement).

A fee up to 25% would also befit the substantial risks Class Counsel undertook in pursuing the claims in this Action, their extensive litigation efforts and the excellent recovery obtained for the Class. Further, Class Members will have an opportunity to weigh in on Class Counsel's fee request before the Settlement Hearing.[7]

### d.    Class Representatives Have Identified All Agreements Made in Connection with the Settlement

In connection with the Settlement, the Settling Parties have entered into a confidential Supplemental Agreement regarding requests for exclusion, dated October 20, 2021 ("Supplemental Agreement"). *See* Stip., ¶ 41. Pursuant to the Supplemental Agreement, Luckin shall have the option to terminate the Settlement in the event that the total damages of the persons and entities who validly request exclusion from the Class (including, in the event the Court orders

---

[7]    Additionally, the timing of payment of Class Counsel's fees—upon issuance of an order awarding fees—is appropriate, and consistent with common practice in cases of this nature. The Stipulation provides that if the Settlement is ultimately terminated or the fee award is later reduced or reversed, Class Counsel will refund or repay the subject amount to the Settlement Fund. *See* Stip., ¶ 19; *see also, e.g., NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*, 2016 WL 3369534, at *1 (S.D.N.Y. May 2, 2016) ("the fees and expenses awarded herein shall be paid from the Settlement Fund to Lead Counsel immediately upon entry of this Order, notwithstanding the existence of any timely filed objections thereto, if any, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Plaintiffs' Counsel's obligation to repay all such amounts with interest").

a second opportunity to opt out of the Class in connection with the Settlement, any valid opt-outs from a subsequent opt-out deadline) exceed certain agreed-upon conditions stated in the Supplemental Agreement. As is standard practice in securities class actions, the Supplemental Agreement is not being made public and, pursuant to its terms, the Supplemental Agreement may only be submitted to the Court *in camera* or under seal. The Supplemental Agreement, Stipulation, and Term Sheet (as noted above) are the only agreements concerning the Settlement entered into by the Settling Parties.

## IV.   THE COURT SHOULD APPROVE THE FORM, CONTENT, AND METHOD FOR DISSEMINATING NOTICE OF THE SETTLEMENT TO THE CLASS

"There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Arbuthnot v. Pierson*, 607 F. App'x at 73-74. Moreover, "[t]he adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Id*. at 73.

As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval of the Settlement, the Claims Administrator will mail the Settlement Notice and Claim Form (Exhibits 1 and 2 to the Preliminary Approval Order) to all Class Members who were previously mailed a copy of the Class Notice and any other potential Class Members who otherwise can be identified through reasonable efforts, as well as post the Settlement Notice and the Claim Form on the website www.LuckinCoffeeSecuritiesLitigation.com.[8] The Settlement

---

[8]     In connection with approval of notice, Class Representatives also seek the Court's authorization to retain Epiq (the administrator previously approved in connection with class notice) as the Claims Administrator to supervise and administer the notice procedure in connection with the proposed Settlement as well as to process Claims. Epiq is a nationally recognized notice and claims administration firm with extensive experience in administrating settlements of complex

Notice advises Class Members of, among other things: (i) the essential terms of the Settlement; (ii) the considerations that caused Class Representatives and Class Counsel to conclude that the Settlement is fair, reasonable, and adequate; (iii) the proposed Plan of Allocation; (iv) the binding effect of a class judgment; (v) the date, time and place of the Settlement Hearing; and (vi) the procedures and deadlines for submitting a Claim and objecting to the Settlement. The Settlement Notice also satisfies the PSLRA's requirements by stating: (i) the Settlement amount determined in the aggregate and on an average per share basis; (ii) that the Settling Parties do not agree on the average amount of damages per share that would be recoverable; (iii) that Class Counsel intend to apply for attorneys' fees and expenses (including the amount of such fees and expenses on an average per share basis); (iv) Class Counsel's contact information; and (v) the reasons why the Settling Parties are proposing the Settlement. 15 U.S.C. §§ 77z-1(a)(7), 78u-4(a)(7). The Settlement Notice also sets forth the maximum amount of attorneys' fees and expenses to be sought by Class Counsel. Specifically, as set forth in the Settlement Notice, Class Counsel will apply for an award of attorneys' fees not to exceed 25% of the Settlement Fund plus reimbursement or payment of litigation expenses not to exceed $1,000,000, plus interest, which amount may *include* requests for reimbursement of Class Representatives' reasonable costs. Additionally, the Summary Settlement Notice (Exhibit 3 to the Preliminary Approval Order) will be published in *The Wall Street Journal* and transmitted via *PR Newswire*.

