**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE LUCKIN COFFEE INC.
SECURITIES LITIGATION

Case No. 1:20-cv-01293-JPC-JLC

**MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSEL'S MOTION**
**FOR ATTORNEYS' FEES AND LITIGATION EXPENSES**

Dated:  June 10, 2022

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................................ iii

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT ...................................................................................................................... 4

I.    PLAINTIFFS' COUNSEL ARE ENTITLED TO AN AWARD OF
      ATTORNEYS' FEES FROM THE COMMON FUND ....................................... 4

II.   THE COURT SHOULD AWARD A REASONABLE PERCENTAGE OF THE
      COMMON FUND .................................................................................................. 4

III.  THE REQUESTED ATTORNEYS' FEES ARE REASONABLE ...................... 5

IV.   APPROVAL OF THE FEE REQUEST IS SUPPORTED BY THE FACT THAT
      IT IS BASED ON A FEE AGREEMENT ENTERED INTO WITH A LEAD
      PLAINTIFF AT THE OUTSET OF THE LITIGATION .................................... 7

V.    OTHER FACTORS CONSIDERED BY COURTS IN THE SECOND CIRCUIT
      CONFIRM THAT THE REQUESTED FEE IS FAIR AND REASONABLE ...... 9

      A.    The Time and Labor Expended Support the Requested Fee .................... 9

      B.    The Risks of the Litigation Support the Requested Fee ........................ 10

      C.    The Magnitude and Complexity of the Action Support the Requested Fee .......... 12

      D.    The Quality of Class Counsel's Representation Supports the Requested
            Fee .......................................................................................................... 13

      E.    The Requested Fee in Relation to the Settlement .................................. 14

      F.    Public Policy Considerations Support the Requested Fee ...................... 14

      G.    The Reaction of the Class to Date Supports the Requested Fee ............ 14

      H.    The Requested Attorneys' Fees Are Reasonable Under the Lodestar
            Crosscheck .............................................................................................. 15

VI.   PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE
      NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ........ 19

VII.  LEAD PLAINTIFFS SHOULD BE AWARDED THEIR REASONABLE
      COSTS AND EXPENSES UNDER THE PSLRA .............................................. 20

CONCLUSION.............................................................................................................................22

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re 3Com Corp. Sec. Litig.,*
    No. C-97-21083 (N.D. Cal. Mar. 9, 2001), ECF No. 180 ...................................................17

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.,*
    2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006),
    *aff'd*, 272 F. App'x 9 (2d Cir. 2008)........................................................................................13

*Alaska Elec. Pension Fund v. Bank of America Corp.,*
    2018 WL 6250657, at *1 (S.D.N.Y. Nov. 29, 2018)..................................................................6

*In re Am. Bank Note Holographics, Inc. Sec. Litig.,*
    127 F. Supp. 2d 418 (S.D.N.Y. 2001).....................................................................................10

*Asare v. Change Grp. of New York, Inc.,*
    2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013).........................................................................16

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA)*
    *Litig.,* 772 F.3d 125 (2d Cir. 2014).........................................................................................21

*In re Bank of New York Mellon Corp. Forex Transactions Litig.,*
    148 F. Supp. 3d 303 (S.D.N.Y. 2015).......................................................................................5

*Bd. of Trustees of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.,*
    2012 WL 2064907 (S.D.N.Y. June 7, 2012) .............................................................................5

*Beckman v. KeyBank, N.A.,*
    293 F.R.D. 467 (S.D.N.Y. 2013) ............................................................................................18

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980)...................................................................................................................4

*In re Cardinal Health, Inc. Sec. Litig.,*
    528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) ...........................................................................17

*In re Cendant Corp. Litig.,*
    264 F.3d 201 (3d Cir. 2001).................................................................................................7, 8

*In re Charter Commc'ns Sec. Litig.,*
    2005 WL 4045741 (E.D. Mo. June 30, 2005) .............................................................6, 17, 18

*Christine Asia Co., Ltd. v. Yun Ma,*
    2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)......................................................................5, 21

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)...............................................................................10

*In re Comverse Tech., Inc. Sec. Litig.*,
2010 WL 2653354 (E.D.N.Y. June 24, 2010) ............................................... *passim*

*Cornwell v. Credit Suisse Grp.*,
2011 WL 13263367 (S.D.N.Y. July 20, 2011) ........................................................16

*Craft v. Cnty of San Bernardino*,
624 F. Supp. 2d 1113 (C.D. Cal. 2008) ................................................................17

*In re Credit Default Swaps Antitrust Litig.*,
2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016)..........................................................16

*Davis. v. J.P. Morgan Chase & Co.*,
2011 WL 4793835 (W.D.N.Y. Oct. 11, 2011) .......................................16, 17, 18

*In re Deutsche Telekom AG Sec. Litig.*,
2005 WL 7984326 (S.D.N.Y. June 9, 2005) .................................................5, 16

*Di Giacomo v. Plains All American Pipeline*,
2001 WL 34633373 (S.D. Tex. Dec. 19, 2001).....................................................17

*In re Doral Fin. Corp. Sec. Litig.*,
No. 05-md-1706, slip op. (S.D.N.Y. July 17, 2007), ECF No. 107.......................16

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*,
343 F. Supp. 3d 394, 416 (S.D.N.Y. Nov. 26, 2018).......................................5, 19

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)................................................. *passim*

*In re Genworth Fin. Inc. Sec. Litig.*,
2016 WL 7187290 (E.D. Va. Sept. 26, 2016)..........................................................6

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000)...................................................................... *passim*

*In re Hi-Crush Partners L.P. Sec. Litig.*,
2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) .......................................................15

*Hicks v. Morgan Stanley*,
2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)...........................................................4

*Johnson v. Brennan*,
2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011)........................................................16

iv

*Jones v. Dominion Resources Services, Inc.*,
    601 F. Supp. 2d 756 (S.D.W. Va. 2009) ...................................................................17

*Maley v. Del Glob. Tech. Corp.*,
    186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002) .........................................................14, 16

*In re Marsh & McLennan Cos. Sec. Litig.*,
    2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ...................................................... 8, 21

