# Exhibit 6B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE LUCKIN COFFEE INC. SECURITIES LITIGATION | Case No. 1:20-cv-01293-JPC-JLC |

**DECLARATION OF SALVATORE J. GRAZIANO ON BEHALF OF**
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP IN SUPPORT OF CLASS**
**COUNSEL'S MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES**

I, Salvatore J. Graziano, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.　　I am a partner in the law firm of Bernstein Litowitz Berger & Grossmann LLP ("BLB&G"). I submit this declaration in support of Class Counsel's motion for an award of attorneys' fees in connection with services rendered by Plaintiffs' Counsel in the above-captioned securities class action ("Action"), as well as for payment of Litigation Expenses incurred in connection with the Action.[1] Unless otherwise stated, I have personal knowledge of the facts set forth herein and, if called upon, could and would testify thereto.

2.　　My firm served as Class Counsel for Lead Plaintiffs and the Class in the Action. My firm was involved in all aspects of the litigation of the Action and its resolution, as described more fully in my accompanying declaration:  Joint Declaration of Sharan Nirmul and Salvatore J. Graziano in Support of (I) Lead Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation; and (II) Class Counsel's Motion for Attorneys' Fees and Litigation Expenses.

3.　　Based on my work in the Action, as well as the review of time records reflecting work performed by other attorneys and professional support staff employees at BLB&G in the Action ("Timekeepers"), as reported by the Timekeepers, I directed the preparation of the table set forth as Exhibit 1 hereto. The table in Exhibit 1: (i) identifies the names and employment positions (i.e., titles) of the Timekeepers who worked on the Action; (ii) provides the number of hours that each Timekeeper expended in connection with work on the Action; (iii) provides each Timekeeper's current hourly rate (for current employees of the firm); and (iv) provides the lodestar of each Timekeeper and the entire firm. For Timekeepers who are no longer employed by BLB&G, the hourly rate used is the hourly rate for such employee in his or her final year of

---

[1]　　All capitalized terms that are not otherwise defined herein shall have the meanings set forth in the Stipulation and Agreement of Settlement dated October 20, 2021 (ECF No. 315).

employment by my firm. The table in Exhibit 1 was prepared from daily time records regularly prepared and maintained by my firm in the ordinary course of business, which are available at the request of the Court. All time expended in preparing Class Counsel's motion for attorneys' fees and expenses has been excluded.

4.      The number of hours expended by BLB&G in the Action, as reflected in Exhibit 1, is 3,522. The lodestar for my firm, as reflected in Exhibit 1, is $2,653,025.00, consisting of $2,321,900.00 for attorneys' time and $331,125.00 for professional support staff time.

5.      The hourly rates for the Timekeepers, as set forth in Exhibit 1, are their standard rates. My firm's hourly rates are largely based upon a combination of the title, the specific years of experience for each attorney and professional support staff employee, as well as market rates for practitioners in the field. These hourly rates are the same as, or comparable to, rates submitted by BLB&G and accepted by courts in other complex contingent class actions for purposes of "cross-checking" lodestar against a proposed fee based on the percentage-of-the-fund method, as well as determining a reasonable fee under the lodestar method.

6.      I believe that the number of hours expended and the services performed by the attorneys and professional support staff employees at BLB&G were reasonable and necessary for the effective and efficient prosecution and resolution of the Action.

7.      Expense items are reported separately and are not duplicated in my firm's hourly rates. As set forth in Exhibit 2 hereto, BLB&G is seeking payment for $284,727.81 in expenses incurred in connection with the prosecution and resolution of the Action. In my judgment, these expenses were reasonable and expended for the benefit of the Class in this Action.

8.      The following is additional information regarding certain of the expenses set forth in Exhibit 2.

2

(a)    **Online Legal / Factual Research** ($18,741.35).  The charges reflected are for out-of-pocket payments to vendors such as Westlaw, Lexis/Nexis, Thomson Reuters, Court Alert, and PACER for online legal and factual research done in connection with this litigation.  These resources were used to obtain access to court filings, to conduct legal research and cite-checking of briefs, and to obtain factual information regarding the claims asserted through access to various financial databases and other factual databases.  These expenses represent the actual expenses incurred by BLB&G for use of these services in connection with this litigation.  There are no administrative charges included in these figures.  Online research is billed to each case based on actual usage at a charge set by the vendor.  When BLB&G utilizes online services provided by a vendor with a flat-rate contract, access to the service is by a billing code entered for the specific case being litigated.  At the end of each billing period, BLB&G's costs for such services are allocated to specific cases based on the percentage of use in connection with that specific case in the billing period.

(b)    **Internal Copying & Printing** ($3.60).  Our firm charges $0.10 per page for in-house copying and for printing of documents.

(c)    **Working Meals** ($410.63).  Working meals are capped at $25 per person for lunch and $40 per person for dinner.

9.    The expenses incurred by BLB&G in the Action are reflected on the books and records of my firm. These books and records are prepared from expense vouchers, check records, and other source materials and are an accurate record of the expenses incurred. I believe these expenses were reasonable and expended for the benefit of the Class in the Action.

10.    With respect to the standing of my firm, attached hereto as Exhibit 3 is a firm résumé, which includes information about my firm and biographical information concerning the firm's attorneys who worked on this matter.

I declare, under penalty of perjury, that the foregoing facts are true and correct. Executed on June 10, 2022 in New York, New York.

_____
SALVATORE J. GRAZIANO

4

**EXHIBIT 1**

*In re Luckin Coffee Inc. Securities Litigation*
Case No. 1:20-cv-01293-JPC-JLC (S.D.N.Y.)

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

**TIME REPORT**

| NAME | CURRENT HOURLY RATE | HOURS | LODESTAR |
|---|---|---|---|
| **Partners** | | | |
| Michael Blatchley | $950 | 98.50 | 93,575.00 |
| Scott Foglietta | $850 | 52.00 | 44,200.00 |
| Salvatore J. Graziano | $1,200 | 405.00 | 486,000.00 |
| Avi Josefson | $1,100 | 59.75 | 65,725.00 |
| John Rizio-Hamilton | $1,100 | 505.00 | 555,500.00 |
| Hannah Ross | $1,100 | 16.25 | 17,875.00 |
| Gerald Silk | $1,200 | 155.00 | 186,000.00 |
| **Senior Counsel & Special Counsel** | | | |
| Jai Chandrasekhar | $825 | 210.50 | 173,662.50 |
| David L. Duncan | $800 | 244.75 | 195,800.00 |
| John Esmay | $800 | 223.25 | 178,600.00 |
| John Mills | $800 | 9.25 | 7,400.00 |
| Catherine Van Kampen | $750 | 14.25 | 10,687.50 |
| **Associate** | | | |
| Kate Aufses | $550 | 156.75 | 86,212.50 |
| Amanda Boitano | $400 | 67.75 | 27,100.00 |
| Nicholas Gersh | $425 | 367.25 | 156,081.25 |
| Mathew Hough | $425 | 14.00 | 5,950.00 |
| Rebecca Kim | $475 | 52.00 | 24,700.00 |
| Jacqueline Ma | $500 | 4.00 | 2,000.00 |
| **Staff Attorneys** | | | |
| Jeff Powell | $400 | 10.75 | 4,300.00 |
| Megan Taggart | $425 | 1.25 | 531.25 |
| **Financial Analysts** | | | |
| Milana Babic | $425 | 14.00 | 5,950.00 |
| Nick DeFilippis | $650 | 28.00 | 18,200.00 |
| Rachel Graf | $400 | 11.00 | 4,400.00 |
| Tanjila Sultana | $450 | 6.00 | 2,700.00 |
| Adam Weinschel | $575 | 32.00 | 18,400.00 |

5

| Investigators | | | |
|---|---|---|---|
| Robin Barnier | $425 | 5.50 | 2,337.50 |
| Amy Bitkower | $600 | 56.00 | 33,600.00 |
| John Deming | $425 | 10.50 | 4,462.50 |
| Jacob Foster | $325 | 16.25 | 5,281.25 |
| Jenna Goldin | $425 | 11.00 | 4,675.00 |
| Joelle Landino | $450 | 11.00 | 4,950.00 |
| **Case Managers & Paralegals** | | | |
| Khristine De Leon | $325 | 58.50 | 19,012.50 |
| Matthew Gluck | $375 | 1.75 | 656.25 |
| Janielle Lattimore | $375 | 55.50 | 20,812.25 |
| Michelle Leung | $375 | 4.00 | 1,500.00 |
| Matthew Mahady | $375 | 28.00 | 10,500.00 |
| Matthew Molloy | $325 | 222.25 | 72,231.25 |
| Nycol Morrisey | $375 | 4.25 | 1,593.75 |
| Yulia Tsoy | $325 | 8.00 | 2,600.00 |
| Virgilio Soler | $350 | 189.75 | 66,412.50 |
| Nathan Vickers | $300 | 12.50 | 3,750.00 |
| Gary Weston | $400 | 7.00 | 2,800.00 |
| Melody Yaghoubzadeh | $350 | 11.25 | 3,937.50 |
| **Litigation Support** | | | |
| Paul Charlotin | $375 | 0.50 | 187.50 |
| Johanna Pitcairn | $400 | 1.50 | 600.00 |
| Roberto Santamarina | $425 | 3.00 | 1,275.00 |
| **Managing Clerk** | | | |
| Mahiri Buffong | $400 | 45.75 | 18,300.00 |
| **TOTALS** | | **3,522.00** | **$2,653,024.75** |

# EXHIBIT 2

*In re Luckin Coffee Inc. Securities Litigation*
Case No. 1:20-cv-01293-JPC-JLC (S.D.N.Y.)

## BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

## EXPENSE REPORT

| CATEGORY | AMOUNT |
|---|---|
| Court Filing and Other Fees | $350.00 |
| PSLRA Notice Cost | $1,875.00 |
| Postage & Express Mail | $148.52 |
| Conference Calling / Long Distance | $1,235.62 |
| On-line Legal / Factual Research | $18,741.35 |
| External Reproduction Costs | $467.62 |
| Internal Reproduction Costs | $3.60 |
| Local Work-Related Transportation | $1,225.71 |
| In-Office Working Meals | $470.63 |
| Court Reporters & Transcripts | $209.76 |
| Litigation Fund Contributions | $260,000.00 |
| | |
| **TOTAL EXPENSES:** | **$284,727.81** |

7

**EXHIBIT 3**

*In re Luckin Coffee Inc. Securities Litigation*
Case No. 1:20-cv-01293-JPC-JLC (S.D.N.Y.)

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

**FIRM RÉSUMÉ**



*Bernstein Litowitz Berger & Grossmann LLP*
*Attorneys at Law*

# Firm Resume

# Table of Contents

Firm Overview ...................................................................................................................................... 3

    More Top Securities Recoveries ...................................................................................................... 3

    Giving Shareholders a Voice and Changing Business Practices for the Better ............................. 4

Practice Areas ...................................................................................................................................... 5

    Securities Fraud Litigation .............................................................................................................. 5

    Corporate Governance and Shareholder Rights ............................................................................ 5

    Distressed Debt and Bankruptcy ................................................................................................... 6

    Commercial Litigation .................................................................................................................... 6

    Alternative Dispute Resolution ...................................................................................................... 6

Feedback from The Courts ................................................................................................................... 7

Significant Recoveries ......................................................................................................................... 8

    Securities Class Actions .................................................................................................................. 8

    Corporate Governance and Shareholders' Rights ....................................................................... 16

Clients and Fees ................................................................................................................................ 20

In The Public Interest ........................................................................................................................ 21

    Bernstein Litowitz Berger & Grossmann Public Interest Law Fellows ......................................... 21

    Firm Sponsorship of Her Justice .................................................................................................. 21

    Firm Sponsorship of City Year New York ..................................................................................... 21

    Max W. Berger Pre-Law Program ................................................................................................ 21

Our Attorneys .................................................................................................................................... 22

    Partners ........................................................................................................................................ 22

    Senior Counsel ............................................................................................................................. 32

    Associates ..................................................................................................................................... 36

    Staff Attorneys ............................................................................................................................. 38

Case 1:20-cv-01293-JPC     Document 327-8     Filed 06/10/22     Page 13 of 48

*Since our founding in 1983, Bernstein Litowitz Berger & Grossmann LLP has obtained many of the largest monetary recoveries in history—over $37 billion on behalf of investors. Unique among our peers, the firm has obtained the largest settlements ever agreed to by public companies related to securities fraud, including four of the ten largest in history. Working with our clients, we have also used the litigation process to achieve precedent-setting reforms which have increased market transparency, held wrongdoers accountable and improved corporate business practices in groundbreaking ways.*

# Firm Overview

Bernstein Litowitz Berger & Grossmann LLP (BLB&G), a national law firm with offices located in New York, California, Delaware, Louisiana, and Illinois, prosecutes class and private actions on behalf of individual and institutional clients. The firm's litigation practice areas include securities class and direct actions in federal and state courts; corporate governance and shareholder rights litigation, including claims for breach of fiduciary duty and proxy violations; mergers and acquisitions and transactional litigation; alternative dispute resolution; and distressed debt and bankruptcy. We also handle, on behalf of major institutional clients and lenders, more general complex commercial litigation involving allegations of breach of contract, accountants' liability, breach of fiduciary duty, fraud, and negligence.

