UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| IN RE LUCKIN COFFEE INC. SECURITIES LITIGATION | Case No. 1:20-cv-01293-JPC |
|---|---|

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS'
MOTION FOR APPROVAL OF DISTRIBUTION PLAN**

Dated:  March 6, 2023

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................................................ ii

I.     BACKGROUND .................................................................................................................2

II.    CLAIMS ADMINISTRATION..........................................................................................2

        A.     Disputed Claims......................................................................................................3

        B.     Late Claims and Final Cut-Off Date ......................................................................5

III.    FEES AND EXPENSES OF CLAIMS ADMINISTRATOR .............................................6

IV.   DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND .....................................7

        A.     Initial Distribution of the Net Settlement Fund ......................................................7

        B.     Additional Distribution(s) of the Net Settlement Fund..........................................8

V.     RELEASE OF CLAIMS...................................................................................................11

VI.   CONCLUSION.................................................................................................................12

## TABLE OF AUTHORITIES

**CASES**                                                          **PAGE(S)**

*In re Cnova N.V. Sec. Litig.*,
    2021 WL 100548 (S.D.N.Y. Jan. 12, 2021) ............................................................................12

*In re Eletrobras Sec. Litig.*,
    467 F.Supp.3d 149 (S.D.N.Y. 2020)......................................................................................11

*In re Henry Schein, Inc. Sec. Litig.*,
    No. 1:18-cv-01428 (E.D.N.Y. July 2, 2021), ECF No. 96 .....................................................10

*In re Signet Jewelers Ltd. Sec. Litig.*,
    2021 WL 5357468 (S.D.N.Y. Nov. 17, 2021).........................................................................10

*In re Vale S.A. Sec. Litig.*,
    2021 WL 3287343 (S.D.N.Y. July 30, 2021) .........................................................................10

*Perkins v. Am. Nat'l Ins. Co.*,
    2012 WL 2839788 (M.D. Ga. July 10, 2012) ........................................................................11

**OTHER AUTHORITIES**

Memorandum of Law in Support of Lead Plaintiff's Unopposed Motion for
    Approval of Distribution Plan, *In re Henry Schein, Inc. Sec. Litig.*, No. 1:18-
    cv-01428 (E.D.N.Y. June 24, 2021), ECF No. 92 ..................................................................10

Court-appointed Lead Plaintiffs and Class Representatives Sjunde AP-Fonden and Louisiana Sheriffs' Pension & Relief Fund (together, "Lead Plaintiffs") respectfully move for entry of the proposed Order Approving Distribution Plan ("Class Distribution Order") for the proceeds of the Settlement in the above-captioned securities class action ("Action"). The Distribution Plan is included in the accompanying Declaration of Alexander P. Villanova ("Villanova Declaration" or "Villanova Decl."), submitted on behalf of the Court-authorized Claims Administrator, Epiq Class Action and Claims Solutions, Inc. ("Epiq").[1]

The Class Distribution Order will permit Epiq to make an Initial Distribution of the Settlement proceeds to eligible Claimants. Among other things, the Class Distribution Order will: (i) approve Epiq's administrative determinations accepting and rejecting Claims submitted in connection with the Settlement; (ii) direct the Initial Distribution of the Net Settlement Fund to Claimants whose Claims are accepted by Epiq as valid and approved by the Court ("Authorized Claimants"), while maintaining a Reserve for any tax liability and claims administration-related contingencies that may arise following the Initial Distribution; and (iii) approve Epiq's fees and expenses incurred and estimated to be incurred in the administration of the Settlement and the Initial Distribution.

Under the Stipulation, Defendants have no role in or responsibility for the administration of the Settlement Fund or processing of Claims, including determinations as to the validity of Claims or the distribution of the Net Settlement Fund. *See* Stipulation ¶¶ 23, 27, 29; *see also* Settlement Notice ¶ 45. Nevertheless, Class Counsel have provided Defendants' Counsel with a copy of these motion papers and Defendants take no position on this motion.

