# Exhibit 1

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **IN RE HENRY SCHEIN, INC. SECURITIES LITIGATION** | **Master File No. 1:18-cv-01428-MKB-VMS**<br><br>**CLASS ACTION** |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S**
**UNOPPOSED MOTION FOR APPROVAL OF DISTRIBUTION PLAN**

James A. Harrod
Michael M. Mathai
**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020

*Counsel for Lead Plaintiff*
*and Lead Counsel for the Class*

Dated: June 24, 2021

**TABLE OF CONTENTS**

**Page**

I.     BACKGROUND ...................................................................................................2

II.    CLAIMS ADMINISTRATION.........................................................................3

     A.    DISPUTED CLAIM ...............................................................................4

     B.    LATE CLAIMS – AND FINAL CUT-OFF DATE .............................5

III.    FEES AND EXPENSES OF CLAIMS ADMINISTRATOR .........................6

IV.    DISTRIBUTION PLAN FOR THE NET SETTLEMENT AMOUNT ...........7

     A.    DISTRIBUTION OF THE NET SETTLEMENT AMOUNT................7

     B.    ADDITIONAL DISTRIBUTION(S) OF THE NET SETTLEMENT AMOUNT..8

VI.    CONCLUSION..................................................................................................11

# TABLE OF AUTHORITIES

**CASES**                                                     **PAGE(S)**

*Blank v. Jacobs*,
  2013 WL 1310503 (E.D.N.Y. Mar. 27, 2013) ...................................................................12

*In re Eletrobras Sec. Litig.*,
  467 F.Supp.3d 149 (S.D.N.Y. 2020)...............................................................................12

*Mylan Pharms., Inc. v. Warner Chilcott Pub. Ltd. Co.*,
  No. 12-cv-3824, 2015 WL 12839121 (E.D. Pa. Jan. 21, 2015)...............................................12

*In re Nu Skin Enters., Inc., Sec. Litig.*,
  Master File No. 14-cv-33 (D. Utah Aug. 30, 2018)...................................................................11

*Perkins v. Am. Nat'l Ins. Co.*,
  No. 05-cv-100, 2012 WL 2839788 (M.D. Ga. July 10, 2012)...................................................11

*Romero v. US Unwired, Inc.*,
  No. 04-cv-2312, 2012 WL 12995289 (E.D. La. Mar. 8, 2012) .................................................12

*Spann v. J.C. Penney Corp.*,
  211 F. Supp. 3d 1244 (C.D. Cal. 2016), *appeal dismissed*, 2016 WL 9778633
  (9th Cir. Nov. 7, 2016)...................................................................................................11

*Thorpe v. Walter Inv. Mgmt., Corp.*,
  2018 WL 3672266 (S.D. Fla. May 24, 2018), *report and recommendation
  adopted*, 2018 WL 3672239 (S.D. Fla. June 8, 2018) ............................................................12

Lead Plaintiff, City of Miami General Employees' & Sanitation Employees' Retirement Trust, respectfully moves for entry of the proposed Order Approving Distribution Plan ("Class Distribution Order"), which will approve the proposed plan for the distribution of the net proceeds of the Settlement to eligible Class Members in the above-captioned action (the "Action"). The Distribution Plan is included in the accompanying Declaration of Eric J. Miller in Support of Lead Plaintiff's Unopposed Motion for Approval of Distribution Plan (the "Miller Declaration" or "Miller Decl."),[1] submitted on behalf of the Court-approved Claims Administrator, A.B. Data, Ltd.'s Class Action Administration Company ("A.B. Data").

If entered by the Court, the Class Distribution Order would, among other things, (i) approve A.B. Data's administrative recommendations accepting and rejecting Claims submitted in connection with the Settlement reached in the Action; (ii) direct the Initial Distribution of the Net Settlement Amount to Claimants whose Claims are accepted by A.B. Data as valid and approved by the Court, while maintaining a Reserve for any tax liability and claims administration-related contingencies that may arise; and (iii) approve A.B. Data's fees and expenses incurred and estimated to be incurred in the administration of the Settlement and the Initial Distribution.

Defendants do not oppose this motion.[2] There are no disputed Claims by any Class Member requiring Court review. As such, the motion is ripe for determination.

