**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE LUCKIN COFFEE INC. SECURITIES LITIGATION | Case No. 1:20-cv-01293-JPC-JLC |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF**
**LEAD PLAINTIFFS' MOTION FOR APPROVAL OF DISTRIBUTION PLAN**

Dated: March 27, 2023

**TABLE OF CONTENTS**

**Page**

I.      BACKGROUND ............................................................................................................. 1

II.     THE COURT SHOULD APPROVE THE CLAIMS ADMINISTRATOR'S
        DETERMINATION TO REJECT DISPUTED CLAIM NO. 10 ...................................... 2

        A.      Background Regarding Disputing Claimant Abbate .............................................. 2

        B.      Epiq's Deficiency Process, Disputed Claims Process, and Quality
                Assurance ............................................................................................................. 4

        C.      Epiq's Rejection of the Disputed Claim Is Proper and Correct ............................ 5

        D.      Mr. Abbate's Supplemental Submission ............................................................. 6

III.    CONCLUSION .............................................................................................................. 8

Court-appointed Lead Plaintiffs and Class Representatives Sjunde AP-Fonden and Louisiana Sheriffs' Pension & Relief Fund (together, "Lead Plaintiffs"), by and through their undersigned counsel ("Class Counsel"), respectfully submit this Reply Memorandum in Further Support of Lead Plaintiffs' Motion for Approval of Distribution Plan, which seeks entry of the proposed Order Approving Distribution Plan ("Class Distribution Order"). As ordered by the Court, all Claimants with Disputed Claims ("Disputing Claimants") were advised of Lead Plaintiffs' motion and given until March 20, 2023, to make an additional submission with respect to their Claim. One Disputing Claimant has responded.[1]

## I.    BACKGROUND

On March 6, 2023, Lead Plaintiffs filed their Motion for Approval of Distribution Plan (ECF No. 344) ("Distribution Motion") requesting that the Court enter the proposed Class Distribution Order which would, among other things: (i) approve the administrative determinations of the Court-authorized Claims Administrator, Epiq Class Action and Claims Solutions, Inc. ("Epiq"), accepting and rejecting Claims submitted in the Action; and (ii) direct the distribution of the Net Settlement Fund to Claimants whose Claims have been accepted by Epiq as valid and approved by the Court ("Authorized Claimants"), while maintaining a Reserve for contingencies that may arise following the distribution.

As set forth in the Villanova Declaration filed in support of the Distribution Motion, while Epiq received and processed 49,100 Claims through February 1, 2023, there were only ten (10) Disputed Claims with an outstanding request for Court review of the rejection of their Claims. *See*

---

[1] Unless otherwise indicated in this memorandum, all terms with initial capitalization shall have the meanings ascribed to them in the Declaration of Alexander P. Villanova in Support of Lead Plaintiffs' Motion for Approval of Distribution Plan filed with the Court on March 6, 2023 (ECF No. 347) ("Villanova Declaration" or "Villanova Decl.") or in the Stipulation and Agreement of Settlement dated as of October 20, 2021 (ECF No. 315).

Villanova Decl. ¶¶ 7, 27-29, and Exhibit D to the Villanova Decl. (ECF No. 347-4) at pp. 2-13 ("Disputed Claims Chart"). Class Counsel provided each of the 10 Disputing Claimants, by email, with a copy of the Distribution Motion, the memorandum of law in support, the Villanova Declaration (without the voluminous exhibits), and Exhibit D with the Disputed Claims Chart and the documents concerning the Disputed Claims. The Disputing Claimants were advised that they could make an additional submission with respect to their Claim to the Court and Class Counsel on or before March 20, 2023. *See* Declaration of Catherine E. van Kampen in Further Support of Distribution Motion, filed herewith ("van Kampen Declaration"), at ¶ 2.

In response, one Disputing Claimant—William Abbate (Disputed Claim No. 10)— submitted a letter addressed to the Court dated March 14, 2023, which included an excerpt from Exhibit D to the Villanova Declaration but no additional documentation. Mr. Abbate's letter is attached as Exhibit A to the van Kampen Declaration. As discussed below, Mr. Abbate did not provide adequate supporting documentation to support his claimed sale of Luckin ADSs during the Class Period and accordingly, the rejection of his Claim was appropriate.

