**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE LUCKIN COFFEE INC. SECURITIES LITIGATION | Case No. 1:20-cv-01293-JPC-JLC |

**SUPPLEMENTAL DECLARATION OF ALEXANDER P. VILLANOVA**
**IN FURTHER SUPPORT OF LEAD PLAINTIFFS' MOTION FOR**
**APPROVAL OF DISTRIBUTION PLAN**

I, Alexander P. Villanova, hereby declare under penalty of perjury as follows:

1.      I am a Senior Project Manager for Epiq Class Action and Claims Solutions, Inc. ("Epiq"). I am over 21 years of age and am not a party to the above-captioned action ("Action").[1] I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently thereto.

2.      On March 6, 2023, Lead Plaintiffs filed with the Court their Motion for Approval of Distribution Plan (ECF No. 344) ("Distribution Motion"), which included the Villanova Declaration, submitted by myself on behalf of Epiq, attaching exhibits listing Epiq's recommendations for approval or rejection of the Presented Claims. As set forth in the Villanova Declaration, there were ten (10) Claimants that disagreed with Epiq's determination to reject their Claims and requested that their Claims be presented to the Court for a final review ("Disputing Claims"). Exhibit D to the Villanova Declaration included an explanation of the reasons for rejecting the Disputed Claims and included each Disputed Claim's redacted supporting

---

[1] All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated as of October 20, 2021 (ECF No. 315) or in the Declaration of Alexander P. Villanova in Support of Lead Plaintiffs' Motion for Approval of Distribution Plan (ECF No. 347) ("Villanova Declaration").

documentation. Following the filing of the Distribution Motion, Class Counsel received an additional submission from Disputing Claimant William Abbate dated March 14, 2023 ("Abbate Letter"). *See* Declaration of Catherine E. van Kampen in Further Support of Distribution Motion, filed herewith, at Exhibit A.

3.    I submit this Supplemental Declaration in response to the Abbate Letter and in support of Epiq's rejection of Mr. Abbate's Claim – i.e., Disputed Claim No. 10 (Claim No. 17888). The following statements are based on my personal knowledge, as well as information provided by other experienced Epiq employees working under my supervision.

**SUMMARY OF MATERIAL EVENTS**
**RELATED TO DISPUTED CLAIM NO. 10 (CLAIM NO. 17888)**

4.    On March 11, 2022, Epiq received Mr. Abbate's Claim Form (Claim No. 17888) along with supporting documentation for certain transactions. *See* ECF No. 347-4, at pp. 280-317. On April 19, 2022, after the initial processing and review of the Claim and documentation was completed, Epiq conducted a further review of the supporting documentation as is Epiq's standard practice for the processing of high-value claims. Mr. Abbate had provided trade confirmations from E*TRADE Securities ("E*TRADE") for his Luckin ADSs purchased during the Class Period, but he provided no trade confirmations to support a sale or transfer of these shares out of his account. Accordingly, Mr. Abbate's Claim was flagged for further review and research as Epiq was unable to calculate the Claim's "Recognized Loss" under the Court-approved Plan of Allocation without verification of the disposition of the Luckin ADSs purchased during the Class Period.

5.    Mr. Abbate's reported sale of Luckin ADSs was supported only by a one-page letter from "Alpine Analytics Management Group, LLC" ("Alpine Analytics"), referencing "your individual account with our hedge fund." For the Court's convenience, a copy of the Alpine

Analytics letter (previously submitted at ECF No. 347-4, at p. 316) is attached as Exhibit A. Instead of providing any account statements, the letter included only a summary of Mr. Abbate's alleged sale of Luckin ADSs in June 2020. Epiq found that this letter did not provide sufficient documentation of Mr. Abbate's reported sale of Luckin ADS, as it failed to provide standard documentation such as a broker statement or confirmation slip. In addition, Epiq found that the Alpine Analytics letter had several indicia of suspicion in that (i) it included no account number for Mr. Abbate; (ii) Epiq was unable to find any reference for that entity registered with the New York Secretary of State or with the U.S. Securities and Exchange Commission; and (iii) Epiq was unable to find any online presence, such as a website or media reports, for Alpine Analytics or any other verifiable record of its offices or personnel. Moreover, Mr. Abbate had provided no documentation from E*TRADE showing that the Luckin ADSs purchased in Mr. Abbate's E*TRADE account had been transferred out of that account to his alleged account with Alpine Analytics before the date of the claimed sale.

6.     As the Court-authorized Claims Administrator, Epiq takes seriously its responsibility for protecting Class Members from the acceptance of any potential fraudulent claims. Epiq follows comprehensive procedures for its review and processing of high-value claims, which require additional independently verifiable documentary evidence, including, but not limited to, confirmation from a broker or custodian and backup documentation such as broker confirmation slips and monthly statements. As a result of these procedures and because Epiq's team that typically reviews high-value, complicated, and/or unverifiable claims separately flagged Mr. Abbate's Claim as requiring additional documentary evidence, Epiq reached out to Mr. Abbate to request this additional documentation.

7.      On May 24, 2022, Epiq sent a Notice of Deficient Claim Submission ("Deficiency Notice") to Mr. Abbate explaining the reason his Claim was deemed ineligible, which included contact information for the Claims Administrator and an explanation of his right to request the Court's review of Epiq's determination to reject his Claim. ECF No. 347-4, at pp. 319-21. The Deficiency Notice indicated that Mr. Abbate had previously submitted documentation but that this documentation was deemed inadequate and instructed Mr. Abbate to provide additional documentation and not merely the same documentation already submitted. The Deficiency Notice specifically highlighted the lack of adequate documentation to verify Mr. Abbate's claimed sales transaction. ECF No. 347-4, at p. 320.

