**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE LUCKIN COFFEE INC. SECURITIES LITIGATION | Case No. 1:20-cv-01293-JPC |

**LEAD PLAINTIFFS' RESPONSE TO SHEK CHUN WAI'S**
**MOTION FOR PAYMENT OF LATE CLAIM**

Dated:  September 9, 2025

**TABLE OF CONTENTS**

**Page**

TABLE OF EXHIBITS ................................................................................................................ iii

TABLE OF AUTHORITIES ........................................................................................................ iv

INTRODUCTION ..........................................................................................................................1

FACTUAL BACKGROUND ..........................................................................................................3

      A.      The Action ...................................................................................................... 3

      B.      Certification of the Class and Dissemination of Class Notice ............................... 4

      C.      The Action Settles for $175 Million ....................................................................... 5

      D.      Dissemination of the Settlement Notice and Claim Form ..................................... 6

      E.      Final Approval of the Settlement ............................................................................ 7

      F.      Processing of Claims ............................................................................................... 7

      G.      Shek Submits a Claim After the Final Bar Date Established in the
             Distribution Order .................................................................................................. 9

      H.      Epiq Conducts the Initial and Second Distributions of the Net Settlement
             Fund to Authorized Claimants as Provided Under the Distribution Order ............ 9

      I.      Epiq Prepares to Conduct the Third Distribution ................................................ 10

      J.      Further Communications with Shek's Counsel .................................................... 10

ARGUMENT ..............................................................................................................................11

I.      Lead Plaintiffs Do Not Oppose Payment of Shek's Claim as if Timely Filed, at
      the Correct Amount and Subject to Court Permission .........................................................11

      A.      Lead Plaintiffs Request the Court's Approval to Pay Shek's Claim as a
             "Claims Administration-Related Contingenc[y]" ............................................... 11

      B.      The Value of Shek's Claim Is $87,149.77 – Not the "Over $500,000" as
             Set Forth in Shek's Motion ................................................................................. 12

II.      Notice to Class Members Was Adequate ............................................................................14

      A.      Procedures Used for Dissemination of Notice Were Reasonable ........................ 14

B.     Shek's Counsel Received Repeated Notice by ECF of the Need to File a
Claim......................................................................................................................... 16

CONCLUSION......................................................................................................................................16

**TABLE OF EXHIBITS**

Exhibit 1        Declaration of Stephanie Amin-Giwner, submitted on behalf of Epiq
                 Class Action and Claims Solutions, Inc., Regarding Shek Chun Wai
                 Claim

Exhibit 2        Declaration of John Rizio-Hamilton in Support of Lead Plaintiffs'
                 Response to Shek Chun Wai's Motion for Payment of Late Claim

Exhibit 3        [Proposed] Order Approving Payment of Claim No. 24601

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Fidel v. Farley*,
    534 F.3d 508 (6th Cir. 2008) ................................................................................................. 15

*Hill v. State Street Corp.*,
    2015 WL 127728 (D. Mass. Jan. 8, 2015) ............................................................................. 15

*In re Marsh & McLennan Co., Inc. Secs. Litig.*,
    2009 WL 5178546 (S.D.N.Y. Dec 23, 2009) ........................................................................ 15

*In re OCA, Inc. Secs. & Derivative Litig.*,
    2008 WL 4681369 (E.D. La. Oct. 17, 2008) ........................................................................ 15

*Silber v. Mabon*,
    18 F.3d 1449 (9th Cir. 1994) ............................................................................................... 15

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ................................................................................................. 15

Court-appointed Lead Plaintiffs and Class Representatives Sjunde AP-Fonden and Louisiana Sheriffs' Pension & Relief Fund (together, "Lead Plaintiffs") respectfully submit this response to Shek Chun Wai's Motion to Allow Late Claim and Direct Disbursement of Funds to the Claimant in the Claim #24601 (ECF Nos. 353 and 354) ("Shek Motion").[1]

## INTRODUCTION

Shek Chun Wai ("Shek") submitted a Claim for payment in this settled securities class action on April 17, 2023. Shek's Claim was submitted more than a year after the original March 15, 2022 Claim-filing deadline established by the Court and more than two months after the February 1, 2023 final bar date established for Claims in this Court's Order Approving Distribution Plan dated April 21, 2023 (ECF No. 352) ("Distribution Order").

