**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE LUCKIN COFFEE INC.
SECURITIES LITIGATION

Case No. 1:20-cv-01293-JPC-JLC

**DECLARATION OF STEPHANIE AMIN-GIWNER**
**SUBMITTED ON BEHALF OF EPIQ CLASS ACTION AND**
**CLAIMS SOLUTIONS, INC., REGARDING SHEK CHUN WAI CLAIM**

I, Stephanie Amin-Giwner, hereby declare under penalty of perjury as follows:

1. I am a Director of Client Services for Epiq Class Action and Claims Solutions, Inc. ("Epiq").[1] Epiq was appointed as the Notice Administrator in connection with certification of the Class and Class Notice (ECF No. 304) and was subsequently appointed as the Claims Administrator in connection with the Settlement of the Action (ECF No. 316). I am over 21 years of age and am not a party to the Action. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently thereto.

2. With regards to dissemination of Class Notice, Epiq mailed the Class Notice to 1,134 of the largest and most common brokers and nominees (collectively, "Nominees") with a cover letter instructing them to either provide names and addresses of potential Class Members for Epiq to mail the Class Notice to directly or to request sufficient copies of the Class Notice to forward to potential Class Members. As part of the Class Notice mailing to Nominees, multiple UBS entities were included, including UBS AG, UBS AG Stamford Branch / as Custodian for UBS AG London, UBS Financial Services Inc., UBS Securities LLC/Securities Lending, and UBS Securities Canada Inc. On August 5, 2021, a representative of UBS emailed a list of 3,424

[1] All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated as of October 20, 2021 (ECF No. 315).

potential Class Members and their names and addresses to Epiq.  Epiq mailed copies of the Class Notice to each of the persons/entities included on UBS's list.  Shek Chun Wai's name was not included in this list.

3.      With regard to dissemination of the Settlement Notice and Claim Form ("Settlement Notice Packet"), Epiq again mailed to Nominees instructing them to provide names and addresses of potential Class Members or to request additional Settlement Notice Packets (only for potential Class Members not previously provided in connection with Class Notice).  Multiple UBS entities were included in this mailing and did not provide any additional names or addresses in response.

4.      With regard to the Initial and Second Distributions of the Net Settlement Fund for this matter, $131,291,544 was distributed to eligible Claimants in the Initial Distribution on May 26, 2023, and $22,195,915 was distributed to eligible Claimants in the Second Distribution on June 28, 2024.  Pursuant to the timeframe in the Court's Order Approving Distribution Plan dated April 21, 2023 (ECF No. 352) ("Distribution Order"), preparations for the Third Distribution began in the summer of 2025 for Claimants who negotiated their prior distribution payment(s).  As of September 8, 2025, there is $1,097,246.86 in the Net Settlement Fund.  This amount is sufficiently large such that a further distribution is "cost-effective" and thus processing of late Claims; i.e., Claims received or adjusted after the February 1, 2023 cutoff date set forth in the Distribution Order, cannot occur yet.  *See* Distribution Order ¶ 3(g), (h).

5.      With respect to the Recognized Loss Amount calculated for Shek Chun Wai's Claim, Shek purchased and sold a total of 50,400 shares of Luckin American Depository Shares ("ADSs") during the Class Period from May 15, 2019, through July 15, 2020.  The transactions included in Shek's Claim were matched on a First-In/First-Out basis, and then those paired

transactions were assigned a Recognized Loss Amount based on the provisions of the Court-approved Plan of Allocation.  The sum of a Claimant's Recognized Loss Amounts is a Claimant's Recognized Claim.  Based on the documentation submitted with Shek's Claim, the transactions were made pursuant to options contracts.  Per Paragraph 17 of the Court-approved Plan of Allocation, the price per share to be used in the calculation of executed options is the closing market price of Luckin ADSs on the date of exercise.  Of the 50,400 shares purchased by Shek during the Class Period, 37,200 shares were eligible for both the Exchange Act Loss Amount and the Securities Act Loss Amount.  Of these 37,200 shares, 3,350 shares resulted in a market gain; i.e., the shares were sold for more than they were purchased for, resulting in no Recognized Loss Amount.  *See* Plan of Allocation ¶¶ 7(a), 10 (instructing that trades for which the calculation of the purchase price minus the sales price is a negative value, have a Recognized Loss Amount of zero).  The remaining 33,850 shares generated a loss under both the Exchange Act Loss Amount and Securities Act Loss Amount.  Per the Plan of Allocation, the Recognized Loss Amount for these shares is the greater of the Exchange Act Loss Amount or the Securities Act Loss Amount. *Id.* ¶ 6.  In every transaction, the Exchange Act Loss Amount was the greater value, so the aggregate Exchange Act Loss Amount results in Shek's Recognized Loss Amount.  The remaining 13,200 shares of the total 50,400 purchased shares were eligible for damages only under the Exchange Act Loss Amount provision.  Based on the Plan of Allocation, Shek's purchased shares calculated to an Exchange Act Loss under ¶ 7(b) of the Plan of Allocation for Exchange Act Loss Amounts.[2]

---

[2] ¶ 7(b) of the Plan of Allocation provides the following: "For each Luckin ADS purchased or otherwise acquired during the period from May 17, 2019 through July 15, 2020, inclusive (including ADSs purchased in Luckin's May 17, 2019 Initial Public Offering or its January 10, 2020 Secondary Public Offering, or on the secondary market from May 17, 2019 through July 15, 2020), and: (b) sold from 11:00 a.m. Eastern time on January 31, 2020 through the close of trading

6.      Based on the formula given in ¶ 7(b) of the Plan of Allocation, the transactions submitted in Shek's Claim generated a Recognized Loss Amount of $1,057,326, with $772,584 attributable to calculations under ¶ 7(b)(ii) and $282,742 attributable to calculations under ¶ 7(b)(i).  The Plan of Allocation ¶ 7(b) specifies that the lesser of the two should be used in each calculation.

7.      If Shek's Claim had been eligible for participation in the Initial Distribution, which had a *pro rata* distribution amount of 6.9157% of eligible Recognized Losses, the Claim would have been paid $73,121.49.  If Shek's Claim had been eligible for participation in the Second Distribution, which had a *pro rata* distribution amount of 1.2615% of eligible Recognized Losses, the Claim would have been paid $13,338.17.  If Shek's Claim is allowed to participate in a future Third Distribution with an estimated *pro rata* distribution amount of .0652696% of total Recognized Losses, Shek's Claim will be paid $690.11.  In the aggregate, if Shek's Claim had participated in the Initial and Second Distributions, as well as being allowed to participate in the future Third Distribution, the Claim would receive a total payment of $87,149.77.

8.      Barring the development of any unforeseen circumstances, the Third Distribution can be effectuated within 60 days of resolution of Shek's pending motion.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 9, 2025

*Stephanie Amin-Giwner*
Stephanie Amin-Giwner

---

on July 15, 2020, the Exchange Act Loss Amount is the lesser of: (i) the amount of artificial inflation per ADS on the date of purchase/acquisition as stated in Table A minus the amount of artificial inflation per ADS on the date of sale as stated in Table A; or (ii) the purchase price minus the sale price."