As also set forth in the Settlement Notice, Class Counsel have a fee or work sharing agreement to divide the total attorneys' fees that the Court may award in amounts commensurate with their respective efforts and contributions in the litigation. In addition, Class Representatives

securities class actions. *See also* https://www.epiqglobal.com/en-us/experience/class-action-mass-tort/class-action-administration.

have an agreement with bankruptcy counsel, Lowenstein Sandler LLP, which provides that the fees for Lowenstein Sandler's time will be paid consistent with any fee and/or expense application and award in the Court, as determined by Class Counsel in their reasonable discretion. BLB&G also has a retention agreement with Class Representative Louisiana Sheriffs, which provides that Klausner Kaufman Jensen & Levinson, additional fiduciary counsel for Louisiana Sheriffs, will work together with Class Counsel on this Action, and BLB&G will compensate Klausner Kaufman for that work from the attorneys' fees awarded by the Court in an amount commensurate with Klausner Kaufman's efforts and contributions in the litigation.

The form and manner of providing notice of the Settlement to the Class satisfy the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. §§ 77z-1(a)(7), 78u-4(a)(7). The Settlement Notice also contains all of the information required by Rule 23(c)(2)(B), S.D.N.Y. Local Rule 23.1, and the PSLRA, and will "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them." *Wal-Mart*, 396 F.3d at 114. The manner of providing notice represents the best notice practicable under the circumstances and satisfies due process and Rule 23. *City of Providence*, 2014 WL 1883494, at *2; *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 105-06 (D. Conn. 2010); *In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008). Class Representatives respectfully request that the proposed notice procedures be approved.

## V.    THE COURT SHOULD NOT REQUIRE A SECOND OPT-OUT PERIOD

In July 2021, Epiq began the extensive class notice campaign, which disseminated the Class Notice to potential Class Members to inform them of the pendency of the Action as a class action as well as their right to request exclusion from the Class and the procedures for doing so. *See* ECF No. 309. Epiq reported mailing over 455,000 copies of the Class Notice to potential Class Members and nominees. *See* ECF No. 309, ¶ 10. Epiq also published a summary Class Notice in

*The Wall Street Journal*, and transmitted the same over *PR Newswire*, informing Class Members of the pendency of the Action and their right to request exclusion. *See id.* ¶ 11, Ex. B.

Both the Class Notice and the summary Class Notice advised recipients that, pursuant to Rule 23(e)(4), it is within the Court's discretion whether to allow a second opportunity to request exclusion from the Class if there is a settlement or judgment in the Action after a trial and appeal. *See id.* at Ex. A & B. Moreover, the Class Notice made clear that Class Members would "be bound by all past, present and future orders, and judgments in the Action . . . whether favorable or unfavorable"—if they failed to exclude themselves from the Class. *Id*. at Ex. A. In response to this notice campaign, one-hundred and ten (110) potential Class Members (as listed on Appendix 1 to the Stipulation) requested exclusion from the Class, demonstrating that Class Members who wished to request exclusion from the Class had a fair opportunity to do so.