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128, 148 (S.D.N.Y. Jan. 29, 2010) ........................................................12

*In re Merck & Co., Inc. Vytorin/Zetia Sec. Litig.*,
    2013 WL 5505744 (D.N.J. Oct. 1, 2013) ...................................................................6

*Missouri v. Jenkins*,
    491 U.S. 274 (1989) ..................................................................................................15

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
    2016 WL 3369534 (S.D.N.Y. May 2, 2016) ..............................................................5

*Nieman v. Duke Energy Corp.*,
    2015 WL 13609363 (W.D.N.C. Nov. 2, 2015) .....................................................6, 17

*In re Nortel Networks Corp. Sec. Litig.*,
    539 F.3d 129, 133-34 (2d Cir. 2008) .....................................................................7, 8

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    2003 U.S. Dist. LEXIS 26795 (S.D.N.Y. June 12, 2003) ...........................................6

*In re Pfizer Inc. Sec. Litig.*,
    No. 04-cv-09866, slip op. (S.D.N.Y. Dec. 21, 2016), ECF No. 727 .........................6

*In re Rite Aid Corp. Sec. Litig.*,
    362 F. Supp. 2d 587 (E.D. Pa. Mar. 24, 2005) ....................................................6, 17

*Savoie v. Merchs. Bank*,
    166 F.3d 456 (2d Cir. 1999) ......................................................................................4

*Schuh v. HCA Holdings Inc.*,
    2016 WL 10570957 (M.D. Tenn. Apr. 14, 2016) ......................................................6

*In re Signet Jewelers Ltd. Sec. Litig.*,
    2020 WL 4196468 (S.D.N.Y. July 21, 2020) .....................................................5, 8, 16

*In re Snap Inc. Sec. Litig.*,
    2021 WL 667590 (C.D. Cal. Feb. 18, 2021) ..............................................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)...................................................................................................4

*In re UnitedHealth Group Inc. PSLRA Litig.*,
    643 F. Supp. 2d 1094, 1106 (D. Minn. Aug. 11, 2009).........................................17

*In re Veeco Instruments Inc. Sec. Litig.*,
    2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007)................................................8, 13, 21

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)..................................................................................5, 17

*In re Wilmington Trust Sec. Litig.*,
    No. 10-cv-00990-ER, slip op. (D. Del. Nov. 19, 2018), ECF No. 842 ....................6

*Woburn Ret. Sys. v. Salix Pharmaceuticals, Ltd.*,
    2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017).........................................................5

*In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.*,
    364 F. Supp. 2d 980 (D. Minn. 2005)...................................................................17

**STATUTES**

Private Securities Litigation Reform Act of 1995 .................................................. *passim*

Securities Act of 1933....................................................................................12, 20

**OTHER AUTHORITIES**

H.R. Conf. Rep. No. 104-369 (1995), reprinted in 1995 U.S.C.C.A.N. 730...................................7

NERA ECONOMIC CONSULTING, RECENT TRENDS IN SECURITIES CLASS ACTION
    LITIGATION: 2021 FULL-YEAR REVIEW (2022) ........................................................6

Court-appointed Class Counsel, Kessler Topaz Meltzer & Check, LLP and Bernstein Litowitz Berger & Grossmann LLP ("Class Counsel"), respectfully submit this memorandum of law in support of their motion, on behalf of Plaintiffs' Counsel, for an award of attorneys' fees in the amount of 17.5% of the Settlement Fund.[1]  Class Counsel also seek $721,462.68 for Litigation Expenses reasonably and necessarily incurred by Plaintiffs' Counsel in prosecuting and resolving the Action, and $5,430.00 for costs incurred by Lead Plaintiffs Sjunde AP-Fonden ("AP7") and Louisiana Sheriff's Pension & Relief Fund ("Louisiana Sheriffs") directly related to their representation of the Class, as authorized by the Private Securities Litigation Reform Act of 1995 ("PSLRA").

## PRELIMINARY STATEMENT

The proposed Settlement, which provides for a cash payment of $175 million to resolve the Action, is an outstanding result for the Class.  The significant monetary recovery was achieved through the skill, tenacity, and effective advocacy of Class Counsel, which litigated this Action on a fully contingent fee basis against highly skilled defense counsel under unusually complex circumstances that created substantial obstacles to any significant cash recovery for the Class.

---

[1]     Unless otherwise noted, capitalized terms have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated October 20, 2021 (ECF No. 315) (the "Stipulation"), or in the Joint Declaration of Sharan Nirmul and Salvatore J. Graziano in Support of (I) Lead Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation and (II) Class Counsel's Motion for Attorneys' Fees and Litigation Expenses (the "Joint Declaration" or "Joint Decl."), filed herewith.  In this memorandum, citations to "¶ __" refer to paragraphs in the Joint Declaration and citations to "Ex. __" refer to exhibits to the Joint Declaration.

As detailed in the accompanying Joint Declaration,[2] Class Counsel vigorously pursued this litigation from its outset by, among other things, conducting a comprehensive international investigation into the claims asserted in the Action, which involved extensive review of public information, and locating and interviewing witnesses in China; working with subject-matter experts in accounting, financial economics, due diligence, valuation and insolvency, Cayman Islands law, and Chinese law and regulation; preparing a detailed 256-page consolidated complaint based on that investigation; briefing Lead Plaintiffs' oppositions to Defendants' motions to dismiss the Complaint; navigating class action claims in Luckin's liquidation proceedings in the Cayman Islands and parallel U.S. bankruptcy proceedings; and engaging in extensive, extremely complicated, and rapidly shifting settlement negotiations that required a thorough understanding of the substantive and procedural law in several jurisdictions.

The Settlement achieved through Class Counsel's efforts is a particularly favorable result when considered in light of the circumstances posed by Luckin's liquidation proceedings, the limits on the funds available to the Class, and the substantial risks of the success of any against Defendants other than Luckin.   These risks are set forth in detail in the Joint Declaration at paragraphs 61 to 88 and are summarized in the Settlement Memorandum and below.  Despite these risks, Plaintiffs' Counsel were able to achieve a favorable $175 million Settlement.  To do so, Plaintiffs' Counsel collectively invested over 9,380 hours and incurred over $700,000 in Litigation Expenses, all on a contingent-fee basis with no assurance of ever being paid.