We are the nation's leading firm representing institutional investors in securities fraud class action litigation. The firm's institutional client base includes U.S. public pension funds the New York State Common Retirement Fund; the California Public Employees' Retirement System (CalPERS); the     Los Angeles County Employees Retirement Association (LACERA); the Chicago Municipal, Police and Labor Retirement Systems; the Teacher Retirement System of Texas; the Arkansas Teacher Retirement System; the Florida State Board of Administration; the Public Employees' Retirement System of Mississippi; the New York State Teachers' Retirement System; the Ohio Public Employees Retirement System; the State Teachers Retirement System of Ohio; the Oregon Public Employees Retirement System; the Virginia Retirement System; the Louisiana School, State, Teachers and Municipal Police Retirement Systems; the Public School Teachers' Pension and Retirement Fund of Chicago; the New Jersey Division of Investment of the Department of the Treasury; TIAA-CREF and other private institutions; as well as numerous other public and Taft-Hartley pension entities. Our European client base includes APG; Aegon AM; ATP; Blue Sky Group; Hermes IM; Robeco; SEB; Handelsbanken; Nykredit; PGB; and PGGM, among others.

## More Top Securities Recoveries

Since its founding in 1983, BLB&G has prosecuted some of the most complex cases in history and has obtained over $37 billion on behalf of investors. Unique among its peers, the firm has negotiated and obtained many of the largest securities class action recoveries in history, including:

- *In re WorldCom, Inc. Securities Litigation – $6.19 billion recovery*

- *In re Cendant Corporation Securities Litigation – $3.3 billion recovery*

- *In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litigation – $2.43 billion recovery*

- *In re Nortel Networks Corporation Securities Litigation (Nortel II) – $1.07 billion recovery*

- *In re Merck & Co., Inc. Securities Litigation – $1.06 billion recovery*

- *In re McKesson HBOC, Inc. Securities Litigation – $1.05 billion recovery*

Based on our record of success, BLB&G has been at the top of the rankings by ISS Securities Class Action Services (ISS-SCAS), a leading industry research publication that provides independent and objective third-party analysis and statistics on securities-litigation law firms, since its inception. In its most recent report, *Top 100 U.S. Class Action Settlements of All-Time*, ISS-SCAS once again ranked BLB&G as the top firm in the field for the eleventh year in a row. BLB&G has served as lead or co-lead counsel in 37 of the ISS-SCAS's top 100 U.S. securities-fraud settlements—more than twice as many as any other firm—and recovered over $26 billion for investors in those cases, nearly $10 billion more than any other plaintiffs' securities firm.

# Giving Shareholders a Voice and Changing Business Practices for the Better

BLB&G was among the first law firms ever to obtain meaningful corporate governance reforms through litigation. In courts throughout the country, we prosecute shareholder class and derivative actions, asserting claims for breach of fiduciary duty and proxy violations wherever the conduct of corporate officers and/or directors, or M&A transactions, seek to deprive shareholders of fair value, undermine shareholder voting rights, or allow management to profit at the expense of shareholders.

We have prosecuted seminal cases establishing precedent which has increased market transparency, held wrongdoers accountable, addressed issues in the boardroom and executive suite, challenged unfair deals, and improved corporate business practices in groundbreaking ways.

From setting new standards of director independence, to restructuring board practices in the wake of persistent illegal conduct; from challenging the improper use of defensive measures and deal protections for management's benefit, to confronting stock options backdating abuses and other self-dealing by executives; we have confronted a variety of questionable, unethical and proliferating corporate practices. Seeking to reform faulty management structures and address breaches of fiduciary duty by corporate officers and directors, we have obtained unprecedented victories on behalf of shareholders seeking to improve governance and protect the shareholder franchise.

# Practice Areas

## Securities Fraud Litigation

Securities fraud litigation is the cornerstone of the firm's litigation practice. Since its founding, the firm has had the distinction of having tried and prosecuted many of the most high-profile securities fraud class actions in history, recovering billions of dollars and obtaining unprecedented corporate governance reforms on behalf of our clients. BLB&G continues to play a leading role in major securities litigation pending in federal and state courts, and the firm remains one of the nation's leaders in representing institutional investors in securities fraud class litigation.

The firm also pursues direct actions in securities fraud cases when appropriate. By selectively opting out of certain securities class actions, we seek to resolve our clients' claims efficiently and for substantial multiples of what they might otherwise recover from related class action settlements.

Our attorneys have extensive experience in the laws that regulate the securities markets and in the disclosure requirements of corporations that issue publicly traded securities. Many also have accounting backgrounds. The group has access to state-of-the-art, online financial wire services and databases, which enable it to instantaneously investigate any potential securities fraud action involving a public company's debt and equity securities. Biographies for our attorneys can be accessed on the firm's website by clicking here.

## Corporate Governance and Shareholder Rights

Our Corporate Governance and Shareholder Rights attorneys prosecute derivative actions, claims for breach of fiduciary duty, and proxy violations on behalf of individual and institutional investors in state and federal courts throughout the country. We have prosecuted actions challenging numerous highly publicized corporate transactions which violated fair process, fair price, and the applicability of the business judgment rule, and have also addressed issues of corporate waste, shareholder voting rights claims, and executive compensation.

Our attorneys have prosecuted numerous cases regarding the improper "backdating" of executive stock options which resulted in windfall undisclosed compensation to executives at the direct expense of shareholders—and returned hundreds of millions of dollars to company coffers. We also represent institutional clients in lawsuits seeking to enforce fiduciary obligations in connection with Mergers & Acquisitions and "Going Private" transactions that deprive shareholders of fair value when participants buy companies from their public shareholders "on the cheap." Although enough shareholders accept the consideration offered for the transaction to close, many sophisticated investors correctly recognize and ultimately enjoy the increased returns to be obtained by pursuing appraisal rights and demanding that courts assign a "true value" to the shares taken private in these transactions.

Our attorneys are well versed in changing SEC rules and regulations on corporate governance issues and have a comprehensive understanding of a wide variety of corporate law transactions and both substantive and courtroom expertise in the specific legal areas involved. As a result of the firm's high-profile and widely recognized capabilities, our attorneys are increasingly in demand with institutional investors who are exercising a more assertive voice with corporate boards regarding corporate governance issues and the boards' accountability to shareholders.

# Distressed Debt and Bankruptcy

BLB&G has obtained billions of dollars through litigation on behalf of bondholders and creditors of distressed and bankrupt companies, as well as through third-party litigation brought by bankruptcy trustees and creditors' committees against auditors, appraisers, lawyers, officers and directors, and other defendants who may have contributed to client losses. As counsel, we advise institutions and individuals nationwide in developing strategies and tactics to recover assets presumed lost as a result of bankruptcy. Our record in this practice area is characterized by extensive trial experience in addition to successful settlements.

# Commercial Litigation

BLB&G provides contingency fee representation in complex business litigation and has obtained substantial recoveries on behalf of investors, corporations, bankruptcy trustees, creditor committees, and other business entities. We have faced down the most powerful and well-funded law firms and defendants in the country—and consistently prevailed. For example, on behalf of the bankruptcy trustee, the firm prosecuted *BFA Liquidation Trust v. Arthur Andersen*, arising from the largest nonprofit bankruptcy in U.S. history. After two years of litigation and a week-long trial, the firm obtained a $217 million recovery from Andersen for the Trust. Combined with other recoveries, the total amounted to more than 70 percent of the Trust's losses.

Having obtained huge recoveries with nominal out-of-pocket expenses and fees of less than 20 percent, we have repeatedly demonstrated that valuable claims are best prosecuted by a first-rate litigation firm on a contingent basis at negotiated percentages. Legal representation need not compound the risk and high cost inherent in today's complex and competitive business environment. We are paid only if we (and our clients) win. The result: the highest quality legal representation at a fair price.

# Alternative Dispute Resolution

BLB&G offers clients an accomplished team and a creative venue in which to resolve conflicts outside of the litigation process. We have experience in U.S. and international disputes and our attorneys have led complex business-to-business arbitrations and mediations domestically and abroad representing clients before all the major arbitration tribunals, including the American Arbitration Association, FINRA, JAMS, International Chamber of Commerce, and the London Court of International Arbitration.

Our lawyers have successfully arbitrated cases that range from complex business-to-business disputes to individuals' grievances with employers. It is our experience that in some cases, a well-executed arbitration process can resolve disputes faster, with limited appeals and with a higher level of confidentiality than public litigation.

In the wake of the credit crisis, for example, we successfully represented numerous former executives of a major financial institution in arbitrations relating to claims for compensation. We have also assisted clients with disputes involving failure to honor compensation commitments, disputes over the purchase of securities, businesses seeking compensation for uncompleted contracts, and unfulfilled financing commitments.

# Feedback from The Courts

Throughout the firm's history, many courts have recognized the professional excellence and diligence of the firm and its members. A few examples are set forth below.

### *In re WorldCom, Inc. Securities Litigation*

- The Honorable Denise Cote of the United States District Court for the Southern District of New York

"I have the utmost confidence in plaintiffs' counsel…they have been doing a superb job…The Class is extraordinarily well represented in this litigation."

"The magnitude of this settlement is attributable in significant part to Lead Counsel's advocacy and energy…The quality of the representation given by Lead Counsel…has been superb…and is unsurpassed in this Court's experience with plaintiffs' counsel in securities litigation."

"Lead Counsel has been energetic and creative…Its negotiations with the Citigroup Defendants have resulted in a settlement of historic proportions."

\*        \*        \*

### *In re Clarent Corporation Securities Litigation*

- The Honorable Charles R. Breyer of the United States District Court for the Northern District of California

"It was the best tried case I've witnessed in my years on the bench…."

"[A]n extraordinarily civilized way of presenting the issues to you [the jury]…We've all been treated to great civility and the highest professional ethics in the presentation of the case…"

"These trial lawyers are some of the best I've ever seen."

\*        \*        \*

### *Landry's Restaurants, Inc. Shareholder Litigation*

- Vice Chancellor J. Travis Laster of the Delaware Court of Chancery

"I do want to make a comment again about the excellent efforts…put into this case…This case, I think, shows precisely the type of benefits that you can achieve for stockholders and how representative litigation can be a very important part of our corporate governance system…you hold up this case as an example of what to do."

\*        \*        \*

### *McCall V. Scott (Columbia/HCA Derivative Litigation)*

- The Honorable Thomas A. Higgins of the United States District Court for the Middle District of Tennessee

"Counsel's excellent qualifications and reputations are well documented in the record, and they have litigated this complex case adeptly and tenaciously throughout the six years it has been pending. They assumed an enormous risk and have shown great patience by taking this case on a contingent basis, and despite an early setback they have persevered and brought about not only a large cash settlement but sweeping corporate reforms that may be invaluable to the beneficiaries."

# Significant Recoveries

BLB&G is counsel in many diverse nationwide class and individual actions and has obtained many of the largest and most significant recoveries in history. The firm has successfully identified, investigated, and prosecuted many of the most significant securities and shareholder actions in history, recovering billions of dollars on behalf of defrauded investors and obtaining groundbreaking corporate-governance reforms. These resolutions include six recoveries of over $1 billion, more than any other firm in our field. Examples of cases with our most significant recoveries include:

## Securities Class Actions

**Case:**           *In re WorldCom, Inc. Securities Litigation*

**Court:**          United States District Court for the Southern District of New York

**Highlights:**     $6.19 billion securities fraud class action recovery—the second largest in history; unprecedented recoveries from Director Defendants.

**Case Summary:** Investors suffered massive losses in the wake of the financial fraud and subsequent bankruptcy of former telecom giant WorldCom, Inc. This litigation alleged that WorldCom and others disseminated false and misleading statements to the investing public regarding its earnings and financial condition in violation of the federal securities and other laws. It further alleged a nefarious relationship between Citigroup subsidiary Salomon Smith Barney and WorldCom, carried out primarily by Salomon employees involved in providing investment banking services to WorldCom, and by WorldCom's former CEO and CFO. As Court-appointed Co-Lead Counsel representing Lead Plaintiff the New York State Common Retirement Fund, we obtained unprecedented settlements totaling more than $6 billion from the Investment Bank Defendants who underwrote WorldCom bonds, including a $2.575 billion cash settlement to settle all claims against the Citigroup Defendants. On the eve of trial, the 13 remaining "Underwriter Defendants," including J.P. Morgan Chase, Deutsche Bank and Bank of America, agreed to pay settlements totaling nearly $3.5 billion to resolve all claims against them. Additionally, the day before trial was scheduled to begin, all of the former WorldCom Director Defendants agreed to pay over $60 million to settle the claims against them. An unprecedented first for outside directors, $24.75 million of that amount came out of the pockets of the individuals—20% of their collective net worth. *The Wall Street Journal*, in its coverage, profiled the settlement as having "shaken Wall Street, the audit profession and corporate boardrooms." After four weeks of trial, Arthur Andersen, WorldCom's former auditor, settled for $65 million. Subsequent settlements were reached with the former executives of WorldCom, and then with Andersen, bringing the total obtained for the Class to over $6.19 billion.



*Case:*          *In re Cendant Corporation Securities Litigation*

*Court:*          United States District Court for the District of New Jersey

*Highlights:*     $3.3 billion securities fraud class action recovery – the third largest in history; significant corporate governance reforms obtained.