---

[1] Unless otherwise indicated in this memorandum, all terms with initial capitalization shall have the meanings ascribed to them in the Villanova Declaration or in the Stipulation and Agreement of Settlement dated as of October 20, 2021 (ECF No. 315) ("Stipulation"). The Settlement is contained in the Stipulation.

## I. BACKGROUND

On July 22, 2022, the Court entered its Judgment Approving Class Action Settlement (ECF No. 340) and its Order Approving Plan of Allocation of Net Settlement Fund (ECF No. 339), approving the $175 million all-cash Settlement of this Action and the plan for allocating the Settlement proceeds, respectively. The "Effective Date" under paragraph 37 of the Stipulation has now occurred, and accordingly the Net Settlement Fund may now be distributed to Authorized Claimants. In accordance with paragraph 32 of the Stipulation, Lead Plaintiffs respectfully request that the Court enter the Class Distribution Order and approve the Distribution Plan.

In accordance with the Court's Preliminarily Approval Order (ECF No. 319), Epiq mailed the Notice of (I) Proposed Settlement; (II) Settlement Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses ("Settlement Notice") and the Proof of Claim and Release Form ("Claim Form" and, collectively with the Settlement Notice, "Settlement Notice Packet") to potential Class Members, brokers, and other nominees. Villanova Decl. ¶ 2. Epiq has disseminated 564,503 Settlement Notice Packets to potential Class Members, brokers, and nominees. *Id*. ¶ 4. The Settlement Notice informed Class Members that if they wished to be eligible to participate in the distribution of the Net Settlement Fund, they were required to submit a properly executed Claim Form postmarked no later than March 15, 2022. *Id*. ¶ 7.

## II. CLAIMS ADMINISTRATION

As set forth in the Villanova Declaration, through February 1, 2023, Epiq received and processed 49,100 Claims. Villanova Decl. ¶ 7. All Claims received through February 1, 2023, have been fully processed in accordance with the Stipulation and the Court-approved Plan of Allocation included in the Settlement Notice (*see id*.), and Epiq has worked with Claimants to help them perfect their Claims in order to be eligible to receive a distribution from the Settlement. *See id*. ¶¶

2

19-28. Many of the Claims submitted were initially deficient or ineligible for one or more reasons, including being incomplete, not signed, not properly documented, or otherwise deficient, which required substantial follow-up work by Epiq. *Id*. ¶¶ 19, 22.

If Epiq determined a Claim to be defective or ineligible, Epiq sent a letter (if the Claimant or filer submitted a paper Claim or a Claim online via the Website) or an email (if the Claimant or filer submitted an electronic Claim) to the Claimant or filer, as applicable, describing the defect(s) or condition(s) of ineligibility in the Claim and the steps necessary to cure any curable defect(s) in the Claim ("Deficiency Notices"). *Id*. ¶¶ 20, 22. The Deficiency Notices advised the Claimant or filer that the appropriate information or documentary evidence to complete the Claim had to be sent within twenty (20) days from the date of the Deficiency Notice or Epiq would recommend the Claim for rejection to the extent the deficiency or condition of ineligibility was not cured. *Id*. ¶¶ 20, 23. Examples of the Deficiency Notices are attached as Exhibits A, B, and C to the Villanova Declaration.

Of the 49,100 Claims that are the subject of this motion, Epiq has determined that 32,631 Claims are acceptable in whole or in part, and that 16,470 Claims should be rejected because they are ineligible for payment from the Net Settlement Fund. Villanova Decl. ¶¶ 33-37. Lead Plaintiffs respectfully request that the Court approve Epiq's administrative determinations accepting and rejecting Claims as stated in the Villanova Declaration.

### A. Disputed Claims

Epiq carefully reviewed Claimants' and filers' responses to the Deficiency Notices and worked with them to resolve deficiencies where possible. *Id*. ¶¶ 21, 26. Consistent with paragraph 30(e) of the Stipulation, the Deficiency Notices specifically advised the Claimant or filer of the right, within twenty (20) days after the mailing or emailing of the Deficiency Notice, to contest

the rejection of the Claim and request Court review of Epiq's administrative determination of the Claim. *Id*. ¶¶ 20, 23, and Exhibits A and B.