---

[1] Unless otherwise indicated in this memorandum, all terms with initial capitalization shall have the meanings ascribed to them in the Miller Declaration or the Stipulation of Settlement dated April 30, 2020 (ECF No. 70-1) ("Settlement Agreement"). The Settlement is contained in the Settlement Agreement.

[2] Under the Settlement Agreement, Defendants have no role in or responsibility for the administration of the Settlement Fund or processing of Claims, including determinations as to the validity of Claims or the distribution of the Net Settlement Amount. *See* Settlement Agreement ¶ III(D)(5).

## I.  BACKGROUND

The Court has approved the Settlement Agreement entered into by Lead Plaintiff, on behalf of itself and the other members of the Class, and the Defendants in the Action. The Settlement Agreement sets forth the terms of the Settlement, which represents a complete resolution of this Action in return for a payment of $35 million in cash (the "Settlement Amount"), which Defendants have caused to be paid for the benefit of Class Members.

In accordance with the Court's Order Preliminarily Approving Proposed Settlement (ECF No. 74) ("Preliminary Approval Order"), A.B. Data mailed the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses ("Individual Notice") and the Proof of Claim and Release Form ("Claim Form," and together with the Individual Notice the "Notice Packet") to potential Class Members, brokers, and other nominees. Miller Decl. ¶ 2. As stated in the Miller Declaration, A.B. Data has disseminated 179,772 Notice Packets to potential Class Members, brokers, and nominees. *Id.* ¶ 4. The Individual Notice informed Class Members that if they wished to be eligible to participate in the distribution of the Net Settlement Amount, they were required to submit a properly executed Claim Form received or postmarked no later than September 2, 2020. *Id.* ¶ 7.

On September 16, 2020, the Court granted final approval in its Order Approving Class-Action Settlement (ECF No. 89) and entered the Judgment (ECF No. 90). The Final Settlement Date has occurred.[3] Accordingly, the Net Settlement Amount may be distributed to Authorized Claimants.

---

[3] *See* Settlement Agreement ¶ I(A)(32).

In accordance with paragraph III(E)(9) of the Settlement Agreement, Lead Plaintiff respectfully requests that the Court enter the Class Distribution Order approving the Distribution Plan.[4]

## II.      CLAIMS ADMINISTRATION

As detailed in the Miller Declaration, through June 15, 2021, A.B. Data received and processed 95,254 Claims. Miller Decl. ¶ 7. All Claims received through June 15, 2021, have been fully processed in accordance with the Settlement Agreement and the Court-approved Plan of Allocation included in the Individual Notice (*id.*), and A.B. Data has worked with Claimants to help them perfect their Claims. *See id.* ¶¶ 19-26. A.B. Data has determined that 27,330 Claims (including the Late But Otherwise Eligible Claims discussed below) are acceptable in whole or in part to participate in the distribution of the Net Settlement Amount, and that 67,924 Claims should be wholly rejected because they are ineligible for payment from the Net Settlement Amount. *See id.* ¶¶ 33-36.

As discussed in the Miller Declaration, many of the Claims submitted in the Settlement were initially deficient or ineligible for one or more reasons, including being incomplete, not signed, not properly documented, or otherwise deficient, which required substantial follow-up work by A.B. Data. *Id.* ¶¶ 19, 22.

If A.B. Data determined a Claim to be defective or ineligible, a Deficiency Letter (if the Claimant or filer filed a paper Claim) or a Status Email with an attached Status Spreadsheet (if the Claimant or E-Filer filed an Electronic Claim) was sent by A.B. Data to the Claimant or filer, as applicable, describing the defect(s) or condition(s) of ineligibility in the Claim and the steps necessary to cure any curable defect(s) in the Claim. *Id.* ¶¶ 20, 22. The Deficiency Letter or Status

---

[4] The Court retained continuing and exclusive jurisdiction over, among other things, implementing the Settlement, including the disposition of the Settlement Fund and any motion to approve the Class

Email advised the Claimant or filer that the appropriate information or documentary evidence to complete the Claim had to be sent within 20 days from the date of the Deficiency Letter or Status Email, or A.B. Data would recommend the Claim for rejection to the extent the deficiency or condition of ineligibility was not cured. *Id*. ¶¶ 20, 23. Examples of a Deficiency Letter, Status Email, and Status Spreadsheet are attached as Exhibits A, B, and C to the Miller Declaration.