## II. THE COURT SHOULD APPROVE THE CLAIMS ADMINISTRATOR'S DETERMINATION TO REJECT DISPUTED CLAIM NO. 10

### A. Background Regarding Disputing Claimant Abbate

Disputing Claimant William Abbate (Disputed Claim No. 10 (Claim No. 17888)) submitted a Claim reporting the purchase of 110,250 Luckin ADSs during the Class Period. *See* Exhibit D to the Villanova Declaration (ECF No. 347) at pp. 280-317. These purchase transactions were documented by trade confirmations from E*TRADE Securities ("E*TRADE"). *See id.* at pp. 292-315. Mr. Abbate also reported the sale of 110,250 Luckin ADSs during the Class Period. *See id.* at pp. 284, 316. Unlike with his Luckin ADS purchases, however, Mr. Abbate did not provide the same type of documentation to support his sale of Luckin ADSs but rather provided a letter,

addressed to himself, from Alpine Analytics Management Group, LLC ("Alpine Analytics") referencing "your individual account with our hedge fund" and summarizing his claimed sales transaction. *See id.* at p. 316 and Supplemental Declaration of Alexander P. Villanova filed herewith ("Supp. Villanova Decl.") at ¶ 5 and Exhibit A. Mr. Abbate indicated on his Claim Form that his total loss was $2,731,139.93. *See* ECF No. 347 at p. 284.

After the initial processing and review of the Claim at issue, Epiq conducted a further review of the Claim and the accompanying documentation per its standard practice for high-value claims. *See* Supp. Villanova Decl. ¶¶ 5-7. Epiq was unable, however, to confirm the transaction details for the sale provided in Mr. Abbate's Claim Form and supporting documentation. *See id.* While Mr. Abbate provided trade confirmations from E*TRADE to support his purchases of Luckin ADSs during the Class Period, there was no similar documentation provided showing a sale or transfer of these shares out of the account. *See id.*

Epiq found that the letter provided with Mr. Abbate's Claim from Alpine Analytics (Supp. Villanova Decl. Ex. A) did not provide sufficient documentation for Mr. Abbate's reported sale of Luckin ADSs, as it failed to provide standard documentation such as a broker statement or trade confirmation slip, and in addition had several indicia of suspicion in that (i) it included no account number for Mr. Abbate; (ii) Epiq was unable to find any reference for Alpine Analytics as registered with the New York Secretary of State or with the Securities and Exchange Commission; and (ii) Epiq was unable to find any online presence, such as a website or media reports, for Alpine Analytics or any other verifiable record of its offices or personnel. Moreover, Mr. Abbate provided no documentation from E*TRADE showing that the Luckin ADSs purchased in Mr. Abbate's E*TRADE account had been transferred out of that account to his alleged account with Alpine Analytics before the date of the claimed sale. *See* Supp. Villanova Decl. ¶ 5.

Accordingly, the Claim was flagged as deficient, as Epiq could not calculate a Recognized Loss for Mr. Abbate's Claim under the Court-approved Plan of Allocation without verification of the disposition of the Luckin ADSs he purchased during the Class Period.

Epiq's multiple attempts to resolve the Claim's inadequate documentation or find alternative means to verify the claimed sales transaction have been unsuccessful. First, in response to the Deficiency Notice requesting additional documentation to support Mr. Abbate's sale of Luckin ADSs, Mr. Abbate merely re-submitted documentation of his purchases through E*TRADE without providing any new supporting documentation as to the sale. *See id.* ¶ 8. In addition, Mr. Abbate did not respond to Epiq's multiple requests that he provide authorization to permit Epiq to communicate directly with Alpine Analytics and E*TRADE to confirm his transactions in Luckin ADSs. *See id.* ¶¶ 9, 11, 15, 16. Mr. Abbate subsequently submitted a second letter from Alpine Analytics (Supp. Villanova Decl. Ex. C), but this letter still failed to provide sufficient documentation as to the claimed sale. Finally, Epiq's attempts to independently verify information submitted by Mr. Abbate were also unsuccessful, as Epiq was not able to find any verifiable record of the existence of Alpine Analytics through independent sources. *See* Supp. Villanova Decl. ¶ 10.