8.      On June 2, 2022, Mr. Abbate responded to the Deficiency Notice by providing the same E*TRADE trade confirmations for his Luckin ADS purchases that he previously provided in his initial claim submission. ECF No. 347-4, at pp. 323-351. Mr. Abbate provided no additional documentation to support a transfer out or sale of the Luckin ADSs as requested.

9.      On June 16, 2022, after reviewing Mr. Abbate's response to the Deficiency Notice and in a further effort to resolve the ineligibility of his Claim due to insufficient documentation, Epiq requested Mr. Abbate's authorization to communicate directly with Alpine Analytics in order to verify his transactions in Luckin ADSs and obtain sufficient documentation to verify the claimed sale. A copy of Epiq's emailed request, which included an Authorization Letter permitting Epiq to seek verification directly from Alpine Analytics and obtain the necessary supporting documentation, is attached hereto as Exhibit B.

10.     On June 20, 2022, Mr. Abbate sent Epiq a notarized letter addressed to himself from Alpine Analytics, which described Alpine Analytics as a "Hedge Fund" that "managed money on behalf of some of the wealthiest and most accredited individuals in the world" before

ceasing operations on December 31, 2021. The letter stated that Mr. Abbate delivered 110,250 shares of Luckin ADSs to Alpine Analytics, which sold them in June 2020; however, the letter did not provide any supporting documentation to confirm the shares being transferred into the account or any supporting documentation to verify the claimed sale. A copy of the letter from Alpine Analytics is attached hereto as Exhibit C. (*See also* ECF No. 347-4, at pp. 353-55.) The letter stated that Alpine Analytics "never sent out monthly statements like brokerage firms are required to do for active accounts because Alpine's Hedge Funds only reported performance once a year; always at year-end." *See id*. However, neither Alpine Analytics nor Mr. Abbate provided this year-end performance report for 2020, when Mr. Abbate's sale of Luckin ADSs is reported to have occurred. After reviewing the letter, Epiq determined that Mr. Abbate's Claim remained inadequate because Epiq was unable to independently verify the information contained therein. Moreover, as noted above, Epiq was not able to find any verifiable record of the existence of Alpine Analytics through independent sources.

11. On August 5, 2022, in another effort to resolve the lack of supporting documentation to verify Mr. Abbate's claimed sales transaction, Epiq provided Mr. Abbate another opportunity to verify his claimed sale of Luckin ADSs by requesting authorization to communicate directly with E*TRADE and confirm the details of his transactions in Luckin ADSs (i.e., a transfer of the shares out of his E*TRADE account to Alpine Analytics). A copy of the email requesting authorization to communicate with E*TRADE is attached hereto as Exhibit D.

12. On August 17, 2022, Mr. Abbate responded to Epiq stating that he had already provided documentation of his E*TRADE purchases. Mr. Abbate did not, however, provide authorization for Epiq to communicate with E*TRADE in order to substantiate his transactions,

including any sale or transfer of his Luckin ADSs to Alpine Analytics. A copy of Mr. Abbate's August 17, 2022 email is attached as Exhibit E.

13. On September 20, 2022, Mr. Abbate requested Court review of Epiq's administrative determination to reject his Claim. Again, Mr. Abbate did not provide authorization for Epiq to communicate with either Alpine Analytics or E*TRADE in order to confirm his claimed sales transaction.

14. On October 14, 2022, Mr. Abbate contacted Epiq for confirmation that his request for Court review had been received and submitted; Epiq confirmed that it received his request and advised that his request for Court review would be presented to the Court when its Claims recommendations were provided to the Court. Again, Mr. Abbate did not provide authorization for Epiq to communicate with either Alpine Analytics or E*TRADE to confirm the details of his claimed sales transaction. A copy of these communications is attached hereto as Exhibit F.

15. On October 27, 2022, November 14, 2022, and December 27, 2022, Mr. Abbate contacted Epiq requesting further explanation for his Claim's rejection. Epiq advised Mr. Abbate that he had not provided authorization for Epiq, as previously requested multiple times, to communicate with Alpine Analytics or E*TRADE in order to confirm his claimed sale of Luckin ADSs. A copy of these communications is attached hereto as Exhibit G.

16. On December 27, 2022, Epiq again advised Mr. Abbate that he could complete the authorizations previously requested by Epiq to contact Alpine Analytics or E*TRADE in order to confirm his claimed sale of Luckin ADSs. Again, Mr. Abbate did not provide authorization for Epiq to communicate with Alpine Analytics or E*TRADE to confirm the sales transaction. *See id.*

## CONCLUSION

17. Epiq cannot calculate a Recognized Loss under the Court-approved Plan of Allocation for Claim No. 17888 without valid documentation confirming Mr. Abbate's claimed

sale of Luckin ADSs. Epiq requested the necessary supporting documentation or, in the alternative, permission to speak directly with Mr. Abbate's brokers on multiple occasions over the course of over seven (7) months. Mr. Abbate has neither provided Epiq with the necessary documentation to support his claimed sales transaction nor granted authorization for Epiq to speak directly with his brokers in order to obtain such information.

18.    Epiq respectfully requests that the Court enter the Class Distribution Order approving its administrative determinations with respect to the Presented Claims, including the rejection of Disputed Claim No. 10 that is the subject of this Supplemental Declaration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on March 27, 2023    _____

Alexander P. Villanova