The Court-appointed Notice and Claims Administrator, Epiq Class Action and Claims Solutions, Inc. ("Epiq"), conducted a robust notice process at the time the Class was certified (beginning in July 2021) and in connection with the proposed Settlement of the Action (beginning in November 2021). The notice programs included direct mailing of the Class Notice and subsequently the Settlement Notice and Claim Form (the "Settlement Notice Packet") to all potential Class Members who could be identified through reasonable efforts, which was further supplemented on both occasions by publication notice and internet notice.

Because neither the defendant company Luckin Coffee Inc. ("Luckin") nor Lead Plaintiffs possessed a comprehensive list of potential Class Members and the large majority of Class Members held their Luckin American Depository Shares ("ADSs") in "street name" (i.e., through brokers and other nominees (collectively, "Nominees"))—the majority of the notices were

---

[1] Unless otherwise indicated in this memorandum, all terms with initial capitalization have the meanings set forth in the Stipulation and Agreement of Settlement dated as of October 20, 2021 (ECF No. 315) ("Stipulation").

disseminated to potential Class Members based on information provided by Nominees. Those Nominees were required by the Court's orders to either identify potential Class Members to Epiq (who then mailed them notice) or forward the notices to their own clients that they identified as potential Class Members. Here, Shek's broker, UBS, AG ("UBS"), provided the names and addresses of 3,424 potential Class Members to Epiq (all of whom were timely mailed notices), but Shek was not included in the list of potential Class Members provided by UBS and thus appears not to have been mailed a Settlement Notice Packet.

Given that it appears that Shek's broker failed to identify him as a potential Class Member and that Shek did not receive a direct mailed copy of the Settlement Notice Packet, Lead Plaintiffs believe that it would be appropriate to pay Shek's Claim as if timely received—despite the fact that Shek's counsel received electronic notification of all Court filings, including the relevant Claim-filing deadline.

Lead Plaintiffs believe that the balance of the equities favors payment of Shek's Claim because of his counsel's representation that Shek did not receive notice, and because there are sufficient, existing funds remaining in the Net Settlement Fund as a result of uncashed or returned payments from the Initial and Second Distributions (described herein). And the harm to timely Claimants is minimal or nonexistent (as they would receive only a *de minimis* reduction in their *pro rata* share of remaining funds in the upcoming Third Distribution, all of which are coming only from other Claimants' uncashed or returned payments). As discussed below, the payment amount for Shek's Claim would be $87,149.77.

Lead Plaintiffs also believe it prudent to seek permission of the Court before making any payment to Shek. The April 21, 2023 Distribution Order bars any payment for Claims received after February 1, 2023, subject to an exception that has not yet occurred (the exhaustion of all cost-

2

effective distributions to approved Claimants) (*see* ECF No. 352 ¶ 3(g)-(h)).  It does, however, provide for a reserve to address "claims administration-related contingencies."  *Id.* at ¶ 3(c). Because they believe it fair to pay Shek's Claim, Lead Plaintiffs respectfully request leave to address this circumstance as a "claims administration-related contingency"—*i.e.*, the failure of Shek's broker to provide him notice—and pay Shek the full amount that he would have received if his Claim was timely filed.  If approved, Epiq will make that payment to Shek in connection with the upcoming Third Distribution, which Class Counsel expect to occur within 60 days of resolution of the Shek Motion.  A proposed order reflecting the requested relief is attached.

**FACTUAL BACKGROUND**

### A.      The Action

This securities class action is brought on behalf of persons and entities that purchased or otherwise acquired Luckin ADSs from May 17, 2019 through July 15, 2020, inclusive.  During this time, Luckin operated a network of retail coffee stores in China.  Lead Plaintiffs alleged that Luckin and its officers made misstatements about Luckin's revenue that were based on fabricated transactions, and those statements were made in the offering statements for Luckin's May 17, 2019 initial public offering, and other public filings and statements during the relevant time period.

Shek, through his counsel the Liu Law Firm, moved for appointment as lead plaintiff in the Action. ECF Nos. 10-12.  While Shek was not appointed as lead plaintiff, his counsel remained "of record," and received electronic notification of all subsequent filings.

In July 2020, while the Action was proceeding in the Court, Luckin entered into provisional liquidation proceedings in the Cayman Islands, where it was incorporated.  In February 2021, Luckin's Joint Provisional Liquidators filed a petition in the United States Bankruptcy Court for the Southern District of New York to recognize the Cayman Islands liquidation proceedings as a

foreign main proceeding to seek certain protections under the U.S. Bankruptcy Code, including a stay of litigation against Luckin.  ECF No. 252.