The Second Circuit repeatedly has rejected the argument that due process requires that members of a Rule 23(b)(3) class be given a second opportunity to opt out when such Class Members already received extensive notice and ample opportunity to opt out of the Class, as they did here. *See Wal-Mart*, 396 F.3d at 114-15 (holding that the requirements of Due Process Clause and Rule 23 were satisfied because the class "had been given notice of the action, the opportunity to opt out [following class certification], notice of the proposed settlement, and the opportunity to object" and objector "was required to opt out at the class notice stage if it did not wish to be bound by the Settlement"); *Denney v. Deutsch Bank AG*, 443 F.3d 253, 271 (2d Cir. 2006).[9]

---

[9]      *See also Low v. Trump Univ., LLC*, 881 F.3d 1111, 1121 (9th Cir. 2018) ("[There is] no authority of any kind suggesting that due process requires that members of a Rule 23(b)(3) class be given a second chance to opt out. We think it does not. Byrd's rights are protected by the mechanism provided in the rule: approval by the district court after notice to the class and a fairness hearing at which dissenters can voice their objections, and the availability of review on appeal. Moreover, to hold that due process requires a second opportunity to opt out after the terms of the

In this case, there is no reason to depart from standard practice and require a second opt-out opportunity. The response to the widespread notice program in connection with class certification demonstrates it was effective and the new developments that have occurred since Class Members made their decision of whether to opt-out—namely, the Settlement—provide a clear benefit to the Class and negate any potential prejudice from disallowing a second opt out. Accordingly, the Court should exercise its discretion to preclude a second opt-out opportunity.

## VI.    PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS

In connection with preliminary approval of the Settlement, the Court must also set dates for certain future events. The Settling Parties propose the following schedule, which is based on the date the Preliminary Approval Order is entered and the date for which the Settlement Hearing is scheduled:

| EVENT | PROPOSED TIME FOR COMPLIANCE |
|---|---|
| Deadline for mailing Settlement Notice and Claim Form to potential Class Members (Preliminary Approval Order, ¶ 4(a)) | 20 calendar days after the date of entry of the Preliminary Approval Order ("Notice Date") |
| Deadline for publishing the Summary Settlement Notice (Preliminary Approval Order, ¶ 4(c)) | 10 business days after the Notice Date |
| Deadline for filing papers supporting final approval of the Settlement, Plan of Allocation, and motion for attorneys' fees and Litigation Expenses (Preliminary Approval Order, ¶ 22) | June 10, 2022 |
| Deadline for objections (Preliminary Approval Order, ¶ 12) | June 24, 2022 |
| Deadline for filing reply papers (Preliminary Approval Order, ¶ 22) | 7 calendar days prior to the Settlement Hearing |

settlement have been disclosed to the class would impede the settlement process so favored in the law.").

| Settlement Hearing (Preliminary Approval Order, ¶ 2) | No earlier than July 15, 2022, or at the Court's earliest convenience thereafter[10] |
|---|---|
| Deadline for submitting Claim Forms (Preliminary Approval Order, ¶ 8) | 120 calendar days after the Notice Date |

## VII.    CONCLUSION

For the forgoing reasons, Class Representatives respectfully request that the Court enter the proposed Preliminary Approval Order which will, *inter alia*: (i) preliminarily approve the proposed Settlement; (ii) approve the proposed form and manner of notice to Class Members; and (iii) schedule a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters.

Dated: October 25, 2021

Respectfully submitted,

**KESSLER TOPAZ MELTZER**
**& CHECK, LLP**

*S/ Sharan Nirmul*
Sharan Nirmul
Gregory M. Castaldo
Richard A. Russo, Jr.
Lisa M. Port
Nathan A. Hasiuk
280 King of Prussia Road
Radnor, Pennsylvania 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
snirmul@ktmc.com
gcastaldo@ktmc.com
rrusso@ktmc.com
llambport@ktmc.com
nhasiuk@ktmc.com

**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**
Salvatore J. Graziano
John Rizio-Hamilton
Jai Chandrasekhar

---

[10]     The proposed dates for submission of final approval papers, objections, and the Settlement Hearing are based on the Settlement being fully funded by June 30, 2022. *See* Stip., ¶ 11.

Kate W. Aufses
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
salvatore@blbglaw.com
johnr@blbglaw.com
jai@blbglaw.com
kate.aufses@blbglaw.com

*Counsel for Lead Plaintiffs Sjunde AP-*
*Fonden and Louisiana Sheriffs' Pension &*
*Relief Fund and Class Counsel*