---

[2]     The Joint Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*: the nature of the claims asserted in the Action (¶¶ 13-14, 28-29); the history of the Action (¶¶ 13-52); the risks and uncertainties of continued litigation of the Action (¶¶ 61-88); and the services Class Counsel provided for the benefit of the Class (¶¶ 13-60, 125).

As compensation for their considerable efforts on behalf of the Class and the risk of non-payment they faced in prosecuting the Action on a contingent-fee basis, Class Counsel seek attorneys' fee in the amount of 17.5% of the Settlement Fund.  The requested fee is well within the range of percentage fees that courts in this Circuit have awarded in securities class actions with comparable recoveries.  In addition, the expenses for which Plaintiffs' Counsel seek payment were reasonable and necessary for the successful prosecution of the Action.

The application for fees and expenses has the full support of Lead Plaintiffs.  *See* Declaration of Richard A. Gröttheim, on behalf of AP7 (Ex. 1) ("Gröttheim Decl."), at ¶¶ 7-8; Declaration of Osey "Skip" McGee Jr, on behalf of Louisiana Sheriffs (Ex. 2) ("McGee Decl."), at ¶¶ 7-8.  Lead Plaintiffs are both sophisticated institutional investors that actively supervised the Action, and have endorsed the requested fee as fair and reasonable in light of the result achieved in the Action, the quality of the work counsel performed, and the risks of the litigation.  Gröttheim Decl. ¶¶ 3-5, 7; McGee Decl. ¶¶ 3-5, 7.  In addition, the fee request is consistent with the more restrictive of two separate agreements that Class Counsel separately entered into with Lead Plaintiffs AP7 and Louisiana Sheriffs at the outset of the litigation.  Whereas Louisiana Sheriffs' retention agreement would have authorized Class Counsel to seek a percentage fee of up to 25% of the net recovery; AP7's *ex ante* retention agreement limited Class Counsel's fee to 17.5%.

Moreover, while the June 24, 2022 deadline set by the Court for Class Members to object has not yet passed, to date, no objections to the request for fees and expenses have been received. ¶¶ 138, 149.

In light of the excellent recovery obtained for the Class under the circumstances, the complexity of the Action, the skill and expertise required to prosecute and resolve the Action, and the risks that counsel undertook, Class Counsel submit that the requested 17.5% fee award is

reasonable.  In addition, the Litigation Expenses for which Class Counsel seek payment were
reasonable and necessary for the successful prosecution of the Action.

<u>**ARGUMENT**</u>

### I.   PLAINTIFFS' COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES FROM THE COMMON FUND

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common
fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's
fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also*
*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).  Courts recognize that awards
of fair attorneys' fees from a common fund "serve to encourage skilled counsel to represent those
who seek redress for damages inflicted on entire classes of persons," and therefore "discourage
future misconduct of a similar nature."  *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL
4537550, at *23 (S.D.N.Y. Nov. 8, 2010)

The Supreme Court has emphasized that private securities actions such as this Action are
"an essential supplement to criminal prosecutions and civil enforcement actions" by the SEC.
*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).  Moreover, compensating
plaintiffs' counsel for their risks is crucial, because "[s]uch actions could not be sustained if
plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on
behalf of the class." *Hicks v. Morgan Stanley*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

### II.   THE COURT SHOULD AWARD A REASONABLE PERCENTAGE OF THE COMMON FUND

Class Counsel respectfully submit that the Court should award a fee based on a percentage
of the common fund.  The Second Circuit has approved the percentage method, recognizing that
"the lodestar method proved vexing" and had resulted in "an inevitable waste of judicial
resources."  *Goldberger*, 209 F.3d at 48-49 (holding that either the percentage-of-fund or lodestar

method may be used to determine appropriate attorneys' fees); *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999) (stating that the "percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases").  More recently, the Second Circuit has reiterated its approval of the percentage method, stating that it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation," and has noted that the "trend in this Circuit is toward the percentage method."  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (citations omitted); *see also Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *17 (S.D.N.Y. Oct. 16, 2019); *In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 343 F. Supp. 3d 394, 416 (S.D.N.Y. Nov. 26, 2018).

## III.   THE REQUESTED ATTORNEYS' FEES ARE REASONABLE

The 17.5% attorney fee requested by Class Counsel is well within the range of percentage fees that have been awarded in the Second Circuit in securities class actions and other similar litigation with comparable recoveries.  *See, e.g.*, *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *16-17 (S.D.N.Y. July 21, 2020) (awarding 25% of $240 million settlement); *Christine Asia Co.*, 2019 WL 5257534, at *17 (awarding 25% of $250 million settlement); *Woburn Ret. Sys. v. Salix Pharmaceuticals, Ltd.*, 2017 WL 3579892, at *6 (S.D.N.Y. Aug. 18, 2017) (awarding 21.24% of $210 million settlement); *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 2016 WL 3369534, at *1 (S.D.N.Y. May 2, 2016) (awarding 21% of $272 million settlement); *In re Bank of New York Mellon Corp. Forex Transactions Litig.*, 148 F. Supp. 3d 303, 305 (S.D.N.Y. 2015); (awarding 25% of $180 million settlement); *Bd. of Trustees of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 2012 WL 2064907, at *3 (S.D.N.Y. June 7, 2012) (awarding 25% of $150 million settlement); *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *6 (E.D.N.Y. June 24, 2010) (awarding 25% of $225 million settlement); *In re*

*Deutsche Telekom AG Sec. Litig.*, 2005 WL 7984326, at *4 (S.D.N.Y. June 9, 2005) (awarding 28% of $120 million settlement).[3]