*Summary:*        The firm was Co-Lead Counsel in this class action against Cendant Corporation, its officers and directors and Ernst & Young (E&Y), its auditors, for their role in disseminating materially false and misleading financial statements concerning the company's revenues, earnings and expenses for its 1997 fiscal year. As a result of company-wide accounting irregularities, Cendant restated its financial results for its 1995, 1996, and 1997 fiscal years and all fiscal quarters therein. Cendant agreed to settle the action for $2.8 billion and to adopt some of the most extensive corporate governance changes in history. E&Y settled for $335 million. These settlements remain the largest sums ever recovered from a public company and a public accounting firm through securities class action litigation. BLB&G represented Lead Plaintiffs CalPERS (the California Public Employees' Retirement System), the New York State Common Retirement Fund and the New York City Pension Funds, the three largest public pension funds in America, in this action.

*Case:*          *In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litigation*

*Court:*          United States District Court for the Southern District of New York

*Highlights:*     $2.425 billion in cash; significant corporate governance reforms to resolve all claims. This recovery is by far the largest shareholder recovery related to the subprime meltdown and credit crisis; the single largest securities class action settlement ever resolving a Section 14(a) claim—the federal securities provision designed to protect investors against misstatements in connection with a proxy solicitation; the largest ever funded by a single corporate defendant for violations of the federal securities laws; the single largest settlement of a securities class action in which there was neither a financial restatement involved nor a criminal conviction related to the alleged misconduct; and one of the 10 largest securities class action recoveries in history.

*Summary:*        The firm represented Co-Lead Plaintiffs the State Teachers Retirement System of Ohio, the Ohio Public Employees Retirement System, and the Teacher Retirement System of Texas in this securities class action filed on behalf of shareholders of Bank of America Corporation (BAC) arising from BAC's 2009 acquisition of Merrill Lynch & Co., Inc. The action alleges that BAC, Merrill Lynch, and certain of the companies' current and former officers and directors violated the federal securities laws by making a series of materially false statements and omissions in connection with the acquisition. These violations included the alleged failure to disclose information regarding billions of dollars of losses which Merrill had suffered before the BAC shareholder vote on the proposed acquisition, as well as an undisclosed agreement allowing Merrill to pay billions in bonuses before the acquisition closed despite these losses. Not privy to these material facts, BAC shareholders voted to approve the acquisition.



*Case:*       *In re Nortel Networks Corporation Securities Litigation (Nortel II)*

*Court:*       United States District Court for the Southern District of New York

*Highlights:*       Over $1.07 billion in cash and common stock recovered for the class.

*Summary*:       This securities fraud class action charged Nortel Networks Corporation and certain of its officers and directors with violations of the Securities Exchange Act of 1934, alleging that the Defendants knowingly or recklessly made false and misleading statements with respect to Nortel's financial results during the relevant period. BLB&G clients the Ontario Teachers' Pension Plan Board and the Treasury of the State of New Jersey and its Division of Investment were appointed as Co-Lead Plaintiffs for the Class in one of two related actions (Nortel II), and BLB&G was appointed Lead Counsel for the Class. In a historic settlement, Nortel agreed to pay $2.4 billion in cash and Nortel common stock to resolve both matters. Nortel later announced that its insurers had agreed to pay $228.5 million toward the settlement, bringing the total amount of the global settlement to approximately $2.7 billion, and the total amount of the Nortel II settlement to over $1.07 billion.

*Case:*       *In re Merck & Co., Inc. Securities Litigation*

*Court:*       United States District Court, District of New Jersey

*Highlights:*       $1.06 billion recovery for the class.

*Summary*:       This case arises out of misrepresentations and omissions concerning life-threatening risks posed by the "blockbuster" COX-2 painkiller Vioxx, which Merck withdrew from the market in 2004. In January 2016, BLB&G achieved a $1.062 billion settlement on the eve of trial after more than 12 years of hard-fought litigation that included a successful decision at the United States Supreme Court. This settlement is the second-largest recovery ever obtained in the Third Circuit, one of the top 11 securities recoveries of all time, and the largest securities recovery ever achieved against a pharmaceutical company. BLB&G represented Lead Plaintiff the Public Employees' Retirement System of Mississippi.

*Case:*       *In re McKesson HBOC, Inc. Securities Litigation*

*Court:*       United States District Court for the Northern District of California

*Highlights:*       $1.05 billion recovery for the class.

*Summary*:       This securities fraud litigation was filed on behalf of purchasers of HBOC, McKesson, and McKesson HBOC securities, alleging that Defendants misled the investing public concerning HBOC's and McKesson HBOC's financial results. On behalf of Lead Plaintiff the New York State Common Retirement Fund, BLB&G obtained a $960 million settlement from the company; $72.5 million in cash from Arthur Andersen; and, on the eve of trial, a $10 million settlement from Bear Stearns & Co. Inc., with total recoveries reaching more than $1 billion.



*Case:*        *HealthSouth Corporation Bondholder Litigation*

*Court:*        United States District Court for the Northern District of Alabama

*Highlights:*    $804.5 million in total recoveries.

*Summary*:    In this litigation, BLB&G was the appointed Co-Lead Counsel for the bond holder class, representing Lead Plaintiff the Retirement Systems of Alabama. This action arose from allegations that Birmingham, Alabama based HealthSouth Corporation overstated its earnings at the direction of its founder and former CEO Richard Scrushy. Subsequent revelations disclosed that the overstatement actually exceeded over $2.4 billion, virtually wiping out all of HealthSouth's reported profits for the prior five years. A total recovery of $804.5 million was obtained in this litigation through a series of settlements, including an approximately $445 million settlement for shareholders and bondholders, a $100 million in cash settlement from UBS AG, UBS Warburg LLC, and individual UBS Defendants, and $33.5 million in cash from the company's auditor. The total settlement for injured HealthSouth bond purchasers exceeded $230 million, recouping over a third of bond purchaser damages.

*Case:*        *In re Washington Public Power Supply System Litigation*

*Court:*         United States District Court for the District of Arizona

*Highlights:*    Over $750 million—the largest securities fraud settlement ever achieved at the time.

*Summary*:    BLB&G was appointed Chair of the Executive Committee responsible for litigating on behalf of the class in this action. The case was litigated for over seven years, and involved an estimated 200 million pages of documents produced in discovery; the depositions of 285 fact witnesses and 34 expert witnesses; more than 25,000 introduced exhibits; six published district court opinions; seven appeals or attempted appeals to the Ninth Circuit; and a three-month jury trial, which resulted in a settlement of over $750 million—then the largest securities fraud settlement ever achieved.

*Case:*        *In re Lehman Brothers Equity/Debt Securities Litigation*

*Court:*        United States District Court for the Southern District of New York

*Highlights:*    $735 million in total recoveries.

*Summary*:    Representing the Government of Guam Retirement Fund, BLB&G successfully prosecuted this securities class action arising from Lehman Brothers Holdings Inc.'s issuance of billions of dollars in offerings of debt and equity securities that were sold using offering materials that contained untrue statements and missing material information.

After four years of intense litigation, Lead Plaintiffs achieved a total of $735 million in recoveries consisting of: a $426 million settlement with underwriters of Lehman securities offerings; a $90 million settlement with former Lehman directors and officers; a $99 million settlement that resolves claims against Ernst & Young, Lehman's former auditor (considered one of the top 10 auditor settlements ever achieved); and a $120 million settlement that resolves claims against UBS Financial


Services, Inc. This recovery is truly remarkable not only because of the difficulty in recovering assets when the issuer defendant is bankrupt, but also because no financial results were restated, and the auditors never disavowed the statements.

*Case:*      *In re Citigroup, Inc. Bond Action Litigation*

*Court:*     United States District Court for the Southern District of New York

*Highlights:*   $730 million cash recovery; second largest recovery in a litigation arising from the financial crisis.

*Summary:*   In the years prior to the collapse of the subprime mortgage market, Citigroup issued 48 offerings of preferred stock and bonds. This securities fraud class action was filed on behalf of purchasers of Citigroup bonds and preferred stock alleging that these offerings contained material misrepresentations and omissions regarding Citigroup's exposure to billions of dollars in mortgage-related assets, the loss reserves for its portfolio of high-risk residential mortgage loans, and the credit quality of the risky assets it held in off-balance sheet entities known as "structured investment vehicles." After protracted litigation lasting four years, we obtained a $730 million cash recovery—the second largest securities class action recovery in a litigation arising from the financial crisis, and the second largest recovery ever in a securities class action brought on behalf of purchasers of debt securities. As Lead Bond Counsel for the Class, BLB&G represented Lead Bond Plaintiffs Minneapolis Firefighters' Relief Association, Louisiana Municipal Police Employees' Retirement System, and Louisiana Sheriffs' Pension and Relief Fund.

*Case:*      *In re Schering-Plough Corporation/Enhance Securities Litigation; In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation*

*Court:*      United States District Court for the District of New Jersey

*Highlights:*   $688 million in combined settlements (Schering-Plough settled for $473 million; Merck settled for $215 million) in this coordinated securities fraud litigations filed on behalf of investors in Merck and Schering-Plough.

*Summary:*   After nearly five years of intense litigation, just days before trial, BLB&G resolved the two actions against Merck and Schering-Plough, which stemmed from claims that Merck and Schering artificially inflated their market value by concealing material information and making false and misleading statements regarding their blockbuster anti-cholesterol drugs Zetia and Vytorin. Specifically, we alleged that the companies knew that their "ENHANCE" clinical trial of Vytorin (a combination of Zetia and a generic) demonstrated that Vytorin was no more effective than the cheaper generic at reducing artery thickness. The companies nonetheless championed the "benefits" of their drugs, attracting billions of dollars of capital. When public pressure to release the results of the ENHANCE trial became too great, the companies reluctantly announced these negative results, which we alleged led to sharp declines in the value of the companies' securities, resulting in significant losses to investors. The combined $688 million in settlements (Schering-Plough settled for $473 million; Merck settled for $215 million) is the second largest securities recovery ever in the Third Circuit, among the top 25



settlements of all time, and among the ten largest recoveries ever in a case where there was no financial restatement. BLB&G represented Lead Plaintiffs Arkansas Teacher Retirement System, the Public Employees' Retirement System of Mississippi, and the Louisiana Municipal Police Employees' Retirement System.

| | |
|---|---|
| ***Case:*** | *In re Lucent Technologies, Inc. Securities Litigation* |
| ***Court:*** | United States District Court for the District of New Jersey |
| ***Highlights:*** | $667 million in total recoveries; the appointment of BLB&G as Co-Lead Counsel is especially noteworthy as it marked the first time since the 1995 passage of the Private Securities Litigation Reform Act that a court reopened the lead plaintiff or lead counsel selection process to account for changed circumstances, new issues, and possible conflicts between new and old allegations. |
| ***Summary:*** | BLB&G served as Co-Lead Counsel in this securities class action, representing Lead Plaintiffs the Parnassus Fund, Teamsters Locals 175 & 505 D&P Pension Trust, Anchorage Police and Fire Retirement System, and the Louisiana School Employees' Retirement System. The complaint accused Lucent of making false and misleading statements to the investing public concerning its publicly reported financial results and failing to disclose the serious problems in its optical networking business. When the truth was disclosed, Lucent admitted that it had improperly recognized revenue of nearly $679 million in fiscal 2000. The settlement obtained in this case is valued at approximately $667 million, and is composed of cash, stock, and warrants. |

| | |
|---|---|
| ***Case:*** | *In re Wachovia Preferred Securities and Bond/Notes Litigation* |
| ***Court:*** | United States District Court for the Southern District of New York |
| ***Highlights:*** | $627 million recovery—among the largest securities class action recoveries in history; third-largest recovery obtained in an action arising from the subprime mortgage crisis. |
| ***Summary:*** | This securities class action was filed on behalf of investors in certain Wachovia bonds and preferred securities against Wachovia Corp., certain former officers and directors, various underwriters, and its auditor, KPMG LLP. The case alleged that Wachovia provided offering materials that misrepresented and omitted material facts concerning the nature and quality of Wachovia's multibillion-dollar option-ARM (adjustable rate mortgage) "Pick-A-Pay" mortgage loan portfolio, and that Wachovia's loan loss reserves were materially inadequate. According to the Complaint, these undisclosed problems threatened the viability of the financial institution, requiring it to be "bailed out" during the financial crisis before it was acquired by Wells Fargo. The combined $627 million recovery obtained in the action is among the 20 largest securities class action recoveries in history, the largest settlement ever in a class action case asserting only claims under the Securities Act of 1933, and one of a handful of securities class action recoveries obtained where there were no parallel civil or criminal actions brought by government authorities. The firm represented Co-Lead Plaintiffs Orange County Employees Retirement System and Louisiana Sheriffs' Pension and Relief Fund in this action. |

- 14 -

**Case:**          *Bear Stearns Mortgage Pass-Through Litigation*

**Court:**         United States District Court for the Southern District of New York

**Highlights:**    $500 million recovery—the largest recovery ever on behalf of purchasers of residential mortgage-backed securities.

**Summary:**       BLB&G served as Co-Lead Counsel in this securities action, representing Lead Plaintiffs the Public Employees' Retirement System of Mississippi. The case alleged that Bear Stearns & Company, Inc. sold mortgage pass-through certificates using false and misleading offering documents. The offering documents contained false and misleading statements related to, among other things, (1) the underwriting guidelines used to originate the mortgage loans underlying the certificates; and (2) the accuracy of the appraisals for the properties underlying the certificates. After six years of hard-fought litigation and extensive arm's-length negotiations, the $500 million recovery is the largest settlement in a U.S. class action against a bank that packaged and sold mortgage securities at the center of the 2008 financial crisis.