With respect to the fully processed Claims, Epiq received one hundred thirty-four (134) requests for Court review of its administrative determinations. To resolve these disputes without necessitating the Court's intervention, Epiq contacted the Claimants requesting Court review and attempted to answer all questions, to explain Epiq's administrative determination of the Claim's status, and to facilitate the submission of missing information or documentation where applicable. *Id*. ¶ 28. As a result of these efforts, one hundred thirteen (113) Claimants resolved their deficiencies, withdrew their requests for Court review, and their Claims are being recommended for approval. *Id*. In addition, eleven (11) Claimants understood the reasons for Epiq's determinations and are no longer requesting Court review. *Id*. Currently, ten (10) Claims remain disputed and are being submitted to the Court for review and resolution ("Disputed Claims"). *Id*.

Exhibit D to the Villanova Declaration contains a copy of each Disputed Claim with its supporting documentation and sets forth the reasons for Epiq's rejection of each Disputed Claim. *Id*. For privacy reasons, the documents included in Exhibit D have been redacted to remove personal information such as street addresses, email addresses, telephone numbers, account numbers, Taxpayer ID, Social Security, or Social Insurance Numbers, and all financial and transaction information not related to the Claimants' transactions in Luckin ADSs.

Specifically, Epiq recommends rejection of Claim No. 7878 because the Claimant had no eligible purchases of Luckin ADSs. *See id.* This Claim filed only for option contracts on Luckin ADSs, which are not eligible securities in this matter. *See* Settlement Notice ¶ 17. Claim Nos. 9084, 20190, and 20194 are recommended for rejection because the Claimants purchased and sold all of their Luckin ADSs prior to the initial alleged corrective disclosure on January 31, 2020 (*see*

Settlement Notice App. A. ¶ 7(a)), and the sales price of those shares exceeded $17.00, the offering price of the IPO. *See* Settlement Notice App. A. ¶ 8(a). Claim Nos. 319, 18435, 21803, and 11979 are recommended for rejection because these Claimants purchased Luckin ADSs that were not traceable to either offering and sold all of the Luckin ADSs they purchased before the next alleged corrective disclosure. *See id.* ¶ 7(b). Claim No. 16602 is recommended for rejection because the Claimant purchased and sold all of their Luckin ADSs at a market gain; i.e., the sales price was greater than the purchase price. *See id.* ¶¶ 7(b)(ii), 8(a). Claim No. 17888 is recommended for rejection as a questionable claim where, despite multiple requests by Epiq, the Claimant failed to complete authorization forms that would have allowed Epiq to independently verify transactions in the Claim with the Claimant's broker. *See* Villanova Decl. ¶ 28. Class Counsel have reviewed the Disputed Claims and Epiq's determinations and concur that the Disputed Claims should be rejected for the reasons set forth in the Villanova Declaration.

        **B.**      <u>**Late Claims and Final Cut-Off Date**</u>

The 49,100 Claims received through February 1, 2023, include 2,603 Claims that were postmarked or received after March 15, 2022, the Court-approved Claim submission deadline. *Id*. ¶¶ 29, 35. Those late Claims have been fully processed, and 1,355 of them are, but for their late submission, otherwise eligible to participate in the Settlement. *Id*. Although these 1,355 Claims were late, they were received while the processing of timely Claims was ongoing. *Id*. Due to the amount of time needed to process the timely Claims received, the processing of these late Claims did not delay the completion of the Claims administration process or the distribution of the Net Settlement Fund. *Id*. ¶ 29. The Court has discretion to accept Claims received after the Claim submission deadline. *See* Preliminary Approval Order ¶¶ 8, 10; Settlement Notice ¶ 46. Lead Plaintiffs respectfully submit that, when the equities are balanced, it would be unfair to prevent an

otherwise eligible Claim from participating in the distribution of the Net Settlement Fund solely because it was received after the Court-approved Claim submission deadline if it were submitted while timely Claims were still being processed.