### A. No Disputed Claims

A.B. Data carefully reviewed Claimants' and filers' responses to the Deficiency Letters and Status Emails and worked with them to resolve deficiencies where possible. *Id*. ¶¶ 21, 26. Consistent with paragraph III(E)(7) of the Settlement Agreement, the Deficiency Letters and Status Emails specifically advised Claimants or filers of their right, within 20 days after the mailing of the Deficiency Letter or emailing of the Status Email, to contest the rejection of their Claims and request Court review of A.B. Data's administrative determinations of the Claims. *Id*. ¶¶ 20, 23, and Exhibits A and B.

With respect to the fully processed Claims, A.B. Data received fifteen (15) requests for Court review. To resolve these disputes without necessitating the Court's intervention, A.B. Data contacted the Claimants requesting Court review and attempted to answer all questions, explain A.B. Data's administrative determination of each Claim's status, and facilitate the submission of missing information or documentation where applicable. *Id*. ¶ 28. As a result of these efforts, ten (10) Claimants resolved their deficiencies, withdrew their requests for court review, and their Claims are recommended for approval; and five (5) Claimants understood the reasons for A.B. Data's determinations and are no longer requesting court review. *Id*. Accordingly, there are no outstanding requests for Court review by any Claimants and the motion is ripe for determination. *Id*.

---

Distribution Order. *See* Judgment ¶ 6.

## B. Late Claims – and Final Cut-Off Date

The 95,254 Claims received through June 15, 2021, include 27,056 Claims that were postmarked or received after September 2, 2020, the Court-approved Claim submission deadline, but received before June 15, 2021. *Id.* ¶¶ 29, 35. Those late Claims have been fully processed, and 1,556 of them are, but for their late submission, otherwise eligible to participate in the Settlement. *Id.* Although these 1,556 Claims were late, they were received while the processing of timely Claims was ongoing. Due to the amount of time needed to process the timely Claims received, the processing of these late Claims did not delay the completion of the Claims administration process or the distribution of the Net Settlement Amount. The Court has discretion to accept Claims received after the Claim submission deadline.[5] Lead Plaintiff respectfully submits that, when the equities are balanced, it would be unfair to prevent an otherwise eligible Claim from participating in the distribution of the Net Settlement Amount solely because it was received after the Court-approved Claim submission deadline if it were submitted while timely Claims were still being processed.

To facilitate the efficient distribution of the Net Settlement Amount, however, there must be a final cut-off date after which no other Claims may be accepted. Accordingly, Lead Plaintiff respectfully requests that this Court order that any new Claims and any adjustments to previously filed Claims that would result in an increased Recognized Claim amount received after June 15,

---

[5] *See* Preliminary Approval Order ¶ 23(a) ("A properly competed and executed Claim Form must be submitted to the Claims Administrator, at the address identified in the Notice, postmarked or received no later than the date stated in the Claim Form (which date shall be one hundred twenty (120) days after the date of this Order). *Such deadline may be further extended by Order of the Court.*") (emphasis added). *See also* Individual Notice ¶ 46 ("*Unless the Court otherwise orders*, any Class Member who fails to submit a Claim Form postmarked on or before September 2, 2020 shall be fully and forever barred from receiving payments pursuant to the Settlement….") (emphasis added).

2021, be barred, subject to the provisions of paragraph 39(f) of the Miller Declaration.[6] Paragraph 39(f) applies to any Claims received or modified after June 15, 2021, that would have been eligible for payment or additional payment under the Court-approved Plan of Allocation if timely received. At the time when Lead Counsel, in consultation with A.B. Data, determines that a further distribution is not cost-effective as provided in paragraph 39(e) of the Miller Declaration, the post-June 15, 2021 Claimants, after payment of fees and expenses as provided in paragraph 39(f) of the Miller Declaration, at the discretion of Lead Counsel, and to the extent possible, may be paid their distribution amounts or additional distribution amounts on a *pro rata* basis that would bring them into parity with other Authorized Claimants who have cashed all their prior distribution checks.