In sum, Epiq requested supporting documentation for Mr. Abbate's claimed sale of Luckin ADSs or permission to speak directly with his brokers on multiple occasions over the course of over seven (7) months. *See id.* ¶¶ 7, 9, 11, 15-17. To date, Mr. Abbate has neither provided Epiq with sufficient documentation to support his sale of Luckin ADSs nor granted Epiq authorization to speak directly with his brokers. *See id.* ¶ 17.

**B.      Epiq's Deficiency Process, Disputed Claims Process, and Quality Assurance**

Epiq's "Deficiency Process" is intended to assist Claimants in properly completing their otherwise deficient submissions so that they can be eligible to participate in the Settlement. *See*

4

Villanova Decl. (ECF No. 347) at ¶¶ 19-21. Epiq's "Disputed Claims Process" advises Claimants that they have the right to contest Epiq's administrative determination of deficiencies or ineligibility with respect to their Claims and request that their dispute be submitted to the Court for review. *See id.* ¶ 27. Additionally, an integral part of the claims administration process is Epiq's Quality Assurance review. *See id.* ¶ 31. Epiq's Quality Assurance personnel also perform additional reviews and audits on certain Claims, including reviews of Claims with high-loss amounts. *See id.* Mr. Abbate's Disputed Claim, which had a high-loss amount, was subject to these Quality Assurance checks, which included Epiq's request for authorization to communicate directly with Mr. Abbate's brokers to independently verify the sales transaction claimed in his Claim Form. *See* Suppl. Villanova Decl. ¶¶ 4, 6, 9. As noted herein, despite multiple requests, Mr. Abbate never provided Epiq with authorization to communicate with Alpine Analytics or E*TRADE. ¶¶ 13, 14, 16.

### C.    Epiq's Rejection of Disputed Claim No. 10 Is Proper and Correct

Epiq's rejection of Mr. Abbate's Claim as outlined above is proper and correct.

The Claim Form submitted by Mr. Abbate advises Claimants "to supply all required details of your transaction(s) in, and holdings of, Luckin ADSs" and that **"[f]ailure to report all transaction and holding information during the requested time period may result in the rejection of your claim**." Claim Form Instructions ¶ 5 (emphasis in original)[2]; *see also* Notice ¶¶ 25, 41, App. A to Notice ¶ 6. Further, Claimants were informed that they were "required to submit genuine and sufficient documentation for all [their] transactions in and holdings of Luckin ADSs." Claim Form Instructions ¶ 7. The Claim Form also states that "FAILURE TO SUPPLY THIS DOCUMENTATION MAY RESULT IN THE REJECTION OF YOUR CLAIM." *Id.*

---

[2] The Claim Form submitted by Mr. Abbate is at ECF No. 347-4, pp. 280-287.

Finally, in signing the Claim Form, Mr. Abbate certified that he "agree[d] to furnish such additional information with respect to this Claim Form as Class Counsel, the Claims Administrator, or the Court may require." Claim Form Certification ¶ 6 (on page 6 of the Claim Form); *see also* ECF No. 347-4, at p. 285.

The Deficiency Notice sent to Mr. Abbate specified that his Claim's inadequate documentation could be resolved "by submitting acceptable documentation to support [the] claim, including all of the transactions and holding amounts set forth in the Claim. Acceptable documentation includes securities brokers' confirmation slips, month- and year-end account statements, or similar documentation. Self-generated documents are not acceptable." ECF No. 347-4, at p. 319. Mr. Abbate failed to provide the required documentation requested in the Claim Form and Deficiency Notice. *See* Supp. Villanova Decl. ¶¶ 8, 9. Moreover, Epiq's additional attempts to verify the accuracy of the transactions claimed by Mr. Abbate by obtaining permission to communicate directly with Mr. Abbate's brokers to obtain the required documentation and/or satisfactory information to confirm his sale of Luckin ADSs were also unsuccessful. *Id.* ¶ 16.

Verifiable information for Mr. Abbate's sale of Luckin ADSs is necessary to calculate his Claim under the Settlement—documentation of his purchases alone is not sufficient. Even assuming that the documentation of Mr. Abbate's purchase transactions through E*TRADE is complete and accurate, his Claim cannot be approved without adequate documentation to support his claimed sale. If Mr. Abbate sold his Luckin ADSs at a different time (for example, before the corrective disclosures) or made his purchases to cover open short positions, he might be entitled to no recovery under the Settlement for those same purchases.