### B.     Certification of the Class and Dissemination of Class Notice

On March 2, 2021, Lead Plaintiffs and Luckin filed a stipulation and proposed order provisionally certifying a class of investors for purposes of negotiating and implementing a settlement in light of Luckin's pending liquidation proceedings.  ECF No. 235.  On March 5, 2021, the Court certified a Class consisting of all persons and entities (and their beneficiaries) that purchased or otherwise acquired Luckin ADSs between May 17, 2019 through July 15, 2020, inclusive ("Class Period").  ECF No. 245.  On July 6, 2021, the Court approved the form and manner of notifying the Class of the pendency of the Action as a class action.  ECF No. 304 ("Class Notice Order").  Shek's counsel, the Liu Law Fim, received direct email notification of each of these filings.  *See* Rizio-Hamilton Decl. Exs. 1-3.

Pursuant to the Class Notice Order, the Notice of Pendency of Class Action ("Class Notice") was mailed to all potential Class Members who could be identified.  To identify potential Class Members, Epiq mailed the Class Notice to 1,134 of the largest and most common Nominees, together with a cover letter instructing them to either provide names and addresses of potential Class Members (in which case Epiq would mail the Class Notice to the potential Class Members) or request sufficient copies of the Class Notice to forward to their clients who were potential Class Members.  ECF No. 309 ¶¶ 5-6.  As a result of these efforts, the Class Notice was mailed to 455,352 potential Class Members and Nominees from July 13, 2021, to October 8, 2021.  *Id.* ¶ 10.

Based on documentation submitted with his Claim, Shek purchased and held his Luckin ADSs through the Hong Kong branch of UBS.  *See* Shek Motion (ECF No. 353) at 45-61 (UBS documentation submitted in support of Shek's Claim).  UBS was one of the Nominees to whom Epiq mailed the Class Notice with instructions to either (i) identify the names and addresses of

potential Class Members or (ii) forward the Class Notice to potential Class Members. *See* Amin-Giwner Decl. ¶¶ 2-3. Multiple UBS entities were sent copies of the instruction letter, including UBS AG (corporate parent of the Hong Kong branch), UBS AG Stamford Branch / as Custodian for UBS AG London, UBS Financial Services Inc., UBS Securities LLC/Securities Lending, and UBS Securities Canada Inc. *Id.* ¶ 2. In response, on August 5, 2021, UBS provided Epiq with the names and addresses of 3,424 potential Class Members, and Epiq mailed copies of the Class Notice to each of those persons/entities. *Id.* ¶ 2. However, Shek's name was not included in the list of potential Class Members provided by UBS. *Id.* ¶ 2.

In addition to mailing the Class Notice directly to all identified potential Class Members, Epiq published the Summary Notice of Pendency of Class Action in *The Wall Street Journal* and transmitted it over PR Newswire on August 5, 2021. ECF No. 309 ¶ 11. On July 13, 2021, the Class Notice was also posted on a website established for the litigation, www.LuckinCoffeeSecuritiesLitigation.com, together with other relevant documents and information. ECF No. 309 ¶ 14. The website could be found via a basic Google search concerning Luckin securities litigation.

On October 8, 2021, Epiq filed with the Court a declaration detailing its efforts in disseminating the Class Notice to potential Class Members, which included a copy of the Class Notice as an attachment. *See* ECF No. 309. Notice of that filing was emailed to Shek's counsel on October 8, 2021. *See* Rizio-Hamilton Decl. Ex. 4.

### C.    The Action Settles for $175 Million

The Parties entered into the Stipulation and Agreement of Settlement on October 20, 2021, settling the Action for $175 million. ECF No. 315. Lead Plaintiffs filed a motion for preliminary approval of the Settlement on October 25, 2021, which included a request for the Court to establish a deadline for the submission of Claims. ECF No. 314, at 25.

On October 26, 2021, the Court entered a Revised Order Preliminarily Approving Settlement and Providing for Notice of the Settlement (ECF No. 319) ("Preliminary Approval Order"), which approved the form of notice of the Settlement to be sent to Class Members, scheduled the Settlement Hearing, and established other dates and deadlines in connection with final approval of the Settlement.  The Preliminary Approval Order stated that:

> Class Members who wish to participate in the Settlement and to be eligible to receive a distribution from the Net Settlement Fund must complete and submit a Claim Form in accordance with the instructions contained therein.  Unless the Court orders otherwise, all Claim Forms must be postmarked no later than one hundred and twenty (120) calendar days after the Notice Date.