The requested fee is also consistent with fee awards in similarly sized securities class actions in other circuits. *See, e.g.*, *In re Snap Inc. Sec. Litig.*, 2021 WL 667590, at *1, *3 (C.D. Cal. Feb. 18, 2021) (awarding 25% of $154.7 million settlement); *In re Wilmington Trust Sec. Litig.*, No. 10-cv-00990-ER, slip op. at 2-3 (D. Del. Nov. 19, 2018), ECF No. 842 (Ex. 9) (awarding 28% of $210 million settlement); *In re Genworth Fin. Inc. Sec. Litig.*, 2016 WL 7187290, at *1-*2 (E.D. Va. Sept. 26, 2016) (awarding 28% of $219 million settlement); *Schuh v. HCA Holdings Inc.*, 2016 WL 10570957, at *1 (M.D. Tenn. Apr. 14, 2016) (awarding 30% of $215 million settlement); *Nieman v. Duke Energy Corp.*, 2015 WL 13609363, at *1 (W.D.N.C. Nov. 2, 2015) (awarding 18% of $146.25 million settlement); *In re Merck & Co., Inc. Vytorin/Zetia Sec. Litig.*, 2013 WL 5505744, at *3, *46 (D.N.J. Oct. 1, 2013) (awarding 28% of $215 million settlement); *In re Charter Commc'ns. Sec. Litig.*, 2005 WL 4045741, at *12-22 (E.D. Mo. June 30, 2005) (awarding 20% of $146.3 million settlement); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 588-90 (E.D. Pa. Mar. 24, 2005) (awarding 25% of $126.6 million settlement). Similarly, a statistical review of all PSLRA settlements from 2012 to 2022 reveals that the median fee award in settlements ranging from $100 million to $500 million is 24.5%. *See* NERA ECONOMIC CONSULTING, RECENT TRENDS IN SECURITIES CLASS ACTION LITIGATION: 2021 FULL-YEAR REVIEW, at 27 (2022) (Ex. 12).

---

[3]    Indeed, higher percentage fees are often awarded even in considerably larger settlements in this District. *See, e.g., Alaska Elec. Pension Fund v. Bank of America Corp.*, 2018 WL 6250657, at *1 (S.D.N.Y. Nov. 29, 2018) (awarding 26% of $486 million settlement); *In re Pfizer Inc. Sec. Litig.*, No. 04-cv-09866, slip op. at 2 (S.D.N.Y. Dec. 21, 2016), ECF No. 727 (Ex. 10) (awarding 28% of $486 million settlement); *In re Oxford Health Plans, Inc. Sec. Litig.*, MDL No. 122 (CLB), slip op. at 8 (S.D.N.Y. June 12, 2003), and 2003 U.S. Dist. LEXIS 26795, at *13 (S.D.N.Y. June 12, 2003) (Ex. 11) (awarding 28% of combined $300 million settlements).

In sum, the fee requested here is well within the range of fees awarded on a percentage basis in comparable actions. Moreover, as discussed below, each of the factors established for the review of attorneys' fee awards by the Second Circuit in *Goldberger* strongly supports a finding that the requested fee is reasonable.

## IV.   APPROVAL OF THE FEE REQUEST IS SUPPORTED BY THE FACT THAT IT IS BASED ON A FEE AGREEMENT ENTERED INTO WITH A LEAD PLAINTIFF AT THE OUTSET OF THE LITIGATION

Because the requested fee is based on the more restrictive of two separate agreements that Class Counsel separately entered into with Lead Plaintiffs AP7 and Louisiana Sheriffs at the outset of the litigation, the fee should be afforded a presumption of reasonableness. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 282 (3d Cir. 2001). Even if a formal presumption of reasonableness is not afforded to the fee based on the pre-litigation *ex ante* agreement, the existence of the agreement and the approval of the requested fee at the conclusion of the Action by Lead Plaintiffs, which were actively involved in the prosecution and settlement of the Action, supports approval of the fee. *See In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133-34 (2d Cir. 2008).

The PSLRA was intended to encourage institutional investors like AP7 and Louisiana Sheriffs to assume control of securities class actions in order to "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel." H.R. Conf. Rep. No. 104-369, at *32 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 731. Congress believed that these institutions would be in the best position to monitor the ongoing prosecution of the litigation and assess the reasonableness of counsel's fee request.

A number of courts have treated fee arrangements between PSLRA lead plaintiffs and their counsel established at the outset of the litigation to be presumptively reasonable in light of

Congress's intent to empower lead plaintiffs under the PSLRA to select and supervise attorneys on behalf of the class.  *See Cendant*, 264 F.3d at 282 (*ex ante* fee agreements in securities class actions enjoy "a presumption of reasonableness"); *Signet*, 2020 WL 4196468, at *17 ("Because the requested fee is based on an agreement that Lead Counsel entered into with the sophisticated institutional Lead Plaintiff at the outset of the litigation, the fee is presumptively reasonable.") *In re Marsh & McLennan Cos. Sec. Litig.*, 2009 WL 5178546, at *15 (S.D.N.Y. Dec. 23, 2009) ("Since the passage of the PSLRA, courts have found such an agreement between fully informed lead plaintiffs and their counsel to be presumptively reasonable").  The Second Circuit has indicated that the Court should, at least, give "serious consideration" to such agreements, *see Nortel*, 539 F.3d at 133-34.  For example, the Second Circuit has stated that:

> We expect . . . that district courts will give serious consideration to negotiated fees because PSLRA lead plaintiffs often have a significant financial stake in the settlement, providing a powerful incentive to ensure that any fees resulting from that settlement are reasonable. In many cases, the agreed-upon fee will offer the best indication of a market rate, thus providing a good starting position for a district court's fee analysis.

*Id.*; *see also Comverse*, 2010 WL 2653354, at *4 ("an *ex ante* fee agreement is the best indication of the actual market value of counsel's services").

Here, Lead Plaintiffs are classic examples of the type of sophisticated and financially interested investor that Congress envisioned serving as fiduciary for the class when it enacted the PSLRA. Lead Plaintiffs took an active role in the litigation and closely supervised the work of Lead Counsel.  *See* Gröttheim Decl. ¶¶ 3-5; McGee Decl. ¶¶ 3-5.  Accordingly, Lead Plaintiffs' support of the requested 17.5% fee supports the reasonableness of that fee.  *See Signet*, 2020 WL 4196468, at *17 ("The existence of the agreement and the approval of the requested fee by Lead Plaintiff, which was actively involved in the prosecution and settlement of the Action, supports approval of the fee."); *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *8 (S.D.N.Y.