**Case:**          *Gary Hefler et al. v. Wells Fargo & Company et al.*

**Court:**          United States District Court for the Northern District of California

**Highlights**     $480 million recovery—the fourth largest securities settlement ever achieved in the Ninth Circuit and the 32nd largest securities settlement ever in the United States.

**Summary:**       BLB&G served as Lead Counsel for the Court-appointed Lead Plaintiff Union Asset Management Holding, AG in this action, which alleged that Wells Fargo and certain current and former officers and directors of Wells Fargo made a series of materially false statements and omissions in connection with Wells Fargo's secret creation of fake or unauthorized client accounts in order to hit performance-based compensation goals. After years of presenting a business driven by legitimate growth prospects, U.S. regulators revealed in September 2016 that Wells Fargo employees were secretly opening millions of potentially unauthorized accounts for existing Wells Fargo customers. The Complaint alleged that these accounts were opened in order to hit performance targets and inflate the "cross-sell" metrics that investors used to measure Wells Fargo's financial health and anticipated growth. When the market learned the truth about Wells Fargo's violation of its customers' trust and failure to disclose reliable information to its investors, the price of Wells Fargo's stock dropped, causing substantial investor losses.

**Case:**          *Ohio Public Employees Retirement System v. Freddie Mac*

**Court:**         United States District Court for the Southern District of Ohio

**Highlights:**    $410 million settlement.

**Summary:**       This securities fraud class action was filed on behalf of the Ohio Public Employees Retirement System and the State Teachers Retirement System of Ohio alleging that Federal Home Loan Mortgage Corporation (Freddie Mac) and certain of its current and former officers issued false and misleading



statements in connection with the company's previously reported financial results. Specifically, the Complaint alleged that the Defendants misrepresented the company's operations and financial results by having engaged in numerous improper transactions and accounting machinations that violated fundamental GAAP precepts in order to artificially smooth the company's earnings and to hide earnings volatility. In connection with these improprieties, Freddie Mac restated more than $5 billion in earnings. A settlement of $410 million was reached in the case just as deposition discovery had begun and document review was complete.

**Case:**        *In re Refco, Inc. Securities Litigation*

**Court:**       United States District Court for the Southern District of New York

**Highlights:**  Over $407 million in total recoveries.

**Summary:**     The lawsuit arises from the revelation that Refco, a once prominent brokerage, had for years secreted hundreds of millions of dollars of uncollectible receivables with a related entity controlled by Phillip Bennett, the company's Chairman and Chief Executive Officer. This revelation caused the stunning collapse of the company a mere two months after its initial public offering of common stock. As a result, Refco filed one of the largest bankruptcies in U.S. history. Settlements have been obtained from multiple company and individual defendants, resulting in a total recovery for the class of over $407 million. BLB&G represented Co-Lead Plaintiff RH Capital Associates LLC.

**Case:**        *In re Allergan, Inc. Proxy Violation Securities Litigation*

**Court:**       United States District Court for the Central District of California

**Highlights:**  Litigation recovered over $250 million for investors while challenging an unprecedented insider trading scheme by billionaire hedge fund manager Bill Ackman.

**Summary:**     As alleged in groundbreaking litigation, billionaire hedge fund manager Bill Ackman and his Pershing Square Capital Management fund secretly acquired a near 10% stake in pharmaceutical concern Allergan, Inc. as part of an unprecedented insider trading scheme by Ackman and Valeant Pharmaceuticals International, Inc. What Ackman knew—but investors did not—was that in the ensuing weeks, Valeant would be launching a hostile bid to acquire Allergan shares at a far higher price. Ackman enjoyed a massive instantaneous profit upon public news of the proposed acquisition, and the scheme worked for both parties as he kicked back hundreds of millions of his insider-trading proceeds to Valeant after Allergan agreed to be bought by a rival bidder. After a ferocious three-year legal battle over this attempt to circumvent the spirit of the U.S. securities laws, BLB&G obtained a $250 million settlement for Allergan investors, and created precedent to prevent similar such schemes in the future. The Plaintiffs in this action were the State Teachers Retirement System of Ohio, the Iowa Public Employees Retirement System, and Patrick T. Johnson.

# Corporate Governance and Shareholders' Rights

**Case:**       *City of Monroe Employees' Retirement System, Derivatively on Behalf of Twenty-First Century Fox, Inc. v. Rupert Murdoch, et al.*

**Court:**       Delaware Court of Chancery

**Highlights:**    Landmark derivative litigation established unprecedented, independent Board-level council to ensure employees are protected from workplace harassment while recouping $90 million for the company's coffers.

**Summary:**      Before the birth of the #metoo movement, BLB&G led the prosecution of an unprecedented shareholder derivative litigation against Fox News parent 21st Century Fox, Inc. arising from the systemic sexual and workplace harassment at the embattled network. After nearly 18 months of litigation, discovery and negotiation related to the shocking misconduct and the Board's extensive alleged governance failures, the parties unveil a landmark settlement with two key components: 1) the first ever Board-level watchdog of its kind—the "Fox News Workplace Professionalism and Inclusion Council" of experts (WPIC)—majority independent of the Murdochs, the Company and Board; and 2) one of the largest financial recoveries—$90 million—ever obtained in a pure corporate board oversight dispute. The WPIC serves as a model for public companies in all industries. The firm represented 21st Century Fox shareholder the City of Monroe (Michigan) Employees' Retirement System.

**Case:**       *In re McKesson Corporation Derivative Litigation*

**Court:**       United States District Court, Northern District of California, Oakland Division and Delaware Chancery Court

**Highlights:**    Litigation recovered $175 million and achieved substantial corporate governance reforms.

**Summary:**      BLB&G represented the Police & Fire Retirement System City of Detroit and Amalgamated Bank in this derivative class action arising from the company's role in permitting and exacerbating America's ongoing opioid crisis. The complaint, initially filed in Delaware Chancery Court, alleged that defendants breached their fiduciary duties by failing to adequately oversee McKesson's compliance with provisions of the Controlled Substances Act and a series of settlements with the Drug Enforcement Administration intended to regulate the distribution and misuse of controlled substances such as opioids. Even after paying fines and settlements in the hundreds of millions of dollars, McKesson was sued in the National Opioid Multidistrict Litigation. In May 2018, our clients joined a substantially similar action being litigated in California federal court. Acting as co-lead counsel, BLB&G played a major role in litigating the case, opposing a motion to stay the action by a special litigation committee, and engaging in extensive pretrial discovery. Ultimately, $175 million was recovered for the benefit of McKesson's shareholders in a settlement that also created substantial corporate-governance reforms to prevent a recurrence of McKesson's inadequate legal compliance efforts.



*Case:*         *UnitedHealth Group, Inc. Shareholder Derivative Litigation*

*Court:*        United States District Court for the District of Minnesota

*Highlights:*   Litigation recovered over $920 million in ill-gotten compensation directly from former officers for their roles in illegally backdating stock options, while the company agreed to far-reaching reforms aimed at curbing future executive compensation abuses.

*Summary:*      This shareholder derivative action filed against certain current and former executive officers and members of the Board of Directors of UnitedHealth Group, Inc. alleged that the Defendants obtained, approved and/or acquiesced in the issuance of stock options to senior executives that were unlawfully backdated to provide the recipients with windfall compensation at the direct expense of UnitedHealth and its shareholders. The firm recovered over $920 million in ill-gotten compensation directly from the former officer Defendants—the largest derivative recovery in history. As feature coverage in *The New York Times* indicated, "investors everywhere should applaud [the UnitedHealth settlement]….[T]he recovery sets a standard of behavior for other companies and boards when performance pay is later shown to have been based on ephemeral earnings." The Plaintiffs in this action were the St. Paul Teachers' Retirement Fund Association, the Public Employees' Retirement System of Mississippi, the Jacksonville Police & Fire Pension Fund, the Louisiana Sheriffs' Pension & Relief Fund, the Louisiana Municipal Police Employees' Retirement System and Fire & Police Pension Association of Colorado.

*Case:*         *Caremark Merger Litigation*

*Court:*         Delaware Court of Chancery – New Castle County

*Highlights:*   Landmark Court ruling ordered Caremark's board to disclose previously withheld information, enjoined a shareholder vote on the CVS merger offer, and granted statutory appraisal rights to Caremark shareholders. The litigation ultimately forced CVS to raise its offer by $7.50 per share, equal to more than $3.3 billion in additional consideration to Caremark shareholders.

*Summary*:      Commenced on behalf of the Louisiana Municipal Police Employees' Retirement System and other shareholders of Caremark RX, Inc., this shareholder class action accused the company's directors of violating their fiduciary duties by approving and endorsing a proposed merger with CVS Corporation, all the while refusing to fairly consider an alternative transaction proposed by another bidder. In a landmark decision, the Court ordered the Defendants to disclose material information that had previously been withheld, enjoined the shareholder vote on the CVS transaction until the additional disclosures occurred, and granted statutory appraisal rights to Caremark's shareholders—forcing CVS to increase the consideration offered to shareholders by $7.50 per share in cash (over $3 billion in total).

*Case:*        *In re Pfizer Inc. Shareholder Derivative Litigation*

*Court:*       United States District Court for the Southern District of New York

*Highlights:*    Landmark settlement in which Defendants agreed to create a new Regulatory and Compliance Committee of the Pfizer Board to be supported by a dedicated $75 million fund.

*Summary:*    In the wake of Pfizer's agreement to pay $2.3 billion as part of a settlement with the U.S. Department of Justice to resolve civil and criminal charges relating to the illegal marketing of at least 13 of the company's most important drugs (the largest such fine ever imposed), this shareholder derivative action was filed against Pfizer's senior management and Board alleging they breached their fiduciary duties to Pfizer by, among other things, allowing unlawful promotion of drugs to continue after receiving numerous "red flags" that Pfizer's improper drug marketing was systemic and widespread. The suit was brought by Court-appointed Lead Plaintiffs Louisiana Sheriffs' Pension and Relief Fund and Skandia Life Insurance Company, Ltd. In an unprecedented settlement reached by the parties, the Defendants agreed to create a new Regulatory and Compliance Committee of the Pfizer Board of Directors (the "Regulatory Committee") to oversee and monitor Pfizer's compliance and drug marketing practices and to review the compensation policies for Pfizer's drug sales related employees.

*Case:*        *Miller et al. v. IAC/InterActiveCorp et al.*

*Court:*       Delaware Court of Chancery

*Highlights:*    This litigation shut down efforts by controlling shareholders to obtain "dynastic control" of the company through improper stock class issuances, setting valuable precedent and sending a strong message to boards and management in all sectors that such moves will not go unchallenged.

*Summary:*    BLB&G obtained this landmark victory for shareholder rights against IAC/InterActiveCorp and its controlling shareholder and chairman, Barry Diller. For decades, activist corporate founders and controllers sought ways to entrench their position atop the corporate hierarchy by granting themselves and other insiders "supervoting rights." Diller laid out a proposal to introduce a new class of non-voting stock to entrench "dynastic control" of IAC within the Diller family. BLB&G litigation on behalf of IAC shareholders ended in capitulation with the Defendants effectively conceding the case by abandoning the proposal. This became a critical corporate governance precedent, given the trend of public companies to introduce "low" and "no-vote" share classes, which diminish shareholder rights, insulate management from accountability, and can distort managerial incentives by providing controllers voting power out of line with their actual economic interests in public companies.

*Case:*        *In re News Corp. Shareholder Derivative Litigation*

*Court:*       Delaware Court of Chancery – Kent County

*Highlights:*    An unprecedented settlement in which News Corp. recouped $139 million and enacted significant corporate governance reforms that combat self-dealing in the boardroom.

***Summary:***    Following News Corp.'s 2011 acquisition of a company owned by News Corp. Chairman and CEO Rupert Murdoch's daughter, and the phone-hacking scandal within its British newspaper division, we filed a derivative litigation on behalf of the company because of institutional shareholder concern with the conduct of News Corp.'s management. We ultimately obtained an unprecedented settlement in which News Corp. recouped $139 million for the company coffers, and agreed to enact corporate governance enhancements to strengthen its compliance structure, the independence and functioning of its board, and the compensation and clawback policies for management.

# Clients and Fees

We are firm believers in the contingency fee as a socially useful, productive and satisfying basis of compensation for legal services, particularly in litigation. Wherever appropriate, even with our corporate clients, we encourage retentions in which our fee is contingent on the outcome of the litigation. This way, it is not the number of hours worked that will determine our fee, but rather the result achieved for our client. The firm generally negotiates with our clients a contingent fee schedule specific to each litigation, and all fee proposals are approved by the client prior to commencing litigation, and ultimately by the Court.

Our clients include many large and well-known financial and lending institutions and pension funds, as well as privately held companies that are attracted to our firm because of our reputation, expertise, and fee structure. Most of the firm's clients are referred by other clients, law firms and lawyers, bankers, investors, and accountants. A considerable number of clients have been referred to the firm by former adversaries. We have always maintained a high level of independence and discretion in the cases we decide to prosecute. As a result, the level of personal satisfaction and commitment to our work is high.