To facilitate the efficient distribution of the Net Settlement Fund, however, there must be a final cut-off date after which no other Claims may be accepted. Accordingly, Lead Plaintiffs respectfully request that the Court order that any *new* late Claims (and any requested adjustments to previously filed Claims that would result in an increased Recognized Claim Amount) received after February 1, 2023, shall be barred (*see also* Villanova Decl. ¶ 39(f)) – subject to the proviso that if Class Counsel later determine that an additional distribution is not cost-effective (*see* Villanova Decl. ¶ 39(e)), then any post-February 1, 2023 Claimants may, at the discretion of Class Counsel (and to the extent possible after paying remaining administrative fees and expenses owed), be paid on their new (or adjusted) Claims on a *pro rata* basis so as to bring them into parity with other Authorized Claimants who have cashed their distribution checks.

### III.     FEES AND EXPENSES OF CLAIMS ADMINISTRATOR

The Court-approved Claims Administrator for the Settlement, Epiq, was responsible for, among other things, disseminating notice of the Court's certification of the Class and the Settlement to the Class, creating and maintaining a website and toll-free telephone helpline, processing Claims, and allocating and distributing the Net Settlement Fund to Authorized Claimants. Villanova Decl. ¶¶ 2, 3, 5. Epiq's fees and expenses for its work performed through December 31, 2022, are $1,674,669.73, and its estimated fees and expenses for work to be performed in connection with the Initial Distribution are $38,621.75, which together total $1,713,291.48. *Id*. ¶ 38. Should the estimate of fees and expenses to conduct the Initial Distribution

of the Net Settlement Fund exceed the actual cost, the excess will be returned to the Net Settlement Fund and will be available for subsequent distribution to Authorized Claimants. *Id.*

To date, Epiq has received payment in the amount of $1,587,479.03 for its fees and expenses. *Id.* Accordingly, there is an outstanding balance of $125,812.45 payable to Epiq, which amount includes the estimated fees and expenses to be incurred by Epiq in connection with the Initial Distribution. *Id.* Class Counsel reviewed Epiq's invoices and respectfully request on behalf of Lead Plaintiffs that the Court approve all of Epiq's fees and expenses.

## IV. DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND

### A. Initial Distribution of the Net Settlement Fund

Under the proposed Distribution Plan, Epiq will distribute 90% of the Net Settlement Fund after deducting (i) all payments previously allowed, (ii) payments approved by the Court on this motion, and (iii) any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees (i.e., the Initial Distribution). *See* Villanova Decl. ¶ 39(a). In the Initial Distribution, Epiq will calculate award amounts for all Authorized Claimants as if the entire Net Settlement Fund were to be distributed now. *Id.* ¶ 39(a)(1). Epiq will first determine each Authorized Claimant's *pro rata* share of the total Net Settlement Fund based on the Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants. *Id.* Epiq will eliminate from the Initial Distribution any Authorized Claimant whose *pro rata* share calculates to less than $10.00, as these Claimants will not receive any payment from the Net Settlement Fund and will be so notified by Epiq. *Id.* ¶ 39(a)(2). Epiq will then recalculate the *pro rata* share of the Net Settlement Fund for Authorized Claimants who would have received $10.00 or more based on the amount of the Authorized Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants who would have received $10.00 or more. *Id.* ¶ 39(a)(3). This *pro rata* share

7

is the Authorized Claimant's Distribution Amount. *Id*. Authorized Claimants whose Distribution Amount calculates to less than $200.00 will be paid their full Distribution Amount in the Initial Distribution ("Claims Paid in Full"). *Id*. ¶ 39(a)(4). These Authorized Claimants will receive no additional funds in subsequent distributions. *Id*. After deducting the payments to the Claims Paid in Full, 90% of the remaining balance of the Net Settlement Fund will be distributed *pro rata* to Authorized Claimants whose Distribution Amount calculates to $200.00 or more. *Id*. ¶ 39(a)(5). The remaining 10% of the Net Settlement Fund will be held in reserve (the "Reserve") to address any tax liability and claims administration-related contingencies that may arise. *Id*. To the extent the Reserve is not depleted, the remainder will be distributed in the Second Distribution. *Id*.