### III.    FEES AND EXPENSES OF CLAIMS ADMINISTRATOR

In accordance with A.B. Data's agreement with Lead Counsel to act as the Claims Administrator for the Settlement, A.B. Data was responsible for, among other things, disseminating notice of the Settlement to the Class, creating and maintaining the Settlement Website and toll-free telephone helpline, processing Claims, and allocating and distributing the Net Settlement Amount to Authorized Claimants. Miller Decl. ¶ 2. As stated in the Miller Declaration, A.B. Data's fees and expenses for its work performed through May 31, 2021, are $495,354.49, and its estimated fees and expenses for the Initial Distribution to be performed on behalf of the Class are $43,336.48, which together total $538,690.97.[7] *Id*. ¶ 38. To date, A.B. Data has received payment in the amount of $430,942.92 for its fees and expenses. *Id*. Accordingly, there is an outstanding balance of

---

[6] Should an adjustment result in a lower Recognized Claim, that adjustment will be made, and the Recognized Claim will be reduced accordingly prior to a distribution to that Claimant. Miller Decl. ¶ 30.

[7] Should the estimate of fees and expenses to conduct the Initial Distribution of the Net Settlement Amount exceed the actual cost, the excess will be returned to the Net Settlement Amount and will be available for subsequent distribution to Authorized Claimants. Miller Decl. ¶ 38 n.5.

6

$107,748.05 payable to A.B. Data, which amount includes the estimated fees and expenses to be incurred by A.B. Data in connection with the Initial Distribution. *Id*. Lead Counsel reviewed A.B. Data's invoices and respectfully requests on behalf of Lead Plaintiff that the Court approve all of A.B. Data's fees and expenses.

## IV. DISTRIBUTION PLAN FOR THE NET SETTLEMENT AMOUNT

The Net Settlement Amount is ready to be distributed. Lead Plaintiff respectfully moves the Court for entry of an order approving A.B. Data's determinations concerning acceptance and rejection of the Claims that are included in the present motion and approving the proposed Distribution Plan for the Net Settlement Amount as stated in the Miller Declaration.

### A. Distribution of the Net Settlement Amount

Under the proposed Distribution Plan, A.B. Data will distribute 95% of the Net Settlement Amount, after deducting all payments previously allowed and the payments approved by the Court on this motion, and after deducting payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees (i.e., the Initial Distribution). *See* Miller Decl. ¶ 39(a). In the Initial Distribution, A.B. Data will calculate award amounts for all Authorized Claimants as if the entire Net Settlement Amount were to be distributed now. *Id*. ¶ 39(a)(1). A.B. Data will first determine each Authorized Claimant's *pro rata* share of the total Net Settlement Amount based on the Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants. *Id*. In accordance with the Court-approved Plan of Allocation, A.B. Data will eliminate from the Initial Distribution any Authorized Claimant whose *pro rata* share calculates to less than $10.00, as these Claimants will not receive any payment from the Net Settlement Amount and will be so notified by A.B. Data *Id*. ¶ 39(a)(2). A.B. Data will then recalculate the *pro rata* share of the Net Settlement Amount for Authorized Claimants who would have received $10.00 or more based

on the amount of the Authorized Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants who would have received $10.00 or more. *Id*. ¶ 39(a)(3). This *pro rata* share is the Authorized Claimant's Distribution Amount. *Id*. Authorized Claimants whose Distribution Amount calculates to less than $200.00 will be paid their full Distribution Amount in the Initial Distribution ("Claims Paid in Full"). *Id*. ¶ 39(a)(4). These Authorized Claimants will receive no additional funds in subsequent distributions. *Id*. After deducting the payments to the Claims Paid in Full, 95% of the remaining balance of the Net Settlement Amount will be distributed *pro rata* to Authorized Claimants whose Distribution Amount calculates to $200.00 or more. *Id*. ¶ 39(a)(5). The remaining 5% of the Net Settlement Amount will be held in reserve (the "Reserve") to address any tax liability and claims administration-related contingencies that may arise. *Id*. To the extent the Reserve is not depleted, the remainder will be distributed in the Second Distribution. *Id*.

In order to encourage Authorized Claimants to cash their checks promptly, Lead Plaintiff proposes that all distribution checks bear the notation, "CASH PROMPTLY. VOID AND SUBJECT TO REDISTRIBUTION IF NOT CASHED BY [DATE 90 DAYS AFTER ISSUE DATE]." *Id*. ¶ 39(b). Authorized Claimants who do not cash their checks within the time allotted or on the conditions stated in paragraph 39(b) footnote 9 of the Miller Declaration will irrevocably forfeit all recovery from the Settlement, and the funds allocated to these stale-dated checks will be available to be redistributed to other Authorized Claimants in a subsequent distribution, as described below. *Id*. ¶ 39(c).