### D.    Mr. Abbate's Supplemental Submission

Mr. Abbate's March 14, 2023 letter to the Court (*see* van Kampen Declaration, Ex. A) provides no additional basis for the acceptance of his Claim. Mr. Abbate's letter refers only to

documentation of his purchases through E*TRADE while never mentioning Alpine Analytics or including any information or documentation for the sale or disposition of his Luckin ADSs. As noted above, to date, Mr. Abbate has not provided adequate, verifiable documentation for his claimed sale of Luckin ADSs. The need for this particular piece of information was explained through numerous communications from Epiq to Mr. Abbate. The only documentation for Mr. Abbate's claimed sale comes from brief, summary letters from Alpine Analytics, which Epiq correctly deemed inadequate.

Similarly, Mr. Abbate confuses the reference in Exhibit D to the Villanova Declaration to documentation "from a defunct hedge fund, unregistered with the SEC" as an inaccurate characterization of E*TRADE. This reference is actually to Alpine Analytics, which provided the only documentation of Mr. Abbate's claimed sale, and it references the language used in the letter submitted by Mr. Abbate himself, which describes Alpine Analytics as a "Hedge Fund," that was "never required to be registered with the Securities and Exchange Commission," and that closed its fund on December 31, 2021. *See* Suppl. Villanova Decl. Ex. C. That letter also states that Alpine Analytics "never sent out monthly statements like brokerage firms are required to do for active accounts because Alpine's Hedge Funds only reported performance once a year; always at year-end." *Id*. Still, despite this statement that Alpine Analytics produced year-end performance reports, Mr. Abbate did not provide this year-end report for the year 2020, when he claims to have sold his Luckin ADSs.

Mr. Abbate's failure to comply with the claim submission requirements, i.e., providing proper documentation that allows Epiq to independently verify his Claim, and failure to provide additional information reasonably required by Epiq to verify the Claim, has resulted in Mr. Abbate's Claim being recommended for rejection.

**III.   CONCLUSION**

For the foregoing reasons, as well as for all of the reasons set forth in the opening papers filed in support of the Distribution Motion, Lead Plaintiffs respectfully request that the Court enter the proposed Class Distribution Order (i) adopting Epiq's administrative determinations accepting and rejecting Claims submitted in the Action, including Epiq's determination to reject Disputed Claim No. 10 submitted by Mr. Abbate, as well as the other Disputed Claims discussed in the Disputed Claims Chart, and (ii) approving the proposed plan for distribution of the Net Settlement Fund.

Dated: March 27, 2023

Respectfully submitted,

**KESSLER TOPAZ MELTZER
  & CHECK, LLP**

*S/ Sharan Nirmul*
Sharan Nirmul
Gregory M. Castaldo
Richard A. Russo, Jr.
Nathan A. Hasiuk
Lisa M. Port
280 King of Prussia Road
Radnor, Pennsylvania 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
snirmul@ktmc.com
gcastaldo@ktmc.com
rrusso@ktmc.com
nhasiuk@ktmc.com
llambport@ktmc.com

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**

*S/ Salvatore J. Graziano*
Salvatore J. Graziano
John Rizio-Hamilton
Jai Chandrasekhar
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400

Facsimile: (212) 554-1444
salvatore@blbglaw.com
johnr@blbglaw.com
jai@blbglaw.com

*Counsel for Lead Plaintiffs Sjunde AP-Fonden and Louisiana Sheriffs' Pension & Relief Fund and Class Counsel*

9

**CERTIFICATE OF SERVICE**

I hereby certify that on March 27, 2023, I caused the foregoing Reply Memorandum in Further Support of Lead Plaintiffs' Motion for Approval of Distribution Plan and the accompanying Declaration of Catherine E. van Kampen in Further Support of Distribution Motion and Supplemental Declaration of Alexander P. Villanova in Further Support of Lead Plaintiffs' Motion for Distribution Plan to be served electronically on all ECF participants. In addition, I caused these documents to be served on Disputing Claimant William Abbate by email and USPS First-Class Mail at the addresses previously provided by Mr. Abbate in connection with his Claim.

*S/ Salvatore J. Graziano*
Salvatore J. Graziano