ECF No. 319, at ¶ 8.  The Notice Date was defined as "twenty (20) calendar days after the date of entry of this Order" (*id*. at ¶ 4(a)), making the Claim-filing deadline March 15, 2022.

Shek's counsel received direct email notification of each of these filings, including the Stipulation and Agreement of Settlement, the motion for preliminary approval, and the Preliminary Approval Order establishing the Claim-filing deadline.  *See* Rizio-Hamilton Decl. Exs. 5-7.

**D.    Dissemination of the Settlement Notice and Claim Form**

On November 15, 2021, Epiq began disseminating copies of the Settlement Notice Packet to Class Members pursuant to the procedures set forth in the Preliminary Approval Order.  The Settlement Notice Packet repeatedly stated the March 15, 2022 Claim-filing deadline throughout. *See* ECF No. 327-3, at 14, 17, 20, 30, 37.

Epiq mailed copies of the Settlement Notice Packet to all potential Class Members who were previously identified in the Class Notice process.  ECF No. 327-3 ¶¶ 6-7.  In addition, Epiq again reached out to the previously noticed 1,134 Nominees, instructing them that, if they had not previously submitted names and addresses of potential Class Members nor requested notices to send to Class Members directly, or if they had names and addresses of Class Members that were not included in their previous submission to Epiq, they were required to do so.  *See* ECF No. 327-3,

6

at 9 (Ex. A).  As a result of that process, Nominees identified additional potential Class Members, and from November 15, 2021, through June 8, 2022, Epiq mailed a total of 564,464 Settlement Notice Packets to potential Class Members and Nominees.  ECF No. 327-3 ¶ 9.[2]

Shek's broker, UBS, and several of its affiliates were again included in the group of Nominees who were sent a copy of the letter providing a copy of the Settlement Notice Packet and the instructions for providing notice.  Amin-Giwner Decl. ¶ 3.  UBS did not provide any additional names or addresses in response.  *Id.*

### E.      Final Approval of the Settlement

On June 10, 2022, Lead Plaintiffs moved for final approval of the Settlement.  ECF Nos. 323-327.  Lead Plaintiffs' motion papers included finalized versions of the Settlement Notice and Claim Form, which set forth the Claim-filing deadline of March 15, 2022.  *See* ECF No. 327-3, at 14, 17, 20, 30, 37.  Notice of filing of Lead Plaintiffs' final approval papers, which included full copies of the Settlement Notice and Claim Form, was directly emailed to Shek's counsel on June 10, 2022.  *See* Rizio-Hamilton Decl. Ex. 8.

On July 22, 2022, the Court entered its Judgment Approving Class Action Settlement.  ECF No. 340.  Notice of filing of the Judgment Approving Class Action Settlement was emailed to Shek's counsel on July 22, 2022.  *See* Rizio-Hamilton Decl. Ex. 9.

### F.      Processing of Claims

In total, 49,100 Claims were submitted to Epiq through February 1, 2023, which included 46,497 Claims submitted on or before the Claim-filing deadline (March 15, 2022), and 2,603

---

[2] This amount included potential Class Members who had received the Class Notice, as well as additional potential Class Members identified in connection with the Settlement.

Claims submitted after the March 15, 2022 deadline through the final bar date set forth in the Distribution Order (February 1, 2023).  ECF No. 347 ¶¶ 29, 34, 35.

On March 6, 2023, Lead Plaintiffs filed a motion requesting that the Court authorize the distribution of the Net Settlement Fund to eligible Claimants ("Distribution Motion").  ECF Nos. 344-347.  The Distribution Motion was supported by a declaration from Alexander P. Villanova of Epiq that set forth details concerning Epiq's processing of the submitted Claims and its recommendations for acceptance and rejection of such Claims.  ECF No. 347.  The Distribution Motion requested that the Court accept all otherwise eligible late Claims (i.e., those claims received after the March 15, 2022 Claim-filing deadline through February 1, 2023), but also noted that, in order to allow for a *pro rata* distribution of the Net Settlement Fund to eligible Claimants, a final cutoff needed to be established.  Lead Plaintiffs asked that February 1, 2023 be established as that final cutoff date and that Claims submitted after that date would not be eligible for payment at that time.  *See id.* ¶¶ 30, 39(f).