Nov. 7, 2007) ("[P]ublic policy considerations support the award in this case because the Lead Plaintiff . . . —a large public pension fund—conscientiously supervised the work of lead counsel and has approved the fee request[.]").

## V.   OTHER FACTORS CONSIDERED BY COURTS IN THE SECOND CIRCUIT CONFIRM THAT THE REQUESTED FEE IS FAIR AND REASONABLE

The Second Circuit has set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50 (internal quotes and citation omitted).   Consideration of these factors further demonstrates that the fee requested by Class Counsel is reasonable.

### A.   The Time and Labor Expended Support the Requested Fee

The substantial time and effort expended by Plaintiffs' Counsel in prosecuting the Action and achieving the Settlement support the requested fee.   The Joint Declaration details the significant efforts that Plaintiffs' Counsel dedicated to prosecuting and resolving the claims on behalf of Lead Plaintiffs and the Class.   As set forth in greater detail in the Joint Declaration, Plaintiffs' Counsel, among other things:

- conducted an extensive investigation into the claims asserted in the Action, which included an exhaustive review of public sources—such as SEC filings, press releases, news articles, analyst reports, conference call transcripts, and court filings in multiple countries—and contacting and interviewing witnesses in China (¶¶ 19-27);

- researched and drafted a detailed consolidated complaint based on this investigation (¶¶ 28-29);

- researched and briefed Lead Plaintiffs' oppositions to Defendants' motions to dismiss the Complaint (¶¶ 33-39);

- consulted extensively with experts concerning accounting, financial economics, due diligence, Cayman Islands law, Chinese SAFE regulations, and ability-to-pay issues (¶¶ 23, 27, 79, 89, 125);

9

- actively monitored and participated in Luckin's Cayman Islands liquidation proceeds and the parallel U.S. bankruptcy proceeding to protect the interest of the Class and ensure that ongoing settlement negotiations with Luckin could continue (¶¶ 40-44, 48);

- negotiated to obtain Luckin's agreement to provisional certification of the Class for purposes of settlement and prepared and disseminated the Class Notice (¶¶ 45-52);

- engaged in extensive settlement negotiations with Defendants' Counsel and with Luckin's Joint Provisional Liquidators to obtain the Settlement (¶¶ 53-58); and

- negotiated the final terms of the Settlement with Defendants and drafted, finalized, and filed the Stipulation and related documents, and prepared Lead Plaintiffs' motions for preliminary and final approval of the Settlement (¶¶ 59-60).

Plaintiffs' Counsel expended over 9,380 hours prosecuting this Action with a lodestar value of approximately $6.6 million.  ¶ 128.  The time and effort devoted to this case by Plaintiffs' Counsel was critical in obtaining the outstanding result achieved by the Settlement, and supports the reasonableness of the fee request.

### B.      The Risks of the Litigation Support the Requested Fee

The risk of the litigation is one of the most important *Goldberger* factors.  *See Goldberger*, 209 F.3d at 54; *Comverse*, 2010 WL 2653354, at *5.  The Second Circuit has recognized that the risks associated with a case undertaken on a contingent-fee basis is an important factor in determining an appropriate fee award:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974) (citation omitted).  "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation."  *Comverse*, 2010 WL 2653354, at *5 (citation omitted); *see also In re Am. Bank Note*

*Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 433 (S.D.N.Y. 2001) (it is "appropriate to take this [contingent-fee] risk into account in determining the appropriate fee to award").

Class Counsel recognized that there were many substantial risks in the litigation from the outset and that Lead Plaintiffs' ability to not only succeed at trial, but to successfully enforce a substantial judgment against any solvent Defendant, was far from certain. While the nature of the alleged misconduct at issue (fabricating transactions to increase the Company's revenue), would have made establishing liability for certain claims against certain of the Executive Defendants (and Luckin itself) less challenging, the fact that nearly all of the Individual Defendants and nearly all of Luckin's assets were located in mainland China—and likely beyond the reach of enforcement on any U.S. judgment—raised substantial and complex issues about how the Class could actually secure a substantial monetary recovery even if Lead Plaintiffs proved their claims at trial. ¶¶ 61-80. Simply put, collecting on any judgment was a huge risk in this case.

These risks were further heightened when, during the course of the Action, Luckin entered insolvency proceedings in the Cayman Islands and in the Southern District of New York. These proceedings had the affect of staying any litigation against Luckin until those proceedings were resolved, and there was no guarantee that the Company would be able to emerge as a going concern, let alone fund a larger judgment following the resolution of those liquidation proceedings. ¶¶ 66-71. Recovery of funds through a class action in the Cayman Islands proceedings was also uncertain and unlikely. ¶ 78.

Moreover, issues related to limits on Luckin's ability to pay a substantial sum also created a significant risk. Luckin had only minimal insurance coverage available and, as noted above, Luckin's assets were primarily held though operating subsidiaries located in China. ¶¶ 55, 72. Luckin had only extremely limited cash available outside China and its ability to expatriate the

funds in China to pay an overseas creditors was subject to strict regulations by Chinese authorities. Indeed, these authorities had indicated that they would only allow funds to leave the country to restructure Luckin's convertible senior notes.  ¶¶ 72-77.  Navigating these complex and unique circumstances posed substantial challenges to recovery.

Further, Luckin was the only viable Defendant and source of funds that could satisfy a judgment because most of the other Defendants had not appeared or were located in China, and because the Securities Act claims against the Underwriter Defendants faced significant and unique risks. ¶¶ 80-81.  As to those claims, the Underwriter Defendants had significant defenses regarding traceability and due diligence available to them.  ¶¶ 82-87.  All of these circumstances made obtaining a substantial monetary recovery here extremely challenging despite the strength of the claims on the merits against Luckin.