# In The Public Interest

Bernstein Litowitz Berger & Grossmann LLP is guided by two principles:  excellence in legal work and a belief that the law should serve a socially useful and dynamic purpose. Attorneys at the firm are active in academic, community and pro bono activities, and regularly participate as speakers and contributors to professional organizations. In addition, the firm endows a public interest law fellowship and sponsors an academic scholarship at Columbia Law School. Highlights of our community contributions include the following:

## Bernstein Litowitz Berger & Grossmann Public Interest Law Fellows

BLB&G is committed to fighting discrimination and effecting positive social change. In support of this commitment, the firm donates funds to Columbia Law School to create the Bernstein Litowitz Berger & Grossmann Public Interest Law Fellowship. This fund at Columbia Law School provides Fellows with 100% of the funding needed to make payments on their law school tuition loans so long as such graduates remain in the public interest law field. The BLB&G Fellows are able to begin their careers free of any school debt if they make a long-term commitment to public interest law.

## Firm Sponsorship of Her Justice

BLB&G is a sponsor of Her Justice, a not-for-profit organization in New York City dedicated to providing *pro bono* legal representation to indigent women, principally vulnerable women, in connection with the myriad legal problems they face. The organization trains and supports the efforts of New York lawyers who provide *pro bono* counsel to these women. Several members and associates of the firm volunteer their time to help women who need divorces from abusive spouses, or representation on issues such as child support, custody, and visitation. To read more about Her Justice, visit the organization's website at http://www.herjustice.org/.

## Firm Sponsorship of City Year New York

BLB&G is also an active supporter of City Year New York, a division of AmeriCorps. The program was founded in 1988 as a means of encouraging young people to devote time to public service and unites a diverse group of volunteers for a demanding year of full-time community service, leadership development and civic engagement. Through their service, corps members experience a rite of passage that can inspire a lifetime of citizenship and build a stronger democracy.

## Max W. Berger Pre-Law Program

In order to encourage outstanding minority undergraduates to pursue a meaningful career in the legal profession, the Max W. Berger Pre-Law Program was established at Baruch College. Providing workshops, seminars, counseling and mentoring to Baruch students, the program facilitates and guides them through the law school research and application process, as well as placing them in appropriate internships and other pre-law working environments.

# Our Attorneys

BLB&G employs a dedicated team of attorneys, including partners, counsel, associates, and senior staff attorneys. Biographies for each of our attorneys can be found on our website by clicking here. On a case-by-case basis, we also make use of a pool of staff attorneys to supplement our litigation teams. The BLB&G team also includes investigators, financial analysts, paralegals, electronic-discovery specialists, information-technology professionals, and administrative staff. Biographies for our investigative team are available on our website by clicking here, and biographies for the leaders of our administrative departments are viewable here.

# Partners

**Max Berger** is the Founding Partner and has grown BLB&G from a partnership of four lawyers in 1983 into what the *Financial Times* described as "one of the most powerful securities class action law firms in the United States" by prosecuting seminal cases which have increased market transparency, held wrongdoers accountable, and improved corporate business practices in groundbreaking ways.

Described by sources quoted in leading industry publication *Chambers USA* as "the smartest, most strategic plaintiffs' lawyer [they have] ever encountered," Max has litigated many of the firm's most high-profile and significant cases and secured some of the largest recoveries ever achieved in securities fraud lawsuits, negotiating seven of the largest securities fraud settlements in history, each in excess of a billion dollars: *Cendant* ($3.3 billion), *Citigroup-WorldCom* ($2.575 billion), *Bank of America/Merrill Lynch* ($2.4 billion), *JPMorgan Chase-WorldCom* ($2 billion), *Nortel* ($1.07 billion), *Merck* ($1.06 billion), and *McKesson* ($1.05 billion). Max's prosecution of the *WorldCom* litigation, which resulted in unprecedented monetary contributions from WorldCom's outside directors (nearly $25 million out of their own pockets on top of their insurance coverage) "shook Wall Street, the audit profession and corporate boardrooms." (*The Wall Street Journal*)

Max's cases have resulted in sweeping corporate governance overhauls, including the creation of an independent task force to oversee and monitor diversity practices (*Texaco* discrimination litigation), establishing an industry-accepted definition of director independence, increasing a board's power and responsibility to oversee internal controls and financial reporting (*Columbia/HCA*), and creating a Healthcare Law Regulatory Committee with dedicated funding to improve the standard for regulatory compliance oversight by a public company board of directors (*Pfizer*). His cases have yielded results which have served as models for public companies going forward.

Most recently, before the #metoo movement came alive, on behalf of an institutional investor client, Max handled the prosecution of an unprecedented shareholder derivative litigation against Fox News parent 21st Century Fox, Inc. arising from the systemic sexual and workplace harassment at the embattled network. After nearly 18 months of litigation, discovery, and negotiation related to the shocking misconduct and the Board's extensive alleged governance failures, the parties unveiled a landmark settlement with two key components: 1) the first ever Board-level watchdog of its kind—the "Fox News Workplace Professionalism and Inclusion Council" of experts (WPIC)—majority independent of the Murdochs, the Company and Board; and 2) one of the largest financial recoveries—$90 million—ever obtained in a pure corporate board oversight dispute. The WPIC is expected to serve as a model for public companies in all industries.

Max's work has garnered him extensive media attention, and he has been the subject of feature articles in a variety of major media publications*. The New York Times* highlighted his remarkable track record in an October 2012 profile entitled "Investors' Billion-Dollar Fraud Fighter," which also discussed his role in the *Bank of America/Merrill Lynch Merger* litigation. In 2011, Max was twice profiled by *The American Lawyer* for his role in negotiating a $627 million recovery on behalf of investors in the *In re Wachovia Corp. Securities Litigation,* and a $516 million recovery in *In re Lehman Brothers Equity/Debt Securities Litigation.* For his outstanding efforts on behalf of WorldCom investors, he was featured in articles in *BusinessWeek* and *The American Lawyer*, and *The National Law Journal* profiled Max (one of only eleven attorneys selected nationwide) in its annual 2005 "Winning Attorneys" section. He was subsequently featured in a 2006 *New York Times* article, "A Class-Action Shuffle," which assessed the evolving landscape of the securities litigation arena.

**One of the "100 Most Influential Lawyers in America"**

Widely recognized as the "Dean" of the U.S. plaintiff securities bar for his remarkable career and his professional excellence, Max has a distinguished and unparalleled list of honors to his name.

- He was selected as one of the "100 Most Influential Lawyers in America" by *The National Law Journal* for being "front and center" in holding Wall Street banks accountable and obtaining over $5 billion in cases arising from the subprime meltdown, and for his work as a "master negotiator" in obtaining numerous multi-billion dollar recoveries for investors.

- Described as a "standard-bearer" for the profession in a career spanning nearly 50 years, he is the recipient of *Chambers USA's* award for Outstanding Contribution to the Legal Profession. In presenting this prestigious honor, *Chambers* recognized Max's "numerous headline-grabbing successes," as well as his unique stature among colleagues—"warmly lauded by his peers, who are nevertheless loath to find him on the other side of the table." Max has been recognized as a litigation "star" and leading lawyer in his field by *Chambers* since its inception.

- *Benchmark Litigation* recently inducted him into its exclusive "Hall of Fame" and named him a 2021 "Litigation Star" in recognition of his career achievements and impact on the field of securities litigation.

- Upon its tenth anniversary, *Lawdragon* named Max a "Lawdragon Legend" for his accomplishments. He was recently inducted into *Lawdragon's* "Hall of Fame." He is regularly included in the publication's "500 Leading Lawyers in America" and "100 Securities Litigators You Need to Know" lists.

- *Law360* published a special feature discussing his life and career as a "Titan of the Plaintiffs Bar," named him one of only six litigators selected nationally as a "Legal MVP," and selected him as one of "10 Legal Superstars" nationally for his work in securities litigation.

- Max has been regularly named a "leading lawyer" in the *Legal 500 US Guide* where he was also named to their "Hall of Fame" list, as well as *The Best Lawyers in America®* guide.

- Max was honored for his outstanding contribution to the public interest by Trial Lawyers for Public Justice, which named him a "Trial Lawyer of the Year" Finalist in 1997 for his work in *Roberts, et al. v. Texaco*, the celebrated race discrimination case, on behalf of Texaco's African-American employees.

Max has lectured extensively for many professional organizations, and is the author and co-author of numerous articles on developments in the securities laws and their implications for public policy. He was chosen, along with

several of his BLB&G partners, to author the first chapter—"Plaintiffs' Perspective"—of Lexis/Nexis's seminal industry guide *Litigating Securities Class Actions*. An esteemed voice on all sides of the legal and financial markets, in 2008 the SEC and Treasury called on Max to provide guidance on regulatory changes being considered as the accounting profession was experiencing tectonic shifts shortly before the financial crisis.

Max also serves the academic community in numerous capacities. A long-time member of the Board of Trustees of Baruch College, he served as the President of the Baruch College Fund from 2015-2019 and now serves as its Chairman. In May 2006, he was presented with the Distinguished Alumnus Award for his contributions to Baruch College, and in 2019, was awarded an honorary Doctor of Laws degree at Baruch's commencement, the highest honor Baruch College confers upon an individual for non-academic achievement. The award recognized his decades-long dedication to the mission and vision of the College, and in bestowing it, Baruch's President described Max as "one of the most influential individuals in the history of Baruch College." Max established the Max Berger Pre-Law Program at Baruch College in 2007.

A member of the Dean's Council to Columbia Law School as well as the Columbia Law School Public Interest/Public Service Council, Max has taught Profession of Law, an ethics course at Columbia Law School, and serves on the Advisory Board of Columbia Law School's Center on Corporate Governance. In February 2011, Max received Columbia Law School's most prestigious and highest honor, "The Medal for Excellence." This award is presented annually to Columbia Law School alumni who exemplify the qualities of character, intellect, and social and professional responsibility that the Law School seeks to instill in its students. As a recipient of this award, Max was profiled in the Fall 2011 issue of *Columbia Law School Magazine.* Max is a member of the American Law Institute and an Advisor to its Restatement Third: Economic Torts project. Max recently endowed the Max Berger '71 Public Interest/Public Service Fellows Program at Columbia Law School. The program provides support for law students interested in pursuing careers in public service. Max and his wife, Dale, previously endowed the Dale and Max Berger Public Interest Law Fellowship at Columbia Law School and, under Max's leadership, BLB&G also created the Bernstein Litowitz Berger & Grossmann Public Interest Law Fellowship at Columbia.

Among numerous charitable and volunteer works, Max is a significant and long-time contributor to Her Justice, a non-profit organization in New York City dedicated to providing *pro bono* legal representation to indigent women, principally survivors of intimate partner violence, in connection with the many legal problems they face. In recognition of their personal support of the organization, Max and his wife, Dale Berger, were awarded the "Above and Beyond Commitment to Justice Award" by Her Justice in 2021 for being steadfast advocates for women living in poverty in New York City. In addition to his personal support of Her Justice, Max has ensured BLB&G's long-time involvement with the organization. Max is also an active supporter of City Year New York, a division of AmeriCorps, dedicated to encouraging young people to devote time to public service. In July 2005, he was named City Year New York's "Idealist of the Year," for his commitment to, service for, and work in the community. A celebrated photographer, Max has held two successful photography shows that raised hundreds of thousands of dollars for City Year and Her Justice.

*\* Not admitted to practice in California.*

**EDUCATION:** Columbia Law School, J.D., 1971, Editor of the *Columbia Survey of Human Rights Law;* Baruch College-City University of New York, B.B.A., Accounting, 1968.



**ADMISSIONS:** New York**;** United States District Court for the Eastern District of New York**;** United States District Court for the Southern District of New York**;** United States Court of Appeals for the Second Circuit**;** United States Court of Appeals for the Third Circuit**;** United States Court of Appeals for the Sixth Circuit**;** Supreme Court of the United States.

**Michael Blatchley's** practice focuses on securities fraud litigation. He is currently a member of the firm's new matter department in which he, along with a team of attorneys, financial analysts, forensic accountants, and investigators, counsels the firm's clients on their legal claims.

Michael has also served as a member of the litigation teams responsible for prosecuting a number of the firm's cases. For example, Michael was a key member of the team that recovered $150 million for investors in *In re JPMorgan Chase & Co. Securities Litigation*, a securities fraud class action arising out of misrepresentations and omissions concerning JPMorgan's Chief Investment Office, the company's risk management systems, and the trading activities of the so-called "London Whale." He was also a member of the litigation team in *In re Medtronic, Inc. Securities Litigation*, an action arising out of allegations that Medtronic promoted the Infuse bone graft for dangerous "off-label" uses, which resulted in an $85 million recovery for investors. In addition, Michael prosecuted a number of cases related to the financial crisis, including several actions arising out of wrongdoing related to the issuance of residential mortgage-backed securities and other complex financial products.

Most recently, he was a member of the team that achieved a $250 million recovery for investors in *In re Allergan, Inc. Proxy Violation Securities Litigation*, a precedent-setting case alleging unlawful insider trading by hedge fund billionaire Bill Ackman.

Among other accolades, Michael has been repeatedly named to *Benchmark Litigation*'s "Under 40 Hot List," selected as a leading plaintiff financial lawyer by *Lawdragon*, and recognized as a "Super Lawyer by Thomson Reuters' *Super Lawyers.* He frequently presents to public pension fund professionals and trustees concerning legal issues impacting their funds, has authored numerous articles addressing investor rights, including, for example, a chapter in the Practising Law Institute's *2017 Financial Services Mediation Answer Book*, and is a regular speaker at institutional investor conferences. While attending Brooklyn Law School, Michael held a judicial internship position for the Honorable David G. Trager, United States District Judge for the Eastern District of New York. In addition, he worked as an intern at The Legal Aid Society's Harlem Community Law Office, as well as at Brooklyn Law School's Second Look and Workers' Rights Clinics, and provided legal assistance to victims of Hurricane Katrina in New Orleans, Louisiana.