To encourage Authorized Claimants to cash their checks promptly, Lead Plaintiffs propose that all distribution checks bear the notation, "CASH PROMPTLY. VOID AND SUBJECT TO REDISTRIBUTION IF NOT CASHED BY [DATE 90 DAYS AFTER ISSUE DATE]." *Id*. ¶ 39(b). Authorized Claimants who do not cash their checks within the time allotted or on the conditions stated in paragraph 39(b) of the Villanova Declaration will irrevocably forfeit all recovery from the Settlement, and the funds allocated to these stale-dated checks will be available to be redistributed to other Authorized Claimants in a subsequent distribution, as described below. *Id*. ¶ 39(c).

### B. Additional Distribution(s) of the Net Settlement Fund

After Epiq has made reasonable and diligent efforts to have Authorized Claimants cash their Initial Distribution checks, but not earlier than seven (7) months after the Initial Distribution, Epiq will, after consulting with Class Counsel, conduct the Second Distribution of the Net Settlement Fund. *Id.* ¶ 39(d). In the Second Distribution, any amount remaining in the Net Settlement Fund, including from the Reserve and for all void stale-dated checks, after deducting

any unpaid fees and expenses incurred, will be distributed to all Authorized Claimants (other than Claims Paid in Full) who cashed their Initial Distribution checks and would receive at least $10.00 from the Second Distribution based on their *pro rata* share of the remaining funds. *Id*. If any funds remain in the Net Settlement Fund after the Second Distribution, and if cost-effective, subsequent distributions will take place at six-month intervals. *Id*. When Class Counsel, in consultation with Epiq, determine that a further distribution is not cost-effective, if sufficient funds remain to warrant the processing of Claims received after February 1, 2023, Epiq will process those Claims. *Id*. ¶ 39(e). Any of these Claims that are otherwise valid, as well as any earlier received Claims for which an upward adjustment was received after February 1, 2023, may be paid in accordance with paragraph 39(f) of the Villanova Declaration. *Id*. If any funds remain in the Net Settlement Fund after payment of these Claims and any unpaid fees or expenses, Class Counsel propose that such remaining funds (if there are any) be contributed to the National Consumer Law Center ("NCLC"). Class Counsel propose that the NCLC be designated as the "non-sectarian, not-for-profit 501(c)(3) organization to be recommended by Class Counsel" referenced in the Court-approved Plan of Allocation. *See Id.* ¶ 39(e); Settlement Notice App. A ¶ 20.

NCLC is a private, non-sectarian, non-profit organization exempt from taxation under Section 501(c)(3) of the Internal Revenue Code. *See Financials*, National Consumer Law Center, https://www.nclc.org/about-us/financials/ (last visited Feb. 13, 2023). For over 50 years, NCLC has worked to build and strengthen a legal network to provide legal services addressed to two main goals: improving access to the legal system for all people and enabling advocates to seek remedies for low-income people where needed. *See History*, National Consumer Law Center, https://www.nclc.org/about-us/history/ (last visited Feb. 13, 2023). NCLC's lawyers provide policy analysis, advocacy, litigation, expert-witness services, and training for consumer advocates