### B. Additional Distribution(s) of the Net Settlement Amount

After A.B. Data has made reasonable and diligent efforts to have Authorized Claimants cash their Initial Distribution checks, but not earlier than seven (7) months after the Initial Distribution,

A.B. Data will, after consulting with Lead Counsel, conduct the Second Distribution of the Net Settlement Amount. *Id*. ¶ 39(d). In the Second Distribution, any amounts remaining in the Net Settlement Amount after the Initial Distribution, including from the Reserve and the funds for all void stale-dated checks, after deducting A.B. Data's unpaid fees and expenses incurred in connection with administering the Settlement, including the estimated costs of the Second Distribution, and after deducting payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, will be distributed to all Authorized Claimants in the Initial Distribution who cashed their Initial Distribution checks and would receive at least $10.00 from the Second Distribution based on their *pro rata* share of the remaining funds. *Id*.

If, after the Second Distribution, any funds remain in the Net Settlement Amount because of uncashed checks or otherwise, then after A.B. Data has made reasonable and diligent efforts to have Authorized Claimants cash their distribution checks and if cost-effective, subsequent distributions of the funds remaining in the Net Settlement Amount, after deduction of costs and expenses as described above and subject to the same conditions, will take place at six (6)-month intervals thereafter. *Id.*

When Lead Counsel, in consultation with A.B. Data, determines that further distribution is not cost-effective, if sufficient funds remain to warrant the processing of Claims received after June 15, 2021, A.B. Data will process those Claims. *Id*. ¶ 39(e). Any of these Claims that are otherwise valid, as well as any earlier received Claims for which an adjustment was received after June 15, 2021, which resulted in an increased Recognized Claim, may be paid in accordance with paragraph 39(f) of the Miller Declaration. *Id*. If any funds remain in the Net Settlement Amount after payment of these late or late-adjusted Claims, the remaining balance of the Net Settlement Amount, after payment of any unpaid fees or expenses incurred in administering the Net Settlement Amount and

9

after the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, will be contributed to the National Consumer Law Center ("NCLC").[8] *Id.*

NCLC is a private, non-sectarian, not-for-profit organization exempt from taxation under Section 501(c)(3) of the Internal Revenue Code. *See About Us*, National Consumer Law Center, nclc.org/about-us/about-us.html (last visited Mar. 29, 2021). NCLC was founded in 1969 through a federal grant to provide legal services addressed to two main goals: improving the access of low-income people to the legal system and enabling advocates to seek remedies where needed. *See Our Story*, National Consumer Law Center, nclc.org/about-us/our-story.html (last visited Mar. 29, 2021). Today, NCLC continues to advocate for low-income consumers and provides many resources to civil legal aid and private attorneys representing low-income consumers. *See id.* NCLC's lawyers provide policy analysis, advocacy, litigation, expert-witness services, and training for consumer advocates throughout the United States. *See id.* "NCLC works to ensure a fair marketplace and access to justice for all consumers, including low-income people, older Americans, students, military service members and veterans," and its "work covers a broad range of consumer issues, including consumer protection, fair credit, debt collection, student loans, mortgages and foreclosures, financial services, bankruptcy, [and] unfair and deceptive acts and practices. . . ." *See Cy Pres Awards*, National Consumer Law Center, nclc.org/about-us/cy-pres-awards.html (last visited Mar. 29, 2021). Federal courts have approved NCLC as a *cy pres* recipient of residual balances of Net Settlement Amounts in other settlements.[9]

---

[8] *See* Individual Notice ¶ 70.