On April 21, 2023, the Court entered the Distribution Order.  The Distribution Order approved Epiq's determinations concerning acceptance and rejection of Claims received through February 1, 2023, including the acceptance of otherwise eligible late Claims that were received after the original Claim-filing deadline of March 15, 2022, through February 1, 2023.  The Court's Distribution Order also accepted Epiq's recommendation that February 1, 2023 be established as a final bar date, and that no late Claims be accepted after that date, subject to one minor exception: late Claims received after February 1, 2023 would be paid to the extent permitted by any remaining funds, *after* all cost-effective distributions to timely Claimants were completed and before the distribution of the residual funds to the selected *cy pres* recipient(s).  *See* ECF No. 352 at ¶ 3(g)-(h).

The Distribution Order also allowed Epiq to reserve 10% of the Net Settlement Fund from the initial distribution to eligible Claimants ("Initial Distribution") "to address any tax liability or claims administration-related contingencies that may arise" following the Initial Distribution. *Id.* at ¶ 3(c).

The Distribution Order was posted on www.LuckinCoffeeSecuritiesLitigation.com, and notification of the filing of the Distribution Order was emailed to Shek's counsel.

### G.    Shek Submits a Claim After the Final Bar Date Established in the Distribution Order

On April 12, 2023, Shek's counsel contacted Class Counsel regarding their as-yet-unfiled and post-due Claim.  Class Counsel advised that, while Epiq could accept the Claim for processing, payment of the Claim (if eligible) would be based on the provisions of the Court's Distribution Order which provided that late Claims filed after February 1, 2023, would be paid only when all cost-effective distributions to timely filed Claimants were completed.  *See* Shek Motion (ECF No. 353) at 70.[3]  Shek's Claim was submitted on April 17, 2023 (*see id.* at 43, 66), 13 months after the originally established Claim-filing deadline (March 15, 2022) and more than 10 weeks after the final bar date established by the Distribution Order (February 1, 2023).

### H.    Epiq Conducts the Initial and Second Distributions of the Net Settlement Fund to Authorized Claimants as Provided Under the Distribution Order

On May 26, 2023, Epiq conducted the Initial Distribution of the Net Settlement Fund to eligible Claimants as provided in this Court's Distribution Order.  *See* Distribution Order (ECF No. 352) ¶ 3(c).  Epiq also established a reserve of roughly 10% of the available Net Settlement Fund, which was held back "to address any tax liability or claims administration-related

---

[3] The same message was conveyed to Shek's counsel by Class Counsel and/or Epiq on several additional occasions.  Shek Motion (ECF No. 353) at 67-68, 91-92, 92-94, 108-09.

contingencies that may arise following the Initial Distribution." *Id* ¶ 3(c).  A total of $131,291,544 was distributed to eligible Claimants in the Initial Distribution.  Amin-Giwner Decl. ¶ 4.

On June 28, 2024, Epiq conducted the Second Distribution of the Net Settlement Fund to eligible Claimants as provided in the Court's Distribution Order.  *See* Distribution Order (ECF No. 352) ¶ 3(f).   A total of $22,195,914 was distributed to eligible Claimants in the Second Distribution.  *Id.*

### I.    Epiq Prepares to Conduct the Third Distribution

During the summer of 2025, Epiq prepared to conduct the Third Distribution of the Net Settlement Fund to eligible Claimants.  *See id.*  There is currently over $1 million available in the Net Settlement Fund as a result of uncashed checks or returned payments from the Second Distribution.  Amin-Giwner Decl. ¶ 4.  The amount of funds remaining in the Net Settlement Fund is sufficient for a further distribution of the remaining funds to eligible Claimants to be "cost-effective," and thus the formal condition for payment of Claims received after February 1, 2023 has not yet been met.  *See* Distribution Order (ECF No. 352) ¶ 3(g)-(h).