Class Counsel's assumption of these risks strongly supports the reasonableness of the requested fee.  *See FLAG Telecom*, 2010 WL 4537550, at *27 ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award."); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

### C.    The Magnitude and Complexity of the Action Support the Requested Fee

The magnitude and complexity of the Action also support the requested fee.  Courts have recognized that securities class action litigation is "notably difficult and notoriously uncertain." *FLAG Telecom*, 2010 WL 4537550, at *27.  This case was no exception.

As noted above and in the Joint Declaration, the litigation raised a number of novel and complex issues.  Here, the particularly complex issues concerned matters such as navigating Luckin's liquidation proceedings in the Cayman Islands; the uncertain and unlikely procedures for

potentially resolving the Class's claims through a "Scheme of Arrangement" in the Cayman Islands (which Class Counsel extensively researched before they were able to obtain a more favorable direct class action settlement with Luckin); navigating the U.S. bankruptcy proceedings (including obtaining a carve-out of the stay to negotiate with Luckin); and researching and understanding the practices of the Chinese government regulators who could determine Luckin's ability to access cash held by its subsidiaries in China and for what purposes.  Accordingly, the magnitude and complexity of the Action support the conclusion that the requested fee is fair and reasonable.

### D.    The Quality of Class Counsel's Representation Supports the Requested Fee

The quality of the representation by Class Counsel is another important factor that supports the reasonableness of the requested fee.  Class Counsel submit that the quality of their representation is best evidenced by the quality of the result achieved.  *See, e.g.*, *Veeco*, 2007 WL 4115808, at *7.  Here, as discussed above and in the Joint Declaration, the Settlement provides an outstanding result for the Class considering the serious risks of continued litigation.  *See* ¶¶ 61-91.

Further, Class Counsel faced talented and tenacious adversaries in this Action.  Courts have recognized that the quality of the opposition should also be taken into consideration in assessing the quality of counsel's performance.  *See, e.g.*, *Veeco*, 2007 WL 4115808, at *7 (among factors supporting 30% award of attorneys' fees was that defendants were represented by "one of the country's largest law firms"); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work") (citation omitted), *aff'd*, 272 F. App'x 9 (2d Cir. 2008).  Defendants were represented by able counsel from Davis Polk & Wardwell, among other firms, all of whom zealously represented their clients throughout this

13

Action.  *See* ¶ 131.  Notwithstanding this capable opposition, Class Counsel's litigation efforts and ability to present a strong case enabled them to achieve the Settlement for the benefit of the Class.

### E.      The Requested Fee in Relation to the Settlement

Courts have interpreted this factor as requiring the review of the fee request in terms of the percentage it represents of the total recovery.  "When determining whether a fee request is reasonable in relation to a settlement amount, 'the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value.'"  *Comverse*, 2010 WL 2653354, at *3 (citation omitted).  As discussed in detail in Part III above, the requested fee is well within the range of percentage fees that courts in the Second Circuit have awarded in comparable cases.

### F.      Public Policy Considerations Support the Requested Fee

A strong public policy concern exists for rewarding firms for bringing successful securities litigation.  *See FLAG Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook"); *Maley v. Del Glob. Tech. Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002) ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered.").  Accordingly, public policy favors granting Class Counsel's fee and expense application here.

### G.      The Reaction of the Class to Date Supports the Requested Fee

The reaction of the Class to date also supports the requested fee.  Through June 8, 2022, the Claims Administrator, Epiq, has mailed over 560,000 copies of the Settlement Notice to potential Class Members and their nominees, and the Summary Settlement Notice was published in *The Wall Street Journal* and over *PR Newswire*.  *See* Declaration of Alexander P. Villanova,

14

submitted on behalf of Epiq (Ex. 3), at ¶¶ 9-10.  The Settlement Notice advised Class Members that Class Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund, and up to $1,000,000 in Litigation Expenses.  While the deadline for filing objections to the fee application is not until June 24, 2022, to date, no objections to the motion for fees and expenses have been received.  ¶ 138.  Should any objections be received, Class Counsel will address them in their reply papers to be filed on July 15, 2022.

### H.   The Requested Attorneys' Fees Are Reasonable Under the Lodestar Crosscheck

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, district courts may cross-check the proposed award against counsel's lodestar.  *See Goldberger*, 209 F.3d at 50.

To date, Plaintiffs' Counsel have collectively spent over 9,380 hours of attorney and other professional support time prosecuting the Action for the benefit of the Class.  ¶ 128.  Plaintiffs' Counsel's total lodestar, derived by multiplying the hours spent by each attorney and paraprofessional by their current hourly rates, is $6,596,079.75.[4]  *See id*.  The requested fee of 17.5% of the $175 million Settlement Fund equates to approximately $30,625,000, plus interest earned, and thus represents a multiplier of approximately 4.6 of the total lodestar.

In complex contingent litigation such as this Action, "fees representing multiples above the lodestar are regularly awarded to reflect the contingency-fee risk and other relevant factors."

---

[4]   The Supreme Court and courts in this Circuit have approved the use of current hourly rates to calculate the base lodestar figure as a means of compensating for the delay in receiving payment, inflation, and the loss of interest.  *See Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *15 (S.D.N.Y. Dec. 19, 2014) ("the use of current rates to calculate the lodestar figure has been endorsed repeatedly by the Supreme Court, the Second Circuit and district courts within the Second Circuit as a means of accounting for the delay in payment inherent in class actions and for inflation").

*Signet*, 2020 WL 4196468, at *16; *see also FLAG Telecom*, 2010 WL 4537550, at *26 ("a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors"); *Comverse*, 2010 WL 2653354, at *5 ("Where, as here, counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar").