**EDUCATION**: Brooklyn Law School, J.D., Edward V. Sparer Public Interest Law Fellowship; William Payson Richardson Memorial Prize; Richard Elliott Blyn Memorial Prize; Editor for the *Brooklyn Law Review*; Moot Court Honor Society; University of Wisconsin, B.A.

**ADMISSIONS**: New York; New Jersey; United States District Court for the Southern District of New York; United States District Court for the District of New Jersey; United States District Court for the Western District of Wisconsin; United States Court of Appeals for the Ninth Circuit.

**Scott Foglietta** prosecutes securities fraud, corporate governance, and shareholder rights litigation on behalf of the firm's institutional investor clients. As a member of the New Matter Department—the firm's case development and

client advisory group—Scott advises Taft-Hartley pension funds, public pension funds, and other institutional investors on potential legal claims.

Scott was an integral member of the team that advised the firm's clients in numerous matters including in securities class actions against Wells Fargo, which resulted in a $480 million recovery; against Salix, which resulted in a $210 million recovery; and against Equifax, which resulted in a $149 million recovery. Scott was also key part of the teams that evaluated and developed novel case theories or claims in numerous cases, such as Willis Towers Watson, which arose from misrepresentations made in a proxy statement in connection with the merger between Willis Group and Towers Watson and was recently resolved for $75 million (pending court approval), and the ongoing securities class action against Perrigo arising from misrepresentations made in connection with a tender offer for shares trading in both the United States and Israel. Scott was also a member of the team that secured our clients' appointments as lead plaintiffs in the ongoing securities class actions against Boeing, Kraft Heinz, and Luckin Coffee, among others.

Scott was a member of the litigation teams representing investors in securities class actions against FleetCor Technologies, which resulted in a $50 million recovery, and Lumber Liquidators, which achieved a recovery of $45 million. He is currently part of the team advising one of the firm's institutional investor clients in a shareholder derivative action against the board of directors of FirstEnergy Corp. arising from the company's role in an egregious public corruption scandal. For his accomplishments, Scott was recently named a 2022 "Rising Star" by *Law360,* has been regularly named a New York "Rising Star" in the area of securities litigation by Thomson Reuters *Super Lawyers* and in 2021 was chosen as a "Rising Star of the Plaintiffs Bar" by *The National Law Journal* and chosen by *Benchmark Litigation* for its "40 & Under Hot List."

Before joining the firm, Scott represented institutional and individual clients in a wide variety of complex litigation matters, including securities class actions, commercial litigation, and ERISA litigation. Prior to law school, Scott earned his M.B.A. in finance from Clark University and worked as a capital markets analyst for a boutique investment banking firm.

**EDUCATION:** Brooklyn Law School, 2010; J.D.Clark University; Graduate School of Management, 2007 M.B.A Finance Clark University, 2006, B.A., *cum laude*, Management

**ADMISSION:** New York; New Jersey; United States District Court for the Southern District of New York; United States District Court for the Eastern District of New York; United States District Court for the District of New Jersey

**Sal Graziano** is widely recognized as one of the top securities litigators in the country. He has served as lead trial counsel in a wide variety of major securities fraud class actions, recovering billions of dollars on behalf of institutional investors and hedge fund clients.

Over the course of his distinguished career, Sal has successfully litigated many high-profile cases, including: *Merck & Co., Inc. (Vioxx) Sec. Litig.*(D.N.J.); *In re Schering-Plough Corp./ENHANCE Sec. Litig.* (D.N.J.);  *New York State Teachers' Retirement System v. General Motors Co.* (E.D. Mich.); *In re MF Global Holdings Limited Sec. Litig.* (S.D.N.Y); *In re Raytheon Sec. Litig.* (D. Mass.); *In re Refco Sec. Litig.* (S.D.N.Y.); *In re MicroStrategy, Inc. Sec. Litig.* (E.D. Va.); *In re Bristol Myers Squibb Co. Sec. Litig.* (S.D.N.Y.); and *In re New Century Sec. Litig.* (C.D. Cal.).

Industry observers, peers and adversaries routinely honor Sal for his accomplishments.  He is one of the "Top 100 Trial Lawyers" in the nation and a "Litigation Star" according to *Benchmark Litigation*, which credits him for performing *"top quality work."*  *Chambers USA* describes Sal as "wonderfully talented…a smart, aggressive lawyer who works hard for his clients," and "the go-to for the biggest cases," while *Legal 500* praises him as a "highly effective litigator."  Heralded multiple times as one of a handful of Securities Litigation and Class Action "MVPs" in the nation by *Law360*, he has also been named a "Litigation Trailblazer" by *The National Law Journal*. Sal is also one of *Lawdragon*'s "500 Leading Lawyers in America," named as a leading mass tort and plaintiff class action litigator by *Best Lawyers®*, and is one of Thomson Reuters' *Super Lawyers*.

A highly esteemed voice on investor rights, regulatory and market issues, in 2008 he was called upon by the Securities and Exchange Commission's Advisory Committee on Improvements to Financial Reporting to give testimony as to the state of the industry and potential impacts of proposed regulatory changes being considered.  He is the author and co-author of numerous articles on developments in the securities laws, and was chosen, along with several of his BLB&G partners, to author the first chapter - "Plaintiffs' Perspective" - of Lexis/Nexis's seminal industry guide *Litigating Securities Class Actions*.

A member of the firm's Executive Committee, Sal has previously served as the President of the National Association of Shareholder & Consumer Attorneys, and has served as a member of the Financial Reporting Committee and the Securities Regulation Committee of the Association of the Bar of the City of New York.  He regularly speaks on securities fraud litigation and shareholder rights, and has guest lectured at Columbia Law School on the topic.

Prior to entering private practice, Sal served as an Assistant District Attorney in the Manhattan District Attorney's Office.

**EDUCATION**:  New York University School of Law, J.D., 1991; New York University - The College of Arts and Science, B.A., Psychology, 1988.

**ADMISSIONS**: New York; United States District Court for the Southern District of New York; United States District Court for the Eastern District of New York; United States District Court for the Eastern District of Michigan; United States Court of Appeals for the First Circuit; United States Court of Appeals for the Second Circuit; United States Court of Appeals for the Third Circuit; United States Court of Appeals for the Fourth Circuit; United States Court of Appeals for the Sixth Circuit; United States Court of Appeals for the Ninth Circuit; United States Court of Appeals for the Eleventh Circuit.

**John Rizio-Hamilton** is one of America's top shareholder litigators. He works on the most complex and high-stakes securities class action cases and has recovered billions of dollars on behalf of institutional investor clients. Highlights of John's trial experience include the following:

Led the trial team that recovered $240 million for investors in *In re Signet Jewelers Limited Securities Litigation*, a precedent-setting case that marks the first successful resolution of a securities fraud class action based on allegations of sexual harassment. To our knowledge, it is also the first time claims of this nature have been certified for class treatment in the securities context and is one of the very few securities fraud cases in which statements in a Code of Conduct have been held actionable. This case sends a message to corporate executives and corporate boards that alleged systemic sexual harassment and gender discrimination can have serious ramifications through securities fraud class actions. Both the class certification decision and the Judge's decision that the Company's statements about



gender equality and sexual harassment could be actionable in a securities class action are landmark decisions that exceed even the significant financial recovery achieved for shareholders.

- Key part of the trial team that prosecuted *In re Bank of America Securities Litigation*, which settled for $2.425 billion, "the largest securities class action recovery related to the subprime meltdown," per *Law360*, the largest security ever resolving violations of Sections 14(a) and 10(b) of the Securities Exchange Act, and one of the top securities litigation recoveries in history.

- Served as counsel on behalf of the institutional investor plaintiffs in *In re Citigroup, Inc. Bond Action Litigation*, which settled for $730 million, the second largest recovery ever in a securities class action brought on behalf of purchasers of debt securities.

- Member of the team that prosecuted the *In re Wachovia Corp. Bond/Notes Litigation*, in which the firm recovered a total of $627 million on behalf of investors, one of the 15 largest securities class action recoveries in history.

- Key member of the team that recovered $150 million for investors in *In re JPMorgan Chase & Co. Securities Litigation*, a securities fraud class action arising out of misrepresentations and omissions concerning JPMorgan's Chief Investment Office, the company's risk management systems, and the trading activities of the so-called "London Whale."

In addition to his direct litigation responsibilities, John is responsible for the firm's client outreach in Canada, where he advises institutional investor clients on potential securities fraud and investor claims. He is one of the partners who oversees the firm's Global Securities and Litigation Monitoring Team, which monitors global equities traded in non-U.S. jurisdictions on prospective and pending international securities matters, and provides critical analysis of options to recover losses incurred on securities purchased in non-U.S. markets. John also manages the firm's settlements and claims administration department, which is responsible for obtaining court approval of all settlements and for distribution of the proceeds to investment class members.

For his remarkable accomplishments, John was recently named a "Litigation Trailblazer" by *The National Law Journal*. He has previously been recognized by *Law360* as a "Rising Star," a "Legal MVP," and one of the country's "Top Attorneys Under 40." John is regularly named to lists of leading practitioners by *Lawdragon* and Thomson Reuters' *Super Lawyers*.

Before joining BLB&G, John clerked for the Honorable Chester J. Straub of the United States Court of Appeals for the Second Circuit, and the Honorable Sidney H. Stein of the United States District Court for the Southern District of New York.

**EDUCATION:** Brooklyn Law School, 2004, J.D., *summa cum laude*, Editor-in-Chief of the *Brooklyn Law Review*; first-place winner of the J. Braxton Craven Memorial Constitutional Law Moot Court Competition; Johns Hopkins University, 1997, B.A., with honors

**ADMISSIONS:** New York; United States District Court for the Southern District of New York

**Avi Josefson** prosecutes securities fraud litigation for the firm's institutional investor clients, and has participated in many of the firm's significant representations, including *In re SCOR Holding (Switzerland) AG Securities Litigation*,

which resulted in a recovery worth in excess of $143 million for investors. He was also a member of the team that litigated the *In re OM Group, Inc. Securities Litigation*, which resulted in a settlement of $92.4 million.

As a member of the firm's new matter department, Avi counsels institutional clients on potential legal claims. He has presented argument in several federal and state courts, including an appeal he argued before the Delaware Supreme Court.

Recognized as both a "Leading Plaintiff Financial Lawyer" and as one of "500 Leading Lawyers in America" by *Lawdragon* and by *The National Law Journal* as a "Plaintiffs' Lawyers Trailblazer," Avi is also actively involved in the M&A litigation practice, and represented shareholders in the litigation arising from the proposed acquisitions of Ceridian Corporation and Anheuser-Busch. A member of the firm's subprime litigation team, he has participated in securities fraud actions arising from the collapse of subprime mortgage lender American Home Mortgage and the actions against Lehman Brothers, Citigroup and Merrill Lynch, arising from those banks' multi-billion dollar loss from mortgage-backed investments. Avi has prosecuted actions against Deutsche Bank and Morgan Stanley arising from their sale of mortgage-backed securities, and is advising U.S. and foreign institutions concerning similar claims arising from investments in mortgage-backed securities.

Avi practices in the firm's Chicago and New York offices.

**EDUCATION:** Northwestern University School of Law, 2000, J.D., *Dean's List*; Awarded the Justice Stevens Public Interest Fellowship,1999; Public Interest Law Initiative Fellowship,2000; Brandeis University, 1997, B.A., *cum laude*

**ADMISSIONS:** Illinois; New York; United States District Court for the Southern District of New York; United States District Court for the Northern District of Illinois


**Hannah Ross** has over two decades of experience as a civil and criminal litigator. A former prosecutor, she has been a key member and leader of trial teams that have recovered billions of dollars for investors.

Hannah is widely recognized by industry observers for her professional achievements. *Euromoney/Legal Media Group* named her one of the top female litigators in the country (1 of 9 finalists for its "Best in Litigation" category). Named a "Litigation Star," a "Top U.S. Woman Litigator" and one of the "Top 250 Women in Litigation" in the nation by *Benchmark Litigation*, she has earned praise as one of the elite in the field. She has been recognized by *The National Law Journal* as a member of the "Elite Women of the Plaintiffs' Bar" list three times and as a "Litigation & Plaintiffs' Lawyer Trailblazer," named a New York "Super Lawyer" by Thomson Reuter's *Super Lawyers* magazine, and honored as a "Titan of the Plaintiffs Bar" by legal newswire *Law360*. She has been named to an exclusive group of notable practitioners by *Legal 500 US* for her achievements, to the list of the "500 Leading Lawyers in America" and the list of "500 Leading Plaintiff Financial Lawyers" compiled by leading industry publication *Lawdragon*.