throughout the United States. *See Mission*, National Consumer Law Center, https://www.nclc.org/about-us/mission/ (last visited Feb. 13, 2023). "NCLC uses its unmatched expertise in consumer law to protect consumers from exploitation and expand access to fair credit by advocating for laws, rules, and regulations that benefit real people: those with low incomes, older people, students, people of color, and others who have been abused, deceived, discriminated against, or left behind in our economy." *About Us*, National Consumer Law Center, https://www.nclc.org/about-us/ (last visited Feb. 13, 2023). NCLC has received "the highest ratings from charity watchdogs" and "welcomes *cy pres* designations of unclaimed settlement funds from class action lawsuits, which are used to support [its] consumer rights work advancing the core interests of underlying class members." *History*, National Consumer Law Center, https://www.nclc.org/about-us/history/ (last visited Feb. 13, 2023), and *Cy Pres*, National Consumer Law Center, https://www.nclc.org/get-involved/ways-to-give/cy-pres/ (last visited Feb. 13, 2023). Federal courts have approved NCLC as a *cy pres* recipient of residual balances of net settlement funds in other settlements. *See, e.g.*, *In re Signet Jewelers Ltd. Sec. Litig.*, 2021 WL 5357468, at *2 (S.D.N.Y. Nov. 16, 2021); *In re Vale S.A. Sec. Litig.*, 2021 WL 3287343, at *2 (S.D.N.Y. July 30, 2021); Memorandum of Law in Support of Lead Plaintiff's Unopposed Motion for Approval of Distribution Plan, *In re Henry Schein, Inc. Sec. Litig.*, No. 1:18-cv-01428 (E.D.N.Y. June 24, 2021), ECF No. 92 & Order Approving Distribution Plan, *In re Henry Schein, Inc. Sec. Litig.*, No. 1:18-cv-01428 (E.D.N.Y. July 2, 2021), ECF No. 96, attached hereto as Exhibit 1; *Perkins v. Am. Nat'l Ins. Co.*, 2012 WL 2839788, at *5 (M.D. Ga. July 10, 2012) ("The Court is also satisfied that The National Consumer Law Center's mission, reputation and established track record will ensure that it will be a good steward of the grant award made to it.").

## V. RELEASE OF CLAIMS

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to (i) bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and (ii) provide that all persons involved in any aspect of Claims processing, or who are involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from all claims arising out of that involvement. *See* Stipulation ¶ 34; *see also* Settlement Notice App. A ¶ 21. Accordingly, Lead Plaintiffs respectfully request that the Court release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund from all claims arising out of that involvement, and bar all Class Members and other Claimants, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Lead Plaintiffs, Class Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiffs or Class Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement beyond the amounts allocated to Authorized Claimants.

Courts have repeatedly approved similar releases in connection with the distribution of settlement proceeds. *See, e.g.*, *In re Eletrobras Sec. Litig.*, 467 F. Supp. 3d 149, 151 (S.D.N.Y. 2020) ("All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Proofs of Claim submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are hereby released and discharged from any and all claims arising out of such involvement, and all members of the

11

Settlement Class, whether or not they receive payment from the Net Settlement Fund, are hereby barred from making any further claims against the Net Settlement Fund, Lead Plaintiffs, Lead Counsel, the Claims Administrator, the Escrow Agent, or any other agent retained by Lead Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund beyond the amount allocated to them as Authorized Claimants[.]"); *In re Cnova N.V. Sec. Litig.,* 2021 WL 100548, at *2 (S.D.N.Y. Jan 12, 2021) (approving substantially similar language in order authorizing distribution of settlement proceeds).

## VI. CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court grant their Motion for Approval of Distribution Plan and enter the [Proposed] Order Approving Distribution Plan.

Dated: March 6, 2023                                         Respectfully submitted,

**KESSLER TOPAZ MELTZER
 & CHECK, LLP**

*S/ Sharan Nirmul*
Sharan Nirmul
Gregory M. Castaldo
Richard A. Russo, Jr.
Nathan A. Hasiuk
Lisa M. Port
280 King of Prussia Road
Radnor, Pennsylvania 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
snirmul@ktmc.com
gcastaldo@ktmc.com
rrusso@ktmc.com
nhasiuk@ktmc.com
llambport@ktmc.com

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*S/ Salvatore J. Graziano*
Salvatore J. Graziano
John Rizio-Hamilton
Jai Chandrasekhar
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
salvatore@blbglaw.com
johnr@blbglaw.com
jai@blbglaw.com

*Counsel for Lead Plaintiffs Sjunde AP-Fonden and Louisiana Sheriffs' Pension & Relief Fund and Class Counsel*