[9] *See, e.g.*, *In re Nu Skin Enters., Inc., Sec. Litig.*, No. 2:14-cv-00033-JNP-BCW, ECF Nos. 152-154 (D. Utah Aug. 30, 2018); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1261 (C.D. Cal. 2016), *appeal dismissed*, 2016 WL 9778633 (9th Cir. Nov. 7, 2016); *Perkins v. Am. Nat'l Ins. Co.*, 2012 WL 2839788, at *5 (M.D. Ga. July 10, 2012) ("The Court is also satisfied that The National

## V. CONCLUSION

As shown in the Miller Declaration, of the 95,254 Claims that are the subject of this motion, A.B. Data has determined that 27,330 Claims are acceptable in whole or in part to participate in the distribution of the Net Settlement Amount, and that 67,924 Claims should be wholly rejected because they are ineligible for payment from the Net Settlement Amount. Miller Decl. ¶¶ 33-36. Lead Plaintiff respectfully requests that the Court approve A.B. Data's administrative determinations accepting and rejecting Claims as stated in the Miller Declaration.[10]

For the foregoing reasons, Lead Plaintiff respectfully submits that Lead Plaintiff's Unopposed Motion for Approval of Distribution Plan should be granted, and the [Proposed] Order Approving Distribution Plan should be entered.

---

Consumer Law Center's mission, reputation and established track record will ensure that it will be a good steward of the grant award made to it.").

[10] In order to allow the full and final distribution of the Net Settlement Amount, the Order also contains customary language necessary to bar any further claims against the Net Settlement Amount beyond the amounts allocated to Authorized Claimants and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Amount be released and discharged from all claims arising out of that involvement. *See, e.g., Blank v. Jacobs*, 2013 WL 1310503, at *6 (E.D.N.Y. Mar. 27, 2013) ("[A]ll persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Gross Settlement Fund or the Net Settlement Fund are released and discharged from any and all claims arising out of such involvement, and all Class Members, whether or not they are to receive payment from the Net Settlement Fund, are barred from making any further claim against the Net Settlement Fund or the released persons beyond the amount allocated to them…."); *In re Eletrobras Sec. Litig.*, 467 F. Supp. 3d 149, 151 (S.D.N.Y. 2020) (approving substantially similar language in order authorizing distribution of settlement proceeds); *Thorpe v. Walter Inv. Mgmt., Corp.*, 2018 WL 3672266, at *2 (S.D. Fla. May 24, 2018), *report and recommendation adopted*, 2018 WL 3672239 (S.D. Fla. June 8, 2018) (same); *Mylan Pharms., Inc. v. Warner Chilcott Pub. Ltd. Co.*, 2015 WL 12839121, at *1-2 (E.D. Pa. Jan. 21, 2015) (same); *Romero v. US Unwired, Inc.*, 2012 WL 12995289, at *2 (E.D. La. Mar. 8, 2012) (same). *See also* Settlement Agreement ¶ III(D)(2).

11

Dated:  June 24, 2021

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**

*/s/  James A. Harrod*
_____

James A. Harrod
Michael M. Mathai
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile:  (212) 554-1444
Jim.Harrod@blbglaw.com
Michael.Mathai@blbglaw.com

*Counsel for Lead Plaintiff Miami GESE
and Lead Counsel for the Class*


**KLAUSNER, KAUFMAN, JENSEN &
  LEVINSON**

Robert D. Klausner
Stuart A. Kaufman
7080 Northwest 4th Street
Plantation, FL 33317
Telephone: (954) 916-1202
Facsimile: (954) 916-1232
bob@robertdklausner.com
stu@robertdklausner.com


*Counsel for Lead Plaintiff Miami GESE*

12

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE HENRY SCHEIN, INC.**<br>**SECURITIES LITIGATION** | **Master File No. 1:18-cv-01428-MKB-VMS**<br><br>**CLASS ACTION** |

<u>**ORDER APPROVING DISTRIBUTION PLAN**</u>

WHEREAS, this matter was brought before the Court by way of Lead Plaintiff's motion to determine whether the proposed Distribution Plan of the Net Settlement Amount created by the Settlement achieved in the Action should be approved.  The Court having reviewed and considered all the materials and arguments submitted in support of the motion, including the Memorandum of Law in Support of Lead Plaintiff's Unopposed Motion for Approval of Distribution Plan and the Declaration of Eric J. Miller in Support of Lead Plaintiff's Unopposed Motion for Approval of Distribution Plan ("Miller Declaration"); and

WHEREAS, this Order incorporates by reference the definitions in the Stipulation of Settlement dated April 30, 2020 (ECF No. 70-1) ("Settlement Agreement") and the Miller Declaration, and all capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Settlement Agreement and Miller Declaration.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.      **<u>Jurisdiction</u>** – The Court has jurisdiction to enter this Order and over the subject matter of the Action as well as personal jurisdiction over all Parties to the Action, including each of the Class Members, for purposes of this Settlement.