### J.    Further Communications with Shek's Counsel

In July 2025, Shek's counsel contacted Epiq and Class Counsel.  Consistent with previous communications, Class Counsel conveyed that the Distribution Order's exception for allowing payment of Claims received after February 1, 2023 was not yet triggered, but that Class Counsel would further investigate their client's Claim.  Shek Motion (ECF No. 353) at 91-92.  While Class Counsel were evaluating the Claim, Shek filed the Shek Motion.  ECF Nos. 353, 354.  On September 3, 2025, Class Counsel emailed Shek's counsel expressing their non-opposition to paying Shek's Claim subject to the Court's permission to treat it as a "claims administration-related contingency," and providing the calculated amount of the Claim pursuant to the Court-approved Plan of Allocation.  *See* § Arg. 1.B *infra*.  Class Counsel offered to answer additional

10

questions and/or speak on a conference call.  In response, Mr. Liu requested additional information about the calculation of the payment amount, which Class Counsel promptly provided and offered again to discuss Mr. Liu's client's claim to reach an amicable resolution.  Rizio-Hamilton Decl. Ex. 10.

## ARGUMENT

I.    **Lead Plaintiffs Do Not Oppose Payment of Shek's Claim as if Timely Filed, at the Correct Amount and Subject to Court Permission**

Subject to Court approval, Lead Plaintiffs do not oppose payment of Shek's Claim as an administrative contingency because (i) Shek's broker failed to identify him as a potential Class Member and thus Shek did not receive a direct mailed copy of the Settlement Notice Packet; (ii) there are sufficient existing funds remaining in the Net Settlement Fund to pay Shek's Claim; and (iii) Shek's Claim can be covered by payments that were uncashed or returned in the Initial and Second Distributions, resulting in minimal dilution to eligible Claimants in the upcoming Third Distribution.  Lead Plaintiffs endorse this approach notwithstanding the overall adequacy of the notice, which included specific requests to Shek's broker to identify all potential Class Members, and notwithstanding the fact that Shek's counsel received repeated electronic notification of the relevant Claim-filing deadline.

As discussed below, pursuant to the Court-approved Plan of Allocation,  Shek's Claim calculates to a payment of $87,149.77, and if approved by the Court, will be paid at the time of the upcoming Third Distribution to eligible Claimants.  *See* § Arg. I.B *infra*.

A.    **Lead Plaintiffs Request the Court's Approval to Pay Shek's Claim as a "Claims Administration-Related Contingenc[y]"**

While Lead Plaintiffs have no objection to paying Shek's late Claim given the representation that he did not receive a direct mailed notice, Lead Plaintiffs note that the Distribution Order states that "No new Claims may be accepted after February 1, 2023" subject to

the exception that such Claims can be paid when *"Class Counsel, in consultation with Epiq, determine a [further] distribution [to the previously approved Claimants] is not cost-effective."* Distribution Order ¶ 3(h). Because there is more than $1 million remaining in the Net Settlement Fund, Class Counsel believe that further distribution is cost-effective and thus this exception is not yet applicable.

However, there is also language in the Distribution Order providing that funds in the Reserve may be used for any "claims administration-related contingencies that may arise." *Id*. ¶ 3(c). Lead Plaintiffs believe that it is appropriate to pay Shek's Claim under this provision given their broker, UBS Hong Kong's apparent failure to provide Shek's name to Epiq. To that end, Lead Plaintiffs respectfully request that the Court approve the payment to Shek as set out in the attached proposed order.

**B.    The Value of Shek's Claim Is $87,149.77 – Not the "Over $500,000" as Set Forth in Shek's Motion**

Without providing any calculation, Shek's Motion states that he is entitled to payment of "over $500,000." Shek Motion at 2. But, as was explained in emails to Shek's counsel on September 3 and 5, 2025 (Rizio-Hamilton Decl. Ex. 10) and in the accompanying declaration submitted by Stephanie Amin-Giwner of Epiq (Amin-Giwner Decl. ¶¶ 5-7), Shek's Claim calculates to a "Recognized Loss" under the Court-approved Plan of Allocation of $1,057,326.00, and, after applying the applicable *pro rata* payment percentages applied to the Recognized Losses of all eligible Claimants, results in a payable amount to Shek of **$87,149.77**.