The requested 4.6 multiplier is within the range of multipliers that are awarded in securities class actions and other comparable litigation. In complex litigation, lodestar multipliers between 2 and 6 are typically awarded. *See generally Signet*, 2020 WL 4196468, at *16 ("In complex litigation, lodestar multipliers between 2 and 5 are commonly awarded, and fee awards resulting in multipliers as high as 6 have also been approved."); *Asare v. Change Grp. of New York, Inc.*, 2013 WL 6144764, at *19 (S.D.N.Y. Nov. 18, 2013) ("Typically, courts use multipliers of 2 to 6 times the lodestar"); *Johnson v. Brennan*, 2011 WL 4357376, at *20 (S.D.N.Y. Sept. 16, 2011) ("Courts regularly award lodestar multipliers from two to six times lodestar") (collecting cases); *see, e.g., In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at *17 (S.D.N.Y. Apr. 26, 2016) (awarding multiplier of "just over 6"); *Davis. v. J.P. Morgan Chase & Co.*, 2011 WL 4793835, at *11 (W.D.N.Y. Oct. 11, 2011) (awarding 5.3 multiplier and finding it was "not atypical for similar fee-award cases"); *Cornwell v. Credit Suisse Grp.*, 2011 WL 13263367, at *2 (S.D.N.Y. July 20, 2011) (4.7 multiplier); *In re Doral Fin. Corp. Sec. Litig.*, No. 05-md-1706, slip op. at 5 (S.D.N.Y. July 17, 2007), ECF No. 107 (Ex. 13) (10.26 multiplier); *Deutsche Telekom*, 2005 WL 7984326, at *4 (3.97 multiplier); *Maley*, 186 F. Supp. 2d at 369 (awarding fee equal to

a 4.65 multiplier, which was "well within the range awarded by courts in this Circuit and courts throughout the country").[5]

In all events, the lodestar multiplier is used only as a rough "cross-check" on the reasonableness of the percentage fee award and should not be applied overly strictly or mechanically or else the court runs the risk of reintroducing the problems of the lodestar method. *See Davis*, 827 F. Supp. 2d at 185 ("the Court 'must be cautious of placing too much weight on [the lodestar multiplier] lest [it] re-introduce[] the problems of the lodestar method") (quoting *Jones v. Dominion Resources Services, Inc.*, 601 F.Supp.2d 756, 766 (S.D.W. Va. 2009) (some alternations in original)).

In particular, the great advantage of the percentage method is it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart*, 396 F.3d at 121. Overemphasis on the lodestar approach (such as use of an arbitrary cap of the lodestar multiplier) risks undermining this benefit of the percentage method. This risk is particularly pronounced where the external circumstances of the case make an early settlement the best option for the Class and where any further litigation is highly likely to *decrease* rather than increase the potential recovery for the Class. These were the

---

[5]     Similar multipliers are awarded in other Circuits as well. *See, e.g., Duke Energy Corp.*, 2015 WL 13609363, at *1 (awarding fee representing a 6.4 multiplier); *In re UnitedHealth Group Inc. PSLRA Litig.*, 643 F. Supp. 2d 1094, 1106 (D. Minn. 2009) (6.5 multiplier); *Craft v. Cnty of San Bernardino*, 624 F. Supp. 2d 1113, 1123 (C.D. Cal. 2008) (5.2 multiplier); *In re Cardinal Health, Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) (6 multiplier); *In re Charter Commc'ns, Inc. Sec. Litig.*, 2005 WL 4045741, at *18 (E.D. Mo. June 30, 2005) (5.61 multiplier); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587 (E.D. Pa. Mar. 24, 2005) (reaffirming fee award representing 6.96 multiplier); *In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 999 (D. Minn. 2005) (4.7 multiplier); *Di Giacomo v. Plains All American Pipeline*, 2001 WL 34633373, at *11 (S.D. Tex. Dec. 19, 2001) (5.3 multiplier); *In re 3Com Corp. Sec. Litig.*, No. C-97-21083, slip op. at 10 (N.D. Cal. Mar. 9, 2001), ECF No. 180 (Ex. 14) (6.67 multiplier).

precise circumstances in this Action because the Company's ongoing liquidation proceedings and its need to resolve the litigation in order to emerge as a going concern made a prompt settlement the best option for Class Members.  Indeed, given the challenges in enforcing a judgment against defendants located in China and the risks of the claims against the Underwriter Defendants, the prompt settlement with Luckin may have been the *only* opportunity for a substantial cash recovery.

Under this set of circumstances—where an early settlement provides the best chance for a significant recovery for the class—the percentage method most clearly creates the correct incentives, and the disadvantages of the lodestar approach are heightened.  In such cases, Courts should be (and generally have been) willing to find a lodestar multiplier on the higher end of the accepted range appropriate for cross-check purposes.  *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013) (awarding fee representing a 6.3 multiplier to avoid "penalizing plaintiffs' counsel for achieving an early settlement, particular[ly] where, as here, the settlement amount is substantial"); *Davis*, 827 F. Supp. 2d at 185 (awarding fee representing a 5.3 multiplier because "had this case not settled, class counsel's hours, and hence the lodestar figure, would almost certainly have been greater, although it is by no means certain that the class's recovery would also have been larger—indeed . . . it might have been lower.  That, too, then, tends to show that the multiplier here is not so high as to raise any red flags over the size of the fee request."); *Charter Commc'ns*, 2005 WL 4045741, at *18 (approving 5.61 multiplier where "[h]ad the case not been settled, considerably more time would have been necessary to complete formal discovery . . . and to prepare this case for trial with no assurance that the outcome would have been any more successful.  Indeed, given Charter's precarious financial condition, there was a risk that the continued pendency of this lawsuit would preclude the Company from renegotiating its credit lines.").

**VI.   PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED**

Class Counsel's fee application includes a request for payment of the expenses incurred by Plaintiffs' Counsel, which were reasonable in amount and necessary to the prosecution of the Action.  *See* ¶¶ 140-147.  These expenses are properly recovered by counsel.  *See Facebook IPO*, 343 F. Supp. 3d at 418 (in a class action, attorneys should be compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation") (citation omitted); *FLAG Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class").

As set forth in detail in the Joint Declaration, Plaintiffs' Counsel incurred $721,462.68 in expenses in connection with the prosecution and settlement of the Action.  ¶ 142.  These expenses were incurred as a result of Plaintiffs' Counsel's vigorous pursuit of claims for Lead Plaintiffs and the Class.  The expenses for which payment is sought are the types of expenses that are necessarily incurred in litigation and routinely charged to clients.  These expenses include, among others, expert fees, fees of foreign counsel, on-line legal and factual research, and photocopying expenses.