Hannah is a member of the firm's Executive Committee. In addition to her direct litigation responsibilities, she is one of the senior partners at the firm responsible for client development and client relations. A significant part of her practice is dedicated to initial case evaluation and counseling the firm's institutional investor clients on potential claims. Hannah is also one of the partners who oversees the firm's Global Securities and Litigation Monitoring Team, which monitors global equities traded in non-U.S. jurisdictions on prospective and pending international securities matters. In that capacity, she advises the firm's institutional investor clients on their options to recover losses incurred on securities purchased in non-U.S. markets. Hannah is the Chair of the firm's Diversity Committee and Co-

Chair of the firm's Forum for Institutional Investors and Women's Forum. She serves on the Corporate Leadership Committee of the New York Women's Foundation and recently concluded a three-year term on the Council of Institutional Investors' Market Advisory Council.

Hannah was a senior member of the team that prosecuted *In re Bank of America Securities Litigation*, which resulted in a landmark settlement shortly before trial of $2.425 billion, one of the largest securities recoveries ever obtained, and by far the largest recovery achieved in a litigation arising from the financial crisis.  Most recently, she was the lead partner in the securities class action arising from the failure of major mid-Atlantic bank Wilmington Trust, which settled for $210 million.  Hannah was also a senior member of the trial team that prosecuted the litigation arising from the collapse of former leading brokerage MF Global, which recovered $234.3 million on behalf of investors. In addition, she led the prosecution against Washington Mutual and certain of its former officers and directors for alleged fraudulent conduct in the thrift's home lending operations, an action which settled for $216.75 million and represents one of the largest settlements achieved in a case related to the fallout of the subprime crisis and the largest recovery ever achieved in a securities class action in the Western District of Washington. Hannah was also a key member of the team prosecuting *In re The Mills Corporation Securities Litigation*, which settled for $202.75 million, one of the largest recovery ever achieved in a securities class action in Virginia and the Fourth Circuit.

She has been a member of the trial teams in numerous other major securities litigations resulting in recoveries for investors in excess of $6 billion.  These include securities class actions against Nortel Networks, New Century Financial Corporation, and the Federal Home Loan Mortgage Corporation ("Freddie Mac"), as well as *In re Altisource Portfolio Solutions S.A. Securities Litigation, In re DFC Global Corp. Securities Litigation, In re Tronox Securities Litigation, In re Delphi Corporation Securities Litigation, In re Affiliated Computer Services, Inc. Derivative Litigation*, *In re OM Group, Inc. Securities Litigation,* and *In re BioScrip, Inc. Securities Litigation.*

Hannah has also served as an adjunct faculty member in the trial advocacy program at the Dickinson School of Law of the Pennsylvania State University. Before joining BLB&G, Hannah was a prosecutor in the Massachusetts Attorney General's Office as well as an Assistant District Attorney in the Middlesex County (Massachusetts) District Attorney's Office.

**EDUCATION:** Penn State Dickinson School of Law, 1998, J.D., Woolsack Honor Society; Comments Editor, Dickinson Law Review; D. Arthur Magaziner Human Services Award; Cornell University, 1995, B.A., cum laude

**ADMISSIONS:** New York; Massachusetts; United States District Court for the Southern District of New York; United States Court of Appeals for the Second Circuit

**Jerry Silk's** practice focuses on representing institutional investors on matters involving federal and state securities laws, accountants' liability, and the fiduciary duties of corporate officials, as well as general commercial and corporate litigation.  He also advises creditors on their rights with respect to pursuing affirmative claims against officers and directors, as well as professionals both inside and outside the bankruptcy context.

Jerry is a member of the firm's Executive Committee. He also oversees the firm's New Matter department in which he, along with a group of attorneys, financial analysts and investigators, counsels institutional clients on potential legal claims. In December 2014, Jerry was recognized by *The National Law Journal* in its inaugural list of "Litigation Trailblazers & Pioneers" — one of several lawyers in the country who have changed the practice of litigation through



the use of innovative legal strategies — in no small part for the critical role he has played in helping the firm's investor clients recover billions of dollars in litigation arising from the financial crisis, among other matters.

In addition, *Lawdragon* magazine, which has named Jerry one of the "100 Securities Litigators You Need to Know," one of the "500 Leading Lawyers in America," and one of America's top 500 "Rising Stars" in the legal profession, also profiled him as part of its "Lawyer Limelight" special series, discussing subprime litigation, his passion for plaintiffs' work and the trends he expects to see in the market. Recognized as one of an elite group of notable practitioners, *Chambers USA*'s ranked Jerry nationally "for his expertise in a range of cases on the plaintiff side." He is also named as a "Litigation Star" by *Benchmark*, is recommended by the *Legal 500 USA* guide in the field of plaintiffs' securities litigation, and has been selected by Thomson Reuters as a *Super Lawyer* every year since 2006.

In the wake of the financial crisis, he advised the firm's institutional investor clients on their rights with respect to claims involving transactions in residential mortgage-backed securities (RMBS) and collateralized debt obligations (CDOs).  His work representing Cambridge Place Investment Management Inc. on claims under Massachusetts state law against numerous investment banks arising from the purchase of billions of dollars of RMBS was featured in a 2010 *New York Times* article by Gretchen Morgenson titled, "Mortgage Investors Turn to State Courts for Relief."

Jerry also represented the New York State Teachers' Retirement System in a securities litigation against the General Motors Company arising from a series of misrepresentations concerning the quality, safety, and reliability of the Company's cars, which resulted in a $300 million settlement. He was also a member of the litigation team responsible for the successful prosecution of *In re Cendant Corporation Securities Litigation* in the District of New Jersey, which was resolved for $3.2 billion. In addition, he is actively involved in the firm's prosecution of highly successful M&A litigation, representing shareholders in widely publicized lawsuits, including the litigation arising from the proposed acquisition of Caremark Rx, Inc. by CVS Corporation — which led to an increase of approximately $3.5 billion in the consideration offered to shareholders.

A graduate of the Wharton School of Business, University of Pennsylvania and Brooklyn Law School, in 1995-96, Jerry served as a law clerk to the Hon. Steven M. Gold, U.S.M.J., in the United States District Court for the Eastern District of New York.

Jerry lectures to institutional investors at conferences throughout the country, and has written or substantially contributed to several articles on developments in securities and corporate law, including his most recent article, "SEC Statement On Emerging Markets Is A Stunning Failure," which was published by *Law360* on April 27, 2020. He has authored numerous additional articles, including: "Improving Multi-Jurisdictional, Merger-Related Litigation," American Bar Association (February 2011); "The Compensation Game," *Lawdragon*, (Fall 2006); "Institutional Investors as Lead Plaintiffs: Is There A New And Changing Landscape?," 75 *St. John's Law Review* 31 (Winter 2001); "The Duty To Supervise, Poser, Broker-Dealer Law and Regulation," 3rd Ed. 2000, Chapter 15; "Derivative Litigation In New York after Marx v. Akers," *New York Business Law Journal*, Vol. 1, No. 1 (Fall 1997).

He has also been a commentator for the business media on television and in print. Among other outlets, he has appeared on NBC's *Today*, and CNBC's *Power Lunch*, *Morning Call*, and *Squawkbox* programs, as well as being featured in *The New York Times*, *Financial Times*, *Bloomberg*, *The National Law Journal*, and the *New York Law Journal.*

**EDUCATION:** Brooklyn Law School, 1995, J.D., *cum laude;* Wharton School of the University of Pennsylvania, 1991, B.S., Economics

**ADMISSIONS:** New York; United States District Court for the Southern District of New York; United States District Court for the Eastern District of New York; United States Court of Appeals for the Second Circuit

# Senior Counsel

**Jai Chandrasekhar** prosecutes securities-fraud litigation for the firm's institutional-investor clients. He has been a member of the litigation teams on many of the firm's high-profile securities cases, including *In re Schering-Plough Corp./ENHANCE Securities Litigation*, in which a settlement of $473 million was achieved for the class; *In re Refco, Inc. Securities Litigation,* in which settlements totaling $367.3 million were achieved for the class; *In re MF Global Holdings Ltd. Securities Litigation*, in which settlements totaling $234.3 million were achieved for the class; *In re JPMorgan Chase & Co. Securities Litigation*, in which a settlement of $150 million was achieved for the class; *In re Bristol Myers Squibb Co. Securities Litigation*, in which a settlement of $125 million was achieved for the class; *In re comScore, Inc. Securities Litigation*, in which a settlement of $27 million in cash and $83 million in stock was achieved for the class; *In re Willis Towers Watson plc Proxy Litigation*, in which a settlement of $75 million was achieved for the class; and *In re Volkswagen AG Securities Litigation*, in which a settlement of $48 million was achieved on behalf of purchasers of Volkswagen AG American Depositary Receipts ("ADRs"). Jai is also active in the firm's appellate practice.

Jai is currently counsel for the plaintiffs in *In re EQT Corporation Securities Litigation*, a securities class action arising from misrepresentations concerning EQT's acquisition of Rice Energy Inc.; *In re Luckin Coffee Inc. Securities Litigation*, a securities class action arising from the Chinese coffee company's massive accounting fraud; and *In re Turquoise Hill Resources Ltd. Securities Litigation*, a securities class action arising from misrepresentations by Turquoise Hill and its controlling stockholder, Rio Tinto plc, concerning schedule delays and cost overruns in the development of Turquoise Hill's copper mine in Mongolia.

Jai is also a member of the firm's Global Securities and Litigation Monitoring Team, which monitors global equities traded in non-U.S. jurisdictions for prospective and pending international securities matters, and provides critical analysis of options to recover losses incurred on securities purchased in non-U.S. markets.

Before joining BLB&G, Jai was a Staff Attorney with the Division of Enforcement of the United States Securities and Exchange Commission, where he investigated securities law violations and coordinated investigations involving multiple SEC offices and other government agencies. Before his tenure at the SEC, he was an associate at Sullivan & Cromwell LLP, where he represented corporate issuers and underwriters in public and private offerings of stocks, bonds, and complex securities and advised corporations on periodic reporting under the Securities Exchange Act of 1934, compliance with the Sarbanes-Oxley Act of 2002, and other corporate and securities matters.

Jai is a member of the New York County Lawyers Association, where he is a member of the Federal Courts Committee and the Boards of Directors of the Association and the NYCLA Foundation. He is also a member of the New York State Bar Association, where he is a member of the House of Delegates. Jai is also a member of the New York Numismatic Club, served as the Club's president from 2019 to 2020, and is an expert on French art medals.

**EDUCATION:** Yale Law School, 1997, J.D., Book Review Editor, *Yale Law Journal*; Yale University, 1987, B.A., *summa cum laude*, Phi Beta Kappa

**Firm Resume**



**ADMISSIONS:** New York; United States District Court for the Southern District of New York; United States District Court for the Eastern District of New York; United States District Court for the Western District of Wisconsin; United States Court of Appeals for the Second Circuit; United States Court of Appeals for the Third Circuit; United States Court of Appeals for the Fourth Circuit; United States Court of Appeals for the Fifth Circuit; United States Court of Appeals for the Federal Circuit

**David Duncan's** practice concentrates on the settlement of class actions and other complex litigation and the administration of class action settlements.

Prior to joining BLB&G, David worked as a litigation associate at Debevoise & Plimpton, where he represented clients in a wide variety of commercial litigation, including contract disputes, antitrust and products liability litigation, and in international arbitration.  In addition, he has represented criminal defendants on appeal in New York State courts and has successfully litigated on behalf of victims of torture and political persecution from Sudan, Côte d'Ivoire and Serbia in seeking asylum in the United States.

While in law school, David served as an editor of the *Harvard Law Review*.  After law school, he clerked for Judge Amalya L. Kearse of the U.S. Court of Appeals for the Second Circuit.

**EDUCATION:** Harvard Law School, 1997, J.D., *magna cum laude;* Harvard College, 1993, A.B., *magna cum laude*, Social Studies

**ADMISSIONS:** New York; Connecticut; United States District Court for the Southern District of New York

**John Esmay** prosecutes securities fraud and shareholder rights litigation on behalf of the firm's institutional clients.

John has worked on federal securities litigations that have returned more than $3 billion to defrauded investors. He has deep experience with complex litigation, and has prepared and participated in trials and hearings in federal and state courtrooms around the country from California to New York. He has also taken part in private arbitration proceedings as well as disciplinary hearings before securities regulatory organizations such as the SEC and FINRA.

John graduated *magna cum laude* from Brooklyn Law School, where he served on the *Journal of Law and Policy*. He received his Bachelor of Science degree in physics from Pomona College.

While attending Brooklyn Law School, John interned for the Honorable Edward R. Korman, and later clerked for the Honorable William H. Pauley III. Prior to attending law school, John worked as a securities broker at the investment banking subsidiary of a prominent bank.

**EDUCATION:** Brooklyn Law School, 2007, J.D., *magna cum laude*; Pomona College, 1998, B.A., Physics

**ADMISSIONS:** New York; United States District Court for the Southern District of New York; United States District Court for the Eastern District of New York

**John MIlls'** practice focuses on negotiating, documenting, and obtaining court approval of the firm's securities, merger, and derivative settlements.