2. **Notice** – Notice of Lead Plaintiff's motion for approval of the proposed Plan of Allocation was given to all Class Members who could be identified with reasonable effort. The form and method of notifying the Class of the motion for approval of the proposed Plan of Allocation satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended, and all other applicable law and rules; constituted the best notice practicable under the circumstances; and constituted due and sufficient notice to all persons and entities entitled thereto.

3. **Distribution Plan Approval** - Lead Plaintiff's plan for distribution of the Net Settlement Amount to Authorized Claimants is **APPROVED**. Accordingly:

(a) The administrative recommendations of the Court-approved Claims Administrator, A.B. Data, Ltd.'s Class Action Administration Company ("A.B. Data"), to accept the Timely Eligible Claims stated in Exhibit D to the Miller Declaration and the Late But Otherwise Eligible Claims stated in Exhibit E to the Miller Declaration, are adopted;

(b) The Claims Administrator's administrative recommendations to reject the Rejected Claims, as stated in Exhibit F to the Miller Declaration, are adopted;

(c) A.B. Data is directed to conduct the Initial Distribution of the Net Settlement Amount, after deducting all payments previously allowed and the payments approved by this Order, and after deducting the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, while maintaining a 5% reserve from the Net Settlement Amount to address any tax liability or claims administration-related contingencies that may arise.

2

Specifically, as stated in paragraph 39(a) of the Miller Declaration:

(1) A.B. Data will calculate award amounts for all Authorized Claimants as if the entire Net Settlement Amount were to be distributed now. In accordance with the Court-approved Plan of Allocation, A.B. Data will calculate each Authorized Claimant's *pro rata* share of the Net Settlement Amount based on the amount of the Authorized Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants; (2) A.B. Data will then, in accordance with the terms of the Court-approved Plan of Allocation, eliminate from the Initial Distribution any Authorized Claimant whose total *pro rata* share of the Net Settlement Amount is less than $10.00. These Claimants will not receive any payment from the Net Settlement Amount and will be so notified by A.B. Data; (3) After eliminating Claimants who would have received less than $10.00, A.B. Data will recalculate the *pro rata* shares of the Net Settlement Amount for Authorized Claimants who would have received $10.00 or more based on the amount of the Authorized Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants who would have received $10.00 or more. This *pro rata* share is the Authorized Claimant's "Distribution Amount"; (4) Authorized Claimants whose Distribution Amount calculates to less than $200.00 will be paid their full Distribution Amount in the Initial Distribution ("Claims Paid in Full"). These Authorized Claimants will receive no additional funds in subsequent distributions; (5) 95% of the remaining balance of the Net Settlement Amount will be distributed *pro rata* to Authorized Claimants whose Distribution Amount calculates to $200.00 or more. The remaining 5% of the Net

3

Settlement Amount will be held in the Reserve to address any tax liability or claims administration-related contingencies that may arise following the Initial Distribution. To the extent the Reserve is not depleted, the remainder will be distributed in the Second Distribution described in subparagraph (f) below.

(d)     In order to encourage Authorized Claimants to cash their checks promptly, all distribution checks will bear the following notation: "CASH PROMPTLY. VOID AND SUBJECT TO REDISTRIBUTION IF NOT CASHED BY [DATE 90 DAYS AFTER ISSUE DATE]."  Lead Counsel and A.B. Data are authorized to take appropriate action to locate and contact Authorized Claimants who have not cashed their checks within said time as detailed in paragraph 39(b) footnote 9 of the Miller Declaration;

(e)     Authorized Claimants who do not cash their Initial Distribution checks within the time allotted or on the conditions stated in paragraph 39(b) footnote 9 of the Miller Declaration will irrevocably forfeit all recovery from the Settlement, and the funds allocated to these stale-dated checks will be available to be distributed to other Authorized Claimants in the Second Distribution.  Similarly, Authorized Claimants who do not cash their distribution checks in the Second Distribution or in subsequent distributions, should such distributions occur, within the time allotted or on the conditions stated in paragraph 39(b) footnote 9 of the Miller Declaration will irrevocably forfeit any further recovery from the Net Settlement Amount;