Shek's Claim reflects the purchase of 50,400 Luckin ADSs from November 13, 2019, through March 23, 2020. Of these shares, 3,350 were sold during the period from February 16, 2020, through March 18, 2020 for a market gain and generated no loss under the Plan of Allocation. Amin-Giwner Decl. ¶ 5. The other 47,050 ADSs, which were all sold on April 3, 2020, calculate

12

to Exchange Act Loss Amounts under ¶ 7 of the Plan of Allocation.[4]  Under that provision, the Exchange Act Loss Amount "is the lesser of: (i) the amount of artificial inflation per ADS on the date of purchase/acquisition as stated in Table A [of the Settlement Notice] minus the amount of artificial inflation per ADS on the date of sale as stated in Table A; or (ii) the purchase price minus the sale price."  As explained in the Amin-Giwner Declaration, certain of Shek's purchases calculate to an Exchange Act Loss Amount under subsection (i) and others under subsection (ii), but the total Recognized Loss Amount with respect to those 47,050 damaged ADSs is $1,057,326.00.  *See* Amin-Giwner Decl. ¶¶ 5-7.

Eligible Claims are not entitled to full payment of their Recognized Loss Amount, but rather a *pro rata* portion of the Net Settlement Fund based on their Recognized Loss Amount compared to the total Recognized Loss Amounts of all eligible Claimants.  *See* Settlement Notice (ECF No. 327-3, at 24), Plan of Allocation ¶ 1 ("the calculations pursuant to the Plan of Allocation [are not] intended to be estimates of the amounts that will be paid to Authorized Claimants pursuant to the Settlement.  The computations under the Plan of Allocation are only a method to weigh the claims of Claimants against one another for the purposes of making *pro rata* allocations of the Net Settlement Fund."); Settlement Notice (ECF No. 327-3, at 27), Plan of Allocation ¶ 18 ("The Net Settlement Fund will be distributed to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims."); *see also* Distribution Order (ECF No. 352) ¶ 3(c) (same).

Here, eligible Claimants have received *pro rata* payments of approximately 8.2% of their total Recognized Loss Amounts and will receive a smaller additional amount in the upcoming

---

[4] Certain of these purchases are also eligible for a Securities Act Loss Amount under ¶ 8 of the Plan of Allocation, but for each purchase the Exchange Act Loss Amount is greater and is thus the relevant figure.  *See* Plan of Allocation ¶ 6 (ECF No. 327-3, at 25).

Third Distribution.  The table below sets forth the *pro rata* payment percentage that was paid to eligible Claimants in each distribution and the amount that Shek would have received or would receive, based on the $1,057,326 Recognized Loss Amount.

| | *Pro Rata* Payment Percentage | Shek Payment Amount |
|---|---|---|
| Initial Distribution (May 2023) | 6.91570000% | $73,121.49 |
| Second Distribution (June 2024) | 1.26150000% | $13,338.17 |
| Third Distribution (expected ~October 2025) | 0.0652696% | $690.11 |
| **TOTAL:** | **8.2424696%** | **$87,149.77** |

Amin-Giwner Decl. ¶ 7.

A payment of $87,149.77 to Shek, to be paid in connection with the upcoming Third Distribution, would bring Shek into full parity with Claimants who submitted valid Claims prior to the February 1, 2023 bar date set forth in the Distribution Order.  In addition, Shek could be potentially eligible for payment in a Fourth Distribution, if a further distribution is found to be cost-effective and if the payment to Shek in that distribution exceeds the $10 minimum payment amount.  *See* Distribution Order (ECF No. 352) ¶ 3(f).  While payment to Shek would diminish amounts available to timely Claimants in the Third Distribution and any subsequent distribution, the amount payable to Shek is coverable by funds that have been returned or not cashed by timely Claimants in the previous distributions.

## II.     Notice to Class Members Was Adequate

For the avoidance of doubt, notice to Class Members in this Action was adequate and indeed robust.

### A.     Procedures Used for Dissemination of Notice Were Reasonable

Class Counsel and Epiq complied with the Class Notice Order and the Preliminary Approval Order to the letter.  Class Counsel and Epiq engaged with over 1,100 Nominees

regarding the identity of potential Class Members, including Shek's broker UBS, which was asked twice to provide the relevant names of potential Class Members. *See* §§ Factual Background B, D *supra*. Epiq mailed hundreds of thousands of notices during the case, in addition to making publication notice and maintaining a dedicated case website. *See* § Factual Background B *supra*.

Courts have uniformly found that, as long as the *procedures* used for dissemination of notice were reasonable, as they were here, notice to the class is sufficient, even if individual brokers fail to comply with their obligations to identify all class members (or to forward notices to them in a timely manner).[5] Indeed, it is well recognized that the risk that some brokers may fail to forward necessary notices to their clients is a "risk a shareholder takes in registering his or her securities in street name," as Shek did here. *In re Marsh & McLennan Co., Inc. Secs. Litig.*, 2009 WL 5178546, at *24 (S.D.N.Y. Dec 23, 2009); *accord Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008).