The largest expense incurred is for retention of Lead Plaintiffs' experts, in the amount of $404,089.16, or approximately 56% of Plaintiffs' Counsel total expenses.  ¶ 143.  As discussed in the Joint Declaration, Class Counsel consulted extensively with experts in the fields of accounting, financial economics, due diligence, and ability-to-pay analysis.  The experts retained were instrumental in Class Counsel's prosecution of the Action and in bringing about the favorable result achieved.

Another substantial component of Plaintiffs' Counsel's expenses was for the retention of specialized foreign counsel, including (i) $203,616.21 for Cayman Islands counsel, Bedell Cristin.

which provided valuable advice to Lead Plaintiffs and the Class on Cayman Islands law and the provisional liquidation process in the Caymans; and (ii) $17,528.31 for experienced PRC counsel, who provided advice concerning Chinese legal and regulatory issues in order to review and confirm the validity of Luckin's assertions about the limits on its ability to obtain funds held in China and concerning the enforceability of any U.S. judgment in China.   ¶ 144.   Another significant component of Plaintiffs' Counsel's expenses was charges for online legal and factual research, which amounted to $40,691.99, or approximately 6% of the total expenses.   ¶ 145.

The Settlement Notice informed potential Class Members that Class Counsel would apply for payment of Litigation Expenses in an amount not to exceed $1,000,000, which may include the reasonable costs and expenses of Lead Plaintiffs directly related to their representation of the Class.   The total amount of Litigation Expenses requested is $726,892.68, which includes $721,462.68 for expenses incurred by Plaintiffs' Counsel and $5,430.00 in reimbursement of costs and expenses incurred by Lead Plaintiffs, an amount well below the amount listed in the Settlement Notice.   To date, there has been no objection to the request for expenses.   ¶ 149.

## VII.   LEAD PLAINTIFFS SHOULD BE AWARDED THEIR REASONABLE COSTS AND EXPENSES UNDER THE PSLRA

In connection with their request for Litigation Expenses, Class Counsel also seek reimbursement of a total of $5,430.00 in costs and expenses incurred by Lead Plaintiffs AP7 and Louisiana Sheriffs directly related to their representation of the Class.   The PSLRA provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4).   "Courts in this Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the

litigation and to incur such expenses in the first place." *Christine Asia Co.*, 2019 WL 5257534, at *20 (citations and internal quotations omitted).

Numerous courts have approved reasonable awards to compensate lead plaintiffs for the time their employees have spent supervising and participating in the litigation on behalf of the class. In *Marsh & McLennan*, the court awarded $144,657 to the New Jersey Attorney General's Office and $70,000 to certain Ohio pension funds, to compensate them "for their reasonable costs and expenses incurred in managing this litigation and representing the Class." 2009 WL 5178546, at *21. As the court noted, their efforts in communicating with lead counsel, reviewing submissions to the court, responding to discovery requests, providing deposition testimony and participating in settlement discussions were "precisely the types of activities that support awarding reimbursement of expenses to class representatives." *Id.*; *see also In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 133 (2d Cir. 2014) (affirming award of over $450,000 to representative plaintiffs for time spent by their employees on the action); *FLAG Telecom*, 2010 WL 4537550, at *31 (approving award of $100,000 to Lead Plaintiff for time spent on the litigation); *Veeco*, 2007 WL 4115808, at *12 (awarding institutional lead plaintiff $15,900 for time spent supervising litigation); *Christine Asia Co.*, 2019 WL 5257534, at *20 (granting PSLRA awards to each of the five lead plaintiffs for their "substantial time and effort [devoted] to prosecuting [the] action, including preparing for and being deposed by Defendants, reviewing pleadings and briefs, assisting with discovery responses, collecting documents for production, and evaluating and approving the settlement").

Here, Lead Plaintiffs request reimbursement in the aggregate amount of $5,430.00 based on the value of time devoted to the Action by employees of AP7 and Louisiana Sheriffs, including time spent communicating with Plaintiffs' Counsel, reviewing pleadings and briefs, and consulting

with counsel during the course of settlement negotiations.  *See* Gröttheim Decl. ¶ 10; McGee Decl. ¶ 10.  These efforts required employees of Lead Plaintiffs to dedicate time and effort to the Action that they would have otherwise devoted to their regular duties and thus represented a cost to Lead Plaintiffs.  *Id*.  The awards sought by Lead Plaintiffs are reasonable and justified under the PSLRA based on the active involvement of Lead Plaintiffs in the Action, and should be granted.

## CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that the Court award attorneys' fees in the amount of 17.5% of the Settlement Fund; $721,462.68 for the reasonable expenses incurred by Plaintiffs' Counsel in connection with the prosecution and settlement of the Action; and $5,430.00 in reimbursement of Lead Plaintiffs' costs and expenses, as authorized by the PSLRA.

Dated:  June 10, 2022

Respectfully submitted,

BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP

*s/ Salvatore J. Graziano*
Salvatore J. Graziano
John Rizio-Hamilton
Jai Chandrasekhar
Kate W. Aufses
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
salvatore@blbglaw.com
johnr@blbglaw.com
jai@blbglaw.com
kate.aufses@blbglaw.com

22

**KESSLER TOPAZ MELTZER**
**& CHECK, LLP**

*s/Sharan Nirmul*
Sharan Nirmul
Gregory M. Castaldo
Richard A. Russo, Jr.
Lisa M. Port
Nathan A. Hasiuk
280 King of Prussia Road
Radnor, Pennsylvania 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
snirmul@ktmc.com
gcastaldo@ktmc.com
rrusso@ktmc.com
llambport@ktmc.com
nhasiuk@ktmc.com

*Counsel for Lead Plaintiffs Sjunde AP-Fonden*
*and Louisiana Sheriffs' Pension & Relief Fund*
*and Class Counsel*