Over the past decade, John was actively involved in finalizing the following settlements, among others:  *In re Wachovia Preferred Sec. and Bond/Notes Litig.* (S.D.N.Y.) ($627 million settlement); *In re Wilmington Trust Sec. Litig.* (D. Del.) ($210 million settlement); *In re Freeport-McMoRan Copper & Gold Inc. Derivative Litig.* (Del. Ch.) ($153.75 million settlement); *Medina, et al. v. Clovis Oncology, Inc., et al.* (D. Colo.) ($142 million settlement); *In re News Corp. S'holder Litig.* (Del. Ch.) ($139 million recovery and corporate governance enhancements); *In re Mut. Funds Invest. Litig. (MFS, Invesco, and Pilgrim Baxter Sub-Tracks)* (D. Md.) ($127.036 million total recovery); *Fresno County Employees' Ret. Ass'n, et al. v. comScore, Inc., et al.* (S.D.N.Y.) ($110 million settlement); *In re El Paso Corp. S'holder Litig.* (Del. Ch.) ($110 million settlement); *In re Starz Stockholder Litig.* (Del. Ch.) ($92.5 million settlement); *The Dep't of the Treasury of the State of New Jersey and its Div. of Invest. v. Cliffs Natural Res. Inc., et al.* (N.D. Ohio) ($85 million settlement).

John received his J.D. from Brooklyn Law School, *cum laude*, where he was a Carswell Merit Scholar recipient and a member of *The Brooklyn Journal of International Law*. He received his B.A. from Duke University.

**EDUCATION:** Brooklyn Law School, 2000, J.D., cum laude, Member of *The Brooklyn Journal of International Law;* Carswell Merit Scholar Recipient; Duke University, 1997, B.A.

**ADMISSIONS:** New York; United States District Court for the Southern District of New York; United States District Court for the Eastern District of New York

**Catherine van Kampen's** law practice concentrates on class action settlement administration.  She manages the firm's qualified settlement funds and claims administration for settlements achieved by the firm.  Catherine is responsible for initiating and managing the claims administration process and working with the Court-appointed claims administrators and investment banks for the benefit of the Classes represented by the firm. Catherine works closely with the firm's partners to apply for Court approval in various jurisdictions throughout the United States for the disbursement of settlement funds. She regularly interfaces with institutional and retail investors to explain the claims administration process and to assist them with filing their claims.

Catherine also has extensive experience in complex litigation and litigation management, having served as a team leader and overseen attorney teams in many of the firm's most high-profile cases during the 2008 Financial Crisis.  Catherine has worked on more than two dozen high-value cases. Fluent in Dutch, she has served as the lead investigator and led discovery efforts in actions involving international corporations and financial institutions headquartered in Belgium and the Netherlands. She is certified in E-Discovery and Healthcare Compliance.

Prior to joining BLB&G, Catherine focused on complex litigation initiated by institutional investors and the Federal Government.  She has worked on litigation and investigations related to regulatory enforcement actions, corporate governance, and compliance matters as well as conducted extensive discovery in English and Dutch in cross-border litigation.

Since attending law school, Catherine has been deeply committed to public and pro bono service to underserved communities. Through her volunteer work, Catherine has been a champion of social change and justice, particularly for immigrant and refugee women and children. As a member of the New York City Bar Association's United Nations

Committee and African Affairs Committee, she spearheaded organizing the highly successful and widely-praised International Law Conference on the Status of Women, Pro Bono Engagement Fair, EPIQ Women Awards and Huntington Her Hero Awards, featuring the Under Secretary and Special Representative to the Secretary General of the United Nations for the Prevention of Violence Against Women, and other prominent, progressive women's advocates from the New York Legal Community. In recognition of her work, Catherine was appointed Co-Chair of the United Nations Committee and a Member of the Council for International Affairs in September of 2021.

A committed humanitarian, Catherine was honored as the 2018 Ambassador Medalist at the New Jersey Governor's Jefferson Awards for Outstanding Public Service for her international humanitarian and pro bono work with refugees. The Jefferson Awards, issued by the Jefferson Awards Foundation that was founded by Jacqueline Kennedy Onassis, are awarded by state governors and are considered America's highest honor for public service bestowed by the United States Senate. Catherine was also honored in Princeton, New Jersey, by her high school alma mater, Stuart Country Day School, in its 2018 Distinguished Alumnae Gallery for her humanitarian and pro bono efforts on behalf of Yezidi and Christian women and children afflicted by war in Iraq and Syria. In 2020, Catherine was accepted as a *SHESOURCE* legal expert advocating for the needs of immigrant and refugee women by the Women's Media Center, founded by Gloria Steinem, Jane Fonda, and Robin Morgan. In 2021, Catherine was appointed a Global Goals Ambassador for Clean Water and Sanitation by the United Nations Association of the USA, the sister organization of the United Nations Foundation USA founded by Eleanor Roosevelt. She is a recipient of several honors recognizing her pro bono work and commitment to social issues, including an invitation to attend the 2020 Tory Burch Foundation Embrace Ambition Summit and an appointment to the Advisory Board of the National Center for Girls' Leadership in Princeton, New Jersey, in 2021.

Catherine is an active member of the American Bar Association, New York Bar Association, New York City Bar Association, New Jersey Bar Association, and the National Association of Women Lawyers. In 2020, Catherine was appointed to the New York State Bar Association's President's Leadership Development Committee. In 2021, Catherine was appointed to the New Jersey State Bar Association's Class Actions, International Law and Organizations, and Special Civil Part Committees. In 2022, Catherine was appointed as Co-chair of the American Bar Association's International Law Section — Women's Interest Network. As part of her pro bono legal work, she serves on two Boards of international NGOs serving refugees and internally displaced persons in the Middle East and Africa and rescuing exploited and trafficked women and girls. Closer to home, Catherine serves as an advisor to minority business owners in the New York City area on legal issues impacting their businesses.

Catherine clerked for the Honorable Mary M. McVeigh in the Superior Court of New Jersey where she was trained as a court-certified mediator. While in law school she interned at the Center for Social Justice's Immigration Law Clinic at Seton Hall University School of Law.  Catherine is a Graduate of the American Inns of Court.

**EDUCATION:** Indiana University, 1988, B.A., Political Science; Seton Hall University School of Law, 1998, J.D.

**ADMISSIONS:** New York; New Jersey

# Associates

**Kate Aufses** prosecutes securities fraud, corporate governance and shareholder rights litigation out of the firm's New York office. She is currently a member of the teams prosecuting securities class actions against Facebook, Inc., Frontier Communications Corporation and Volkswagen AG – which recently resulted in a recovery of $48 million for Volkswagen investors, among others.

In addition to her direct litigation responsibilities, Kate is also a member of the firm's Global Securities and Litigation Monitoring Team, which monitors global equities traded in non-U.S. jurisdictions on prospective and pending international securities matters and provides critical analysis of options to recover losses incurred on securities purchased in non-U.S. markets.

Kate is a member of the New York County Lawyers Association, where she serves on the Supreme Court Joint Task Force.

Prior to joining the firm, Kate was an associate at Hughes Hubbard & Reed, where she worked on complex commercial litigation. Prior to graduating law school, she also served as a judicial intern for the Honorable Jack B. Weinstein.

**EDUCATION**: University of Michigan Law School, 2015, J.D., Managing Symposium Editor, *Michigan Journal of Law Reform*; University of Cambridge, 2010, MPhil, History of Art; University of Cambridge, 2009, MPhil, American Literature; Kenyon College, 2008, B.A., *magna cum laude*, English

**ADMISSIONS:** New York; United States District Court for the Southern District of New York; United States District Court for the Eastern District of New York; United States Bankruptcy Court for the Southern District of New York; United States Court of Appeals for the Second Circuit

**Amanda Boitano** [Former Associate] practiced out of the New York office in the securities litigation department. She represented the firm's institutional investor clients in securities fraud-related matters.

Amanda is a 2018 graduate of New York University School of Law. While in law school, she served as a senior articles editor for the *Annual Survey of American Law* and as an extern in the Violent and Organized Crimes unit of the U.S. Attorney's Office of the Southern District of New York. Amanda has also been active in *pro bono* matters and has represented individuals in family law cases. Prior to attending law school, Amanda worked for Teach for America. She is also a *Jeopardy!* champion.

**EDUCATION:** William & Mary, B.A., 2013; *Dean's List*. New York University School of Law,  J.D., 2018.

**ADMISSIONS:** New York.

**Nicholas Gersh** [Former Associate] practiced out of the firm's New York office, where he prosecuted securities fraud and shareholder rights litigation on behalf of the firm's institutional investor clients.

He was a member of the teams prosecuting the securities litigation against The Kraft Heinz Company, Venator Materials PLC, Oracle Corporation, and Luckin Coffee Inc.


Prior to joining the firm, Nicholas served as a clerk for The Honorable Judge Janis Graham Jack of the Southern District of Texas.

During law school, he gained considerable experience as an Economic Crimes Division Extern for The United States Attorney's Office in the District of Massachusetts, and as an Enforcement Extern for U.S. Securities and Exchange Commission. He also served as the Lead U.S. Legal Researcher for the Iraqi-Kurdistan Religious Freedom Project.

**EDUCATION:** Harvard Law School, J.D., 2018, *International Law Journal*; The Vis Commercial Arbitration Moot Court Team; Global Anticorruption Blog, Contributor; Johns Hopkins University, B.A., 2014

**ADMISSIONS:** New York

**Mathew Hough's** [Former Associate] practice focused on securities litigation, corporate governance, and shareholder rights litigation. As a member of the firm's New Matter department, he counseled institutional clients on potential legal claims as part of a team of attorneys, financial analysts, and investigators.

Prior to joining the firm, Mathew was an associate at Sullivan & Cromwell LLP, where he worked extensively on complex commercial litigation, securities litigation, enforcement, and internal investigations. While in law school, he also served as a legal intern with the King County Northwest Defenders Division.

**EDUCATION:** Washington State University, B.A., 2012, *Distinguished Writing Academic Scholar.* Boston University School of Law, J.D., 2017, *magna cum laude; Boston University Law Review*, Staff Editor; *G. Joseph Tauro Distinguished Scholar.*

**ADMISSIONS:** New York.

**Rebecca N. Kim** [Former Associate] practiced out of the firm's New York office, prosecuting securities fraud, corporate governance, and shareholder rights litigation on behalf of the firm's institutional investor clients.

Rebecca was a member of the firm's New Matter Department, in which she, as part of a team of attorneys, financial analysts, and investigators, counseled public pension funds and other institutional investors on potential legal claims. She was also a member of the team prosecuting actions against Allianz Global Investors. She served on the firm's Diversity Committee. Prior to joining the firm, Rebecca represented institutional clients in a number of high-profile securities and antitrust matters.

While attending Columbia Law School, Rebecca was honored as a Harlan Fiske Stone Scholar. Additionally, she served as an Enforcement Intern at the U.S. Securities and Exchange Commission; participated in the Immigrants' Rights Clinic; and served as Articles Editor for the *Columbia Journal of Tax Law* and Submissions Editor for the *Columbia Journal of Race and Law*.

**EDUCATION:**  Columbia Law School, J.D., 2017, Harlan Fiske Stone Scholar; Articles Editor, *Columbia Journal of Tax Law*; Submissions Editor, *Columbia Journal of Race and Law*; University of California, Berkeley, B.A., 2011

**ADMISSIONS:**  New York, United States District Court for the Southern District of New York; United States District Court for the Eastern District of New York



**Jacqueline Ma** [Former Associate] practiced out of the New York office, where she prosecuted corporate governance and fiduciary duty litigation on behalf of the firm's institutional investor clients.

Prior to joining BLB&G, Jacqueline was a dispute resolution associate at Linklaters LLP, where she represented financial institutions, companies, and individuals in complex commercial litigation and shareholder rights cases, including a Delaware appraisal trial. While attending Columbia Law School, she served as the Executive Managing Editor of the *Columbia Journal of Gender and Law*, as the Student Director of the CLS Writing Center, and as a judicial extern for the Honorable Lorna G. Schofield.

**EDUCATION:** Columbia Law School, J.D., 2016, Harlan Fisk Stone Scholar, Executive Managing Editor, *Columbia Journal of General and Law*.; University of Washington, Seattle, B.A., 2011

**ADMISSIONS:** New York; US District Court for the Southern and Eastern Districts of New York; US Court of Appeals for the Second Circuit.

# Staff Attorneys

**Robert Jeffrey Powell** has worked on numerous matters at BLB&G, *including Hefler et al. v. Wells Fargo & Company et al.; Bach v. Amedisys, Inc., Fernandez, et al. v. UBS AG, et al. ("UBS Puerto Rico Bonds"); In re Salix Pharmaceuticals, Ltd. Securities Litigation; In re Green Mountain Coffee Roasters, Inc. Securities Litigation; In re Genworth Financial Inc. Securities Litigation; In re Bank of New York Mellon Corp. Forex Transactions Litigation; Bear Stearns Mortgage Pass-Through Litigation; Cambridge Place Investment Management Inc. v. Morgan Stanley & Co., Inc., et al.; SMART Technologies, Inc. Shareholder Litigation;* and *In re Citigroup Inc. Bond Litigation*.

Prior to joining the firm in 2011, Jeff was a litigation associate at Pillsbury Winthrop LLP and Constantine Cannon LLP.

**EDUCATION:** University of the South, B.A., *magna cum laude*, 1992; Phi Beta Kappa. Harvard Law School, J.D., 2001.

**ADMISSIONS:** New York.

**Megan Taggart** has worked on numerous matters at BLB&G, including *Hefler et al. v. Wells Fargo & Company et al.;* and *Fresno County Employees' Retirement Association v. comScore, Inc.*

Prior to joining the firm in 2017, Megan was a litigation associate at Kelley Drye & Warren, LLP.

**EDUCATION:** Northwestern University, B.A., 1998. Fordham University School of Law, J.D., 2009.

**ADMISSIONS:** New York.