(f)     After A.B. Data has made reasonable and diligent efforts to have Authorized Claimants cash their Initial Distribution checks (as provided in paragraph 39(b) footnote 9 of the Miller Declaration), but not earlier than seven (7) months after the Initial Distribution, A.B. Data will, after consulting with Lead Counsel, conduct the Second

4

Distribution in which any amount remaining in the Net Settlement Amount after the Initial Distribution, including from the Reserve and the funds for all void stale-dated checks, after deducting A.B. Data's fees and expenses incurred in administering the Settlement for which it has not yet been paid, including A.B. Data's estimated costs of conducting the Second Distribution, and after deducting the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, will be distributed to all Authorized Claimants in the Initial Distribution who cashed their Initial Distribution check and are entitled to receive at least $10.00 from the Second Distribution based on their *pro rata* share of the remaining funds.  Additional distributions, after deduction of costs and expenses as described above and subject to the same conditions, may occur thereafter in six-month intervals until Lead Counsel, in consultation with A.B. Data, determines that further distribution is not cost-effective;

(g)     When Lead Counsel, in consultation with A.B. Data, determines that further distribution of the funds remaining in the Net Settlement Amount is not cost-effective, if sufficient funds remain to warrant the processing of Claims received after June 15, 2021, those Claims will be processed, and any otherwise valid Claims received after June 15, 2021, as well as any earlier-received Claims for which an adjustment was received after June 15, 2021, which resulted in an increased Recognized Claim amount, will be paid in accordance with subparagraph (h) below.  If any funds remain in the Net Settlement Amount after payment of these late or late-adjusted Claims, the remaining balance of the Net Settlement Amount, after payment of any unpaid fees or expenses incurred in administering the Net Settlement Amount and after the payment of any estimated taxes,

5

the costs of preparing appropriate tax returns, and any escrow fees, will be contributed to the National Consumer Law Center ("NCLC");

(h) No new Claims may be accepted after June 15, 2021, and no further adjustments to Claims received on or before June 15, 2021, that would result in an increased Recognized Claim amount may be made for any reason after June 15, 2021, subject to the following exception. If Claims are received or modified after June 15, 2021, that would have been eligible for payment or additional payment under the Court-approved Plan of Allocation if timely received, then at the time that Lead Counsel, in consultation with A.B. Data, determines a distribution is not cost-effective as provided in subparagraph (g) above and after payment of any unpaid fees or expenses incurred in connection with administering the Net Settlement Amount and after deducting the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, these Claimants, at the discretion of Lead Counsel, may be paid their distribution amounts or additional distribution amounts, to the extent possible, on a *pro rata* basis that would bring them into parity with other Authorized Claimants who have cashed all their prior distribution checks;

(i) The Court finds that the administration of the Settlement and the proposed distribution of the Net Settlement Amount comply with the terms of the Settlement Agreement and Plan of Allocation approved by this Court and that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Amount are hereby released and discharged from any and all claims arising out of that involvement, and all Class Members and other Claimants, whether or not they receive payment from the Net Settlement Amount, are

hereby barred from making any further claims against the Net Settlement Amount, Lead Plaintiff, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiff or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Amount, or any other person released under the Settlement beyond the amounts allocated to Authorized Claimants;

(j)     All of A.B. Data's fees and expenses incurred in the administration of the Settlement and estimated to be incurred in connection with the Distribution of the Net Settlement Amount as stated in the invoices attached as Exhibit G to the Miller Declaration are approved, and Lead Counsel is directed to pay the outstanding balance of $107,748.05 out of the Settlement Fund to A.B. Data; and

(k)     Unless otherwise ordered by the Court, A.B. Data may destroy the paper copies of the Claims and all supporting documentation one year after the Initial Distribution, and one year after all funds have been distributed may destroy electronic copies of the same.

4.     **<u>Retention of Jurisdiction</u>** - This Court retains jurisdiction to consider any further applications concerning the administration of the Settlement, and any other and further relief that this Court deems appropriate.

SO ORDERED this 2nd day of July 2021.

_____
s/ MKB
MARGO K. BRODIE
Chief Judge, United States District Court

7