Nothing in Shek's Motion calls into question the Court's prior conclusion that the notice procedures in the Action fully complied with "the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), . . . and all other applicable law and rules." Judgment Approving Class Action Settlement (ECF No. 340) ¶ 3.

---

[5] *See, e.g.*, *Fidel v. Farley*, 534 F.3d 508, 514-15 (6th Cir. 2008) (approving notice program as satisfying Rule 23 and due process, even though delays by brokers caused 20% of class to receive notice after relevant deadlines); *Silber v. Mabon*, 18 F.3d 1449, 1452-54 (9th Cir. 1994) (finding notice adequate where, due to broker's late response, notices to 14% of potential class members were mailed after deadline); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374-75 (9th Cir. 1993) (same); *Hill v. State Street Corp.*, 2015 WL 127728, at *15 (D. Mass. Jan. 8, 2015) (finding notice adequate even though some potential class members received late notice due to delays by brokers); *In re Marsh & McLennan Cos. Sec. Litig.*, 2009 WL 5178546, at *24 (S.D.N.Y. Dec. 23, 2009) (finding notice sufficient despite delays by brokers in forwarding notices); *In re OCA, Inc. Secs. & Derivative Litig.*, 2008 WL 4681369, at *16 (E.D. La. Oct. 17, 2008) ("Courts have typically found notice to class members who hold stock in street names to satisfy due process even if some brokerage houses fail to forward the notice to class members on a timely basis.").

**B.**    **Shek's Counsel Received Repeated Notice by ECF of the Need to File a Claim**

Lead Plaintiffs respectfully disagree with Shek's contentions that their counsel "received no direct notice through any method" (Shek Motion at 2) and "never received direct notice of any claim form filing deadline pertaining to this case" (ECF No. 353-1 ¶ 5).  Shek's counsel received repeated direct notifications at their ECF-registered email address of (i) the certification of the Class; (ii) efforts to provide notice to the Class; (iii) the proposed Settlement; (iv) the deadline for submission of Claim Forms; and (v) the Court's approval of the Settlement.  *See, e.g.*, ECF Nos. 245, 304, 309, 313, 315, 319, 327-3, 339.  Nonetheless, Lead Plaintiffs have no basis to dispute Shek's representation through counsel that he did not personally receive a direct mailed notice, and do not believe it fair to penalize Shek for non-responsiveness by his broker or a communication breakdown with his counsel.

## CONCLUSION

Lead Plaintiffs respectfully request the Court enter the attached [Proposed] Order Approving Payment of Claim No. 24601, which will authorize a $87,149.77 payment of Shek's Claim in connection with the Third Distribution of the Net Settlement Fund to eligible Claimants, which is expected to occur in the next 60 days.

Dated: September 9, 2025

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**

*/s/ John Rizio-Hamilton*
Salvatore J. Graziano
John Rizio-Hamilton
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
salvatore@blbglaw.com
johnr@blbglaw.com

**KESSLER TOPAZ MELTZER
  & CHECK, LLP**

*/s/ Sharan Nirmul*
Sharan Nirmul
Gregory M. Castaldo
Richard A. Russo, Jr.
Nathan A. Hasiuk
Lisa M. Port
280 King of Prussia Road
Radnor, Pennsylvania 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
snirmul@ktmc.com
gcastaldo@ktmc.com
rrusso@ktmc.com
nhasiuk@ktmc.com
llambport@ktmc.com

*Counsel for Lead Plaintiffs Sjunde AP-
Fonden and Louisiana Sheriffs' Pension &
Relief Fund and Class Counsel*

17

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Lead Plaintiffs Sjunde AP-Fonden and Louisiana Sheriffs' Pension & Relief Fund and Class Counsel certifies that this Response to Shek Chun Wai's Motion for Payment of Late Claim contains 5,065 words and is in compliance with the word count-limitation of Local Civil Rule 7.1(c).

Dated: September 9, 2025              /s/ *John Rizio-Hamilton*
               John Rizio-Hamilton
               **BERNSTEIN LITOWITZ BERGER**
                **& GROSSMANN LLP**
               1251 Avenue of the Americas
               New York, New York 10020
               Telephone: (212) 554-1400
               Facsimile: (212) 554-1444
               johnr@blbglaw.com